```
1                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
2

3    United States of America,      ) Criminal Action
                                    ) No. 19-CR-018
4                    Plaintiff,     )
                                    ) STATUS CONFERENCE
5    vs.                            )
                                    ) Washington, DC
6    Roger Jason Stone, Jr.,        ) February 1, 2019
                                    ) Time:  2:11 p.m.
7                    Defendant.     )
     _____
8
                     TRANSCRIPT OF STATUS CONFERENCE
9                           HELD BEFORE
              THE HONORABLE JUDGE AMY BERMAN JACKSON
10                  UNITED STATES DISTRICT JUDGE
     _____
11
                      A P P E A R A N C E S
12

13   For the Plaintiff: Michael John Marando
                        Jonathan Ian Kravis
14                      U.S. ATTORNEY'S OFFICE FOR THE
                           DISTRICT OF COLUMBIA
15                      555 Fourth Street, NW
                        Washington, DC 20530
16                      (202) 252-7068
                        Email:  Michael.marando@usdoj.gov
17                      Email:  Jonathan.kravis3@usdoj.gov
                        Jeannie Sclafani Rhee
18                      Aaron Simcha Jon Zelinsky
                        U.S. DEPARTMENT OF JUSTICE
19                      Special Counsel's Office
                        950 Pennsylvania Avenue, NW
20                      Washington, DC 20530
                        (202) 616-0800
21                      Email:  Jsr@usdoj.gov
                        Email:  Asjz@usdoj.gov

22   For the Defendant: Robert C. Buschel
                        BUSCHEL & GIBBONS, P.A.
23                      One Financial Plaza
                        100 S.E. Third Avenue
24                      Suite 1300
                        Ft. Lauderdale, FL 33394
25                      (954) 530-5301
                        Email:  Buschel@bglaw-pa.com
```

```
1      For the Defendant: **Tara A. Campion**
                          LAW OFFICE OF BRUCE S. ROGOW, P.A.
2                         100 NE 3rd Avenue
                          Suite 1000
3                         Fort Lauderdale, FL 33301
                          (954) 767-8909
4                         Email:  Tcampion@rogowlaw.com

5      Also present:      FBI Case Agent Michelle Taylor
                          FBI Case Agent Curtis Heide
6      _____

7      Court Reporter:       Janice E. Dickman, RMR, CRR
                             Official Court Reporter
8                            United States Courthouse, Room 6523
                             333 Constitution Avenue, NW
9                            Washington, DC  20001
                             202-354-3267
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1      THE COURTROOM DEPUTY:  Your Honor, this afternoon we

2  have criminal case No. 19-18, the United States of America v.

3  Roger Jason Stone, Jr.   Mr. Stone is present in the courtroom,

4  Your Honor.

5      Will counsel for the parties please approach the

6  lectern, identify yourself for the record and the party you

7  represent.

8      MR. MARANDO:  Good afternoon, Your Honor.  Michael

9  Marando on behalf of the United States.  With me from the U.S.

10  Attorney's Office in the District of Columbia is Jonathan

11  Kravis.  Also with me is Jeannie Rhee and Aaron Zelinsky from

12  the Special Counsel's Office.  And sitting at counsel table are

13  the lead FBI case agents on the matter, Curtis Heide and

14  Michelle Taylor.

15      THE COURT:  Think you.  Good afternoon.

16      MR. BUSCHEL:  Good afternoon, Your Honor.  I'm Robert

17  Buschel.  Along with me today is Tara Campion on behalf of

18  Roger Stone.

19      THE COURT:  All right.  Good afternoon.

20      Mr. Buschel, it looks like a number of attorneys have

21  been admitted pro hac in this case and also that's been taken

22  care of.  And from what I can tell, they bring a broad range of

23  experience to the table.  Are you the criminal defense attorney

24  who's going to be lead counsel in this matter?

25      MR. BUSCHEL:  Yes, Your Honor.  Myself and Professor

1     Bruce Rogow will be lead together.  Or if you want to designate

2     me as lead, that is fine for court purposes.

3             THE COURT:  Well, there are local rules that apply to

4     lead counsel in criminal cases, so I want to know who it is.

5             MR. BUSCHEL:  Okay.  It will be me, Judge.

6             THE COURT:  And whoever it is should comply with the

7     rules.  There are requirements in Rule 44.1(b) and 44.5(b).

8     And I'm certain they won't be a problem for you, but I think

9     you need to take a look at them and make sure they've been

10    complied with.

11            You can be seated right now.

12            MR. BUSCHEL:  Thank you, Judge.

13            THE COURT:  I have a number of issues I would like to

14    raise today and then when I'm done I'll ask the parties if

15    there's anything that they want to talk about today.

16            I do want to encourage the entire defense team to

17    familiarize themselves with the rules and procedures governing

18    sealed pleadings.  We've had a number of them in these cases

19    and they can be tricky and it's in everyone's interest if

20    either side is trying to file something under seal, that it be

21    done properly.  And if you have any issues with respect to that

22    or any other procedural questions about what needs to be filed,

23    I would encourage you to direct them to our invariably

24    competent and congenial deputy clerk, Mr. Haley, as opposed to

25    calling chambers, because he's in a better position to help

1     with you procedural matters.

2             With respect to discovery, I know that there's been a

3     motion for protective order filed, that's docket 18.  And

4     before I talk about that, I just want to ask:  Has any

5     discovery been provided in this case yet?

6             MR. MARANDO:  Not yet, Your Honor.  Once the

7     protective order is granted, if Your Honor grants it, we are

8     prepared to provide discovery shortly.  We have it prepared and

9     ready to go to defense counsel.  And then shortly after that,

10    we expect a second tranche of discovery to go out shortly

11    thereafter, consisting of Rule 16 statements of the defendant.

12            THE COURT:  Okay.  And I have it here in front of me

13    and I'm going to sign it.  I have a couple of questions about

14    it.  Before I get to that, though, I do want to say that I may

15    issue future orders in writing with respect to this.  But I

16    want to say on the record, at the start, and not because I

17    don't believe you won't, but because I think it's important to

18    be said, that I expect the United States to comply with its

19    obligations not only under Federal Rule of Criminal Procedure

20    16, but also under *Brady versus Maryland*, to disclose to the

21    defense any information in its possession that's favorable to

22    the accused.

23            With respect to the protective order, the one

24    question I had is:  It says all the materials may be used by

25    the defendant, counsel, legal experts, administrative

1    personnel, investigators, and it goes on.  And I just wanted to

2    make sure I understood what "administrative personnel" means,

3    and whether that would include spokespersons or members of a

4    public relations team?

5              MR. MARANDO:  Your Honor, we would not read that

6    administrative personnel to encompass -- to be that broad, to

7    include spokespeople.  We are merely foreseeing a legal

8    secretary or paralegal or administrative assistant, more in the

9    office doing day-to-day legal work that needs to handle these

10   documents and deal with them in the normal course of business.

11             THE COURT:  All right.  And, Mr. Buschel, is that

12   your understanding as well?

13             MR. BUSCHEL:  Yes, Judge.

14             THE COURT:  All right.  Well, I'm going to sign it.

15             I do want to emphasize to everyone that once I sign

16   it, it's not just a private agreement between the parties any

17   more, it's a Court order.  And so it needs to be complied with

18   and it will be enforced like all Court orders.

19             There's been a bond determination made by the

20   magistrate judge in this case.  And the conditions of release

21   imposed by judge Robinson are generally consistent with those

22   that were imposed in the Southern District of Florida, but I

23   had a couple of questions about any variations.  There's an

24   order to surrender the passport.  Has that been accomplished?

25             MR. MARANDO:  It has, Your Honor.  We are in

1    possession of the passport.

2          THE COURT:  And I think -- are you planning to turn

3    it over to pretrial services?

4          MR. MARANDO:  If I may just correct the record, Your

5    Honor.  Pretrial services has the passport.

6          THE COURT:  Okay.  I think that's the place where it

7    should remain.

8          There is an appearance bond of $250,000 which doesn't

9    appear to have a requirement that it be secured.  And I take it

10   the United States is satisfied with that?

11         MR. MARANDO:  We're satisfied with that, Your Honor.

12   We're not seeking any change in that.

13         THE COURT:  Okay.  In the Southern District, though,

14   there was a ban on selling or encumbering property between now

15   and the end of the case.  That wasn't checked off this time by

16   the magistrate judge.  Do you think that's important, in light

17   of the appearance bond?

18         MR. MARANDO:  Your Honor, we would not need that in

19   this case.  You know, we're -- were an issue to arise regarding

20   Mr. Stone's appearance, there are other ways we can handle it.

21   We don't need to place those restrictions on the property yet.

22         THE COURT:  Okay.  And then can I just -- there's one

23   aspect of it that I wanted to ask about at the bench.  So if I

24   could have counsel come up?  And I believe we are not connected

25   to any other rooms, so we don't have to worry about turning the

1    sound off.

2              (Sealed discussion at the bench:)





14          (Open court:)

15          THE COURT:  All right.  The conditions of release

16   also permit him to travel between the Southern District of

17   Florida, the Eastern District of New York, the Southern

18   District of New York, the District of Columbia, and the Eastern

19   District of Virginia, but it says he's supposed to notify

20   pretrial of his travel plans before leaving and upon his

21   return.  And I think that's a little too vague, so I'm

22   proposing to modify it to say that he has to provide them with

23   his itinerary within two business days and he may not travel

24   outside of the United States.  And any other travel within the

25   United States would require Court permission.

1      Is there any problem with giving pretrial two days

2   notice of where he's headed?

3      MR. BUSCHEL:  No, Judge.

4      THE COURT:  Okay.  So with these little changes, he's

5   going to have to re-sign the conditions of release later,

6   before he leaves the courtroom.

7      MR. BUSCHEL:  May I, Judge?

8      THE COURT:  Yes.

9      MR. BUSCHEL:  How about the return?  Same thing?

10      THE COURT:  The return, within one business day after

11   he gets back he needs to let them know he's back.

12      MR. BUSCHEL:  I'll advise the Court that we have text

13   messaged the conditions with pretrial in Florida and the local

14   pretrial.  So --

15      THE COURT:  Okay.  That's fine.

16      I don't have you continuing to walk up here because I

17   stand on ceremony, but it's so the court reporter can get down

18   what you're saying.

19      MR. BUSCHEL:  I'm sorry.

20      THE COURT:  Paragraph (7)(s) on page 2 of the

21   conditions of release had a handwritten instruction that said,

22   quote, Avoid all contact with victims of or witnesses to crimes

23   charged, except through counsel, close quote.  But there is

24   actually a place where that can be checked off on the form and

25   it's paragraph (7)(g), and it says:  Avoid all contact,

1  directly or indirectly, with any person who is or may be a

2  victim or witness in the investigation or prosecution, and that

3  wasn't checked.  But I'm going to modify the order by checking

4  it.

5          I will note that the paragraph says, Avoid contact

6  with all witnesses or victims, including.  So does the

7  government wish me to specify anyone in particular at this

8  time?

9          MR. MARANDO:  Your Honor, we provided Mr. Stone,

10  through counsel, with a list of witnesses that he should stay

11  away from and have no contact with.  If Your Honor wishes to

12  memorialize that in an order, we would respectfully ask that it

13  be done under seal to protect their identities.

14          THE COURT:  I think if he has the list, I think you

15  should file the list for me under seal and that will be

16  incorporated in his conditions of release.

17          MR. MARANDO:  Yes, Your Honor.

18          THE COURT:  All right.  So I just want to reiterate

19  that this condition means that while the defense team may reach

20  out through counsel and talk to government witnesses, there's

21  no prohibition on that whatsoever.  It is a condition of your

22  release that you may not contact any of those individuals or

23  any individuals that you believe are witnesses in the case in

24  person, by mail, by phone, electronically -- that includes

25  emails, text messages, instant messenger, Instagram, WhatsApp,

1       or any other encrypted or unencrypted app.  And the ban on

2       contacting them directly or indirectly also includes

3       communication through any intermediary other than counsel who's

4       entered an appearance in this case.

5                   Is that understood, Mr. Stone?

6                   THE DEFENDANT:  Yes, Your Honor.

7                   THE COURT:  Now, I've got another motion in front of

8       me dealing with the Speedy Trial Act, it's docket 19.  It's a

9       consent motion seeking designation as a complex case.  I wasn't

10      sure, after I read the indictment, that the charges were

11      particularly contemplated, and I'm not entirely certain that I

12      understand how the volume, multiple tranches of materials

13      described in the pleading bear on the charges or will affect

14      the timing of the trial on the charges.  But given the

15      government's representation, the need to deal with all the

16      material obtained in the search warrant, the defendant's right

17      to review everything that you're giving them, and the parties'

18      agreement that the statutory limits are not appropriate, then I

19      agree as well.  And I'm going to grant this motion,

20      particularly given the fact that the defendant is on his

21      personal recognizance.

22                  So, I think, in light of that, that everyone is

23      telling me that they think it's premature to set a trial date,

24      is that correct?

25                  MR. MARANDO:  Your Honor, we have had discussions

1    with defense counsel about this, sort of playing out how we

2    loosely and roughly see the schedule here.  In light of, also,

3    allowing defense counseling sufficient time to review the

4    discovery in this case so they can prepare a defense and advise

5    their client properly, we have discussed, before coming to

6    court today, having our next status hearing roughly 45 days

7    out, which will give defense enough time to review the

8    discovery in this matter, which is voluminous.  We checked with

9    your courtroom deputy and the 14th is available.

10              THE COURT:  The 14th of what?

11              MR. MARANDO:  Of March.  My apologies, Your Honor.

12   The 14th of March.

13              Going forward and sort of playing this out, we were

14   expecting then to -- after the 14th, to come back for a status

15   hearing after that, maybe, roughly, 60 days out, which we would

16   then believe discovery would be complete, or nearly complete,

17   and then another status hearing after that where we could

18   discuss dispositive motions.

19              In the end, Your Honor, this would lead us to a trial

20   date somewhere in the fall.  I know that that's a little bit of

21   a rough timeframe, but we were hoping maybe October, around

22   that timeframe, Your Honor.  It just depends how defense

23   counsel gets through the discovery and is able to have enough

24   time to adequately advise their client.

25              THE COURT:  All right.  I have to say, when I went

1    through the similar exercise in my mind, I thought July sounded

2    pretty good, or possibly August.  I'm not saying the fall is

3    unreasonable.  But I don't think we should wait 45 days and

4    then 60 days to even set a motion schedule.

5           I'm sure you don't know at this moment the answer to

6    all these questions, but just standing here right now,

7    Mr. Buschel, do you know if you anticipate filing any

8    dispositive motions or other preliminary motions?

9           MR. BUSCHEL:  It is too early to determine, Judge,

10   respectfully.  I need to see the discovery.  I mean, this

11   representation is so -- so if the Court allows, I think at the

12   status, at the subsequent -- the next status conference I can

13   really answer the Court's question.

14          THE COURT:  My goal would be, at the next status

15   hearing, to try to come up with a schedule at least for the

16   filing of motions.  And dispositive motions may be different

17   than motions to suppress.  I don't know if there will be

18   motions to suppress.  I think that the parties should

19   anticipate that when we come up with the trial date, that we're

20   going to need to back up from there.

21          And in all likelihood we'll need a jury

22   questionnaire.  And I've just been through this process and I

23   thought it worked extremely smoothly and extremely well, and I

24   think that would be to everybody's advantage in this case.  So

25   we need to bake that in.  And we had that done before the trial

1    date, so everyone had an opportunity to read all the responses

2    and make strikes for cause, even before we brought the jurors

3    in for follow-up questioning.  So I would intend to do

4    something like that again.

5              I'm happy to set the next status conference for 45

6    days, if everybody thinks that that's how much time you need to

7    at least get your hand around what it is that you have to get

8    your hands around.  And so -- what date did you tell me?

9              MR. MARANDO:  March 14th, Your Honor, was available

10   to the Court.

11             THE COURT:  All right.  We'll set it then for

12   March -- what did we just say?  14th?  14th at 9:30 a.m.  Or

13   are you flying from Florida that morning?  You would like to

14   make it 10 a.m.?  11 a.m.?

15             MR. BUSCHEL:  If the Court please, sometime -- 1:30

16   kind of gives us that option.  I don't know if you want it in

17   the morning, Judge.  10 a.m. is fine.

18             THE COURT:  I like to do things in the morning, then

19   if problems arise, we still have the afternoon.

20             MR. BUSCHEL:  10 a.m., Judge.

21             THE COURT:  Come in the night before and enjoy D.C.

22             All right.  Okay.  Then that's what we'll do.  We

23   won't set any other schedules at this point.  But I think the

24   parties should confer before you come back next time with some

25   thought about how we proceed as we go forward thereafter.

1          Okay.  You guys can be seated.  I have a couple more

2    issues I want to raise.  This is a case that's already received

3    and is going to continue to receive a great deal of public

4    attention.  I expect the lawyers to familiarize themselves with

5    Local Criminal Rule 57.7(b) that talks about the conduct of

6    attorneys in criminal cases, and to comply with its provisions.

7          One provision, 57.7(b)(1), provides that it's the

8    duty of the lawyer or law firm not to release or authorize the

9    release of information or opinion which a reasonable person

10   would expect to be disseminated by means of public

11   communication in connection with a pending or imminent criminal

12   litigation with which the lawyer or lawyer firm is associated,

13   if there's a reasonable likelihood that such dissemination will

14   interfere with a fair trial or otherwise prejudice the due

15   administration of justice.  And this goes for both sides,

16   obviously.

17         Rule 57.7(c) contains specific guidance for what

18   should be done in widely publicized cases.  In this case, I'm

19   sure it's no surprise to anyone, that I've noticed that there's

20   already been considerable publicity, fueled in large part by

21   extrajudicial statements of the defendant himself.  I recognize

22   that the arrest and indictment were public and the defendant

23   may have justifiably felt the need to get his story out.  But

24   there's no question that at this point he certainly had that

25   opportunity.

1          And since this is a criminal proceeding and not a

2     public relations campaign, and since it's incumbent upon me to

3     ensure the fairness and the dignity of these proceedings, and I

4     need to take into consideration the interest and the safety of

5     the government, the defendant, the witnesses, the jurors, the

6     court personnel, and the public, I believe that it behooves

7     counsel and the parties to do their talking in this courtroom

8     and in their pleadings and not on the courthouse steps or on

9     the talk show circuit.

10          And so to that end, I am considering -- I have not

11     yet decided -- that in light of my obligation to safeguard the

12     defendant's right to a fair trial, and also to ensure that we

13     will have the ability to seat a jury that has not been tainted

14     by pretrial publicity in this matter, of issuing a written

15     order, pursuant to Local Rule 57.7(c).  It would require all

16     parties and counsel for both sides to, quote, refrain from

17     making further statements to the media or in public settings

18     that are substantially likely to have a materially prejudicial

19     effect on the case, close quote.  It would not be directed at

20     one side or the other, it would be directed to both.

21          It would not be a bar on all public relations,

22     activities or press communications, but only those related to

23     this case.  A party could discuss foreign relations,

24     immigration or Tom Brady as much as they wanted.  I would be

25     happy to hear from either side right now if you wanted to note

1    any objections on the record at this time.  But that will not

2    be necessary because I'm going to give you each an opportunity

3    to tell me what your position is in writing.  And if you're

4    opposed, to provide me the reasons why I shouldn't do this in

5    writing.  And those submissions will be due next Friday,

6    February 8.

7              As you consider what your position might be, there

8    are a few things that I would encourage everyone to think

9    about.  First, I think it's important that the defendant should

10   be aware that to the extent any of his public pronouncements

11   turn out to be inconsistent with each other or bear on the

12   facts of the case in any way, the Office of Special Counsel

13   will be free to introduce any of them as evidence against him

14   at trial.

15             Also, I want to recognize and I think it's important

16   that this defendant has a legitimate interest in exercising his

17   First Amendment rights.  But he's also affirmed that he has an

18   interest in exercising his constitutional right to have a trial

19   and to put the government to its proof.  And it's my

20   responsibility to ensure that he has a fair trial.  Right now,

21   notwithstanding the fact that the defendant may be well known

22   within certain circles, I believe that we will be able to seat

23   an unbiased jury, that doesn't have an opinion about the

24   allegations in this case.

25             But the problem is, while Mr. Stone may wish to be

1    free to disseminate his response to those allegations in his

2    public appearances, every time he does the media outlets may

3    feel constrained to reiterate in detail what the allegations

4    are in the indictment in response.

5              And so the upshot of treating the pretrial

6    proceedings in this case like a book tour could be that we end

7    up with a much larger percent of the jury pool that's been

8    tainted by pretrial publicity than we have now, and that's what

9    it's my job to balance here.  I want to say, again, I haven't

10   heard from both sides, I haven't made up my mind.  And I will

11   read and seriously consider anything either side submits.  But

12   that's what I'm looking to be enlightened about.

13             But now having heard all of that, I've covered every

14   issue I wanted to cover.  Is there anything that the government

15   wants to add or that I need to take up today?

16             MR. MARANDO:  Court's indulgence, Your Honor.

17             THE COURT:  All right.

18             (Pause.)

19             MR. MARANDO:  Thank you, Your Honor.  The only thing

20   that I can think of that is left, to have a formal speedy trial

21   determination made on the record.

22             THE COURT:  I think I said I granted your motion,

23   that this is a complex case.

24             MR. MARANDO:  Thank you, Your Honor.  That is all.

25   Thank you.

1            THE COURT:  All right.  Mr. Buschel, anything that I

2      need to take up today on behalf of the defendant?

3            MR. BUSCHEL:  No.  Thank you, Judge.

4            THE COURT:  Okay.  Well, then I'm going to ask you

5      all to stay here until we've finished with the revised

6      conditions of release.  And I need to sign them.  He's going to

7      need to sign them before he goes.

8            (Pause.)

9            THE COURTROOM DEPUTY:  Sir, please raise your right

10     hand.

11           Do you solemnly swear or affirm, under the pain and

12     penalty of perjury, that you will well and truly follow the

13     conditions of your release as set by the Court on this date?

14           THE DEFENDANT:  I do.

15                              *   *   *

CERTIFICATE OF OFFICIAL COURT REPORTER

I, JANICE DICKMAN, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenograph notes and is a full, true and complete transcript of the proceedings to the best of my ability.

Dated this 1st day of February 2019.


/s/_____

Janice E. Dickman, CRR, RMR
Official Court Reporter
Room 6523
333 Constitution Avenue NW
Washington, D.C. 20001