IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Case No.: 1:19-CR-00018-ABJ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROGER J. STONE, JR.,

    Defendant.
_____/

ROGER STONE'S RESPONSE
TO THE COURT'S OPPORTUNITY TO RESPOND TO THE POSSIBILITY
OF THE ENTRY OF AN ORDER UNDER LOCAL CRIMINAL RULE 57.7 (b) and (c)

The Defendant, and his counsel, appreciate the Court's invitation to comment on the possible entry of what is known, colloquially, as a "gag order." Defendant's counsel will comply with Local Rule 57.7(b) "Conduct of Attorneys in Criminal Cases." But, for the reasons set forth below, any Order under the Rule 57.7(c) provision, ("Orders in Widely Publicized or Sensational Cases") is opposed on First Amendment and void for vagueness and overbreadth grounds insofar as it may be applied to Defendant, Roger Stone. A Rule 57.7(c) Order applied to Mr. Stone's counsel would be opposed on void for vagueness and overbreadth grounds, but since any Order is only being considered, any objection would be premature.

A.    **The Guiding Principles: Prior Restraint**

Prior restraints on speech "are the most serious and least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976).

In *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991), the Court distinguished the ability of courts to curtail the speech of attorneys from that of other speakers. For attorneys, the

standard is "less demanding," than for non-lawyers. For non-lawyers, the standard is a "'clear and present danger' that a malfunction in the criminal justice system will be caused before a State may prohibit media speech or publication about a particular pending trial." *Id*. at 1071.

Roger Stone is entitled to speak as he wishes unless it can be established, by clear and convincing evidence, that a clear and present danger to the seating of an impartial jury is presented. In *Nebraska Press* the Court held it to be "clear" that "the barriers to prior restraint remain[ed] high and the presumption against its use continue[d] intact." 501 U.S. at 561, 570. The Court recognized the "problems inherent in meeting the heavy burden of demonstrating, in advance of trial, that without a prior restraint a fair trial would be denied." 427 U.S. at 569. "[I]t [was] not clear that further publicity … would so distort the views of potential jurors" that an impartial jury could not be empaneled. *Id*. One commentator has noted that "the practical impact of the rule announced by Chief Justice Burger is to outlaw all prior restraints in fair trial/free press cases." Goodale, James C., *The Press Ungagged: The Practical Effect on Gag Order Litigation of Nebraska Press Association v. Stuart*, 29 Stan.L.Rev. 497, 498 (1977).

So the markers are clear. Prior restraints are "presumptively void" (*United States v. Ford*, 830 F.2d 596, 598-99 (6th Cir. 1987)); the dangers must be a "'serious and imminent threat' of a specific nature" (*id*. at 599-600) (internal quotation omitted); there must be findings that "alternative measures would not" suffice. *Nebraska Press*, 427 U.S. at 565.

*Nebraska Press* identifies some of the measures which exist to address the relevant concerns. "[S]ensitive questioning of prospective jurors … to screen out those with fixed opinions as to guilt or innocence;" "clear instructions on the sworn duty of each juror to decide only on evidence presented in open court." 427 U.S. at 564.

Thus, while the Supreme Court has not addressed a prior restraint on a defendant's First Amendment rights, the guideposts are apparent: clear and present danger; narrowly drawn; no other alternatives; serious and imminent threat; no broader than necessary; strict scrutiny. Indeed, other than requiring due process and proof beyond a reasonable doubt in a criminal proceeding where life and liberty are at stake, no constitutional right is subjected to greater restrictions on government action than the protection of First Amendment rights and any effort to impose a prior restraint on those rights. *See also*, Erwin Chemerinsky, *Lawyers Have Free Speech Rights, Too: Why Gag Orders on Trial Participants Are Almost Always Unconstitutional*, 17 Loy.L.A.Ent.L.J. 311(1997).

**B.      Vagueness and Overbreadth Doctrines**

The vagueness doctrine requires that restrictions on speech and conduct give fair warning. *Connally v. General Const. Co.*, 269 U.S. 385, 391 (1926) ("a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."). The overbreadth doctrine requires precision in First Amendment situations. *Lewis v. City of New Orleans*, 415 U.S. 130 (1974).

Both doctrines are implicated in First Amendment restriction cases. An additional layer of First Amendment analysis arises from content based restrictions. Justice Marshall wrote in *Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92 (1972), "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Id.* at 95.

It is against this admixture of heightened scrutiny of any speech-limiting restrictions and the right of a person to speak his or her mind, that we turn to the Court's comments last week.

C.     **The Court's Expressed Concerns**

Last Friday the Court said, *inter alia*:

> And so to that end, I am considering – I have not yet decided – that in light of my obligation to safeguard the defendant's right to a fair trial, and also to ensure that we will have the ability to seat a jury that has not been tainted by pretrial publicity in this matter, of issuing a written order, pursuant to Local Rule 57.7(c). It would require all parties and counsel for both sides to, quote, refrain from making further statements to the media or in public settings that are substantially likely to have a materially prejudicial effect on the case, close quote. It would not be directed at one side or the other, it would be directed to both.
> It would not be a bar on all public relations, activities or press communications, but only those related to this case. A party could discuss foreign relations, immigration or Tom Brady as much as they wanted. I would be happy to hear from either side right now if you wanted to note any objections on the record at this time. But that will not be necessary because I'm going to give you each an opportunity to tell me what your position is in writing., And if you're opposed, to provide me the reasons why I shouldn't do this in writing. And those submissions will be due next Friday, February 8.

*See*, attached Exhibit A, pages 16-19 of the February 1, 2019 hearing transcript, the pages pertinent to this submission.

We know the Court is aware of all the constitutional issues, but we do not know exactly what the Court had in mind. Obviously our concerns extend to the entry of *any* 57.7(c) Order as to Mr. Stone.

If the Court is considering an Order like that issued in the Manafort case (Case No: 1:17-cr-00201-ABJ): "Ordered to refrain from making statements to the media or in public settings that pose a substantial likelihood of material prejudice to this case" (DE 38, p. 2), we respectfully submit that such an Order would be inconsistent with applicable law.

There should be no imposition of prior restraint on Mr. Stone's First Amendment free speech rights. The Court expressed its awareness that Mr. Stone's case is of interest to some

portions of the public, however supposition about the breadth and depth of this interest, and any possible impact on the seating of an impartial jury – a process still many months away – is not appropriate and, in any event, would be entirely speculative.

While those of us who have an interest in politics, law, and public affairs may suppose that press and electronic media coverage of the Special Counsel's investigation is important to, and eagerly consumed by, the entirety of the populace or more specifically to the entire pool of possible jurors in this case, it is not necessarily so. While Roger Stone may be familiar to those who closely follow American politics, he is hardly ubiquitous in the larger landscape of popular consciousness. An example of how limited and narrow his public presence is, is that Kim Kardashian has 59.5 *million* followers on Twitter. By contrast, Roger Stone has no Twitter account at all and, thus has no Twitter followers. On Instagram, Kim Kardashian has 126 *million* followers. Roger Stone's Instagram following amounts to 39 *thousand* subscribers.

Roger Stone is a writer and a speaker. With the exception of his occasional commentary on men's fashion, Mr. Stone's writing and speaking are exclusively and entirely directed towards political affairs and matters of public import involving the government and its officials. To foreclose Mr. Stone's exercise of his First Amendment rights on any subject would serve no compelling governmental interest. No evidence exists that would provide a clear and convincing basis for concluding that any of Mr. Stone's free speech exercise presents a clear and present danger to a fair trial and that no alternative is available to protect his right to a fair trial.

No order of this Court would silence the countless media entities and individuals who have, in some manner, reported on or opined about Mr. Stone and the events that led to his prosecution in this case. Indeed, the filing of a suit yesterday in this Court against Mr. Stone by Mr. Corsi (Case No.: 1:19-cv-00324) adds to the controversy and the coverage of Mr. Stone. To

silence a defendant who has demonstrably been the subject, and will continue to be the subject, of unrestrained comment, speculation, opinion and criticism by the press would be particularly constitutionally suspect.

Roger Stone has faith in the jury system and in the mechanics of jury selection which are designed to ensure a fair trial. Any attempt to foresee the future effect of free speech on jury selection is a hazardous endeavor. Curtailing speech based on conjecture or speculation about its possible prospective effect is inconsistent with the guarantees of the First Amendment.

**D.     Roger Stone**

While it is true that most criminal defendants do not wish to be heard, either publicly or in the course of their trial, Mr. Stone is not such a defendant. His work for more than 40 years has been talking and writing about matters of public interest. He has published a half dozen books, many stating controversial viewpoints. He has penned many hundreds of articles and has been the subject of many hundreds more, published in myriad publications. Whether it is his pursuit of a posthumous pardon for Marcus Garvey, or the style of his clothes, or the state of the Nation, Roger Stone is a voice.

Given these realities, a prior restraint of Roger Stone's free speech rights would be an unconstitutional violation of Stone's right to work, to pursue his livelihood and to be part of the public discourse.

## CONCLUSION

On Friday last, the Court said: "Right now, not-withstanding the fact that the defendant may be well known within certain circles, I believe that we will be able to seat an unbiased jury, that doesn't have an opinion about the allegations of this case." Transcript at p.18.

There is no reason, going forward, that the Court's belief should change. That first wave of publicity surrounding the indictment and the extraordinary early morning invasion and capture of Mr. Stone, inexplicably filmed by CNN, will subside. To be sure, the interest in this case will continue, but nothing compels the conclusion that the Court's present expressed confidence in seating an unbiased jury will, in months hence, be compromised by the press and/or Mr. Stone as we move forward.

The Court, speaking of 57.7(c), said: "I am considering – I have not decided. . . ." Transcript at p. 17. We respectfully submit that the Court should decide against any Rule 57.7(c) Order. Should the Court decide otherwise, we respectfully reserve our objections to any prior restraint on Mr. Stone. Should counsel be circumscribed beyond Rule 57.7(b), we reserve on that too.

                                                                    Respectfully submitted,

By: */s/ L. Peter Farkas*                                By: */s/Bruce S. Rogow*
L. PETER FARKAS                                          BRUCE S. ROGOW
**HALLORAN FARKAS & KITTILA, LLP**                       FL Bar No.: 067999
DC Bar No.: 52944                                        TARA A. CAMPION
1101 30th Street, NW                                     FL Bar: 90944
Suite 500                                                **BRUCE S. ROGOW, P.A**.
Washington, DC 20007                                     100 N.E. Third Avenue, Ste. 1000
Telephone: (202) 559-1700                                Fort Lauderdale, FL  33301
Fax: (202) 257-2019                                      Telephone: (954) 767-8909
pf@hfk.law                                               Fax: (954) 764-1530
                                                         brogow@rogowlaw.com
                                                         tcampion@rogowlaw.com
                                                                    *Admitted pro hac vice*


ROBERT C. BUSCHEL                                        GRANT J. SMITH
**BUSCHEL GIBBONS, P.A.**                                **STRATEGYSMITH, PA**
FL Bar No.: 006436                                       FL Bar No.: 935212
One Financial Plaza, Suite 1300                          401 East Las Olas Boulevard
100 S.E. Third Avenue                                    Suite 130-120
Fort Lauderdale, FL 33394                                Fort Lauderdale, FL 33301
Telephone: (954) 530-5301                                Telephone: (954) 328-9064
Fax: (954) 320-6932                                      gsmith@strategysmith.com
Buschel@BGlaw-pa.com                                              *Admitted pro hac vice*
         *Admitted pro hac vice*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 8, 2019, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record or pro se parties, via transmission of Notices of Electronic Filing generated by CM/ECF.

                                           BUSCHEL GIBBONS, P.A.

                                           ___/s/ Robert Buschel_____
                                           Robert C. Buschel

| *United States Attorney's Office for the District of Columbia* | *United States Depart of Justice Special Counsel's Office* |
|---|---|
| MICHAEL JOHN MARANDO<br>JONATHAN IAN KRAVIS<br>**U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA**<br>555 Fourth Street, NW<br>Washington, DC 20530<br>Telephone: (202) 252-6886<br>Fax: (202) 651-3393<br>michael.marando@usdoj.gov<br>jonathan.kravis3@usdoj.gov | AARON SIMCHA JON ZELINSKY<br>JEANNIE SCLAFANI RHEE<br>ANDREW DANIEL GOLDSTEIN<br>LAWRENCE RUSH ATKINSON<br>**U.S. DEPARTMENT OF JUSTICE SPECIAL COUNSEL'S OFFICE**<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br>Telephone: (202) 616-0800<br>Fax: (202) 651-3393<br>asjz@usdoj.gov<br>jsr@usdoj.gov<br>adg@usdoj.gov<br>lra@usdoj.gov |