UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Crim. Action No. 19-0018 (ABJ) |
| ROGER J. STONE, JR., | ) ) ) | |
| Defendant. | ) ) | |

**ORDER**

Defendant's Motion for Clarification will be denied because the order issued on February 21, 2019 is clear.

On March 1, defendant asked the Court to "clarify" that its order does not apply to what was described in the motion as the "imminent" re-release of a book defendant published in 2017, which had been augmented in January of 2019 with a new introduction that is critical of the ongoing investigation by the Office of Special Counsel. Def.'s Mot. and Mem. to Clarify Feb. 21, 2019 Min. Order [Dkt. # 52] (Sealed)/[Dkt. # 53] (Public) ("Def.'s Mot.") ¶ 6. The Court then ordered the defendant to file an additional submission "identifying the specific date of the 'imminent general release' of the book." Min. Order of Mar. 1, 2019.

On March 4, without providing any explanation for the misrepresentation in the motion, defendant informed the Court that the use of the word "imminent" had been a "misnomer" because the book is already for sale. Def.'s Resp. to Court's Min. Order of Mar. 1, 2019 [Dkt. # 55] ¶ 1. Indeed, the Introduction can be accessed online. *See* Govt's Notice regarding Statements by Def. [Dkt. # 54] ("Govt's Notice").

1

In either event, there is no question that the order prohibited and continues to prohibit the defendant from making any public statements, using any medium, concerning the investigation. It does not matter when the defendant may have first formulated the opinions expressed, or when he first put them into words: he may no longer share his views on these particular subjects with the world. *See* Tr. of Hr'g on Feb. 21, 2019 ("Tr.") [Dkt. # 43] at 51 ("You may continue to publish, to write, and to speak, and to be, as your lawyer put it, a voice, about any other matter of public interest[.] [N]ot this case, not the people in it. Not while you're under my supervision.").

The fact that the order exists at all is entirely the fault of the defendant; the Court did not impose any restrictions on his speech whatsoever until, as he put it, he "abused the latitude" the Court gave him, Tr. at 30, and he used his public platform in an incendiary and threatening manner. And any costs or consequences that will be occasioned by the Court's reiteration of this clear requirement at this late date are also solely attributable to the defendant, since he deliberately waited until public sales were not only "imminent," but apparently, ongoing, to inform the Court of the publication effort that had been underway for weeks.[1]

The defendant had multiple opportunities to bring his then-existing plan to disseminate his views about the Special Counsel to the Court's attention, including: in his response to the Court's solicitation of the parties' views on the entry of any media communication order, *see* Def.'s Feb. 8, 2019 Resp. to the Court's Opportunity to Respond to the Possibility of the Entry of an Order under

---

1   Defendant's March 4 submission gives rise to the impression that the March 1 motion – which purported to have been submitted "in an abundance of caution" because the defendant was "committed to complying with the February 21, 2019 Order," Def.'s Mot. ¶¶ 6–7, but was actually filed after publication was a *fait accompli* – was intended to serve as a means to generate additional publicity for the book.

Local Crim. R. 57.7(b) and (c) [Dkt. # 28] ("Def.'s Feb. 8 Resp.");[2] in response to the February 19 order to show cause; at the February 21 hearing on the order to show cause;[3] after the Court issued its ruling that day; or at any time during the week thereafter.  The defendant failed to do so, and he did not inform the Court that the Introduction in question would soon be, or was already, available online at amazon.com and Google Books.  *See* Govt's Notice.  Nor has the defendant informed the Court of any steps he took to stall or even inquire about the status of the book's release after the Court entered its order on February 21.[4]

Finally, the Court notes that the defense may have waived any right to complain that the restriction offends the Constitution.  Counsel for the defendant specifically proposed that the Court impose an order barring speech about the prosecution in the wake of the comments that the defendant himself had characterized as "improper," Notice of Apology [Dkt. # 38], and

---

[2]  The fact that a new introduction to defendant's book, which attacks the Special Counsel's investigation, had been sent to a publisher in January and was scheduled for release in February was not simply omitted from defendant's February 8 pleading; it was entirely inconsistent with the assurances that were included in the pleading:  "That first wave of publicity surrounding the indictment . . . will subside.  To be sure, the interest in this case will continue, but nothing compels the conclusion that the Court's present expressed confidence in seating an unbiased jury will, in months hence, be compromised by the press and/or Mr. Stone as we move forward."  Def.'s Feb. 8 Resp. at 7.

[3]  At the hearing, the defendant specifically disavowed any need to publicly discuss the case as a way of sustaining himself financially.  When the Court asked him, after he was sworn and voluntarily took the stand, "Is anybody paying you to speak about this case?" he answered, "No."

> THE COURT:  Okay.  So an order that you couldn't speak about this case wouldn't affect your ability to make a living?
>
> THE DEFENDANT:  That is correct.

Tr. at 13–14.

[4]  Defendant stated in his motion for clarification that the publisher had been made aware of the filing of the motion, *see* Def.'s Mot. ¶ 8, but that is difficult to square with the fact that the motion included inaccurate information concerning the timing of the book's release.

"egregious," Tr. at 12, 13, 19, and the lawyer did not seek an exception for a recently revised introduction to a book that was in the hands of retailers as he spoke.

> THE COURT:  How would you craft an order that he would find clear enough to follow?
>
> [COUNSEL FOR THE DEFENDANT]: . . . [H]e should not be talking about this Court.  He should not be talking about the special prosecutor.  He should not be impugning the integrity of the Court.  That's what should be done.  That's the nature of the order I'm suggesting.
>
> There are a lot of reasons why somebody may feel like they should be talking about things like that.  But you and I know, as officers of the court, . . . this is not appropriate.  And that, if we're going to have an order, that's what I ask the Court to do.

Tr. at 41–42; *see also* Tr. at 42 ("What I'm saying is if Your Honor is asking me to craft an order, then that is what the order should say:  This Court should not be criticized by Mr. Stone. The government should not be impugned by Mr. Stone.  The integrity of this case should not be impugned by Mr. Stone. . . . [T]hat is the kind of nature of an order that I would suggest the Court should craft that would address the specific needs that we're talking about.").

Since the order, which was endorsed by the defense, does not require clarification, and the proposed clarification is not consistent with the order itself, the motion for clarification [Dkt. # 52] is hereby **DENIED**.

It is **FURTHER ORDERED** that defendant must file a status report on March 11, 2019 detailing his efforts to come into compliance with the Court's rulings.

Also, given the delay in bringing this matter to the Court's attention, and the unexplained inconsistencies between the statements made to the Court on March 1 and March 4, the defendant must supplement the record by March 11, 2019 with the following information:

- Defendant must produce any records, including the December 17, 2018 agreement referenced in the Declaration of Anthony Lyons [Dkt. # 55-1] ¶ 4, and any other contracts, letters, emails or other communications with the publisher, detailing the

- terms and schedule for the release of the new edition of the book with the January 2019 Introduction, including all records reflecting when retailers could begin offering the book for sale and records reflecting the date when the book would be first offered for sale by online vendors such as amazon.com and Google Books.

- Defendant must inform the Court of the exact date the book was first made available for purchase online, and the Introduction was made available for viewing, at amazon.com and Google Books or any other online vendor.

- Defendant must inform the Court whether and when he became aware of: the fact that the new edition of the book had been printed by the publisher; the fact that copies of the book had been shipped from the printer; the fact that copies were available at bookstores; the fact that retail bookstores were selling the book; and the fact that the book was available for purchase or viewing online.

- Defendant must specify the date and content of any Instagram or social media posts, including deleted posts, or other public statements he made from January 15 to the present concerning or publicizing the release of the book, including any statements announcing the date the book would be published or available for purchase.

- Defendant must describe all steps he took, or communications he had with the publisher or any retailer, if any, concerning the release or sale of the book between the entry of the order on February 21, 2019 and March 1, 2019, and he must produce any records reflecting those communications.

**SO ORDERED**.

/s/ Amy B. Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: March 5, 2019