```
 1                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2

 3     United States of America,      ) Criminal Action
                                      ) No. 19-CR-018
 4                    Plaintiff,      )
                                      ) STATUS CONFERENCE
 5     vs.                            )
                                      ) Washington, DC
 6     Roger Jason Stone, Jr.,        ) March 14, 2019
                                      ) Time:  10:00 a.m.
 7                    Defendant.      )
     _____
 8
                     TRANSCRIPT OF STATUS CONFERENCE
 9                            HELD BEFORE
                THE HONORABLE JUDGE AMY BERMAN JACKSON
10                   UNITED STATES DISTRICT JUDGE
     _____
11
                            A P P E A R A N C E S
12
     For the Plaintiff: Jeannie Sclafani Rhee
13                      Aaron Simcha Jon Zelinsky
                        U.S. DEPARTMENT OF JUSTICE
14                      Special Counsel's Office
                        950 Pennsylvania Avenue, NW
15                      Washington, DC 20530
                        (202) 616-0800
16                      Email:  Jsr@usdoj.gov
                        Email:  Asjz@usdoj.gov
17                      Michael John Marando
                        Jonathan Ian Kravis
18                      U.S. ATTORNEY'S OFFICE FOR THE
                          DISTRICT OF COLUMBIA
19                      555 Fourth Street, NW
                        Washington, DC 20530
20                      (202) 252-7068
                        Email:  Michael.marando@usdoj.gov
21                      Email:  Jonathan.kravis3@usdoj.gov

22     For the Defendant: Robert C. Buschel
                          BUSCHEL & GIBBONS, P.A.
23                        One Financial Plaza
                          100 S.E. Third Avenue
24                        Suite 1300
                          Ft. Lauderdale, FL 33394
25                        (954) 530-5301
                          Email: Buschel@bglaw-pa.com
```

```
 1    For the Defendant:     **Grant J. Smith**
                             STRATEGYSMITH, P.A.
 2                           401 East Las Olas Boulevard
                             Suite 130-120
 3                           Fort Lauderdale, FL 33301
                             (954) 328-9064
 4                           Email:  Gsmith@strategysmith.com
                             **L. Peter Farkas**
 5                           HALLORAN FARKAS & KITTILA LLP
                             1101 30th Street, NW
 6                           Suite 500
                             Washington, DC 20007
 7                           (202) 559-1700 ext 102
                             Email:  Pf@hfk.law
 8

 9    Also present:          FBI Case Agent Michelle Taylor
                             FBI Case Agent Curtis Heide
10    _____

11    Court Reporter:        Janice E. Dickman, RMR,CRR
                             Official Court Reporter
12                           United States Courthouse, Room 6523
                             333 Constitution Avenue, NW
13                           Washington, DC  20001
                             202-354-3267
14

15

16

17

18

19

20

21

22

23

24

25
```

1    THE COURTROOM DEPUTY: Your Honor, good morning.
2    This morning we have criminal case number 19-18,
3    United States of America v. Roger Stone. Mr. Stone is present
4    in the courtroom, Your Honor. The pretrial services agency
5    present for these proceedings today is Miss Shuck.
6    Will counsel for the parties please approach the
7    lectern, identify yourself for the record.
8    MS. RHEE: Good morning, Your Honor. Jeannie Rhee
9    for the United States. And at counsel table with me is
10   Jonathan Kravis and Michael Marando from the D.C. U.S.
11   Attorney's Office, Aaron Zelinsky from the Special Counsel's
12   Office, and two FBI agents who are the case agents in this.
13   THE COURT: All right. Good morning.
14   MR. BUSCHEL: Good morning, Judge. Robert Buschel,
15   Peter Farkas, and Grant Smith on behalf of Mr. Roger Stone.
16   THE COURT: All right. Good morning.
17   All right. The first order of business is that the
18   last time we were here, I amended the defendant's conditions of
19   release. And that's a Court order and he's bound by it. But
20   we did not actually execute a signed amended version. And so I
21   now have the conditions of release with the new condition
22   added, and just want to get defendant's signature on that
23   document.
24   Do you want to wait until we've added the date? Is
25   that --

1                    THE COURTROOM DEPUTY:  We can do it now.

2                    THE COURT:  All right.  So we'll add the date of the

3        next appearance before we do it.  But that is something I want

4        to complete before he leaves the courtroom today.

5                    I received the submission from the defense that I

6        asked for related to the media communication issue.  I don't

7        intend to dwell on it this morning.  I have the submission

8        under advisement.

9                    According to what was provided to me, Mr. Stone

10       reports that he doesn't remember a lot of the dates and times

11       about what happened, but it does appear to be clear that he was

12       aware, at the time the order was issued, that there was a

13       publication that could potentially violate the order underway,

14       and he informed counsel that day.

15                   The lawyers apparently did not know, given the fact

16       that some were specifically hired to deal with the First

17       Amendment issues and they were having a hearing about his

18       ability to publish.  I suppose they probably should have

19       inquired.  I don't know what questions, if any, he was asked

20       when he returned to counsel table and I ruled.  But the record

21       does reflect that they tried to get on top of the issue

22       thereafter.

23                   My reaction to the explanation for the failure to

24       notify me immediately, that it would have been awkward, I'm not

25       sure that's a very strong response from an experienced

1    litigator and officer of the court.  You're all admitted
2    pro hoc, except for Mr. Farkas, and we are happy to have you,
3    but I encourage you to take note that if your client is subject
4    to an order entered by a judge in this courthouse, or you
5    become aware of circumstances that could be viewed as
6    noncompliant or make compliance impossible or problematical,
7    the last thing you should worry about is whether telling the
8    Court would be an unconformable experience.
9               There's just no exception in our local rules or in
10   the ethical rules that call for candor with the tribunal
11   that -- there's no exception for awkward.  And I also think
12   it's important to know that being candid with the tribunal is
13   not inconsistent with your obligation that you're all also
14   bound by, which is to zealously represent your client.  There
15   are a lot of lawyers here doing a lot of work, and I feel like
16   we are wasting a lot of their time and effort and the
17   defendant's resources on collateral matters that have already
18   taken more time than they deserve.
19              Now, at the end of the day, that's no one's fault but
20   his own.  But my February 21st order stands.  I expect
21   compliance.  But I think the goal of today's proceeding is to
22   focus everyone's attention on more productive activities.  And,
23   therefore, I think the most prudent thing to do today is to set
24   a schedule for motions and for trial, and that's the goal of
25   these proceedings.

1               Before I get to that, I guess I want to inquire what
2     the status is of discovery and whether everything has been
3     produced, or if there's documents you're still waiting for?
4               MS. RHEE:  So, the government has representations to
5     make with respect to the discovery.  But as to the submissions,
6     before we completely close out the inquiry of the Court and the
7     defendant's response on March 11th, the government just has a
8     couple of observations just to note for the Court on that.
9               THE COURT:  All right.  And I have it under
10    advisement, I haven't closed it out one way or the other at
11    this point.  There's nothing pending.  What was pending was the
12    motion for clarification, which I ruled on.  But I'm
13    considering whether anything else needs to be pending.
14              MS. RHEE:  And there are a couple of things to bring
15    to the Court's attention on that.
16              THE COURT:  All right.
17              MS. RHEE:  But as to discovery and the scheduling,
18    the parties did confer yesterday and got confirmation and an
19    agreement as to where the state of play is.
20              As to discovery, the government began production in
21    the first week of February and has made three significant
22    productions, totaling approximately 9 terabytes of data.  At
23    this point, that represents nearly the entirety of the
24    discovery that the government is obligated to produce.  There
25    remain only a few outstanding items, including just a few of

1    the remaining items of the devices from Mr. Stone that had been
2    taken pursuant to the court-ordered search warrant.
3            So at this point in time, the government has made its
4    discovery obligations, and there is a schedule with respect to
5    the few remaining items.
6            THE COURT:  All right.  Thank you.
7            MS. RHEE:  And that with respect to the submission,
8    what the government just noted and wants to note for the Court,
9    between the Court's modified order entered on February 21st and
10   before the initial March 1st submission by the defendant asking
11   for clarification in light of the documents that were produced
12   to this Court on the 11th, what the government wants to note is
13   that at least by February 26th, 2019, as set forth in Exhibit
14   D, Document 3 of the defendant's submission, is that the
15   defendant, as well as his defense team, or at a least one
16   member of the defense team, had communications with the
17   publisher where the publisher disclosed to the defendant that
18   most of the 13- to 14,000 copies of the book in question,
19   including the new introduction, had been shipped and were
20   available for sale in the bookstores.  And the publisher noted,
21   as of that date, February 26th, they had not been selling
22   particularly well so far, but hopefully that would change.
23           In response to that communication from the publisher,
24   the defense team asked whether or not the impression that they
25   had, that the publication date of March 1st was inaccurate, and

1    the reply was that it was February 19th and there was an ebook
2    available as of that date as well.  And so at a minimum, the
3    record should reflect that as of that date, as reflected in
4    that document that was submitted to the Court, that information
5    was known to the defendant.  And that --
6            THE COURT:  And so what they told me on March 1st,
7    that it was imminent, you're saying that there was evidence
8    that they knew before then that it was already accomplished?
9            MS. RHEE:  That -- that's what the document, on its
10   face, seems to represent.
11           THE COURT:  All right.
12           MS. RHEE:  And then, furthermore, Your Honor, when
13   you look at the March 11th submission with respect to certain
14   representations that are then set out about the defendant's
15   state of knowledge, again, that document seems to belie that,
16   where Mr. Stone, for example, represents in that March 11th
17   submission that he did not have any direct communications with
18   the publisher between February 21st and March 1st.  Document 3
19   of Exhibit D seems to contradict that.
20           Similarly, when he states that he does not have any
21   recollection of when he specifically knew that the book was
22   available at the bookstores or any recollection of when he
23   specifically knew they were being sold at the retail
24   bookstores.  And those are representations made on page 3 of
25   the submission.  Again, the attached document seems to

1   contradict that.

2            THE COURT:  All right.  As I said at the beginning, I
3   have it all under advisement.  I really haven't had the
4   opportunity, since the time of the filing, to study the
5   exhibits in any detail.  And so I'll continue to review them
6   and determine if I have further questions for the defense.  But
7   I want to put that aside at the moment.

8            So, from the defense, is there anything you want to
9   add to her -- to counsel's description of the state of
10  discovery at this point?

11           MR. BUSCHEL:  As to the state of discovery, Judge, we
12  agree, we're still waiting for a lot of documents.  And I don't
13  know if the Court needs for me to describe what terabytes and
14  how much that is, but it seems from --

15           THE COURT:  I know it's a lot.

16           MR. BUSCHEL:  It's a lot.  I can give a graphic
17  example.  Our eDiscovery person, who is getting online and
18  creating our own platform, says that if we piled the papers, it
19  would be -- we could pile it as high as the Washington Monument
20  twice.  And so we're creating a system where we can do some
21  searchability and examine these documents.  And the government
22  has actually labeled some documents "hot documents," which has
23  a specific meaning.  But we're doing our best and there's more
24  to come.

25           So that's why we suggested -- I don't know if you

1    want me to weigh in on a trial date, but that's why the last
2    time we asked for an October trial date, in order for our team
3    to prepare and get through this discovery.
4           THE COURT:  All right.  And I certainly understand
5    that you can't just accept the representation that the
6    documents identified as hot are the only ones you need to look
7    at.  You need to go through what you have received,
8    notwithstanding the fact that the allegations here are
9    relatively circumscribed.  I know you want to go through what
10   you received.
11          And I know I've indicated to the government before,
12   if they're aware of anything that is exculpatory within the
13   terabytes, just providing that volume of material isn't what I
14   think is enough to comply with your obligations.  I think you
15   need to direct their attention to anything that you believe
16   fits within the category of *Brady* material.
17          I -- with respect to the trial date, I came in
18   prepared with two proposals, one of which I believe may be dead
19   on arrival, which was August 5 for trial.  As I counted
20   backwards from August 5th, to give us time for the pretrial
21   conference and the motions in limine and the jury questionnaire
22   and the hearings on the dispositive motions and the hearings on
23   the motions to dismiss, I think it's doable, but it's
24   compressed.  But it would have required you to start drafting
25   motions to dismiss in about two or three weeks.

1                   So, I don't want to be ridiculous about this.  And my
2      second proposal -- but I would like to lock in on it -- is
3      November 5th.  October is not actually going to work for my
4      calendar.  And so what I would like to do, I want everybody to
5      know from right now what we're counting towards.  Does November
6      5th work for both sides as a trial date in this case?
7                   I'm assuming -- the government said five to eight
8      days, but with jury selection and not knowing at this point --
9      and I'm not going to ask you because you don't need to know
10     whether you're going to put on witnesses or not -- I think
11     we're talking about at least a two-week trial.  So, you need to
12     look at your calendars with that in mind.  So does November 5th
13     work for the defense?
14                  MR. BUSCHEL:  Yes, ma'am.
15                  THE COURT:  Does that work for the government?
16                  MS. RHEE:  Yes, Your Honor.
17                  THE COURT:  Okay.  That's going to be the trial date
18     in this case.  I would like to, then -- I'm going to issue an
19     order that tells you what needs to be contained in a pretrial
20     statement.  It will be -- it will require exhibits, witnesses
21     to be identified, jury instructions.  It's a lot of work and a
22     lot of -- and I'm happy so far that the parties seem to be
23     talking to each other pretty productively -- it will require
24     efforts to come to joint conclusions about these things, and if
25     you can't, then you tell me what your positions are.  But you

1   need to communicate.

2           The pretrial statement -- and you'll get a paper
3   order that tells you what needs to be in it -- will be due on
4   August 30th, and we'll have the pretrial conference and the
5   jury filling out the written questionnaires and the motions --
6   the strikes based on the written questionnaires.  We'll take
7   care of all of that in September.

8           So I was looking at the week of September 16 for the
9   pretrial conference.  And you're welcome to get out whatever
10  you need to get out to look at your calendars.

11          MR. BUSCHEL:  That's fine.  Yes.

12          THE COURT:  But how about the Tuesday of that week,
13  at 9:30 in the morning for a pretrial conference?

14          MR. BUSCHEL:  That's fine.

15          THE COURT:  All right.  Does that work for the
16  government?  I think that's September 17.

17          MS. RHEE:  Yes, Your Honor.

18          THE COURT:  Okay.  I think I can add things into the
19  schedule, like when a proposed -- I take it that you're going
20  to want to do a jury questionnaire.

21          MR. BUSCHEL:  Yes, ma'am.

22          THE COURT:  Okay.  I think it was -- it was very
23  effective and useful in the last high-profile case that I had
24  here.  We didn't go to trial, but we went a long way towards
25  it.  We got candid answers, we were able to excuse a lot of

1   people for cause, and I think it would have made the actual
2   jury selection process much more efficient and fair.  So I want
3   to do it again.
4          In terms of a motion schedule, I can see doing this
5   in two ways.  I think the easiest thing to do right now that
6   doesn't require as much delving into the discovery is going to
7   be the dispositive motions that you've indicated you want to
8   file and the motions regarding the grand jury.  So, 30 days for
9   motions to dismiss, is that appropriate?  Would you be
10  available to do that?
11         MR. BUSCHEL:  Yes, Judge.
12         THE COURT:  So, the motions to dismiss in this case
13  will be due on April 12th.  Oppositions -- give the government
14  three weeks, May 3rd.  Reply May 17.  And so that expands the
15  schedule a little bit more than what the local rules require,
16  which I think is a little ungenerous.
17         With respect to motions to suppress, which may relate
18  to the search, may relate to other things, I think we can have
19  that -- some of that briefing going on on a parallel track.
20  But, it gives you a little more time to get started.  Can you
21  file any motions to suppress by May 3rd?
22         MR. BUSCHEL:  I would ask for 90 days to be able to
23  review that.
24         THE COURT:  All right.  That's April, May, June.
25  Well, with the whole briefing schedule, that, I think, gets us

1    a little crunched with -- we're going to need motions --
2    probably going to be motions in limine and things like that.
3    So I would like to be sitting in hearings and ruling on these
4    issues by June, and early July, if possible.  So, how about May
5    10?
6            MR. BUSCHEL:  Very well, Judge.
7            THE COURT:  All right.  You're being very agreeable.
8            May 10 any motions to suppress.  Oppositions May
9    31st.  Reply June 14th.  And I'm going to have to sit down with
10   my calendar and figure out hearing dates on all of this.  If
11   you get them and they don't work for your schedules, all you
12   need to do is contact Mr. Haley and we'll work on something
13   else.  Or I will give him dates, have him call both sides and
14   make sure they work before I docket them.  But, if I end up
15   setting a date that doesn't work, all you need to do is let him
16   know.
17           All right.  That is, really, what I think we need to
18   accomplish today.  Are there any other issues that you want to
19   raise on behalf of Mr. Stone?
20           MR. BUSCHEL:  Yes.  If it pleases the Court, Judge,
21   there is an intervention lawsuit by the media relating to
22   discovery in this matter.  And I did put my -- I'm asking the
23   Court's permission, if we can file pro hoc in that case, or do
24   you want us to file motions as if it's a new case?
25           THE COURT:  It is a separate case.  We've got it teed

1    up as a miscellaneous matter.  But I will grant your oral
2    motion to appear pro hoc in those cases.
3              MR. BUSCHEL:  Very well.  Thank you.
4              THE COURT:  All right.  Is there anything else that
5    you want me to take up today?
6              MR. BUSCHEL:  No, Judge.
7              THE COURTROOM DEPUTY:  All the pro hoc in here can go
8    into the miscellaneous?
9              THE COURT:  Yes.
10             THE COURTROOM DEPUTY:  Thank you.
11             THE COURT:  Is there anything further the government
12   needs me to take up this morning?
13             MS. RHEE:  No, Your Honor.
14             THE COURT:  Okay.  Thank you very much.
15             But wait.  We don't have another status date.  I
16   think we should probably have one to make sure that all the
17   discovery we're talking about is proceeding.  It may be even
18   shorter than this one, given the briefing schedule we've set
19   up; I don't know.  I think probably another 45 days for the
20   next status conference?  Does that make sense?
21             MS. RHEE:  No objection from the government, Your
22   Honor.
23             THE COURT:  Okay.
24             MS. RHEE:  The one thing we would also just note for
25   the record, or seek for purposes of the record, and the parties

1    also conferred on this as well, is that speedy trial be tolled,
2    given that the trial date that's being set is an accommodation
3    of the defendant's request for time with respect to the
4    discovery and that --
5             THE COURT:  I think I already granted your motion
6    that this is a complex case.
7             MS. RHEE:  Correct.  But for purposes of the blocks
8    of the dates in which we want to have the clock tolled, what we
9    would ask, at least at this time, is we would like to toll for
10   the next status and then we can make sure that the record
11   properly reflects the basis for it.
12            THE COURT:  All right.  And as soon as a motion is
13   filed, that stops the clock anyway.  But I take it, to the
14   extent this schedule is inconsistent with the schedule set out
15   in the Speedy Trial Act, the defendant waives that and is
16   seeking this much of an extension as an opportunity to review
17   all of the discovery?
18            MR. BUSCHEL:  We are.
19            THE COURT:  All right.  And I find it is in the
20   interest of justice to do that.
21            Let's set another status hearing.  I mean, by this
22   point the briefing is going to be started, but I think it will
23   be useful.  How about the week of April 29th?
24            MR. BUSCHEL:  29th is agreeable.
25            THE COURT:  Do I have anything that week?

```
1                THE COURTROOM DEPUTY:  Sentencing Tuesday, two civil
2     status conferences Wednesday.
3                THE COURT:  Do you have a preference for any day that
4     week?
5                What time is the sentencing on Tuesday?
6                THE COURTROOM DEPUTY:  One second, Your Honor.
7                9:30.
8                THE COURT:  All right.  So why don't we say 11 a.m.
9     for the next status conference.  That gives you the opportunity
10    to come up that morning, if you want, I think.
11               Tuesday, April 30th.  And I will exclude the time
12    between now and April 30th.
13               MR. BUSCHEL:  Very good.
14               THE COURT:  All right.
15               MR. BUSCHEL:  Thank you, Judge.
16               THE COURT:  Thank you, everybody.
17               THE COURTROOM DEPUTY:  He has to sign this.
18               THE COURT:  I'll stay here until he does.  Do I have
19    to sign it, too?
20               THE COURTROOM DEPUTY:  Yes.
21               THE COURT:  All right.
22               THE COURTROOM DEPUTY:  I'll get him to sign it first.
23               Please stand and rise your right hand.
24               Do you solemnly swear or affirm that you will well
25    and truly follow the conditions of your release as set forth by
```

```
1     the Court this date, and that you do so under the pain and
2     penalty of perjury?
3              THE DEFENDANT:  I do.
4              THE COURTROOM DEPUTY:  Okay.  You can be seated.
5     I'll make you a copy of this.
6              Judge, we're done.
7              THE COURT:  All right.  Thank you.
8                            *   *   *
```