

# Special Counsel Investigations: History, Authority, Appointment and Removal

Updated March 13, 2019

**Congressional Research Service**

https://crsreports.congress.gov

R44857



**Congressional Research Service**
Informing the legislative debate since 1914

**SUMMARY**

R44857

March 13, 2019

**Cynthia Brown**
Legislative Attorney

**Jared P. Cole**
Legislative Attorney

# Special Counsel Investigations: History, Authority, Appointment and Removal

The Constitution vests Congress with the legislative power, which includes authority to establish federal agencies and conduct oversight of those entities. Criminal investigations and prosecutions, however, are generally regarded as core executive functions assigned to the executive branch. Because of the potential conflicts of interest that may arise when the executive branch investigates itself, there have often been calls for criminal investigations by prosecutors with independence from the executive branch. In response, Congress and the U.S. Department of Justice (DOJ) have used both statutory and regulatory mechanisms to establish a process for such inquiries. These frameworks have aimed to balance the competing goals of independence and accountability with respect to inquiries of executive branch officials.

Under the Ethics in Government Act of 1978, for example, Congress authorized the appointment of "special prosecutors," who later were known as "independent counsels." Under this statutory scheme, the Attorney General could request that a specially appointed three-judge panel appoint an outside individual to investigate and prosecute alleged violations of criminal law. These individuals were vested with "full power and independent authority to exercise all investigative and prosecutorial functions and powers of the Department of Justice" with respect to matters within their jurisdiction. Ultimately, debate over the scope, cost, and effect of the investigations (perhaps most notably the Iran-Contra and the Whitewater investigations) resulted in the law's expiration and nonrenewal in 1999.

Following the lapse of these statutory provisions, DOJ promulgated regulations authorizing the Attorney General (or, if the Attorney General is recused from a matter, the Acting Attorney General) to appoint a "special counsel" from outside the federal government to conduct specific investigations or prosecutions that may be deemed to present a conflict of interest if pursued under the normal procedures of the agency. Special counsels are not subject to "day-to-day supervision" by any official and are vested "within the scope of his or her jurisdiction, the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney."

The independent nature of these investigations has raised constitutional questions about the propriety of the appointment and removal mechanisms provided for the officials leading the inquiries. These concerns were addressed by the Supreme Court in the 1988 case of *Morrison v. Olson*, which upheld the constitutionality of the independent counsel statute. The reasoning of that opinion has been challenged, however, and the Court's subsequent analysis of related issues in the 1997 case of *Edmond v. United States* and the 2010 case *Free Enterprise Fund v. Public Accounting Oversight Board* did not apply the standard enunciated in *Morrison*. The constitutional status of a statutory framework similar to the independent counsel statute is thus subject to debate. Several bills introduced in the 116th Congress (including S. 71 and H.R. 197, which merge aspects of two preceding bills introduced in the 115th Congress, S. 1735 and S. 1741) would statutorily insulate a special counsel from removal, echoing aspects of the independent counsel statute's provisions. Whether such proposals would withstand constitutional challenge today might ultimately turn on the continued vitality of the analysis applied in *Morrison*.

# Contents

Historical Background on the Use of Independent Investigations of Alleged Wrongdoing............ 2

Special Prosecutors and Independent Counsels, as Authorized Under the Ethics in
  Government Act ......................................................................................................................... 3
  Appointment Process ................................................................................................................ 4
    Role of the Attorney General ............................................................................................... 5
    Role of the Court................................................................................................................... 6
  Scope of Authority ................................................................................................................... 6
  Removal .................................................................................................................................... 7
  Termination of Independent Counsel Inquiries........................................................................ 7
  Statutory Reauthorizations and Eventual Lapse of the Independent Counsel Statute.............. 8

Legal Authority of Special Counsels Under Current Law ................................................................ 8
  DOJ Special Counsel Regulations............................................................................................ 10
    Appointment and Selection by the Attorney General or the
      Acting Attorney General................................................................................................... 10
    Scope of Jurisdiction and Authority.....................................................................................11
    Oversight and Removal........................................................................................................ 14
  Review and Conclusion of Special Counsel Inquiries ............................................................. 15

Appointing and Removing a Special Counsel: Legal Considerations............................................. 16
  Appointment of a Special Counsel........................................................................................... 17
  Removing a Special Counsel .................................................................................................... 19
    Removing a Special Counsel Pursuant to the Regulations .................................................. 19
    Legal Effect of the Regulations ........................................................................................... 20
  Proposed Legislation to Restrict the Ability to Remove a Special Counsel............................ 22
    Presidential Authority to Oversee Executive Branch Officers............................................ 23
    Legislation to Establish For-Cause Removal Protection for a Special Counsel ............... 27
    Legislation to Establish Judicial Review of a Removal Decision........................................ 30
    Retroactive Application of Legislation to Insulate a Special Counsel ................................ 33

Conclusion...................................................................................................................................... 34

## Tables

Table 1. Glossary of Terms........................................................................................................... 2

## Contacts

Author Information......................................................................................................................... 34

The Constitution gives no direct role to Congress in conducting federal law enforcement.[1] While Congress enjoys the legislative power under Article I of the Constitution, which includes substantial authority to investigate the executive branch pursuant to its oversight function,[2] criminal investigations and prosecutions are generally considered core executive functions entrusted with the executive branch under Article II.[3] Because of the potential conflicts of interest that may arise when the executive branch investigates itself, however, there have often been calls for prosecutors with independence from the executive branch.[4] In response, Congress and the U.S. Department of Justice (DOJ) have used both statutory[5] and regulatory[6] mechanisms to establish a process for such inquiries. These responses have attempted, in different ways, to balance the competing goals of independence and accountability with respect to inquiries of executive branch officials. This report first analyzes the use of *special prosecutors* and *independent counsels* that were authorized under now-expired provisions of the Ethics in Government Act of 1978,[7] as well as the use of *special counsels* that are currently authorized by DOJ regulations.[8] A glossary of terms at the beginning of the report briefly defines these italicized terms (see **Table 1**).[9]

The report continues with an examination of various legal questions relevant to these efforts. As a threshold matter, some have challenged the appointment of a special counsel under the current regulations as unconstitutional under the Appointments Clause.[10] More broadly, designing a statutory framework for criminal investigations and prosecutions with independence from the executive branch raises questions about how this can be achieved consistent with the requirements of the Constitution. For instance, the Supreme Court upheld the constitutionality of the since-expired independent counsel statute in the 1988 case of *Morrison v. Olson*,[11] but has not

---

[1] The U.S. Constitution's structure establishes the principle of "separation of powers," which assigns particular functions to each of the three branches of government. *See generally* Buckley v. Valeo, 424 U.S. 1, 123 (1976) (per curiam) ("This Court has not hesitated to enforce the principle of separation of powers embodied in the Constitution when its application has proved necessary for the decisions of cases or controversies properly before it.").

[2] *See* U.S. CONST. art. I; Clinton v. City of New York, 524 U.S. 417, 437-41 (1998); McGrain v. Daugherty, 273 U.S. 135 (1927) (describing congressional oversight authority as "an essential and appropriate auxiliary to the legislative function"); Watkins v. United States, 354 U.S. 178, 187 (1957) ("The power of the Congress to conduct investigations is inherent in the legislative process. That power is broad.").

[3] *See* Morrison v. Olson, 487 U.S. 654, 691 (1988) ("There is no real dispute that the functions performed by the independent counsel are 'executive' in the sense that they are law enforcement functions that typically have been undertaken by officials within the Executive Branch."); *id.* at 706 (Scalia, J., dissenting) ("Governmental investigation and prosecution of crimes is a quintessentially executive function.").

[4] *See generally* Kimberly Robinson, *Comey Firing Could Wake a Constitutional Wolf*, BLOOMBERG LAW (May 11, 2017), https://bol.bna.com/comey-firing-could-wake-a-constitutional-wolf/; George D. Brown, *The Ethics Backlash and the Independent Counsel Statute*, 51 RUTGERS L. REV. 433 (1999); Niles L. Godes & Ty E. Howard, *Independent Counsel Investigations*, 35 AM. CRIM. L. REV. 875 (1998).

[5] *See* Ethics in Government Act of 1978, P.L. 95-521, §§ 601-04, 92 Stat. 1824, 1867-75, as *amended by* P.L. 97-409, 96 Stat. 2039 (1983), P.L. 100-191, 101 Stat. 1293 (1987), P.L. 103-270, 108 Stat. 732 (1994).

[6] *See* 28 C.F.R. pt. 600.

[7] *See* P.L. 95-521, §§ 601-04, 92 Stat. at 1867-75, as *amended by* P.L. 97-409, 96 Stat. 2039 (1983).

[8] *See* 28 C.F.R. pt. 600.

[9] Other methods of oversight, including investigations by congressional committees or under the authority of agency inspectors general, may also be available with respect to executive branch investigations, but are beyond the scope of this report.

[10] *See* "Appointment of a Special Counsel."

[11] *See* Morrison v. Olson, 487 U.S. 654, 696-97 (1988).

---

applied the reasoning of *Morrison* in subsequent cases raising related issues.[12] The constitutional status of a statutory framework analogous to the independent counsel statute is thus subject to debate.[13] Several bills introduced in the 116th Congress (including S. 71[14] and H.R. 197,[15] which merge aspects of two preceding bills introduced in the 115th Congress, S. 1735 and S. 1741[16]) statutorily insulate a special counsel from removal, echoing aspects of the independent counsel statute's provisions. Whether such proposals would withstand constitutional challenge today might ultimately turn on the continued vitality of the analysis applied in *Morrison*.

### Table 1. Glossary of Terms

| | |
|---|---|
| **Independent Counsel** | Now-expired provisions of the Ethics in Government Act of 1978 (P.L. 95-521, as amended) authorized the Attorney General to request that a three-judge panel within the federal judiciary appoint an independent counsel. Independent counsels had more independence than regular DOJ officials and employees, though the breadth of their investigations led to debate and ultimately to the expiration of the statutory authorization. |
| **Special Counsel** | DOJ's general administrative hiring authority (28 C.F.R. Part 600) authorizes the Attorney General to appoint special counsels. Special counsels exercise more independence than regular DOJ officials and employees, but because the Attorney General generally appoints, supervises, and may remove special counsels, they are considered to be less independent than independent counsels were. (The term "special counsel," when used in the context of independent criminal investigations of executive officials, is entirely distinct from the Office of Special Counsel, an independent federal agency, which investigates certain federal personnel practices.) |
| **Special Prosecutor** | The Attorney General historically has appointed special prosecutors to investigate scandals involving public officials. The term "special prosecutor" was also initially used to describe independent investigations authorized by the Ethics in Government Act, though the term was later changed under that statute to "independent counsel." Historically, these appointments were used to provide for the investigation of any related allegations without political interference. |

# Historical Background on the Use of Independent Investigations of Alleged Wrongdoing

In part to counter perceptions that executive officials suspected of criminal wrongdoing may be subject to different standards than individuals outside the government, independent investigations have sometimes been used to determine whether officials have violated the law.[17] The

---

[12] *See* discussion *infra* "Presidential Authority to Oversee Executive Branch Officers."

[13] *See, e.g.*, *Special Counsels and the Separation of Powers: Hearing on S. 1735 & S. 1741 Before the S. Judiciary Comm.*, 115th Cong. (2017).

[14] The Special Counsel Independence and Integrity Act, S. 71, 116th Cong. (2019), reintroduces S. 2644 from the 115th Congress. *See* Special Counsel Independence and Integrity Act, S. 2644, 115th Cong. (2017).

[15] Special Counsel Independence and Integrity Act, H.R. 197, 115th Cong. (2019).

[16] Special Counsel Independence Protection Act, S. 1735, 115th Cong. (2017); Special Counsel Integrity Act, S. 1741, 115th Cong. § 2(b), (e) (2017).

[17] *See* Elliot L. Richardson, *Special Counsels, Petty Cases*, N.Y. TIMES (June 5, 1995), http://www.nytimes.com/1995/06/05/opinion/special-counsels-petty-cases.html; Jim Mokhiber, *A Brief History of the Independent Counsel Law*, FRONTLINE (May 1998), https://www.pbs.org/wgbh/pages/frontline/shows/counsel/office/history.html (describing the use of "special prosecutors" to investigate the Teapot Dome scandal of the 1920s and tax scandals of the 1950s).

government has used a range of options to conduct these types of inquiries: special prosecutors, independent counsels, and special counsels. Executive branch officials have noted, however, that "there is no perfect solution" to achieving the goal of avoiding potential conflicts or the appearance thereof that may arise as a result of the executive branch investigating its own officials.[18]

While special prosecutors investigated executive officials prior to the 1970s, the events commonly known as Watergate led to perhaps the most famous use of an independent investigation in U.S. history.[19] Specifically, the break-in and burglary of the Democratic National Committee Headquarters at the Watergate Hotel in 1972 led to widespread allegations of wrongdoing by senior officials in the executive branch and calls for the appointment of a prosecutor who could conduct an investigation independent of political interference.[20] In the midst of the Watergate controversy, Elliot Richardson, whose nomination to be Attorney General was being considered by the Senate Committee on the Judiciary, agreed to name an independent special prosecutor to pursue the Watergate allegations.[21] Once confirmed by the Senate, the Attorney General, under his own authority, appointed Archibald Cox as special prosecutor for the Watergate investigation in 1973.[22] The President subsequently ordered DOJ officials to fire the special prosecutor later that year,[23] leading to public outcry, the appointment of another special prosecutor, and, ultimately, the initiation of impeachment proceedings by Congress.[24] Following these events, Congress enacted a new mechanism—discussed in the following section—for the use of special prosecutors who would be appointed by a three-judge panel upon the request of the Attorney General.[25]

# Special Prosecutors and Independent Counsels, as Authorized Under the Ethics in Government Act

Congress enacted the Ethics in Government Act of 1978 out of a broad intent "to preserve and promote the integrity of public officials and institutions."[26] The statute addressed a number of concerns about the ethical behavior of some public officials in the wake of the Watergate scandal.[27] Title VI of the statute (hereinafter "the independent counsel statute") established a

---

[18] *See* Office of Special Counsel, 64 Fed. Reg. 37,038 (July 9, 1999) (codified at 28 C.F.R. pt. 600) (introducing regulations to replace the expired implementing regulations of the independent counsel statute).

[19] *See generally* Joseph S. Hall, Nicholas Pullen, & Kandace Rayos, *Independent Counsel Investigations*, 36 Am. Crim. L. Rev. 809 (1999).

[20] *See* Mokhiber, *supra* note ***.

[21] *Nomination of Elliot L. Richardson, of Massachusetts, to be Attorney General: Hearing Before the S. Comm. on the Judiciary*, 93d Cong. 4-7, 18-20 (1973).

[22] Establishing the Office of Watergate Special Prosecution Force, 38 Fed. Reg. 14,688 (June 4, 1973).

[23] DOJ regulations "gave the Watergate Special Prosecutor very broad power to investigate and prosecute offenses arising out of [the events comprising Watergate]," and provided that the special prosecutor could only be removed "for extraordinary improprieties on his part." *See* Nader v. Bork, 366 F. Supp. 104 (D.D.C. 1973), *vacated sub nom.* Nader v. Levi, No. 1954-73, 1975 U.S. Dist. LEXIS 16791 (D.D.C. 1975) (concluding that the discharge of the special counsel was unlawful under the regulations).

[24] *See* Mokhiber, *supra* note ***.

[25] *See* Ethics in Government Act of 1978, P.L. 95-521, §§ 601-04, 92 Stat. 1824, 1867-75.

[26] *Id.*, 92 Stat. at 1824. For discussion of a challenge to the constitutionality of these provisions, see discussion *infra* "*Morrison v. Olson*."

[27] In part, the statute required disclosure of certain financial interests by specified government employees; established

mechanism for the appointment of individuals to lead independent investigations and prosecutions in certain circumstances.[28] The statute originally designated these individuals as "special prosecutors"[29] and later renamed them as "independent counsels."[30]

Two of the most commonly known examples of appointments of independent counsels under the statute involved incidents known generally as Iran-Contra and Whitewater.[31] In 1986, Lawrence E. Walsh[32] was appointed as independent counsel[33] to investigate potential criminal misconduct of government officials related to the sale of arms to Iran and alleged diversion of profits from the sale to support the "the military activities of the Nicaraguan contra rebels" in violation of federal law.[34] That investigation resulted in criminal charges for 14 individuals, most of whom were convicted, though some convictions were overturned on various grounds.[35] In 1994, Kenneth Starr[36] was appointed as independent counsel[37] to investigate potential violations of federal criminal or civil law related to President Clinton or First Lady Hillary Rodham Clinton's relationship with Madison Guaranty Savings and Loan Association, Whitewater Development Corporation, or Capital Management Services, as well as any allegations arising out of that investigation.[38] That investigation led to a myriad of charges for a number of individuals, but did not include indictments of the President or First Lady.[39]

## Appointment Process

Appointment of independent counsels under the statute occurred in two steps, requiring the involvement of both the Attorney General and a panel of federal judges.

---

the Office of Government Ethics within the executive branch; and provided criminal regulation of certain outside employment and lobbying activities by former government officials. P.L. 95-521, §§ 101-503, 92 Stat. at 1824-67.

[28] *Id.* §§ 601-04, 92 Stat. at 1867-75.

[29] *See id.* § 601, 92 Stat. at 1867.

[30] *See* Ethics in Government Act Amendments of 1982, P.L. 97-409, § 2(a)(1)(A), 96 Stat. 2039, 2039.

[31] *See generally Records of Independent Counsels*, Nat'l Archives & Records Admin., https://www.archives.gov/research/guide-fed-records/groups/449.html (last updated Aug. 15, 2016).

[32] Walsh formerly served as a federal judge, private litigator, deputy attorney general, and negotiator in peace talks for the Vietnam War. *See* Neil A. Lewis, *Lawrence E. Walsh, Prosecutor in Iran-Contra Scandal, Dies at 102*, N.Y. Times (Mar. 20, 2014), https://www.nytimes.com/2014/03/21/us/politics/lawrence-e-walsh-iran-contra-prosecutor-dies-at-102.html?_r=0.

[33] *See* 28 C.F.R. § 601.1.

[34] Lawrence E. Walsh, Final Report of the Independent Counsel for Iran/Contra Matters, Vol. I: Investigations and Prosecutions (Aug. 4, 1993), https://archive.org/stream/WalshReport/Walsh%20Report%20volume%201%20Investigations%20and%20Prosecutions#page/n0/mode/2up.

[35] *Id.* at xiv-xv.

[36] Starr formerly served as a law professor, private litigator, federal appellate judge, and as Solicitor General. *Bio of Kenneth Winston Starr, J.D.*, Baylor Univ. (Feb. 15, 2010), https://www.baylor.edu/mediacommunications/news.php?action=story&story=69086. He was later succeeded by Robert W. Ray and Julie F. Thomas as independent counsels related to that investigation. *See Records of Independent Counsel Kenneth I. Starr/Robert Ray/Julie Thomas: 1994-2004*, Nat'l Archives & Records Admin., https://www.archives.gov/research/investigations/starr (last updated Dec. 7, 2016).

[37] 28 C.F.R. § 603.1.

[38] *Id.*

[39] Robert Ray, Final Report of the Independent Counsel *in re* Madison Guaranty Savings & Loan Association (Jan. 5, 2001), https://www.gpo.gov/fdsys/pkg/GPO-ICREPORT-MADISON/content-detail.html; Neil A. Lewis, *Final Report By Prosecutor on Clintons is Released*, N.Y. Times (Mar. 21, 2002), http://www.nytimes.com/2002/03/21/us/final-report-by-prosecutor-on-clintons-is-released.html.

## Role of the Attorney General

The independent counsel statute generally directed the Attorney General to conduct a preliminary investigation upon receiving information about potential wrongdoing by certain officials in the executive branch or from presidential campaign committees.[40] If, within 30 days of receiving such information, the Attorney General determined that the information was specific and from a credible source,[41] the Attorney General was required to conduct a preliminary investigation for a period of up to 90 days.[42] The statute did not require the Attorney General to acknowledge or notify any other parties that such information had come to his attention, but did require that the Attorney General inform the court that he had commenced a preliminary investigation.[43]

The conclusions reached in that initial investigation determined whether an independent counsel would be appointed to investigate the underlying allegations further.[44] The statute required that the Attorney General request appointment of a special prosecutor by the special division of a federal court (discussed below) under three sets of circumstances. First, if the 90-day window for the preliminary investigation passed without a determination that further investigation or prosecution was not warranted, the Attorney General was required to request the appointment by the court.[45] Second, if the Attorney General's initial investigation determined that further investigation or prosecution was warranted, the Attorney General was also required to request the appointment by the court.[46] Finally, if the preliminary investigation indicated that further action was not warranted, but additional information was subsequently revealed which led the Attorney General to determine that further investigation or prosecution was indeed warranted, the Attorney General was mandated to conduct a preliminary investigation based on that information.[47]

Following that investigation, the statute required the Attorney General to seek appointment of an independent counsel under the same circumstances—*i.e.*, if no determination had been made within 90 days or if the Attorney General determined further investigation was warranted.[48] The Attorney General's decision to request an appointment under the statute was not subject to judicial review.[49] While the Attorney General was not authorized under the statute to appoint the

---

[40] 28 U.S.C. § 591. The individuals subject to investigation generally included the President; Vice President; designated heads of federal agencies; certain high-level officials in the Executive Office of the President; certain senior executive officials in DOJ, the Central Intelligence Agency, or the Internal Revenue Service; and officers of campaign committees for the President. *See id.* § 591(b). Other individuals, including Members of Congress, could be investigated under certain circumstances as well. *See id.* § 591(c). The statute allowed for investigations of potential violations of "any Federal criminal law other than a violation classified as a Class B or C misdemeanor or an infraction." *See id.* § 591(a).

[41] *Id.* § 592(d).

[42] *Id.* § 592(a).

[43] *Id.* § 592(a)(1).

[44] If the Attorney General determined from the initial investigation that "there were no reasonable grounds to believe that further investigation [was] warranted," he or she was required to notify the three-judge panel, which would then have no authority to appoint a special prosecutor for the allegations. *Id.* § 592(b)(1). The Attorney General was required to provide a summary of the information received and the results of the preliminary investigation. *Id.* § 592(b)(2).

[45] *Id.* § 592(c)(1)(B).

[46] *Id.* § 592(c)(1)(A).

[47] *Id.* § 592(c)(2).

[48] *Id.*

[49] *Id.* § 592(f).

independent counsel, he was required to provide the court with "sufficient information to assist" the court in the selection of the appointed individual and to define the jurisdiction of the inquiry.[50]

## Role of the Court

While the Attorney General conducted the initial investigation to determine whether an independent investigation was warranted, the independent counsel statute required that a special division of the U.S. Court of Appeals for the D.C. Circuit (D.C. Circuit), composed of three federal judges or Justices, appoint the independent counsel.[51]

The Chief Justice of the U.S. Supreme Court assigned three federal judges or Justices to that division for two-year assignments.[52] The statute's provisions regarding assignment of the three-judge panel required that the panel include a judge from the D.C. Circuit and that not more than one judge or Justice be from any single court.[53] Any judge or Justice serving in the special division of the court that appointed the independent counsel was barred from participating in any judicial proceeding involving the independent counsel while he or she was still serving in that position or any proceeding involving the exercise of the independent counsel's official duties.[54]

Based on recommendations from the Attorney General regarding the selection and jurisdiction of the independent counsel, the three-judge panel had the final authority to make the appointment and define the prosecutorial jurisdiction.[55] The court was expressly barred from appointing "any person who holds or recently held any office of profit or trust under the United States."[56]

## Scope of Authority

"[W]ith respect to all matters in [the] independent counsel's prosecutorial jurisdiction," Congress granted the independent counsel "full power and independent authority to exercise all investigative and prosecutorial functions and powers of the Department of Justice, the Attorney General, and any other officer or employee of the Department of Justice . . . ."[57] Examples of the independent counsel's enumerated authorities included

- conducting investigations and grand jury proceedings;
- engaging in judicial proceedings, including litigation and appeals of court decisions;
- reviewing documentary evidence;
- determining whether to challenge the use of testimonial privileges;
- receiving national security clearances, if appropriate;
- seeking immunity for witnesses, warrants, subpoenas, and other court orders;

---

[50] *Id*. § 592(d).

[51] *Id*. § 593(a) (cross-referencing 28 U.S.C. § 49).

[52] *Id*. § 49.

[53] *Id*. § 49(d).

[54] *Id*. § 49(f).

[55] *Id*. § 593(b).

[56] *Id*. § 593(b)(2).

[57] *Id*. § 594(a).

- obtaining and reviewing any tax return; and
- carrying out prosecutions in court, including filing indictments.[58]

The independent counsel could request DOJ assistance in the course of his or her investigation, including access to materials relevant to the jurisdiction of the inquiry and the necessary resources and personnel to perform his or her assigned duties.[59]

## Removal

Other than impeachment, the independent counsel could be subject to removal "only by the personal action of the Attorney General and only for good cause, physical or mental disability . . ., or any other condition that substantially impairs the performance of such independent counsel's duties."[60] In other words, the independent counsel was generally not subject to the control and oversight of any other official within the executive branch.[61] If the Attorney General exercised his removal authority, he or she was required to notify the special division of the court responsible for the initial appointment and the Committees on the Judiciary of both the House of Representatives and the Senate, identifying the reasons for removal.[62]

## Termination of Independent Counsel Inquiries

The inquiry led by the independent counsel under the statute could be terminated under two methods. First, the statute directed that the office of the independent counsel would terminate upon notification by the independent counsel to the Attorney General that the investigation and any subsequent prosecutions had been completed.[63] Second, the statute permitted the special division of the court—by its own choice or by the recommendation of the Attorney General—to terminate the office at any time if the investigation had been completed or sufficiently completed, allowing DOJ to formally complete the inquiry under its own processes.[64] In either case, the independent counsel was required to submit a report to the special division of the court detailing the work completed.[65] The report was required to include "a description of the work of the independent counsel, including the disposition of all cases brought."[66]

---

[58] *Id*.

[59] *Id*. § 594(d).

[60] *Id*. § 596(a)(1). For a discussion of a challenge to the constitutionality these provisions, see discussion *infra* "*Morrison v. Olson*."

[61] The standard of removal "for good cause" indicates that the independent counsel could not be removed at will, but rather for reasons related to the specific performance of his or her assigned duties. *See* Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 502-03 (2010) (describing the "good cause" standard as an "unusually high standard" that includes willful violations of law, willful abuse of authority, or failure to comply with rules without reasonable justification). *But see* Morrison v. Olson, 487 U.S. 654, 692 (1988) (explaining that the independent counsel statute's "good cause" requirement for removal nonetheless allows the Attorney General "ample authority to assure that the counsel is competently performing his or her statutory responsibilities in a manner that comports with the provisions of the Act").

[62] 28 U.S.C. § 596(a)(2).

[63] *Id*. § 596(b)(1). If the investigation or prosecutions were not fully completed, but were sufficiently completed to allow DOJ to complete them under normal processes, the independent counsel could also terminate the inquiry. *Id*.

[64] *Id*. § 596(b)(2).

[65] *See id*. § 596(b).

[66] *Id*. § 594(h)(1)(B).

## Statutory Reauthorizations and Eventual Lapse of the Independent Counsel Statute

When the independent counsel statute was originally enacted in 1978, Congress provided that its authority would lapse five years after enactment.[67] Investigations that had already started pursuant to the provisions were permitted to continue, but no new investigations could be initiated at that time.[68] Rather than allow the statute to lapse, Congress reauthorized the law, with some amendments, several times. It was reauthorized in 1983[69] and 1987,[70] and remained in effect until 1992, when Congress allowed the law to expire. The statute was again reauthorized in 1994, following concerns related to the investigation of the Whitewater controversy during the interim years.[71] However, concerns over whether the independent counsel possessed too much power, which arose after the extensive independent counsel investigations of the Iran-Contra affair and the Whitewater controversy, resulted in the law's ultimate expiration and nonrenewal in 1999.[72]

# Legal Authority of Special Counsels Under Current Law

Following the expiration of the independent counsel statute, DOJ promulgated regulations in 1999, which are currently still in effect, to establish procedures for the appointment of special counsels pursuant to the Attorney General's general administrative hiring authority.[73] DOJ described these regulations as "strik[ing] a balance between independence and accountability in certain sensitive investigations."[74] DOJ acknowledged at the time the regulations were promulgated, however, that "there is no perfect solution" to achieving that goal.[75]

Thus far, it appears the special counsel regulations have been invoked infrequently.[76] In 1999, shortly after the regulations were promulgated, the Attorney General appointed former U.S. Senator John Danforth as special counsel to investigate events related to the government actions that occurred six years earlier at the Branch Davidian compound in Waco, Texas.[77] The special counsel's investigation found no wrongdoing on the part of federal law enforcement officials.[78]

In May 2017, Deputy Attorney General Rod Rosenstein—acting in place of Attorney General Jeff Sessions, who had recused himself from the investigation—issued a publicly-available order (public order) appointing former Federal Bureau of Investigation Director Robert S. Mueller III as special counsel.[79] Rosenstein indicated in the public order that the appointment had been made

---

[67] Ethics in Government Act of 1978, P.L. 95-521, § 601, 92 Stat. 1824, 1867-73 (then codified at 28 U.S.C. § 598).

[68] *Id.*

[69] Ethics in Government Act Amendments of 1982, P.L. 97-409, 96 Stat. 2039 (1983).

[70] Independent Counsel Reauthorization Act of 1987, P.L. 100-191, 101 Stat. 1293 (1987).

[71] Independent Counsel Reauthorization Act of 1994, P.L. 103-270, 108 Stat. 732 (1994).

[72] *See generally supra* notes ***.

[73] 28 C.F.R. pt. 600.

[74] *See* Office of Special Counsel, 64 Fed. Reg. 37,038 (July 9, 1999) (codified at 28 C.F.R. pt. 600).

[75] *See id.*

[76] Matt Zapotosky, *Explaining the Precedent for and Role of a Special Counsel*, CHI. TRIBUNE, May 19, 2017, at 11.

[77] Lorraine Adams, *Reno Asks Danforth to Run Waco Probe*, WASH. POST, Sept. 8, 1999, at A5.

[78] Jim Yardley, *A Special Counsel Finds Government Faultless at Waco*, N.Y. TIMES, July 22, 2000, at A1.

[79] OFFICE OF DEPUTY ATT'Y GEN., ORDER NO. 3915-2017, APPOINTMENT OF SPECIAL COUNSEL TO INVESTIGATE RUSSIAN

pursuant to general statutory authority to manage DOJ investigations, but directed that the investigation would be subject to the agency's regulations governing the scope and administration of special counsel investigations.[80] Specifically, the public order directed the special counsel to investigate efforts of the Russian government "to influence the 2016 election and related matters."[81] DOJ later issued a non-public memorandum that set forth in more detail the scope of the investigation and definition of the special counsel's authority.[82] That memorandum explained that the public order "was worded categorically in order to permit its public release without confirming specific investigations involving specific individuals."[83]

It should be noted that the Attorney General also possesses general statutory authority to appoint DOJ staff to conduct or coordinate particular investigations.[84] DOJ has used this authority previously to appoint individuals who were referred to as "special counsels" to investigate particular matters.[85] This authority differs from the special counsel regulations because it involves assignment of an internal agency official rather than an individual from outside the government.[86] For example, in 2003, then-Deputy Attorney General James Comey (acting in place of then-Attorney General John Ashcroft, who had recused himself from the investigation) used this statutory authority to appoint Patrick Fitzgerald to lead an investigation of whether White House or other federal officials unlawfully leaked the identity of a Central Intelligence Agency officer to a reporter.[87] While referred to as a special counsel, Fitzgerald was serving as a U.S. Attorney when named to lead the investigation, precluding an appointment under the special counsel regulations.[88] While an individual referred to as a "special counsel" thus may be appointed under either the general statutory authority or under the specific special counsel regulations, those named under the regulations might be viewed as possessing more independence, as they are appointed from outside the agency and are insulated by the regulations from removal except for cause.

---

Interference with the 2016 Presidential Election and Related Matters (May 17, 2017), https://www.justice.gov/opa/press-release/file/967231/download (citing authority under 28 U.S.C. §§ 509, 510, and 515).

[80] *Id*.

[81] *Id*.

[82] Memorandum from Rod J. Rosenstein, Acting Attorney Gen., to Robert S. Mueller, III, Special Counsel (Aug. 2, 2017) (Government's Response in Opposition to Motion to Dismiss at Attachment C, United States v. Manafort, No. 17-cr-201-1 (D.D.C. filed Apr. 2, 2018)). For a discussion on this non-public memorandum, see discussion *infra* "Scope of Jurisdiction and Authority."

[83] *Id*. at 1.

[84] 28 U.S.C. §§ 509, 510, 515.

[85] *See* Government's Response in Opposition to Motion to Dismiss at n.2, United States v. Manafort, No. 17-cr-201-1 (D.D.C. filed Apr. 2, 2018). A number of "special counsels" have been appointed under this authority prior to the promulgation of the current regulatory framework. *See, e.g.,* Stephen Labaton, *Reno Is Said To Choose New Yorker As Counsel*, N.Y. Times (Jan. 20, 1994), https://www.nytimes.com/1994/01/20/us/reno-is-said-to-choose-new-yorker-as-counsel.html; *Justice in the Inslaw Case*, N.Y. Times (Dec. 7, 1991), https://www.nytimes.com/1991/12/07/opinion/justice-in-the-inslaw-case.html; David Johnston, *The 1992 Campaign: The House; Counsel to Review House Overdrafts*, N.Y. Times (Mar. 21, 1992), https://www.nytimes.com/1992/03/21/us/the-1992-campaign-the-house-counsel-to-review-house-overdrafts.html; David Johnston, *Prosecutor Who Battled Corruption*, N.Y. Times (Oct. 17, 1992), https://www.nytimes.com/1992/10/17/us/prosecutor-who-battled-corruption.html.

[86] 28 C.F.R. § 600.3(a).

[87] Letters from James B. Comey, Acting Attorney General, to Patrick J. Fitzgerald, U.S. Attorney (Dec. 30, 2003 and Feb. 6, 2004), https://www.justice.gov/archive/osc/documents/2006_03_17_exhibits_a_d.pdf.

[88] *Id.*; *see also* 28 C.F.R. § 600.3 ("The Special Counsel shall be selected from outside the United States Government.").

DOJ may also task other arms of the Justice Department—such as the Office of the Inspector General—to investigate high-profile, sensitive, and resource-intensive matters regarding "the Department's compliance with certain legal requirements and [internal] policies and procedures."[89] For example, recently, in response to concerns raised by some Members of Congress with respect to "certain prosecutorial and investigative determinations made by the [Department of Justice] in 2016 and 2017,"[90] Attorney General Sessions considered, but declined to pursue, a separate special counsel inquiry related to allegations of potential misconduct within the Department, noting that special counsel appointments are "by design, . . . reserved for use in only the most 'extraordinary circumstances.'"[91] Such circumstances, according to Sessions, require the Attorney General to determine that "'the public interest would be served by removing a large degree of responsibility for the matter from the Department of Justice.'"[92] Instead, the Attorney General indicated that DOJ's Inspector General has been tasked with reviewing the actions that the Members had suggested be the subject of the second special counsel inquiry, including allegations about DOJ's compliance with legal requirements and internal policies.[93] Instead, the Attorney General announced that he had tasked John W. Huber, U.S. Attorney for the District of Utah, to lead the investigation into those allegations, emphasizing that Huber would be working "from outside the Washington, D.C. area and in cooperation with the Inspector General."[94]

# DOJ Special Counsel Regulations

## Appointment and Selection by the Attorney General or the Acting Attorney General

Under the DOJ regulations that supplanted the independent counsel provisions, the authority to appoint[95] and select a special counsel resides solely with the Attorney General (or his surrogate, if the Attorney General has recused himself from the matter), rather than with the judicial branch.[96] The regulations generally state that the Attorney General "will appoint a Special Counsel" to conduct certain investigations or prosecutions.[97] To make such an appointment, the Attorney General must determine that (1) a criminal investigation is warranted; (2) the normal processes of investigation or prosecution would present a conflict of interest for DOJ, or other extraordinary circumstances exist; and (3) public interest requires a special counsel to assume those

---

[89] Letter from Jefferson B. Sessions III, Attorney General, to Charles E. Grassley, Chairman, Senate Comm. on the Judiciary, Robert W. Goodlatte, Chairman, House Comm. on the Judiciary, and Trey Gowdy, Chairman, House Comm. on Oversight and Gov't Reform, at 2 (Mar. 29, 2018), https://www.documentcloud.org/documents/4426668-AG-Letter-Re-IG-and-Huber-Reviews.html.

[90] *Id.* at 1.

[91] *Id*. at 3.

[92] *Id*. (quoting Office of Special Counsel, 64 Fed. Reg. 37,038, 37,038 (July 9, 1999) (codified at 28 C.F.R. pt. 600)).

[93] *Id*.

[94] *Id*. at 4.

[95] Issues related to the constitutionality of special counsel appointments under the DOJ regulations are discussed in a later section of this report. *See discussion infra* "Appointment of a Special Counsel."

[96] *See* 28 C.F.R. § 600.1. The statutory authority to appoint special counsels pursuant to these regulations arises from the Attorney General's general authority to appoint subordinate officers. *See In re* Grand Jury Investigation, No. 18-3052, 2019 WL 921692, at *4 (D.C. Cir. Feb. 26, 2019).

[97] 28 C.F.R. § 600.1.

responsibilities.[98] When DOJ promulgated the special counsel regulations, it explained the type of conflicts that might lead to the appointment of a special counsel: "[t]here are occasions when the facts create a conflict so substantial or the exigencies of the situation are such that any initial investigation might taint the subsequent investigation, so that it is appropriate for the Attorney General to immediately appoint a Special Counsel."[99]

After receiving information that could warrant consideration of an independent investigation, the Attorney General generally has discretion under the regulations to determine whether and when the appointment of a special counsel would be appropriate.[100] The Attorney General may appoint a special counsel immediately; may require an initial investigation to inform his decision about whether to appoint a special counsel; or "may direct that appropriate steps be taken to mitigate any conflicts of interest, such as recusal of particular officials," to permit the investigation to be concluded within "the normal processes."[101]

In the event that the Attorney General has recused himself from a particular matter upon which a special counsel appointment might be appropriate, the regulations contemplate that the Acting Attorney General will take responsibility for the appointment process.[102] Federal law provides that the Deputy Attorney General would serve as the Acting Attorney General.[103]

Individuals appointed as special counsels under these regulations must be chosen from outside the federal government.[104] Such individuals must be "a lawyer with a reputation for integrity and impartial decisionmaking, and with appropriate experience to ensure both that the investigation will be conducted ably, expeditiously and thoroughly, and that investigative and prosecutorial decisions will be supported by an informed understanding of the criminal law and Department of Justice policies."[105] The special counsel may hold other professional roles during his or her service, but is required to agree that the duties of the appointment will take "first precedence."[106]

## Scope of Jurisdiction and Authority

Like the appointment and selection process, the sole authority to determine the scope of the special counsel's inquiry rests with the Attorney General.[107] The jurisdiction of the inquiry is determined by "a specific factual statement" about the matter to be investigated, which is provided by the Attorney General to the special counsel at the outset of the appointment.[108] Beyond that general jurisdiction, the special counsel is also authorized "to investigate and prosecute federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation, such as perjury, obstruction of justice, destruction of evidence, and

---

[98] *Id.*

[99] *See* Office of Special Counsel, 64 Fed. Reg. 37,038 (July 9, 1999) (codified at 28 C.F.R. pt. 600).

[100] 28 C.F.R. § 600.2.

[101] *Id.*

[102] *Id.* § 600.1.

[103] 28 U.S.C. § 508(a). If the Deputy Attorney General is likewise recused, the appointment authority would pass to the Associate Attorney General. *Id.* § 508(b). *See also* Exec. Order 13,787, 3 C.F.R. § 16,723 (Mar. 31, 2017) (identifying the order of succession within DOJ if the Attorney General or other senior officials are unable to serve).

[104] 28 C.F.R. § 600.3(a).

[105] *Id.*

[106] *Id.* The regulations state "that it may be necessary to devote their full time to the investigation, depending on its complexity and the stage of the investigation." *Id.*

[107] *Id.* § 600.4.

[108] *Id.* § 600.4(a).

intimidation of witnesses."[109] While these are the original parameters of a special counsel's jurisdiction, additional matters may be assigned to the special counsel as the inquiry proceeds.[110] To expand the jurisdiction, the special counsel must find such an expansion is necessary to complete the original assignment or necessary "to investigate new matters that come to light in the course of his or her investigation."[111] Upon such finding, the special counsel's jurisdiction may be expanded only after consultation with the Attorney General, who then has the authority to determine whether to assign the additional matters to the special counsel or "elsewhere."[112] Within the jurisdiction identified by the Attorney General, the special counsel has relatively broad authority to carry out his or her inquiry. According to the regulations, "the Special Counsel shall exercise, within the scope of his or her jurisdiction, the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney."[113]

The scope of the special counsel's authority under DOJ regulations has been the subject of legal challenge in the course of Special Counsel Robert Mueller III's investigation that began in 2017.[114] That inquiry resulted in several indictments, including against Paul Manafort, the former chairman of President Trump's 2016 campaign, for crimes such as conspiracy to launder money; tax fraud; obstruction of justice and witness tampering; failure to register as an agent of a foreign principal; false statements; and failure to file reports of foreign bank and financial accounts.[115] Manafort filed a motion to dismiss the criminal indictment lodged against him, challenging the indictment as an unlawful exercise of the special counsel's authority.[116] Specifically Manafort argued that the factual matter named as the special counsel's original jurisdiction in the May 2017 public appointment order (i.e., "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump," as well as "any matters that arose or may arise directly from the investigation, and any other matters within the scope of 28 C.F.R. § 600.4(a)"[117]) would preclude the charges made against him.[118] According to Manafort, because the charges made against him do not relate to links with the Russian

---

[109] *Id.* The special counsel also has authority to appeal any decisions arising in the course of the inquiry. *Id.* The regulations explicitly state that special counsels "shall not have civil or administrative authority unless specifically granted such jurisdiction by the Attorney General." *Id.* § 600.4(c).

[110] *Id.* § 600.4(b).

[111] *Id.*

[112] *Id.*

[113] *Id.* § 600.6.

[114] *See* United States v. Manafort, No. 1:17-cr-00201 (D.D.C. filed Oct. 27, 2017). *See also* Manafort v. U.S. Dep't of Justice, No. 1:18-cv-00011 (D.D.C. filed Jan. 3, 2018); United States v. Manafort, No. 1:18-cr-00083 (E.D. Va. filed Feb. 13, 2018).

[115] *See generally* Indictment, United States v. Manafort, No. 1:17-cr-00201 (D.D.C. filed Oct. 30, 2017); Superseding Criminal Information, No. 17-201-1 (D.D.C. filed Sept. 14, 2018). There have been a number of other indictments resulting from the ongoing special counsel investigation, including charges of, for instance, making false statements, computer crimes, and identity theft. For a summary of cases filed by the special counsel, see U.S. Dep't of Justice, *Special Counsel's Office*, *available at* https://www.justice.gov/sco.

[116] *See* Defendant's Motion to Dismiss the Superseding Indictment, United States v. Manafort, No. 1:17-cr-00201 (D.D.C. filed Mar. 14, 2018) (alleging that the charges made in the indictment are not within the scope of the special counsel's authority to investigate because they do not relate to links between Manafort and the Russian government or to Manafort's role as a campaign manager during the 2016 election); Defendant's Motion to Dismiss, United States v. Manafort, No. 1:18-cr-00083 (E.D. Va. filed Mar. 27, 2018).

[117] OFFICE OF DEPUTY ATT'Y GEN., ORDER NO. 3915-2017, APPOINTMENT OF SPECIAL COUNSEL TO INVESTIGATE RUSSIAN INTERFERENCE WITH THE 2016 PRESIDENTIAL ELECTION AND RELATED MATTERS (May 17, 2017), https://www.justice.gov/opa/press-release/file/967231/download (the Appointment Order).

[118] Defendant's Motion to Dismiss at 1-3, No. 1:17-cr-00201.

government or actions taken during his time as a campaign manager in 2016 and because the public order's general authority does not grant authority on sufficiently specific matters as required by DOJ regulations, the special counsel cannot pursue the charges filed against him without seeking additional authority under the regulations.[119]

The government's response to these claims disclosed and explained additional documents outlining the scope of the investigation.[120] DOJ acknowledged that the applicable regulations require the special counsel to be provided a "'specific factual statement of the matter to be investigated,'" but emphasized that "the regulations do not provide that the factual statement must be in an appointment order or otherwise made public."[121] According to a subsequent memorandum from Acting Attorney General Rosenstein that was partially released with the government's filing, while the initial order "was worded categorically in order to permit its public release without confirming specific investigations involving specific individuals," a subsequent memorandum provided "a more specific description" of allegations deemed to be authorized as part of the special counsel investigation.[122] Such development of the parameters of jurisdiction during the course of an investigation, according to DOJ, are necessary for "an effective investigation [which] must have some latitude to extend beyond the known facts at the time of [the appointment]."[123]

Ultimately, the courts that considered Manafort's motion to dismiss his indictments rejected his challenge to the special counsel's authority.[124] For example, a federal district court in Virginia considering Manafort's motion concluded that while many of the charges pursued against Manafort "on their face, appear unrelated to the 2016 Presidential election," the investigation and issues charged in the particular case fell "squarely within the jurisdiction outlined" under the appointment order.[125] The court emphasized that the appointment order's broad grant of authority to investigate "any links" between campaign officials and the Russian government permitted investigation into relationships with individuals supported by, even if not members of, the Russian government, such as members of a pro-Russia Ukrainian political party.[126] Moreover, with respect to charges filed by the special counsel that did not pertain directly to the campaign and Russia, a D.C. federal court held such charges, such as tax evasion with regard to proceeds resulting from Manafort's relationship with pro-Russian entities, fell within the special counsel's

---

[119] *Id.*

[120] *See* Government's Response in Opposition to Motion to Dismiss at 7-9, United States v. Manafort, No. 17-cr-201-1 (D.D.C. filed Apr. 2, 2018).

[121] *Id.* at 13. (quoting 28 C.F.R. § 600.4(a)). The government relied, in part, on a previous case (with similar factual allegations regarding the validity of the scope of an investigation) that had challenged a special counsel appointed outside the framework of the regulations discussed herein. *See id.* at 17 n.7. In *United States v. Libby*, the court held that the original appointment order as well as a supplemental clarification jointly served to identify the legal parameters of the special counsel's investigation. 429 F. Supp. 2d 27, 28-29, 31-32, 39 (D.D.C. 2006).

[122] Government's Response in Opposition to Motion to Dismiss at 9, Attachment C, United States v. Manafort, No. 17-cr-201-1 (D.D.C. filed Apr. 2, 2018) (internal quotations omitted).

[123] *Id.* at 22.

[124] *See, e.g.*, United States v. Manafort, 312 F.Supp.3d 60, 65 (D.D.C. 2018) (denying the motion to dismiss "for a number of reasons"); United States v. Manafort, 321 F.Supp.3d 640, 650 (E.D. Va. 2018) ("[T]he Special Counsel's investigation of defendant falls squarely within the jurisdiction [of the appointment order]"); United States v. Concord Mgmt. & Consulting LLC, 317 F.Supp.3d 598, 624-25 (D.D.C. 2018) (holding that the special counsel regulations do not create judicially enforceable rights and even if they did, "the appointment order does not violate the Special Counsel regulations").

[125] *Manafort*, 321 F.Supp.3d at 642, 650.

[126] *Id.* at 650-51 (emphasizing that "the term 'any' 'has an expansive meaning.'").

jurisdiction as "'matters that arose or may arise *directly* from the investigation.'"[127] A federal district court in Virginia further relied upon the later DOJ memorandum that clarified the scope of the special counsel's original appointment as a source of the special counsel's authority, explaining that the original appointment order was worded categorically so that it could be publicly released and noting that the clarifying memorandum specifically authorized the special counsel to investigate crimes related to these other charges.[128] Accordingly, the D.C. federal court rejected Manafort's argument that the special counsel's authority amounted to a "'blank check'" for limitless investigation, reading the appointment order's language as "tightly drafted" to give "the Special Counsel flexibility from the start to manage the investigation and pursue matters that arose 'directly' from the issues within his purview."[129]

## Oversight and Removal

The DOJ special counsel regulations limit the special counsel's relatively broad authority to conduct an inquiry by first subjecting his or her conduct to DOJ rules, regulations, procedures, practices, and policies.[130] Special counsels are directed to consult with the appropriate offices within DOJ or the Attorney General directly if necessary.[131] Additionally, special counsels are subject to discipline for misconduct and breach of ethical duties that are generally applicable to DOJ employees.[132]

Second, the DOJ regulations contemplate some oversight of the special counsel by the Attorney General.[133] Specifically, they direct the special counsel to "determine whether and to what extent to inform or consult with the Attorney General or others within the Department about the conduct of his or her duties and responsibilities."[134] The regulations expressly require the special counsel to "notify the Attorney General of events in the course of his or her investigation in conformity with the Departmental guidelines with respect to Urgent Reports."[135] Under DOJ internal guidance, attorneys must inform DOJ leadership of certain events, including "major developments in significant investigations and litigation" such as the filing of criminal charges.[136] DOJ has explained that conformance with this notification requirement "guarantees a 'resulting opportunity for consultation' between the Attorney General and the Special Counsel about the anticipated action, which 'is a critical part of the mechanism through which the Attorney General can discharge his or her responsibilities with respect to the investigation.'"[137]

---

[127] *Manafort*, 312 F.Supp.3d at 81 (emphasis in original).

[128] *Manafort*, 321 F.Supp.3d at 652.

[129] Manafort, 312 F.Supp.3d at 81.

[130] 28 C.F.R. § 600.7(a).

[131] *Id.*

[132] *Id.* § 600.7(c).

[133] *See id.* § 600.7. Special counsels are required to comply with DOJ rules, regulations, procedures, practices, and policies, and are directed to consult with the appropriate offices within DOJ or the Attorney General directly if necessary. *Id.* § 600.7(a). Additionally, special counsels are subject to discipline for misconduct and breach of ethical duties that are generally applicable to DOJ employees. *Id.* § 600.7(c).

[134] *Id.* § 600.6.

[135] *Id.* § 600.8(b).

[136] U.S. DEP'T OF JUSTICE, UNITED STATES ATTORNEYS' MANUAL §§ 1-13.100, 1-13.120 (1997), https://www.justice.gov/usam/usam-1-13000-urgent-reports.

[137] Government's Response in Opposition to Motion to Dismiss at 7, United States v. Manafort, No. 17-cr-201-1 (D.D.C. filed Apr. 2, 2018) (quoting Office of Special Counsel, 64 Fed. Reg. 37,038, 37,040 (July 9, 1999)).

While the regulations indicate that special counsels "shall not be subject to the day-to-day supervision of any official,"[138] the rules authorize the Attorney General to "request that the Special Counsel provide an explanation for any investigative or prosecutorial step."[139] If, after giving the views of the special counsel "great weight," the Attorney General's review of such actions leads him to "conclude that the action is so inappropriate or unwarranted under established Departmental practices that it should not be pursued," the Attorney General must notify the Chairman and Ranking Members of the Judiciary Committees in Congress of that decision with an explanation.[140]

Aside from review of particular actions, the regulations also grant the Attorney General authority to discipline or remove the special counsel.[141] This authority may be exercised "only by the personal action of the Attorney General."[142] In other words, to comply with the regulations, the Attorney General himself must remove the special counsel, not the President or a surrogate (unless, as noted previously in this report, the Attorney General has recused himself in the matter under investigation).[143] A decision to remove the special counsel must be made with "good cause," such as misconduct, a dereliction of duty, incapacity, the existence of conflicts of interest, or violation of departmental policies.[144] The Attorney General must report his decision to remove the special counsel, with an explanation of that decision, to both the Chairman and Ranking Members of the Judiciary Committees of Congress.[145]

## Review and Conclusion of Special Counsel Inquiries

Although the special counsel regulations do not provide an explicit timeline for inquiries or a special counsel's tenure, they do require the special counsel to report to DOJ periodically about the budget of operations for the inquiry as well as with status updates in some circumstances. Specifically, the special counsel must provide a proposed budget within 60 days of the appointment.[146] The special counsel must also provide annual reports regarding the status of the investigation and budget requests 90 days prior to the beginning of the fiscal year.[147] The Attorney General is required to review the special counsel's annual report and determine whether the investigation should continue and with what budget.[148]

When the special counsel's inquiry concludes, the special counsel must provide a confidential report to the Attorney General with explanations of the decisions made in the course of the inquiry in favor of or declining to prosecute any charges.[149] The regulations do not expressly provide for disclosure of this report to any other parties, nor do they further identify the

---

[138] 28 C.F.R. § 600.7(b).

[139] *Id.*

[140] *Id.*

[141] For a discussion of efforts to codify a similar provision and potential constitutional questions implicated by such proposals, see discussion *infra* "Proposed Legislation to Restrict the Ability to Remove a Special Counsel."

[142] 28 C.F.R. § 600.7(d).

[143] *Id.*

[144] *Id. See supra* note *** for an explanation of the "good cause" standard.

[145] 28 C.F.R. § 600.9(a)(2).

[146] *Id.* § 600.8(a)(1).

[147] *Id.* § 600.8(a)(2).

[148] *Id.*

[149] *Id.* § 600.8(c).

parameters of the content of that report.[150] The regulations do, however, require the Attorney General to make certain reports to the Chairs and Ranking Members of the Judiciary Committees of each house of Congress, including upon the conclusion of the investigation.[151] The regulations' only guidance regarding the Attorney General's concluding report's content is that the report must include "an explanation for [the] action," "including, to the extent consistent with applicable law, a description and explanation of instances (if any) in which the Attorney General concluded that a proposed action by a Special Counsel was so inappropriate or unwarranted under established Departmental practices that it should not be pursued."[152] The regulation's use of the word "including," which generally denotes that the terms that follow are illustrative and not definitional, may suggest that the Attorney General's report to Congress is not necessarily limited to explanations of the Special Counsel's prosecutorial decisions.[153] None of the reporting requirements *mandate* public release of any information shared either between DOJ officials or between DOJ and congressional committees. Instead, the regulations provide the Attorney General with the *discretion* to "determine that public release of [his reports to Congress] would be in the public interest."[154] Moreover, the report's contents need to be "consistent with applicable law,"[155] which may suggest that legal doctrines such as executive privilege and the rules governing the release of grand jury information could restrict[156] what can be included in the report.[157]

# Appointing and Removing a Special Counsel: Legal Considerations

Designing a mechanism to provide for criminal inquiries of executive branch officials by officers independent from the executive branch has raised questions about whether this goal can be accomplished in harmony with the requirements of the Constitution. Under the doctrine of separation of powers, the Constitution assigns each branch of government particular functions that generally may not be delegated to, nor usurped by, another branch.[158] In this vein, Congress is

---

[150] *See id.*

[151] *Id*. § 600.9(a). The Attorney General must also report to Congress upon the appointment and removal of a Special Counsel. *Id*.

[152] *Id.*

[153] *See* Fed. Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95, 99-100 (1941); Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 189 (1941).

[154] 28 C.F.R. § 600.9(c).

[155] *See id.*

[156] CRS Legal Sidebar LSB10271, *The Special Counsel's Report: Can Congress Get It?*, by Michael A. Foster and Todd Garvey. *See generally* Chris Strohm and Shannon Pettypiece, When Mueller Issues a Report, Trump May Try to Suppress Some of It, Bloomberg (Jan. 7, 2019, 4:00 A.M.), https://www.bloomberg.com/news/articles/2019-01-07/when-mueller-issues-report-trump-may-try-to-suppress-some-of-it.

[157] Introduced legislation would expand the reporting requirements to require the Special Counsel to report to Congress directly at the conclusion of the investigation, or at any time the special counsel is removed, transferred, or resigns. *See* S. 236, 116th Cong. (2019); H.R. 1356, 116th Cong. (2019).

[158] Under what is commonly known as the nondelegation doctrine, Congress cannot delegate its authority to another branch of government. *See* Touby v. United States, 500 U.S. 160, 165 (1991) ("'The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government.'" (quoting Mistretta v. United States, 488 U.S. 361, 371 (1989))). And Congress may not usurp certain executive branch functions by aggrandizing power to itself. *Mistretta*, 488 U.S. at 411 n.35 (citing Bowsher v. Synar, 478 U.S. 714, 726-27 (1986)).

entrusted with the legislative power,[159] and may establish executive branch agencies[160] and conduct oversight of those entities.[161] Congress may not, however, engage in criminal prosecutions on behalf of the United States—a function generally reserved for the executive branch.[162] A crucial bulwark in preserving this separation of powers is the Appointments Clause of Article II. That provision requires "Officers of the United States" to be appointed by the President "with the Advice and Consent of the Senate," although Congress may vest the appointment of "inferior" officers "in the President alone, in the Courts of Law, or in the Heads of Departments."[163] Crucially, Article II also empowers the President to hold executive branch officers accountable, through removal if necessary,[164] which the Supreme Court in *Myers v. United States* explained was essential in order to "maintain administrative control of those executing the laws."[165] The Court has, however, recognized that Congress may in certain situations restrict the President's power of removal over certain discrete offices.[166] The powers of appointment and removal are key to understanding Congress's authority to create independent investigative offices and define their contours.

## Appointment of a Special Counsel

While introduced legislation aimed to insulate a special counsel from executive control raises questions (addressed below) about the President's ability to oversee the executive branch, some

---

[159] *See* U.S. CONST. art. I; Clinton v. City of New York, 524 U.S. 417, 437-41 (1998).

[160] Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 500 (2010) ("Congress has plenary control over the salary, duties, and even existence of executive offices."); Myers v. United States, 272 U.S. 52, 129 (1926) ("To Congress under its legislative power is given the establishment of offices, the determination of their functions and jurisdiction, the prescribing of reasonable and relevant qualifications and rules of eligibility of appointees, and the fixing of the term for which they are to be appointed and their compensation . . . .").

[161] *See* Watkins v. United States, 354 U.S. 178, 187 (1957) ("The power of the Congress to conduct investigations is inherent in the legislative process. That power is broad."); McGrain v. Daugherty, 273 U.S. 135 (1927) (describing congressional oversight authority as "an essential and appropriate auxiliary to the legislative function").

[162] *See* Morrison v. Olson, 487 U.S. 654, 691 (1988) ("There is no real dispute that the functions performed by the independent counsel are 'executive' in the sense that they are law enforcement functions that typically have been undertaken by officials within the Executive Branch."); *id.* at 706 (Scalia, J., dissenting) ("Governmental investigation and prosecution of crimes is a quintessentially executive function."); Buckley v. Valeo, 424 U.S. 1, 138 (1976) (per curiam) ("The Commission's enforcement power, exemplified by its discretionary power to seek judicial relief, is authority that cannot possibly be regarded as merely in aid of the legislative function of Congress. A lawsuit is the ultimate remedy for a breach of the law, and it is to the President, and not to the Congress, that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.'" (quoting U.S. CONST. art. II, § 3)); United States v. Nixon, 418 U.S. 683, 694 (1974) ("Under the authority of Art. II, [§] 2, Congress has vested in the Attorney General the power to conduct the criminal litigation of the United States Government.").

[163] U.S. CONST. art. II, § 2, cl. 2; Edmond v. United States, 520 U.S. 651, 662 (1997) ("[T]he Appointments Clause of Article II is . . . among the significant structural safeguards of the constitutional scheme. By vesting the President with the exclusive power to select the principal (noninferior) officers of the United States, the Appointments Clause prevents congressional encroachment upon the Executive and Judicial Branches."). Non-officers are not subject to any constitutionally required method of appointment. *See Buckley*, 424 U.S. at 126 ("We think its fair import is that any appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States,' and must, therefore, be appointed in the manner prescribed by § 2, cl. 2, of . . . Article [II].").

[164] Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 483 (2010).

[165] 272 U.S. 52, 164 (1926).

[166] *See, e.g.*, Humphrey's Executor v. United States, 295 U.S. 602, 619-20 (1935) (holding that Congress had the authority to limit the President's ability to remove members of the Federal Trade Commission by providing commissioners with "for cause" removal protections because the commissioners exercised "quasi-legislative" and "quasi-judicial" functions); *Morrison*, 487 U.S. at 659-60 (upholding for-cause removal restrictions for an independent counsel).

have questioned whether the appointment of a special counsel under the current regulations violates the Constitution.[167] Such challenges have been unsuccessful, however, as exemplified by the D.C. Circuit's recent ruling in *In re: Grand Jury Investigation*.[168] In that case, the recipient of multiple grand jury subpoenas issued by Special Counsel Robert Mueller moved to quash those subpoenas on the grounds that the appointment of the special counsel was unlawful under the Appointments Clause.[169]

The D.C. Circuit's panel decision held that the Appointments Clause did not require Special Counsel to be nominated by the President and confirmed by the Senate because the special counsel is not a principal officer.[170] Applying the Supreme Court's test in *Edmond v. United States*,[171] the D.C. Circuit ruled that, because he is subject to the control of a superior who was nominated by the President and confirmed by the Senate (i.e., a principal officer), the special counsel is an inferior officer who may be appointed by a department head.[172] While acknowledging that the special counsel regulations bestowed a measure of independence on the special counsel, the court reasoned that because the Attorney General could rescind these regulations at any time, the special counsel is an inferior officer who "effectively serves at the pleasure" of a principal officer.[173]

Additionally, the court rejected the argument that Congress had not "by law" granted the Attorney General the authority to appoint a special counsel as required by the Appointments Clause.[174] In so doing, the panel relied on the Supreme Court's opinion in *United States v. Nixon*,[175] in which the Court concluded that, because Congress had by statute vested general authority in the Attorney General to appoint subordinate officers, the Attorney General's delegation of power to a special prosecutor was valid.[176]

Finally, the D.C. Circuit panel concluded that a department head properly appointed Special Counsel Mueller in accordance with the Appointments Clause, notwithstanding his appointment by Rod Rosenstein, the Deputy and Acting Attorney General.[177] The panel observed that the relevant statutory scheme provided that, in the case of a "disability" of the Attorney General, the Deputy Attorney General "may exercise all the duties of that office."[178] The D.C. Circuit reasoned that when Attorney General Sessions recused himself from matters concerning presidential campaigns, he had a "disability" under the statute on that issue.[179] Accordingly, Deputy Attorney

---

[167] *See, e.g.*, *In re* Grand Jury Investigation, No. 18-3052, 2019 WL 921692, at *1 (D.C. Cir. Feb. 26, 2019).

[168] *In re* Grand Jury Investigation, No. 18-3052, 2019 WL 921692, at *7 (D.C. Cir. Feb. 26, 2019).

[169] *Id.* at *2-3.

[170] *Id.* at *4.

[171] 520 U.S. 651, 663 (1997) (ruling that an inferior officer is someone "whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate").

[172] *In re* Grand Jury Investigation, 2019 WL 921692, at *3-4.

[173] *Id.* at *4. The court also noted that "even if at the time of the appointment of Special Counsel Mueller only the Attorney General could rescind the regulations, the Acting Attorney General could essentially accomplish the same thing with specific regard to Special Counsel Mueller by amending his Appointment Order of May 17, 2017, to eliminate the Order's good cause limitations on the Special Counsel's removal." *Id.* at *3.

[174] *Id.* at *4-5. The Appointments Clause provides that Congress "may by law vest the appointment of such inferior officers" in the President, the courts of law, or department heads. U.S. CONST. art. II, § 2, cl. 2.

[175] 418 U.S. 683, 694 (1974).

[176] *In re* Grand Jury Investigation, 2019 WL 921692, at *3-4.

[177] *Id.* at *5-7; *see supra* note ***.

[178] *See* 28 U.S.C. § 501(a).

[179] *In re* Grand Jury Investigation, 2019 WL 921692, at *6.

General Rosenstein became the acting Attorney General—and was therefore the head of the Department of Justice—on such matters.[180] Acting Attorney General Rosenstein's appointment of Special Counsel Mueller, therefore, was an appointment by the head of a department.[181]

# Removing a Special Counsel

While the legal questions surrounding the *appointment* of a special counsel under the regulations have largely been resolved, the circumstances in which a special counsel may be *removed* by a superior have not been settled by the courts. Consideration of the authority to remove a special counsel under current regulations poses several legal questions. As discussed above, Department of Justice regulations provide that a special counsel may be removed only (1) by the Attorney General; (2) "for misconduct, dereliction of duty, incapacity, conflict of interest, or for other good cause, including violation of Departmental policies"; and (3) in writing provided to the special counsel specifying the reason(s) for removal.[182] As a preliminary matter, the specific type of behavior that would constitute grounds for removal under the regulations is largely undetermined. For instance, terms such as "misconduct" and "good cause" are not defined in the regulations or by reference to an accompanying statute, and case law addressing the definition of similar statutory removal restrictions is sparse.[183] More broadly, the manner in which a special counsel might be removed without new legislation itself poses difficult legal issues, including the ultimate efficacy of the regulations in constraining the discretion of the executive branch.

## Removing a Special Counsel Pursuant to the Regulations

The Attorney General (or his surrogate if recused) may, consistent with the governing regulations, remove a special counsel "for misconduct, dereliction of duty, incapacity, conflict of interest, or for other good cause, including violation of Departmental policies."[184] Conceivably, the Attorney General's decision could be the result of an order from the President, as the Attorney General serves at the pleasure of the President and, as the Court has recognized, the President's power to appoint executive branch officials is tied to the power of removal.[185] A decision to remove a

---

[180] *Id*. at *6-7.

[181] *Id*.

[182] 28 C.F.R. § 600.7(d).

[183] *Compare* Bowsher v. Synar, 478 U.S. 714, 729 (1986) (noting that a statutory for-cause removal provision, which was applicable to Congress's role in removing the Comptroller General, was "very broad and, as interpreted by Congress, could sustain removal of a Comptroller General for any number of actual or perceived transgressions of the legislative will"), *with Free Enter. Fund*, 561 U.S. at 503 (describing as "implausibl[e]" the government's argument that the three specified grounds for removal of Board Members in the Dodd-Frank Act are not exclusive). *See* PHH Corp. v. Consumer Fin. Prot. Bureau, 881 F.3d 75, 130 (D.C. Cir. 2018) (Griffith, J., concurring) ("In sum, although Congress has provided little guidance on the meaning of the [inefficiency, neglect of duty, or malfeasance in office (INM)] standard, the *Bowsher* nevertheless recognized the general breadth of the INM terms.").

[184] 28 C.F.R. § 600.7(d). If the relevant supervisory official concluded that there are grounds under the regulation to do so, then he could simply remove the special counsel. However, an official could conceivably refuse to carry out this order, perhaps based on disagreement with whether the regulation's grounds for removal were satisfied, which could result in resignation or removal of that official by the President. In that case, the next Department of Justice official in line to oversee the investigation would confront the same question until the special counsel was removed or the President relented on the matter. *See* 28 U.S.C. § 508; Exec. Order 13,787, 82 Fed. Reg. 16,723 (Mar. 31, 2017) ("Providing an Order of Succession Within the Department of Justice"). An analogous situation occurred when President Nixon ordered the Attorney General to fire special prosecutor Archibald Cox. *See supra* notes ***; STANLEY I. KUTLER, THE WARS OF WATERGATE 383-414 (1992).

[185] *See* Myers v. United States, 272 U.S. 52, 164 (1926); Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 537 F.3d 667, 686 n.1 (D.C. Cir. 2008) (Kavanaugh, J., dissenting) ("The Supreme Court has recognized that when the head

special counsel under current regulations could be difficult to challenge in court. Importantly, the current regulations explicitly disclaim the creation of any legal rights.[186] Even without that disclaimer, internal agency rules and guidelines, including those of the Justice Department, have generally not been recognized as creating judicially enforceable rights.[187] Instead, an individual seeking judicial relief against the United States in federal court must usually rely on a cause of action that asserts violation of a recognized legal right or requirement.[188] Consequently, at least under current DOJ regulations, obtaining judicial review of a special counsel's removal by a federal court may be difficult.[189]

## Legal Effect of the Regulations

More broadly, it is uncertain to what extent the regulations ultimately constrain the executive branch. Because no statute appears to *require* the Department to promulgate regulations concerning a special counsel, the Department likely enjoys discretion to rescind them.[190] The special counsel regulations also were not promulgated according to the notice and comment procedures[191] that are typically required by the Administrative Procedure Act (APA) when agencies issue legislative rules.[192] Instead, the Department considered the regulations to be exempt from these requirements, as they concerned agency management or personnel.[193] The Department could thus likely rescind the special counsel regulations without going through notice and comment procedures, meaning that the regulations could likely be repealed immediately.

---

of a department appoints inferior officers in that department, the President technically exercises his removal authority over those inferior officers through his alter ego, the department head." (citing *Myers*, 272 U.S. at 133; Morrison v. Olson, 487 U.S. 654, 692 (1988); *Ex parte* Hennen, 38 U.S. 230, 259-60 (1839))), *aff'd in part, rev'd in part and remanded*, 561 U.S. 477 (2010).

[186] 28 C.F.R. § 600.10.

[187] *See* United States v. Concord Mgmt. & Consulting LLC, 317 F.Supp.3d 598, 624-25 (D.D.C. 2018) (holding that special counsel regulations do not create judicially enforceable rights); *see, e.g.*, United States v. Blackley, 167 F.3d 543, 548-49 (D.C. Cir. 1999); United States v. Wilson, 413 F.3d 382, 389 (3d Cir. 2005).

[188] *See, e.g.*, 5 U.S.C. §§ 702, 704; S. Forest Watch, Inc. v. Jewell, 817 F.3d 965, 973 (6th Cir. 2016) ("Our conclusion that Manual 22A does not create legally enforceable rules is in line with other courts that have addressed challenges arising under Park Service guidance documents."); The Wilderness Soc. v. Norton, 434 F.3d 584, 596–97 (D.C. Cir. 2006) ("[T]he Management Policies is exactly what it appears to be, a guidance manual for NPS managers and staff that does not create enforceable regulations or modify existing legal rights."); River Runners for Wilderness v. Martin, 593 F.3d 1064, 1072–73 (9th Cir. 2010); Loa-Herrera v. Trominski, 231 F.3d 984, 989 (5th Cir. 2000) (concluding that "an agency's internal personnel guidelines" do not confer legal rights); United States v. Craveiro, 907 F.2d 260, 264 (1st Cir. 1990) ("But the internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party."); Dep't of Health & Human Servs. v. Fed. Labor Relations Auth., 844 F.2d 1087, 1095–96 (4th Cir. 1988); Acevedo v. Nassau Cty., New York, 500 F.2d 1078, 1083–36 (8th Cir. 1974); Indep. Meat Packers Ass'n v. Butz, 526 F.2d 228, 235–36 (8th Cir. 1975); *see also* Davis v. Passman, 442 U.S. 228, 239 n.18 (1979).

[189] *See S. Forest Watch*, 817 F.3d at 973; *The Wilderness Soc.*, 434 F.3d at 596–97; *Trominski*, 231 F.3d at 898; *Craveiro*, 907 F.2d at 264. *But see* Nader v. Bork, 366 F. Supp. 104 (D.D.C. 1973) (concluding that the discharge of the special counsel was unlawful under the regulations), *vacated sub nom*. Nader v. Levi, No. 1954-73, 1975 U.S. Dist. LEXIS 16791 (D.D.C. 1975).

[190] See In re Grand Jury Investigation, No. 18-3052, 2019 WL 921692, at *3 (D.C. Cir. Feb. 26, 2019) (noting that the Attorney General "has authority to rescind at any time the Office of Special Counsel regulations or otherwise render them inapplicable to the Special Counsel").

[191] *See* Office of Special Counsel, 64 Fed. Reg. 37,038, 37,041 (July 9, 1999).

[192] *See* 5 U.S.C. § 553(a)(2).

[193] *See* 64 Fed. Reg. at 37,041.

Once repealed, a special counsel would no longer be protected by a for-cause removal provision.[194]

While DOJ has noted its adherence to the current special counsel regulations,[195] assuming for the sake of argument a situation where the regulations were left in place, a decision by the Attorney General or President to simply ignore the regulations raises unresolved legal questions.[196] Generally, regulations in force typically bind the executive branch with the force of law.[197] In fact, in *Nixon v. United States*, which concerned a claim of executive privilege by President Nixon against a subpoena issued by a special prosecutor, the Court opined on the regulation in force that insulated the special prosecutor from removal.[198] The Court remarked in dicta that

> So long as this regulation is extant it has the force of law. . . . [I]t is theoretically possible for the Attorney General to amend or revoke the regulation defining the Special Prosecutor's authority. But he has not done so. So long as this regulation remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.[199]

In other words, insofar as this reading continues to characterize the Court's approach to the matter, both the President and Attorney General must comply with the special counsel regulations until they are repealed.[200] However, the concrete result of an order removing a special counsel in violation of applicable regulations is difficult to predict. For instance, there might not be a private right of action authorizing judicial review in this situation, leaving the legal remedy available for violation of the regulations in question.[201]

---

[194] Relatedly, depending on the scope and substance of a Presidential order, one might understand a Presidential directive to eliminate a special counsel's investigation to simultaneously rescind the regulations authorizing the appointment as well as remove him from office. This appears to have been the view of Robert Bork regarding President Nixon's order to fire special prosecutor Archibald Cox. *Nomination of Robert H. Bork to be Associate Justice of the Supreme Court of the United States: Hearings Before the Senate Judiciary Comm.*, 110th Cong. 361-62 (1987) (statement of Robert Bork, Judge of the Federal Court of Appeals for the District of Columbia Circuit).

[195] Government's Response in Opposition to Motion to Dismiss at 12, United States v. Manafort, No. 17-cr-201-1 (D.D.C. Apr. 4, 2018).

[196] In addition, notwithstanding the efficacy of such regulations, the authority of the President to unilaterally remove an officer who he did not appoint himself is uncertain. Typically, the power of removal is understood to accompany the power of appointment. Myers v. United States, 272 U.S. 52, 119 (1926). The officer who appoints a special counsel thus enjoys discretion to remove him, just as agency heads enjoy the power of removal over inferior officers who they are entrusted to appoint. *See* Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 497 (2010) ("*Humphrey's Executor* did not address the removal of inferior officers, whose appointment Congress may vest in heads of departments. If Congress does so, it is ordinarily the department head, rather than the President, who enjoys the power of removal."). Whether the President, as the head of the executive branch, *also* has authority to directly remove an inferior officer who he did not appoint is thus unclear. Instead, the usual practice would be for the President to order the agency head with removal authority to dismiss the inferior officer, as was done in the removal of special prosecutor Archibald Cox by Robert Bork. *See supra* notes ***.

[197] Vitarelli v. Seaton, 359 U.S. 535, 549 (1959); Service v. Dulles, 354 U.S. 363, 388 (1957); Accardi v. Shaughnessy, 347 U.S. 260, 267 (1954).

[198] United States v. Nixon, 418 U.S. 683, 695 (1974). *See* Establishing the Office of Watergate Special Prosecution Force, 38 Fed. Reg. 30,738, 30, 739 (Nov. 7, 1973), amended by Office of Watergate Special Prosecution Force, 38 Fed. Reg. 32,805 (Nov. 28, 1973).

[199] *Nixon*, 418 U.S. at 695.

[200] *See* Nader v. Bork, 366 F. Supp. 104 (D.D.C. 1973) (concluding that the discharge of the special counsel was unlawful under the regulations) *vacated sub nom.* Nader v. Levi, No. 1954-73, 1975 U.S. Dist. LEXIS 16791 (D.D.C. 1975).

[201] *See* United States v. Manafort, 312 F. Supp. 3d 60, 75 (D.D.C. 2018) ("Manafort cannot move to dismiss his complaint under the Federal Rules of Criminal Procedure based upon a claimed violation of the Department of Justice

On the other hand, the matter raises open legal issues regarding the scope of the President's authority to supervise the executive branch. It is unclear to what extent agency regulations restricting the grounds for removal of a constitutional officer engaged in core executive functions can bind the President. One might argue that the special counsel regulations, while binding on the Department of Justice, do not ultimately restrict the President's powers.[202] Article II vests the executive power of the United States in the President;[203] and criminal investigations and prosecutions lie at the very core of this constitutional authority.[204] An argument in favor of a more robust view of the President's authority might be that regulations issued by an executive branch agency nearly 20 years ago that restrict the President's power to remove a high-level officer of the United States who is charged with enforcing the law intrude on the President's authority under Article II. DOJ has in the past asserted authority to decline to follow statutes it deems unconstitutional intrusions on the executive branch's power,[205] and this argument might be extended to the context of similarly viewed regulations, particularly those issued by a prior Administration.[206]

## Proposed Legislation to Restrict the Ability to Remove a Special Counsel

Given the questions regarding the scope and effect of the current DOJ special counsel regulations, a number of legislative proposals aim to impose statutory restrictions on the executive branch's ability to remove a special counsel. Consideration of these proposals requires examination of the Supreme Court's decisions regarding statutory restriction on the removal of certain officers. However, because Congress has not enacted any such bill, analysis of these efforts is necessarily preliminary. As discussed above, current Department of Justice regulations authorize the Attorney General to appoint a special counsel and determine the ultimate scope of his jurisdiction, but limit the Attorney General's discretion to remove a special counsel to certain specified reasons.[207] A number of bills proposed during the 116th and 115th Congresses aim to codify aspects of these regulations.[208] Notably, some would statutorily insulate a special counsel from removal and authorize a federal court to review the removal of a special counsel.[209]

---

Special Counsel Regulations because those regulations are not substantive rules that create individual rights; they are merely statements of internal departmental policy.").

[202] *See* Josh Blackman, *Could Trump Remove Special Counsel Robert Mueller? Lessons From Watergate*, LAWFARE (May 23, 2017), https://www.lawfareblog.com/could-trump-remove-special-counsel-robert-mueller-lessons-watergate.

[203] U.S. CONST. art. II, § 1, cl.1.

[204] *Nixon*, 418 U.S. at 693; Buckley v. Valeo, 424 U.S. 1, 139 (1976) (per curiam); Springer v. Gov't of Philippine Islands, 277 U.S. 189, 201-02 (1928).

[205] Presidential Authority to Decline to Execute Unconstitutional Statutes, 18 Op. O.L.C. 199, 199-203 (1994).

[206] *See generally* Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 497 (2010) ("The President can always choose to restrain himself in his dealings with subordinates. He cannot, however, choose to bind his successors by diminishing their powers . . . .").

[207] 28 C.F.R. § 600.7(d).

[208] *See, e.g.*, H.R. 2444, 115th Cong. (2017); Special Counsel Independence and Integrity Act, S. 71, 116th Cong. (2019).

[209] *See Special Counsels and the Separation of Powers: Hearing on S. 1735 & S. 1741 Before the S. Judiciary Comm.*, 115th Cong. (2017).

For instance, S. 1735, introduced in the 115th Congress, would have provided that in order to remove a special counsel, the Attorney General must first file an action with a three-judge court; if that panel issues a finding of "misconduct, dereliction of duty, incapacity, conflict of interest, or other good cause, including violation of policies of the Department of Justice," then a special counsel may be removed.[210] Similarly, S. 1741, the Special Counsel Integrity Act, would have provided that any special counsel appointed on or after May 17, 2017, may only be removed by the Attorney General, or the highest ranking Justice Department official if the Attorney General is recused, for good cause.[211] S. 1741 further provided that a special counsel who has been removed may challenge this action before a three-judge panel, which is authorized to immediately reinstate the individual if the court finds that the removal violated the legislation's terms.[212] Both bills were introduced in the 115th Congress.

Finally, S. 71 and H.R. 197, introduced in the 116th Congress, merge aspects of both of these proposals.[213] They would similarly require good cause in order for the Attorney General to remove a special counsel, but provide a 10-day window in which the special counsel can challenge a removal decision in federal court.[214] If the court determines that the removal violates that good cause standard, then the removal shall not take effect.[215] Understanding these proposals requires an examination of the significant—and oft-debated—constitutional questions concerning Congress's power to establish executive functions outside the direct control of the President.[216]

## Presidential Authority to Oversee Executive Branch Officers

Article II of the Constitution vests the executive power of the United States in the President.[217] As mentioned above, the Supreme Court has made clear that this power includes authority to hold executive branch officers accountable, through removal if necessary.[218] However, the Court has upheld statutory restrictions on the President's removal power for certain offices.[219] In one such case, *Morrison v. Olson*,[220] the Court upheld restrictions on the removal of an independent counsel, although, as discussed below, the Court has not always followed aspects of that decision in subsequent years. The constitutionality of legislative efforts to statutorily insulate a special counsel from removal will thus likely turn on the continuing vitality of the Court's opinion in

---

[210] S. 1735, 115th Cong. § 2(c) (2017).

[211] S. 1741, 115th Cong. § 2(b), (e) (2017).

[212] *Id.* § 2(d).

[213] Special Counsel Independence and Integrity Act, S. 71, 116th Cong. (2019); Special Counsel Independence and Integrity Act, H.R. 197, 116th Cong. (2019).

[214] S. 71 § (a) (adding 28 U.S.C. §599K-8); H.R. 197 (d).

[215] S. 71 § (a) (adding 28 U.S.C. §599K-8); H.R. 197 (e)(3). The bills also provides for the preservation of materials pursuant to a special counsel's investigation during these proceedings. S. 71 § (a) (adding 28 U.S.C. §599K-8); H.R. 197 (e)(4)(B).

[216] U.S. CONST. art II. *See Special Counsels and the Separation of Powers: Hearing on S. 1735 & S. 1741 Before the S. Judiciary Comm.*, 115th Cong. (2017). *Compare* Lawrence Lessig & Cass R. Sunstein, *The President and the Administration*, 94 COLUM. L. REV. 1, 2-4 (1994) (asserting that the Framers did not envision a unitary executive), *with* Steven G. Calabresi & Saikrishna B. Prakash, *The President's Power to Execute the Laws*, 104 YALE L.J. 541, 547-50 (1994) (arguing that the theory of a unitary executive flows from an originalist interpretation of the Constitution's meaning).

[217] U.S. CONST. art. II, § 1, cl. 1.

[218] Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 483 (2010).

[219] Humphrey's Executor v. United States, 295 U.S. 602, 619-20 (1935).

[220] 487 U.S. 654 (1988).

*Morrison* and, more generally, whether a court would apply a more formalist or functionalist methodology in considering such legislation.[221] Definitive conclusions about such efforts are thus difficult absent further guidance from the Court.

## Morrison v. Olson

In the 1988 case of *Morrison v. Olson*, the Supreme Court addressed the issue of whether a federal prosecutor can be insulated from executive control in the context of the now-expired Independent Counsel Act.[222] *Morrison* upheld the independent counsel statute, which, as discussed above, vested the appointment of an independent counsel outside of the executive branch and limited the removal authority of the President.[223] Writing for the Court, Chief Justice Rehnquist concluded that the independent counsel was an inferior, rather than a principal, officer, whose appointment was not required to be made by the President subject to Senate confirmation.[224] The appointment of such officers was permissible because they (1) were removable by the Attorney General for cause; (2) had a limited scope of duties; and (3) possessed limited jurisdiction.[225]

The Court also held that the Independent Counsel Act's provision limiting the authority of the Attorney General to remove the independent counsel for good cause did not impermissibly intrude on the President's power under Article II.[226] The Court rejected a formalistic rule that would bar statutory for-cause removal protections for an individual tasked with "purely executive" functions; instead, it applied a functional test and asked whether Congress has "interfere[d] with the President's" executive power and his "duty to 'take care that the laws be faithfully executed.'"[227] The Court recognized that the independent counsel operated with a measure of independence from the President, but concluded that the statute gave "the Executive Branch sufficient control over the independent counsel to ensure that the President is able to perform his constitutionally assigned duties."[228]

*Morrison* was decided 7-1, with Justice Scalia dissenting from the Court's opinion and Justice Kennedy not participating in the case. In dissent, Justice Scalia argued that the independent counsel statute violated the separation of powers because the Constitution vested authority for criminal investigations and prosecutions exclusively in the executive branch and the statute deprived the President of exclusive control of that power.[229] Under this rationale, he warned that the Court must be very careful to guard against the "'gradual concentration of the several powers in the same department'" that can be likely to occur as one branch seeks to infringe upon another's distinct constitutional authorities.[230] Justice Scalia emphasized the power and discretion

---

[221] For more on the distinction between functionalism and formalism in constitutional interpretation, see CRS Report R45129, *Modes of Constitutional Interpretation*, by Brandon J. Murrill.

[222] 487 U.S. 654 (1988).

[223] *Id.* at 659-60.

[224] *Id.* at 671.

[225] *Id.* at 671-72.

[226] *Id.* at 686-93. The independent counsel was removable by the Attorney General "only for good cause, physical or mental disability (if not prohibited by law protecting persons from discrimination on the basis of such a disability) or any other condition that substantially impairs the performance of such independent counsel's duties." 28 U.S.C. § 596. The independent counsel provisions have since expired. *Id.* § 599.

[227] 487 U.S. at 690 (quoting U.S. CONST. art. II, § 3, cl. 5).

[228] *Id.* at 693-96.

[229] *Id.* at 703-05 (Scalia, J., dissenting).

[230] *Id.* at 699 (quoting THE FEDERALIST NO. 51 (Alexander Hamilton)); *id.* ("Frequently an issue of this sort will come

typically vested in prosecutors and noted that the key check on prosecutorial abuse is political—prosecutors are accountable to, and can be removed by, the President, who is likewise accountable to the people.[231] But operation of the independent counsel statute, for Justice Scalia, eliminated that constitutional feature by creating an unaccountable prosecutor outside of presidential control.[232]

In the years since *Morrison*, especially in the wake of the Whitewater investigation into President Clinton by an independent counsel that culminated in the President's impeachment on grounds that were tangential to the impetus for the investigation, a number of legal scholars criticized the independent counsel statute on both policy and constitutional grounds.[233] Additionally, members of both political parties have since noted opposition to the law, resulting in relatively widespread agreement to let the Independent Counsel Act expire in 1999.[234]

## Post-*Morrison* *Case Law on Appointments and Removal*

The Supreme Court in the 1997 case of *Edmond v. United States* applied a different standard than that enunciated in *Morrison* in the context of a challenge to the appointment of certain "inferior" officers.[235] The opinion, authored by Justice Scalia, adopted the reasoning he applied in dissent in *Morrison* for determining whether an individual is an inferior officer. In that case, the Court did not apply the functional test used in *Morrison* for determining whether an individual was an inferior officer. Instead, it adopted a formal rule—an inferior officer is one who is "directed and supervised" by a principal officer (officers appointed by the President and confirmed by the Senate).[236] Applying this rule, the Court concluded that the appointment of members of the Coast Guard Court of Criminal Appeals by the Secretary of Transportation was consistent with Article II.[237] Specifically, the Court reasoned that because Members of the Coast Guard Court of Criminal Appeals are removable at will and lack power to render a final decision of the United States unless permitted to do so by a superior in the executive branch they are directed and supervised by principal officers.[238] The appointment of the members of the Coast Guard Court of

---

before the Court clad, so to speak, in sheep's clothing: the potential of the asserted principle to effect important change in the equilibrium of power is not immediately evident, and must be discerned by a careful and perceptive analysis. But this wolf comes as a wolf.").

[231] *Id*. at 728-31.

[232] *Id*.

[233] *See* Akhil Reed Amar, *Intratextualism*, 112 Harv. L. Rev. 747, 802-12 (1999) (arguing that *Morrison* was wrongly decided); *Starr Opposes Independent Counsel Act*, CNN.com (Apr. 14, 1999), http://www.cnn.com/ALLPOLITICS/stories/1999/04/14/test.top/; Julie O'Sullivan, *The Independent Counsel Statute: Bad Law, Bad Policy*, 33 Am. Crim. L. Rev. 463, 475-509 (1996); Julian A. Cook III, *Mend It or End It? What To Do With the Independent Counsel Statute*, 22 Harv. J. L. & Pub. Pol'y 279, 288-316 (1998); Ken Gormley, *Monica Lewinsky, Impeachment, and the Death of the Independent Counsel Law: What Congress Can Salvage from the Wreckage–A Minimalist View*, 60 Md. L. Rev. 97, 113-31 (2001).

[234] *See* Saikrishna Prakash, *The Chief Prosecutor*, 73 Geo. Wash. L. Rev. 521, 525–26 (2005) ("In the wake of Kenneth Starr''s investigation of several Clinton-era scandals, a bipartisan consensus emerged against the use of independent counsels."); Michael Gerhardt, The Federal Impeachment Process 189-91 (2000); *see, e.g.*, *Independent Counsel Act: Hearing Before the S. Governmental Affairs Comm.*, 106th Cong. (Mar. 17, 1999) (statement of Janet Reno, Attorney General) ("However, after working with the Act, I have come to believe—after much reflection and with great reluctance—that the Independent Counsel Act is structurally flawed and that those flaws cannot be corrected within our constitutional framework.").

[235] 520 U.S. 651 (1997).

[236] *Id.* at 663.

[237] *Id.* at 663-65.

[238] *Id.* at 664-65.

Criminal Appeals by the Secretary of Transportation was thus constitutional because the members constituted inferior officers and the Secretary was a principal officer.[239]

More recently, in the 2010 case of *Free Enterprise Fund v. Public Company Accounting Oversight Board*, the Court invalidated statutory structural provisions providing that members of the Public Company Accounting Oversight Board could be removed only "for cause" by the Securities and Exchange Commission, whose members, in turn, appeared to also be protected from removal by for-cause removal protections.[240] The Court again applied a rather formalist rule in analyzing Congress's attempt to shield executive branch officers from removal, rather than the functional approach followed in *Morrison*.[241] The Court concluded that, while the early 20th century case of *Humphrey's Executor v. United States* had approved such protections for the heads of independent agencies and *Morrison* did the same for certain inferior officers, the combination of dual "for cause" removal protections flatly contradicted the vestment of executive power in the President under Article II.[242] Further, the Court then applied the test it used in *Edmund*, rather than the functional analysis of *Morrison*, in concluding that members of the regulatory board were now—after invalidation of statutory removal protections by the Court— inferior officers because the Securities and Exchange Commission, composed of principal officers, possessed oversight authority over the board and the power to remove its members at will.[243]

However, the Court has not gone so far as to overrule or even explicitly question *Morrison*. As a result, that opinion's holding regarding the constitutionality of for-cause restrictions for an independent counsel binds the lower courts.[244] Moreover, while the Court's decisions in *Edmund* and *Free Enterprise Fund* have not applied the reasoning in *Morrison* concerning the test for who qualifies as an inferior officer, it is not necessarily clear what removal restrictions are appropriate for principal officers or how the determinations about the appointment power concern determinations about the scope of the removal power.[245] Nonetheless, it appears that the *Edmond* test, rather than the *Morrison* analysis, for determining whether an individual is an inferior officer is what will guide the Court going forward.[246] Furthermore, *Free Enterprise Fund* represents a movement toward a more formalist, and possibly more expansive, view of the Presidential power of removal than was expressed in *Morrison*.[247] More fundamentally, no member of the *Morrison*

---

[239] *Id.*

[240] 561 U.S. 477, 491 (2010); *id.* at 487 (noting that the parties agreed the Commissioners could not be removed except for cause).

[241] *See id.* at 519-20 (Breyer, J. dissenting) (arguing for a functional approach to the case as opposed to the "bright-line rule[]" adopted by the majority opinion).

[242] *Id.* at 496.

[243] Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 510 (2010). The Court reached this conclusion after invalidating "for cause" removal restrictions on the Board members on separation of powers grounds. *Id.* at 508.

[244] *See* Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484 (1989).

[245] PHH Corp. v. Consumer Fin. Prot. Bureau, 881 F.3d 75, 96 n.2 (D.C. Cir. 2018) (en banc) (arguing that "whether a removal restriction unconstitutionally constrains presidential power thus does not track whether the shielded official is a principal or inferior officer"); *but see* Myers v. United States, 272 U.S. 52, 110 (1926) (describing the removal power as "incident to the power of appointment).

[246] *See Free Enterprise Fund*, 561 U.S. at 496.

[247] *See Justice Kagan and Judges Srinivasan and Kethledge Offer Views from the Bench*, 92 STANFORD LAW. 4 (2015) (quoting Justice Kagan as describing Justice Scalia's *Morrison* dissent as "one of the greatest dissents ever written and every year it gets better"); Elena Kagan, *Presidential Administration*, 114 HARV. L. REV. 2245, 2252 (2001) ("I aver that in comparison with other forms of control, the new presidentialization of administration renders the bureaucratic sphere more transparent and responsive to the public, while also better promoting important kinds of regulatory

Court sits on the Supreme Court today.[248] Because of this apparent shift in the Court's general approach to separation-of-powers matters related to appointment and removal, and the current Court's relative silence on *Morrison's* import, whether today's Court would necessarily view a reauthorization of the independent counsel statute or a similar statute in the same manner as it did in *Morrison* is subject to debate.[249]

## Legislation to Establish For-Cause Removal Protection for a Special Counsel

Assuming that the Supreme Court were to follow the functional approach reflected in its *Morrison* decision, efforts to statutorily require good cause to remove a special counsel would likely pass constitutional muster. As noted above, in *Morrison*, the Court examined whether Congress had impermissibly interfered with the President's constitutional duties;[250] it approved of the independent counsel statute's provisions that, among other things, (1) required good cause to remove the independent counsel; (2) largely restricted the Attorney General's discretion in deciding to request the appointment of an independent counsel; and (3) placed the actual power of appointment with a panel of Article III judges.[251] Legislation that would statutorily insulate a future special counsel from removal except for good cause appears roughly analogous to the for-cause removal provisions upheld in *Morrison*.[252] In fact, some proposals appear to be less restrictive of the President's power relative to the independent counsel statute. For instance, S. 1741 (115th Congress) and S. 71 (116th Congress) appear to contemplate the appointment of a special counsel at the discretion of the AG, and they provide that only the Attorney General—or the most senior Justice official who has been confirmed by the Senate if the Attorney General is recused—may remove a special counsel.[253] Under both bills, an executive branch official would retain discretion to appoint and remove a special counsel for cause. Under *Morrison's* functional balancing approach, which examines whether Congress has unduly interfered with the President's executive power and duty to take care that the law is executed faithfully, this framework is less intrusive of executive branch power than was the independent counsel statute because the executive branch would retain control over a special counsel's appointment.[254]

---

competence and dynamism."); *In re* Aiken Cty., 645 F.3d 428, 444 (D.C. Cir. 2011) (Kavanaugh, J., concurring) (highlighting the broad view of executive power under Article II espoused in *Free Enterprise Fund*).

[248] *But see In re* Sealed Case, 838 F.2d 476, 518 (D.C. Cir.) (Ginsburg, J., dissenting) ("Because I conclude that the Ethics Act neither impermissibly transfers an executive function to another branch nor orders an undue displacement of executive prerogatives, I would hold that the legislation withstands appellants' separation of powers challenges."), *rev'd sub nom.* Morrison v. Olson, 487 U.S. 654 (1988).

[249] *See* Adrian Vermeule, Morrison v. Olson *is Bad Law*, LAWFARE (June 9, 2017), https://www.lawfareblog.com/ morrison-v-olson-bad-law; *Special Counsels and the Separation of Powers: Hearing on S. 1735 & S. 1741 Before the S. Judiciary Comm.*, 115th Cong. (2017) (statement of Professor Akhil Reed Amar) (arguing that "today's Court would most likely . . . either flat-out overrule *Morrison* or treat it as irrelevant" if faced with a statute codifying for-cause protections for a special counsel). *But see id.* (statement of Professor Stephen Vladeck) (asserting that *Morrison* remains good law and "has become deeply rooted in the Court's separation-of-powers jurisprudence").

[250] Morrison v. Olson, 487 U.S. 654, 689-90 (1988).

[251] *Id.* at 693-96.

[252] S. 1741, 115th Cong. § 2 (2017).

[253] S. 1741, 115th Cong. § 2(a) (2017); S. 71, 116th Cong. § (a) (adding 28 U.S.C. §§ 599K-1, K-8) (2019).

[254] *Morrison*, 487 U.S. at 690.

Likewise, insulating a special counsel from removal by the Attorney General except for those reasons outlined in current Justice regulations—"for misconduct, dereliction of duty, incapacity, conflict of interest, or for other good cause, including violation of Departmental policies"[255]— would likely permit removal of a special counsel for a broader range of reasons than did the now-expired independent counsel statute, which limited the basis for removal to "good cause, physical disability, mental incapacity, or any other condition that substantially impairs the performance of such independent counsel's duties."[256] Specifically, several bills would add misconduct, dereliction of duty, and conflict of interest as grounds for removal, and specifically define good cause to include violation of departmental policies.[257] At least considered in isolation, such a provision would be less intrusive into the executive branch's authority under Article II than the statute at issue in *Morrison*, as the proposal would grant the Attorney General—a principal officer directly accountable to the President—greater control of the special counsel than he had under the independent counsel statute.[258] Accordingly, if the Court were to embrace a functionalist balancing approach in a challenge to such a provision, it would likely affirm its constitutionality as the executive branch could remove a special counsel for a broader range of reasons than was permitted in the independent counsel statute.

Nevertheless, bills that aim to insulate a special counsel from removal might be constitutionally suspect if the Court chose to overrule *Morrison* or limit the reach of that case to its facts. In particular, were the Court to face a challenge to a special counsel entrusted with wide-ranging investigative authority who statutorily could not be removed except for cause, application of the approach in *Edmond*, rather than *Morrison*, might result in the Court concluding that a special counsel is a principal officer.[259] As noted above, *Edmond*'s test for inferior officer status is that the individual be directed and supervised by a principal officer.[260] And that test was satisfied because Coast Guard Court of Appeals judges were removable at will and lacked power to render final decisions of the executive branch.[261] A special counsel with statutory removal protection would obviously not be removable at will.[262] As to whether a special counsel renders final decisions, any analysis would likely depend on the scope of authority granted to a special counsel.[263] Were the Court to conclude that a special counsel does constitute a principal officer,

---

[255] 28 C.F.R. § 600.7(d). *See, e.g.*, H.R. 2444, 115th Cong. § 8(d) (2017).

[256] *Morrison*, 487 U.S. at 663.

[257] S. 71, 116th Cong. § (a) (adding 28 U.S.C. §599K-8) (2019); H.R. 197, 116th Cong. § (b) (2019); S. 1741, 115th Cong. § 2(b) (2017); H.R. 2444, 115th Cong. § 8(d) (2017). S. 1735 would permit removal for the same reasons, but place discretion to find those reasons with a judicial body. S. 1735, 115th Cong. § 2(c) (2017). This provision might raise distinct issues under Article II, see discussion *infra* "Judicial Review."

[258] While the Court in *Morrison* upheld a challenge to the independent counsel provisions of the Ethics in Government Act, one might note that the investigation underway in that case was fairly limited in scope—focused as it was on one individual—at least relative to the potentially wide-ranging authority possible under the special counsel regulations. *See Morrison*, 487 U.S. at 665-69. *But see id.* at 715-23 (Scalia, J., dissenting) (emphasizing the power wielded by the independent counsel).

[259] *See supra* "Post-Morrison Case Law on Appointments and Removal"; Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd., Inc, 684 F.3d 1332, 1340-41 (D.C. Cir. 2012) (concluding that severing a for-cause removal provision transformed Copyright Royalty Judges from principal to inferior officers).

[260] Edmond v. United States, 520 U.S. 651, 663 (1997).

[261] *Id.* at 664-65.

[262] *See Intercollegiate Broad. Sys.*, 684 F.3d at 1339 (ruling that Copyright Royalty Judges were principal, rather than inferior, officers, because they could only be removed for cause, were not subject to extensive supervision by a superior, and could render final decisions).

[263] The current scope of the special counsel's authority could be viewed as quite broad, as the special counsel enjoys the full power of a United States Attorney and is not subject to day-to-day supervision. *See* 28 C.F.R. § 600.6 ("[T]he

his or her appointment must be made by the President with Senate confirmation, rather than by the Attorney General.[264] Further, any removal restrictions might be questioned as well, as the Court has never approved such restrictions for a principal officer charged with core executive functions.[265] Nonetheless, the Court has not reconciled its holding on the appointments question in *Morrison* with its holding in *Edmond,* meaning that the limits on Congress's power to insulate executive branch officials from removal are subject to debate.[266]

More broadly, a departure from *Morrison* and an application of the Court's more recent formalist approach to separation of powers disputes, as evidenced in *Free Enterprise Fund*, might cast for-cause removal protections for a special counsel in an unfavorable light. The Court's emphasis in that case on the importance of presidential control over executive branch officers and the ability to hold them accountable in order to preserve the constitutional structure envisioned by the Framers could be read to conflict with statutory removal restrictions for government officers carrying out core executive functions.[267]

That said, a middle road is possible. Were Congress to pass legislation insulating a special counsel from removal except for cause, one option might be for the Court to narrowly construe the scope of for-cause removal protections, interpreting them to permit removal for a broad range of reasons.[268] This would avoid overruling *Morrison*, but arguably preserve substantial executive branch authority over the special counsel. Nonetheless, such a reading might authorize more

---

Special Counsel shall exercise, within the scope of his or her jurisdiction, the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney."); *id*. § 600.7(b) ("The Special Counsel shall not be subject to the day-to-day supervision of any official of the Department."); s*ee also Special Counsels and the Separation of Powers: Hearing on S. 1735 & S. 1741 Before the S. Judiciary Comm*., 115th Cong. (2017) (statement of Professor Akhil Reed Amar) ("The Mueller investigation is thus vastly wider and more consequential for the republic than was Alexia Morrison's."). On the other hand, as discussed earlier in this report, see *supra* "Oversight and Removal," there are a number of decisions that the Special Counsel cannot make without approval of the Attorney General. *See id*. § 600.7(b) ("However, the Attorney General may request that the Special Counsel provide an explanation for any investigative or prosecutorial step, and may after review conclude that the action is so inappropriate or unwarranted under established Departmental practices that it should not be pursued. In conducting that review, the Attorney General will give great weight to the views of the Special Counsel."); *id*. § 600.4(b) ("[T]he Attorney General . . . will determine whether to include . . . additional matters within the Special Counsel's jurisdiction or assign them elsewhere."). The Special Counsel regulations explicitly note that the Attorney General (or his surrogate) retains "ultimate responsibility" for the investigation. Office of Special Counsel, 64 Fed. Reg. 37,038, 37,038 (July 9, 1999).

[264] U.S. CONST. art. II, § 2, cl. 2.

[265] *See* Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 492-95 (2010); *see also* Myers v. United States, 272 U.S. 52, 164 (1926); *but see* Humphrey's Executor v. United States, 295 U.S. 602, 619-20 (1935) (upholding removal restrictions for members of the Federal Trade Commission because the commissioners exercised "quasi-legislative" and "quasi-judicial" functions); PHH Corp. v. Consumer Fin. Prot. Bureau, 881 F.3d 75, 97 n.2 (D.C. Cir. 2018) (en banc) (arguing that "whether a removal restriction unconstitutionally constrains presidential power thus does not track whether the shielded official is a principal or inferior officer").

[266] Nick Bravin, *Is* Morrison v. Olson *Still Good Law? The Court's New Appointments Clause Jurisprudence*, 98 Colum. L. Rev. 1103, 1106 (1998).

[267] *In re* Aiken Cty., 645 F.3d 428, 444 (D.C. Cir. 2011) (Kavanaugh, J., concurring) ("[T]he *Free Enterprise Court* repeatedly emphasized the central role of the President under Article II and the importance of that role to a government that remains accountable to the people. The Court's rhetoric and reasoning are notably in tension with *Humphrey's Executor*.").

[268] *See, e.g*., *PHH Corp*., 881 F.3d at 124 (D.C. Cir. 2018) (Griffith, J., concurring in the judgment) (construing for-cause removal protections for the Director of the Consumer Financial Protection Bureau to "provide only a minimal restriction on the President's removal power, even permitting him to remove the Director for ineffective policy choices").

significant control of a special counsel's decisions, ultimately restricting the independence of the office, at least compared to that envisioned by the independent counsel statute.[269]

## Legislation to Establish Judicial Review of a Removal Decision

Certain bills authorizing a judicial role in the removal of a special counsel may raise distinct constitutional questions. As an initial matter, proposals to authorize judicial review of a decision by the Attorney General to remove a special counsel, such as S. 1741 (115th Congress), as well as S. 71 and H.R. 197 (116th Congress),[270] appear somewhat similar to provisions considered by the Court in *Morrison*.[271] And the Supreme Court has otherwise adjudicated suits from government officers who have been removed from their position.[272] It bears mention, however, that the traditional remedy in such situations has been for back pay, rather than reinstatement.[273] Bills that limit available remedies to reinstatement, or require this result, depart from the independent counsel statute's provisions, which provided a reviewing court with the option to order reinstatement or issue "other appropriate relief."[274] One might distinguish between, on the one hand, a court's undisputed power to determine compliance with the law and award damages for violations, and, on the other, a potential judicial order directing an executive branch official to reappoint an individual to an office. In this vein, injunctive relief of this type could be viewed as inserting the judiciary into a role assigned by Article II to the executive branch.[275]

In addition, at least one proposal, S. 1735, might authorize the judiciary to play a more substantial role in the removal of a special counsel.[276] That bill would bar the removal of a special counsel unless the Attorney General first files a petition with a three-judge court, and that court itself finds "misconduct, dereliction of duty, incapacity, conflict of interest, or other good cause, including violation of policies of the Department of Justice."[277] Inserting the judiciary into a removal decision, by requiring a court to determine in the first instance the grounds for the dismissal of an executive branch official before he may be removed, appears to go beyond the restrictions on the President's removal power previously approved by the Supreme Court in

---

[269] *See id*. at 122-23 (Wilkins, J., concurring) (concluding that removal protections for the Director of the Consumer Financial Protection Bureau should not be read to permit removal for policy disagreements as this would undermine the independence of independent agencies).

[270] S. 71, 116th Cong. § (a) (adding 28 U.S.C. § 599K-8) (2019); H.R. 197, 116th Cong. § (e) (2019); S. 1741, 115th Cong. § 2(d) (2017).

[271] Morrison v. Olson, 487 U.S. 654, 663-64 (1988). S. 71 provides that the Attorney General may remove a special counsel, but imposes a ten-day window in which the special counsel may challenge this decision in federal court. If the court finds that the Attorney General does not have good cause to remove the special counsel, the removal shall not take effect. S. 71, 116th Cong. § (a) (adding 28 U.S.C. § 599K-8).

[272] Myers v. United States, 272 U.S. 52, 106-07 (1926).

[273] *See, e.g.*, Humphrey's Executor v. United States, 295 U.S. 602, 619-20 (1935). *But see* Berry v. Reagan, No. 83-3182, 1983 WL 538, at *6 (D.D.C. Nov. 14, 1983) (issuing a preliminary injunction barring the removal of members of the U.S. Commission on Civil Rights from their posts).

[274] *Compare* Ethics in Government Act, 28 U.S.C. § 596(a)(3) (authorizing a court reviewing the removal of an independent counsel to grant reinstatement or "other appropriate relief"), *with* S. 1741, 115th Cong. § 2(d)(3) (2017) (providing only that a special counsel shall be reinstated to his position upon a judicial finding that he was removed in violation of the statute), *and* S. 71, 116th Cong. § (a) (adding 28 U.S.C. § 599K-8) ("If a court determines that the removal of the individual who filed an action under this subsection violates this chapter, the removal shall not take effect. The court may also provide other appropriate relief.").

[275] *See* Aziz Z. Huq, *Removal as a Political Question*, 65 Stan. L. Rev. 1, 76 (2013) ("[I]njunctive relief against an executive branch official in the form of a reinstatement order would raise substantial constitutional issues.").

[276] S. 1735, 115th Cong. § 2 (2017).

[277] *Id*. § 2(c).

*Humphrey's Executor* and *Morrison*. As the *Free Enterprise Fund* Court explained, even in the prior cases that "upheld limited restrictions on the President's removal power, it was the President—or a subordinate he could remove at will—who decided whether the officer's conduct merited removal under the good-cause standard."[278] The body charged with determining whether good cause exists to remove a special counsel would not be one that is subordinate to or accountable to the President; indeed, that body is not located in the executive branch at all.[279] Moreover, *Free Enterprise Fund* invalidated two layers of removal protection for executive branch officers as violating Article II.[280] Here, a special counsel could not be removed unless permitted by Article III judges—judicial officers who may not be removed except through the impeachment process.[281] As such, with regards to this proposal, not only would two layers of removal protection shield a special counsel from dismissal, but one layer would be significantly more stringent than the for-cause protection in *Free Enterprise Fund*.

Further, while the Court in *Morrison* saw no issue with the independent counsel statute's provision authorizing ex post judicial review (i.e., after the fact) of a removal decision,[282] that conclusion rested on the understanding that the executive branch retained discretion over the decision to remove an independent counsel.[283] Judicial review in that situation was limited to ensuring compliance with the law.[284] Indeed, the *Morrison* Court narrowly construed that statute to preclude any role for the judicial panel that was entrusted with appointing an independent counsel in removing him during an investigation or judicial proceeding.[285] The Court explained that this move avoided an unconstitutional "intrusion into matters that are more properly within the Executive's authority."[286] Proposals that require an initial judicial finding of good cause in order to authorize removal arguably insert the judiciary into an executive branch function in a manner the *Morrison* Court appeared to consider questionable.

---

[278] Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 495 (2010).

[279] S. 1735, 115th Cong. § 2(c) (2017); U.S. CONST. art. III, § 1.

[280] *Free Enter. Fund*, 561 U.S. at 495.

[281] U.S. CONST. art. III, § 1.

[282] Morrison v. Olson, 487 U.S. 654, 693 n.33 (1988).

[283] *Id*. at 682-83 ("The termination provisions of the Act do not give the Special Division anything approaching the power to remove the counsel while an investigation or court proceeding is still underway—this power is vested solely in the Attorney General. . . . So construed, the Special Division's power to terminate does not pose a sufficient threat of judicial intrusion into matters that are more properly within the Executive's authority to require that the Act be invalidated as inconsistent with Article III.").

[284] *Id*. at 693 n.33 ("The purpose of such review is to ensure that an independent counsel is removed only in accordance with the will of Congress as expressed in the Act. The possibility of judicial review does not inject the Judicial Branch into the removal decision, nor does it, by itself, put any additional burden on the President's exercise of executive authority.").

[285] The independent counsel statute authorized the special division to terminate the office of the independent counsel. 28 U.S.C. § 596(b)(2). The Court rejected the Court of Appeals for the District of Columbia's broader reading of that provision and concluded that termination simply authorized the special division to terminate the office once the investigation was completed. *Morrison*, 487 U.S. at 682-83.

[286] *Morrison*, 487 U.S. at 682-83.

On the other hand, application of a functional approach akin to *Morrison*, which examined a variety of factors in adjudicating the separation of powers dispute, might nevertheless conclude that a requirement of an initial judicial finding of good cause in order to remove a special counsel does not impair the President's core Article II responsibilities. First, under S. 1735, the Attorney General retains discretion to initiate a removal in the first place by petitioning the three-judge panel; that body would lack authority to remove a special counsel independently.[287] Second, the previously upheld independent counsel statute authorized judicial review of a removal of the independent counsel and authorized reinstatement as a remedy.[288] The bill's provision would shift the sequence of the judicial role from an ex post review to an ex ante (i.e., beforehand) authorization. Viewed in this light, it is unclear why that shift would necessarily make a substantive difference, because even if the executive branch ignored the provision allowing for ex ante review and removed a special counsel unilaterally, the special counsel could sue for reinstatement, which would leave the court in largely the same position. Finally, while requiring judicial authorization to remove a special counsel might intrude somewhat on the executive branch's Article II authority other aspects of the bill are less intrusive. For instance, the bill leaves discretion to appoint the special counsel with the Attorney General, and appears to permit removal for a wider range of conduct than did the independent counsel statute.[289] Because the *Morrison* Court balanced a variety of factors and concluded that the independent counsel statute did not impermissibly interfere with the President's duty to execute the law, an application of *Morrison* might mean that these features ameliorate concerns about a judicial body first approving of a removal.

Leaving aside issues arising under Article II of the Constitution, legislation requiring the Attorney General to first petition a federal court for a good cause finding *before* removing a special counsel might raise questions under Article III. The Constitution defines the proper scope of the federal courts' jurisdiction as limited to adjudicating "cases" and "controversies."[290] The Supreme Court has articulated several legal doctrines emanating from Article III that limit the circumstances under which the federal courts will adjudicate disputes.[291] The Court has interpreted Article III to require adversity between the parties, or a live dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests."[292] Further, the Court has made clear that duties of an administrative or executive nature generally may not be vested in Article III judges.[293] Article III courts are permitted to exercise certain non-adjudicatory functions, but these exceptions are generally limited to duties incident to the judicial function, such as supervising grand juries and participating in the issuance of search warrants.[294] With respect to a suit by the Attorney General seeking ex ante judicial authorization to remove a special counsel, these requirements might not necessarily be met.[295] For instance, given this procedural posture, it is not

---

[287] S. 1735, 115th Cong. § 2(a) (2017).

[288] *Morrison*, 487 U.S. at 663-64.

[289] S. 1735, 115th Cong. § 2 (2017).

[290] U.S. CONST. art. III, § 2; *see* Massachusetts v. EPA, 549 U.S. 497, 516 (2007) ("Article III of the Constitution limits federal-court jurisdiction to 'Cases' and 'Controversies.'").

[291] *See* Allen v. Wright, 468 U.S. 737, 750 (1984); Bennett v. Spear, 520 U.S. 154, 162 (1997).

[292] Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937).

[293] *Morrison*, 487 U.S. at 677; Mistretta v. United States, 488 U.S. 361, 385-89 (1989); United States v. Ferreira, 54 U.S. 40, 51 (1851).

[294] *See Morrison*, 487 U.S. at 681 n.20; *Mistretta*, 488 U.S. at 385-97.

[295] *See Special Counsels and the Separation of Powers: Hearing on S. 1735 & S. 1741 Before the S. Judiciary Comm.*, 115th Cong. (2017) (testimony of Professors John Duffy and Stephen Vladeck) (both noting that such a provision raises issues under Article III).

obvious who the adverse party would be as the legislation does not explicitly authorize the special counsel to participate in the proceedings. Likewise, the supervision of executive branch officers, including discretion to remove them, is traditionally an executive or administrative function, rather than a judicial one.[296]

## Retroactive Application of Legislation to Insulate a Special Counsel

Finally, certain bills that aim to insulate a special counsel from removal might raise unresolved questions concerning their retroactivity. For instance, S. 1741 (115th Congress) would have provided that a special counsel may not be removed except for cause and that this provision retroactively applies to any special counsel appointed on or after May 17, 2017.[297] Likewise, S. 71 and H.R. 197 (116th Congress) contain a similar provision, although it applies to any special counsel appointed on or after January 1, 2017.[298] One might argue that statutorily insulating a currently serving special counsel from removal improperly inserts Congress into the appointments process.[299] The Supreme Court has invalidated legislation that explicitly authorized Members of Congress to appoint executive branch officers[300] and has done the same to legislation authorizing Congress to remove an executive branch officer through a joint resolution.[301] Insulating a currently serving executive branch officer from removal via statute might be seen as an attempt by Congress to subvert the purposes of the Appointments Clause, effectively transforming a particular prosecutor's office from one that is subject to executive branch control into one that is statutorily independent without allowing for a new appointment consistent with the Constitution.[302] In particular, if such a bill were passed immediately, it might be seen to apply exclusively to a single individual in the executive branch, effectively appointing a particular executive branch officer for an indefinite time period. To the extent that this provision is viewed as a legislative aggrandizement of the executive's appointment power, it might raise separation-of-powers concerns.[303]

That said, it does not appear that a Supreme Court case has directly addressed such a statutory provision. In *Myers v. United States*, the Court invalidated a statutory restriction on the removal of an executive branch officer.[304] The pertinent statute in that case bestowed removal protection retroactively on executive branch officers, but the Court's opinion did not hinge on this feature of the statute.[305] Further, such a provision would only codify requirements that already exist in

---

[296] *See* Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 492-95 (2010).

[297] S. 1741, 115th Cong. § 2(b), (e) (2017).

[298] S. 71, 116th Cong. § (c) (2019); H.R. 197, 116th Cong. § (f) (2019).

[299] *See Special Counsels and the Separation of Powers: Hearing on S. 1735 & S. 1741 Before the S. Judiciary Comm.*, 115th Cong. (2017) (testimony of Professor John Duffy).

[300] Buckley v. Valeo, 424 U.S. 1, 129 (1976) (per curiam).

[301] Bowsher v. Synar, 478 U.S. 714, 727 (1986).

[302] *See* Weiss v. United States, 510 U.S. 163, 173–74 (1994); Shoemaker v. United States, 147 U.S. 282, 300-01 (1893).

[303] *See* Constitutional Separation of Powers Between President & Cong., 20 Op. O.L.C. 124 (1996) (asserting that "lengthening the term of an officer who may be removed only for cause would be constitutionally questionable").

[304] Myers v. United States, 272 U.S. 52, 126 (1926). *See generally* Glidden Co. v. Zdanok, 370 U.S. 530 (1972).

[305] *See* Tenure of Office Act of March 2, 1867, 14 Stat. 430, ch. 154. Lower courts have approved the extension of terms of bankruptcy judges, who may only be removed for cause under 28 U.S.C. § 152. *See In re* Inv. Bankers, Inc., 4 F.3d 1556, 1563 (10th Cir. 1993). One court cautioned, however, that "a prospective extension of term of office becomes similar to an appointment . . . when it extends the office for a very long time." *In re* Benny, 812 F.2d 1133, 1141 (9th Cir. 1987). Bankruptcy judges are judicial, rather than executive branch officers.

regulations, which might be seen as a relatively minor adjustment to a special counsel's office that does not require a new appointment.[306] Given the lack of preexisting case law relevant to such a provision, firm conclusions about its merit are likely premature.

# Conclusion

Both Congress and the executive branch have employed a variety of means to establish independence for certain criminal investigations and prosecutions. The use of special prosecutors, independent counsels, and special counsels all have allowed for the investigation of executive branch misconduct. Nonetheless, efforts to provide independence for prosecutors from executive branch control often raise constitutional questions. In turn, proposals to statutorily protect a special counsel from removal thus raise important, but unresolved, constitutional questions about the separation of powers. As a general matter, simply insulating a future special counsel from removal except for specified reasons appears consistent with the Court's opinion in *Morrison*. To the extent the current Court might depart from the functional reasoning of that case and apply a more formal approach to the question, however, such proposals might raise constitutional objections. Likewise, constitutional objections might arise against proposals aimed to insulate a special counsel in a manner beyond the framework approved in *Morrison*.

## Author Information

Cynthia Brown
Legislative Attorney

Jared P. Cole
Legislative Attorney

## Disclaimer

This document was prepared by the Congressional Research Service (CRS). CRS serves as nonpartisan shared staff to congressional committees and Members of Congress. It operates solely at the behest of and under the direction of Congress. Information in a CRS Report should not be relied upon for purposes other than public understanding of information that has been provided by CRS to Members of Congress in connection with CRS's institutional role. CRS Reports, as a work of the United States Government, are not subject to copyright protection in the United States. Any CRS Report may be reproduced and distributed in its entirety without permission from CRS. However, as a CRS Report may include copyrighted images or material from a third party, you may need to obtain the permission of the copyright holder if you wish to copy or otherwise use copyrighted material.

---

[306] *See Weiss*, 510 U.S. at 174-76.