UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEROME CORSI,<br><br>                Defendant. | Criminal No.:<br><br>Violation: 18 U.S.C. § 1001(a)(2) (False Statements) |

## STATEMENT OF THE OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America and the defendant, JEROME CORSI, stipulate and agree that the following facts are true and accurate. These facts do not constitute all of the facts known to the parties concerning the charged offense; they are being submitted to demonstrate that sufficient facts exist that the defendant committed the offense to which he is pleading guilty.

1. On or about September 6, 2018, the defendant, JEROME CORSI, was interviewed voluntarily by the Special Counsel's Office, including Department of Justice prosecutors and Special Agents of the Federal Bureau of Investigation. At the time of the interview, the Special Counsel's Office was investigating the Russian government's efforts to interfere in the 2016 presidential election, including:

     a. the theft of campaign-related emails and other documents by the Russian government's Main Intelligence Directorate of the General Staff ("GRU");

     b. the GRU's provision of certain of those documents to an organization ("Organization 1") for public release in order to expand the GRU's interference in the 2016 U.S. presidential election campaign; and

      c. the nature of any connections between individuals associated with the U.S. presidential campaign of Donald J. Trump ("Trump Campaign") and the Russian government or Organization 1.

2.     CORSI was represented by counsel during the September 6, 2018 interview. At the outset of the interview, CORSI was warned that intentionally making false statements to the investigators was a violation of federal law. CORSI said that he understood.

3.     During the interview, CORSI said that in the summer of 2016 an associate ("Person 1") who CORSI understood to be in regular contact with senior members of the Trump Campaign, including with then-candidate Donald J. Trump, asked CORSI to get in touch with Organization 1 about materials it possessed relevant to the presidential campaign that had not already been released. CORSI thereafter knowingly and intentionally made the following materially false statements during the interview:

      a. CORSI said he declined the request from Person 1 and made clear to Person 1 that trying to contact Organization 1 could be subject to investigation. CORSI also stated that Person 1 never asked CORSI to have another person try to get in contact with Organization 1, and that CORSI told Person 1 that they should just wait until Organization 1 released any materials.

      b. CORSI further stated that after that initial request from Person 1, CORSI did not know what Person 1 did with respect to Organization 1, and he never provided Person 1 with any information regarding Organization 1, including what materials Organization 1 possessed or what Organization 1 might do with those materials.

4. In truth and in fact, and as CORSI well knew, after Person 1 asked CORSI to get in touch with Organization 1, CORSI did not decline the request as he stated in the interview. Instead, CORSI contacted an individual who resided in London, England ("overseas individual") to pass on Person 1's request to learn about materials in Organization 1's possession that could be relevant to the presidential campaign. Corsi thereafter told Person 1 that Organization 1 possessed information that would be damaging to then-candidate Hillary Clinton and that Organization 1 planned to release damaging information in October 2016.

   a. On or about July 25, 2016, Person 1 sent an email to CORSI with the subject line, "Get to [the founder of Organization 1]." The body of the message read: "Get to [the founder of Organization 1] [a]t Ecuadorian Embassy in London and get the pending [Organization 1] emails . . . they deal with Foundation, allegedly." On or about the same day, CORSI forwarded Person 1's email to the overseas individual.

   b. On or about July 31, 2016, Person 1 emailed CORSI with the subject line, "Call me MON." The body of the email read in part that the overseas individual "should see [the founder of Organization 1]."

   c. On or about August 2, 2016, CORSI responded to Person 1 by email. CORSI wrote that he was currently in Europe and planned to return in mid-August. CORSI stated: "Word is friend in embassy plans 2 more dumps. One shortly after I'm back. 2nd in Oct. Impact planned to be very damaging.… Time to let more than [the Clinton Campaign chairman] to be exposed as in bed w enemy if they are not ready to drop HRC [Hillary Rodham Clinton]. That appears to be the game hackers

3

are now about.  Would not hurt to start suggesting HRC old, memory bad, has stroke -- neither he nor she well.  I expect that much of next dump focus, setting stage for Foundation debacle."

5. Between approximately January 13, 2017 and March 1, 2017, CORSI deleted from his computer all email correspondence that predated October 11, 2016, including Person 1's email instructing CORSI to "get to [the founder of Organization 1]" and CORSI's subsequent forwarding of that email to the overseas individual.

6. After the U.S. House of Representatives Permanent Select Committee on Intelligence ("HPSCI"), the U.S. Senate Select Committee on Intelligence ("SSCI"), and the Federal Bureau of Investigation ("FBI") began inquiring in 2017 about Person 1's connections with Organization 1, CORSI communicated with Person 1 about developments in those investigations.  For example, on or about November 28, 2017, after Person 1 had identified to HPSCI a certain individual ("Person 2") as his "source" or "intermediary" to Organization 1, Person 2 received a subpoena compelling his testimony before HPSCI, and Person 1 learned of the subpoena.  On or about November 30, 2017, Person 1 asked CORSI to write publicly about Person 2. CORSI responded: "Are you sure you want to make something out of this now?  Why not wait to see what [Person 2] does?  You may be defending yourself too much – raising new questions that will fuel new inquiries.  This may be a time to say less, not more."  Person 1 responded by telling CORSI that the other individual "will take the 5th—but let's hold a day."

7. Following his September 10, 2018 interview, CORSI met with the Special Counsel's Office for several additional interviews and voluntarily provided access to his email accounts and electronic devices.  CORSI made numerous claims during these interviews, including

4

that his representations to Person 1, beginning in August 2016, that he had a way of obtaining confidential information from Organization 1, were false.

                                          ROBERT S. MUELLER, III
                                          Special Counsel

                   By:     _____
                            Jeannie S. Rhee
                            Andrew D. Goldstein
                            Aaron S.J. Zelinsky
                            L. Rush Atkinson, V
                            The Special Counsel's Office

## DEFENDANT'S ACCEPTANCE

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crime charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

I have read every word of this Statement of the Offense, or have had it read to me. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of the Offense, and declare under penalty of perjury that it is true and correct.

Date:_____        _____
                                      Jerome Corsi
                                      Defendant


## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense, and have reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Statement of the Offense as true and accurate.

Date: _____       _____
                                      David E. Gray, Esq.
                                      Attorney for Defendant