IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Case No.: 1:19-CR-00018-ABJ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROGER J. STONE, JR.,

    Defendant.

    _____/

## ROGER STONE'S RENEWED MOTION OF OBJECTIONS TO THE NOTICE OF RELATED CASE

Defendant, Roger J. Stone, Jr., renews his objections (Dkt #27) under Local Criminal Rule 57.12, to the assignment and designation of his case as being related to *United States of America v. Netyksho, et al.* (1:18-cr-00215-ABJ). Stone respectfully requests that the Court find that his case is not related to *Netyksho*, and Order that this case be randomly reassigned consistent with Local Criminal Rule 57.10, and in light of recently released information pertinent to this case, including the Special Counsel's investigation findings of no Russian collusion.

## OBJECTIONS TO THE ASSIGNMENT

Roger Stone was investigated by the Office of the Special Counsel during its investigation of potential Russian collusion and interference in the 2016 presidential campaign. The Office of the Special Counsel has since concluded its investigation and has found that there is no evidence of collusion between Russia and those associated with the presidential campaign of Donald J. Trump.[1] Previously, however, opposing counsel designated this case as related to that of *United States of America v. Netyksho, et al.* (1:18-cr-00215-ABJ), because the

---

[1] Attorney General William Barr, letter of March 24, 2019 (attached as Exhibit 1).

government claimed that communications between Guccifer 2.0 and Stone were obtained from the *Netyksho* search warrant.

Now that the Department of Justice has concluded that there was no conspiracy between Russian agents and any American citizen, including Roger Stone, this "connection" is unsubstantiated. The *Netyksho* case is unlikely to ever be tried because the defendants will unlikely ever subject themselves to the jurisdiction of this Court. Additionally, the only document filed in *Netyksho*, the Indictment, states no American was part of the conspiracy charged.  There is nothing left to "connect" Roger Stone to.

The basis for the exception to random assignment of judges is to ensure judicial economy in situations where two cases are "so related that they involve common factual issues or grow out of the same event or transaction" and the hearing of each case by a separate judge will result in a waste "of time and resources." *Tripp v. Exec. Office of President*, 196 F.R.D. 201, 202 (D.D.C. 2000). The goal of joining two related cases by conserving judicial resources only occurs by having a district judge familiar with the facts and legal issues of the original case. *See United States v. Smith*, 1990 WL 91611, at *2 (D.D.C. June 19, 1990) (unpublished). Stone's case, given the "no Russian collusion" conclusion, should have been randomly assigned.

While the government claims there is evidence connecting a search warrant in the *Netyskho* case relevant to Stone's case, the government now contends that Russians did not conspire with American citizens, including anyone in the Trump Campaign, or Roger Stone. Other than an allegation that Russians, and Stone, independently had some type of contact with WikiLeaks via *Twitter*, there is no there there. This case does not arise from the same "transaction or event" as the *Netyskho* case. Stone's case arises out of a congressional hearing, while *Netyskho* arises out of a foreign government attacking the American electoral process.

Absent the proffering of any evidence establishing a potential relationship between the Russians and Stone, or Stone and the now debunked collusion scenario, this case should be reassigned before a Court chosen in the usual course of this District's practices. Local Rule 57.10 should not be circumvented by a proven false narrative.

## **CONCLUSION**

For the foregoing reasons, Roger Stone's renewed objections should be sustained, and his case be sent to the Calendar and Case Management Committee for random assignment. The Defendant reserves his right to renew these objections should the contents of the Special Counsel's Report be released and shed further light on this issue.

Respectfully submitted,

By: */s/*_____

L. PETER FARKAS
HALLORAN FARKAS & KITTILA, LLP
DDC Bar No.: 99673
1101 30th Street, NW
Suite 500
Washington, DC 20007
Telephone: (202) 559-1700
Fax: (202) 257-2019
pf@hfk.law

BRUCE S. ROGOW
FL Bar No.: 067999
TARA A. CAMPION
FL Bar: 90944
BRUCE S. ROGOW, P.A.
100 N.E. Third Avenue, Ste. 1000
Fort Lauderdale, FL  33301
Telephone: (954) 767-8909
Fax: (954) 764-1530
brogow@rogowlaw.com
tcampion@rogowlaw.com
*Admitted pro hac vice*

ROBERT C. BUSCHEL
BUSCHEL GIBBONS, P.A.
FL Bar No.: 006436
One Financial Plaza, Suite 1300
100 S.E. Third Avenue
Fort Lauderdale, FL 33394
Telephone: (954) 530-5301
Fax: (954) 320-6932
Buschel@BGlaw-pa.com
*Admitted pro hac vice*

GRANT J. SMITH
STRATEGYSMITH, PA
DCC Bar No.: 00036
FL Bar No.: 935212
401 East Las Olas Boulevard
Suite 130-120
Fort Lauderdale, FL 33301
Telephone: (954) 328-9064
gsmith@strategysmith.com

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 12, 2019, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record or pro se parties, via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Robert Buschel*
Robert C. Buschel

*United States Attorney's Office for the District of Columbia*

MICHAEL JOHN MARANDO
JONATHAN IAN KRAVIS
**U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA**
555 Fourth Street, NW
Washington, DC 20530
Telephone: (202) 252-6886
Fax: (202) 651-3393
michael.marando@usdoj.gov
jonathan.kravis3@usdoj.gov

*United States Depart of Justice Special Counsel's Office*

AARON SIMCHA JON ZELINSKY
JEANNIE SCLAFANI RHEE
ANDREW DANIEL GOLDSTEIN
LAWRENCE RUSH ATKINSON
**U.S. DEPARTMENT OF JUSTICE SPECIAL COUNSEL'S OFFICE**
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 616-0800
Fax: (202) 651-3393
asjz@usdoj.gov
jsr@usdoj.gov
adg@usdoj.gov
lra@usdoj.gov



# The Attorney General
## Washington, D.C.

March 24, 2019

The Honorable Lindsey Graham  
Chairman, Committee on the Judiciary  
United States Senate  
290 Russell Senate Office Building  
Washington, D.C. 20510

The Honorable Jerrold Nadler  
Chairman, Committee on the Judiciary  
United States House of Representatives  
2132 Rayburn House Office Building  
Washington, D.C. 20515

The Honorable Dianne Feinstein  
Ranking Member, Committee on the Judiciary  
United States Senate  
331 Hart Senate Office Building  
Washington, D.C. 20510

The Honorable Doug Collins  
Ranking Member, Committee on the Judiciary  
United States House of Representatives  
1504 Longworth House Office Building  
Washington, D.C. 20515

Dear Chairman Graham, Chairman Nadler, Ranking Member Feinstein, and Ranking Member Collins:

As a supplement to the notification provided on Friday, March 22, 2019, I am writing today to advise you of the principal conclusions reached by Special Counsel Robert S. Mueller III and to inform you about the status of my initial review of the report he has prepared.

### *The Special Counsel's Report*

On Friday, the Special Counsel submitted to me a "confidential report explaining the prosecution or declination decisions" he has reached, as required by 28 C.F.R. § 600.8(c). This report is entitled "Report on the Investigation into Russian Interference in the 2016 Presidential Election." Although my review is ongoing, I believe that it is in the public interest to describe the report and to summarize the principal conclusions reached by the Special Counsel and the results of his investigation.

The report explains that the Special Counsel and his staff thoroughly investigated allegations that members of the presidential campaign of Donald J. Trump, and others associated with it, conspired with the Russian government in its efforts to interfere in the 2016 U.S. presidential election, or sought to obstruct the related federal investigations. In the report, the Special Counsel noted that, in completing his investigation, he employed 19 lawyers who were assisted by a team of approximately 40 FBI agents, intelligence analysts, forensic accountants, and other professional staff. The Special Counsel issued more than 2,800 subpoenas, executed nearly 500 search warrants, obtained more than 230 orders for communication records, issued almost 50 orders authorizing use of pen registers, made 13 requests to foreign governments for evidence, and interviewed approximately 500 witnesses.

The Special Counsel obtained a number of indictments and convictions of individuals and entities in connection with his investigation, all of which have been publicly disclosed. During the course of his investigation, the Special Counsel also referred several matters to other offices for further action. The report does not recommend any further indictments, nor did the Special Counsel obtain any sealed indictments that have yet to be made public. Below, I summarize the principal conclusions set out in the Special Counsel's report.

**Russian Interference in the 2016 U.S. Presidential Election.** The Special Counsel's report is divided into two parts. The first describes the results of the Special Counsel's investigation into Russia's interference in the 2016 U.S. presidential election. The report outlines the Russian effort to influence the election and documents crimes committed by persons associated with the Russian government in connection with those efforts. The report further explains that a primary consideration for the Special Counsel's investigation was whether any Americans – including individuals associated with the Trump campaign – joined the Russian conspiracies to influence the election, which would be a federal crime. The Special Counsel's investigation did not find that the Trump campaign or anyone associated with it conspired or coordinated with Russia in its efforts to influence the 2016 U.S. presidential election. As the report states: "[T]he investigation did not establish that members of the Trump Campaign conspired or coordinated with the Russian government in its election interference activities."[1]

The Special Counsel's investigation determined that there were two main Russian efforts to influence the 2016 election. The first involved attempts by a Russian organization, the Internet Research Agency (IRA), to conduct disinformation and social media operations in the United States designed to sow social discord, eventually with the aim of interfering with the election. As noted above, the Special Counsel did not find that any U.S. person or Trump campaign official or associate conspired or knowingly coordinated with the IRA in its efforts, although the Special Counsel brought criminal charges against a number of Russian nationals and entities in connection with these activities.

The second element involved the Russian government's efforts to conduct computer hacking operations designed to gather and disseminate information to influence the election. The Special Counsel found that Russian government actors successfully hacked into computers and obtained emails from persons affiliated with the Clinton campaign and Democratic Party organizations, and publicly disseminated those materials through various intermediaries, including WikiLeaks. Based on these activities, the Special Counsel brought criminal charges against a number of Russian military officers for conspiring to hack into computers in the United States for purposes of influencing the election. But as noted above, the Special Counsel did not find that the Trump campaign, or anyone associated with it, conspired or coordinated with the Russian government in these efforts, despite multiple offers from Russian-affiliated individuals to assist the Trump campaign.

---

[1] In assessing potential conspiracy charges, the Special Counsel also considered whether members of the Trump campaign "coordinated" with Russian election interference activities. The Special Counsel defined "coordination" as an "agreement—tacit or express—between the Trump Campaign and the Russian government on election interference."

**Obstruction of Justice.** The report's second part addresses a number of actions by the President – most of which have been the subject of public reporting – that the Special Counsel investigated as potentially raising obstruction-of-justice concerns. After making a "thorough factual investigation" into these matters, the Special Counsel considered whether to evaluate the conduct under Department standards governing prosecution and declination decisions but ultimately determined not to make a traditional prosecutorial judgment. The Special Counsel therefore did not draw a conclusion – one way or the other – as to whether the examined conduct constituted obstruction. Instead, for each of the relevant actions investigated, the report sets out evidence on both sides of the question and leaves unresolved what the Special Counsel views as "difficult issues" of law and fact concerning whether the President's actions and intent could be viewed as obstruction. The Special Counsel states that "while this report does not conclude that the President committed a crime, it also does not exonerate him."

The Special Counsel's decision to describe the facts of his obstruction investigation without reaching any legal conclusions leaves it to the Attorney General to determine whether the conduct described in the report constitutes a crime. Over the course of the investigation, the Special Counsel's office engaged in discussions with certain Department officials regarding many of the legal and factual matters at issue in the Special Counsel's obstruction investigation. After reviewing the Special Counsel's final report on these issues; consulting with Department officials, including the Office of Legal Counsel; and applying the principles of federal prosecution that guide our charging decisions, Deputy Attorney General Rod Rosenstein and I have concluded that the evidence developed during the Special Counsel's investigation is not sufficient to establish that the President committed an obstruction-of-justice offense. Our determination was made without regard to, and is not based on, the constitutional considerations that surround the indictment and criminal prosecution of a sitting president.[2]

In making this determination, we noted that the Special Counsel recognized that "the evidence does not establish that the President was involved in an underlying crime related to Russian election interference," and that, while not determinative, the absence of such evidence bears upon the President's intent with respect to obstruction. Generally speaking, to obtain and sustain an obstruction conviction, the government would need to prove beyond a reasonable doubt that a person, acting with corrupt intent, engaged in obstructive conduct with a sufficient nexus to a pending or contemplated proceeding. In cataloguing the President's actions, many of which took place in public view, the report identifies no actions that, in our judgment, constitute obstructive conduct, had a nexus to a pending or contemplated proceeding, and were done with corrupt intent, each of which, under the Department's principles of federal prosecution guiding charging decisions, would need to be proven beyond a reasonable doubt to establish an obstruction-of-justice offense.

### *Status of the Department's Review*

The relevant regulations contemplate that the Special Counsel's report will be a "confidential report" to the Attorney General. *See* Office of Special Counsel, 64 Fed. Reg. 37,038,

---

[2] *See A Sitting President's Amenability to Indictment and Criminal Prosecution*, 24 Op. O.L.C. 222 (2000).

37,040-41 (July 9, 1999). As I have previously stated, however, I am mindful of the public interest in this matter. For that reason, my goal and intent is to release as much of the Special Counsel's report as I can consistent with applicable law, regulations, and Departmental policies.

Based on my discussions with the Special Counsel and my initial review, it is apparent that the report contains material that is or could be subject to Federal Rule of Criminal Procedure 6(e), which imposes restrictions on the use and disclosure of information relating to "matter[s] occurring before [a] grand jury." Fed. R. Crim. P. 6(e)(2)(B). Rule 6(e) generally limits disclosure of certain grand jury information in a criminal investigation and prosecution. *Id.* Disclosure of 6(e) material beyond the strict limits set forth in the rule is a crime in certain circumstances. *See, e.g.*, 18 U.S.C. § 401(3). This restriction protects the integrity of grand jury proceedings and ensures that the unique and invaluable investigative powers of a grand jury are used strictly for their intended criminal justice function.

Given these restrictions, the schedule for processing the report depends in part on how quickly the Department can identify the 6(e) material that by law cannot be made public. I have requested the assistance of the Special Counsel in identifying all 6(e) information contained in the report as quickly as possible. Separately, I also must identify any information that could impact other ongoing matters, including those that the Special Counsel has referred to other offices. As soon as that process is complete, I will be in a position to move forward expeditiously in determining what can be released in light of applicable law, regulations, and Departmental policies.

\*   \*   \*

As I observed in my initial notification, the Special Counsel regulations provide that "the Attorney General may determine that public release of" notifications to your respective Committees "would be in the public interest." 28 C.F.R. § 600.9(c). I have so determined, and I will disclose this letter to the public after delivering it to you.

Sincerely,

William P. Barr
Attorney General