## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

**v.**

**ROGER J. STONE, JR.,**

**Defendant.**

**Crim. No. 19-CR-00018 (ABJ)**

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)(3)

The United States of America, by and through Jessie Liu, United States Attorney for the District of Columbia, respectfully opposes defendant Roger Stone's motion to dismiss the Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B). Doc. 72. Stone's motion fails to establish a defect in the Indictment. The government can prosecute obstruction of congressional proceedings, false statements, and witness tampering without a formal congressional referral. The Indictment properly alleges that Stone's false statements were material. And the Indictment's allegations of concealing evidence—by both lying about the existence of such evidence and not turning it over—validly state an offense.

### STATEMENT

On January 6, 2017, the U.S. Intelligence Community ("USIC") released an assessment entitled "Assessing Russian Activities and Intentions in Recent US Elections." *See https://www.dni.gov/files/documents/ICA_2017_01.pdf* (the "ICA"). Among other things, the USIC assessed that "Russian efforts to influence the 2016 US presidential election represent the most recent expression of Moscow's longstanding desire to undermine the US-led liberal democratic order, but these activities demonstrated a significant escalation in directness, level of

activity, and scope of effort compared to previous operations."  ICA ii.  "Russia, like its Soviet predecessor," the ICA continued, "has a history of conducting covert influence campaigns focused on US presidential elections that have used intelligence officers and agents and press placements to disparage candidates perceived as hostile to the Kremlin."  *Id.*

Shortly thereafter, the U.S. House of Representatives Permanent Select Committee on Intelligence ("HPSCI"), the U.S. Senate Select Committee on Intelligence ("SSCI"), and the Federal Bureau of Investigation ("FBI") opened or announced investigations into Russian interference in the 2016 U.S. presidential election.  On January 25, 2017, the HPSCI Chairman and Ranking Member released a statement announcing that the Committee had been undertaking an inquiry of the underlying intelligence used to draft the USIC assessment.  The statement reported that the scope of the Committee's inquiry included "Russian cyber activity and other 'active measures' directed against the U.S. and its allies; [c]ounterintelligence concerns related to Russia and the 2016 U.S. election, including any intelligence regarding links between Russia and individuals associated with political campaigns; [t]he United States Government response to these Russian active measures and any impact they may have on intelligence relationships and traditional alliances; and [p]ossible leaks of classified information related to the Intelligence Community's assessments of these matters."  Joint Statement on Progress of Bipartisan HPSCI Inquiry into Russian   Active   Measures   (Jan.   25,   2017),   *available   at https://intelligence.house.gov/news/documentsingle.aspx?DocumentID=211.*

As part of this inquiry, in May 2017, HPSCI sent a letter requesting that Stone voluntarily appear and produce any records that "reasonably could lead to the discovery of any facts within the investigation's publicly-announced parameters."  Doc. 1 ¶ 19.  On May 22, 2017, Stone caused a letter to be submitted to HPSCI stating that he had "no documents, records, or electronically

stored information…that reasonably could lead to the discovery of any facts within the investigation's publicly-announced parameters." *Id.*

On September 26, 2017, Stone testified before HPSCI in a closed session.  The day before testifying, the defendant publicly released his opening statement.  *See* Alex Pfeiffer, *Stone Releases His Opening Statement Before House Intel Committee Appearance*, The Daily Caller, Sept. 25, 2017, *available at https://dailycaller.com/2017/09/25/stone-releases-his-opening-statement-before-house-intel-committee-appearance/.*   In his opening remarks, Stone stated, "These hearings are largely based on a yet unproved allegation that the Russian state is responsible for the hacking of the DNC and John Podesta and the transfer of that information to WikiLeaks." *Id.* at 8.  Immediately following his HPSCI testimony, Stone held a public news conference, stating that the failure to publicly release his transcript was "extraordinarily unfair."  *Roger Stone:  I Believe DNC Hack Was an 'Inside Job,'* Fox News Insider, Sept. 26, 2017, *available at https://insider.foxnews.com/2017/09/26/roger-stone-testimony-congress-russian-meddling-election-dnc-hack.*   In the same interview, Stone described concerns regarding the veracity of his testimony, stating, "I don't think that members of the committee buy some of my claims, but they have no evidence to the contrary."  Interview with Roger Stone (Sept. 26, 2017), *available at http://www.cnn.com/TRANSCRIPTS/1709/26/ip.02.html.*

On December 20, 2018, in response to a request from the Department of Justice, the Chairman and Ranking Member of HPSCI transmitted the transcript of Stone's September 26, 2017 testimony.  In their transmittal letter, the Chairman and Ranking Member wrote that they

provided these materials "to the Department of Justice with no restrictions on use by the SCO or other components of the Department of Justice."  Exh. A.

On January 24, 2019, the grand jury returned a seven-count indictment charging Stone with obstruction of a proceeding, making false statements, and witness tampering.  The Indictment alleges that Stone obstructed the HPSCI, SSCI, and FBI investigations into Russian interference in the 2016 U.S. presidential election.  Doc. ¶ 7.  In particular, the Indictment alleges that Stone made multiple false statements in testimony before HPSCI on September 26, 2017, and in subsequent correspondence with HPSCI regarding his communications with and about an organization identified in the indictment as Organization 1.  *Id.* ¶¶ 19-35.  The Indictment alleges that Stone's testimony included multiple false statements that he was not in possession of documents that he did, in fact, possess.  *Id.* ¶¶ 22-23, 31-33.  The Indictment further alleges that, in an effort to conceal his false statements to HPSCI, Stone repeatedly urged another witness, identified as Person 2, to testify falsely, or to say that he could not remember the relevant events, or to invoke his Fifth Amendment right against self-incrimination.  *Id.* ¶¶ 36-39.  Count One charges Stone with obstructing the HPSCI investigation in violation of 18 U.S.C. § 1505.  Counts Two through Six charge Stone with making false statements to HPSCI in violation of 18 U.S.C. § 1001(a)(2).  Count Seven charges Stone with witness tampering in violation of 18 U.S.C. § 1512(b)(1).

## **ARGUMENT**

### I.     **The Indictment Validly States The Charged Conduct And Stone's Arguments About Congressional Referral Lack Merit.**

Stone observes that Congress did not refer the charged conduct to the Department of Justice for prosecution and suggests that, as a result, the Indictment fails to state an offense.  Doc. 72, at 1-4.  Stone's theory is not clear, but he appears to argue that the absence of a formal referral

bears on the materiality of the false statements made to HPSCI.  Stone also makes passing allegations of wrongdoing by members of Congress.  Stone's arguments lack merit.

### A.      The Executive Branch May Prosecute Crimes Against Congress Without A Formal Referral.

As a threshold matter, absent an express statutory requirement, congressional referral is not a prerequisite to the government's prosecution of crimes that were aimed at congressional proceedings. As the government argues in its response to Stone's other motion to dismiss, "the Executive Branch has exclusive authority . . . to decide whether to prosecute a case," *United States v. Nixon*, 418 U.S. 683, 693 (1974), and its "primacy in criminal charging decisions is long settled," *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016).

None of the statutes charged here requires a referral.  The statutes simply define the relevant crimes and leave it to the Department of Justice to determine whether and when those crimes should be prosecuted.  *See* 18 U.S.C. §§ 1001(a)(2), 1505, 1512(b)(1); *see generally* 28 U.S.C. §§ 503, 509, 510, 515, 516, 519, 547 (describing the Department of Justice's role).  The absence of any statutory role for Congress stands in contrast to the provisions governing contempt of Congress, which provide for certifications by Congress to U.S. Attorneys for prosecution.  *See* 2 U.S.C. §§ 192, 194.  In the absence of any statutory referral requirement, none exists.  *See Bialek v. Mukasey*, 529 F.3d 1267, 1270 (10th Cir. 2008) (holding that the Justice Department may prosecute a violation of the Federal Election Campaign Act without a referral from the Federal Election Commission and emphasizing that "we cannot presume that Congress has divested the Attorney General of his prosecutorial authority absent 'a clear and unambiguous expression of legislative will'") (quoting *United States v. Morgan*, 222 U.S. 274, 281 (1911)).

**B.    The Indictment Properly Alleges That Stone's False Statements Were Material.**

Stone suggests (Doc. 72, at 3) that the absence of a formal referral from Congress may bear on the materiality of the false statements charged.  That argument is without merit.

In evaluating a motion to dismiss an indictment, courts ask "whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C. 2012).  In answering that question, "the court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes."  *Id.* (internal quotation marks and emphasis omitted).  The Court "'assumes the truth of [the government's] factual allegations.'"  *United States v. Knowles*, 197 F. Supp. 3d 143, 149 (D.D.C. 2016) (quoting *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015)), *aff'd sub nom. United States v. Oral George Thompson*, -- F.3d --, 2019 WL 1768931 (D.C. Cir. Apr. 23, 2019).  A motion to dismiss an indictment "is not a permissible vehicle for addressing the sufficiency of the government's evidence."  *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (internal quotation marks omitted).

The indictment alleges that Stone's false statements to HPSCI were material.  Doc. 1  ¶ 43.  Although not necessary to a valid indictment, it also alleges various facts that, if proven, would establish materiality.  For example, the Indictment alleges that HPSCI's investigation into Russian interference in the 2016 presidential election included investigating Stone's previous claims of contact with Organization 1, which had publicly disseminated thousands of documents stolen from the Democratic National Committee and the personal email account of the chairman of a U.S. presidential campaign.  Doc. 1  ¶¶ 3, 6-7.  The Indictment then alleges several false statements made by Stone, including false statements about the nature of his communications with and about Organization 1.  *Id.*  ¶¶ 25-28, 29-30, 35.  The Indictment also alleges that Stone made false

statements about his "possession of documents pertinent to HPSCI's investigation" and that by doing so he "avoided providing a basis for HPSCI to subpoena records in his possession" that could have shed light on his false and misleading testimony. *Id.* ¶¶ 21, 24. The Indictment further alleges that Stone lied about the existence of written communications with the person whom he claimed was his intermediary to Organization 1. *Id.* ¶¶ 31-34. The Indictment alleges that those lies were material because the documents that Stone falsely claimed did not exist were significant to the investigation. *Id.* ¶ 34.

Notwithstanding these specific and detailed allegations, Stone contends that the Indictment should be dismissed because "[w]ithout a referral" or "any witness in the Committee room when [he] testified, no one testified before the Grand Jury that [his] testimony was material to the House Committee's investigation." Doc. 72, at 3. That argument misunderstands the well-established rule that "an indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause." *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975) (quoting *Ex parte United States*, 287 U.S. 241, 250 (1932)). Accordingly, there is no "authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the" grand jury's "finding" of probable cause "was founded upon sufficient proof." *Costello v. United States*, 350 U.S. 359, 362 (1956). In other words, "[t]he grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime." *Kaley v. United States*, 571 U.S. 320, 328 (2014). Under these precedents, Stone is not permitted to challenge the grand jury's finding that there is probable cause to believe that his false statements to HPSCI were material.

Stone's argument also misunderstands the standard for establishing materiality. Information is material if it has "a natural tendency to influence, or is capable of influencing, either

a discrete decision or any other function of the agency to which it was addressed." *United States v. Moore*, 612 F.3d 698, 701 (D.C. Cir. 2010); *accord United States v. Gaudin*, 515 U.S. 506, 509 (1995). This is judged not just by the direct effect of the statement itself but also by reference to the possibility of further investigation. *See United States v. Hansen*, 772 F.2d 940, 949 (D.C. Cir. 1985). The well-settled materiality standard serves to ensure that the prohibition on false statements does not "embrace trivial falsehoods." *United States v. Elashyi*, 554 F.3d 480, 497 (5th Cir. 2008); *see United States v. White*, 270 F.3d 356, 365 (6th Cir. 2001) ("'[M]ateriality' is a fairly low bar . . . [T]he government must present at least some evidence showing how the false statement in question was capable of influencing federal functioning."). Thus, "the relevant question is not whether, in fact, the relevant body relied upon the false information" but "merely whether that information had the capacity to influence the relevant decisionmaker." *United States v. Cisneros*, 26 F. Supp. 2d 24, 40 (D.D.C. 1998) (collecting cases); *see Moore*, 612 F.3d at 701; *Hansen*, 772 F.2d at 949. And "[i]t has never been the test of materiality that the misrepresentation or concealment would more likely than not have produced an erroneous decision, or even that it would more likely than not have triggered an investigation." *Kungys v. United States*, 485 U.S. 759, 771 (1988) (emphasis omitted); *see, e.g., United States v. Boffil-Rivera*, 607 F.3d 736, 740, 741-742 (11th Cir. 2010) ("The false statement must simply have the capacity to impair or pervert the functioning of a government agency. The statement does not have to be relied upon and can be material even if it is ignored and never read.") (citation omitted); *United States v. Turner*, 551 F.3d 657, 661-664 (7th Cir. 2008) (statements were material because they "were aimed at misdirecting the agents" and would have had a natural tendency to influence an investigation "in the ordinary course"). Materiality is ultimately a question for a jury that requires applying this legal definition to the relevant facts. *See Gaudin*, 515 U.S. at 512.

Stone is therefore simply wrong to assert that the government's proof of materiality is lacking because no member of Congress was interviewed and no witness testified before the grand jury "about the materiality of the investigation in Congress." Doc. 72, at 4.   Stone's false and misleading statements were material so long as they had the "capacity to influence" the HPSCI investigation, regardless of whether any member of the Committee actually "relied upon the false information." *Cisneros*, 26 F. Supp. 2d at 40.   In this case, the indictment alleges, and the evidence at trial will prove, that the defendant's false statements were material because they directly concerned a central area of investigation and foreclosed other possible avenues of investigation by the Committee. *See, e.g.,* Doc. 1 ¶¶ 24, 34.   In addition, the Committee's inquiry culminated in the publication of a report.   That report includes false information that Stone provided in his testimony.   These allegations, and the evidence supporting them, are more than sufficient to establish that the defendant's false and misleading statements were material to the HPSCI investigation.[1]

### C.   Stone's Additional Arguments Lack Merit.

To the extent that Stone suggests that there was some kind wrongdoing by members of Congress or by the government, these claims lack merit and would, in any event, provide no basis for dismissing the indictment.

Stone suggests (Doc. 72, at 1) that the government's investigation of his crimes before Congress was inconsistent with prior Department practice.   As an initial matter, prior Department

---

[1] Stone further asserts that the government is required to prove the existence of a "conspiracy to interfere with the 2016 presidential election involving the Russian government before Stone could be charged with lying about or obstructing an investigation into that Russian conspiracy." Doc. 72, at 3.   For the reasons set forth in the government's opposition to Stone's motion to compel, that argument is without merit, and the authority cited by Stone does not support his position.

practice could provide no basis for dismissing an Indictment.  *See generally In re Grand Jury Subpoena (Miller)*, 438 F.3d 1141, 1152-1153 (D.C. Cir. 2006); *United States v. Blackley*, 167 F.3d 543, 548-549 (D.C. Cir. 1999).  Moreover, Stone's factual suggestion is incorrect.  The government did not discover Stone's crimes by "surf[ing] channels . . . and say[ing] 'we ought to investigate that'" witness (Doc. 72, at 1).  As part of its investigation into Stone's possible role in events surrounding the 2016 presidential election, the Special Counsel's Office obtained evidence suggesting that Stone might have testified falsely before HPSCI about matters related to the Special Counsel's investigation as well as HPSCI's investigation.  That evidence included Stone's emails and text messages about Organization 1 and communications that appeared to constitute witness tampering.  The Justice Department requested and received from HPSCI the transcript of Stone's testimony, which was provided for use "with no restrictions."  Exh. A.  The transcript confirmed that Stone had given false testimony to HPSCI and had otherwise obstructed the HPSCI investigation.[2]

Stone also declares that "[w]hatever made the Special Counsel's Office aware of [his] testimony to Congress, or more precisely, characterized it as false and drew attention to it, amounts to a violation of the House rules because it was not formally and explicitly authorized by the Committee." Doc. 72, at 2.  Stone provides no basis for inferring that any violation of House rules occurred.  As just discussed, Stone appears to misunderstand the process of investigating his obstructive conduct.  Indeed, Stone himself initially drew attention to his testimony by releasing his opening statement before he even delivered it, and by holding a news conference after he

---

[2] To the extent that Stone posits (Doc. 72, at 4) that the Special Counsel had no authority to investigate crimes before Congress, that argument also lacks merit for the reasons set forth in the government's opposition to Stone's selective prosecution motion.  In any event, as this Court has held, challenges to the scope of the Special Counsel's investigation are not justiciable. *United States v. Manafort*, 312 F. Supp. 3d 60, 75 (D.D.C. 2018).

testified and stating that, "I don't think that members of the committee buy some of my claims, but they have no evidence to the contrary."  Interview with Roger Stone (Sept. 26, 2017), *available at http://www.cnn.com/TRANSCRIPTS/1709/26/ip.02.html*.

To the extent that Stone is suggesting that any violation of congressional rules by congressional Members or staff could invalidate an indictment that was sought by the Department of Justice and issued by a grand jury, Stone provides no support for that position, and the government is aware of none. Stone cites *Yellin v. United States*, 374 U.S. 109 (1963), for the proposition that "the rules of Congress and its committees are judicially cognizable."  Doc. 72, at 2.  In *Yellin*, the defendant was convicted of contempt of Congress for refusing to answer questions at a public hearing before the House Committee on Un-American Activities after he requested to testify in executive session and a congressional staffer denied that request without the authority to do so.  374 U.S. at 111-112.  Because congressional rules required the committee to consider the witness's request to testify privately, the Court reversed his conviction for contempt of Congress. *Id.* at 114-123.  *Yellin* thus stands for the unremarkable proposition that an improperly-issued order to testify cannot serve as a basis for criminal contempt.  Here, by contrast, Stone's allegations do not call into question his legal obligations before HPSCI.  And unlike Yellin, Stone seeks to dismiss an indictment based on statements made *after* his testimony took place, and he provides no indication that the allegedly improper conduct affected his obstructive acts in any way.

## II.   Failing To Turn Over And Lying About The Existence of Responsive Records Constitutes Obstruction.

Stone also claims (Doc. 72, at 5) that failing to provide documents that were requested by HPSCI cannot constitute obstruction because the documents were not subpoenaed.  But Stone misunderstands the obstruction charge, which alleges that he "failed to turn over *and lied about* the existence of responsive records to HPSCI's requests about documents."  Doc. 1 ¶ 41 (emphasis

added).  It is the conjunction of these two facts that establishes the elements of obstruction.  Stone lied about the existence of text messages, emails, and Facebook messages to obstruct the Committee.  In order for his obstruction to work, Stone could not have turned those same messages over to HPSCI, because to do so would have revealed the extent of his lies.[3]  In other words, Stone's failure to provide HPSCI with responsive records was part of his repeated efforts to obstruct the HPSCI investigation, along with his false statements and witness tampering.

Stone's reliance on *United States v. Safavian*, 528 F.3d 957, 965 (D.C. Cir. 2008), therefore misses the mark.  In that case, the D.C. Circuit held that a defendant can be convicted of violating 18 U.S.C. § 1001 by concealing information only if the defendant had a legal duty to disclose the information.  The court concluded that the evidence supporting Safavian's conviction did not meet that test because Safavian had no legal duty to volunteer the information that he concealed from an ethics advisor.  528 F.3d at 964.[4]  In this case, by contrast, Stone is not charged merely with concealing information from HPSCI in violation of Section 1001.  Rather, he is charged in Count One with violating a different statute, Section 1505, by corruptly "obstruct[ing] or imped[ing]" the HPSCI investigation.[5]  The indictment alleges that Stone committed this obstruction by, among other things, lying to HPSCI about the existence of relevant documents and failing to provide those documents.  Thus, the issue in this case is not (as it was in *Safavian*) whether Stone had a legal

---

[3] The indictment also alleges in the same charge that Stone testified falsely and misleadingly; that he submitted a false and misleading letter; and that he attempted to have Person 2 testify falsely. Doc. 1 ¶ 41. At most, therefore, Stone seeks to strike the words "failed to turn over" from Count 1, not to dismiss the entire count.

[4] Safavian was also convicted of obstruction in violation of 18 U.S.C. § 1505.  The D.C. Circuit vacated that conviction on other grounds not relevant here.  528 F.3d at 965.

[5] Stone is charged with making false statements to Congress in violation of 18 U.S.C. § 1001, but those charges are based on false statements that Stone made to the Committee under Section 1001(a)(2), not (as in *Safavian*) on the concealment of information from the Committee under Section 1001(a)(1).

duty to disclose information to the Committee.  Rather, it is whether Stone engaged in the alleged conduct (lying to the Committee, failing to provide relevant records, and tampering with a witness) with the corrupt intent to obstruct or impede the Committee investigation.  The indictment alleges, and the evidence at trial will show, that he did.

* * *

For the foregoing reasons, Stone's motion to dismiss the indictment should be denied.

Respectfully submitted,

JESSIE K. LIU
U.S. Attorney for the District of Columbia

By:  ___/s/_____
Jonathan Kravis
Michael J. Marando
Assistant United States Attorneys

Adam C. Jed
Aaron S.J. Zelinsky
Special Assistant United States Attorney
555 4th Street NW
Washington, D.C. 20530

UNCLASSIFIED//COMMITTEE SENSITIVE

Devin Nunes, California, CHAIRMAN

K. Michael Conaway, Texas
Peter T. King, New York
Frank A. LoBiondo, New Jersey
Thomas J. Rooney, Florida
Ileana Ros-Lehtinen, Florida
Michael R. Turner, Ohio
Brad R. Wenstrup, Ohio
Chris Stewart, Utah
Rick Crawford, Arkansas
Trey Gowdy, South Carolina
Elise M. Stefanik, New York
Will Hurd, Texas

Adam B. Schiff, California,
RANKING MEMBER

James A. Himes, Connecticut
Terri A. Sewell, Alabama
André Carson, Indiana
Jackie Speier, California
Mike Quigley, Illinois
Eric Swalwell, California
Joaquin Castro, Texas
Denny Heck, Washington

Paul D. Ryan, SPEAKER OF THE HOUSE
Nancy Pelosi, DEMOCRATIC LEADER

# U.S. HOUSE OF REPRESENTATIVES
PERMANENT SELECT COMMITTEE
ON INTELLIGENCE

HVC–304, THE CAPITOL
WASHINGTON, DC 20515
(202) 225–4121

DAMON NELSON
STAFF DIRECTOR

TIMOTHY S. BERGREEN
MINORITY STAFF DIRECTOR

December 20, 2018

**VIA HAND DELIVERY**

The Honorable Stephen E. Boyd
Assistant Attorney General
Office of Legislative Affairs
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530-0001

Dear Mr. Boyd:

The House Permanent Select Committee on Intelligence ("the Committee") has received your letter, dated December 14, 2018, requesting the Committee provide to the Special Counsel's Office (SCO) a transcript of the Committee's September 26, 2017 interview with Roger Stone; as well as any other written submissions and/or correspondence from Mr. Stone or his attorneys before and after his interview.

Pursuant to a Committee vote this morning authorizing release of the material to the Department of Justice and its components, enclosed are the following documents:

1. The transcript of the September 26, 2017, Executive Session Committee interview of Roger Stone;
2. A letter from Roger Stone's counsel, Grant J. Smith, to Rep. K. Michael Conaway, dated September 22, 2017;
3. Mr. Stone's complete original opening statement, which was submitted to the Committee by Mr. Stone's counsel, Grant J. Smith, on September 26, 2017, and included counsel's request to include the statement as part of the record;
4. Mr. Stone's abridged opening statement for the Committee, which was submitted to the Committee by Mr. Stone's counsel, Grant J. Smith, on September 26, 2017, and included counsel's request to include the statement as part of the record;
5. A letter from Roger Stone's counsel, Robert C. Buschel, to Rep. K. Michael Conaway, dated October 13, 2017, including all attachments; and
6. A letter from Roger Stone's counsel, Grant J. Smith, to Chairman Devin Nunes, dated June 15, 2018.

UNCLASSIFIED//COMMITTEE SENSITIVE

Please be advised that production of these documents does not constitute a waiver of any applicable privileges and, specifically, does not waive the privilege conferred by the Speech or Debate Clause, U.S. Const. art. I, § 6, cl. 1.

The Committee provides these materials to the Department of Justice with no restrictions on use by the SCO or other components of the Department of Justice.

Should you have any questions, please do not hesitate to contact Cordell Hull from the Republican staff at (202) 226-1770 and Maher Bitar from the Democratic staff at (202) 226-0564.

Sincerely,

Devin Nunes
Chairman

Adam B. Schiff
Ranking Member

Enclosures