UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROGER J. STONE, JR.,<br><br>Defendant. | Crim. No. 19-CR-00018 (ABJ) |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL

The United States of America, by and through Jessie Liu, United States Attorney for the District of Columbia, respectfully opposes defendant Roger Stone's motion to compel production of the unredacted version of the Special Counsel's confidential report to the Attorney General. Doc. 70. Neither the rules governing discovery nor any other legal authority supports Stone's request for this document. Moreover, the government is already providing Stone with the evidence relevant to this case arising out of the Special Counsel's investigation. Accordingly, Stone is no more entitled to the unredacted report than he would be to a prosecution or declination memorandum, which are exempt from discovery under Federal Rule of Criminal Procedure 16(a)(2).

### STATEMENT

On January 6, 2017, the U.S. Intelligence Community ("USIC") released an assessment entitled "Assessing Russian Activities and Intentions in Recent US Elections." *See https://www.dni.gov/files/documents/ICA_2017_01.pdf* (the "ICA"). Among other things, the USIC assessed that "Russian efforts to influence the 2016 US presidential election represent the most recent expression of Moscow's longstanding desire to undermine the US-led liberal

democratic order, but these activities demonstrated a significant escalation in directness, level of activity, and scope of effort compared to previous operations." ICA ii. "Russia, like its Soviet predecessor," the ICA continued, "has a history of conducting covert influence campaigns focused on US presidential elections that have used intelligence officers and agents and press placements to disparage candidates perceived as hostile to the Kremlin." *Id.*

Shortly thereafter, the U.S. House of Representatives Permanent Select Committee on Intelligence ("HPSCI"), the U.S. Senate Select Committee on Intelligence ("SSCI"), and the Federal Bureau of Investigation ("FBI") opened or announced investigations into Russian interference in the 2016 U.S. presidential election.

On January 13, 2017, the Chairman and Vice Chairman of SSCI issued a joint statement announcing an inquiry into the intelligence reporting behind the USIC assessment. Joint Statement on Committee Inquiry into Russian Intelligence Activities (Jan. 13, 2017), *available at https://www.intelligence.senate.gov/press/joint-statement-committee-inquiry-russian-intelligence-activities*. On January 25, 2017, the Chairman and Ranking Member of HPSCI issued a joint statement announcing that the Committee had been undertaking a similar inquiry. Joint Statement on Progress of Bipartisan HPSCI Inquiry into Russian Active Measures (Jan. 25, 2017), *available at https://intelligence.house.gov/news/documentsingle.aspx?DocumentID=211*.

On March 20, 2017, then-FBI Director James B. Comey testified before HPSCI about the FBI's investigation into Russian interference with the 2016 presidential election. In open session, Comey stated:

> I have been authorized by the Department of Justice to confirm that the FBI, as part of our counterintelligence mission, is investigating the Russian government's efforts to interfere in the 2016 presidential election, and that includes investigating the nature of any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's efforts.

Statement of FBI Director James B. Comey, H. Perm. Select Comm. on Intelligence, *Hearing on Russian Active Measures Investigation* (Mar. 20, 2017) ("Comey Testimony"), *available at https://www.fbi.gov/news/testimony/hpsci-hearing-titled-russian-active-measures-investigation*. Comey added that "[a]s with any counterintelligence investigation, this will also include an assessment of whether any crimes were committed." *Id.*

On May 17, 2017, Acting Attorney General Rod J. Rosenstein issued an order appointing Robert S. Mueller, III, as Special Counsel "to investigate Russian interference with the 2016 presidential election and related matters." Office of the Deputy Att'y Gen., Order No. 3915-2017, *Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters*, May 17, 2017, *available at https://www.justice.gov/opa/press-release/file/967231/download* ("Appointment Order") (capitalization omitted). "The Special Counsel," the Order stated, "is authorized to conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017," including:

(i) any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and

(ii) any matters that arose or may arise directly from the investigation; and

(iii) any other matters within the scope of 28 C.F.R. § 600.4(a).

*Id.* ¶ (b)(i)-(iii). "If the Special Counsel believes it is necessary and appropriate," the Order provided, "the Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters." *Id.* ¶ (c).

On October 20, 2017, the Acting Attorney General confirmed the authority of the Special Counsel to further investigate several individuals whose conduct fell directly within the scope of the investigation described in the Appointment Order, including the defendant.

On March 22, 2019, as required by Department regulations, the Special Counsel provided to the Attorney General "a confidential report explaining the prosecution or declination decisions reached by the Special Counsel." 28 C.F.R. § 600.8(c). On April 18, 2019, the Justice Department publicly released a redacted version of the report. Redacted from the public report are: (1) material subject to Federal Rule of Criminal Procedure 6(e) that by law cannot be made public; (2) material identified by the intelligence and law enforcement communities as potentially compromising sensitive sources, methods, or techniques, as well as information that could harm ongoing intelligence or law enforcement activities; (3) material that could affect other ongoing law enforcement matters, including charged cases where court rules and orders bar public disclosure by the parties of case information; and (4) information that would unduly infringe on the personal privacy and reputational interests of peripheral third parties, which includes deliberation about decisions not to recommend prosecution of such parties.

On March 29, 2019, defense counsel sent a letter to Attorney General William Barr requesting an unredacted copy of the report. On April 5, 2019, the U.S. Attorney's Office responded to that letter. Exh. A. The government advised defense counsel that "[a]ny evidence gathered in the course of the Special Counsel's investigation that relates to the allegations in the indictment, including evidence that could be construed as exculpatory, is being provided to you in discovery." *Id.* at 1. The government further advised defense counsel that the government's discovery productions in this case "will also include *Giglio* information regarding any witness that the government intends to call at trial." *Id.* The government's response stated that, because

relevant information is being provided to the defense in discovery, "we do not believe that there is any basis to provide Mr. Stone's defense team with a copy of the report itself." *Id.*

## ARGUMENT

**THE DEFENDANT IS NOT ENTITLED TO THE SPECIAL COUNSEL'S REPORT**

The defendant's motion to compel production of an unredacted version of the Special Counsel's confidential report to the Attorney General should be denied. The government's obligations to disclose materials to the defense are governed by Federal Rule of Criminal Procedure 16; the Jencks Act, 18 U.S.C. § 3500; and cases such as *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). Pursuant to those authorities, the government has made extensive discovery and will continue to do so. But the material redacted from the public version of the Special Counsel's report is distinct from these obligations. To the extent redacted portions of the Special Counsel's report may summarize or analyze evidence relevant to Stone, as is the case with any prosecution or declination memorandum, those summaries and analyses are not themselves evidence. Rather, they are based on evidence that the government collected during its investigation and provided in discovery. Stone cites no case, and the government is aware of none, holding that the government must disclose prosecution or declination memoranda. Indeed, internal prosecution memoranda are specifically protected from disclosure to the defense. *See* Federal Rule of Criminal Procedure 16(a)(2). As the government has advised the defense, evidence gathered during the Special Counsel's investigation relating to the allegations in the indictment, including disclosable information that could be construed as exculpatory or relating to the credibility of government witnesses, is being provided in discovery as appropriate.

In light of the fact that the defendant is already receiving this information in discovery, his arguments in support of his motion to compel the unredacted report are unpersuasive. First, the defendant argues that disclosure of the unredacted report "will likely support Stone's constitutional argument that there was no referral from Congress to the Department of Justice." Doc. 70 at 2. The government does not dispute that Congress did not refer the defendant to the Department of Justice for criminal prosecution. As set forth in response to the defendant's motion to dismiss, that fact is irrelevant. But in any event, the defendant does not need a copy of the unredacted report to make the argument.

Second, the defendant argues that "the Special Counsel would have to prove at trial that a conspiracy existed to interfere with the 2016 presidential election and that it involved the Russian government, *before* Stone could be charged with obstructing an investigation into that Russian conspiracy." Doc. 70, at 2 (emphasis in original). This argument misstates the law. To establish a violation of 18 U.S.C. § 1505, the government must prove that "(1) there was a proceeding before a department or agency of the United States[,] (2) the defendant knew of or believed that the proceeding was pending[,] and (3) the defendant corruptly endeavored to influence, obstruct, or impede the due and proper administration of the law under which the proceeding was pending." *United States v. Sunia*, 643 F. Supp. 2d 51, 80 (D.D.C. 2009) (quoting *United States v. Quattrone*, 441 F.3d 153, 174 (2d Cir. 2006)). None of these elements requires the government to prove the allegations that gave rise to the investigation in the first place. The indictment alleges, and the evidence admitted at trial will show, that after the 2016 U.S. presidential election, the House Permanent Select Committee on Intelligence, the U.S. Senate Select Committee on Intelligence, and the Federal Bureau of Investigation all opened or announced investigations into Russian interference in the 2016 U.S. presidential election. Doc. 1 ¶ 7. The defendant acted corruptly to

obstruct those investigations. And the defendant's actions were capable of influencing the investigations. That is all the law requires. To establish the defendant's guilt of the crimes with which he is charged, the government is not required to prove the existence of a conspiracy with the Russian government to interfere in the U.S. presidential election.[1]

Third, the defendant argues that he is "entitled to know why" the government did not charge two other individuals. Doc. 70, at 3. For the reasons set forth in the government's opposition to the defendant's motion for discovery on a claim of selective prosecution, the defendant is not entitled to this information because he has not met the rigorous standard to obtain discovery on the government's prosecutorial decision-making.

Finally, the defendant's reliance upon *In re North*, 16 F.3d 1234 (D.C. Cir. 1994) (Spec. Div.), is misplaced. *North* concerned provisions of the now-lapsed Ethics of Government Act. The Act authorized a Special Division of the D.C. Circuit to appoint an Independent Counsel under defined circumstances, and directed the Independent Counsel to submit a report to the Special Division. *Id.* at 1236. The Special Division could then "'release to the Congress, the public,' and others 'such portions' of the Report 'as the Division deem[ed] appropriate.'" *Id.* at 1237 (quoting 28 U.S.C. § 595(b)(3) (Supp. V 1987) (superseded and lapsed)). The decision in *North* reflected the Special Division's decision, under the statutory framework, about whether to release that Report publicly and, if so, what portions to redact or withhold. Far from "guiding here," Doc. 70, at 3, *North* has no applicability to the defendant's right to review non-public portions of the Special

---

[1] In support of this proposition, the defendant cites a sentence from a memorandum written by Attorney General William Barr before he took office to Deputy Attorney General Rod Rosenstein and Assistant Attorney General Steven Engel. The defendant's reliance on this sentence is misplaced. The cited sentence concerns the interpretation of 18 U.S.C. § 1512(c)(2), a crime with which the defendant is not charged, to a particular set of facts that do not resemble the allegations in the indictment. The memorandum does not argue that every obstruction statute should be interpreted to require proof of the crime that gave rise to the investigation that was obstructed.

Counsel's confidential report to the Attorney General, which was prepared pursuant to Justice Department regulations and not the now-lapsed Ethics in Government Act.

\* \* \* \* \*

The government is complying with its discovery obligations in this case, including its obligation to provide the defense with disclosable material that could be construed as exculpatory as well as information regarding the credibility of witnesses that the government intends to call at trial. Because disclosable information that may have been redacted from the public version of the Special Counsel's report to the Attorney General is already being provided to the defendant in discovery, the defendant is not entitled to an unredacted copy of the report.

Respectfully submitted,

JESSIE K. LIU
U.S. Attorney for the District of Columbia

By: ___/s/___
Jonathan Kravis
Michael J. Marando
Assistant United States Attorneys

Adam C. Jed
Aaron S.J. Zelinsky
Special Assistant United States Attorney
555 4th Street NW
Washington, D.C. 20530



U.S. Department of Justice

Jessie K. Liu
United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

April 5, 2019

**VIA EMAIL**

Grant J. Smith, Esq.
Counsel to Roger Stone

      **Re:**    **Special Counsel Report Demand**

Dear Grant,

      We write to respond to your letter to Attorney General William Barr dated March 29, 2019.

      The Justice Department does not intend to provide you with a copy of the Special Counsel's report to the Attorney General. Any evidence gathered in the course of the Special Counsel's investigation that relates to the allegations in the indictment, including evidence that could be construed as exculpatory, is being provided to you in discovery in *United States v. Roger Stone*, Case No. 19-CR-18 (ABJ). The government's discovery in *Stone* will also include *Giglio* information regarding any witness that the government intends to call at trial. Because evidence relevant to Mr. Stone's case is being provided in discovery, we do not believe that there is any basis to provide Mr. Stone's defense team with a copy of the report itself.

      We disagree with your assertion that "Mr. Stone is entitled to understand the circumstances and the rationale behind the decision to charge him." Like any other criminal defendant, Mr. Stone is entitled to obtain in discovery the evidence in the government's possession relevant to his case, but he is not entitled to obtain documents reflecting the government's rationale for its charging decisions. *United States v. Armstrong*, 517 U.S. 456, 468 (1996); *see* 28 C.F.R. § 600.8 (describing the report to the Attorney General "explaining the prosecution or declination decisions reached" by the Special Counsel as "confidential"). We note that the Attorney General has stated that the Justice Department is preparing the Special

Counsel's report for release with the necessary redactions.

                                            Sincerely,

                                            /s/ Jonathan Kravis
                                            Jonathan Kravis
                                            Michael Marando
                                            Assistant U.S. Attorneys