## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Crim. No. 19-CR-00018 (ABJ)** |
| **ROGER J. STONE, JR.,** | |
| **Defendant.** | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
## FOR DISCOVERY ON CLAIM OF SELECTIVE PROSECUTION

The United States of America, by and through Jessie Liu, United States Attorney for the District of Columbia, respectfully opposes defendant Roger Stone's motion for discovery on a claim of selective prosecution. Doc. 73. The defendant's motion fails to meet the rigorous standard for overcoming the presumption of regularity that attaches to prosecutorial decision-making, and therefore the defendant is not entitled to the discovery he seeks.

## STATEMENT

On January 6, 2017, the U.S. Intelligence Community ("USIC") released an assessment entitled "Assessing Russian Activities and Intentions in Recent US Elections." *See https://www.dni.gov/files/documents/ICA_2017_01.pdf* (the "ICA"). Among other things, the USIC assessed that "Russian efforts to influence the 2016 US presidential election represent the most recent expression of Moscow's longstanding desire to undermine the US-led liberal democratic order, but these activities demonstrated a significant escalation in directness, level of activity, and scope of effort compared to previous operations." ICA ii. "Russia, like its Soviet predecessor," the ICA continued, "has a history of conducting covert influence campaigns focused

on US presidential elections that have used intelligence officers and agents and press placements to disparage candidates perceived as hostile to the Kremlin." *Id.*

Shortly thereafter, the U.S. House of Representatives Permanent Select Committee on Intelligence ("HPSCI"), the U.S. Senate Select Committee on Intelligence ("SSCI"), and the Federal Bureau of Investigation ("FBI") opened or announced investigations into Russian interference in the 2016 U.S. presidential election.

On January 13, 2017, the Chairman and Vice Chairman of SSCI issued a joint statement announcing an inquiry into the intelligence reporting behind the USIC assessment. Joint Statement on Committee Inquiry into Russian Intelligence Activities (Jan. 13, 2017), *available at https://www.burr.senate.gov/press/releases/joint-statement-on-committee-inquiry-into-russian-intelligence-activities.* On January 25, 2017, the Chairman and Ranking Member of HPSCI issued a joint statement announcing that the Committee had been undertaking a similar inquiry. Joint Statement on Progress of Bipartisan HPSCI Inquiry into Russian Active Measures (Jan. 25, 2017), *available at https://intelligence.house.gov/news/documentsingle.aspx?DocumentID=211.*

On March 20, 2017, then-FBI Director James B. Comey testified before HPSCI about the FBI's investigation into Russian interference with the 2016 presidential election. In open session, Comey stated:

> I have been authorized by the Department of Justice to confirm that the FBI, as part of our counterintelligence mission, is investigating the Russian government's efforts to interfere in the 2016 presidential election, and that includes investigating the nature of any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's efforts.

Statement of FBI Director James B. Comey, H. Perm. Select Comm. on Intelligence, *Hearing on Russian Active Measures Investigation* (Mar. 20, 2017) ("Comey Testimony"), *available at https://www.fbi.gov/news/testimony/hpsci-hearing-titled-russian-active-measures-investigation.*

Comey added that "[a]s with any counterintelligence investigation, this will also include an assessment of whether any crimes were committed." *Id.*

On May 17, 2017, Acting Attorney General Rod J. Rosenstein issued an order appointing Robert S. Mueller, III, as Special Counsel "to investigate Russian interference with the 2016 presidential election and related matters." Office of the Deputy Att'y Gen., Order No. 3915-2017, *Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters*, May 17, 2017 ("Appointment Order") (capitalization omitted). "The Special Counsel," the Order stated, "is authorized to conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017," including:

> (i)     any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and
>
> (ii)    any matters that arose or may arise directly from the investigation; and
>
> (iii)   any other matters within the scope of 28 C.F.R. § 600.4(a).

*Id*. ¶ (b). "If the Special Counsel believes it is necessary and appropriate," the Order provided, "the Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters." *Id.* ¶ (c).

On October 20, 2017, the Acting Attorney General confirmed the authority of the Special Counsel to further investigate several individuals identified by name whose conduct fell directly within the scope of the investigation described in the Appointment Order, including the defendant.

On January 24, 2019, the grand jury returned a seven-count indictment charging the defendant with obstruction of an official proceeding, making false statements, and witness tampering. The indictment alleges that the defendant obstructed the HPSCI, SSCI, and FBI investigations into Russian interference in the 2016 U.S. presidential election discussed above.

Doc. 1 ¶¶ 7-8.  The indictment alleges that the defendant carried out this obstruction by making multiple false statements to HPSCI, by falsely denying to HPSCI that he possessed relevant records, and by attempting to persuade a witness to provide false testimony and to withhold pertinent information from the investigations.  *Id.* ¶ 8.

On April 12, 2019, the defendant filed a motion for discovery on a claim of selective prosecution.  Doc. 73.  The motion argues that the defendant has been singled out for prosecution because he chooses to associate with President Donald Trump.  *Id.* at 1.  Neither the motion itself nor the proposed order submitted in connection with the motion specifies what the defendant seeks to obtain in discovery.  *Id.*; Doc. 80 (proposed order stating that the defendant "may propound discovery, including the taking of depositions, to determine if an unequal hand of justice was pressed upon him and waived to others").

On April 18, 2019, in response to a minute order, the defendant filed a notice identifying nine categories of information that he is requesting in discovery.  Those categories include:

- Information related to the Special Counsel's Office's review of other transcripts of congressional testimony, Doc. 86, at #1, #2;

- communications between the Special Counsel's Office and congressional staff regarding the defendant's testimony, *id.* at #3;

- information about individuals who provided false or incomplete information to the Special Counsel's Office, *id.* at #4, #5;

- certain interview reports, *id.* at #6, #9;

- information regarding "any other persons interviewed by the FBI and/or Special Counsel staff who were perceived by the FBI or Special Counsel staff as (a) being untruthful; (b)

intimidating or threatening of other persons; or (c) obstructing any investigation, or

Congressional committee," *id.* at #7; and

- "closing memoranda or charging decision memoranda on each person identified in any of

    the above requests," *id.* at #8.

## ARGUMENT

**THE DEFENDANT IS NOT ENTITLED TO DISCOVERY ON A CLAIM OF SELECTIVE PROSECUTION**

### A. Discovery Based On A Claim Of Selective Prosecution Requires An Extraordinary Showing.

As the Supreme Court has explained, a "presumption of regularity" supports the Executive

Branch's prosecutorial decisions, and "in the absence of clear evidence to the contrary, courts

presume that" Executive Branch officials "have properly discharged their official duties." *United

States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *United States v. Chemical Foundation,

Inc.*, 272 U.S. 1, 14-15 (1926)). Several factors support the presumption of regularity that attaches

to prosecutorial decisions. First, the presumption "rests in part on an assessment of the relative

competence of prosecutors and courts." *Id.* at 465. "Such factors as the strength of the case, the

prosecution's general deterrence value, the Government's enforcement priorities, and the case's

relationship to the Government's overall enforcement plan are not readily susceptible to the kind

of analysis the courts are competent to undertake." *Id.* (quoting *Wayte v. United States*, 470 U.S.

598, 607 (1985)). Second, deference to Executive Branch prosecutorial decision-making "also

stems from a concern not to unnecessarily impair the performance of a core executive

constitutional function." *Id.* For these reasons, "[p]rosecutors have broad discretion to enforce

the law, and their decisions are presumed to be proper absent clear evidence to the contrary."

*United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017), *cert. denied*, 138 S. Ct. 1990 (2018).

To overcome that presumption, a defendant must present "clear evidence" that a decision to prosecute was "based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Armstrong*, 517 U.S. at 464-65 (citations omitted).

The standard for obtaining discovery on a selective prosecution claim is "correspondingly rigorous," as such discovery "will divert prosecutors' resources and may disclose the Government's prosecutorial strategy." *Armstrong*, 517 U.S. at 468; *see also United States v. Bass*, 536 U.S. 862, 864 (2002) (per curiam) (summarily reversing unfounded selective-prosecution discovery order which itself "threaten[ed] the performance of a core executive constitutional function") (internal quotation marks and citation omitted).   Under that standard, the defendant must put forward "some evidence tending to show the existence of the essential elements of the defense." *Armstrong*, 517 U.S. at 468 (citation omitted).   Accordingly, a defendant is not entitled to discovery on a claim of selective prosecution absent a "colorable showing" that (1) the defendant was "singled out for prosecution from among others similarly situated" and (2) "the prosecution is improperly motivated, *i.e.*, based on an arbitrary classification." *United States v. Blackley*, 986 F. Supp. 616, 617-18 (D.D.C. 1997).   "The District of Columbia Circuit requires that this colorable showing be made with respect to both prongs of the test." *Id.* (citing *Attorney General of the United States v. Irish People, Inc.*, 684 F.2d 928, 947 (D.C. Cir. 1982)); *accord Bass*, 536 U.S. at 863 ("[A] defendant who seeks discovery on a claim of selective prosecution must show some evidence of both discriminatory effect and discriminatory intent.")

### B.  The Defendant Has Not Made A Colorable Showing That He Was Singled Out For Prosecution From Others Similarly Situated.

To prevail on the first prong, the defendant must show "that there exist persons who *engaged in similar conduct* and were not prosecuted." *Blackley*, 986 F. Supp. at 618 (emphasis in original).   A person has "engaged in similar conduct" and therefore is "similarly situated" for

purposes of a selective prosecution claim "when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000) (quoting *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)).  As one court put it, a defendant is "similarly situated" to a person who was not charged only if he "engaged in the same type of conduct," *i.e.,* committed "the same basic crime in substantially the same manner" such that prosecution of the uncharged person "would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan," and "the evidence was as strong or stronger than that against the defendant." *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000).

The defendant has failed to make such a showing.  Indeed, the defendant has not identified a single individual who "committed the same basic crime in substantially the same manner as the defendant," *Smith*, 231 F.3d at 810, and yet was not prosecuted.  The indictment alleges that the defendant gave false testimony before a congressional committee, Doc. 1 ¶ 21, and that in order to conceal those falsehoods, the defendant repeatedly urged another witness either to testify falsely before the committee or to invoke the witness's Fifth Amendment right against self-incrimination, *id.* ¶ 37.  The defendant does not identify another person who engaged in such conduct, and therefore he has not made a "colorable showing" on the first prong of the test for a claim of discovery on selective prosecution.

The defendant argues (at 5-6) that another person "who admits to lying to the Special Counsel" has not been charged.  This example fails to meet the requirement of a colorable showing that the defendant was singled out for prosecution from among others similarly situated for at least two reasons.  First, the defendant is not charged with "lying to the Special Counsel."  He is charged

with making false statements before a congressional committee and then tampering with a witness to conceal his false testimony. The defendant also has not alleged that what sets him apart from this other person is an "arbitrary classification," *i.e.*, that the other person has not engaged in the same political expression that the defendant claims motivated the prosecution here.

The defendant also notes (at 6-7) purported discrepancies between the grand jury testimony of a witness and other evidence gathered in the course of the investigation.[1] This example also does not support the defendant's position. The witness, unlike the defendant, is not alleged to have engaged in obstruction of a congressional investigation by giving false testimony and tampering with another witness.[2]

The defendant's request for information about individuals who may have made false statements to the Special Counsel's Office suffers from a similar flaw. Doc. 86. The defendant is not charged with making false statements to the Special Counsel's Office. He is charged with obstructing a congressional investigation by giving false testimony and tampering with a witness. Accordingly, the defendant is not entitled to information about individuals who "lied to the

---

[1] The defendant states that, "based on the initial review discovery," the grand jury does not appear to have been advised of the discrepancies between the witness's testimony and other evidence gathered in the case. In fact, the grand jury was presented with evidence contradicting the witness's prior testimony regarding the witness's communications with the defendant about Organization 1.

[2] The defendant alleges "upon information and belief" that this witness "threatened to 'put a hole' in another person's head if that person provided certain information to investigators. Doc. 73, at 7. In fact, this other person advised law enforcement that he did not take those words seriously and he did not believe the witness could harm anyone. This single statement is not remotely akin to the numerous communications alleged in the indictment in which the defendant repeatedly implored Person 2 to testify falsely or invoke his Fifth Amendment right against self-incrimination before HPSCI. Doc. 1 ¶¶ 37, 39. The information that this other person provided to law enforcement about his communications with the witness has been provided to the defense in discovery.

Office," *id.* #4, or "provided information that was false or incomplete" to the Office, *id.* #5, or "were perceived by the FBI or Special Counsel staff as" as being untruthful or obstructive, *id.* #7.

Finally, the defendant argues (at 7) that he is entitled to discovery on a claim of selective prosecution because, "[o]f the hundreds of other witnesses" who have testified before Congress in these investigations, he is one of only two people to be charged with a crime. But that observation alone does not support a claim of selective prosecution. Rather, the defendant is required to show that he was singled out for prosecution from among others similarly situated, that is, from among others who engaged in the same type of conduct. The defendant does not allege that "hundreds of other witnesses" engaged in obstruction by giving false testimony and tampering with witnesses. Accordingly, the number of witnesses who have testified before Congress in this matter does not support the defendant's request for discovery on his claim of selective prosecution.

### C. The Defendant Has Not Made a Colorable Showing That The Prosecution Is Improperly Motivated.

With respect to the second prong, the defendant has similarly failed to present any evidence that "the prosecution is improperly motivated."

The defendant's only attempt to make this showing is to argue that the Special Counsel did not have the authority to prosecute him. Doc. 73, at 4-5. That argument is without merit. This prosecution falls well within the scope of the Special Counsel's authority. The Appointment Order authorized the Special Counsel to conduct an investigation into "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump." In October 2017, the Acting Attorney General confirmed the Special Counsel's authority to investigate the defendant as a named individual whose conduct was directly within the scope of the investigation. The evidence gathered during that investigation established that the defendant gave false testimony before HPSCI and engaged in witness tampering. There is "no

legal requirement or Departmental policy, and there is nothing in any statute or the Special Counsel Regulations, that would require the prosecutor to look away if the duly authorized investigation into" links between the Russian government and the campaign "revealed evidence of a crime other than 'coordination.'" *United States v. Manafort*, 312 F. Supp. 3d 60, 74 (D.D.C. 2018). Accordingly, the Special Counsel's Office was authorized by the Appointment Order to charge the defendant with those crimes as "federal crimes arising from [its] investigation."[3]

In addition, as alleged in the indictment, the defendant's obstructive conduct extended to the FBI investigation assigned to the Special Counsel.  Doc. 1 ¶¶ 7, 8.  Therefore the Special Counsel's Office was authorized to prosecute the defendant for that conduct under 28 C.F.R. § 600.4(a), which gives a Special Counsel jurisdiction "to investigate and prosecute federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation, such as perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses." *See* Doc. 1 ¶ 37f (alleging that the defendant sent a text message to a witness stating, "And if you turned over anything to the FBI you're a fool"); *id.* ¶ 39a (alleging that the defendant sent a text message to a witness stating, "I'm not talking to the FBI and if your [sic] smart you won't either").

In any event, the defendant's argument about the scope of the Appointment Order does not establish a colorable showing of improper motivation.  The second prong of the test requires the

---

[3] Contrary to the defendant's suggestion (at 5), the Appointment Order does not say that the Special Counsel was authorized to prosecute only federal crimes based on coordination between the Russian government and the Trump campaign.  Rather, the Special Counsel was authorized to investigate that topic, and to prosecute any federal crimes arising from that investigation.  *See, e.g.*, *United States v. Manafort*, 321 F. Supp. 3d 640, 651 (E.D. Va. 2018) (E.D. Va. 2018) (noting that the structure of the Appointment Order differentiates between the Special Counsel's investigatory jurisdiction and prosecutorial authority).  As discussed above, evidence of the defendant's obstructive activity arose in the course of the Special Counsel's investigation, and therefore the Special Counsel was authorized to charge the defendant with crimes related to that obstructive activity.

defendant to produce evidence that the prosecution was based on an arbitrary classification.  Even if the defendant were correct that this prosecution falls outside the authority conferred by the Appointment Order (and he is not), that argument alone does not amount to a colorable showing that "the government official who actually made the decision to prosecute the case was motivated by impermissible considerations."  *United States v. Hastings*, 126 F.3d 310, 314 (4th Cir. 1997).  On the contrary, the decision to prosecute this case was made based on permissible considerations, namely the strong evidence of obstruction, false statements, and witness tampering described in the indictment.

### D.  The Defendant's Discovery Requests Are Unwarranted.

The defendant's motion for discovery on a claim of selective prosecution should be denied for the additional reason that much of the information requested by the defendant has already been produced to him or is protected by the work product and deliberative process privileges.

The interview reports and grand jury transcripts associated with the particular witnesses identified in the defendant's supplemental notice have been provided to the defendant in discovery.  In addition, as the government has advised defense counsel, the government's discovery production will also include any evidence gathered in the course of the Special Counsel's investigation that relates to the veracity of any witness that the government intends to call at trial.

Several of the defendant's remaining requests call for material expressly exempted from discovery under Federal Rule of Criminal Procedure 16.  For example, the defendant's supplemental notice demands prosecution and declination memoranda.  Doc. 86 #8; *see also id.* #4(d), #5(c) (requesting "the reasons why" other individuals were not criminally charged); *id.* #7 (requesting information concerning any person "who were perceived by the FBI or Special Counsel staff" to have been untruthful or obstructive); Doc. 80 (proposed order stating that the

defendant "may propound discovery, including the taking of depositions, to determine if an unequal hand of justice was pressed upon him and waived to others"). Such materials are expressly exempted from discovery by Federal Rule of Criminal Procedure 16(a)(2), which states that "this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." As the courts have recognized, Rule 16(a)(2) shields from discovery material protected by the deliberative process and work product privileges. *See United States v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir 2000) (concluding that prosecution memorandum and death penalty evaluation form "are not subject to discovery because they are protected by the deliberative process and work product privileges"). In addition to the defendant's failure to meet the rigorous standard necessary to obtain discovery on a claim of selective prosecution, these discovery requests should be denied for the further reason that they call for the production of privileged material that is exempt from discovery under Rule 16(a)(2).

\* \* \* \* \*

Because the defendant has failed to carry his burden, he is not entitled to discovery on his claim of selective prosecution and his discovery motion should be denied.

Respectfully submitted,

JESSIE K. LIU
U.S. Attorney for the District of Columbia

By: ____/s/_____
Jonathan Kravis
Michael J. Marando
Assistant United States Attorneys

Adam C. Jed
Aaron S.J. Zelinsky

Special Assistant United States Attorney
555 4th Street NW
Washington, D.C. 20530