IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 19-cr-18-ABJ |
| ROGER J. STONE, JR., | |
| Defendant. | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS

The United States of America, by and through Jessie Liu, United States Attorney for the District of Columbia, respectfully opposes the motion of defendant Roger Stone to suppress evidence obtained by the government through various search warrants.   Stone asserts that "the main underpinning" of the government's search warrant applications is Russia's involvement in several hacks, and Stone alleges that this is "untrue."   Doc. 100, at 4-5.   Citing *Franks v. Delaware*, 438 U.S. 154 (1978), Stone asks this Court to hold an evidentiary hearing, apparently for the purpose of determining whether Russia stole the files that were later disseminated by Organization 1.   *See* Doc. 100-6 (proposed order); *see also* Doc. 100, at 4-7.

Stone's arguments are misguided.   To the extent that Stone suggests that the search warrants were not supported by probable cause, this argument lacks merit.   Each of the affidavits established probable cause that a search of the target location would yield evidence of criminal activity, and suppression would in any event be unwarranted under the good faith exception to the exclusionary rule.   Stone also does not come close to making the "substantial preliminary showing" necessary for a *Franks* hearing.   *See Franks*, 438 U.S. at 155-156.   Under *Franks*, a defendant may obtain a hearing to challenge the validity of a search warrant affidavit only if he can make a sufficient showing that (1) the affidavit contained false statements; (2) the false

statements were made knowingly and intentionally, or with reckless disregard for the truth; and (3) the statements were necessary to a finding of probable cause. *Id.* at 155-156. Stone has not made and cannot make any of those showings.

## FACTUAL BACKGROUND

Between August 2017 and February 2019, the government obtained eighteen search warrants for electronic facilities and properties related to Roger Stone. Doc. 109, Exs. 1-18. Many of these search warrants were issued in the District of Columbia by Chief Judge Beryl A. Howell. Doc. 109, Exs. 1-10, 16, 18. Three warrants were issued in the District by other district judges. *See* Ex. 11 (Judge Contreras); Ex. 12-13 (Judge Boasberg). Others were issued by magistrate judges in other districts. Exs. 14 (S.D.N.Y); Exs. 15, 17 (S.D. Fl.).

Fourteen of the affidavits ("the 1030 warrant affidavits") allege probable cause that the search will yield evidence of a violation of 18 U.S.C. § 1030, which makes it a crime to "intentionally access[] a computer without authorization or exceed[] authorized access and thereby obtain[]…information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). *See* Exs. 1-13, 18. In brief, each of these affidavits (at a minimum) states that Stone communicated with the Twitter account Guccifer 2.0 about hacked materials Guccifer had posted. Each affidavit states that on June 15, 2016, Guccifer 2.0 publicly claimed responsibility for the hack of the computer systems of the Democratic National Committee ("DNC"). Each affidavit states that Organization 1 published materials stolen from the DNC in the hack. Each affidavit describes Stone's communications (including his own public statements about them) with Guccifer 2.0, Organization 1, and the head of Organization 1. Each affidavit submits that, based on those communications, there was probable cause to believe that evidence related to the DNC hack would be found in the

specified location.   Many of these affidavits contain additional evidence alleging probable cause to believe evidence will be found of violations of additional crimes, including 18 U.S.C. § 3 (accessory after the fact); 18 U.S.C. § 4 (misprision of a felony); 18 U.S.C. §  371 (conspiracy); 18 U.S.C. §§ 1505 and 1512 (obstruction of justice); 18 U.S.C. §  1513 (witness tampering); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1349 (attempt and conspiracy to commit wire fraud), and 52 U.S.C. § 30121 (foreign contribution ban).   *See, e.g.*, Exs. 7-13 (all crimes).   Stone raises no arguments regarding these other crimes.

In addition, four of the affidavits (the "false statement warrant affidavits"), issued close in time to Stone's indictment, allege probable cause that the search will yield evidence of false statements, obstruction of justice, and witness tampering.   *See* Exs. 14-17.   Those affidavits set forth evidence supporting the allegations in the indictment that Stone made false statements in his September 2017 testimony before the House Permanent Select Committee on Intelligence ("HPSCI"), obstructed ongoing investigations, and tampered with a witness.

## ARGUMENT

Stone moves to suppress evidence that was collected pursuant to eighteen warrants that were issued by federal judges upon findings of probable cause.   To the extent that Stone suggests that these warrants were not supported by probable cause, Stone is mistaken, and suppression would in any event be inappropriate because each search was conducted in good faith reliance on these warrants.   Further, Stone's request for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), fails.   Not only has Stone failed to make the required "substantial preliminary showing," *id.* at 155-156, but he has made virtually no showing at all, resting only on broad assertions about the challenged search warrants.   Stone is, in any event, not entitled to a hearing because he has

not made a sufficient showing that any warrant affidavit contained false statements; that any asserted false statement was knowing, intentional, or reckless; or that any such asserted statement was necessary to a finding of probable cause.

I.      **The Government Properly Relied Upon Search Warrants Issued Upon Findings Of Probable Cause**

Stone seeks to suppress evidence that was gathered pursuant to search warrants issued by neutral and detached judges upon findings of probable cause.   Each of those findings was correct, and suppression would in any event be unwarranted.

A.      **The Challenged Search Warrants Were Supported By Probable Cause**

A warrant is supported by probable cause when the affidavit in support of the warrant establishes a "fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983).   The probable cause determination of the judge who issued the warrant is owed "great deference by reviewing courts."   *Id.* at 236; *see, e.g., United States v. Spencer*, 530 F.3d 1003, 1006-1007 (D.C. Cir. 2008).   Under this standard, "so long" as the issuing judge "had a 'substantial basis for concluding' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more."   *Gates*, 462 U.S. at 236-37 (alterations, internal quotation marks, and citation omitted).

Here, each of the affidavits presented to Chief Judge Howell, Judge Boasberg, Judge Contreras, and magistrates in other districts established probable cause that a search of the target location would yield evidence of criminal activity.   In particular, the 1030 warrant affidavits stated that Stone communicated with the Twitter account (Guccifer 2.0) that claimed responsibility for the DNC hack and with the organization (Organization 1) that published materials obtained

from the hack shortly thereafter.   These affidavits further stated that those communications concerned subjects related to the DNC hack, establishing probable cause to believe that the proposed searches would yield evidence in the form of communications related to a violation of Section 1030.

In addition, the false statement warrant affidavits set forth evidence establishing probable cause that Stone committed the crimes with which he is charged in the indictment, including Stone's own communications showing that he lied to the House Permanent Select Committee on Intelligence and tampered with a witness. (Stone does not challenge that probable cause determination, and therefore his motion to suppress the evidence obtained from the four false statement warrants should be denied on that basis alone.)

Stone is therefore mistaken when he asserts (Doc. 100, at 6) that the "allegations in the warrant applications are nothing more than a collection of conclusory statements."   On the contrary, the 1030 warrant affidavits contain detailed descriptions of Stone's communications with Guccifer 2.0, Organization 1, and the head of Organization 1, and, in some cases, detailed descriptions of witness tampering and false statements.   *See, e.g.,* Doc 109, Ex. 10 at ¶¶ 35-40 (discussing Stone's communications with Organization 1 and the head of organization 1), Ex. 11 at ¶ 24 (discussing private Twitter message between Stone and Guccifer 2.0); Ex. 18 at ¶¶ 64-77 (relating to Stone's conversations with Person 2).   Moreover, the four false statement warrant affidavits set forth facts establishing probable cause that Stone committed the offenses with which he is charged in the indictment.

As discussed in further detail in the below response to Stone's request for a *Franks* hearing, Stone is similarly mistaken when he suggests (Doc. 100, at 1-7) that probable cause was lacking,

asserts that Russia was not involved in the underlying computer intrusions, and questions the contrary conclusion of a private cyber security firm called CrowdStrike.   The various showings of probable cause in the 1030 warrant affidavits did *not* depend on the identity of the hacker, but rather were based on evidence showing that Stone communicated with a Twitter account that publicly claimed responsibility for the DNC hack, and that Stone communicated with the very organization that was disseminating materials from the DNC computers in the months after the hack.   This evidence established probable cause that searches of the target locations would yield evidence of a violation of 18 U.S.C. § 1030, regardless of whether the Russian state was involved.[1]

### B.     Good Faith Reliance On The Search Warrants Renders The Exclusionary Rule Inapplicable

Even if the warrant affidavits did not establish probable cause (which they did), suppression of the evidence obtained from the warrants would not be an appropriate remedy under the good faith exception to the exclusionary rule.   "For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs."   *Davis v. United States*, 564 U.S. 229, 237 (2011).   Thus, if the government conducts a search "under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted 'in objectively reasonable reliance' on the . . . search warrant."   *Herring v. United States*, 555 U.S. 135, 142 (2009) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)); *see, e.g., Spencer*, 530 F.3d at

---

[1] In addition, as noted above, many of these affidavits also established probable cause that the search would yield evidence of additional crimes.   *See, e.g.* Ex. 5-13, 18 (searching for evidence of violation of 18 U.S.C. § 3 (accessory after the fact); 18 U.S.C. § 4 (misprision of a felony); 18 U.S.C. §   371 (conspiracy); 18 U.S.C. § 1505 and 1512 (obstruction of justice); 18 U.S.C. §   1513 (witness tampering); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1349 (attempt and conspiracy to commit wire fraud), and 52 U.S.C. § 30121 (foreign contribution ban).   Stone's motion does not challenge those further probable cause determinations.

1006-1007; *United States v. Savoy*, 889 F. Supp. 2d 78, 89 (D.D.C. 2012).   Here, the agents executing the warrants challenged by Stone were entitled to rely in good faith on the judges' probable cause determinations, and therefore suppression of the evidence obtained from those warrants is not an appropriate remedy.

## II.      Stone Is Not Entitled To A *Franks* Hearing

In his motion, Stone invokes a narrow rule that authorizes exclusion of evidence where the government obtained a warrant by knowingly or recklessly providing false information that was necessary to obtain the warrant.   Stone asks this Court to hold a hearing at which he claims he can establish those facts.   But Stone has not come close to meeting the standard necessary for holding an evidentiary hearing.

### A.      A *Franks* Hearing Requires An Extraordinary Showing

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."   U.S. Const. amend. IV.   This usually requires the government "to have probable cause or a warrant" before conducting a search or seizure.   *See Herring*, 555 U.S. at 137.   Searches conducted pursuant to a warrant are presumed to be reasonable, and courts should not lightly second guess the probable cause determination made when issuing a warrant.   *Spencer*, 530 F.3d at 1006-1007; *see Leon*, 468 U.S. at 913-915; *Gates*, 462 U.S. at 236.   Additionally, as discussed above, when the government conducts a search in good faith reliance on a warrant, evidence recovered in that search should not ordinarily be excluded.   *Leon*, 468 U.S. at 922-924.

7

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court established narrow circumstances where a defendant seeking to suppress evidence collected pursuant to a warrant may challenge the veracity of the affidavit on which the warrant was based and seek suppression.   The Court made clear that warrant affidavits are entitled to a "presumption of validity" and that the circumstances where "exclusion of the seized evidence is mandated" or "a hearing on allegations of misstatements must be accorded" are of "limited scope." *Id.* at 167.   As relevant here, a defendant is entitled to an evidentiary hearing only if he makes a "substantial preliminary showing" that the affidavit included a false statement that was made "knowingly and intentionally, or with reckless disregard for the truth," and if the alleged falsehood was "necessary to the finding of probable cause." *Id.* at 155-156; *see United States v. Dorman*, 860 F.3d 675, 684 (D.C. Cir. 2017).

**B.    Stone's Generalized And Conclusory Claims Do Not Come Close To Making The Necessary Showing**

To obtain a hearing under *Franks v. Delaware*, a defendant must make a "substantial preliminary showing."   438 U.S. at 155-156.   "[T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* at 171. Rather, the allegations must be concrete, specific, and accompanied by appropriate evidence and offers of proof. *Id.*; *see, e.g., United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015) ("This substantiality requirement is not met lightly and requires a defendant to offer specific allegations along with supporting affidavits or similarly reliable statements"); *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008) ("To justify a hearing, a defendant must make specific allegations."); *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994) (there must be "specific

allegations accompanied by an offer of proof").   Among other things, the defendant must "point out specifically the portion of the warrant affidavit that is claimed to be false."   *Franks*, 438 U.S. at 171; *see, e.g., United States v. Gaston,* 357 F.3d 77, 80 (D.C. Cir. 2004) (no possibility of exclusion where defendant "identified no particular inaccuracy"); *United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir. 1983) ("To show entitlement to a Franks hearing, the defendant must make specific allegations that indicate the portions of the warrant claimed to be false.").

Not only has Stone failed to make any of the required substantial preliminary showings, he has not even made specific and concrete allegations.   Stone declares that Russia did not hack the relevant servers, but he identifies no particular portions of the eighteen search warrant affidavits that he claims to be false.   Indeed, that is likely because (as discussed above) none of the challenged warrants even required a finding that Russia hacked the DNC server to establish probable cause. Nor does Stone allege that any asserted false statement was intentionally, knowingly, or recklessly false.   The closest he comes is a passing statement that "agents knew that they could not prove the Russian state hacked the DNC or the other targeted servers, and transferred the data to WikiLeaks."   Doc. 100, at 7.   But that is not even an allegation of the required scienter; what agents thought they could "prove" is distinct from whether they thought they could establish probable cause.

Additionally, while Stone asserts (Doc. 100, at 1-2) that his "communicating with a Twitter user named 'Guccifer 2.0' or speaking with WikiLeaks, would not constitute criminal activity" if Russia did not conduct the hacks, that assertion does not engage with the actual bases for probable cause in the eighteen warrant affidavits or even attempt to explain why, absent any reference to Russia, no probable cause would have existed.   Nor do Stone's other bare assertions, such as that

9

"[t]he raison d'etre of the Special Counsel's investigation was to pursue the claims that the Russians hacked and delivered the stolen data to WikiLeaks," that "[t]he foundation of all the search warrants was similar," and that "if that foundation collapses, then the warrants must fail for lack of probable cause," even attempt to show why the undefined category of asserted misrepresentations about Russia were necessary to establishing probable cause.  Doc. 100, at 4; *see, e.g., id.* at 5 (declaring, without explanation, that "no probable cause would exist"); *id.* at 7 (same)

Stone's barebones motion leaves the Court (and the government) to guess at exactly what statements he believes were false, to speculate about what Stone's bases could be for establishing the required scienter, and to then attempt to reconstruct the issuing judge's probable cause determinations without the benefit of Stone's theories for why probable cause was otherwise lacking.   This kind of motion is the very sort of "conclusory" attack that cannot merit an evidentiary hearing.  *See Franks*, 438 U.S. at 171; *see, e.g., United States v. Eiland,* No. 04-cr-379, 2006 WL 516743, at *13 (D.D.C. Mar. 2, 2006) (allegations were "stated so broadly as to provide no basis on which to grant a *Franks* hearing" because the defendant "fail[ed] to provide any specific allegations"); *United States v. Jeffus*, 22 F.3d 554, 558-559 (4th Cir. 1994) (similar). The Court need go no further to deny Stone's motion.

### C.    Stone Has Not Made Any Of The Required Substantial Showings

More than having failed to offer specific allegations, Stone also has not made the required showings for holding an evidentiary hearing.  Under *Franks*, a defendant is not entitled to an evidentiary hearing unless he can make a "substantial preliminary showing" that (1) an affidavit (or here, all 18 affidavits) contained false statements; (2) the false statements were made

knowingly and intentionally, or with reckless disregard for the truth; and (3) the statements were necessary to a finding of probable cause. *Franks*, 438 U.S. at 155-156; *see Dorman*, 860 F.3d at 684. Stone has not made and cannot make any of these three necessary showings.

1. Initially, Stone has not made a substantial preliminary showing that any statement supporting the 18 warrants at issue was false.

Even if establishing the identity of the hacker were relevant to establishing probable cause in the warrant affidavits (and it was not), neither Stone's motion nor the accompanying declarations make a substantial preliminary showing that Russia was not responsible for the underlying hacks. The warrant affidavits cite a declassified and public version of the intelligence community's report on Russia's interference in the 2016 election that concluded: (1) "in July 2015, Russian intelligence gained access to Democratic National Committee (DNC) networks and maintained that access until at least June 2016"; (2) "General Staff Main Intelligence Directorate (GRU) probably began cyber operations aimed at the US election by March 2016"; and (3) with "high confidence that the GRU used the Guccifer 2.0 persona, DCLeaks.com, and WikiLeaks to release stolen US victim data obtained in cyber operations publicly and in exclusives to media outlets." Intelligence Community Assessment: Assessing Russian Activities and Intentions in Recent US Elections (2017), https://www.dni.gov/files/documents/ICA_2017_01.pdf. Subsequently, a grand jury in this District returned an indictment alleging that Russian government officials were responsible for the DNC hack and making specific, supporting factual allegations. Indictment, *United States v. Netyksho*, 1:18-cr-215 (D.D.C. July 13, 2018) (Doc. 1); *cf. Gerstein v. Pugh*, 420 U.S. 103, 117 n. 19 (1975) ("an indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause"); *Kaley*

*v. United States*, 571 U.S. 320, 328-329 (2014) (similar).

Stone's assertion that Russia was not responsible for some or all of the hacking activity is based on two declarations. The majority of these declarations and supporting materials simply describe the declarants' career histories. Relevant to Stone's claim about Russian hacking are a handful of sentences, many of which are identical in the two declarations. They claim that various metadata suggests that the files were exfiltrated during U.S. business hours and were transferred to "Guccifer 2.0" and Organization 1 on thumb drives. Even if those claims were correct and well supported (which they are not), they would not come close to suggesting that any statements about Russia conducting the hacks were false. For example, allegations concerning the time stamps and the time signatures (Doc. 100, Ex. 1, ¶ 17-18) would be equally consistent with Russia intelligence officers using a thumb drive to transfer hacked materials among themselves after the hack took place. *See, e.g.*, Indictment, *United States v. Netyksho*, 1:18-cr-215 (D.D.C. July 13, 2018) (Doc. 1, ¶¶ 9-18) (alleging that Main Intelligence Directorate of the General Staff ("GRU") Unit 26165 had primary responsibility for hacking, while GRU Unit 74455 assisted in the dissemination). Similarly, the time zone analysis (Doc 100, Ex. 1, ¶ 19) is wholly consistent with the fact that the victims were in the Eastern Daylight Time Zone, rather than providing any information regarding the location of the perpetrators. And the fact that exfiltration allegedly took place on three of four days (Doc 100, Ex. 1, ¶ 18) presents no evidence whatsoever regarding who carried out the underlying intrusion.

Stone's motion (but not the supporting declarations) also suggests that certain evidence relied on by the government might not be admissible under applicable hearsay exceptions and other rules of evidence, might not be based on the correct kind of computer imaging, or might not

provide conclusive proof of Russia's role.   Doc. 100, at 2-4, 7.   But none of that suggests that Russia was not involved in the hack.   *Cf. United States v. Craighead*, 539 F.3d 1073 (9th Cir. 2008) (statement that files were downloaded from defendant's IP address not false, despite omitting possibility that computer hacking meant defendant had not downloaded those files to his own computer); *O'Ferrell v. United States*, 253 F.3d 1257 (11th Cir. 2001) (to establish that a statement was false, a challenger "must do more than show that the original basis for [it] was incorrect" and must show "that the conclusion itself was incorrect").

    2.   Stone also has not made a substantial preliminary showing that any assertedly false statement was intentionally and knowingly false or made with reckless disregard for the truth.

    As noted, Stone has not seriously alleged that any statement was knowingly or recklessly false.   *See Franks*, 438 U.S. at 171 ("There must be allegations of deliberate falsehood or of reckless disregard for the truth"); *see, e.g., Pierce v. Mattis*, 256 F. Supp. 3d 7, 14 (D.D.C. 2017) (dismissing *Bivens* suit where plaintiff did "not allege that [the agent] knew that it was a false statement at the time he included it in his affidavit in support of the warrant").   Moreover, the warrant affidavits relied on the Intelligence Community Assessment ("ICA") when referencing Russia's role in the hacking activities.   Stone does not explain why the agents' reliance on an assessment published by the United States intelligence community could satisfy the required scienter.   *See United States v. Richardson*, 861 F.2d 291, 293 (D.C. Cir. 1988) (affidavit not suspect where "there has been absolutely no showing [the affiant] made the statements with scienter"); *United States v. Davis*, 617 F.2d 677, 694 (D.C. Cir. 1979) (reckless disregard is a subjective standard requiring that the affiant "entertained serious doubts as to the truth" of the information contained in the affidavit).

13

Stone and his declarants make various claims about the metadata of the files later posted to Organization 1 and disseminated by Guccifer 2.0.  But Stone does not attempt to show that these facts were likely known to the affiants or that they are so probative that notwithstanding the ICA and other supporting evidence, any agent who described Russia's role must have been intentionally lying or acting in reckless disregard for the truth.

3.   Finally, Stone has not made a substantial preliminary showing that the asserted misrepresentations (whatever exactly they may be) were necessary to the eighteen findings of probable cause.   Even if references to Russian involvement in the various hacks were knowingly or recklessly false (which they were not), no hearing would be required because "there remains sufficient content in the warrant affidavit to support a finding of probable cause."  *Franks,* 438 U.S. at 171-172.

As discussed, references to Russia's role played little if any role in the various probable cause determinations, which were primarily based on Stone's communications with individuals and entities that took credit for the hacks or were disseminating the stolen materials.   For example, the affidavits state that the Twitter account Guccifer 2.0 claimed responsibility for the hack of the DNC computers and describe Stone's communications with Guccifer 2.0 and with Organization 1.  *Cf. Dorman*, 860 F.3d at 684-685 ("probable cause for the search did not rise or fall on the identification of Dorman as the robber" but rather on "the link" between the robbery and a vehicle, and the defendant and that vehicle).

Stone repeatedly references CrowdStrike in his motion.  But the public disclosures by CrowdStrike were included in the warrants not for the truth of the matter asserted, but rather to provide background information on the congressional investigation that Stone is alleged to have

obstructed.   The references to CrowdStrike's public statements– which consist of just two paragraphs in the five relevant warrants– are a tiny portion of the affidavits.   *See, e.g*, Doc 109, Ex. 14 (two of sixty-five paragraphs); Ex. 15 (two of eighty-six paragraphs); Ex. 16 (two of sixty-eight paragraph); Ex. 17 (two of seventy-nine paragraphs); Ex. 18 (two of one hundred paragraphs).   Those few paragraphs were not central to the affidavits' showing of probable cause.

## <u>CONCLUSION</u>

For the reasons above, the Government respectfully requests that the Defendant's motion be denied without an evidentiary hearing.

Respectfully submitted,


JESSIE K. LIU
U.S. Attorney for the District of Columbia

By: _____/s/_____
Jonathan Kravis
Michael J. Marando
Assistant United States Attorneys

Adam C. Jed
Aaron S.J. Zelinsky
Special Assistant United States Attorneys
555 4th Street NW
Washington, D.C. 20530