IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Case No.: 1:19-CR-00018-ABJ

UNITED STATES OF AMERICA,

v.

ROGER J. STONE, JR.,

       Defendant.

**DEFENDANT ROGER STONE'S REPLY TO GOVERNMENT'S OPPOSITION TO <u>MOTION TO SUPPRESS</u>**

Defendant ROGER STONE, files this reply to the government's opposition to Stone's motion to suppress all evidence as fruit of illegal search warrants and evidentiary hearing. *See* Doc. 122.

The United States government has claimed that Russian controlled entities (actors) nicknamed "Fancy Bear" and "Cozy Bear" were responsible for hacking into the Democratic National Committee ("DNC"), and the Democratic Congressional Campaign Committee ("DCCC"), and then resent that data to WikiLeaks to be released publicly.[1] The specific challenge to the truthfulness of all the warrants is the unproven claim that the Russian state transferred the DNC and DCCC, and other campaign officials' data to WikiLeaks. Or, said a different way, WikiLeaks received the data from the Russian state. The government should not have represented this as a fact to the various district judges and magistrates in order to obtain the search warrants.

---

[1] "Hacking" = to gain illegal access to (a computer network, system, etc.) https://www.merriam-webster.com/dictionary/hack . Stealing data is a separate act.

This representation is at a minimum, reckless. The government supports several warrants by citing to other warrants and the *United States v. Netyksho et. al.* No. 18-cr-215 (ABJ) indictment. This is because the assumption that WikiLeaks received the relevant data from Russia is also alleged in that indictment. *Id.*, ¶¶ 47-49. The government citing to its own false assumptions cannot create probable cause. The government has never had to prove its case. The series of misrepresentations is foundational.

*The government does not dispute in its opposition: "The Office cannot rule out that stolen documents were transferred to WikiLeaks through intermediaries who visited during the summer of 2016."* Robert S. Mueller, *Report On The Investigation Into Russian Interference In The 2016 Presidential Election*, 47 (2019) (emphasis added) (hereinafter "Mueller Report"). Declarations from William Binney and Peter Clay, experts in this field concur that WikiLeaks did not receive the stolen data from Russia. (Doc. 100-1; Doc. 100-3). This evidence was discoverable to the government simply by analyzing the documents from the WikiLeaks database. It required no warrant of any entity or person at all.

In the government's opposition it states: "Even if those claims were correct and well supported (which they are not), they would not come close to suggesting that any statements about Russia conducting the hacks were false." Opp. at 12. This confesses and confirms that the government's representations in the warrants are not *more likely* to be correct, they are not probable cause. *See Illinois v. Gates,* 462 U.S. 213, 238 (1983). It also overlooks the main point that hacks are qualitatively different than the transfer of data to WikiLeaks. Regardless, if all things are equal, then the simple answer is someone put a thumb drive in a DNC computer and downloaded data opportunistically over several noncontiguous days. Or as the CrowdStrike founder implied,

employees at the DNC could take their laptops home.[2] Indeed, however, it is not equal, it less than likely that the Russian state provided the pertinent data to WikiLeaks.

Because the Russian state did not transfer the data to WikiLeaks, all other allegations, including communications with Assange or WikiLeaks are irrelevant and immaterial to investigation about Russian interference with 2016 election. If the Court were to remove those false allegations as well as the premise it required the courts to assume (WikiLeaks received the relevant data from Russian state actors), then the warrant applications simply become applications describing Stone, a journalist, consultant and political commentator, communicating with third parties and having limited and innocuous communications with "@WikiLeaks," "@Guccifer2.0," or Julian Assange, organization or persons publishing stolen email similar to the New York Times. *See New York Times v. Sullivan,* 376 U.S. 254 (1964). The warrant applications do not describe a crime committed by Stone. *See Bartnicki v. Vopper,* 532 U.S. 514, 529-30 (2001) ("we are firmly convinced that the disclosures made by respondents in this suit are protected by the First Amendment"). This is especially so since Stone did not possess any of the stolen information, all of which these communications occurred well after June 22nd, 2016 – the first dissemination of the DNC emails on Wikileaks.

The government does not deny that an FBI investigation was not the genesis of the investigation into the theft and transfer of the DNC or DCCC data; it was, in fact, first investigated by a private company, CrowdStrike, hired in secret by the hacked organizations. None of the 'hacked' organizations engaged in traditional scientific computer investigations of the hacks and

---

[2] Vicky Ward, *The Russian Expat Leading the Fight to Protect America,* Esquire (Oct. 24, 2016)("On the afternoon of Friday, June 10, all DNC employees were instructed to leave their laptops in the office.").

theft, nor did they seek the assistance of the FBI – a practice that many members of Congress say is the obvious first step when there's any hint of foreign interference[3]. The DNC nor the DCCC participated in the traditional and scientific computer investigation of their hacks and thefts.

The FBI has stated that they has conducted no direct research, nor collected any evidence of the DNC breach directly, which was confirmed by thenFBI director James Comey. The FBI did not independently verify their findings, and nor could they, because the DNC refused to give the FBI access to the server. The DNC countered and told the media in a statement that the FBI never requested access to its servers after they were breached.[4] As late as March 20, 2017, FBI Director James Comey testified that "we never got direct access to the machines themselves. The DNC in the spring of 2016 hired a firm that ultimately shared with us their forensics from their review of the system."[5] The government has accepted CrowdStrike's reports. It is unfathomable that the hearsay of an inconclusive and unsubstantiated report written by a private security company, without having the FBI conduct its own investigation.

---

[3] Li Zhou, *Senate Republicans say campaigns should call FBI over foreign dirt*, Vox (June 12, 2019 at 5:40 p.m.), https://www.vox.com/2019/6/13/18677672/senate-republicans-fbi-campaigns-russia-donald-trump. ("All of us know, if you were to ever be contacted by a foreign entity, your first call is the FBI. I don't care if it's Russia, Norway, China, whomever." Sen. Marsha Blackburn (R-TN); "I've run for Senate twice. I've run for governor once. I've run for president twice. So far as I know, we never received any information from any foreign government. And had we received any information from – particularly from a hostile government – we would have immediately informed the FBI." Sen. Mitt Romney (R-UT).

[4] Ali Watkins, *The FBI Never Asked For Access To Hacked Computer Servers*, BuzzFeedNews (Jan. 4, 2017), https://www.buzzfeednews.com/article/alimwatkins/the-fbi-never-asked-for-access-to-hacked-computer-servers#.su1OoNAqJx.

[5] Washington Post Staff, *Full transcript: FBI Director James Comey testifies on Russian interference in 2016 election*, Washington Post (Mar. 20, 2017), https://www.washingtonpost.com/news/post-politics/wp/2017/03/20/full-transcript-fbi-director-james-comey-testifies-on-russian-interference-in-2016-election/?utm_term=.1abe5d6ab043.

## MEMORANDUM OF LAW

**I.    Search warrants did not provide probable cause.**

The subtle but important point is: computer data is like hard-copy books and records except the same books and records can be copied and taken several times from separate sources. Meaning, the same data can be hacked and stolen more than once and by different entities. Perhaps the Russians hacked the DNC. Perhaps, the Russians stole the data out of the DNC computers. But maybe they didn't. Certainly, the Russians are not the only government that hacked into the DNC's fragile computer infrastructure. Did WikiLeaks receive *their* copy of the data from anyone related to the Russian state? This is the only relevant question. Because if the government's answer is self-referential (as in "see our indictment") it has not answered the question. If the government fails to prove that WikiLeaks received the DNC data from the Russian state; then there is no probable cause that Stone participated in or aided in the hacking, stealing, or dissemination of the DNC's data or any Russian state involvement for that matter.

Without the unproven and politically charged assumption that WikiLeaks obtained the data from the Russian state, the rest of the application for warrants do not provide probable cause for any crime. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, *including the "veracity" and "basis of knowledge" of persons supplying hearsay information*, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (emphasis added). The government differentiates two different types of warrants: Computer Fraud and Abuse Act, under § 1030 and other related wire fraud and conspiracy, and aiding and abetting; and, the lying to Congress warrants, under § 1001 and the related obstruction and witness tampering.

A. **Section 1030 warrants**

The warrant applications do not suggest that Stone himself used a computer to hack, steal, or even transfer the data to WikiLeaks. The Section 1030 warrants introduce Jerome Corsi, Theodore Malloch, Julian Assange, and Roger Stone.[6] They speak to each other about politics WikiLeaks, and "about phishing with John Podesta," which may imply Podesta was phishing, or that Assange or Malloch were phishing Podesta, but clearly neither seem to be the point of the allegation. Doc. 100-1, ¶8. The applications discuss Stone's public interaction with Guccifer 2.0 and WikiLeaks.  It proves Stone was one of many who interacted with both, but does not mean Guccifer 2.0 and WikiLeaks communicated with each other. Since the overriding evidence, the metadata itself from the WikiLeaks documents from the DNC demonstrate that it did not come from Russia; we just have two entities communicating with each other which is of no consequence against the backdrop that WikiLeaks received the DNC's data from somewhere other than a Russian source. The same applies to the allegations of direct Twitter messaging between Stone and Assange and "@WikiLeaks," where in the very warrants, it is established that Stone and Assange were not really communicating about anything of relevance or consequence. *See* Doc. 100 Ex. 1, ¶ 38.

Communications about forthcoming leaks are written as in the warrant is nothing more than speculation among Corsi, Malloch, and Stone. All of them are guessing about when WikiLeaks is going to publish more data. *See* Doc. 100 Ex.1, ¶¶ 41-57. None of them communicated with Assange. Comments about "friends at the embassy" by Corsi were made up. Speculation about an anticipated upcoming data dump was wrong. *See* Doc. 100 Ex. 1, ¶¶ 54-56.

---

[6] Paul Manafort is referenced in paragraph 26 of Exhibit 1 of Doc. 100 (filed under seal). It is alleged that Stone and he are friends, Manafort resigned as Chairman of the Trump Campaign, Manafort worked in for Washington, D.C. lobbying firms to influence U.S. policy toward Ukraine. It is a nonsequitur. Manafort is not mentioned again.

And any remarks to Sam Nunberg in the opposition camp of another candidate about Stone having dinner with Assange is a joke because Assange was sequestered in the Ecuadorian Embassy in London and Stone was in the United States. *See* Doc. 100 Ex. 1, ¶ 47.

Then the warrant application references the infamous outtake footage from "Access Hollywood." *See* Doc. 100 Ex. 1, ¶¶ 58-65. Corsi and Stone spoke. Charles Ortel sent an email written to Stone and Stone sent it to Corsi after WikiLeaks disseminated Podesta's emails. The email was titled "WikiLeaks – The Podesta Emails." *See* Doc. 100 Ex.1, ¶ 65. The application does not state that anyone told Stone, Assange was going to disseminate Podesta's emails. The two events were close to each other and it is not alleged one caused the other. Even with knowledge of its early dissemination, is not a crime. *See Bartnicki,* 532 U.S. at 529-30.

Stone is accused of having advanced knowledge of Podesta's emails. *See* Doc. 100 Ex.1, ¶¶ 66-79. It is not illegal to have advanced knowledge of Podesta's emails being disseminated. *See id.* The allegation that Stone asked Corsi for something to blog publicly, denying advanced knowledge, is also not a crime. Corsi did a lot of writing for and with Stone.

Post-Podesta's July 2016 release by WikiLeaks, Malloch said he would connect Corsi with Assange. He never did and never tried. *See* Doc. 100 Ex. 1, ¶¶ 80-81. Corsi took credit for circumstances that neither of them were responsible for – predicting the release of Podesta's emails on WikiLeaks. *See* Doc. 100 Ex. 1, ¶¶ 84-85. Which again, even if true, is not a crime. *Bartnicki,* 532 U.S. at 529-30. Lastly, the warrants allege that Stone had Facebook accounts that he used to perpetuate his political writings including the writings about Podesta, this is squarely within the First Amendment protections guaranteed to every American.

B. **Section 1001 warrants**

These warrant applications, post Stone's congressional testimony, does not provide probable cause either. If the Russian state did not deliver the relevant data to WikiLeaks, who Roger Stone was talking to and what documents he allegedly failed to voluntarily turn over to HPSCI, is no longer a crime or evidence of a crime.[7] Previous warrants are cited to support future applications for warrants. *See* Doc. 100 Ex. 17 at 7, n. 2. Conversations with Randy Credico, written or otherwise, relating to whether Credico was, was not, or at what point was Credico telling Stone about conversations Credico had with Assange does not rise to probable cause because Stone's alleged lies to Congress would have no materiality toward the question of Russian state activities to interfere with the election as it related to Stone and WikiLeaks. Doc. 100 Ex. 17, ¶¶ 26-29. The government is throwing around names and concepts that evoke strong emotions, but provide nothing to demonstrate that anyone did anything wrong.

The only reason certain congressional HPSCI members were interested in Stone's prior public statements with Assange is because they assumed it had to do with Russian state transferring the relevant emails. Doc. 100 Ex. 17, ¶30. In the parameters set forth by HPSCI, Stone stated he did not have any documents that complied with its request. *See* Doc. 100 Ex. 17, ¶¶ 35-36. Even if the claimed emails or texts Stone allegedly did not provide were within the parameters of the Congressional request, the response had no effect on an investigation into Russian interference, since Stone's emails had nothing to do with the Russian state transmitting relevant data to WikiLeaks. All of this must be viewed through the prism of what Congress provided to Stone as the publicly stated parameters of their investigation. It therefore does not matter if Stone

---

[7] Congress did not subpoena any documents regardless of form from Stone. But left it to Stone to determine which documents he should turn over that were not "widely available" or that "reasonably could lead to the discovery of any facts within the investigations publicly-announced parameters." Doc 100-17, ¶ 31.

communicated to the Trump campaign that WikiLeaks was going to release more damaging documents. Stone allegedly telling Steve Bannon or some other Campaign official that Stone predicts more from WikiLeaks is not a conversation with his "intermediary." *See* Doc. 100 Ex., ¶ 49. The media was replete with discussions about WikiLeaks and speculation about what WikiLeaks had and what it would release next, what Stone was saying was not novel at the time.[8]

Urging Credico to do what his lawyer suggested, take the Fifth Amendment – remain silent, is not witness intimidation. *United States v. Balzano,* 916 F.2d 1273, 1291 (7th Cir. 1990); *see also United States v. Johnson*, 903 F.2d 1084, 1087 (7th Cir. 1990). Certainly, it is not a crime to urge someone to tell the truth, in fact, truth-seeking lawful conduct is an affirmative defense against a 18 U.S.C. § 1512(b)(1) charge. *See* Comment to 18 U.S.C. § 1512(e). Credico and Stone had been friends for over a decade and in addition to the unlabeled *Brady* letter provided by the government, Credico said on a podcast show, pre-indictment, that he was not worried about a "threat" from Stone.[9] Lastly, Credico lived with one of WikiLeaks lawyers and they shared the dog referred to in the indictment. Credico lived with a lawyer for WikiLeaks during the relevant time period. *See* Doc. 100 Ex. 17, ¶ 53(c). Credico told Stone that he was getting information from Assange. Even if this was considered false, then Credico was lying to Stone. And what is the issue with this? Credico at the time was a journalist and a commentator availing himself of his First Amendment rights. If the real intermediary was Corsi, which the government concedes he was not, then the probable cause argument is Stone lied to Congress about having a fabricated intermediary to

---

[8] Amar Toor, *WikiLeaks plans to release documents on US election and Google over the next ten weeks*, The Verge (Oct. 4, 2016 at 6:06 a.m.), https://www.theverge.com/2016/10/4/13159914/wikileaks-hillary-clinton-julian-assange-google.

[9] Yahoo, *Crucial Figure in Roger Stone Indictment Speaks Out*, YouTube (Jan. 30, 2019), https://www.youtube.com/watch?v=4QD4vRQ6gPg&feature=youtu.be&t=1130. (It's not that I'm worried about him doing it").

communicate with Assange who did not communicate with Assange about getting DNC and DCCC data from somewhere other than the Russian state. These are circular arguments that rely on themselves with no other proof – it borders on the theatre of the absurd.

**II.      Agents did not have good faith to think that they had probable cause.**

"The government bears the burden of proving an exception to the warrant requirement." *United States v. Holloway,* 290 F.3d 1331, 1337 (11th Cir. 2002). As the Court explained in *Leon*, the good-faith exception does not apply if a warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Griffith*, 867 F.3d 1265, 1278 (D.C. Cir. 2017) (citing *United States v.* Leon, 468 U.S. 897, 923 (1984)) (internal quotation marks omitted). When applying that standard, we consider the objective reasonableness not only of "the officers who eventually executed the warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination." *Id.* at 923 n.24. We ask whether an objectively reasonable officer could think the affidavit established probable cause, keeping in mind the inadequacy of a bare bones affidavit. *Id.*

The good faith exception does not apply because a reasonably well trained agent would have known it was less likely that the Russian state delivered the relevant data to WikiLeaks and more likely the data came from a thumb drive, indicating that a person at the DNC had to load the data on the thumb drive and physically deliver it. *See United States v. Johnson*, 332 F. Supp. 2d 35, 39 (D.D.C. 2004), *case dismissed,* 04-3130, 2004 WL 2554583 (D.C. Cir. Nov. 10, 2004) (citing *United States v. Hopkins,* 128 F.Supp.2d 1, 9 (D.D.C.2000) (quoting *United States v. Leon*. at 922 n. 23).

In the Stone case, the government's agents knew they had never been provided access to the DNC or other relevant computers at the time, and a private investigatory entity had already spoiled the evidence. Government agents also knew that CrowdStrike provided redacted reports to the government. Government agents also knew that CrowdStrike's understanding of the monikers, FancyBear, was at best names given to a myriad of people, groups, private companies or even unknown entities engaged in similar activities closer to that of a *modus operandi*. Fancy Bear is a pseudo cryptonym (nickname) marketing term invented by a Russian born American immigrant named Dmitri Alperovitch.[10] The monikers are written as if they are human actors, but they should not be anthropomorphized.[11] The agents knew the false representation in the warrant about the likelihood that WikiLeaks did not receive DNC data from the Russian state would eliminate probable cause from the warrants.

### III. Allegations under *Franks* are sufficient; *Franks* hearing is required.

Roger Stone is entitled to an evidentiary hearing to support his case, pursuant to *Franks v. Delaware*, 438 U.S. 154, 156, (1978). The parties agree *Franks* requires the Court to evaluate: 1) was there a misrepresentation in the search warrant application; 2) was the misrepresentation reckless or worse; and, 3) if it there were misrepresentations does the application for the warrants

---

[10] Dmitri Alperovitch is an entrepreneur and private software developer specializing in computer security. Currently he is the CTO of CrowdStrike, Inc.

[11] Here is another example of when and why monikers are created and misused by CrowdStrike. "While Alperovitch was writing up his report on the breach, he received a call from Renee James, an executive at Intel, which had recently purchased McAfee. According to Alperovitch, James told him, 'Dmitri, Intel has a lot of business in China. You cannot call out China in this report.' Alperovitch removed the word *China* from his analysis, calling the operation Shady Rat instead."(located at https://www.esquire.com/news-politics/a49902/the-russian-emigre-leading-the-fight-to-protect-america/ last checked June 14, 2019). On June 12, 2019, CrowdStrike went public. (NASDAQ: CRWD).

survive without the offending misrepresentations. *Id.* As illustrated above, Stone has met all three elements.

Overall, the government complains Stone's claims are generalized and conclusory. (Doc 122 at 8). Stone presented "concrete, specific," and "appropriate evidence" and "proof." *See United States v. Gonzalez,* 781 F.3d 422, 430 (8th Cir. 2015). Stone presented two declarations that concretely and specifically challenge the government's foundational assumption in all warrants – WikiLeaks received the DNC data from the Russian state. *See* Doc. 100-1 and Doc. 100-4

(Doc. 100 Ex. 1, §B ¶¶ 9-19).[12]

(Doc. 100 Ex. 2, ¶¶ 6-7).

(Doc. 100 Ex. 3, ¶¶ 6-7).

(Doc. 100 Ex. 4, ¶¶ 7-8).

(Doc. 100 Ex. 5, ¶¶ 7-9).

(Doc. 100 Ex. 6, ¶¶14, 16-24).

(Doc. 100 Ex. 7, ¶¶ 13-19).

(Doc. 100 Ex. 8, ¶¶13-19).

(Doc. 100 Ex. 9, ¶¶ 9-19).

(Doc. 100 Ex. 10, ¶¶ 9-19).

(Doc. 100 Ex. 11, ¶¶ 12-21).

(Doc. 100 Ex. 12, ¶¶ 9-18).

(Doc. 100 Ex. 13, ¶¶ 9-18).

(Doc. 100 Ex. 14, ¶¶ 9-15).

---

[12] All Exhibits were previously filed under seal. *See* Doc. 100.

(Doc. 100 Ex. 15, ¶¶ 16-19).

(Doc. 100 Ex. 16, ¶¶ 16-19).

(Doc. 100 Ex. 17),

(Doc. 100 Ex. 18).

The allegations in the warrant applications are nothing more than a collection of conclusory statements and various forms of the slogan, 'We're right because we say we're right,' in addition to citations to earlier warrants and the United States Intelligence Community. If this Court were to remove the language regarding the Russians hacking the DNC, DCCC, and Podesta, then the warrants lack probable cause. *See Franks*, 438 U.S. at 156 (removing offending portion of warrant and then evaluate probable cause); *United States v. Karo,* 468 U.S. 705, 719 (1984).

Certainly, the warrants do not describe that the Special Counsel thought Stone did the hacking or the stealing of the relevant data. What is left is that Stone allegedly lied and obstructed Congress because it had determined the Russian state had transferred the relevant data to WikiLeaks. It does not matter if Assange told Credico or Stone directly, Podesta's emails are next. This segment of the investigation relating to Roger Stone would have nothing to do with Russian interference.

## CONCLUSION

This motion to suppress justifies an evidentiary hearing to which the Court has already set aside hearing time on July 16, 2019.

Respectfully submitted,
By: /s/_____

| | |
|---|---|
| L. PETER FARKAS | BRUCE S. ROGOW |
| HALLORAN FARKAS + KITTILA, LLP | FL Bar No.: 067999 |
| DDC Bar No.: 99673 | TARA A. CAMPION |
| | FL Bar: 90944 |

13

1101 30th Street, NW
Suite 500
Washington, DC 20007
Telephone: (202) 559-1700
Fax: (202) 257-2019
pf@hfk.law

BRUCE S. ROGOW, P.A.
100 N.E. Third Avenue, Ste. 1000
Fort Lauderdale, FL  33301
Telephone: (954) 767-8909
Fax: (954) 764-1530
brogow@rogowlaw.com
tcampion@rogowlaw.com
*Admitted pro hac vice*

ROBERT C. BUSCHEL
BUSCHEL GIBBONS, P.A.
D.D.C. Bar No. FL0039
One Financial Plaza, Suite 1300
100 S.E. Third Avenue
Fort Lauderdale, FL 33394
Telephone: (954) 530-5301
Fax: (954) 320-6932
Buschel@BGlaw-pa.com

GRANT J. SMITH
STRATEGYSMITH, PA
D.D.C. Bar No.: FL0036
FL Bar No.: 935212
401 East Las Olas Boulevard
Suite 130-120
Fort Lauderdale, FL 33301
Telephone: (954) 328-9064
gsmith@strategysmith.com

CHANDLER P. ROUTMAN
D.D.C. Bar No. 1618092
501 East Las Olas Blvd., Suite 331
Fort Lauderdale, FL 33301
Tele: (954) 235-8259
routmanc@gmail.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 14, 2019, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record or pro se parties, via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Chandler Routman*
Chandler P. Routman

*United States Attorney's Office for the District of Columbia*

Jessie K. Liu
**United States Attorney**
Jonathan Kravis
Michael J. Marando
**Assistant United States Attorneys**
Adam C. Jed
Aaron S.J. Zalinsky
**Special Assistant United States Attorneys**
555 Fourth Street, NW
Washington, DC 20530
Telephone: (202) 252-6886
Fax: (202) 651-3393