UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROGER J. STONE, JR.,<br><br>Defendant. | Criminal No. 19-cr-18-ABJ |

## GOVERNMENT'S MOTION FOR AN ORDER TO
## SHOW CAUSE AND FOR A HEARING

The United States of America, by and through Jessie Liu, United States Attorney for the District of Columbia, hereby files this Motion for an Order to Show Cause why, in light of the defendant's recent social media postings, the Court should not modify the conditions of release or otherwise modify the media contact order in this case. On or about June 18 and 19, 2019, the defendant posted to Instagram and Facebook, commenting about this case and inviting news organizations to cover the issue. This is a violation of the current conditions of release, and the government accordingly calls it to the Court's attention.

### BACKGROUND

1. *The Court's First Media Contact Order*

On January 24, 2019, the grand jury charged defendant Roger J. Stone, Jr. with obstructing a congressional investigation in violation of 18 U.S.C. § 1505 (count 1); making numerous false statements to Congress in violation of 18 U.S.C. § 1001(a)(2) (counts 2-6); and witness tampering in violation of 18 U.S.C. § 1512(b)(1) (count 7). Doc. 1.

During a February 1, 2019 status conference, the Court invited the parties' views on whether it should enter an order under Local Criminal Rule 57.7(c) to "refrain from making further statements to the media or in public settings that are substantially likely to have a materially

---
prejudicial effect on the case." Feb. 1, 2019 Tr. at 17:16-19. Stone filed a response opposing "any order" under Rule 57.7(c). Doc. 28, at 1. The government filed a response stating that it did not oppose a narrowly-tailored order restricting extrajudicial statements that are substantially "likely to interfere with the rights of the accused to a fair trial by an impartial jury." Doc. 29, at 1 (citing Rule 57.7(c)).

On February 15, 2019, the Court issued an order prohibiting counsel for the parties and the witnesses from making statements that "pose a substantial likelihood of material prejudice to this case." Doc. 36, at 3. The Court also ordered all participants, including the parties, to refrain from making statements in the immediate vicinity of the courthouse that "pose a substantial likelihood of material prejudice to this case or are intended to influence any juror, potential juror, judge, witness or court officer or interfere with the administration of justice." *Id.* at 3-4.

2. *The Court's Amended Media Contact Order*

Three days later, Stone (working with others) posted a photograph of the Judge in this case on Instagram with a crosshair in the corner of the image. Feb. 21, 2019 Tr. at 46:2-16. When the matter received substantial public attention, Stone filed a "Notice of Apology" for "the improper photograph and comment posted on Instagram today." Doc. 38, at 1. The Court scheduled a hearing and ordered Stone to show cause why the media contact order and/or conditions of release should not be modified or revoked in light of the post. Minute Order, Feb. 19, 2019. At the hearing, Stone claimed that the posted image had a "Celtic occult symbol" (not a crosshair), but also testified he did not know what the "symbol" represented because he is "not into the occult." Tr. 17:13-14. Stone testified that one of "a few volunteers" sent him the image, but he could not identify the volunteer, Tr. 22:3-23:4, or even who had access to his phone at the time the photograph was posted, Tr. 25:22-26:1; 33:11-33:16. The Court found Stone's "evolving and

contradictory" testimony not credible. Tr. 45:14-15.

The Court then asked counsel for the defendant how to craft an order that would be "clear" to Stone. Counsel responded: "It can be done by refining what -- he should not be talking about this Court. He should not be talking about the special prosecutor. He should not be impugning the integrity of the Court. That's what should be done." Tr. 41:19-23. Counsel continued:

> If Your Honor is asking me to craft an order, then that is what the order should say: This Court should not be criticized by Mr. Stone. The government should not be impugned by Mr. Stone. The integrity of this case should not be impugned by Mr. Stone. We will defend this case at the trial. That's the time to defend this case. And that is the kind of nature of an order that I would suggest the Court should craft that would address the specific needs that we're talking about.

Tr. 42:15-23.

After considering the facts and arguments presented by the parties, the Court entered a further media contact order. The Court observed that Stone had been charged not only with lying to Congress but also with witness tampering, and that "the evidence detailed in the indictment alone is quite compelling." Tr. 44:15-21. The Court found that Stone "has not been chastened by the pendency of those charges, and that in connection with this matter, he has decided to pursue a strategy of attacking others." Tr. 44:22-25. The Court expressed concern that Stone's statements of this sort "can incite others" and can "frustrate" the paramount goal of ensuring "a fair trial by an impartial jury." Tr. 45:7-11, 48:14-25, 49:1-6. The Court noted its responsibility to "ensure that the trial does not devolve into a circus" and stated that Stone's "fanning the flames" would only exacerbate the problems that can arise in cases that generate significant publicity. Tr. 49:1-20. The Court accordingly prohibited Stone from:

> making statements to the media or in public settings about the Special Counsel's investigation or this case or any of the participants in the investigation or the case. The prohibition includes, but is not limited to, statements made about the case through the following means: radio

> broadcasts; interviews on television, on the radio, with print reporters, or on internet based media; press releases or press conferences; blogs or letters to the editor; and posts on Facebook, Twitter, Instagram, or any other form of social media.

Minute Order, Feb. 21, 2019.

3. *The Defendant's June 18 and 19, 2019 Instagram Postings.*

In the past several days, Stone posted statements on social media about this case and the Special Counsel's investigation and appears to have specifically targeted those posts at major media outlets.[1]

On June 18, 2019, Stone posted a screenshot of an article about one of his recent filings in this case. The screenshot read: "US Govt's Entire Russia-DNC Hacking Narrative Based on Redacted Draft of CrowdStrike Report." Ex. 1. He tagged the post, "But where is the @NYTimes? @washingtonpost? @WSJ? @CNN?" *Id.* Later that day, Stone posted a screenshot of another piece about his filing with the title, "FBI Never Saw CrowdStrike Unredacted Final Report on Alleged Russian Hacking Because None was Produced." Ex. 2. Next, Stone posted an article titled, "Stone defense team exposes the 'intelligence community's' [sic] betrayal of their

---

[1] These posts are not the first statements that appear to have run afoul of the Court's order. *See, e.g.*, Ex. 5 (Instagram Posting of April 4, 2019, stating "FBI Refuses Records Request for Emails to CNN on Day of Roger Stone Raid," with the tag, "How curious? What could they possibly be hiding?"); Ex. 6 (Instagram Posting of May 8, 2019, with the headline "Judge demands unredacted Mueller report in Roger Stone case," with the comment, "The Judge has ruled but @Politico gets most of the story wrong because they are biased elitist snot-nosed fake news [expletive] who's [sic] specialty is distortion by omitting key facts to create a false narrative."); Ex. 7 (Instagram Posting of May 16, 2019, with headline, "Roger Stone Swings For the Fences; Court Filing Challenges Russiagate's Original Premise," with the comment, "My attorneys challenged the entire "Russia hacked the DNC/CrowdStrike" claim by the Special Counsel in public court filings[.]"); Ex. 8 (Instagram Posting of June 2, 2019, picturing a former CIA Director and writing, "This psycho must be charged, tried, convicted . . . . and hung for treason.") (ellipses in original) (subsequently deleted). The government is bringing this matter to the Court's attention now because Stone's most recent posts represent a direct attempt to appeal to major media outlets to publish information that is not relevant to, but may prejudice, this case.

responsibilities." Ex. 3. The text further stated, "As the Russia Hoax is being unwound, we are learning some deeply disturbing lessons about the level of corruption at the top levels of the agencies charged with protecting us from external threats. One Jaw-dropping example has just been exposed by the legal team defending Roger Stone." *Id.* Stone tagged the article, "Funny , No @nytimes or @washingtonpost coverage of this development."

On June 19, 2019, Stone posted a screenshot of an article with the title, "FBI Never Saw CrowdStrike Unredacted or Final Report on Alleged Russian Hacking Because None Was Produced." Ex. 4. He tagged the post, "The truth is slowly emerging. #NoCollusion." *Id.*[2]

## ARGUMENT

Stone's posts violate this Court's order that Stone not comment "in the media or in public settings about the Special Counsel's investigation or this case or any of the participants in the investigation or the case," including via "Instagram." Minute Order, Feb. 21, 2019. Stone placed the June 18 and June 19 posts on a social media platform specifically identified in the Court's order, Instagram. The posts refer to Stone's filings in this case and they target the investigation that was conducted by the Special Counsel and FBI of Russian interference in the 2016 presidential election. The posts, moreover, tag major media outlets, effectively calling on those outlets to cover Stone's allegations. *See, e.g.* Ex. 2 ("But where is the @NYTimes? @washingtonpost? @WSJ? @CNN?"); Ex. 3 ("Funny, No @nytimes or @washingtonpost coverage of this development."). This is the sort of "strategy of attacking others" that the Court noted at the February 21 hearing. Tr. 44:22-25. And it is exactly the kind of "fanning of the flames" that the Court warned could "incite others" or impair "a fair trial by an impartial jury."

---

[2] The defendant also posted copies of many of these screenshots on his public Facebook page.

*See* Tr. 48-50.

What's more, Stone's posts appear calculated to generate media coverage of information that is not relevant to this case but that could prejudice potential jurors. They relate to Stone's claims—made in both filings before the Court and in public settings—that Russia did not hack the DNC servers, that the FBI and intelligence community were negligent in investigating Russian interference in the 2016 presidential election, that the government improperly "targeted" Stone and others, and that the entire investigation was somehow invalid and any crimes flowing from it (including Stone's witness tampering and lies to Congress) were justified.[3] If those theories were relevant to this case (which they are not), public statements aimed at the media and meant to bolster the claims would risk prejudicing the jury pool. But these posts are arguably even worse, because they risk tainting the jury pool with information that is not relevant but that may appear, to some, to be relevant. At best, Stone's efforts could create the misimpression that this case is about issues that are not charged in the Indictment, and risk the trial "devolv[ing] into a circus" (Tr. 49:19-20). But worse, it could confuse prospective jurors or color how they later view the actually-relevant evidence and understand the Court's instructions about that evidence.

Criminal trials "are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper." *Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966) (quotation marks omitted). Courts must be careful to prevent a "carnival atmosphere at trial" and to ensure that participants in the case do not release "leads, information, and gossip" that could fuel "rumors and confusion." *Id.* at 358-359, 361. "The outcome of a criminal trial is to be decided by impartial jurors, who know as little as possible of the case, based on material admitted into evidence before

---

[3] The government intends to file a motion in limine on this subject by the deadline set by the Court's scheduling order.

them in a court proceeding." *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1070 (1991). Statements like Stone's "threaten to undermine this basic tenet." *Id.* A critical way to address these concerns is through the use of "remedial measures that will prevent the prejudice at its inception." *Sheppard*, 384 U.S. at 363. This Court has now entered two orders aimed at doing exactly that. But Stone nonetheless continues to fan the flames. The government accordingly requests that the Court order Stone to show cause why his conditions of release should not be modified to prevent further actions that risk prejudice to these proceedings or why the media contact order should not be further modified.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that this Court schedule a hearing to show cause why the defendant's conditions of release should not be modified.

Respectfully submitted,

JESSIE K. LIU
U.S. Attorney for the District of Columbia

By: /s/
Jonathan Kravis
Michael J. Marando
Assistant United States Attorneys

Adam C. Jed
Aaron S.J. Zelinsky
Special Assistant United States Attorneys
555 4th Street NW
Washington, D.C. 20530

Dated: June 20, 2019