## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | |
| **ROGER J. STONE, JR.,** | **Criminal No. 19-cr-18-ABJ** |
| **Defendant.** | |

### GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT REGARDING RUSSIAN INTERFERENCE IN THE 2016 PRESIDENTIAL ELECTION AND COORDINATION WITH THE TRUMP CAMPAIGN

The United States of America, by and through Jessie Liu, United States Attorney for the District of Columbia, respectfully moves to exclude evidence and argument regarding (1) Russian involvement in the hacks of the Democratic National Committee ("DNC") and Democratic Congressional Campaign Committee ("DCCC") computer systems and (2) allegations of Russian coordination with individuals associated with the presidential campaign of Donald Trump.  Stone is charged with obstructing a congressional investigation, making numerous false statements to Congress, and witness tampering.  Stone is not charged with participating in Russia's hacking activities or otherwise conspiring with the Russian government.

Stone has nonetheless stated in court filings that, in order to prove the charges against him, the government must establish at trial that Russia hacked the DNC and DCCC and coordinated with the Trump campaign and that Stone intends to present evidence on these subjects.  For example, Stone has declared that the government must "prove at trial that a conspiracy existed to interfere with the 2016 presidential election and that it involved the Russian government." Doc. 70, at 2; Doc. 72, at 3 (same); 5/30/19 Tr. 100-101, 101-102, 103 (same).  Stone has elsewhere suggested that the government must prove in this trial that Russia hacked the DNC and

transmitted the files to Organization 1.  5/30/19 Tr. 101.  And Stone has suggested an intention to put on evidence on these subjects.  *See, e.g.*, Doc. 70, at 1 (positing that information about Russia's hacking activity is "essential to Stone's defense").

Evidence and argument about these issues should be excluded from trial because it is irrelevant to the charges at issue in this case and also presents a serious risk of jury confusion, prejudice, and delay.  The Indictment does not charge Stone with hacking the DNC or DCCC or conspiring with Russia.[1]  To establish that Stone committed the crimes with which he is charged, the government is not required to introduce evidence to support the assessment of the United States Intelligence Community that Russia carried out these hacks.  Nor is the government required to introduce evidence as to whether any member of the Trump campaign coordinated with the Russian government.  Rather, the government's evidence on these points will be limited to establishing that the U.S. House of Representatives Permanent Select Committee on Intelligence ("HPSCI") was investigating possible Russian involvement in the hacks and whether there were any links to individuals associated with the Trump Campaign.  This is for the limited purpose of showing the scope of the investigation in which Stone is charged with making false statements and engaging in obstruction.  Stone's suggestions that evidence regarding Russian involvement in the hacks or coordination between Russia and the Trump Campaign is essential to the charges against him misunderstands the elements of the crimes charged here and the government's theory of the case.  Not only would evidence on these issues be irrelevant, but it would also pose significant

---

[1] Individuals associated with Russia have also been charged with hacking the email account of the Clinton Campaign's chairman and transferring many of the stolen documents to Organization 1.  *See* Indictment ¶¶ 3, 13, 21(a), 47; *United States v. Netyksho*, No. 18-cr-215 (D.D.C. July 13, 2018) (Doc. 1).  Because Stone has focused on the hacking of the DNC and DCCC, the government does the same here.  But the arguments for excluding irrelevant evidence related to the hacks of the DNC and DCCC apply equally to the hack of email accounts of Clinton Campaign volunteers and employees, including that campaign's chairman.

risks of unfair prejudice, confusing or misleading the jury, and undue delay.  The presentation of this evidence would require significant trial time and would risk confusing the jury with tangential but highly complex issues.

## STATEMENT

On January 24, 2019, a federal grand jury sitting in this District returned a seven-count indictment charging the defendant, Roger J. Stone, Jr., with obstructing a congressional investigation in violation of 18 U.S.C. § 1505 (count 1); making numerous false statements to Congress in violation of 18 U.S.C. § 1001(a)(2) (counts 2-6); and witness tampering in violation of 18 U.S.C. § 1512(b)(1) (count 7).  Doc. 1. In support of those charges, the Indictment alleges as follows.

### A.  Background Events In 2016

The Indictment alleges that, on July 22, 2016, Organization 1 released documents stolen from the DNC and, between October 7, 2016 and November 7, 2016, Organization 1 released documents stolen from the Clinton Campaign chairman.  Doc. 1, ¶¶ 3(a), 3(b).  The Indictment further alleges that, on or about July 25, 2016, Stone emailed Person 1 directing him to contact the head of Organization 1 to obtain emails related to then-candidate Clinton, *id.* ¶ 13(a), and on July 31, 2016, Stone emailed Person 1 to have an associate contact the head of Organization 1, *id.* ¶ 13(b).

The Indictment alleges that on August 2, 2016, Person 1 emailed Stone, stating:

Word is friend in embassy plans 2 more dumps. One shortly after I'm back. 2nd in Oct. Impact planned to very damaging . . . Time to let more than [the Clinton Campaign chairman] to be exposed as in bed w enemy if they are not ready to drop HRC. That appears to be the game hackers are now about. Would not hurt to start suggesting HRC old, memory bad, has stroke – neither he nor she well. I expect that much of next dump focus, setting stage for Foundation debacle.

*Id.* ¶ 13(c).  In August 2016, the Indictment alleges, Stone made a series of public statements about

his contact with the head of Organization 1.  *Id.* ¶¶ 5, 6, 14(a)-(e).  In some of those statements, Stone claimed that his contacts with the head of Organization 1 occurred through a "back-channel" or "intermediary." *Id.* ¶ 14(c), (d).

The Indictment additionally alleges that, beginning on or about August 19, 2016, Stone communicated with Person 2, by email and text message, about the head of Organization 1's plans regarding the release of hacked information.  *Id.* ¶ 10, 15.  On or about September 18, 2016, Stone sent an article to Person 2 describing allegations regarding then-candidate Clinton's time as Secretary of State.  *Id.* ¶ 15(d)(i)-(ii).  Stone asked Person 2 to send that article to the head of Organization 1 and ask for any relevant emails that might confirm the allegations.  *Id.* ¶ 15(d)(i). Over the course of several months, Stone and Person 2 communicated (by email and text message) about Organization 1 and its release of materials potentially damaging to then candidate Clinton. *See id.* ¶ 15(e)-(h).

The Indictment alleges that, in early October 2016, Stone communicated by email and text message with individuals involved in the Trump Campaign about releases of information by Organization 1.  *Id.* ¶ 16(a), (c)-(d).  On October 7, 2016, Organization 1 released its first set of documents related to the chairman of the Clinton Campaign.  *Id.* ¶ 17.  A campaign official congratulated Stone, and Stone claimed credit for accurately predicting that release.  *See id.*

## B.  The HPSCI Investigation and Stone's Testimony

On January 6, 2017, the U.S. Intelligence Community ("USIC") released an unclassified assessment entitled "Assessing Russian Activities and Intentions in Recent US Elections." https://www.dni.gov/files/documents/ICA_2017_01.pdf.[2]  Among other things, the USIC assessed

---

[2]  The ICA made clear this this was "a declassified version of a highly classified assessment" that had been provided to the President and others.  Background to "Assessing Russian Activities and Intentions in Recent US Elections": The Analytic Process and Cyber

that Russia had sought to interfere in the 2016 presidential election and to aid President Trump, that it did so by conducting cyber operations against political targets, and that Russian military intelligence "relayed material it acquired from" the computers of the DNC to the organization identified in the Indictment as Organization 1.  *Id.* at ii-iii, 1-3.

The Indictment alleges that in early 2017, HPSCI, the U.S. Senate Select Committee on Intelligence ("SSCI"), and the FBI opened or announced investigations into these matters.  Doc. 1 ¶ 7.  Those investigations examined, among other things, Russian involvement in obtaining and transmitting the documents that were eventually released by Organization 1 and Stone's claimed contacts with Organization 1.  *Id.*  As most relevant here, on January 25, 2017, the HPSCI Chairman and Ranking Member issued a statement explaining that it was investigating "Russian cyber activity and other 'active measures' directed against the U.S. and its allies"; "Counterintelligence concerns related to Russia and the 2016 U.S. election, including any intelligence regarding links between Russia and individuals associated with political campaigns"; "The United States Government response to these Russian active measures and any impact they may have on intelligence relationships and traditional alliances"; and "Possible leaks of classified information related to the Intelligence Community's assessments of these matters."  Joint Statement on Progress of Bipartisan HPSCI Inquiry into Russian Active Measures (Jan. 25, 2017), https://intelligence.house.gov/news/documentsingle.aspx?DocumentID=211.  These areas of inquiry were memorialized in a document signed by the Committee Chairman and Ranking Member entitled, "Scope of Investigation:  Bi-Partisan Inquiry into Russian Active Measures."

In May 2017, HPSCI asked Stone to testify and to produce relevant records.  The Indictment alleges that, in connection with HPSCI's investigation, Stone sent a letter to HPSCI

---

Incident Attribution, at 1 (Jan. 6, 2017).

disclaiming possession of any documents, records, or electronically stored information that could lead to the discovery of facts within the investigation's publicly announced parameters.  Doc. 1 ¶ 19.  On September 26, 2017, Stone testified before HPSCI in a closed session.  In his opening statement, Stone noted that the Committee investigation into Russian election interference included allegations involving an organization identified in the Indictment as Organization 1: "These hearings are largely based on a yet-unproven allegation that the Russian state is responsible for the hacking of the DNC . . . and the transfer of that information to" Organization 1.  Tr. 8. During the hearing, Stone was asked about his communications with Organization 1 during the 2016 election period.  In particular, Stone was asked about public statements he had made in August 2016 suggesting that he had communicated with the head of Organization 1 through an intermediary.  Tr. 39-40.  At the hearing, Stone declined to identify this intermediary, Tr. 40, despite the fact that he was advised several times by Members of the Committee that this information was important to the investigation.  *E.g.*, Tr. 57 ("We need to be able to examine that source."); *id.* at 65 (noting the "indispensability of interviewing the original source"); *id.* at 81 ("We will need to determine . . . whether you were in communication with" the head of Organization 1 "or you were in communication through an intermediary.  So we'll need to determine whether we can corroborate that through your intermediary.").

Despite his refusal to identify the intermediary, Stone did answer several questions about the nature of his communications with the intermediary.  Stone testified that he communicated with this intermediary "[o]ver the phone" and not by text message.  Tr. 44-45; *id.* at 109 ("Q:  So you never communicated with your intermediary in writing in any way?"  A:  No.  Q:  Never emailed him or texted him?  A:  He's not an email guy.").[3]  Stone further agreed that he had "no

_____

[3] Later in his testimony, Stone confirmed that he had reviewed his written communications,

emails to anyone concerning the allegations of hacked documents . . . or any discussions you have had with third parties about" the head of Organization 1.  Tr. 84; *id.* at 110 ("Q:  And you've never emailed anyone on the subject" or "the hacking of the DNC, the publication of documents, any of the Russian allegations?"  "A:  Not that I recall.").  Stone denied that he had asked the intermediary to do anything on his behalf.  Tr. 44.  And Stone denied that he had discussed his "conversations with the intermediary with anyone involved in the Trump campaign."  Tr. 102.  On October 13, 2017, Stone's counsel sent a letter to the Committee identifying Stone's intermediary with the head of Organization 1 by name as the individual referenced in the Indictment as Person 2.

On December 31, 2018, HPSCI published a declassified report summarizing the conclusions of its investigation.  In relevant part, the report, entitled "Report on Russian Active Measures," concluded that "Russian state actors and third party intermediaries were responsible for the selective dissemination of information from hacked U.S. political systems."  Report of the House Permanent Select Committee on Intelligence on Russian Active Measures, H.R. Rep. No. 115-1110, at 39 (2019).  The report further concluded that Organization 1 "played a key role in Russia's malign influence campaign and served as a third party intermediary for Russian intelligence during the period leading up to the 2016 U.S. presidential election."  *Id.* at 30.  The final Committee report included a section summarizing the information that Stone provided to the Committee.

### C.  The Charges In This Case

On January 24, 2019, the grand jury returned a seven-count indictment charging Stone with obstructing a congressional investigation in violation of 18 U.S.C. § 1505 (count 1); making

---

including email and text message, to determine whether he possessed any documents relevant to the Committee's investigation.  Tr. 108-09.

numerous false statements to Congress in violation of 18 U.S.C. § 1001(a)(2) (counts 2-6); and witness tampering in violation of 18 U.S.C. § 1512(b)(1) (count 7).  The Indictment alleges that Stone made multiple false and misleading statements to HPSCI.  *Id.* ¶¶ 19-35, 43.  These include Stone's sending a letter disclaiming possession of relevant documents or records, *id.* ¶ 19, and Stone's falsely testifying that he had no documents referring to the head of Organization 1, *id.* ¶¶ 22-23, 31-33, that his August 2016 references to a single intermediary were about Person 2, *id.* ¶¶ 25-28, that Stone did not ask his "intermediary" to communicate information or requests to the head of Organization 1, *id.* ¶¶ 29-30, that Stone never communicated with his intermediary in writing, *id.* ¶¶ 31-34, and that Stone never spoke to individuals involved in the Trump Campaign about communications with his intermediary, *id.* ¶ 35.

The Indictment also alleges that, in an effort to conceal his false statements to HPSCI, Stone repeatedly urged Person 2 to testify falsely, or to say that he could not remember the relevant events, or not to testify at all.  *Id.* ¶¶ 36-39.  Specifically, Stone urged Person 2 to confirm falsely Stone's prior testimony, including that Person 2 provided the basis for Stone's early-August 2016 statements about contact with Organization 1.  *Id.* ¶ 36.  When Person 2 privately stated that Stone's testimony before HPSCI was false, Stone sought to prevent Person 2 from contradicting that testimony.  *Id.*  Stone emailed and texted Person 2, urging him to testify falsely that he was Stone's intermediary, or to claim falsely a lack of memory about key events, or to refuse to testify altogether and cite the Fifth Amendment.  *See id.* ¶¶ 36-39, 41.  On numerous occasions, Person 2 implored Stone to correct his HPSCI testimony.  *See id.* ¶¶ 36, 37(f).  Eventually, Person 2 acceded to Stone's pressure and informed HPSCI that he intended to assert his Fifth Amendment privilege against self-incrimination if required to appear by subpoena.  *Id.* ¶ 38.  Stone continued to pressure Person 2 not to cooperate with investigators.  *Id.* ¶ 39, 45 (Count 7).

**DISCUSSION**

Stone has asserted that in order to prove the charges in this case, the government must prove (1) Russian involvement in the hack of the DNC and DCCC computer systems and (2) a conspiracy between Russia and individuals associated with the Trump Campaign.  Stone has also suggested his intention to introduce evidence that is assertedly probative of those two issues.  Any evidence or argument about these issues should be excluded from trial because it is entirely irrelevant to the charges at issue in this case and also presents a serious risk of jury confusion, prejudice, and delay.

**A.   Evidence And Argument Regarding Russia's Role In Interfering In The 2016 Presidential Election And Any Related Conspiracy Is Irrelevant To The Crimes Charged Here**

1.   Only relevant evidence is admissible at trial.  Fed. R Evid. 402.  The definition of relevance is inclusive, Fed. R. Evid. 401(a), but it depends on the possibility of establishing a fact that "is of consequence in determining the action," Fed. R. Evid. 401(b).  Evidence is therefore relevant only if it relates to matters that are at issue in the case.  *E.g.*, *United States v. O'Neal*, 844 F.3d 271, 278 (D.C. Cir. 2016); *see Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008).  The party seeking to introduce evidence bears the burden of establishing relevancy. *Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990).

In this case, Stone is charged with obstructing a congressional investigation in violation of 18 U.S.C. § 1505 (count 1); making numerous false statements to Congress in violation of 18 U.S.C. § 1001(a)(2) (counts 2-6); and witness tampering in violation of 18 U.S.C. § 1512(b)(1) (count 7).  Doc. 1.  To adjudicate these charges, the jury will, in short, have to decide whether Stone engaged in obstructive conduct or endeavored to do so, with a nexus to the HPSCI proceeding, and with a corrupt intent (count 1), *see United States v. North*, 910 F.2d 843, 893 (D.C.

9

Cir. 1990); whether Stone knowingly and willfully made false statements, in a matter that was part of a congressional investigation, and the false statements were material (counts 2-6), *United States v. Pickett*, 353 F.3d 62, 66-67 (D.C. Cir. 2004); and whether Stone corruptly persuaded or attempted to corruptly persuade a witness, acted knowingly and with the intent to interfere in that witness's testimony, and did so with a current or future proceeding in mind (count 7), *see United States v. Edlind*, 887 F.3d 166, 172-174 (4th Cir. 2018).

2.   None of the elements of these offenses requires the government to prove that Russia stole the files later posted by Organization 1 or that individuals associated with the Trump Campaign conspired with Russia.

The primary conduct at issue—making false and misleading statements to Congress, concealing information from Congress, and pressuring a witness to alter his testimony or not to testify at all—has no relationship to the identity of the hacker or to any coordination between Russia and the Campaign.  *See, e.g.*, *United States v. Burge*, 711 F.3d 803, 811 (7th Cir. 2013) (in prosecution for lying in interrogatories in civil suit, the "relevant question" was whether the defendant lied, not whether the allegations in the civil suit were correct).  Those acts are not alleged to have been perpetrated by Russia.  And Stone's alleged false testimony to HPSCI concerned his communications with and about Organization 1, and not Russian involvement or a broader conspiracy.  Accordingly, proof of Stone's actions and the falsity of his statements does not depend on the identity of the hackers or a further conspiracy, and Stone's claims about those issues have no probative value with respect to the acts charged here.

Similarly, the required scienter for the various charged crimes—that Stone acted knowingly and willfully, with a corrupt intent, and with a view toward the HPSCI proceedings— does not depend on Russia's role or any broader conspiracy.  The government also does not intend

to argue that protecting Russia or hiding any conspiracy between Russia and the Campaign were Stone's motive.  Evidence or argument about the identity of the hackers or any broader conspiracy therefore has no bearing on the intent elements of the charged crimes.

As for the materiality of the charged false statements, the question is an objective one—whether those statements had "a natural tendency to influence, or [were] capable of influencing, either a discrete decision or any other function" of HPSCI. *United States v. Moore*, 612 F.3d 698, 701 (D.C. Cir. 2010).  The materiality of Stone's false statements therefore depends on their tendency to affect steps taken in HPSCI's investigation, not on what HPSCI—or any other investigator—may or may not ultimately have found.  *See, e.g.*, *United States v. Giambalvo*, 810 F.3d 1086, 1097-1098 (8th Cir. 2016) ("the government need not establish an actual tax deficiency to demonstrate that [a defendant's] false statements in [his tax] returns were *material*") (court's emphasis) (district court properly excluded testimony that defendant did not actually owe any taxes in prosecution for tax obstruction and submitting false tax return).

Because evidence or argument concerning these matters is not relevant to any proposition at issue in this case, they should be excluded.  *See* Fed. R. Evid. 402; *see, e.g.*, *O'Neal*, 844 F.3d at 278.  The only reason to advance these categories of evidence or argument—other than generating public attention—would be to confuse jurors or to encourage jury nullification.  Those purposes do not justify admitting otherwise irrelevant evidence at trial.  *See United States v. Gorham*, 523 F.2d 1088, 1097-1098 (D.C. Cir. 1975) (upholding trial court's decision to preclude evidence relevant only to jury nullification); *see also United States v. Rushin*, 844 F.3d 933, 942 (11th Cir. 2016) (same); *United States v. Castro*, 411 Fed. App'x 415, 420-21 (2d Cir. 2011) (same); *United States v. Funches*, 135 F.3d 1405, 1408-1409 (11th Cir. 1998) (same).

3.    Stone has offered varying explanations for how these matters could be relevant to whether Stone committed the obstruction, false statements, and witness tampering crimes charged here.  These include passing assertions of relevance to the materiality of the false statements or Stone's intent.  Each of these claims is misguided.

a.  In his motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(3), Stone declared that his congressional "testimony was not material to the link between Russian government actors and the presidential election because no conspiracy was proven."  Doc. 72, at 4; *see also* 5/30/19 Tr. 104 (suggesting that the existence of "a conspiracy" is necessary to materiality).  Stone made a similar suggestion in his motion to obtain the unredacted Crowdstrike report, that "if the Russian state did not hack the servers or did not transfer the data to [Organization 1], the exculpatory evidence regarding materiality, a factual issue for the jury, is amplified."  Doc. 103, at 2.  Stone's assertions fundamentally misunderstand both the legal standard for establishing materiality and the nature of the HPSCI investigation.

As noted, a false statement is material if it has "a natural tendency to influence, or is capable of influencing, either a discrete decision or any other function of the agency to which it was addressed."  *Moore*, 612 F.3d at 701; *accord United States v. Gaudin*, 515 U.S. 506, 509 (1995).  This is judged not just by the direct effect of the statement itself but also by reference to the possibility of further investigation.  *United States v. Hansen*, 772 F.2d 940, 949 (D.C. Cir. 1985); *see Kungys v. United States*, 485 U.S. 759, 768-771 (1988); *see, e.g.*, *United States v. Safavian*, 644 F. Supp. 2d 1, 11 (D.D.C. 2009) (statement material where it could have influenced "how to pursue the investigation" and "investigative priorities").  The standard "is a fairly low bar," *United States v. White*, 270 F.3d 356, 365 (6th Cir. 2001), and serves to ensure that the prohibition on false statements does not "embrace trivial falsehoods."  *United States v. Elashyi*, 554 F.3d 480,

497 (5th Cir. 2008). The "relevant question is not whether, in fact, the relevant body relied upon the false information" but "merely whether that information had the capacity to influence the relevant decisionmaker." *United States v. Cisneros*, 26 F. Supp. 2d 24, 40 (D.D.C. 1998) (collecting cases); *see Moore*, 612 F.3d at 701; *Hansen*, 772 F.2d at 949. And "[i]t has never been the test of materiality that the misrepresentation or concealment would more likely than not have produced an erroneous decision, or even that it would more likely than not have triggered an investigation." *Kungys*, 485 U.S. at 771 (emphases omitted); *see, e.g.*, *United States v. Boffil-Rivera*, 607 F.3d 736, 740, 741-742 (11th Cir. 2010) ("The false statement must simply have the capacity to impair or pervert the functioning of a government agency."); *United States v. Turner*, 551 F.3d 657, 661-664 (7th Cir. 2008) (statements were material because they "were aimed at misdirecting the agents" and would have had a natural tendency to influence an investigation "in the ordinary course").

Applying that well-established legal standard, the relevant question in this case is not, as Stone suggests, what the investigative body could or would have discovered. Rather, the question is whether Stone's false statements were capable of influencing HPSCI's investigative steps or other actions. *See, e.g.*, *Giambalvo*, 810 F.3d at 1098. Accordingly, the relevant evidence here concerns the scope and direction of HPSCI's investigation, not the truth of the allegations that HPSCI was investigating. It is not hard to see why materiality is independent of the outcome of the investigation in which the false statements were made. On Stone's view, for example, an individual who lied to the FBI by providing a false alibi for the subject of a homicide investigation could not be prosecuted for his false statements unless the government also proved the murder.

13

This is all the more obvious in the context of HPSCI's investigation which, contrary to Stone's understanding, was not limited to determining if there was a "conspiracy" between the Russian government and the Trump Campaign.   Congress investigated the Intelligence Community's finding that Russia engaged in election interference and whether links existed between those efforts and individuals associated with the Trump Campaign.   The statements charged in counts 2-6 concerned Stone's communications with and about Organization 1—the organization that released certain files believed to have been stolen by Russia—and his discussions with the Trump Campaign about Organization 1.   The question whether those statements were "*materially* false," 18 U.S.C. § 1001(a)(2) (emphasis added), depends on their "natural tendency" or "capability" to influence HPSCI's subsequent actions, *see Moore*, 612 F.3d at 701, regardless of whether, in fact, the Intelligence Community was mistaken about Russia's role and Russia did not conspire with the Trump Campaign.   *See, e.g.*, *United States v. Poindexter*, 725 F. Supp. 13, 27 (D.D.C. 1989) (during investigation into "United States government involvement in sales of arms to Iran, [] it was plainly material to that inquiry when [a presidential advisor] first learned of government involvement in the shipment of arms to that country"); *United States v. Moran*, 194 F.2d 623, 626 (2d Cir. 1952) (holding that in an investigation into, *inter alia*, "the relationship between public officials and organized crime," the number of meetings between a government official and a "convicted gambler" was material); *see also United States v. Norris*, 300 U.S. 564, 573 (1937) ("The materiality of the respondent's false answers [to Congress] is clear in view of the scope of the inquiry.").

b.   In his motion to compel production of the unredacted Special Counsel's Report, Stone separately asserted that the government "would have to prove at trial that a conspiracy existed to interfere with the 2016 presidential election and that it involved the Russian government, before

14

Stone could be charged with obstructing an investigation into that Russian conspiracy" and suggested that such a conspiracy is necessary to finding that Stone acted with a corrupt motive. Doc. 70, at 2; *accord* Doc. 72, at 3 (same).

As an initial matter, corrupt intent is not an element of making false statements in violation of 18 U.S.C. § 1001 (counts 2-6).  More to the point, acting corruptly is distinct from acting as part of or to conceal Russian hacking activity or any "conspiracy" with Americans.  A defendant acts "corruptly" if he acts "with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information."  18 U.S.C. § 1515(b);  *see, e.g.*, *United States v. Richardson*, 676 F.3d 491, 508 (5th Cir. 2012) (defining "corruptly" in 18 U.S.C. § 1503(a) to mean "knowingly and dishonestly" or "with an improper motive"); *United States v. Kanchanalak*, 37 F. Supp. 2d 1, 4 (D.D.C. 1999) ("Persons charged under Section 1505 now have notice that Congress intended the word 'corruptly' in Section 1505 to be used in both the transitive and the intransitive sense, that is, both a defendant who corrupts herself and a defendant who corrupts another can be prosecuted under Section 1505."); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705-706 (2005) (interpreting "corruptly" to mean "wrongful, immoral, depraved, or evil" and holding that acting "knowingly . . . corruptly" in 18 U.S.C. § 1512(b) requires "consciousness of wrongdoing").

To be sure, prior criminal conduct can furnish strong evidence that the individual had an improper obstructive purpose.  *See, e.g.*, *United States v. Willoughby*, 860 F.2d 15, 24 (2d Cir. 1988).  But "proof of an actual commission of a federal offense is not a necessary prerequisite to, or an essential element of, the crime of obstruction of justice."  *United States v. Cobb*, 905 F.2d 784, 790 (4th Cir. 1990) (18 U.S.C. § 1512(b)(3)); *see United States v. Greer*, 872 F.3d 790, 798

(6th Cir. 2017) (stating, in applying the obstruction sentencing guideline, that "obstruction of a criminal investigation is punishable even if the prosecution is ultimately unsuccessful or even if the investigation ultimately reveals no underlying crime"); *United States v. Burge*, No. 08-cr-146, 2011 WL 13471, at *3 (N.D. Ill. Jan. 3, 2011) (rejecting the argument that "the government must prove the merits of the underlying proceeding in order to justify a conviction under . . . section 1512," as this "proposed requirement would undermine the purpose of . . . the obstruction" statute), *aff'd*, 711 F.3d 803 (7th Cir. 2013).  The government does not intend to argue that Stone's intent was corrupt because Russia—rather than someone else—stole the files later posted by Organization 1, or because Russia conspired with the Trump Campaign.

## B. Significant Risks Of Unfair Prejudice, Jury Confusion, And Undue Delay Substantially Outweigh Any Probative Value

Even if Russia's responsibility for the hacks or any broader conspiracy with Americans was relevant to this case, evidence or argument on those issues—beyond minimal background to explain the HPSCI investigation—should be excluded because they pose significant risks of unfair prejudice, confusing or misleading the jury, undue delay, and wasting time.  *See* Fed. R. Evid. 403. Each of these dangers would substantially outweigh any minimal probative value.  And taken together, these considerations require excluding the evidence and argument at issue here.

Given the "marginal relevance" of the hacker's identity and any prior conspiracy to interfere in the election to the allegations in this case, the "likely (and presumably intended) effect" of admitting evidence and argument on those issues would be "to shift the focus away from the relevant evidence of [Stone's] wrongdoing" to matters that are, at most, "tangentially related." *See United States v. Malpeso*, 115 F.3d 155, 163 (2d Cir. 1997).  As an initial matter, that creates a serious risk of prejudicing the case by potentially leading the jury to believe these matters are more relevant than they are, or by inviting the jury to acquit based not on the elements of the crimes

charged in the Indictment but on other issues. *See, e.g.*, *United States v. Spence*, 721 F.3d 1224, 1229-1230 (10th Cir. 2013) (upholding exclusion of testimony that "appeared to be a back-door approach" to asserting an improper defense); *cf. Roger Stone Downplays 'Process Crime' After Arrest by FBI*, CNN, (Jan. 25, 2019, 10:43 PM) (quoting Stone as stating that, "I always said that there could be some process crime.").[4]  That risk could prejudice Stone as well.  Putting on a complete case about Russia's hacking activities, for example, risks painting Stone as an accessory to those crimes—something that is not at issue here.  Courts should exclude evidence when it is far more likely to invite a decision based on irrelevant factors than it is to elucidate an issue that is properly for the jury to decide. *See, e.g.*, *United States v. Perez*, 459 Fed. App'x 191, 198 (3d Cir. 2012); *United States v. Castro*, 411 Fed. App'x 415, 420 (2d Cir. 2011); *United States v. Cropp*, 127 F.3d 354, 358-359 (4th Cir. 1997).

These kinds of evidence and argument pose a related and significant risk of confusing or misleading the jury.  To establish that Russia stole the files later posted by Organization 1, for example, the government would have to put on substantial evidence and testimony. *See generally* Indictment, *United States v. Netyksho*, No. 18-cr-215 (D.D.C. July 13, 2018) (alleging that Russian military officers conducted the theft and detailing the various facts) (Doc. 1).  Given its volume and subject matter, such evidence may appear to have greater importance than it does. *See, e.g.*, *United States v. Litvak*, 889 F.3d 56, 69 (2d Cir. 2018) (even if testimony had any relevance as to materiality, district court abused its discretion in admitting the testimony given "a high probability of confusing the jury" and the objective test of materiality); *see also Shepard v. United States*, 290 U.S. 96, 104 (1933) ("When the risk of confusion is so great as to upset the balance of advantage,

---

[4] *Available at* https://www.cnn.com/2019/01/25/politics/roger-stone-arrest-cnntv/index. html.

the evidence goes out."). Even worse, much of that evidence would be technical and complex, exacerbating the risk of jurors not following what, if any, relevance it has. *See, e.g.*, *United States v. Poindexter,* 942 F.2d 354, 362 (6th Cir. 1991) ("the convoluted mathematical conversion" coupled with undeveloped links "was substantially more likely to confuse the jurors than enlighten them"); *Renfro Hosiery Mills Co. v. National Cash Register Co.*, 552 F.2d 1061, 1069 (4th Cir. 1977) ("voluminous and complex" exhibits that "might well have been confusing to a layman" can create "confusion of the issues").

Beyond any risk, it is a virtual certainty that this kind of evidence and argument would create undue delay and waste time. *See, e.g.*, *United States v. Fonseca*, 435 F.3d 369, 373-376 (D.C. Cir. 2006) (excluding "marginally" relevant evidence to avoid delay and a "mini-trial" on a collateral matter). Indeed, if Stone were allowed to raise the issue of Russia's responsibility for the hack, the government would be compelled to present a detailed case in response. *See Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1346-1347 (3d Cir. 2002) (upholding exclusion of evidence with "low probative value" where "rebut[ting]" its "expansive allegations" would require "a great deal of time" and create "a trial within a trial").

As discussed, the government believes that evidence and argument about the identity of the hacker and any conspiracy with the Trump Campaign is irrelevant. But if it is has any relevance to the charges in this case, its probative value is minimal and substantially outweighed by the risks of unfair prejudice, confusing or misleading the jury, undue delay, and wasting time. The evidence should therefore be excluded.

**CONCLUSION**

For the foregoing reasons, Stone should not be permitted to introduce evidence or make arguments to the jury about (1) Russian involvement in the hacks of the Democratic National Committee ("DNC") and Democratic Congressional Campaign Committee ("DCCC") computer systems and (2) allegations of Russian coordination with individuals associated with the presidential campaign of Donald Trump.

<div style="margin-left:40%">

Respectfully submitted,

JESSIE K. LIU
U.S. Attorney for the District of Columbia

By: /s/
    Jonathan Kravis
    Michael J. Marando
    Assistant United States Attorneys

    Adam C. Jed
    Aaron S.J. Zelinsky
    Special Assistant United States Attorney
    555 4th Street NW
    Washington, D.C. 20530

</div>

July 26, 2019