**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Case No.: 1:19-CR-00018-ABJ**

UNITED STATES OF AMERICA,

Plaintiff,

v.

ROGER J. STONE, JR.,

Defendant.

______________________________

**ROGER J. STONE'S MOTION *IN LIMINE* TO ADMIT EVIDENCE**

Defendant, Roger J. Stone, files this Motion *In Limine*, pursuant to Fed. R. Crim. P. 12(b), and requests that the Court enter an Order allowing him to present evidence that WikiLeaks did not receive the stolen Democratic National Committee ("DNC"), Democratic Congressional Campaign Committee ("DCCC"), the Clinton Campaign or its manager's data from the Russian state, including but not limited to witness testimony and trial exhibits.

**FACTUAL BACKGROUND**

On May 9, 2017, Defendant Roger J. Stone received a letter requesting that he "produce certain documents and other materials to the Committee and participate in a voluntary, transcribed interview at the Committee's offices" in regards to its investigation into "Russian active measures directed at the 2016 U.S. election." *See* Letter from K. Michael Conaway, Member of Congress and Adam Schiff, Ranking Member of House Permanent Select Committee on Intelligence to Robert Buschel, Counsel for Roger Stone (May 9, 2017) (hereinafter "HPSCI May 9 Letter" – Indictment ¶ 19).

Specifically, Stone was asked to *voluntarily* produce:

> Any documents, records, electronically stored information including e-mail, communication, recordings, data and tangible things (including but not limited to, graphs, charts, photographs, images and other documents) regardless of form, *other than those widely available* (e.g. newspaper articles) that reasonably could lead to the discovery of any facts *within the investigations publicly-announced parameters.*

HPSCI May 9, 2017 Letter (emphasis supplied). Stone agreed to testify at the hearing as well as provide materials pertinent to the *publicly-announced parameters* of HPSCI's investigation. The publicly announced parameters, which sought answers to four overarching questions, were attached to the May 9th Letter:

- What Russian cyber activity and other active measures were directed against the United States and its allies?

- Did the Russian active measures include links between Russia and individuals associated with political campaigns or any other U.S. Persons?

- What was the U.S. Government's response to these Russian active measures and what do we need to do to protect ourselves and our allies in the future?

- What possible leaks of classified information took place related to the Intelligence Community Assessment of these matters?

*See* Indictment ¶18(a)-(d).

The entire HPSCI investigation was premised on the assumption that the Russian state transferred the stolen data to WikiLeaks. In turn, this assumption became the foundation of the charges against the Defendant. Paragraphs 2, 3, and 12 of the Indictment assert that the Russian state hacked and stole DNC data, that that data was then transferred to WikiLeaks, which ultimately disseminated it. To ignore that underlying foundation makes this a very different case.

The stated purpose of the HPSCI investigation was to investigate "Russian cyber

activity" and "other active measures." *See* Indictment ¶¶18-20. Evidence supporting Stone's response that he did not have the intent to lie to HPSCI, and that any of Stone's responses regarding WikiLeaks, Julian Assange, or his "intermediary" would be, among other grounds, immaterial if WikiLeaks did not receive the relevant data as part of Russian cyber activity or "active measures." This is an integral part of Stone's defense and he is entitled to present it to the jury.

## ARGUMENT

### I. Defendant Roger Stone Has a Constitutional Right to Present Evidence That is Material and Favorable to His Defense.

Those accused of committing crimes are given a number of Constitutional protections that guarantee certain rights during the judicial process. "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Nevada v. Jackson,* 569 U.S. 505, 509 (2013) (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (additional citations omitted)). This necessarily includes rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments.[1] Perhaps the most important of these rights is the right of the accused to confront his accusers and have a right to be heard.

> The necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of the law include a right to be heard and to offer testimony:
>
> A person's right to reasonable notice of a charge against him, and *an opportunity to be heard in his defense* – a right to his day in court – are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against

[1] *See Rock v. Arkansas*, 483 U.S. 44, 51 (1987) ("The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that 'are essential to due process of law in a fair adversary process.'") (quoting *Farretta v. California*, 422 U.S. 806, 819, n. 15 (1975)).

> him, to offer testimony, and to be represented by counsel.' (Emphasis added.) *In re Oliver*, 333 U.S. 257, 273 (1948).
>
> The right to testify is also found in the Compulsory Process Clause of the Sixth Amendment, which grants a defendant to call 'witnesses in his favor,' a right that is guaranteed in the criminal courts of the States by the Fourteenth Amendment. Logically, included in the accused's right to call witnesses who testimony is '*material and favorable to his defense.'*

*Rock v. Arkansas*, 483 U.S. 44, 52 (1987) (internal citations omitted) (emphasis added).

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecutions to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967). "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is *material either to guilt or punishment*, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The opportunity for a defendant to present evidence relevant to his defense, "would be an empty one if the State were permitted to exclude competent, reliable evidence…when such evidence is central to the defendant's claim of innocence. In the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and 'survive the crucible of meaningful adversarial testing.'" *Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).

An indictment serves to guide the court, limit the prosecution, and advise the defendant as to the specific charge.

> It has long been recognized that there is an important corollary purpose to be served by the requirement that an indictment set out 'the specific offence, coming under the general description,' with which the defendant is charged. This purpose, as defined in *United States v. Cruikshank*, 92 U.S. 542, 558, 23 L.Ed. 588, is 'to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had.' This criterion is of the greatest relevance here, in the light of the difficulties and uncertainties with which the federal trial and reviewing courts have had to deal in cases arising under 2 U.S.C. s 192, 2 U.S.C.A. s 192, to which reference has already been made. *See, e.g., Watkins v. United States*, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273; *Deutch v. United States,* 367 U.S. 456, 81 S.Ct. 1587, 6 L.Ed.2d 963.
>
> Viewed in this context, the rule is designed not alone for the protection of the defendant, but for the benefit of the prosecution as well, by making it possible for courts called upon to pass on the validity of convictions under the statute to bring an enlightened judgment to that task. *Cf. Watkins v. United States, supra.*

*Russell v. United States,* 369 U.S. 749, 768–69 (1962).

"The government is bound to prosecute the crimes charged in the indictment and no others. *United States v. Hitt*, 107 F. Supp. 2d 29, 31–32 (D.D.C. 2000), *aff'd,* 249 F.3d 1010 (D.C. Cir. 2001) (citing *Stirone v. United States,* 361 U.S. 212, 215–16, 80 S. Ct. 270, 4 L.Ed.2d 252 (1960)) ("after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself") (citations omitted). "While it is common wisdom that the prosecutor presents evidence to the grand jury and drafts proposed indictment language for the grand jury's consideration, the power to indict is held by the grand jury, not by the prosecutor, and it is the grand jurors' meaning and intent that controls. *Id.* As a consequence, the government is obligated to prove the allegations of the indictment and the defendant is permitted to defend against the facts alleged and the context of those allegations. "[A] court cannot permit

a defendant to be tried on charges that are not made in the indictment against him." *Id.* (citing *Stirone v. United States*, 361 U.S. at 217)).

The converse is also true. The government cannot limit or minimize the importance of the language that the grand jury made clear: Russia's interference in the 2016 election is relevant to materiality in the obstruction and perjury counts. Stone should be permitted to present evidence that WikiLeaks did not receive the relevant data from the Russian state as the government has contended and HPSCI has theorized. Said another way, if the government must prove Russian interference by means of the Russian state delivering relevant data to WikiLeaks, then Stone has the right to disprove that theory. *See* Indictment ¶¶ 2-3.

In sum, Stone has the right to challenge the context of the Indictment. The Indictment provides the context that the Russian state transferred the relevant data to WikiLeaks. *Id.* The grand jury alleged the facts. The government has to prove those facts in order to support the allegations of criminal intent and materiality of allegations. The government cannot use their Russian state allegations as both a sword and a shield.

## II. Evidence that WikiLeaks Did Not Receive Stolen Data from Russian State Is Relevant and Should Be Admissible at Trial.

It is axiomatic that a criminal defendant be allowed to present a defense to the charges leveled against him.[2] In this case Stone must be permitted to present evidence that WikiLeaks never received stolen data from the Russian state.

The government opined it does not have to prove that the Russian state was behind the DNC, DCCC, Clinton Campaign or Podesta email hacks. But his position is fundamentally flawed. The allegations against Stone are focused on his actions *vis a vis* the HPSCI's

[2] Katrice Bridges Copeland, *The Forgotten Constitutional Right to Present a Defense and Its Impact on the Acceptance of Responsibility-Entrapment Debate*, 103 Mich. L. Rev. 367, 384-6 (2004).

investigation into Russian meddling in the 2016 Presidential election – which undeniably raises the issue of materiality *vis a vis* the very same congressional investigation into Russian interference in the 2016 Presidential election.

**A. The Federal Rules of Evidence Permit Admission of Such Evidence.**

The Federal Rules of Evidence govern what kind of evidence may be legally presented at trial. Of particular importance is the balancing test for determining whether or not evidence is relevant. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. According to Rule 402, "[r]elevant evidence is admissible unless" it is prohibited by "the United States Constitution," "a federal statute," the Federal Rules of Evidence, or "other rules prescribed by the Supreme Court." Fed. R. Evid. 402. Relevant evidence is inadmissible only when:

> [I]ts probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issue, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

Here, a presentation demonstrating that the government lacks evidence confirming that Russia gave stolen data to WikiLeaks is probative of the fact that Stone's alleged statements fail to meet the element of materiality in the relevant portions of the obstruction count and perjury counts. Stone's defense will not showcase a political view. Stone will present witnesses who can testify and demonstrate to the jury that WikiLeaks did not receive the relevant stolen data from the Russian state. If a jury were to conclude that was the case, then the same jury could conclude that Stone's answers to the stated questions do not meet the element of materiality of the perjury statute under 18 U.S.C. § 1001.

### B. This Evidence is Necessary to Establish That Defendant Stone's Statements at the September 26, 2017 HPSCI Hearing Were Not Material.

There are "limitations upon the investigative power of the legislature which must be considered in any determination of materiality. The investigation must be to aid in legislation. 'Similarly, the power to investigate must not be confused with any of the powers of law enforcement; those powers are assigned under our Constitution to the Executive and the Judiciary.'" *United States v. Cross*, 170 F.Supp. 303, 306, (D.D.C. 1959) (citing *Quinn v. United States*, 349 U.S. 155, 161 (1955) and *United States v. Icardi*, 140 F.Supp. 383, 388-89 (D.D.C. 1956) (internal citation omitted)). "It has been recognized that a legislative committee, although duly authorized to investigate adequately defined subjects in a field where it may legislate, has no power to compel the testimony of a witness for other than a bona fide legislative purpose, even though the testimony be relevant to the subject matter of the authorized investigation." *Cross*, 170 F.Supp. at 306.

> Although the motives of a congressional committee are irrelevant when it interrogates a witness on matters pertaining to an investigation within the scope of its authority, the answers responsive to questions which are not asked for the purpose of eliciting facts in aid of legislation, even though pertinent**, are not "material" to the authorized investigation**; and when a duly constituted investigative committee questions a witness solely for a purpose other than to elicit facts in aid of legislation, that committee steps outside its authority and no longer acts as a competent tribunal.
>
> A legitimate legislative purpose will be presumed when the general subject of investigation is one concerning which Congress can legislate and when the information sought might aid the congressional consideration; but any presumption in a criminal case may be controverted by adequate evidence to the contrary.

*Id.* (emphasis added).

Furthermore, the *Cross* Court stated that it "holds that a perjury indictment may not be found on false testimony in response to questions which are not asked for the purpose of eliciting facts material to the committee's investigation, that is, facts sought in aid of the legislative purpose." *Id*. at 310. While *Cross* deals with perjury and not "false statements," the crimes are similar and can be compared.[3] "If there is probative evidence to the contrary, mere presumption or possibility of materiality will not suffice in a criminal prosecution where materiality is an essential element of the offense charged." *Id*.

"'Material' when used in respect to evidence is often confused with 'relevant', but the two terms have wholly different meanings. To be 'relevant' means to relate to the issue. To be 'material' means to have probative weight, i.e., reasonably likely to influence the tribunal in making a determination required to be made. A statement may be relevant but not material." *Weinstock v. U.S.*, 231 F.2d 699, 701 (D.C. 1956). "In *United States v. Slutzky*, 79 F.2d 504, 506 (3d Cir. 1935) the court said that 'materiality refers to testimony that will legally evidence the propositions to be proved.'" *Fraser v. United States*, 145 F.2d 145, 149 (6th Cir. 1944); *see also Goins v. United States*, 99 F.2d 147, 149 (4th Cir. 1948); *Ulmer v. United States*, 219 F. 641 (6th Cir. 1915).

The Court must look to the stated purpose of the investigation. In this case HPSCI stated its purpose – Russian interference in the presidential election. The materiality requirement implicit in Section 1001 excludes matters unrelated to the subject of the agency's or department's responsibility—"for example, misrepresenting the occupation of a corporate director where that

[3] Both 18 U.S.C §§ 1001 and 1621 require that "willfulness or knowledge, actual falsity and materiality be proved." P.J. Meitl, *The Perjury Paradox: The Amazing Under-Enforcement of the Laws Regarding Lying to Congress*, 25 Quinnipiac L. Rev. 547, 570 (2007).

is irrelevant to the determination at hand." *United States v. Hansen*, 772 F.2d. 940, 950 (D.C. Cir. 1985) (citing *United States v. Talkington*, 589 F.2d 415, 417 (9th Cir.1978)).

None of the allegedly false statements made by Stone were material to the publicly stated parameters of HPSCI. Consistent with Stone's state of mind at the time the statements, the Mueller Report concurred unequivocally that there was no coordination between any American and Russia's purported interference in the 2016 Presidential Election.[4] Stone believed that it did not occur, he has evidence that it did not[5], and the Special Counsel's Office concluded it could not prove that the Russian state gave WikiLeaks the relevant data.

Paragraph 2 of the Indictment suggests that the DNC, through CrowdStrike, announced that it had been hacked by "Russian government actors." In paragraph 3 of the Indictment, Organization 1 (WikiLeaks), released tens of thousands of documents stolen from the DNC. These allegations together *imply one caused the other* – Russian government actors hacked and stole the relevant data and WikiLeaks received that data from the Russian government actors. The Indictment alleges that Stone spoke to "senior Trump Campaign" officials and an official was meant to speak to Stone about WikiLeaks. *See* Indictment ¶¶ 5, 12. To be material or relevant to the investigation about Russian interference, WikiLeaks' receipt of data must have come from the Russian state. Otherwise, the logic of the Indictment is a non sequitur. This is the Defense's argument. His testimony to HPSCI had a false underlying assumption – that the Russians did deliver the relevant data to WikiLeaks. Whether Stone's responses to HPSCI

[4] Robert S. Mueller, *Report On The Investigation Into Russian Interference In The 2016 Presidential Election*, 1-2 (2019)("Although the investigation established that the Russian government perceived it would benefit from a Trump presidency and worked to secure that outcome, and that the Campaign expected it would benefit electorally from information stolen and released through Russian efforts, *the investigation did not establish that members of the Trump Campaign conspired or coordinated with the Russian government in its election interference activities.*" ) (emphasis added).

[5] *See* Declarations, Motion to Suppress (Dkt. ##100-1, 100-3).

regarding documents provided or answers given about who he communicated with, the challenge that WikiLeaks did not receive the data from the Russian state must be allowed.

Stone should be permitted to present evidence that he did not knowingly and willfully make statements that were materially false in regards to HPSCI's investigation. There are public statements in which Stone clearly makes his position clear as to his earnest belief that Russia was not involved in the hacking of the DCCC or DNC or Podesta emails. Perhaps most importantly is the fact that WikiLeaks is not the same as Russia – they are two completely separate entities: one is an international non-profit organization and the other is a hostile foreign nation – nor is WikiLeaks a Russian agent, nor has it been so in the past.

## CONCLUSION

The Defendant respectfully requests the Court enter an Order allowing him to present evidence that WikiLeaks did not receive stolen "DNC," "DCCC," Podesta, and Clinton Campaign data from the Russian state.

Respectfully submitted,
By: */s/*________________

L. PETER FARKAS
HALLORAN FARKAS + KITTILA, LLP
DDC Bar No.: 99673
1101 30th Street, NW
Suite 500
Washington, DC 20007
Telephone: (202) 559-1700
Fax: (302) 257-2019
pf@hfk.law

BRUCE S. ROGOW
FL Bar No.: 067999
TARA A. CAMPION
FL Bar: 90944
BRUCE S. ROGOW, P.A.
100 N.E. Third Avenue, Ste. 1000
Fort Lauderdale, FL 33301
Telephone: (954) 767-8909
Fax: (954) 764-1530
brogow@rogowlaw.com
tcampion@rogowlaw.com
*Admitted pro hac vice*

ROBERT C. BUSCHEL
BUSCHEL GIBBONS, P.A.
D.D.C. Bar No. FL0039
One Financial Plaza, Suite 1300
100 S.E. Third Avenue
Fort Lauderdale, FL 33394
Telephone: (954) 530-5301
Fax: (954) 320-6932
Buschel@BGlaw-pa.com

GRANT J. SMITH
STRATEGYSMITH, PA
D.D.C. Bar No.: FL0036
FL Bar No.: 935212
401 East Las Olas Boulevard
Suite 130-120
Fort Lauderdale, FL 33301
Telephone: (954) 328-9064
gsmith@strategysmith.com

CHANDLER P. ROUTMAN
D.D.C. Bar No. 1618092
501 East Las Olas Blvd., Suite 331
Fort Lauderdale, FL 33301
Tele: (954) 235-8259
routmanc@gmail.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 26, 2019, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record or pro se parties, via transmission of Notices of Electronic Filing generated by CM/ECF.

___/s/ Chandler Routman ________________
Chandler P. Routman

*United States Attorney's Office for the District of Columbia*

Jessie K. Liu
**United States Attorney**
Jonathan Kravis
Michael J. Marando
**Assistant United States Attorneys**
Adam C. Jed

Aaron S.J. Zelinsky
**Special Assistant United States Attorneys**
555 Fourth Street, NW
Washington, DC 20530
Telephone: (202) 252-6886
Fax: (202) 651-3393

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Case No.: 1:19-CR-00018-ABJ**

UNITED STATES OF AMERICA,

Plaintiff,

v.

ROGER J. STONE, JR.,

Defendant.
______________________________/

**ORDER**

Before the Court is Roger J. Stone's Motion in Limine to Admit Evidence. The Court, having considered the Defendant's motion and otherwise being fully advised, finds that the Defendant is entitled to present evidence that WikiLeaks did not receive the stolen Democratic National Committee ("DNC"), Democratic Congressional Campaign Committee ("DCCC"), and Clinton Campaign data from the Russian state.

It is therefore ORDERED AND ADJUGED that the Motion is GRANTED.

DONE AND ORDERED in Washington, DC, this______day of______, 2019.

______________________________
AMY BERMAN JACKSON
United States District Judge

cc: all counsel of record