**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**Case No.: 1:19-CR-00018-ABJ**

UNITED STATES OF AMERICA,

   Plaintiff,

v.

ROGER J. STONE, JR.,

   Defendant.

_____

**ROGER J. STONE'S RESPONSE TO GOVERNMENT'S
MOTION TO ADMIT MOVIE CLIP**

  Defendant Roger J. Stone, through counsel, files this response to the Government's Motion to Admit Movie Clip.  Dkt. #156. The government seeks to introduce a movie clip of the *Godfather II*.[1] The government claims to offer the movie clip because the Indictment alleges that when HPSCI invited Person 2 to testify, Stone began telling Person 2, through conversations, emails, and text messages, either to testify falsely that Person 2 was the identified intermediary, to testify falsely that Person 2 could not remember what he had told Stone, or to invoke his Fifth Amendment privilege against self-incrimination. Dkt. #156 (citing the Indictment ¶ 37). The government describes the clip as: "Pentangeli looks behind him, sees Corleone and his brother sitting together, and then claims not to know anything about organized crime." Dkt. #156 at 3. This movie clip has no relevance to Stone's statements; in fact, it is a complete mischaracterization of Stone's communications with Person 2 as well as an improper assumption

---

[1] The government either assumes the Court is necessarily familiar with the movie clip from the *Godfather II,* or recognizes that if it were to see it the nature of its improper character evidence and unfairly prejudicial clip would be apparent.  The transcript of the scene is presented as Exhibit – 1, the movie clip itself is presented here (click here).

of the nature of their friendship. Furthermore, any probative value the clip might yield is severely outweighed by the prejudicial effect it will have on jurors. Not only is this an attempt by the government to use the backdoor to introduce inadmissible and improper character evidence, it completely disregards the rationale behind Rule 403's balancing test. The motion should be denied.

### The Movie Clip Seeks to Introduce Improper Character Evidence

The government claims that use of this clip at trial would not be "prejudicial or confusing" (Dkt. #156 at 6) to the jury. However, this claim errs on the side of willful ignorance. Any reference to "The Godfather" (regardless of which one) brings up a clear and unalienable connection to the Italian-American Mafia. Any attempts to compare the conduct of Stone to that of an alleged mafia member, testifying that he murdered on the orders of 'the Godfather' will instantly create a connection in the minds of the jurors that Stone is somehow similar to a murderous mafioso. This is an inescapable connection that is undoubtedly an improper use of character evidence and is highly prejudicial to the defendant. Once the door is opened with a movie clip, which no doubt will accompany an explanation of why it is being played, the trial detours to a Mafia trial and Stone's connection to it, with all of its history and folklore. This is precisely what Rule 404 is meant to preclude. Evidence cannot be used "to show criminal disposition," propensity, or bad character. *United States v. Moore*, 709 F.3d 287, 296 (4th Cir. 2013). But that would be precisely the basis for admitting the evidence in this case. Rule 404's well-recognized principle that showing that a witness has a law-breaking character is "a purpose prohibited by Fed. R. Evid. 404(b)." *United States v. Hands*, 184 F.3d 1322, 1328, n.9 (11th Cir. 1999); *see also Moore*, 709 F.3d at 296 (new trial granted because the district court improperly admitted evidence of the defendant's prior possession of a different type of firearm "to establish

[his] criminal disposition"); *see also United States v. Thomas*, 321 F.3d 627, 637 (7th Cir. 2003) (new trial granted where evidence of prior gun possession "appealed to Thomas's propensity to carry guns, and nothing more")). The unfair prejudice of such inflammatory evidence cannot be overstated. In another context, involving a different type of bad act evidence, the *Hands* Court stated that "few would doubt that evidence of violent spousal abuse" falls into a category of evidence "particularly likely to incite a jury to an irrational decision." *Hands*, 184 F.3d at 1328-29. The spousal abuse in *Hands*, inflicted by a defendant charged with drug-related offenses, was held to be unduly prejudicial and therefore inadmissible because of its "inflammatory nature" and tendency to produce "visceral reactions." *Id.* at 1329.

Person 2, among other descriptions, is an impressionist.[2] Stone, in this instance was not threatening violence on Person 2 as the movie clip implies the Mafia chief is impressing upon the Mafia witness. At worst, Stone's message was simply do not cooperate with investigators. When 404(b) evidence is admitted for the improper purpose of "propensity," any attempted limiting instruction is irrelevant and does not cure the error. *See United States v. Baker*, 432 F.3d 1189, 1208 n.14 (11th Cir. 2005).

### Presentation of the Movie Clip Would be Unfairly Prejudicial

The government downplays the importance of Rule 403 by claiming it is a standard that is "somewhat exacting," citing to *Joy v. Bell Helicopter Textron, Inc.,* 999 F.2d 549, 555 (D.C. Cir. 1993), a civil case regarding the exclusion of technical data reports on other helicopter accidents. Then claiming exclusion is "an extraordinary remedy to be used sparingly." *United States v. Libby,* 467 F. Supp. 2d 1, 20 (D.D.C. 2006). While Rule 403 analysis might be

---

[2] Danny Hakim, *Mueller's Office Will Grill Him About Roger Stone. He will Respond with Comedy,* New York Times, Sept. 4. 2018. ("You can imagine since I'm an impressionist. . .") (last visited Aug. 5, 2019 https://www.nytimes.com/2018/09/04/nyregion/mueller-investigation-randy-credico-roger-stone.html).

considered "somewhat exacting," the court cannot discount it lightly. The key to *Joy* is the technical reports were evidence about the helicopter. *See Joy,* 999 F.2d at 555. *The Godfather* clip is not direct evidence in this case – it is remotely tangential evidence. The government in *Libby* did not request the Court to allow a viewing of a clip of the most iconic Mafia trilogy of the last several generations and ask the jury to draw connections to it. The motion in limine in *Libby* referred to documents proffered by the defendant, which led the district court to opine: "Thus, this Court reserves, as it must, the right to alter the rulings set forth herein, and declare otherwise relevant evidence inadmissible under either Rule 401 or 403, depending upon how the facts are actually developed during the trial." *Id.* Finally, the government makes the point: "It provides critical context to understand the meaning of messages that are directly at issue in this case." Dkt. #156 at 5. The movie conveys context, and if the jury takes the meaning from the movie it hopes to convey, it is "critical context" that suggests both men are in the Mafia. The prejudicial nature of the evidence the government seeks to admit is not only contained in the spoken word, but the unspoken. The unspoken visuals, music, audio, camera angles, circus-like atmosphere of the scene as a whole are just as powerful and incredibly inflammatory.

The suggestion from the government that Rule 403 is "nonexistent" or "minimal" (Dkt. #156 at 5) ignores the very reason the government wants to present it to the jury – to inflame the jury with threatening Mafia references. "While the film itself concerns the mafia, the proffered clip does not show any violence, and the subject matter of the film and conduct of the main character who instigated Pentangeli's testimony are wholly dissimilar from the conduct charged in this case." It implies that and a whole lot more the government relegates to a footnote. "The clip contains one reference to violence—one of the questions that prompts Pentangeli that he has no knowledge of organized crime activity includes a reference to '[y]our sworn affidavit that **you**

4

**murdered** on the orders of Michael Corleone.'" Dkt #156 at 5, n. 2 (emphasis added). The context of the clip is regarding murder – a violent felony – which is not remotely similar to any of the crimes Stone was charged with. It is akin to comparing apples and broccoli, except with the crucial fact that a mischaracterization could result in a loss of liberty and freedom.

This case is completely different. The government describes it as "a witness in a congressional investigation pressured to give false testimony to scuttle a potential perjury referral," a referral parenthetically that was not made in this case. Dkt. #156 at 5-6. Stone did not do anything else the context of the scene assumes – kidnapping the witness's brother and threatening to kill the witness's brother.

The government cites to the example in *United States v. Wills*, 346 F.3d 476, 489 (4th Cir. 2003), as support for showing its mafia movie. First, the defendant did not contemporaneously object to the showing of the movie. *Id.* Consequently, the Court in *Wills* did not do a Rule 403 analysis. *Id.* Second, Wills was charged with the kidnapping resulting in death and interstate stalking resulting in death. Here, there is no violence alleged to have been perpetrated by Roger Stone.

The government's reliance on *United States v. Jayyosi*, is also misplaced. 657 F.3d 1085, 1107-08 (11th Cir. 2011). First, the interview of Osama Bin Laden published was a real interview, not a movie. Second, the defendants to whom the jury was instructed to consider the interview as evidence were charged with conspiracy to support terrorist activities led by Bin Laden. Third, those defendants only objected to the interview of Bin Laden under Rule 401, relevance. A third defendant argued it was unfairly prejudicial under Rule 403, and the Court instructed the jury the interview could not be considered evidence against that defendant. *Id.* at 1108.

*United States v. Smith*, 749 F.3d 465, 496 (6th Cir. 2014) is also inapplicable. The defendant in that case distributed the film itself to salesmen working for their boiler room operation, in order to train the salesmen about high pressure sales techniques. Witnesses "explicitly testified that the movie was provided to employees as a training device." *Id.* In one witness's case, he was shown the movie to motivate him to "want to be a salesman." *Id.*

*In United States v. Monsalvatge*, the defendants were charged with committing a similar style bank robbery as the characters in the movie presented. 850 F.3d 483, 495 (2d Cir. 2017). The defendant did not make a record on how he was prejudiced by the presentment of the movie clips. In conclusory fashion, the defendant stated that the clips were prejudicial. *Id.* "But he does not show how any potential for prejudice arising from the introduction of these clips outweighed their evident probative value. *Monsalvatge* does not even identify any specific prejudicial potential that these clips carried beyond the fact that they 'invited the jury to speculate that this was a copycat crime.'" *Id.* Yet, he did not suggest how a copycat crime would have been prejudicial to the jury. *Id.* at 495-96. Lastly, the movie, *The Town* is not in the same iconic league as *The Godfather* trilogy.

Here, Stone objects because unlike the other movies and interviews cited by the government, the *Godfather* trilogy is iconic and its themes and implications are known by most people who are potential jurors. A clip of the movie triggers the implication of the entire series – cold, calculated, violence and crime.[3] Once a Mafia connection is made the damage will be done. A limiting instruction will not undo this error. *See United States v. Pritchard*, 973 F.2d 905, 908

---

[3] "[T]he Italian Institute of America released a report based on FBI statistics in 2009, stating that only 0.00782 percent of Italian-Americans possessed any criminal associations. And yet, according to a national Zogby poll, 74 percent of the American public believed that Italian-Americans have ties to the mob." Megan Gambino, *Smithsonian.com,* What is the Godfather effect? (Jan. 31 2012). Tom Santopietro, *The Godfather Effect: Changing Hollywood, America, and Me,* St. Martin Press, (2012).

(11th Cir. 1992) (limiting instruction as to stale prior conviction cannot cure error). The clip would be an unnecessary and highly inflammatory distraction that will implicate the right for Mr. Stone to have a fair trial with no curative instruction to ameliorate the unfair prejudice. Precluding the movie clip would not be an order the government should "sanitize" its case, just present a fair one.

The *Godfather* movie clip is a direct invitation by the government to the jury to consider the default violent, well-orchestrated propensities of the Mafia. It is a stunt. It does way more than what the government should be permitted to prove. There were no threats hidden in that remark to Person 2 -- a comedic impersonator, known for his ability to impersonate Frank Pentangeli. But a showing of a clip of the iconic Mafia film of our era does what Rules 403 and 404 are intended to preclude – without evidence of intent to commit violence or mafia affiliation, there is more to fear from Roger Stone than the government is allowed to present in this limited trial.

> The prolific portrayals of the La Cosa Nostra Mafia and the Bloods gang in the media are likely to 'lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'" *Old Chief,* 519 U.S. at 180; *see United States v. Locascio,* 357 F.Supp.2d 536, 544 (E.D.N.Y.2004) ("[T]he mere association with a Mafia family is, in itself, highly prejudicial."); *United States v. Price,* No. 05–cr–492, 2009 WL 973370, at *2 (E.D.N.Y. April 10, 2009) (recognizing that "media reports and portrayals have engraved a violent image of the Bloods in the popular conscience"). The Second Circuit has cautioned that trial courts must be vigilant where there is a "tendency of the evidence [in question] to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." *United States v. Figueroa,* 618 F.2d 934, 943 (2d Cir.1980). Here, neither defendant is charged with offenses involving the La Cosa Nostra Mafia or the Bloods gang. The government does not assert that TF or the defendants have any direct relationship to the La Cosa Nostra Mafia or the Bloods gang in connection with the charged offenses. Consequently, the court finds that the minimal probative value of Mr. Garrett's alleged

>inspiration by the Bloods or the mafia is substantially outweighed by the grave danger of unfair prejudice and precludes evidence referencing the La Cosa Nostra Mafia and the Bloods gang.

*United States v. Rivera*, 13-CR-149 KAM, 2015 WL 1875658, at *13 (E.D.N.Y. Apr. 22, 2015). The analysis in all these cases assumes that the defendant has been charged with a crime of violence, drug distribution, or participating in a racketeering enterprise. Those types of offenses are not charged here.

There is no allegation that Roger Stone participated in a criminal conspiracy, used violence, committed murder or any other violent felony, or is a member of the Mafia. The introduction of the movie clip is meant to inflame and over-sensationalize Stone's alleged behavior. Person 2 can explain what he thought the Pentangeli references meant, and he will be subject to cross-examination regarding those impressions. Doing more than presenting testimony, risks an unlawful conviction.

Even in a case where violence was an element of the charge: "[The Court] reversed the defendant's conviction for communicating threats of injury in interstate commerce because the prosecutor had asked—with no evidentiary support for the question—whether the defendant's employer 'was part of another organization 'of ill character like [the] Mafia or anything like that.' 'Because the jury found appellant not guilty of four counts of the indictment and guilty of only two counts, and since the evidence [was] susceptible to an interpretation of innocent behavior, we [could not] regard the prejudice as harmless.'" *United States v. Acosta*, 924 F.3d 288, 308 (6th Cir. 2019). The Court should not risk such an unfortunate outcome when the reasonable non-sensational approach is the appropriate one.

The government claims the *Godfather* clip is "directly relevant to the charge of witness tampering in this case (count 7). Dkt. #156 at 4. Certainly, not because Person 2 thought one of

8

his relatives was going to murdered if he cooperated with the government. If, however, that is what Person 2 thought, then Person 2 can testify to that impression without the additional prejudicial baggage the movie delivers. A fictional demonstration of Mafia intimidation does so much more than the government's purported explanation of context, seeks to introduce. Its introduction is harmful to a fair trial. But introduction of the movie does more.

It implies Person 2 is an organized crime figure like Pentangeli. It implies Person 2 understood the threats in the same way as the fictional character in the movie understood it. That message is your brother will be murdered if you testify. As opposed to the message which was a joke between friends, or a suggestion to follow Person 2's lawyer's advice and remain silent. It implies that Stone kidnapped Person 2's brother (if he has one) and kept him hostage. It implies that Person 2 is in a witness protection program like Pentangeli, who has to reside at an Army barracks because of the threat to Pentangeli's safety. It makes Roger Stone the Michael Corleone character in this analogy – an iconic violent godfather of the Mafia. All of this without evidence. Movie clips are dangerous. It asks the jury to draw analogies, connections, and immeasurable extraneous conclusions from the movie to the trial without evidence the connections are fair.

## CONCLUSION

For the above stated reasons, this Court should deny the government's motion in limine introducing a clip from *The Godfather II*.

Respectfully submitted,
By: */s/*_____

BRUCE S. ROGOW
FL Bar No.: 067999
TARA A. CAMPION
FL Bar: 90944
BRUCE S. ROGOW, P.A.
100 N.E. Third Avenue, Ste. 1000

L. PETER FARKAS
HALLORAN FARKAS + KITTILA, LLP
DDC Bar No.: 99673
1101 30th Street, NW
Suite 500

Washington, DC 20007
Telephone: (202) 559-1700
Fax: (302) 257-2019
pf@hfk.law

Fort Lauderdale, FL  33301
Telephone: (954) 767-8909
Fax: (954) 764-1530
brogow@rogowlaw.com
tcampion@rogowlaw.com
*Admitted pro hac vice*

ROBERT C. BUSCHEL
BUSCHEL GIBBONS, P.A.
D.D.C. Bar No. FL0039
One Financial Plaza, Suite 1300
100 S.E. Third Avenue
Fort Lauderdale, FL 33394
Telephone: (954) 530-5301
Fax: (954) 320-6932
Buschel@BGlaw-pa.com

GRANT J. SMITH
STRATEGYSMITH, PA
D.D.C. Bar No.: FL0036
FL Bar No.: 935212
401 East Las Olas Boulevard
Suite 130-120
Fort Lauderdale, FL 33301
Telephone: (954) 328-9064
gsmith@strategysmith.com

CHANDLER P. ROUTMAN
D.D.C. Bar No. 1618092
501 East Las Olas Blvd., Suite 331
Fort Lauderdale, FL 33301
Tele: (954) 235-8259
routmanc@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 9, 2019, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record or pro se parties, via transmission of Notices of Electronic Filing generated by CM/ECF.

BUSCHEL GIBBONS, P.A.

___/s/ Robert Buschel _____
Robert Buschel

*United States Attorney's Office for the*
*District of Columbia*

Jessie K. Liu
**United States Attorney**
Jonathan Kravis
Michael J. Marando
**Assistant United States Attorneys**
Adam C. Jed
Aaron S.J. Zelinsky
**Special Assistant United States Attorneys**
555 Fourth Street, NW
Washington, DC 20530
Telephone: (202) 252-6886
Fax: (202) 651-3393

# Exhibit A - Transcript

[(click here for video clip of the scene)](#)

EXT. ARMY POST - DAY

Five cars brimming with Army guards and Agents are waiting to move Pentangeli.  There is one empty car.

INT. GUARDED HOUSE - DAY

The two FBI Agents are helping Pentangeli get dressed.  He's in brightly colored striped shorts and bare-chested.  The Agents help him with the shirt and tie.  One holds out the trousers but Pentangeli ignores it and looks at himself in the mirror.

>                    FBI MAN #1
>           Ready, Frankie.
>
>                    PENTANGELI
>           Let's go.

The Agents open the door, and precede him, surveying the area.  They check the cars waiting, each with two Agents.  They check the gate and note the military sentries.  Then they stand aside, and let Pentangeli come out.  They get close to his side, and it is obvious they will protect his life with their own.

EXT. ARMY POST - DAY

The Agents put him in the front seat of the empty car, and get in with him, one at each side.  Another Agent drives.  Now, the first cars start out; the Sentries opening the gates, and letting the caravan pass.

An Army supply truck comes very close to them, and the Agents next to Pentangeli become very tense.  Pentangeli grins.  Then the truck passes on, and they relax.

INT. SENATE CAUCUS ROOM - DAY

The room is crowded with TV journalists, cameras, etc.  We pick Pentangeli up, closely guarded, being led to witness chair.

Pentangeli is seated, and made to take his oath.  FBI Agents are all around him.

MED. VIEW

Anyone given entrance to the caucus room is being frisked.  The five Senators take their places.

VIEW ON HAGEN

waiting at his long table, very nervous.  He seems startled by the appearance of Pentangeli.

VIEW ON PENTANGELI

catching Hagen's eye.  It's as though he is pleading for some kind of understanding of the fact that he has become a traitor.

VIEW ON HAGEN

cold; then he turns away.

VIEW ON THE ENTRANCE

The bustle is settling down; then Michael Corleone enters, and with him is someone very peculiar and out of keeping for this setting.  A burly-chested imposing man of middle age.  Very powerful-looking with frightening magnetic eyes.  His dress is odd: boots, rough tie, and shirt.  He could be the tenor out of a Sicilian opera.  He is clearly a country Don, direct from Sicily, and he dominates the room.

VIEW ON PENTANGELI

At first his view is blocked.  Then he sees Michael and is a bit shamefaced, but still defiant.

PENTANGELI'S POV

Michael returns his glances without emotion.  Then the VIEW ALTERS, revealing the Sicilian.

VIEW ON PENTANGELI

He is terror stricken; obviously he recognizes the man.

VIEW ON HAGEN'S TABLE

Michael and the Sicilian sit by Hagen, where they can stare directly at Pentangeli; he is frozen with fear.

VIEW ON THE SENATOR

Notices the tension in the room.  The Chairman commences:

> SENATOR KANE
> We have here a witness who will
> testify further on Michael
> Corleone's rule of the criminal
> empire that controls gambling in
> this country and perhaps in other
> countries.  This witness had no
> buffer between himself and Michael
> Corleone.  He can corroborate our
> charges on enough counts for this

    committee to consider a charge of
    perjury against Michael Corleone.
      (then he turns to Pentangeli)
    Your name please, for the record.

        PENTANGELI
    Frank Pentangeli.

        SENATOR KANE
    Were you a member of the Corleone
    Family?  Were you under the
    Caporegime Peter Clemenza, under
    Vito Corleone, known as the
    Godfather?

There is a long silence.

VIEW ON PENTANGELI

He seems unable to speak.

VIEW ON THE SICILIAN

gazing at him.

VIEW ON PENTANGELI

        PENTANGELI
    I never knew no Godfather.  I got
    my own family.

Senator Kane is stunned.  The two FBI men are alert, their
eyes searching the room for what has intimidated their
witness at the last moment.

        SENATOR KANE
    Mr. Pentangeli, you are
    contradicting your confessions to
    our investigators; I ask you again,
    were you a member of a crime
    organization headed by Michael
    Corleone?

        PENTANGELI
    No.  I never heard of it.  I never
    heard of nothing like that.  I was
    in the olive oil business with his
    father a long time ago.  That's all.

        SENATOR KANE
    We have your confession that you
    murdered on the orders of Michael
    Corleone.  Do you deny that
    confession and do you know what
    denying that confession will mean
    to you?

The die is cast and like a good soldier, Pentangeli will go all the way now.  So he is brazen in his defiance of the Senator.

>                    PENTANGELI
>           The FBI guys promised me a deal.
>           So I made up a lot of stuff about
>           Michael Corleone.  Because then,
>           that's what they wanted.  But it
>           was all lies.  Everything.  They
>           said Michael Corleone did this,
>           Michael Corleone did that.  So I
>           said, "Yeah, sure."

He makes a big grin to show how he has made fools of everybody.

VIEW ON THE FBI AGENTS

glancing around the room; their eyes have settled on the Sicilian.  One of them scribbles a note on a piece of paper, and passes it to the Committee lawyer.  Then in turn it goes to Senator Kane.

>                    SENATOR KANE
>           Mr. Hagen, would you kindly identify
>           to this committee that gentleman
>           sitting on your right hand?
>
>                    HAGEN
>              (coolly)
>           Yes, sir.  His name is Vincenzo
>           Pentangeli.
>
>                    SENATOR KANE
>           Is he related to the witness?
>
>                    HAGEN
>           He is, I believe, a brother.

VIEW ON MICHAEL AND VINCENZO PENTANGELI

They wait with no expression.

>                    SENATOR KANE
>              (to Vincenzo Pentangeli)
>           Sir, I would like you to take the
>           stand.

Vincenzo stares at him, uncomprehending.  There may just be a shadow of contempt.  He doesn't answer.

>                    HAGEN
>           Sir, the gentleman does not
>           understand English.  He would not
>           in any case, take the stand.  He
>           came, at his own expense, to aid

>           his brother in his trouble.  He is
>           not under any jurisdiction of our
>           government and his reputation in
>           his own country is impeccable.
>
>                     SENATOR KANE
>                (furious)
>           The witness is excused; take him out.

The guards and FBI Agents quickly remove Pentangeli, as everybody else in the room is required to sit still.

>                     HAGEN
>           Senator Kane.
>
>                     SENATOR KANE
>           This meeting is adjourned.
>
>                     HAGEN
>                (rising and shouting)
>           This committee owes an apology!
>
>                     SENATOR KANE
>           The committee is adjourned until
>           further notice.

For the first time, in the midst of the confusion, Hagen smiles.  A bitter, contemptuous smile.

VIEW ON MICHAEL

The modest champion.  He rises and they take their leave.

VIEW ON THE TWO FBI AGENTS

They watch the Corleone party as they exit.