UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROGER J. STONE, JR.,<br><br>    Defendant. | Criminal No. 19-cr-18-ABJ |

### GOVERNMENT"S OPPOSITION TO
### DEFENDANT'S MOTION *IN LIMINE* TO ADMIT EVIDENCE

The United States of America, by and through Jessie Liu, United States Attorney for the District of Columbia, files this response to defendant Roger J. Stone, Jr.'s motion (Doc. 158) to admit evidence concerning Russian involvement in the hacks of the Democratic National Committee ("DNC"), the Democratic Congressional Campaign Committee ("DCCC"), the presidential campaign of Hillary Clinton, and Campaign employees, and the transmission of those stolen files to Organization 1.[1]  It is unclear exactly what evidence Stone wishes to present.  He provides no proffer or offer of proof.  Nor does he state how much evidence he intends to present on this subject or how long it will take.  But, in all events, Stone's arguments lack merit.

As discussed in the government's separate motion to exclude evidence on these issues (Doc. 153), Stone is not charged in this case with participating in Russia's actions directed at the 2016 U.S. presidential election.  Stone is charged with obstructing a congressional investigation, making numerous false statements to Congress, and witness tampering.  Stone's contention is that if Russia did not steal and transmit the files later disseminated by Organization 1, then Stone's

---

[1] Stone's motion generally refers to evidence about whether Organization 1 received the stolen files from Russia. Doc. 158, at 1, 6, 7, 10-11.  In places, however, the motion appears to refer to evidence about whether Russia was responsible for the hacks themselves. *Id.* at 6, 10.  For purposes of the question before the Court, the arguments apply equally to both issues.

false statements could not be material to the investigation being conducted by the House Permanent Select Committee on Intelligence ("HPSCI").[2]

Stone's position is misguided. As the government has explained (Doc. 153, at 12-14), Stone's argument fundamentally misunderstands the legal definition of materiality, which turns on whether a statement had a natural tendency to influence or was capable of influencing a discrete decision or any other function. Materiality in this case therefore depends on the nature of the investigation to which Stone's statements were addressed—an investigation concerning, among other things, allegations that Russia stole and transferred the files later released by Organization 1, and questions about whether individuals associated with the Trump Campaign were linked to those and related activities. Materiality does not depend on the answer to the questions being investigated. For these reasons, Stone's evidence is irrelevant and should be excluded. As the government has additionally argued (*id.* at 16-18), not only would evidence on these issues be

---

[2] Stone twice refers to "materiality in the obstruction and perjury counts." Doc. 158, at 6, 7. Stone is not charged with perjury but, as he acknowledges elsewhere (*e.g.*, *id.* at 7, 9), with making false statements in violation of 18 U.S.C. § 1001 (counts 2-6). Stone is also charged with two forms of obstruction—obstructing a congressional investigation in violation of 18 U.S.C. § 1505 (count 1), and witness tampering in violation of 18 U.S.C. § 1512(b)(1) (count 7). Neither statute contains an express materiality element. The requirement in Section 1505 that the defendant "influenced, obstructed, impeded, or attempted to influence, obstruct or impede" the congressional proceeding bears some similarity to a requirement of materiality. The verbs "'obstruct or impede' are broad" and "can refer to anything that blocks, makes difficult, or hinders." *Marinello v. United States*, 138 S. Ct. 1101, 1106 (2018) (internal brackets and quotation marks omitted). Some courts have accordingly suggested that "when obstruction takes the form [of] . . . lying, the materiality of the lie becomes a focus of inquiry, because a lie that is immaterial to the [] process is not a potential interference with it." *United States v. Buckley*, 192 F.3d 708, 710 (7th Cir. 1999) (citations omitted); *see also United States v. Aguilar*, 515 U.S. 593, 599 (1995) ("the endeavor must have 'the natural and probable effect' of interfering with the due administration of justice") (interpreting 18 U.S.C. § 1503). This element of obstruction "reaches all corrupt conduct capable of producing an effect that prevents justice from being duly administered." *United States v. Silverman*, 745 F.2d 1386, 1393 (11th Cir. 1984) (interpreting 18 U.S.C. § 1503). To the extent that Stone is making any argument about count 1, the government's arguments about materiality apply equally. *See, e.g.*, *United States v. Thomas*, 612 F.3d 1107, 1128-29 (9th Cir. 2010).

irrelevant, but it would also pose significant risks of unfair prejudice, confusing or misleading the jury, and undue delay. It would create a vast mini-trial within a trial on issues that are tangential to the charges, thus requiring significant trial time and risking jury confusion and unfair prejudice with collateral but highly complex issues.

## BACKGROUND

The government provided a detailed statement of facts in its related motion to exclude evidence. Doc. 153, at 3-8. In order to limit repetition, this filing provides only the most pertinent pieces of background information. In short, during the lead-up to the 2016 U.S. presidential election, Organization 1 released documents stolen from the DNC and Clinton Campaign chairman. Doc. 1, ¶¶ 3(a), 3(b) (Indictment). The Indictment alleges that from July 2016 through October 2016, Stone engaged in communications with and about Organization 1. These included communications about Organization 1's plans to release stolen files and communications with Trump Campaign officials about those plans. *Id.* ¶¶ 10, 13, 15, 16.

On January 6, 2017, the U.S. Intelligence Community ("USIC") released a public assessment that Russia interfered in the 2016 presidential election to aid President Trump by conducting cyber operations against political targets and transmitting stolen materials to Organization 1. Assessing Russian Activities and Intentions in Recent US Elections, at ii-iii, 1-3, https://www.dni.gov/files/documents/ ICA_2017_01.pdf. HPSCI announced an investigation into these matters, including Russian involvement in obtaining and transmitting the documents that were eventually released by Organization 1 and any links with the Trump Campaign. Doc. 1 ¶ 7.[3]

---

[3] HPSCI explained that it was investigating "Russian cyber activity and other 'active measures' directed against the U.S. and its allies"; "Counterintelligence concerns related to Russia and the 2016 U.S. election, including any intelligence regarding links between Russia and individuals associated with political campaigns"; "The United States Government response to these Russian active measures and any impact they may have on intelligence relationships and

On September 26, 2017, Stone testified before HPSCI. *Id.* ¶ 20.

On January 24, 2019, the grand jury returned a seven-count indictment charging Stone with obstructing a congressional investigation in violation of 18 U.S.C. § 1505 (count 1); making numerous false statements to Congress in violation of 18 U.S.C. § 1001(a)(2) (counts 2-6); and witness tampering in violation of 18 U.S.C. § 1512(b)(1) (count 7). As relevant here, the Indictment alleges that Stone made multiple false and misleading statements to HPSCI. *Id.* ¶¶ 19-35, 43. These include falsely testifying that he had no documents referring to the head of Organization 1, *id.* ¶¶ 22-23, 31-33; that his prior public statements about communicating with Organization 1 through an intermediary referred to a single individual whom Stone later falsely identified as Person 2, *id.* ¶¶ 25-28; that Stone did not ask his "intermediary" to communicate information or requests to the head of Organization 1, *id.* ¶¶ 29-30; that Stone never communicated with his intermediary in writing, *id.* ¶¶ 31-34; and that Stone never spoke to individuals involved in the Trump Campaign about communications with his intermediary, *id.* ¶ 35. The Indictment also alleges that, in an effort to conceal his false statements to HPSCI, Stone repeatedly urged Person 2 to testify falsely, or to say that he could not remember the relevant events, or not to testify at all. *Id.* ¶¶ 36-39.

---

traditional alliances"; and "Possible leaks of classified information related to the Intelligence Community's assessments of these matters." Joint Statement on Progress of Bipartisan HPSCI Inquiry into Russian Active Measures (Jan. 25, 2017), https://intelligence.house.gov/news/documentsingle.aspx?DocumentID=211.

# DISCUSSION

Stone contends that he should be permitted to introduce exhibits and testimony about Russia's role in stealing and transferring the files later posted by Organization 1. It is unclear exactly what evidence Stone wishes to present; he provides no proffer or offer of proof. But in all events, evidence on these issues should be excluded from trial because it is entirely irrelevant to the charges in this case and also presents a serious risk of unfair prejudice, jury confusion, and undue delay that substantially outweighs any minimal probative value.

**A.    Evidence Regarding Russia's Role In Interfering In The 2016 Presidential Election Is Irrelevant**

Only relevant evidence is admissible at trial. Fed. R Evid. 402. The party seeking to introduce evidence bears the burden of establishing relevancy. *Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990). Stone has not met and cannot meet this burden.

**1.    Russia's Role in the 2016 Presidential Election Is Irrelevant To Materiality**

The definition of relevance is inclusive, Fed. R. Evid. 401(a), but it depends on the possibility of establishing a fact that "is of consequence in determining the action," Fed. R. Evid. 401(b). Evidence is therefore relevant only if it relates to matters that are at issue in the case. *E.g.*, *United States v. O'Neal*, 844 F.3d 271, 278 (D.C. Cir. 2016); *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008).

In this case, Stone is charged with obstructing a congressional investigation in violation of 18 U.S.C. § 1505 (count 1); making numerous false statements to Congress in violation of 18 U.S.C. § 1001(a)(2) (counts 2-6); and witness tampering in violation of 18 U.S.C. § 1512(b)(1) (count 7). Doc. 1. To adjudicate these charges, the jury will, in short, have to decide whether Stone engaged in obstructive conduct or endeavored to do so, with a nexus to the HPSCI proceeding, and with a corrupt intent (count 1); whether Stone knowingly and willfully made false

5

statements, in a matter that was part of a congressional investigation, and the false statements were material (counts 2-6); and whether Stone corruptly persuaded or attempted to corruptly persuade a witness, acted knowingly and with the intent to interfere in that witness's testimony, and did so with a current or future proceeding in mind (count 7).  None of the elements of these offenses turns on whether Russia participated in the hacks or whether Russia transmitted stolen files to Organization 1.  (In fact, Russia was involved in these activities, and therefore if Stone is permitted to present evidence in support of his contrary position, the government intends to introduce evidence supporting that conclusion in its rebuttal case, *see* discussion *infra* Section B.)

Stone argues (Doc. 158, at 7-10) that the details of Russia's and Organization 1's 2016 activities are relevant to the materiality of false statements that Stone made to HPSCI in 2017.  Stone's central thesis appears to be that because HPSCI was investigating Russia's activities, if Russia did not steal or transfer the files posted by Organization 1 (which it did), then false statements relating to Organization 1 could not have been material to HPSCI's investigation.  *See* Doc. 158, at 2-3, 6-7, 9-11.  Stone's position misunderstands the legal definition of materiality.  A false statement is material if it has "a natural tendency to influence, or [is] capable of influencing, either a discrete decision or any other function" of the agency to which it is directed—here HPSCI. *United States v. Moore*, 612 F.3d 698, 701 (D.C. Cir. 2010); *accord United States v. Gaudin*, 515 U.S. 506, 509 (1995).  This is judged not just by the direct effect of the statement itself but also by reference to the possibility of further investigation.  *United States v. Hansen*, 772 F.2d 940, 949 (D.C. Cir. 1985); *see Kungys v. United States*, 485 U.S. 759, 768-771 (1988).  "A statement 'need not actually influence an agency in order to be material.'"  *United States v. Verrusio*, 762 F.3d 1, 20 (D.C. Cir. 2014) (quoting *Moore*, 612 F.3d at 701-02).  Materiality "is a fairly low bar," *United States v. White*, 270 F.3d 356, 365 (6th Cir. 2001), and serves to ensure that the prohibition on

false statements does not "embrace trivial falsehoods." *United States v. Elashyi*, 554 F.3d 480, 497 (5th Cir. 2008).

Applying that well-established legal standard, the relevant question is whether Stone's false statements were capable of influencing HPSCI's investigative steps or other actions. The jury in this case will have to consider the false statements that Stone made and the decisions that HPSCI was trying to make, and "based on those facts," the jury will have to decide whether the statements were material to those decisions. Memorandum Op., Doc. 163, at 11 n.6 (Aug. 1, 2019) (citing *Gaudin*, 515 U.S. at 509, 512). Accordingly, evidence relevant to materiality concerns Stone's statements and the scope and direction of HPSCI's investigation, not the truth of the allegations that HPSCI was investigating. *See, e.g.*, *United States v. Poindexter*, 725 F. Supp. 13, 27 (D.D.C. 1989) (during investigation into "United States government involvement in sales of arms to Iran, [] it was plainly material to that inquiry when [a presidential advisor] first learned of government involvement in the shipment of arms to that country"); *United States v. Moran*, 194 F.2d 623, 626 (2d Cir. 1952) (holding that in an investigation into, *inter alia*, "the relationship between public officials and organized crime," the number of meetings between a government official and a "convicted gambler" was material); *see also United States v. Norris*, 300 U.S. 564, 573 (1937) ("The materiality of the respondent's false answers [to Congress] is clear in view of the scope of the inquiry."). Much as a witness may not lie to FBI agents and then claim that he cannot be prosecuted because he has some evidence that the subjects of the investigation are innocent, Stone could not lie to Congress about matters at the heart of the HPSCI inquiry and then argue that he cannot be convicted because he has some evidence that Russia had no link to Organization 1. Stone cites no case to support his contrary view.

The government intends to show that Stone's false statements had a natural tendency to

and were capable of influencing HPSCI in a number of ways, none of which depend on whether Russia, in fact, stole the files at issue or transferred them to Organization 1. HPSCI was investigating allegations that Russia was responsible for the hacks and the dissemination of hacked material to Organization 1. Communications with Organization 1 were therefore material to that investigation—particularly communications by Stone, who had extensive links to the Trump Campaign, had publicly discussed Organization 1's role in the election, and had communicated with the Guccifer 2.0 persona that publicly took credit for the hacks. It was for the Committee to decide what that evidence showed about Russia's involvement in the hacks, and Stone's false statements on these subjects impaired the Committee's ability to evaluate the evidence of the role Russia played vis-à-vis the hack, the Campaign, and Organization 1.

Stone's false statements also had a natural tendency to (and in fact did) affect HPSCI's investigative steps, priorities, and direction—regardless of Russia's 2016 activities. *See United States v. Safavian*, 649 F.3d 688, 691-92 (D.C. Cir. 2011) (statements material if they "were capable of influencing the course of the FBI's investigation"). For example, HPSCI did not subpoena the written communications that Stone claimed not to exist, and HPSCI did not investigate the other intermediary (Person 1) when Stone claimed that Person 2 was his sole intermediary. Moreover, Organization 1's activities and coordination with Stone were relevant to evaluating the Intelligence Community's work, to assessing any risks that Organization 1 may pose, and to considering any future actions that should be taken to deter coordination with state and non-state actors seeking to influence American elections. None of these understandings of materiality depends in any way on whether Russia in fact participated in the hacks or transmitted the hacked materials to Organization 1, and therefore Stone's evidence on that subject is not

8

relevant to the materiality inquiry.[4]

## 2. Stone's Additional Arguments Lack Merit

Stone appears to make a number of other arguments about why he should be permitted to introduce evidence about Russia's activities in 2016. Each lacks merit.

a. Stone first argues (Doc. 158, at 3-6) that he has a constitutional right to present evidence and put on a defense. That is true, of course, but has no bearing on this motion. A defendant has "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319 (2006). But "that guarantee extends only to relevant evidence," *United States v. Libby*, 475 F. Supp. 2d 73, 90-91 (D.D.C. 2007), and "it is axiomatic that a defendant's right to present a full defense does not entitle him to place before the jury irrelevant or otherwise inadmissible evidence." *United States v. Ruggiero*, 791 F.3d 1281, 1290 (11th Cir. 2015). The "Constitution does not require the admission of irrelevant evidence (or other types of evidence whose relevance is outweighed by other important considerations)." *United States v. Beavers*, 756 F.3d 1044, 1052 (7th Cir. 2014); *accord, e.g.*, *United States v. Rivas-Estrada*, 761 Fed. App'x 318, 328 (5th Cir. 2019) (unpublished); *United States v. Rand*, 835 F.3d 451, 459-460 (4th Cir. 2016); *United States v. Solomon*, 399 F.3d 1231, 1239 (10th Cir. 2005); *United States v. Munoz*, 233 F.3d 1117, 1134 (9th Cir. 2000); *see United States v. Scheffer*, 523 U.S. 303, 308 (1998) (discussing "[a]

---

[4] Even under Stone's crabbed view of materiality and HPSCI's investigation, Stone's statements were still material, regardless of Russia's exact role. Stone now primarily focuses only on evidence about whether Russia transferred the stolen files. But even if Organization 1 received the files elsewhere, it does not follow that Organization 1 has no connection to Russia's election interference. For example, Organization 1 could theoretically have received the files from someone who received them from Russia; Russia could theoretically have coordinated its other election interference activities with Organization 1's posting of stolen documents even if Russia was not Organization 1's source; and individuals associated with the Trump Campaign could theoretically have played a role coordinating the two. Under any view, Stone's communications with and about Organization 1 were material, regardless of Russia's exact role.

defendant's right to present relevant evidence"); *Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (same); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987) (same).[5]

      b.   Stone declares that "[t]he Indictment provides the context that the Russian state transferred the relevant data to WikiLeaks." Therefore, says Stone, the government must prove those facts and Stone's evidence on the subject is relevant. Doc. 158, at 5-6; *see id.* at 2 (stating that "Paragraphs 2, 3, and 12 of the Indictment assert that the Russian state hacked and stole DNC data, that that data was then transferred to [Organization 1]"). The Indictment does not, in fact, allege that Russia stole the relevant files and transferred them to Organization 1. Rather, the Indictment alleges that the DNC "publicly announced that it had been hacked by Russian government actors." Doc. 1 ¶ 2. The Indictment further alleges that, between July 2016 and November 2016, Organization 1 released documents stolen from the DNC and chairman of the Clinton Campaign. *Id.* ¶ 3. These allegations are offered as background to the HPSCI investigation and Stone's statements. *See id.* ¶¶ 7-8. The government intends to offer evidence on the DNC's public announcement, Organization 1's release of the materials, and the scope of the HPSCI investigation for those purposes. But to prove the crimes charged in the Indictment—

---

[5] Additionally, no constitutional right exists to admit relevant evidence where the "relevance is outweighed by other important considerations." *Beavers*, 756 F.3d at 1052. As discussed below, any probative value to Stone's Russia-related evidence is substantially outweighed by risks of unfair prejudice and jury confusion and a virtual guarantee of substantial delay and should therefore also be excluded under Federal Rule of Evidence 403. A defendant's right to present even relevant evidence "is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *see Rock v. Arkansas*, 483 U.S. 44, 55 & n.11 (1987). It is black letter law that "the Constitution" permits courts to exclude evidence that is "marginally relevant," or "poses an undue risk of . . . prejudice, [or] confusion of the issues" and is fully consistent with "evidentiary rules that themselves serve the interests of fairness and reliability -- even if the defendant would prefer to see that evidence admitted." *Crane v. Kentucky*, 476 U.S. 683, 689-90 (1986). Rule 403 is such a rule. *See, e.g., Beavers*, 756 F.3d at 1052; *United States v. Graham*, 796 F.3d 332, 366 (4th Cir. 2015), reh'g en banc on other issue, 824 F.3d 421 (4th Cir. 2016); *see Scheffer*, 523 U.S. at 308 (limitations on relevant evidence are permissible if they are neither "arbitrary" nor "disproportionate" to legitimate ends).

obstruction of Congress, making false statements to Congress, and witness tampering—the government is not required to prove Russia's exact role in the 2016 election. The government is certainly not required to prove Stone's view of the Indictment's "logic" or what it "impl[ies]." Doc. 158, at 10. And the mention of an announcement by the DNC as background information does not give Stone license to turn the trial into a sideshow on the underlying truth of that announcement.

c. Stone next argues (Doc. 158, at 8-9) that Russia's 2016 activities may bear on whether Congress exceeded its power when conducting this investigation or inquiring into Stone's communications with and about Organization 1. As an initial matter, this appears to be an untimely attempt to suggest a defect in the Indictment. Stone's theory also lacks merit because whether, in fact, Russia interacted with Organization 1 in its 2016 activities does not alter Congress's authority to investigate the relevant allegations. Stone's asserted evidence is therefore irrelevant.

Congress has a broad power of inquiry in aid of its legislative functions and can investigate any matters that Congress may seek to affect or change through legislation. *Watkins v. United States*, 354 U.S. 178, 187 (1957); *McGrain v. Daugherty*, 273 U.S. 135, 174-76 (1927); *see also Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504, 508-09 (1975); *Barenblatt v. United States*, 360 U.S. 109, 111 (1959). HPSCI was investigating, among other things, Russia's active measures directed at the United States, "Counterintelligence concerns related to Russia and the 2016 U.S. election," including "links between Russia and individuals associated with political campaigns," and the American government's response to these activities. These areas of inquiry are relevant to any number of fields of legislation—including laws governing cyber security, relations with Russia, campaign finance, dissemination of stolen files, and the funding and structure of the Intelligence Community.

Understanding Stone's communications with and about Organization 1 is a natural part of this inquiry, whether or not the Intelligence Community's assessment of Russia's 2016 activities was correct. Organization 1 had released files believed to have been stolen by Russia and believed to be released to benefit the Trump Campaign. Stone had communicated with Guccifer 2.0, an entity that claimed responsibility for the DNC hack. Stone had ties to the Trump Campaign. And Stone publicly (and privately) stated that he had been in touch with Organization 1. A natural part of Congress's investigation—and information that could bear on many areas of legislation—concerned learning about Organization 1's role vis-à-vis Russia and the Trump Campaign.

Stone's argument seems to reduce to the idea that if Russia did not transfer files to Organization 1 (which it did), then Congress had no constitutional authority to inquire into Stone's communications with and about Organization 1. But "[t]he very nature of the investigative function—like any research—is that it takes the searchers up some 'blind alleys' and into nonproductive enterprises." *Eastland*, 421 U.S. at 509. And even if, as Stone asserts, Russia did not transfer files to Organization 1, Congress could nonetheless be interested in understanding Organization 1's activities and relationship to the Trump Campaign for the same legislative purposes. Among other things, Congress could choose to legislate to address the threat of future election interference, Organization 1's working with other state or non-state actors, or Organization 1's interactions with political campaigns.

Stone's principal authority, *United States v. Cross*, 170 F. Supp. 303 (D.D.C. 1959), does not support his position. In *Cross*, the Court granted a motion for judgment of acquittal on a charge of perjury arising out of testimony before a congressional committee. Cross had testified before a committee investigating union activities regarding allegations of an assault that occurred in a hotel room. *Id.* at 307. After Cross denied any knowledge of the assault, the committee called another

witness who contradicted Cross's account, and then the committee recalled Cross solely to reiterate his denial and to confirm that he did not wish to change his testimony in light of the other witness's statement. *Id.* at 308. The Court explained that the perjury charge against Cross, which was based on his second round of testimony, could not stand because the committee had no "valid legislative purpose" in questioning Cross a second time about the alleged assault. *Id.* at 309. The Court concluded that the committee had recalled Cross solely "for the purpose of emphasizing the untruthfulness of his prior denial and to render him more liable to criminal prosecution." *Id.*

That is not the case here. Stone has not alleged that he was asked to testify before HPSCI solely for the purpose of rendering him more liable to criminal prosecution, or for some other illegitimate purpose. On the contrary, as the transcript of his testimony makes clear, Stone was asked to testify about matters that were directly relevant to a legitimate subject of congressional investigation. HPSCI was entitled to investigate the allegation that materials released by Organization 1 had been stolen by the Russian government, and the Committee's questions to Stone were asked for that plainly legitimate purpose. In short, *Cross* has nothing to do with this case.

d. To the extent Stone suggests that evidence on Russia's role is probative of his "state of mind" or "belie[f]" about materiality at the time of the false statements (*see* Doc. 158, at 10), that argument also lacks merit. As an initial matter, the charged crimes do not require that the defendant knew his false statements were material. To act knowingly, Stone must have known that his statements were false. But he did not have to know that his false statements were material to HPSCI's investigation. *United States v. Stover*, 499 Fed. App'x 267, 273 (4th Cir. 2012) (unpublished); *United States v. Notarantonio*, 758 F.2d 777, 785 n.4 (1st Cir. 1985); *United States v. Mubayyid*, 476 F. Supp. 2d 46, 56 (D. Mass. 2007); *see United States v. Boulerice*, 325 F.3d 75,

82 (1st Cir. 2003) ("[W]hether Boulerice actually knew of the false statements' materiality to the government does not enter the calculus of proof."). A contrary view would effectively require government agents and entities to outline the scope, nature, direction, and tentative further steps of any government process—whether it be a congressional investigation, FBI investigation, or an informal interaction with an administrative agency—to any person submitting information, lest false statements otherwise be permissible. (Even then, a defendant who believed that his false statements were immaterial might argue that he was therefore allowed to make false statements.) If a person chooses to make false statements to the government, he or she takes the risk that the false statement is material.

In any event, evidence about Russia's role in the 2016 interference activities is not evidence about Stone's knowledge of materiality. Initially, evidence about Russia's activities in 2016 is irrelevant to what Stone knew when testifying in 2017 unless Stone possessed that same information when he testified. *See, e.g.*, *United States v. Libby*, 467 F. Supp. 2d 1, 15-16 (D.D.C. 2006) (information about "what others were told" is "simply irrelevant to the defendant's state of mind"); *United States v. Secord*, 726 F. Supp. 845, 848-49 (D.D.C. 1989) (a defendant's "state of mind" can be affected only by information read or heard by him).[6] More to the point, Stone's 2017 views on Russia's conduct could have no bearing on his knowledge of materiality for substantially the same reasons discussed above. If knowledge of materiality were an element of the charged crimes, the question would be Stone's knowledge of the nature of HPSCI's inquiry, not Stone's beliefs about what HPSCI was investigating. Even evidence of Stone's views about

---

[6] To the extent that Stone wishes to introduce this evidence to establish his state of mind, there is an even greater danger of the sorts of unfair prejudice discussed below. It would improperly allow Stone "to portray his own state of mind" through the testimony of others, all "without allowing the government any effective means of challenging it through cross-examination." *See United States v. Libby*, 475 F. Supp. 2d 75, 89 (D.D.C. 2007).

whether Russia hacked and transferred the files later posted by Organization 1 therefore could have no bearing on whether Stone knew his false statements concerning Organization 1 were material.

> **B.     Significant Risks Of Unfair Prejudice, Jury Confusion, And Undue Delay Substantially Outweigh Any Probative Value**

As discussed in the government's motion *in limine* (Doc. 153, at 16-18), even if Russia's activities were relevant to this case, evidence about those issues—beyond minimal background to explain the HPSCI investigation—should be excluded because it poses significant risks of unfair prejudice, confusing or misleading the jury, undue delay, and wasting time. *See* Fed. R. Evid. 403. Even if the evidence "were of some marginal relevance," the "likely (and presumably intended) effect" of admitting evidence and argument on those issues would be "to shift the focus away from the relevant evidence of [Stone's] wrongdoing" to matters that are, at most, "tangentially related." *See United States v. Malpeso*, 115 F.3d 155, 163 (2d Cir. 1997).

Stone's motion does not address any of these concerns. Stone does not proffer what kind of evidence he would seek to introduce on this point, or how long he thinks it would take to present the evidence, or how (if at all) the evidence would connect to his state of mind in September 2017. Nor does Stone suggest how the jury would be instructed to use or consider this evidence when evaluating the charges against Stone, none of which requires the government to prove that Russia hacked the DNC or transferred hacked material to Organization 1. As the government noted in its motion *in limine*, any presentation of evidence on this subject by Stone would open the door to the government's presentation in rebuttal of substantial evidence that Russia did in fact steal the files later posted by Organization 1. *See generally* Indictment, *United States v. Netyksho*, No. 18-cr-215 (D.D.C. July 13, 2018) (alleging that Russian military officers conducted the theft and detailing the various facts) (Doc. 1).

As discussed in the government's motion in *limine*, this mini-trial would create a substantial risk of unfair prejudice and confusion. It is also a virtual certainty that this kind of evidence and argument would create undue delay and waste time. *See United States v. Fonseca*, 435 F.3d 369, 373-76 (D.C. Cir. 2006) (excluding "marginally" relevant evidence to avoid delay and a "mini-trial" on a collateral matter); *see also Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1346-47 (3d Cir. 2002) (upholding exclusion of evidence with "low probative value" where "rebut[ting]" its "expansive allegations" would require "a great deal of time" and create "a trial within a trial"). Those considerations outweigh any minimal probative value with respect to the materiality of Stone's false statements. The evidence should therefore be excluded.

## CONCLUSION

For the foregoing reasons, Stone's motion should be denied.

Respectfully submitted,

JESSIE K. LIU
U.S. Attorney for the District of Columbia

By: /s/
Jonathan Kravis
Michael J. Marando
Assistant United States Attorneys

Adam C. Jed
Aaron S.J. Zelinsky
Special Assistant United States Attorney
555 4th Street NW
Washington, D.C. 20530

August 9, 2019