UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROGER J. STONE, JR.,<br><br>　　　　　Defendant. | Criminal No. 19-cr-18-ABJ |

**GOVERNMENT'S REPLY IN SUPPORT OF MOTION TO ADMIT MOVIE CLIP**

In several communications with Person 2, defendant Roger J. Stone, Jr., referenced a character from the movie *The Godfather Part II* named Frank Pentangeli. Indeed, in emails and text messages sent after Stone became aware that Person 2 had been served with a subpoena by the House Permanent Select Committee on Intelligence, Stone quoted Pentangeli's lines from the movie. When Stone sent these messages to Person 2, he intended to conjure a specific image in Person 2's mind—a scene in which Pentangeli gives false testimony before a congressional committee to exculpate an associate suspected of committing perjury before that committee. To establish that Stone sent these messages in order to influence the testimony of Person 2 – and that Stone did so with corrupt intent – the government should be permitted to show the jury the image that Stone intended to create in Person 2's mind, by playing for the jury the scene in which Pentangeli delivers the lines that Stone quoted to Person 2. The move clip itself powerfully illustrates both the clarity of the references to the scene in Stone's messages and the obvious parallels between the congressional investigation depicted in the film and the congressional investigation that gave rise to Person 2's subpoena. This evidence also directly refutes Stone's claim that his references to Pentangeli in his communications with Person 2 were merely requests that Person 2 perform a humorous imitation.

Stone does not deny that this short movie clip is relevant. Stone instead argues (Doc. 171, at 2-3) that admission of the clip would violate Federal Rule of Evidence 404. Referencing Rule 404(b), Stone argues that the clip wrongly suggest a connection between Stone, the mafia, and violence. Contrary to Stone's argument (*id.* at 2), the clip is not offered to suggest that Stone has the character of "a murderous mafioso" or otherwise establish his "'criminal disposition,' propensity, or bad character." *See Huddleston v. United States*, 485 U.S. 681, 687 (1988) (explaining Rule 404(b)); *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (same). Nor is the clip offered as "[e]vidence of [Stone's] character or character trait" as a fictional mobster "to prove that on a particular occasion the person acted in accordance with the character or trait," Fed. R. Evid. 404(a)(1). The government does not intend to suggest that Stone is an organized crime figure. Stone referenced this film scene in communications that, the Indictment alleges, constitute witness tampering. The scene is therefore part of the very acts at issue, and viewing the scene sheds light on the communications that referenced and quoted it. To address any possible concern in this regard, the Court can instruct the jury about the purposes for which the film clip is admitted. *See Huddleston*, 485 U.S. at 691-692; Fed. R. Evid. 105.

Stone also contends (Doc. 171, at 3-9) that the scene is unfairly prejudicial and suggests that, applying Federal Rule of Evidence 403, the Court should not permit the jury to see it. This argument is misguided. Initially, little risk exists of unfair prejudice to Stone. As the D.C. Circuit has observed, Rule 403 does not apply to "powerful, or even 'prejudicial' evidence" but instead "focuses on the 'danger of *unfair* prejudice.'" *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (Court's emphasis). This means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 192 (1997). While the scene from *The Godfather Part II* may be dramatic in some

sense, Stone chose to reference it, and Rule 403 "does not provide a shield for defendants . . . permitting only the crimes of Caspar Milquetoasts to be described fully to a jury." *Gartmon*, 146 F.3d at 1021.  Playing the very scene that Stone referenced does not invite the jury to convict Stone for being "in the mafia" (Doc. 171, at 4), or suggest that Stone "used violence, committed murder or any other violent felony, or is a member of the Mafia" (*id.* at 8).  The government has no intention of suggesting such parallels.  And the vast factual differences between Stone's conduct and activities referenced in *The Godfather Part II* should mitigate any such risk.  *See, e.g.*, *United States v. Shirosaki*, 194 F.3d 175, 1999 WL 187760, t *1 (D.C. Cir. 1999) (unpub.) (noting that "[t]he risk of prejudice was minimized given the differences between the 1971 crimes and the 1986 bombings and the judge's limiting instruction").[1]

Stone argues (Doc. 171, at 6) that "the *Godfather* trilogy is iconic and its themes and implications are known by most people."  Stone, however, is not asking the Court to redact references to Pentangeli, *The Godfather* trilogy, and lines from the film from all evidence submitted to the jury—including Stone's written messages and any testimony by Person 2.  There is thus no reason to single out the movie clip, which helps the jury to understand the scene Stone intended to invoke.[2]

Any risk of unfair prejudice should be addressed through a limiting instruction issued by the Court, rather than by excluding important evidence altogether.  *See* Adv. Comm. Note to Rule

---

[1] Stone's response attached a purported transcript of the clip at issue.  *See* Doc. 171, Ex. 1. This transcript is inaccurate in several respects, including the words transcribed and actions described.  The government respectfully suggests that the Court review the film clip itself, and the government can make a copy available for the Court's review upon request.

[2] Indeed, submitting the Pentangeli clip to the jury would mitigate the very concerns Stone expresses regarding *The Godfather* Trilogy's "themes and implications."  Without playing the clip, there could be a potential risk of jurors' assuming that the referenced scene involves violence or other bad acts when, in fact, it does not.

403 ("In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction."); *see, e.g., United States v. Abel*, 469 U.S. 45, 54-55 (1984) (explaining that precautions, including a limiting instruction, "did not prevent *all* prejudice" but did "ensure that the admission of th[e] highly probative evidence did not *unduly* prejudice " the defendant) (Court's emphasis).  The Court can instruct the jury that this clip is offered to provide context for understanding Stone's messages to Person 2 that referenced and quoted the film scene; that the clip is intended to be probative of what those messages meant and of Stone's intention when sending the messages to Person 2; and that the clip should not be taken to suggest that Stone is in the mafia, planned a murder, or any of the other risks that Stone posits in his response to the government's motion.

In any event, Rule 403 confers "discretion to exclude evidence" only if a danger of unfair prejudice "*substantially* outweighs' the evidence's probative value."  *Gartmon*, 146 F.3d at 1021 (Court's emphasis, quoting Fed. R. Evid. 403).  As the government has argued, the proffered film clip has substantial probative value.  It provides critical context for understanding messages that are at the heart of two of the charged counts.  Stone does not seriously argue why any asserted prejudice of referencing a film about the mafia would substantially outweigh that probative value.  To the contrary, Stone's suggestion (*see, e.g.,* Doc. 157, at 3, 7) that he was just asking Person 2 to do an amusing impression, or just asking him "not [to] cooperate with investigators" (*id.* at 3) illustrates the importance of the jury's viewing the referenced film scene for itself.[3]  As the government noted (Doc. 156, at 6-7), a number of courts have applied similar reasoning and

---

[3] To be clear, while Stone asked Person 2 to do much more than not cooperate, corruptly persuading a witness not to cooperate would also constitute illegal witness tampering.  *See e.g.*, *United States v. Bernhardt*, 903 F.3d 818, 823 (8th Cir. 2018); *United States v. Shotts*, 145 F.3d 1289, 1301 (11th Cir. 1998).

admitted excerpts of films and television broadcasts where those excerpts elucidated the meaning of relevant communications.  Stone seeks to distinguish those cases on their facts.  *See* Doc. 171, at 5-6.  But Stone does not and cannot rebut the critical point that at least four courts of appeals upheld the admission of clips that could have potentially prejudiced defendants—including excerpts of two films that contain substantial violence, one film about an elaborate criminal fraud enterprise, and an interview with Osama Bin Laden—where those clips shed light on facts that were directly at issue.

## CONCLUSION

For the foregoing reasons, the government should be permitted to admit a short excerpt from *The Godfather Part II* in which the Frank Pentangeli character testifies before Congress.

Respectfully submitted,

JESSIE K. LIU
U.S. Attorney for the District of Columbia

By: /s/
Jonathan Kravis
Michael J. Marando
Assistant United States Attorneys

Adam C. Jed
Aaron S.J. Zelinsky
Special Assistant United States Attorney
555 4th Street NW
Washington, D.C. 20530

August 16, 2019