**FILED**

**SEP 19 2019**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, )
)
v. ) Crim. Action No. 19-0018 (ABJ)
)
ROGER J. STONE, JR., ) *** FILED UNDER SEAL ***
)
Defendant. )
)

## MEMORANDUM OPINION AND ORDER

Pending before the Court are two motions filed by defendant Roger J. Stone, Jr.: a Motion to Suppress [Dkt. # 100] ("Def.'s Mot.") and a Motion to Compel Unredacted Versions of the Crowdstrike Reports [Dkt. # 103]. With respect to the second motion, the government has stated that it does not have an unredacted version of the Crowdstrike reports in its possession, and defendant has conceded that as a result, the motion is moot. Tr. of Mot. Hr'g, July 16, 2019 [Dkt. # 205] ("Tr.") at 30–31. Accordingly, the Court will deny the motion to compel as moot.

As for the Motion to Suppress, Stone has moved to suppress the evidence obtained pursuant to eighteen search warrants executed in this case. He asserts that the factual underpinnings for all of the warrant applications – that the Russian government hacked computers belonging to the Democratic National Committee ("DNC"), the Democratic Congressional Campaign Committee ("DCCC"), and the chairman of the Hillary Clinton presidential campaign, and that Russia was responsible for giving the stolen data to WikiLeaks[1] – are false. Def.'s Mot. at 1, 4. Stone seeks

---

1   WikiLeaks is referred to as "Organization 1" throughout the indictment. *See* Indictment [Dkt. # 1] ("Ind."). The parties refer to it by name in their filings. *See* Def.'s Mot. at 3; Gov't Opp. at 9.

1

an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 156 (1978), and he has supplied the opinions of two cyber analysts in support of his motion. Def.'s Mot. at 4–5. Because defendant has failed to satisfy either prong of the showing necessary to obtain a *Franks* hearing, the Court will deny the motion to suppress.

## BACKGROUND

### I. Procedural History

On May 10, 2019, defendant moved "to suppress all evidence as fruit of illegal search warrants executed on specified dates and times." Def.'s Mot. at 1.[2] The government opposed the motion, Gov't Opp. to Def.'s Mot. [Dkt. # 122] ("Gov't Opp."), defendant replied, Def.'s Reply to Gov't Opp. [Dkt. # 133] ("Def.'s Reply"), there was a surreply [Dkt. # 137], and the Court heard argument on the motion on July 16, 2019. *See* Tr.

---

2   The warrants and applications appear on the docket under seal at Dkt. # 109: Search and Seizure Warrant, D.D.C. 18-sc-02570, Aug. 2, 2018 [Dkt #109-1] ("SW1"); Search and Seizure Warrant, D.D.C. 17-mj-567, Aug. 7 , 2017 [Dkt #109-2] ("SW2"); Search and Seizure Warrant, D.D.C. 17-mj-00661, Sept. 11, 2017 [Dkt #109-3] ("SW3); Search and Seizure Warrant, D.D.C. 17-mj-00760, Oct. 17, 2017 [Dkt #109-4] ("SW4"); Search and Seizure Warrant, D.D.C. 18-sc-00662, Mar. 14, 2018 [Dkt #109-5] ("SW5"); Search and Seizure Warrant, D.D.C. 18-sc-02524, July 27, 2018 [Dkt #109-6] ("SW6"); Search and Seizure Warrant, D.D.C. 18-sc-02581, Aug. 3, 2018 [Dkt #109-7] ("SW7"); Search and Seizure Warrant, D.D.C. 18-sc-02582, Aug. 3, 2018 [Dkt #109-8] ("SW8"); Search and Seizure Warrant, D.D.C. 18-sc-02596, Aug. 8, 2018 [Dkt #109-9] ("SW9"); Search and Seizure Warrant, D.D.C. 18-sc-02595, Aug. 8, 2018 [Dkt #109-10] ("SW10"); Search and Seizure Warrant, D.D.C. 18-sc-02671, Aug. 20, 2018 [Dkt #109-11] ("SW11"); Search and Seizure Warrant, D.D.C. 18-sc-02728, Aug. 28, 2018 [Dkt #109-12] ("SW12"); Search and Seizure Warrant, D.D.C. 18-sc-02729, Aug. 28, 2018 [Dkt #109-13] ("SW13"); Search and Seizure Warrant, SDNY 19 MAG 847, Jan. 24, 2019 [Dkt #109-14] ("SW14"); Search and Seizure Warrant, S.D. Fla. 19-6034-SNOW, Jan. 24, 2019 [Dkt #109-15] ("SW15"); Search and Seizure Warrant, D.D.C. 19-sw-0057, Feb. 13, 2019 [Dkt #109-16] ("SW16"); Search and Seizure Warrant, S.D. Fla. 19-6033-SNOW, Jan. 24, 2019 [Dkt #109-17] ("SW17"); Search and Seizure Warrant, D.D.C. 18-sc-02583, Aug. 3, 2018 [Dkt #109-18] ("SW18").

## II. Applicable Facts

Defendant is charged with making false statements to Congress, obstructing a congressional proceeding, and tampering with a witness in connection with that proceeding. *See* Ind. [Dkt. # 1].

The indictment alleges that in or around 2017, U.S. government officials publicly disclosed the existence of ongoing investigations into Russian interference in the 2016 U.S. presidential election and possible links to individuals associated with the presidential campaigns. Ind. ¶ 18. In the months leading up to the election, WikiLeaks released tens of thousands of documents stolen from computers belonging to the DNC and to John Podesta, the chair of the Hillary Clinton presidential campaign. Ind. ¶ 3. The indictment also alleges that around the time of the releases, defendant claimed both publicly and privately that he had been in contact with WikiLeaks – either directly or through an intermediary – about the releases. Ind. ¶¶ 6, 14.

In early 2017, two congressional committees announced their own investigations into the matter. Ind. ¶ 18. Defendant Stone, who had served as a political consultant to the campaign of then-candidate Donald Trump until approximately August 2015, Ind. ¶ 4, was called to testify before one of the committees, the U.S. House of Representatives Permanent Select Committee on Intelligence ("HPSCI" or "the Committee"). Ind. ¶ 19. The indictment arises out of Stone's alleged conduct in connection with the HPSCI investigation; it alleges that he testified falsely and that he sought to interfere with the testimony of others.

The motion before the Court involves the evidence that may be introduced at trial. Beginning in mid-2017, law enforcement agents applied for and obtained warrants to search and seize evidence from a number of devices, accounts, and premises owned or controlled by the defendant. *See* SW1–SW18. All of the affidavits submitted with the warrant applications included

statements referring to conclusions reached by the U.S. intelligence community[3] or by Crowdstrike, a cybersecurity firm hired by the DNC to investigate the intrusion into its computers, that Russian actors were responsible for infiltrating the target computers and/or delivering the stolen data to WikiLeaks.

Defendant disputes conclusions, and he submits that their alleged inaccuracy invalidates the warrants issued based upon the agents' affidavits. *See* Def.'s Reply at 12–13 (identifying the challenged statements).

## LEGAL STANDARD

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and it provides that

> no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Supreme Court has explained that a search warrant is supported by probable cause if there is a "fair probability that . . . evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . . And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

---

3   The intelligence community's conclusion was released in a January 6, 2017 assessment. Intelligence Community Assessment: Assessing Russian Activities and Intentions in Recent U.S. Elections, https://www.dni.gov/files/documents/ICA_2017_01.pdf ("Assessment"). It is "a declassified version of a highly classified assessment" and "its conclusions are identical to those in the highly classified assessment." *Id.*

*Id.* at 238–39, quoting *Jones v. United States*, 362 U.S. 257, 271 (1960). Courts must conscientiously review the sufficiency of the affidavits upon which warrants were issued, *Gates*, 462 U.S. at 239, but that assessment is made on the face of the affidavit, which has a presumption of validity. *Franks*, 438 U.S. at 171; *see also United States v. Leon*, 468 U.S. 897, 914 (1984) (holding that a magistrate judge's determination of probable cause in issuing a search warrant is accorded "great deference"), quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969).

Moreover, evidence seized in good faith reliance on a valid warrant will not be excluded or suppressed, even if the warrant is subsequently found to be invalid, unless the officers' reliance on the warrant was objectively unreasonable. *Leon*, 468 U.S. at 922. This is because "the exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges." *Mass. v. Sheppard*, 468 U.S. 981, 990 (1984).

The Supreme Court has identified only a few circumstances in which the seizing officers' reliance could be unreasonable, but one of those narrow exceptions to the *Leon* principle is when the issuing judge was misled by information in the affidavit that the affiant knew was false (or would have known but for his or her reckless disregard for truth). *Leon*, 468 U.S. at 914–15;[4] *United States v. Spencer*, 530 F.3d 1003, 1007 (D.C. Cir. 2008).

The proponent of a motion to suppress evidence bears the burden of establishing that his Fourth Amendment rights were violated by the challenged search or seizure. *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978). In making that showing, a defendant is not permitted to go behind

---

4     Courts may also look behind the face of a search warrant to examine whether 1) a magistrate performed the "neutral and detached function and not serve[d] merely as a rubber stamp for the police," 2) the affidavit was so lacking in indicia of probable cause to make reliance on it unreasonable, or 3) a warrant is so facially deficient – i.e., it does not identify the place to be searched or things to be seized – that officers could not reasonably assume it was valid. *Leon*, 468 U.S. at 914–15. Defendant does not challenge the search warrants on any of these grounds.

the face of the affidavit and challenge its veracity or cross examine the affiant unless he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit," and that the allegedly false statement was necessary to the finding of probable cause. *Franks,* 438 U.S. at 155–56.[5] If he makes the requisite two-part preliminary showing, the Fourth Amendment requires that a hearing be held, *id.* at 156, and suppression is an appropriate remedy if the reviewing court finds that the magistrate or judge who issued the warrant "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon,* 468 U.S. at 923; *see also Franks,* 438 U.S. at 155–56 ("In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.").

But merely conclusory contentions, or suggestions that an affiant was negligent, will not be sufficient to support a request for an evidentiary hearing. *Franks,* 438 U.S. at 171. The Supreme Court has insisted that the defendant must specifically identify the portion of the affidavit that is claimed to be false, and his allegations of deliberate falsehood or reckless disregard must be accompanied by a statement of supporting reasons and an offer of proof. *Id.*

---

5    The D.C. Circuit has reiterated that to successfully challenge the validity of a search warrant affidavit under *Franks*, a defendant "must show that (1) the affidavit contained false statements; (2) the statements were material to the issue of probable cause; and (3) the false statements were made knowingly and intentionally, or with reckless disregard for the truth." *United States v. Dorman,* 860 F.3d 675, 684 (D.C. Cir. 2017), quoting *United States v. Richardson,* 861 F.2d 291, 293 (D.C. Cir. 1988).

## ANALYSIS

Defendant asks the Court to suppress all of the evidence gathered pursuant to the search warrants issued in this case because all of the applications were based on what he asserts is a false premise: that Russian agents hacked into the DNC computers and others remotely, or gave the stolen data to WikiLeaks. He asserts that he is entitled to a *Franks* hearing to demonstrate that the assertion underlying the finding of probable cause was flawed, and therefore, the *Leon* presumption of good faith reliance on a valid warrant does not protect against suppression here.

Defendant maintains that the affiants "knew that they could not prove the Russian state hacked the DNC or the other targeted servers, and transferred the data to WikiLeaks," Def.'s Mot. at 7, when they applied for the search warrants because it was Crowdstrike, a private cybersecurity firm, that investigated the intrusion into the DNC's computers instead of the FBI, and it failed to properly preserve the evidence during its investigation. Def.'s Mot. at 3. According to defendant, Crowdstrike's handling of the DNC's computers undermined its investigation and conclusions, thereby tainting the U.S. intelligence community's assessment that Russia was behind the DNC intrusion or that Russia delivered the DNC data to WikiLeaks. Def.'s Mot. at 2–3. He also submits that Crowdstrike overlooked key facts related to the transmission to WikiLeaks and therefore reached the wrong conclusion. *See* Def.'s Mot. at 4.

Defendant provides declarations from two cyber analysts who opine that the stolen data was delivered to WikiLeaks through use of a medium such as a thumbdrive, and that this suggests it was stolen by someone with physical access to the DNC's computers, not by external exfiltration over the internet. Decl. of William E. Binney [Dkt. # 100-1] ("Binney Decl.") ¶¶ 14, 17; Decl. of Peter Clay [Dkt. # 100-3] ("Clay Decl.") ¶¶ 5–9. Defendant asserts that these declarations "concretely and specifically challenge the government's foundational assumption in all warrants

– WikiLeaks received the DNC data from the Russian state," and in his reply to the government opposition to his motion, he identifies the paragraphs in which the intelligence assessment or the Crowdstrike report are referenced. *See* Def.'s Reply at 12–13.[6]

But as set forth above, the question for the Court is not whether the defendant has articulated grounds to "concretely and specifically challenge" information or conclusions included in the affidavits, *see* Def.'s Reply at 12; it is whether defendant has made "a substantial preliminary showing" that the affidavits contain information the affiants "knew was *false* or would have known was false except for [their] reckless disregard of the truth," *Leon*, 468 U.S. at 923 (emphasis added), and that "the allegedly false statement[s are] necessary to the finding[s] of probable cause." *Franks*, 438 U.S. at 156. In short, defendant must demonstrate that the issuing judge or magistrate was misled. Defendant has not come close to meeting this standard.

**A.    Defendant has not shown that the affidavits contained false statements that were made knowingly and intentionally, or with reckless disregard for the truth.**

The fundamental problem with defendant's motion is that he has not identified any statements in the eighteen affidavits that he claims are deliberately false or were made in reckless disregard of the truth. Defendant's original motion completely failed to "point out specifically the portion of the warrant affidavit that is claimed to be false," as required by *Franks*, 438 U.S. at 171, and it could have been denied on that basis alone. Defendant endeavored to cure the problem in

---

6    Search Warrants 1–13 and Search Warrant 18 refer to the intelligence assessment. *See* SW1, Aff. ¶¶ 9–19; SW2, Aff. ¶¶ 6–7; SW3, Aff. ¶¶ 6–7; SW4, Aff. ¶¶ 7–8; SW5, Aff. ¶¶ 7–9; SW6, Aff. ¶¶14, 16–24; SW7, Aff. ¶¶ 13–19; SW8, Aff. ¶¶13–19; SW9, Aff. ¶¶ 9–19; SW10, Aff. ¶¶ 9–19; SW11, Aff. ¶¶ 12–21; SW12, Aff. ¶¶ 9–18; SW13, Aff. ¶¶ 9–18; SW18, Aff. ¶¶ 13–19. (The Court notes that the affidavit for SW5 has a paragraph numbering error in that paragraphs 1–13 appear twice. The paragraphs cited above refer to the paragraphs 7–9 on pages 3–4 of that affidavit.)

Search Warrants 14–17 refer to the Crowdstrike report. *See* SW14, Aff. ¶¶ 9–15; SW15, Aff. ¶¶ 16–19; SW16, Aff. ¶¶ 16–19; SW17, Aff. ¶¶ 16–19.

his reply, but as was apparent at the hearing, his efforts still fall short. *See* Tr. at 26–29 (defense counsel pointed to certain paragraphs in the affidavits summarizing the conclusions of the intelligence community or Crowdstrike, but failed to explain where or how the affiants made false or reckless statements to the courts).

The statements in the affidavits simply set forth conclusions reached in the Assessment and/or the Crowdstrike report that Russia infiltrated the DNC's computers or provided stolen DNC data to WikiLeaks. *See* SW1, Aff. ¶¶ 11–12 (averring that the "the [U.S. Intelligence Community] assessed that 'Russia's intelligence services conducted cyber operations against targets associated with the 2016 US presidential election, . . . gained access to Democratic National Committee (DNC) networks," and "used the Guccifer 2.0 persona, DCLeaks.com, and WikiLeaks to release" the stolen data); SW5, Aff. ¶¶ 12–13 (same);[7] SW6, Aff. ¶¶ 17–18 (same); SW7, Aff. ¶ 14 (same); SW8, Aff. ¶ 14 (same); SW9, Aff. ¶¶ 11–12 (same); SW10, Aff. ¶¶ 11–12 (same); SW11, Aff. ¶¶ 14–15 (same); SW12, Aff. ¶¶ 11–12 (same) ; SW13, Aff. ¶¶ 11–12 (same); SW2, Aff. ¶¶ 6–7 (attesting that "[a]ccording to the public and unclassified intelligence report conducted by the United States Intelligence Community, the Russian military intelligence . . . exfiltrated large volumes of data from the DNC" and "used a Twitter account, 'Guccifer 2.0,' as well as the websitesDCLeaks.com [sic], and WikiLeaks to release" the stolen data); SW3, Aff. ¶¶ 6–7 (same); SW4, Aff. ¶¶ 7–8 (same); SW14, Aff. ¶ 11 (attesting that "CrowdStrike issued a public press release announcing that the DNC's computer network had been compromised . . . indicat[ing] that it had identified 'two sophisticated adversaries on the network,' . . . and that, based on their experience, '[b]oth adversaries engage in extensive political and economic espionage for the

---

7     The paragraphs cited here refer to paragraphs 12 and 13 on pages 4–5 of the SW5 affidavit. *See* n.6 *supra*.

benefit of the government of the Russian Federation" and its intelligence services); SW15, Aff. ¶ 18 (same); SW16, Aff. ¶ 18 (same).[8]

Stone contends that these statements are false because Crowdstrike failed to properly preserve evidence of the DNC intrusion, and the intelligence community merely relied on Crowdstrike's "assumptions" that Russia was behind the hack and the source for WikiLeak's release of the DNC data in making the Assessment. Def.'s Mot. at 3. But the declarations he provides do not indicate the *affidavits* contained deliberate falsehoods; at most, the declarations reflect that two potential experts have expressed an opinion – based on the limited public information available to them – that some of the evidence they reviewed is consistent with a finding that the DNC hack came from the inside. See Binney Decl. ¶ 14; Clay Decl. ¶¶ 5–7.[9]

But it is not enough to show that an affiant may have erred in his own account of the facts, and it is certainly not enough to show that a report he summarized could be flawed in someone else's opinion. Neither the defendant nor the declarants assert that any of the affiants knowingly mischaracterized either the Assessment or the Crowdstrike finding. And they certainly do not supply any non-conclusory reasons to believe that any affiant lied or played fast and loose with the truth. The affiants set the stage for the factual allegations related to Stone by explaining what prompted the HPSCI to launch an investigation, and where Stone fit into the inquiry.

Defendant has not offered any grounds to find that it would be reckless for an FBI agent to recite a finding of the U.S. intelligence community; the Assessment "is a declassified version of a

---

8   Defendant does not identify any false statements in SW17 or SW18, *see* Def.'s Reply at 13, but as with the other affidavits, the affidavits for these two warrants state the conclusions of Crowdstrike or the intelligence community. See SW17, Aff. ¶¶ 16–19; SW18, Aff. ¶¶ 13–19.

9   Binney also opines, without explaining how he reached his opinion, that WikiLeaks did not receive the information from Russia. Binney Decl. ¶ 13.

highly classified assessment that has been provided to the President," Background to Assessment at 1; it was drafted and coordinated among the Central Intelligence Agency, the Federal Bureau of Investigation, and the National Security Agency drawing on intelligence from the three agencies, Assessment at i; and it was released by the Office of the Director of National Intelligence. *See id.* cover page.

With regard to Crowdstrike's finding, even if the Court were to assume that the declarants' observations raise questions about that finding, they provide no indication – much less make a "substantial preliminary showing" – that the affiants' statements about the finding were intentionally false or based on a reckless disregard of the truth.

At most, as defendant states, he challenges what he characterizes as the government's "assumption" about the actors behind the theft and dissemination of the stolen DNC data. Def.'s Reply at 12. He does not challenge the affiants' truthfulness or regard for truth in citing the Assessment or Crowdstrike's finding in their affidavits. Accordingly, this does not rise to the level of "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant[s] in the warrant affidavit[s]." *Franks*, 438 U.S. at 155–56.

### B. The statements defendant challenges are not material of the issue of probable cause.

Even if the statements included in the affidavits were false, they were not necessary to the issuing courts' probable cause determinations. While the warrant applications may have grown out of a larger investigation into Russian interference in the presidential election, they sought information related to the theft and release of data from the DNC computers and other targets in

general, as well as alleged actions by the defendant to impede the HPSCI's investigation into possible foreign interference in the election.[10]

Fourteen of the eighteen warrant applications sought authorization to search for evidence of, among other crimes, the intentional unauthorized access of computers in violation of 18 U.S.C. § 1030. *See* SW1–SW13, SW18. The affidavits for these warrants averred that Guccifer 2.0 – whoever or whatever was behind that moniker – publicly claimed responsibility for the DNC hack, and that Stone communicated with Guccifer 2.0 and WikiLeaks about the stolen DNC data. SW1, Aff. ¶¶ 19, 22, 25; SW2, Aff. ¶¶ 7, 13, 18, 28; SW3, Aff. ¶¶ 7, 13, 16–18, 28; SW4, Aff. ¶¶ 8, 14, 17–20, 29 ; SW5, Aff. ¶¶ 4, 7, 10, 21–25;[11] SW6, Aff. ¶¶ 25, 28, 33, 41–46; SW7, Aff. ¶¶ 20, 23, 36; SW8, Aff. ¶¶ 20, 23, 26, 36; SW9, Aff. ¶¶ 19, 22, 25, 35–40; SW10, Aff. ¶¶ 19, 22, 25, 35–40; SW11, Aff. ¶¶ 25, 31, 41–46; SW12, Aff. ¶¶ 19, 22, 25, 35–40; SW13, Aff. ¶¶ 19, 22, 25, 35–40; SW18, Aff. ¶¶ 20, 23, 26, 36. Thus, even absent any representation that it was believed to be *Russia* that was behind the intrusion, there was probable cause for the issuing courts to

---

10    The Special Counsel was specifically authorized to investigate and prosecute "any matters that arose or may arise directly from" his investigation into "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump." Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters, Order No. 3915-2017, https://www.justice.gov/opa/press-release/file/967231/download.

11    The paragraphs cited here appear on pages 5–7 and 9–10 of the affidavit. *See* n.6 *supra*.

conclude that the requested searches of defendant's premises, records, and electronic accounts would uncover relevant evidence about the unlawful intrusion and related offenses.[12]

The other four warrant applications sought authorization to search for evidence related to Stone's alleged false statements to the Committee, obstruction of its proceedings, and witness tampering. *See* SW14–SW17. The supporting affidavits detail defendant's communications with Trump campaign officials, WikiLeaks, Guccifer 2.0, and others about expected releases of the stolen data from the DNC. They contrast those facts to the statements he made under oath to the HPSCI, and explain why it was probable that relevant evidence would be found at the premises and devices to be searched. *See* SW14, Aff. ¶¶ 5–68; SW15, Aff. ¶¶ 8–78; SW16 ¶¶ 8–67; SW17, Aff. ¶¶ 8–77. These assertions do not depend upon the accuracy of any assessment that Russia was behind the theft of the data. In sum, the paragraphs in the warrant affidavits that defendant asserts are false are not material to the issuing courts' determinations of probable cause.

Because neither prong of the *Franks* standard has been satisfied, the Court may not go behind the face of the warrants. The officers executing the searches relied in good faith on valid warrants, and there is no basis to suppress the evidence they obtained. *See Leon*, 468 U.S. at 922.

---

12   The fourteen affidavits also sought to search for evidence of violations of other crimes, including 18 U.S.C. § 2 (aiding and abetting), 18 U.S.C. § 3 (accessory after the fact), 18 U.S.C. § 4 (misprision of a felony), 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1001 (false statements); 18 U.S.C. § 1505 (obstruction of justice); 18 U.S.C. § 1512 (tampering with a witness), 18 U.S.C. § 1513 (retaliating against a witness), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1349 (attempt and conspiracy to commit wire fraud), and 52 U.S.C. § 30121 (foreign contributions ban). Defendant does not argue at any point that the challenged statements in the affidavits undermine the probable cause determinations underlying the searches for evidence of these crimes.

## CONCLUSION

For the reasons stated above, defendant's Motion to Compel Unredacted Versions of the Crowdstrike Reports [Dkt. # 103] is DENIED as moot, and defendant's Motion to Suppress [Dkt. # 100] is DENIED.

*Amy B Jackson*

AMY BERMAN JACKSON
United States District Judge

DATE: September 19, 2019