**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Case 1:19-cr-00018-ABJ**

UNITED STATES OF AMERICA,

    v.

ROGER J. STONE, JR.,

    Defendant.

_____/

**DEFENDANT ROGER J. STONE'S MOTION FOR JUDGMENT OF ACQUITTAL**

Defendant Roger J. Stone, Jr. files this motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(a).

> Under Rule 29 of the Federal Rules of Criminal Procedure, the Court must enter judgment of acquittal on any offense charged for which the evidence is insufficient to sustain a conviction. [citation omitted]. In ruling on a motion for judgment of acquittal, the Court must " 'consider[ ] the evidence in the light most favorable to the government and determin[e] whether, so read, it is sufficient to permit a rational trier of fact to find all of the essential elements of the crime beyond a reasonable doubt.' " [citation omitted]. The Court must "accord[ ] the government the benefit of all legitimate inferences," [citation omitted] and accept the jury's verdict of guilt if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [citation omitted] (emphasis in original) (quotations omitted). Put another way, the Court may grant a motion for judgment of acquittal only where "a reasonable juror must necessarily have had a reasonable doubt as to the defendant['s] guilt." [citation omitted] (emphasis in original).

*United States v. Williams,* 825 F. Supp. 2d 128, 132 (D.D.C. 2011). *United States v. Foster,* 783 F.2d 1087, 1088 (D.C. Cir. 1986) (citations omitted).

## INTRODUCTION

In order for Roger Stone to be convicted of a false statement, the statement must be proven false. It does not matter if a defendant believes he is lying. Right or wrong, he gets the benefit of the truthful answer or a poorly worded question. The government's case is built on answers to questions that were not false, but rather answers that were true. The case against Mr. Stone revolves around the assumption that Roger Stone had *two* intermediaries and lied to Congress about both of them. The government in its opening statement stated: "But you will hear that Mr. Stone actually had two intermediaries during that time period to WikiLeaks. And that person he was talking about in August, when Stone kept referring to his 'back channel' that was providing him with information that was not Randy Credico. That was another man named Jerome Corsi." (Gov. opening, T. 264, Nov. 6, 2019). "He [Stone] lied and said that he had only one intermediary, and that intermediary was Randy Credico." (Gov. opening, T. 297, Nov. 6, 2019).

But, the government did not prove that either Jerome Corsi or Randy Credico were intermediaries between Julian Assange or WikiLeaks, and Roger Stone. Regardless of Roger Stone's belief about whether either were intermediaries, the question of the sufficiency of proof boils down to whether either was an "intermediary" or "back channel" to WikiLeaks or Julian Assange for Roger Stone. If the answer is: the government did not prove that either was an intermediary, then Stone's answers about an "intermediary," "back channel," or "mutual friend" being an intermediary or backchannel cannot be false.

**I. THE UNPROVEN ASSUMPTION ROGER STONE HAD TWO INTERMEDIARIES, BACK-CHANNEL, OR GO-BETWEEN PERVADES THE INDICTMENT**

    **A.  RANDY CREDICO**

If a person is not communicating with both parties, then that person is not an intermediary or backchannel. Counts 2-6 (false statements) and Count 1 (clause about false statements), do not

2

stand alone. They must be read along with the allegations of the Indictment, paragraphs 1-39. Those paragraphs provide the context of the basis of Counts 1-6.

Stone said that his communication with WikiLeaks had occurred through a person Stone described as a "mutual friend," "go-between," and "intermediary," after Stone admitted he did not have personal direct contact with Assange or WikiLeaks. *See* Indictment, ¶ 6. The government was required to prove that Stone had not just one intermediary but two. Part of the government's theory on obstruction of Congress is that Stone made multiple false statements to HPSCI about his interactions with WikiLeaks. ¶ 8(a). But if there were no interactions, then there can be no obstruction by false statements since he could not lie about interactions in which he did not participate and which the so-called intermediary did not do anything to complete the communications.

Randy Credico is Person 2 in the Indictment. ¶ 10. He is the person Stone identified as an "intermediary," "go-between," with Julian Assange, the founder of WikiLeaks. ¶ 10. The Indictment describes Credico as the "mutual friend" of both Assange and Stone. ¶ 14(d). Stone stated he did not have any influence with Julian Assange but implied that he had been a "recipient of pretty good information." ¶¶ 14(e), 26.  This was an assumption on Stone's part, but not an allegation the government has proven to be true, and in fact, the government has not proven that whatever information Roger Stone had was not already widely available in the public domain. The testimony at trial was that Credico was not an intermediary for WikiLeaks and Stone. *See* Credico, T. 732.

    **B.**    **<u>JEROME CORSIS</u>**

Jerome Corsi was a political commentator who worked with an online media publication during the 2016 U.S. presidential campaign. ¶ 9.  The government did not present him as a witness.

Corsi communicated through email with Stone throughout the campaign, including about the release of stolen documents by WikiLeaks. ¶ 9. The government alleged Stone corresponded with associates *about contacting WikiLeaks* in order to obtain additional emails damaging to the Clinton Campaign. ¶ 12. There were emails that memorialized these requests. ¶ 12(a). A request to Corsi to call Stone. ¶ 12(b). Correspondence about whether contacting or meeting Assange is possible, (¶ 12(c)), but it never happened. Neither Corsi nor Corsi's contact, Theodore Malloch, ever tried (or more importantly successfully) contacted Julian Assange or WikiLeaks.

Neither Theodore Malloch nor Jerome Corsi testified at trial. The government produced no evidence that either successfully communicated with Julian Assange or WikiLeaks. In short, the government did not prove Corsi (Person 1) was an intermediary to WikiLeaks and Stone.

## C.     PUBLIC PRONOUNCEMENTS DO NOT CREATE AN INTERMEDIARY

The government contends Stone made public pronouncements based upon information Stone thought he received from Corsi and Credico. ¶ 14(a)-(e). But Corsi never communicated with Assange and Credico never communicated with WikiLeaks or Assange about any request from Stone, and certainly never delivered any message from WikiLeaks to Stone. In the light most favorable to the government, the whole ordeal is an echo chamber of conjecture and speculation. There is no evidence, and no witness has stated, that even one intermediary existed.

Next the government alleges Stone exchanged written communications in various formats with Credico about WikiLeaks and what Assange planned to do. ¶ 15(a)-(e). These are all a miscommunication between Credico and Stone based on flawed assumptions by Stone and Credico. Credico thought Stone had another intermediary and Stone thought Credico was actually communicating with Assange about future releases of data on WikiLeaks. The miscommunication becomes apparent when promises from Credico turn out only to be a product of Credico's

4

imagination and deception. *See also* ¶15(e)-(h).

The government alleges that Stone made statements about WikiLeaks' "future releases," which were similar to those Credico made. ¶ 16(a)(d). They were statements similar to each other but not releases WikiLeaks actually disseminated, and not information that Credico received from Assange or WikiLeaks. After a certain release by WikiLeaks, someone associated with the Trump Campaign wrote "well done," under the assumption Stone had something to do with predicting the release. ¶ 17. But Stone is not Nostradamus and he did not have an intermediary feeding him information. Some in the Campaign may have thought he had an intermediary or had a direct line to WikiLeaks, and on their own, gave him credit for something with which Stone had nothing to do.

Regardless of the government's language of "refers to as" when characterizing how Stone viewed Credico, in the actual counts in the Indictment the government committed to a *two intermediary theory*. Similarly, at the time Stone made his August 2016 statements, Stone had directed Person 1 (Corsi) —not Person 2 (Credico)—to contact the head of Organization 1 (WikiLeaks). ¶ 28. The government may consider *directing* sufficient to charge Roger Stone with crimes, but actual proof of two-way communication is required to prove that two intermediaries existed for there to be a falsehood. There is no such crime as attempted false statements.

It is the government's burden to prove that a statement made is false. In truth and in fact, Stone directed both Person 1 and Person 2 to pass on requests to the head of Organization 1 for documents that Stone believed would be damaging to the Clinton Campaign. ¶ 30. That was not a crime. Stone is not charged with misleading Congress into believing there was an intermediary when there was not. The government's theory is that there were two intermediaries and Stone lied about communicating with them and producing documents relating to them.

By extension, whether Stone continued to communicate with members of the Trump Campaign about WikiLeaks and intended future releases is not a crime. And if no intermediary existed, it is consequently not a lie because the charges assert Stone had an intermediary. Thus, the communication with the Campaign is based upon speculation or deductions based upon publicly available information. *See* ¶ 6; Bannon, T. 869 (Stone did not say that he had nonpublic access to WikiLeaks documents and did not reveal a source).

## II.   THE LAW ON THE MEANING OF INTERMEDIARY

> The definition of the word "intermediary" is the plain meaning of the word. There is no special legal meaning. An "intermediary" is defined as a "mediator or go-between; a third-party negotiator. Black's Law Dictionary (9th ed. 2009*)*."

*Fremont Reorganizing Corp. v. Fed. Ins. Co.,* 2013 WL 12124105, at *10 (C.D. Cal. Apr. 3, 2013).

> "Intermediary" is generally defined as "a mediator or go-between; a third-party negotiator." Black's Law Dictionary, s.v. "intermediary" (10th ed. 2014); see also Merriam–Webster Online, s.v. "intermediary" (offering similar definitions), at https://www.merriam-webster.com/dictionary/intermediary (last accessed July 3, 2017)."

 *In re United W. Bancorp, Inc.*, 574 B.R. 876, 891 (D. Colo. 2017), aff'd, 893 F.3d 716 (10th Cir. 2018), (subsequent history omitted).

> Intermediary is defined as "[a]n arbitrator or mediator. A broker; one who is employed to negotiate a matter between two parties, and who for that purpose may be an agent of both. Black's Law Dictionary 815 (6th ed. 1990)."

*In re Adoption of a Minor Child*, 593 So. 2d 185, 188 n. 6 (Fla. 1991).

> Generally, an intermediary acts as a middleman, "a broker, one who is employed to negotiate a matter between two parties, and who for that purpose may be [an] agent of both. Black's Law Dictionary 731 (5th ed.1979)."

*First Ins. Funding Corp. v. Fed. Ins. Co.,* 284 F.3d 799, 805 (7th Cir. 2002).

Regardless of the context the term, "intermediary" has a plain and accepted meaning. It requires a communication connection between two parties. Again, "An intermediary is defined as a mediator or go-between; a third-party negotiator." David Isaak, *FCPA Compliance - Navigating The Minefield Of Intermediaries*, 17-WTR Currents: Int'l Trade L.J. 22 n. 2 (Winter 2008) (citing BLACK'S LAW DICTIONARY 833 (8th ed. 2004)); Joan MacLeod Heminway, 13 U.C. Davis Bus. L.J. 177, 179-80 & n. 9-10, *The New Intermediary On The Block: Funding Portals Under The Crowdfund Act,* (Spring 2013).

For example, mere introduction to others does not make one an intermediary. *United States v. Desimone,* 119 F.3d 217, 224 (2d Cir. 1997) (defendant is not a party to a conspiracy simply because he introduced a person willing to buy drugs to another willing to sell them) (citations omitted). Defendants can assert a "derivative entrapment" defense only if the government knows that a private citizen is communicating the persuasion, seduction, or cajoling on behalf of the government. *United States v. Washington,* 106 F.3d 983, 993 (D.C. Cir. 1997). In recognizing that defense in this Circuit, "[T]he entrapment defense can be raised by a defendant who was induced by an unknowing *intermediary* at the *instruction or direction* of a government official or third party acting on behalf of the government (e.g., an informant). The defense should not apply if, in response to pressure put on him by the government, the unknowing intermediary on his own induces the defendant to engage in criminal activity." *Id.* at 993–94 (emphasis added).

Inherent in that defense is a recognition that "intermediary" means an actual conduit for communication between the parties. *See id; United States v. Gaviria,* 116 F.3d 1498, 1525 (D.C. Cir. 1997) (same). A statement that one has a mutual friend is insufficient to be considered an intermediary. *See United States v. McGill*, 815 F.3d 846, 929 (D.C. Cir. 2016) (intermediary who frequently brokered transactions was sufficient evidence to support a larger conspiracy); *United*

*States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 182 (D.D.C. 2015) (use of aliases and intermediaries to convey information).

The government's theory is there were two intermediaries between Roger Stone and Julian Assange -- Corsi and Credico. In this case, neither Jerome Corsi nor Randy Credico was an actual conduit, a successful deliverer of messages between Roger Stone and Julian Assange or anyone else at WikiLeaks. Neither Corsi nor Credico introduced Assange to Roger Stone. Credico did not pass messages to Assange, even if Stone wished that Credico did, and even if Credico falsely reported to Stone that he had.

## III. THE GOVERNMENT FAILED TO PROVE FALSE STATEMENTS

The assumption that Roger Stone had an intermediary, back-channel, or go-between with WikiLeaks and Roger Stone was and is false. Neither Corsi nor Credico intermediated communication between Assange or WikiLeaks, and Roger Stone. There were no intermediaries.

Falsity is an element of a section 1001 offense. *United States v. Milton*, 8 F.3d 39, 45 (D.C. Cir. 1993) (dispute over the meaning of "claim"). Stone cannot communicate through an intermediary that did not exist, even if he thought he was.

The defense of literal truth applies to section 1001 prosecutions. *Id.* (citing to cases in note 7). The House Committee's questions that assume a fact that is false cannot yield an answer that is false. "Simply put, one cannot lie by telling the truth, despite having the intent to lie but where the consummation of that intent was impeded by either incompetence or ignorance." *In re Geary*, 08-4217-705, 2009 WL 900750, at *9 n. 6 (Bankr. E.D. Mo. Mar. 20, 2009). For example, a defendant's "statement that he had not received money from Encarnacion, though intended to be a lie, was therefore entirely true, and the government cannot prove the second element of the offense. That fact is crucial because, to properly convict Castro of violating § 1001, the

government must be able to show that he made a statement to government agents that was untrue, and the government cannot satisfy that burden by showing that the defendant intended to deceive, if in fact he told the literal truth." *United States v. Castro*, 704 F.3d 125, 139 (3d Cir. 2013). "Accordingly, when a statement is literally true, it is, by definition, not false and cannot be treated as such under a perjury-type statute, no matter what the defendant's subjective state of mind might have been." *Id.* The Court opined that the interpretation of the false statement statute is correct because "Congress knows how to pass laws that penalize statements made to law enforcement officers by a defendant who incorrectly believes the statements to be false. *Id.* (*compare* 18 U.S.C. § 1956(a)(1) ("knowing" laundering of funds "which in fact involves the proceeds" of a crime), *with id.* § 1956(a)(3) (intentional laundering of funds "represented to be" proceeds of a crime). But it did not do so when it enacted § 1001, and we are not free to amend the law." *Id.* at 140. In the case at bar, Stone's reasons and statements about emails, texts, correspondence, or communication between WikiLeaks and Stone, or the Trump Campaign, or intermediaries were not false statements as a matter of law because Stone had no interactions which were a back-channel or intermediary connection to WikiLeaks or Assange. *See id.*

## IV.  THE COUNTS

### COUNT 1 - OBSTRUCTION

Count 1 is partly comprised of allegations from counts two through six. In the indictment the obstruction is described as:

> 8.  In response, STONE took steps to obstruct these investigations. Among other steps to obstruct the investigations, STONE:
>
>     a.  Made multiple false statements to HPSCI about his *interactions* regarding Organization 1, and falsely denied possessing records that contained *evidence of these interactions*; and

9

> 41. . . . to wit: STONE testified falsely and misleadingly at a HPSCI hearing in or around September 2017; STONE failed to turn over and lied about the existence of responsive records to HPSCI's requests about documents; STONE submitted and caused to be submitted a letter to HPSCI falsely and misleadingly describing communications with Person 2; and STONE attempted to have Person 2 testify falsely before HPSCI or prevent him from testifying.

Since Stone did not have any interactions with WikiLeaks which were not disclosed, he could not obstruct HPSCI by making false statements regarding interactions with WikiLeaks. Likewise, he could not obstruct HPSCI by falsely denying possession of records containing evidence of those interactions since there were no interactions with an intermediary with WikiLeaks.

The government abandoned the "failed to turn over" the existence of responsive records portion of the indictment. Falsely and misleadingly "describing communications" (and not the type of communications), cannot be presented to the jury because Stone did not have interactions with Credico (Person 2), as an intermediary with WikiLeaks.

### COUNT 2 - FALSE STATEMENT

> Count 2: STONE testified falsely that he **did not have emails with third parties about the head of Organization 1**, and that he did not have any documents, emails, or text messages that refer to the head of Organization 1.

This count is specifically limited, and must be interpreted by the four pillars of the investigation. There was no proof adduced that any emails with third parties about WikiLeaks was about Russia or its interference in the 2016 presidential election. Even Stone's answer clarifies that he believes he met the "precise criteria of your request." *See* HPSCI transcript at 84-85. Stone invited a more specific request, which he received from counsel for HPSCI and Stone replied the documents requested. *See* Defense Exhibit #158, Oct. 3 email.

### COUNT 3 - FALSE STATEMENT

Count 3. STONE testified falsely that his August 2016 references **to being in contact with the head of Organization 1** were references **to communications** with a **single** "go-between," "mutual friend," and "intermediary," who STONE identified as Person 2.

This count charges that the false statement is Stone had more than one intermediary. The government contends there were two intermediaries and Stone thought at the time he had one. In the government's opening statement it specified: "He [Stone] lied and said that he had only one intermediary, and that intermediary was Randy Credico." (T. 297, Nov. 6, 2019). But in reality he had none. Since the government did not prove there were two intermediaries, the Court cannot allow Count 3 to go to the jury because the government failed to prove there were two intermediaries. Attempts to establish an intermediary do not count. As explained above, an intermediary means there is a successful communication conduit between two parties, not the hope for one.

### COUNT 4 - FALSE STATEMENT

STONE testified falsely that he did not ask the person <u>he referred</u> to as his "go-between," "mutual friend," and "intermediary," **to communicate** anything to the head of Organization 1 and did not ask **the intermediary** to do anything on STONE's behalf.

First, Stone advised HPSCI that he did ask Credico to confirm Assange's "tweet" of the 21st was accurate. *See* HPSCI transcript, at 43-44. Second, the count assumes Stone had an intermediary or go-between. Other than what was previously asked, (would there be a release of information in October), Stone did not successfully ask for any information on behalf of himself and to an "intermediary" or "go between." Lastly, the government cannot avoid the assumption that the Indictment relies upon two intermediaries existing. In Count 4, the government adds the term "refers to," but Stone is referring to Credico, not "referring to" Credico as an "intermediary"

in this moment during questioning. The government cannot redefine or change the question, or its commitment that its theory is Stone had two intermediaries to WikiLeaks.

### COUNT 5 - FALSE STATEMENT

> STONE testified falsely that he and the person he referred to as his "go-between," "mutual friend," and "intermediary" did not communicate via text message or email about Organization 1.

Count 5 suffers from the same infirmity for the reasons stated for Count 4. None of these communications were about Russian interference, the stated purpose of the investigation. It also assumes that Credico was an intermediary. "And did you have any other means of communicating with the intermediary?" *See* HPSCI transcript, at 45. "So you never communicated with your intermediary in writing in any way?" Transcript at 109-110. *If there was no intermediary, there can be no lie about one.*

### COUNT 6 - FALSE STATEMENT

> STONE testified falsely that he had never discussed his conversations with the person he referred to as his "go-between," "mutual friend," and "intermediary" with anyone involved in the Trump Campaign.

Evidence as to Count 6 suffers from the same infirmity as Counts 4 and 5. The count fails because of the government's failure to prove the conversations with the Trump Campaign contained, or specifically related to, information Mr. Stone received from Mr. Credico. There was no evidence presented that any of the information was not already available in the public domain. Furthermore, there was no evidence presented that the conversation were about, or relating to, Russian interference. "And did you discuss *your conversations with the intermediary* with anyone involved in the Trump campaign?"  HPSCI transcript, at 102 (emphasis added).  No, the conversation had nothing to do with Randy Credico. Even if, arguendo, Stone spoke to a Campaign official, Bannon, Trump, or if Stone had non-public information from an intermediary, but did not

12

cite to Credico in those communications, then the answer is not false.  The government must live with the imprecise wording of Count VI.

## **CONCLUSION**

This Court should grant the motion for judgment of acquittal for the reasons stated above.

                Respectfully submitted,
                By: */s/*_____

| | |
|---|---|
| ROBERT C. BUSCHEL | BRUCE S. ROGOW |
| BUSCHEL GIBBONS, P.A. | FL Bar No.: 067999 |
| D.D.C. Bar No. FL0039 | TARA A. CAMPION |
| One Financial Plaza, Suite 1300 | FL Bar: 90944 |
| 100 S.E. Third Avenue | BRUCE S. ROGOW, P.A. |
| Fort Lauderdale, FL 33394 | 100 N.E. Third Avenue, Ste. 1000 |
| Telephone: (954) 530-5301 | Fort Lauderdale, FL  33301 |
| Fax: (954) 320-6932 | Telephone: (954) 767-8909 |
| Buschel@BGlaw-pa.com | brogow@rogowlaw.com |
| | tcampion@rogowlaw.com |
| | *Admitted pro hac vice* |
| | |
| CHANDLER P. ROUTMAN | GRANT J. SMITH |
| D.D.C. Bar No. 1618092 | STRATEGYSMITH, PA |
| 501 East Las Olas Blvd., Suite 331 | D.D.C. Bar No.: FL0036 |
| Fort Lauderdale, FL 33301 | 401 East Las Olas Boulevard |
| Tele: (954) 235-8259 | Suite 130-120 |
| routmanc@gmail.com | Fort Lauderdale, FL 33301 |
| | Telephone: (954) 328-9064 |
| | gsmith@strategysmith.com |

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 12, 2019, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic filing.

*United States Attorney's Office for the*
    *District of Columbia*

Jessie K. Liu
**United States Attorney**
Jonathan Kravis
Michael J. Marando
**Assistant United States Attorneys**
Adam C. Jed
Aaron S.J. Zalinsky
**Special Assistant United States Attorneys**
555 Fourth Street, NW
Washington, DC 20530
Telephone: (202) 252-6886
Fax: (202) 651-3393

                                                   By: */s/ Robert Buschel*
                                                      ROBERT BUSCHEL