**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

ROGER J. STONE, JR.,

Defendant.

Crim. Action No. 19-0018 (ABJ)

*****SEALED*****

**ORDER**

Pending before the Court is defendant Roger J. Stone, Jr.'s Motion for a New Trial [Dkt. # 266] (SEALED) ("Mot."). Defendant asserts that he is entitled to a new trial pursuant to Federal Rule of Criminal Procedure 33 because the Court denied his request to strike Juror [redacted] for cause.[1] Mot. at 1. The government filed a response to the motion, Gov't Resp. to Mot. [Dkt. # 267], no reply brief was filed, and the motion is ripe for decision. For the reasons set forth below, defendant's motion will be denied.

**PROCEDURAL HISTORY**

Given the amount of public attention this case had received, and the possibility that many members of the venire might have already received information or formed opinions about the proceedings before the U.S. House of Representatives Permanent Select Committee on

1 Defendant also argues that he is entitled to a new trial because he was "compelled" to use four of his ten peremptory strikes to remove four individuals for whom motions to strike were denied. Mot. at 5–8. However, he acknowledges that this argument is foreclosed by binding legal precedent. Mot. at 5–6 ("Mr. Stone recognizes that the Supreme Court held a defendant's constitutional right to an impartial jury, 'pursuant to Rule 24(b) is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause.'"), quoting *United States v. Martinez-Salazar,* 528 U.S. 304, 317 (2000). Because there is no legal authority to grant defendant's motion on this basis, the Court need not address this issue further.

Intelligence, the Office of Special Counsel, the defendant, or the charges in this case, the Court decided, with the concurrence of the parties, to utilize a written jury questionnaire to facilitate the jury selection process. *See* Scheduling Order [Dkt. # 65] at 1–2. Counsel for both sides worked together to submit a joint proposal, *see* Notice of Filing of Proposed Written Jury Questionnaire [Dkt. # 184] (advising that there was only one question about which the parties disagreed), and the Court based the final questionnaire on the parties' submission. *See* Juror Questionnaire [Dkt. # 247].

On September 12, 2019, 120 potential jurors, including Juror [redacted], were summoned to the courthouse to complete the questionnaire. *See* Draft Tr. of Proceedings, Sept. 12, 2019 ("Sept. 12 Tr.") at 7–8; Min. Entry for Proceedings, Sept. 12, 2019. They were told that the questionnaire would aid in selecting a jury for Mr. Stone's trial, which was set for November, and they were asked to stand, raise their right hands, and swear or affirm that the answers they were about to give would be true and accurate to the best of their knowledge. Sept. 12 Tr. at 5–6, 11.

The written instructions appended to the questionnaire included the following admonition:

> From this day forward, until you have been formally excused from service, you are instructed not to communicate in person, in writing, or electronically about this case or the questionnaire with anyone, including your family and fellow jurors. Also, you should not go online or look at any source to learn more about the charges, the defendant, or any participant in the case.

Juror Questionnaire at 1; *see also* Sept. 12 Tr. at 9.[2] The potential jurors completed the questionnaires in the courtroom.

The questionnaire covered the jurors' personal background, experience with the law and with law enforcement, and availability for the upcoming trial. *See* Juror Questionnaire. More important, it contained a number of questions specifically designed to probe potential bias. *See id.* After the proceedings on September 12, the parties and the Court were provided with copies of the completed questionnaires, and the parties were given the opportunity to file a motion to strike any of the potential jurors for cause based upon their written answers.

In ███ questionnaire, Juror ███ revealed that both ███ and ███ spouse had law degrees, and ███ noted that ███ had been employed for "███ years" as ███ attorney/███ in the ███ Office of the Internal Revenue Service. Juror ███ Questionnaire ("JQ") (Attachment A) 4–6, 13–14.[3] Neither the juror nor ███ spouse had any training or employment in security/intelligence, international relations, or journalism/media communications. JQ 17 ███ had not served on a grand jury or on a jury in a trial within the past ten years. JQ 19.

---

2 The Court further instructed the potential jurors: "During the trial, your contact with other people will not be restricted, but beginning now and continuing until you have been excused from further service by the Court, you will not be permitted to talk about the case with anyone, or to read, watch, or listen to any press coverage the case might receive . . . . [F]rom this day forward, you may not talk or communicate about this case or your potential jury service with anyone else, including your own family . . . . The need to have a fair trial also means that from this point onward, you must not read anything whatsoever about this case. Do not go home and search the internet or consult newspapers or magazines any other news or social media source to find out what it's all about or who these people are. And, you should try to avoid receiving any information about the case from the news media – if it comes to your attention inadvertently, please click on something else and please ignore the headline . . . ." Sept. 12 Tr. at 7–10.

3 The numbers cited to the questionnaire response refer to the number of each question, not page numbers.

With respect to questions related to news and social media, ███ identified newspapers and TV/cable as ███ "primary sources for local and national news and information," identifying the *Wall Street Journal* in particular. JQ 21 ███ responded that ███ does not listen to political commentators on television or talk radio, JQ 22; nor had ███ "written or posted anything for public consumption about the defendant, the House Permanent Select Committee on Intelligence investigation into Russian interference in the 2016 presidential election, or the investigation conducted by Special Counsel Robert Mueller." JQ 23.

When asked, "how closely have you followed media reports relating to investigations into Russian interference in the 2016 election," the juror checked the "somewhat closely" response. JQ 25.

Question 26 asked:

> To assure that the decision of jury in this case is not based upon influences outside the courtroom, the Court has instructed you that you must avoid reading about the case in the newspapers or listening to any radio or television reports concerning this case including news coverage or communications on the internet or social media. And, you may not discuss or communicate about this case with your family, friends or co-workers or anyone else including on the internet or social media. Also, until you retire to deliberate, you may not communicate about this case with your fellow jurors. If you are selected as a juror and this instruction continues until the end of the trial, you be able to follow these instructions?

Juror ███ answered yes. JQ 26.

There were a number of questions related to the jurors' knowledge of trial participants or the case. When asked, "[h]ave you read or heard anything about the defendant Roger Stone, about any statements made by or attributed to Mr. Stone, or about this case," Juror ███ responded: "I heard on the news about his arrest early in the morning in his residence this year." JQ 27. Neither the juror nor anyone close to ███ had "any connections" to the Court, the attorneys, or the

defendant; nor did [redacted] personally know any of the thirty-one individuals included in a list of "people who may be witnesses in the case or may be discussed during the trial." JQ 28–29. The list included, among others, Julian Assange, Steve Bannon, Hillary Clinton, Paul Manafort, Rebekah Mercer, John Podesta, and Donald Trump. JQ 29. When asked, "[p]lease indicate if you already have an opinion about any of these individuals, or if the fact that they may be involved in the case would make it difficult for you to be fair and impartial to both sides," Juror [redacted] wrote, "[i]t would not be difficult for me to be fair and impartial." JQ 30. The juror did not work or volunteer for any 2016 presidential campaign, JQ 32, and neither [redacted] nor a close friend or family member participated in, or had any connection to a group that participated in, "any investigation or inquiry into the circumstances surrounding Russian interference in the 2016 presidential election." JQ 33.

The juror had not been a victim of, accused of, or a witness to a crime, or a witness in any court proceeding. JQ 36–41. [redacted] did report that [redacted] had been the subject of a law enforcement investigation or administrative proceeding: the joint tax returns [redacted] filed with [redacted] for [redacted] were audited by the IRS. JQ 42–43. When asked if [redacted] had ever been involved in any legal proceeding in any capacity, [redacted] replied that [redacted] "was a trial attorney in 1-2 cases in the Tax Court . . . more than 10 years ago." JQ 45–46.

Juror [redacted] answered "no" to all of the following questions:

> Do you have any opinions or beliefs concerning law enforcement organizations in general, including the Federal Bureau of Investigation (FBI) or the Department of Justice, or the Special Counsel's Office within the Department of Justice, that would affect your ability to evaluate the evidence fairly and impartially?
>
> In this case, the United States is represented by the U.S. Attorney's Office for the District of Columbia. The investigation that led to the charges in this case was conducted by Special Counsel Robert S. Mueller, III. The U.S. Attorney's Office is, and the Special Counsel's Office was, a part of the U.S. Department of Justice. Is there anything about the fact that the Special

> Counsel's Office, the U.S. Attorney's Office, or the Justice Department is or was involved in this case that affect your ability to be fair and impartial in this case and base your decision solely on the evidence presented and the Court's instructions on the law?
>
> The judge will instruct you that the charges in this case include: obstruction of an official proceeding, making false statements, and witness tampering. Is there anything about the nature of the charges alone that would affect your ability to be fair?
>
> Jurors are the sole judges of the facts. However, the jury must follow the principles of law as instructed by the judge. The jury may not follow some rules of law and ignore others. Even if the jury disagrees or dislikes the rules of law or does not understand the reasons for some of the rules, it is their duty to follow them. Do you have any personal beliefs that would make it difficult to follow the Court's legal instructions, whatever they may be?
>
> Do you have any personal reason that makes you want to serve as a juror in this case, or do you have any personal interest in the outcome of the case?
>
> Is there anything about this case, the issues, or the people involved in this case, or any other reason that has not be been asked about in any other question, that leads you to believe that you could not be completely fair to both the defendant, Roger Stone, and the U.S. Government in this case?

JQ 15, 16, 48, 49, 51, 56.

Significantly, Juror [redacted] wrote in [redacted] sworn questionnaire tha [redacted] had not "formed or expressed any opinion about Mr. Stone, the charges in this case, or about his guilt or innocence in this case." JQ 34.

In accordance with the Scheduling Order, on September 17, 2019, the parties each submitted a list of the jurors they were moving to strike for cause based on the responses to the questionnaires. Gov't "For Cause" Juror Strikes [Dkt. # 208] (SEALED); Def.'s "For Cause" Juror Strikes [Dkt. # 209] (SEALED) ("Def.'s Strike List"). Defendant identified fifty-four jurors, but he did not move to strike Juror [redacted]. *See* Def.'s Strike List.

On September 18, 2019, upon consideration of the parties' motions and its own review of the responses, the Court struck thirty-eight of the potential jurors for cause, all thirty-eight of whom were identified by the defendant. *Compare* Order [Dkt. # 211] (SEALED) ("Sept. 18 Order") *with* Def.'s Strike List.[4] Since neither party had asked that Juror [REDACTED] be removed, and the Court saw nothing in the juror questionnaire that warranted [REDACTED] removal, [REDACTED] was not included in the order. *See* Sept. 18 Order.

On November 4, 2019, the defense filed a memorandum asking the Court to reconsider its rulings with respect to nine of the jurors who were permitted to remain in the jury pool, and it renewed its request that those jurors be removed for cause. Def.'s Mem. on Jury Selection [Dkt. # 249] (SEALED). The Court granted the motion with respect to two more jurors. *See* Tr. of Jury Trial, Nov. 5, 2019 ("Nov. 5 Tr.") at 23–24.[5] The defendant did not mention Juror [REDACTED] or move to strike [REDACTED] this time either. *See* Def.'s Mem. on Jury Selection; Nov. 5 Tr.

On November 5, 2019, the remaining jurors returned to the courthouse for voir dire, and the Court and the lawyers questioned them individually, including Juror [REDACTED], outside of the presence of the rest of the panel. *See generally* Nov. 5 Tr. The Court began the questioning for each juror, and it made sure to inquire whether the juror had been exposed to any publicity during the period of time between the completion of the questionnaire and the trial date.

With respect to Juror [REDACTED], the Court first inquired about [REDACTED] employment and its potential effect on [REDACTED] role as a juror:

> THE COURT: I note that you work for the federal government in the IRS; is that correct?

---

4 Of the sixteen jurors the Court did not strike, none ended up serving as either jurors or alternates.

5 None of the other jurors identified in defendant's memorandum served as jurors for the trial.

PROSPECTIVE JUROR: That's correct.

THE COURT: And you've done that through multiple administrations, it seems?

THE PROSPECTIVE JUROR: Yes. I – I basically have worked for the IRS for more than [REDACTED].

THE COURT: And does the fact that you work for the government lead you to favor the government, as opposed to the defendant in this case?

THE PROSPECTIVE JUROR: No. I think that as a, basically, federal employee, we are trained to be pretty objective and fair.

Nov. 5 Tr. at 42. The Court next inquired whether [REDACTED] had "heard or read anything about this case or about this defendant, either before [REDACTED] filled out the questionnaire or after." *Id.* The juror answered:

THE PROSPECTIVE JUROR: Not much. Just about the arrest that was in the papers. Today, in the paper, there was – in *Wall Street Journal* there was a small article. So, [REDACTED] showed me.

THE COURT: Okay. So you understand that if somebody tries to show you an article and you're on this jury, you need to say, I'm not reading any more articles from this day forward?

THE PROSPECTIVE JUROR: Yes.

THE COURT: Now, does the fact that he was arrested or that you heard about his arrest on television, does that give you an opinion as to whether or not he might be guilty of the charges in this case?

THE PROSPECTIVE JUROR: No.

THE COURT: So you understand that he's presumed to be innocent, even though he's been arrested and even though he's been charged?

THE PROSPECTIVE JUROR: Yes.

Nov. 5 Tr. at 42–43.

The government then had the opportunity to question Juror [REDACTED], and it asked two questions:

> [GOVERNMENT COUNSEL]: You mentioned in your questionnaire, and a moment ago in court, that you had read or heard something in the news about the defendant's arrest. Do you remember what you read or heard about the arrest or where you read or heard it?
>
> THE PROSPECTIVE JUROR: I don't remember where or whether it was in the papers or the news. But, that was several months ago.
>
> [GOVERNMENT COUNSEL]: And do you remember anything about what you may have read or heard?
>
> THE PROSPECTIVE JUROR: That, basically, there was, like, an early raid and arrest.
>
> [GOVERNMENT COUNSEL]: Thank you very much.

Nov. 5 Tr. at 43–44.

Counsel for the defendant was then afforded an opportunity to ask the juror questions. The Court did not interrupt or cut off the questioning, and the entire colloquoy is set forth below:

> [DEFENSE COUNSEL]: Good morning. You're a lawyer at the IRS?
>
> THE PROSPECTIVE JUROR: Yes.
>
> [DEFENSE COUNSEL]: Do you supervise any other lawyers?
>
> THE PROSPECTIVE JUROR: I review their work.
>
> [DEFENSE COUNSEL]: And do these lawyers that you supervise, do they participate in criminal prosecutions?
>
> THE PROSPECTIVE JUROR: No.
>
> [DEFENSE COUNSEL]: Can you just tell us what your job function is at the IRS?
>
> THE PROSPECTIVE JUROR: It's civil tax administration work. I am in [REDACTED] Office. So, it's large and international business companies, mainly.
>
> [DEFENSE COUNSEL]: Do you ever have the job of referring any cases to the Department of Justice?
>
> THE PROSPECTIVE JUROR: No.
>
> [DEFENSE COUNSEL]: Any of the attorneys that you oversee?

THE PROSPECTIVE JUROR: No. It's not the process, how it's done.

[DEFENSE COUNSEL]: Very good. Thank you, Judge.

Nov. 5 Tr. at 44. The defendant then moved to strike Juror ███ for cause "for the grounds stated – as referenced in the memo,"[6] and because ██ did not adhere to the Court's September 12 instruction not to review information about the case. Nov. 5 Tr. at 45.

The Court denied the motion:

> [I]t sounds like ██████ didn't follow [the Court's instruction]. I don't believe that the information we've received from ██ this morning or anything in ██ form, ██ questionnaire, supports striking for cause. So I'm going to deny the motion.

Nov. 5 Tr. at 45. Juror ███ was seated on the jury, which found ultimately defendant guilty on all counts.

**ANALYSIS**

Defendant seeks a new trial pursuant to Federal Rule of Criminal Procedure 33. Mot. at 1. Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Trial courts enjoy broad discretion in ruling on a motion for a new trial." *United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014). While the rules do "not define 'interests of justice,'" the D.C. Circuit has instructed that "granting a new trial motion is warranted only in those limited circumstances where

6 It is unclear what counsel meant by "for the grounds stated . . . in the memo," since the defense did not move to strike Juror ███ for any grounds in its memorandum. The pleading did assert that a juror who "worked for a governmental prosecutorial or law enforcement agency" would have the sort of implied bias that could warrant the exercise of discretion to excuse the juror for cause, even if there was no mandatory presumption of bias, Def.'s Mem. on Jury Selection at 2–3, but it did not include Juror ███ in that category. *Id.* at 3 ("Based upon written answers to the questionnaire, there is more than one prospective juror who works or has worked for the government in a prosecutorial law enforcement capacity either through the Department of Justice or the Securities and Exchange Commission. The Court should excuse those jurors for cause.").

'a serious miscarriage of justice may have occurred.'" *Id.*, quoting *United States v. Rogers*, 918 F.2d 207, 213 (D.C. Cir. 1990).

Defendant argues that a new trial is warranted because the Court failed grant the motion to strike Juror [redacted] for cause that was made after the individual voir dire. Mot. at 1. He maintains that the juror should have been removed for bias because [redacted] is employed in a division of the Internal Revenue Service "that works hand-in-hand with the Department of Justice prosecuting criminal tax matters," and because [redacted] "violated the Court's order to avoid media coverage of the case." *Id.*

The defense acknowledges that bias is implied only in "extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances," noting that examples of such "extreme situations" include when a "juror is an actual employee of the prosecuting agency." Mot. at 3 (underlining in Mot.), quoting *United States v. Sampson*, 820 F. Supp. 2d 151, 164 (D. Mass. 2011). It argues that this implied bias extends to Juror [redacted] because [redacted] job "is too connected to the prosecutorial and law enforcement function." Mot. at 4.

There was nothing in the juror's questionnaire or [redacted] in-court testimony to support defendant's assertion that [redacted] works on criminal matters or interacts with the Department of Justice *at all*, much less that [redacted] works "hand-in-hand" with Justice Department lawyers prosecuting criminal tax cases. Defendant predicates his motion on an excerpt from a description of the Office



of [redacted] found on the agency's website,[7] but the webpage details the broad scope of the work of the office as a whole:

> The [redacted] of the IRS supervises approximately 1,400 attorneys who are assigned among the IRS National Office and the major operational divisions of the agency. The principal client of the Office [redacted] is the Commissioner of the Internal Revenue Service.
>
> The [redacted] Office plays a central role in the administration of the Federal tax laws. Its attorneys provide guidance on the correct legal interpretation of the tax laws, represent the IRS in litigation, and provide all other legal support the IRS needs to carry out its mission of serving American taxpayers. For example, the [redacted] Office drafts regulations, rulings, and other published legal guidance; handles tens of thousands of cases per year in the U.S. Tax Court and bankruptcy courts and works closely with the Department of Justice on other tax litigation in other Federal courts; and provides specific legal advice and determinations to taxpayers and to various IRS offices both before and after taxes are filed.

U.S. Dept. of Treasury, About, [redacted], https://www.treasury.gov/about/organizational-structure/offices[redacted]

The fact that the juror was just one of these approximately 1,400 lawyers does not begin to establish the sort of inherent bias that should have prompted the Court to strike [redacted] in its discretion.[8] *See Smith v. Phillips*, 455 U.S. 209, 215 (1982) ("A holding of implied bias to disqualify jurors because of their relationship with the Government is no longer permissible."), quoting *Dennis v. United States*, 339 U.S. 162, 167 (1950); *see also Baker v. United States*, 401 F.2d 958, 968–69 (D.C. Cir. 1968) (rejecting argument that an "all Government employee jury" on its own is prejudicial). Rather, concerns about implied bias should be addressed by giving

---

7 *See* Mot. at 4 ("The [redacted] at the Internal Revenue Service 'works closely with the Department of Justice on other tax litigation in other federal courts . . . .'"), quoting Ex. 1, https://www.treasury.gov/about/organizational-structure/offices/[redacted]

8 Indeed, this very thorough description does not even include the word "criminal" or "prosecution."

the parties "the opportunity to prove actual bias," *Smith*, 455 U.S. at 215; *United States v. Littlejohn*, 489 F.3d 1335, 1342 (D.C. Cir. 2007), and counsel had ample opportunity here.

The Court notes that the defense did not include Juror [redacted] in its September 17 list of jurors to strike for cause, or in its November 4 renewed request for strikes, even though the juror had revealed [redacted] precise place of employment in [redacted] questionnaire. *See* Def.'s Strike List; Def.'s Mem. on Jury Selection; JQ. The defense could have easily conducted the same internet research included in the instant motion and could have raised concerns at that time. But the defendant was not prejudiced by his failure to do so; the defense was provided with a full opportunity during the individual voir dire "to expose bias or prejudice on the part of the veniremen." *Littlejohn*, 489 F.3d at 1342. And, it was counsel, and not the Court, who brought his questioning of Juror [redacted] to an end.

The record reflects that neither Juror [redacted] nor any attorney [redacted] supervises works with the Department of Justice on criminal prosecutions or law enforcement matters. Nov. 5 Tr. at 44. Their work involves civil tax administration, mainly for large and international businesses, and they do not even refer matters to the Department. *Id.* Given this uncontested sworn testimony, this situation is not analogous to cases in which a juror is an actual employee of a prosecuting agency or has a job that can be likened to a prosecutor's.

Moreover, Juror [redacted] was specifically asked whether [redacted] work for the government would affect [redacted] ability to be impartial in deciding the case. Nov. 5 Tr. at 42. [redacted] stated that it would not. *Id.* Such statements by jurors are "*not* inherently suspect, for a juror is well qualified to say whether he has an unbiased mind in a certain matter." *United States v. Butler*, 822 F.2d 1191, 1196–97 (D.C. Cir. 1987) (emphasis in original) (internal quotation marks omitted); *Smith,* 455 U.S. at 217 n.7 (noting that determinations about juror impartiality frequently turn on the

testimony of the juror in question). The Court had the opportunity to observe the juror's demeanor during voir dire, and it found then and finds now that defendant has failed to show actual or inherent bias.

Defendant's second contention, that Juror [redacted] did not follow the Court's instructions not to read about the case, is also not sufficient to warrant a new trial. The juror's testimony during voir dire that [redacted] "showed" [redacted] a small article did not establish that [redacted] *read* it: [redacted] said only that [redacted] pointed it out to [redacted] on the morning [redacted] was headed to court. *See* Nov. 5 Tr. at 42. The defense did not follow up, so there is no additional evidence on this point. But even if one were to draw an inference that the juror looked at the content of what [redacted] presented, those circumstances did not require a strike for cause. There was no evidence that the juror took any steps on [redacted] own initiative to defy the Court's instructions, and [redacted] limited exposure to a single piece in the newspaper was of minimal significance. When the Court followed up about the matter, the juror credibly stated that what [redacted] had heard about the case from the media did not give [redacted] an opinion about Mr. Stone's guilt or innocence or affect [redacted] ability to remain fair and impartial. Nov. 5 Tr. at 42–43. [redacted] also stated that [redacted] could comply with the instruction not to read anything about the case if [redacted] were to be seated on the jury. *Id.*

The Supreme Court's opinion in *Murphy v. Florida*, 421 U.S. 794 (1975), makes it clear that "[q]ualified jurors need not . . . be totally ignorant of the facts and issues involved. . . . It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." 421 U.S. at 799–801 (ruling that the petitioner had failed to show that the jury-selection process permitted an inference of actual prejudice even though some jurors had a vague recollection of the crime with which petitioner was charged and each had some knowledge of petitioner's past crimes) (internal quotation marks omitted); *see also Skilling v.*

*United States*, 561 U.S. 358, 385–86 (2010) (the judge's appraisal of the risk of prejudice "is ordinarily influenced by a host of factors impossible to capture fully in the record – among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty"). Defendant finds those cases to be inapposite since they did not involve a failure to comply with a pre-trial directive issued by the Court, but the general principles still apply, and the Court is persuaded that the transgression in this case – if one indeed occurred – was unintentional, and that it had little, if any, effect.

Given the content of the questionnaire in its entirety, and the juror's testimony and demeanor during voir dire, the Court finds in its discretion that it was not necessary to strike the juror for alleged bias or for failure to follow the Court's instructions. The defense has not presented grounds for a new trial under Rule 33 or any reason to believe there has been "a serious miscarriage of justice," *Wheeler*, 753 F.3d at 208, quoting *Rogers*, 918 F.2d at 213, and therefore, the motion [Dkt. # 266] is hereby DENIED.

It is ORDERED that the parties shall meet and confer and submit to the Court by February 10, 2020, proposed redacted versions of defendant's sealed Motion for New Trial, the government's sealed Response to Defendant's Motion for New Trial, and this sealed Order and its attachment to be filed on the public docket.

Amy B Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: February 5, 2020