```
1                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
2

3    United States of America,      ) Criminal Action
                                    ) No. 19-CR-018
4                    Plaintiff,     )
                                    ) JURY TRIAL
5    vs.                            ) Day 1 - Morning Session
                                    )
6    Roger Jason Stone, Jr.,        ) Washington, DC
                                    ) Date:  November 5, 2019
7                    Defendant      ) Time:  9:30 a.m.
     _____
8
                        TRANSCRIPT OF JURY TRIAL
9                           HELD BEFORE
              THE HONORABLE JUDGE AMY BERMAN JACKSON
10                  UNITED STATES DISTRICT JUDGE
     _____
11

12                   A P P E A R A N C E S

13

14   For the Plaintiff:      Jonathan Ian Kravis
                             Michael John Marando
15                           Adam Jed
                             Aaron Simcha Jon Zelinsky
16                           U.S. ATTORNEY'S OFFICE FOR THE
                               DISTRICT OF COLUMBIA
17                           555 Fourth Street, NW
                             Washington, DC 20530
18                           (202) 252-7068
                             Email:  Jonathan.kravis3@usdoj.gov
19                           Email:  Asjz@usdoj.gov
                             Email:  Michael.marando@usdoj.gov
20

21   For the Defendant:      Bruce S. Rogow
                             LAW OFFICE OF BRUCE S. ROGOW, P.A.
22                           100 NE 3rd Avenue
                             Suite 1000
23                           Fort Lauderdale, FL 33301
                             (954) 767-8909
24                           Email:  Brogow@rogowlaw.com

25
```

```
 1      For the Defendant:          Robert C. Buschel
                                    Tara A. Campion
 2                                  BUSCHEL & GIBBONS, P.A.
                                    One Financial Plaza
 3                                  100 S.E. Third Avenue
                                    Suite 1300
 4                                  Ft. Lauderdale, FL 33394
                                    (954) 530-5301
 5                                  Email:  Buschel@bglaw-pa.com
                                    Grant J. Smith
 6                                  STRATEGYSMITH, P.A.
                                    401 East Las Olas Boulevard
 7                                  Suite 130-120
                                    Fort Lauderdale, FL 33301
 8                                  (954) 328-9064
                                    Email:  Gsmith@strategysmith.com
 9                                  Chandler Paige Routman
                                    LAW OFFICE OF CHANDLER P. ROUTMAN
10                                  501 East Las Olas Blvd.
                                    Suite #331
11                                  Ft. Lauderdale, FL 33316
                                    (954) 235-8259
12                                  Email:  Routmanc@gmail.com

13      _____

14      Court Reporter:             Janice E. Dickman, RMR, CRR, CRC
                                    Official Court Reporter
15                                  United States Courthouse, Room 6523
                                    333 Constitution Avenue, NW
16                                  Washington, DC  20001
                                    202-354-3267
17                                  Email:  JaniceDickmanDCD@gmail.com

18                                       *   *   *

19

20

21

22

23

24

25
```

1          THE COURTROOM DEPUTY:  Your Honor, this morning we

2     have Case Number 19-18, the *United States of America v.*

3     *Roger Stone, Jr.*  Mr. Stone is present and in the courtroom,

4     Your Honor.

5          Will counsel for the parties please approach the

6     lectern, identify yourself for the record?

7          MR. KRAVIS:  Good morning, Your Honor.

8     Jonathan Kravis for the United States.  With me at counsel

9     table are Michael Marando, Adam Jed, Aaron Zelinsky, and

10    Amanda Rohde from the D.C. U.S. Attorney's Office, and FBI

11    Special Agent Christopher Keefe.

12          THE COURT:  Good morning.

13          MR. BUSCHEL:  Good morning, Judge.  Robert Buschel,

14    Chandler Routman, Tara Campion, Grant Smith, Bruce Rogow on

15    behalf of Roger Stone.

16          THE COURT:  All right.  And Mr. Stone is present.

17          The first thing I'm going to ask is that the deputy

18    clerk call the roll of the potential jurors in the courtroom.

19    This is just going to be by jury number.  So, please stand when

20    your number is called and say here or present.

21          THE COURTROOM DEPUTY:  Juror Number 1576.

22          THE PROSPECTIVE JUROR:  Here.

23          THE COURTROOM DEPUTY:  Juror Number 0972.

24          THE PROSPECTIVE JUROR:  Here.

25          THE COURTROOM DEPUTY:  Juror Number 1089.

```
 1               THE PROSPECTIVE JUROR:  Here.

 2               THE COURTROOM DEPUTY:  Juror Number 0938.

 3               THE PROSPECTIVE JUROR:  Here.

 4               THE COURTROOM DEPUTY:  Juror Number 1053.

 5               THE PROSPECTIVE JUROR:  Here.

 6               THE COURTROOM DEPUTY:  Juror Number 0685.

 7               THE PROSPECTIVE JUROR:  Here.

 8               THE COURTROOM DEPUTY:  Juror Number 0014.

 9               THE PROSPECTIVE JUROR:  Here.

10               THE COURTROOM DEPUTY:  Juror Number 0883.

11               THE PROSPECTIVE JUROR:  Here.

12               THE COURTROOM DEPUTY:  Juror Number 1136.

13               THE PROSPECTIVE JUROR:  Here.

14               THE COURTROOM DEPUTY:  Juror Number 0560.

15               THE PROSPECTIVE JUROR:  Here.

16               THE COURTROOM DEPUTY:  Juror Number 0048.

17               THE PROSPECTIVE JUROR:  Here.

18               THE COURTROOM DEPUTY:  Juror Number 1169.

19               THE PROSPECTIVE JUROR:  Here.

20               THE COURTROOM DEPUTY:  Juror Number 1201.

21               THE PROSPECTIVE JUROR:  Here.

22               THE COURTROOM DEPUTY:  Juror Number 1261.

23               THE PROSPECTIVE JUROR:  Here.

24               THE COURTROOM DEPUTY:  Juror Number 0265.

25               THE PROSPECTIVE JUROR:  Here.
```

```
 1                    THE COURTROOM DEPUTY:  Juror Number 1650.

 2                    THE PROSPECTIVE JUROR:  Here.

 3                    THE COURTROOM DEPUTY:  Juror Number 0910.

 4                    THE PROSPECTIVE JUROR:  Here.

 5                    THE COURTROOM DEPUTY:  Juror Number 0594.

 6                    THE PROSPECTIVE JUROR:  Here.

 7                    THE COURTROOM DEPUTY:  Juror Number 1070.

 8                    THE PROSPECTIVE JUROR:  Here.

 9                    THE COURTROOM DEPUTY:  Juror Number 0815.

10                    THE PROSPECTIVE JUROR:  Here.

11                    THE COURTROOM DEPUTY:  Juror Number 0068.

12                    THE PROSPECTIVE JUROR:  Here.

13                    THE COURTROOM DEPUTY:  Juror Number 1402.

14                    THE PROSPECTIVE JUROR:  Here.

15                    THE COURTROOM DEPUTY:  Juror Number 0173.

16                    THE PROSPECTIVE JUROR:  Here.

17                    THE COURTROOM DEPUTY:  Juror Number 1598.

18                    THE PROSPECTIVE JUROR:  Here.

19                    THE COURTROOM DEPUTY:  Juror Number 0706.

20                    THE PROSPECTIVE JUROR:  Here.

21                    THE COURTROOM DEPUTY:  Juror Number 0617.

22                    THE PROSPECTIVE JUROR:  Here.

23                    THE COURTROOM DEPUTY:  Juror Number 0781.

24                    THE PROSPECTIVE JUROR:  Here.

25                    THE COURTROOM DEPUTY:  Juror Number 0772.
```

```
 1                    THE PROSPECTIVE JUROR:  Here.

 2                    THE COURTROOM DEPUTY:  Juror Number 0394.

 3                    THE PROSPECTIVE JUROR:  Here.

 4                    THE COURTROOM DEPUTY:  Juror Number 1126.

 5                    THE PROSPECTIVE JUROR:  Here.

 6                    THE COURTROOM DEPUTY:  Juror Number 0860.

 7                    THE PROSPECTIVE JUROR:  Here.

 8                    THE COURTROOM DEPUTY:  Juror Number 0998.

 9                    THE PROSPECTIVE JUROR:  Here.

10                    THE COURTROOM DEPUTY:  Juror Number 1190.

11                    THE PROSPECTIVE JUROR:  Here.

12                    THE COURTROOM DEPUTY:  Juror Number 0172.

13                    THE PROSPECTIVE JUROR:  Here.

14                    THE COURTROOM DEPUTY:  Juror Number 0686.

15                    THE PROSPECTIVE JUROR:  Here.

16                    THE COURTROOM DEPUTY:  Juror Number 0900.

17                    THE PROSPECTIVE JUROR:  Here.

18                    THE COURTROOM DEPUTY:  Juror Number 1048.

19                    THE PROSPECTIVE JUROR:  Here.

20                    THE COURTROOM DEPUTY:  Juror Number 1498.

21                    THE PROSPECTIVE JUROR:  Here.

22                    THE COURTROOM DEPUTY:  Juror Number 1469.

23                    THE PROSPECTIVE JUROR:  Here.

24                    THE COURTROOM DEPUTY:  Juror Number 0442.

25                    THE PROSPECTIVE JUROR:  Here.
```

```
1              THE COURTROOM DEPUTY:  Juror Number 0721.

2              THE PROSPECTIVE JUROR:  Here.

3              THE COURTROOM DEPUTY:  Juror Number 0521.

4              THE PROSPECTIVE JUROR:  Here.

5              THE COURTROOM DEPUTY:  Juror Number 1586.

6              THE PROSPECTIVE JUROR:  Here.

7              THE COURTROOM DEPUTY:  Juror Number 1224.

8              THE PLAINTIFF:  Here.

9              THE COURTROOM DEPUTY:  Juror Number 0030.

10             THE PROSPECTIVE JUROR:  Here.

11             THE COURTROOM DEPUTY:  Juror Number 1466.

12             THE PROSPECTIVE JUROR:  Here.

13             THE COURTROOM DEPUTY:  Juror Number 1694.

14             THE PROSPECTIVE JUROR:  Here.

15             THE COURTROOM DEPUTY:  Juror Number 0944.

16             THE PROSPECTIVE JUROR:  Here.

17             THE COURTROOM DEPUTY:  Juror Number 1047.

18             THE PROSPECTIVE JUROR:  Here.

19             THE COURTROOM DEPUTY:  Juror Number 1218.

20             THE PROSPECTIVE JUROR:  Here.

21             THE COURTROOM DEPUTY:  Juror Number 0705.

22             THE PROSPECTIVE JUROR:  Here.

23             THE COURTROOM DEPUTY:  Juror Number 0063.

24             THE PROSPECTIVE JUROR:  Here.

25             THE COURTROOM DEPUTY:  Juror Number 0836.
```

```
 1                  THE PROSPECTIVE JUROR:  Here.

 2                  THE COURTROOM DEPUTY:  Juror Number 0335.

 3                  THE PROSPECTIVE JUROR:  Here.

 4                  THE COURTROOM DEPUTY:  Juror Number 0651.

 5                  THE PROSPECTIVE JUROR:  Here.

 6                  THE COURTROOM DEPUTY:  Juror Number 0176.

 7                  THE PROSPECTIVE JUROR:  Here.

 8                  THE COURTROOM DEPUTY:  Juror Number 1676.

 9                  THE PROSPECTIVE JUROR:  Here.

10                  THE COURTROOM DEPUTY:  Juror Number 0107.

11                  THE PROSPECTIVE JUROR:  Here.

12                  THE COURTROOM DEPUTY:  Juror Number 1436.

13                  THE PROSPECTIVE JUROR:  Here.

14                  THE COURTROOM DEPUTY:  Juror Number 0676.

15                  THE PROSPECTIVE JUROR:  Here.

16                  THE COURTROOM DEPUTY:  Juror Number 0095.

17                  THE PROSPECTIVE JUROR:  Here.

18                  THE COURTROOM DEPUTY:  Juror Number 1286.

19                  THE PROSPECTIVE JUROR:  Present.

20                  THE COURTROOM DEPUTY:  Juror Number 1661.

21                  THE PROSPECTIVE JUROR:  Here.

22                  THE COURTROOM DEPUTY:  Juror Number 1550.

23                  THE PROSPECTIVE JUROR:  Here.

24                  THE COURTROOM DEPUTY:  Juror Number 0218.

25                  THE PROSPECTIVE JUROR:  Here.
```

```
1                    THE COURTROOM DEPUTY:  Juror Number 0465.

2                    THE PROSPECTIVE JUROR:  Here.

3                    THE COURTROOM DEPUTY:  Juror Number 1420.

4                    THE PROSPECTIVE JUROR:  Here.

5                    THE COURTROOM DEPUTY:  Juror Number 0532.

6                    THE PROSPECTIVE JUROR:  Here.

7                    THE COURTROOM DEPUTY:  Juror Number 1494.

8                    THE PROSPECTIVE JUROR:  Here.

9                    THE COURTROOM DEPUTY:  Juror Number 1552.

10                   THE PROSPECTIVE JUROR:  Here.

11                   THE COURTROOM DEPUTY:  Juror Number 0487.

12                   THE PROSPECTIVE JUROR:  Here.

13                   THE COURTROOM DEPUTY:  Juror Number 0660.

14                   THE PROSPECTIVE JUROR:  Here.

15                   THE COURTROOM DEPUTY:  Juror Number 0291.

16                   THE PROSPECTIVE JUROR:  Here.

17                   THE COURTROOM DEPUTY:  Juror Number 1360.

18                   THE PROSPECTIVE JUROR:  Here.

19                   THE COURTROOM DEPUTY:  Juror Number 0680.

20                   THE PROSPECTIVE JUROR:  Here.

21                   THE COURTROOM DEPUTY:  Juror Number 1278.

22                   THE PROSPECTIVE JUROR:  Here.

23                   THE COURTROOM DEPUTY:  Juror Number 0371.

24                   THE PROSPECTIVE JUROR:  Here.

25                   THE COURTROOM DEPUTY:  Juror Number 1366.
```

```
 1              THE PROSPECTIVE JUROR:  Here.

 2              THE COURTROOM DEPUTY:  Juror Number 0297.

 3              THE PROSPECTIVE JUROR:  Here.

 4              THE COURTROOM DEPUTY:  And Juror Number 0720.

 5              PROSPECTIVE JUROR:  Here.

 6              THE COURT:  Good morning.

 7              PROSPECTIVE JURORS:  Good morning.

 8              THE COURT:  My name is Judge Amy Jackson, and I want

 9     to welcome you, again, to the U.S. District Court for the

10     District of Columbia, and this time, to my courtroom.  As you

11     know, you've been asked to come here today to be a part of the

12     process of selecting a jury.  I want to thank you, again, for

13     taking time our of your busy lives to assist the Court and our

14     entire system of justice by coming here today to participate in

15     this process.

16              It is outstanding to know that we have almost

17     entirely perfect attendance from those of you who were told to

18     appear today and those of you who are here.  We are extremely

19     pleased and extremely grateful for everyone's punctuality and

20     appearance this morning.

21              We have a system in our country that entitles people

22     to have their claims and charges against them tried by juries,

23     and that system simply wouldn't work if we didn't have people

24     who showed up to serve on those juries.  So thank you for being

25     a part of the selection process, even if you ultimately don't
```

1    get selected.

2              You've been asked, as you may recall from the last

3    time you were here, to come to court today as a potential juror

4    in the case of the *United States v. Roger J. Stone*.  This is a

5    criminal case.  Because all of the parties and the lawyers were

6    not in the courtroom at the time you filled out the

7    questionnaire, I'm going to ask the lawyers for both sides to

8    stand up and introduce themselves to the jury panel.

9              First, though, I would ask the defendant to please

10   rise, and face the jurors.  This is Roger Stone.  He is the

11   defendant in the case.

12             Thank you, Mr. Stone.  You can be seated.

13             If the government counsel would introduce yourselves

14   to the jury panel, please.

15             MR. KRAVIS:  Good morning, everyone.  Jonathan Kravis

16   for the United States.

17             MR. MARANDO:  Good morning.  Michael Marando for the

18   United States.

19             MR. JED:  Adam Jed for the United States.

20             MR. ZELINSKY:  Good morning.  Aaron Zelinsky for the

21   United States.

22             THE COURT:  All right.  And counsel -- oh, I'm sorry.

23   You should introduce yourself as well.

24             This is an important part of the government team, but

25   she won't be putting on witnesses in the case.

1          MS. ROHDE:  Amanda Rohde.

2          MR. KEEFE:  Christopher Keefe with the FBI.

3          THE COURT:  All right.  And for the defendant?

4          MS. ROUTMAN:  Chandler Routman for the defendant.

5          MS. CAMPION:  Good morning.  Tara Campion on behalf

6     of Mr. Stone.

7          MR. SMITH:  Grant Smith on behalf of Mr. Stone.

8          MR. ROGOW:  Good morning.  I'm Bruce Rogow on behalf

9     of Mr. Stone.

10         MR. BUSCHEL:  And good morning.  I'm Roger Buschel on

11    behalf of Roger Stone.

12         THE COURT:  All right.  Thank you.

13         This case arises out of events that occurred in 2016

14    through 2018, including the testimony of Roger Stone before

15    Congress; in particular, before the U.S. House of

16    Representatives Permanent Select Intelligence Committee, the

17    HPSCI, on September 26, 2017.  At that time, the committee was

18    investigating Russian interference in the 2016 U.S.

19    presidential election, and the defendant testified before the

20    committee in connection with its investigation.

21         The charges against the defendant arise out of his

22    September 26th, 2017 testimony and the committee's

23    investigation.  He's charged with one count of obstructing a

24    congressional proceeding, five counts of making false

25    statements to Congress, and one count of tampering with a

1    witness to the proceeding.

2           The defendant has pled not guilty, and he is presumed

3    to be innocent of all the charges unless and until the

4    government proves him guilty beyond a reasonable doubt.

5           This trial is supposed to last approximately two to

6    three weeks.  People who are selected to serve as jurors will

7    not be sequestered.  They will go home every night and will

8    have their weekends and evenings to themselves.  We will make

9    arrangements, though, for the jurors who are selected to serve

10   to come and go from the courthouse in a private manner so that

11   you do not have to interact with other people or make your way

12   through any crowds that gather at any of the public entrances.

13          I can also assure you that if for some reason we're

14   sitting during the week of Thanksgiving, we will not be in

15   session on the Wednesday before Thanksgiving, unless all

16   participants in the trial, including the jurors, agree that

17   Wednesday should be available.  And we will not sit that

18   Thursday or Friday.  Turkey will be enjoyed.

19          During the trial, your contact with other people will

20   not be restricted, but right now, and as I told you at the time

21   when you filled out the questionnaire, and continuing until

22   you've been excused from further service by the Court, you will

23   not be permitted to talk about the case with anyone, or to

24   read, watch, or listen to any press coverage the case might

25   receive.  I'm going to give you a little more information about

1    that in a moment.

2          As you can probably tell from looking around the room

3    and looking at the jury box, we have more people sitting here

4    than we're ultimately going to need for a single trial.  When

5    we pick a jury, not just in this case, but in all cases, our

6    goal is to make sure that we're picking a group of people who

7    don't have personal knowledge about the facts of the case or

8    the people involved in the case.

9          Also, we're trying to pick people who can be

10   completely open and fair to both sides, and base the verdict

11   just on the evidence and the law that I will tell you applies,

12   and not on any information they've heard, expertise they've

13   developed, or opinions they've formed before they ever got to

14   the courtroom.

15         To do that, we brought you, back in September, to the

16   courthouse and had you answer a number of questions in writing.

17   The fact that we did that will make today's proceedings much

18   more efficient.  Today we'll just be asking limited follow-up

19   questions.

20         For example, we did ask you back then what you'd read

21   and heard about the case, and today we will be asking you if

22   any of you have received more information or developed opinions

23   or discussed the case since then.

24         As was the case before, it remains fundamental that

25   you be honest and open in answering the questions, and that you

1   answer each one as completely and accurately as you can.  You

2   are not going to have to talk to us in front of all the other

3   jurors.  When I'm finished talking, we're going to move most of

4   you to another courtroom, and then we're going to call you in

5   to speak to the parties in the case one at a time.

6          But courtrooms and trials are open to the public.  So

7   if there is a particular question that you think is

8   particularly personal, at that time you would be permitted to

9   ask permission to give your answer to me and the lawyers in

10   private at the bench, rather than from the witness stand with

11   whoever might be in the audience.

12          Ultimately, we may not need to talk to all of you or

13   we may end up excusing someone we did talk to or you might not

14   even get spoken to and you might end up being excused.  If that

15   happens to you, it's not because we don't like you or because

16   we think you said something inappropriate or improper.  The

17   simple fact is we have more of you than we need.  And there may

18   be a reason why you're not one of the people who should be

19   selected for this case, or it may simply be that we didn't end

20   up needing you.

21          Excuse me.

22          (Off-the-record discussion between courtroom deputy

23   and Court.)

24          THE COURT:  Another way that we make sure that the

25   decision is fair and based only on what was put on the record

1    in the courtroom is, the jurors are always told that they can't

2    talk about the case or any issues related to the case among

3    themselves or with anyone else until the trial is over.  And

4    that rule is already in effect.

5           While you are in this courthouse today you may talk

6    to each other about pretty much any topic, but you should not

7    talk about the case, the investigation, or the defendant while

8    you're waiting in the courtroom or waiting in the jury room to

9    come back in and be asked questions.

10          I've actually had a case where I began jury selection

11   and had to stop and start all over with a new panel because one

12   juror decided to chat with the other jurors while they were

13   waiting to come in to be questioned about the charges in the

14   case.  Please do not do that.  If anyone tries to talk to you

15   about the case, tell them, I don't want to talk about that.

16          Also, I told you this the day you filled out the

17   questionnaire, but I want to reiterate that you may not talk or

18   communicate about this case or your potential jury service with

19   anyone else, including your own family when you get home this

20   evening.  And when I say do not communicate about this case,

21   that includes using the phone, a computer, texting, blogging,

22   Instant Messaging, Snapchat, or any other form of electronic or

23   social media communication.  You can't even write a letter.

24          You can tell close friends and family members or your

25   employer that you were called to court in connection with

1     serving on a jury in a criminal case, but that's all.

2            Also, don't let anyone, including friends, family

3     members, court personnel, other members of the jury, anyone

4     involved in the case, or anyone in the building come up to talk

5     to you about your views or any aspect of the case except

6     officially and in the courtroom.

7            The need to have a fair trial also means that from

8     this point onward, if you haven't already stopped, you must not

9     read anything whatsoever about this case.  Please do not go

10    home and search the internet or consult newspapers or magazines

11    or any other news or social media sources to find out what it's

12    all about or who these people are.  And you should try to avoid

13    receiving any information from the case from the news media.

14    If it comes to your attention inadvertently, please click on

15    something else or change the channel.  And please ignore any

16    headlines.

17           This means you shouldn't read blogs or posts about

18    the case on social media.  It means that if you receive

19    automatic alerts from any source, and you haven't done so yet,

20    you may need to change your Twitter feed or your push

21    notifications or news subscriptions or RSS feeds.  And if you

22    happen to hear the case being discussed, you should simply turn

23    and walk away from the conversation.  Or if it's a topic on TV,

24    leave the room or change the channel.  Also, you may not post

25    anything about the case yourself.

1        Now is the point at which we are going to move you to

2   another room so that we can begin to speak to some of the

3   jurors one at a time.  Before you depart, though, I'm going to

4   ask you all to stand and to either swear or you may affirm that

5   your answers will be truthful.

6        Will the jurors all please stand and raise your right

7   hands.

8        (Whereupon the potential jurors were duly sworn.)

9        THE COURT:  All right.  Thank you.

10        Thank you, again, for your cooperation, your candor,

11   and your time.  I'm going to ask Mr. Haley to rearrange you.

12   You will discover that he is excellent at this.  And so please

13   give him your cooperation.  After the jurors have been

14   situated, I will take up a couple matters with the parties

15   before we start bringing the jurors into the room.

16        Thank you, Mr. Haley.

17        THE COURTROOM DEPUTY:  Ladies and gentlemen, the

18   prospective jurors, what we're going to do is we're going to go

19   out this door, and we're going to move one courtroom to the

20   right.  And you can sit anywhere in that courtroom.  You don't

21   have to sit on the bench.  You can sit at the tables and feel

22   like a lawyer for a minute.

23        Those sitting in the first three rows, when you go in

24   the courtroom, go up and stand in front of the jury box,

25   because you're the first jurors to be seen by the Court.  So

1    we're all going to stand and go out this room and go to the

2    right, in Courtroom Number 2.  Bring all of your belongings

3    with you at this time.

4                  (Pause.)

5                  THE COURT:  Are you standing to stand or stretch?

6                  MR. BUSCHEL:  I have something.

7                  THE COURT:  All right.  I'm not going to do anything

8    until Mr. Haley is back.  So...

9                  MR. BUSCHEL:  Mr. Stone needs to use the bathroom

10   right away.

11                 THE COURT:  All right.  Why don't you do that while

12   we're in this break.

13                 THE DEFENDANT:  Thank you, Your Honor.

14                 THE COURT:  People who are seated inside the well of

15   the Court can now move to the audience.  Thank you.  On both

16   sides.

17                 (Pause.)

18                 THE COURT:  The members of the defendant's family

19   that we permitted to sit inside the well of the court can now

20   sit -- all right.

21                 MR. SMITH:  Thank you very much.

22                 THE COURT:  I don't have a problem with the courtroom

23   artists sitting in that front row.  But from now on, all that's

24   going to be happening is the jurors -- who, as I understand it,

25   you're not going to be drawing; is that correct?  So the rest

1    of the day is, basically, going to be taken up.  We're not

2    going to open today, I can assure you.

3              (Pause.)

4              THE COURT:  All right.  Let's resume.  Okay.  Let's

5    get everybody back in place.

6              All right.  To the people who have just entered the

7    courtroom, we didn't have room to seat you before, as the

8    courtroom was completely filled with potential jurors.

9              As you know, a trial is a public proceeding, so

10   you're all welcome to observe the proceedings.  In case you're

11   unaware of today's schedule, what we are going to be doing

12   today is the follow-up individual voir dire of members of the

13   jury panel.  We will not open today.  No witnesses will be

14   testifying today.

15             This is going to be a slow process of speaking to one

16   juror at a time.  I expect all of you to watch and listen

17   quietly.  If your phones ring or you begin to talk among

18   yourselves or you try to talk to other people in the audience

19   or people at counsel table, we will excuse you from observing

20   the proceedings.

21             I have a few questions for counsel before we get

22   started.  And I received a motion last night, somewhat late,

23   Docket 249, reviving some of the motions to strike individuals

24   for cause based solely on their jury questionnaire.  Given the

25   amount of time you've had with my rulings, I wish you'd filed

1    it earlier.  But I have had the opportunity to review it, and

2    I'm going to address it before we bring in the jurors one at a

3    time.

4              Before we bring them in, we have one juror, she is

5    Number 52 -- 62 on your list, the third one down, 0095, who has

6    reported to -- is that the one -- no.  I'm sorry.  That's not

7    the one.

8              THE COURTROOM DEPUTY:  Line 40.

9              THE COURT:  I'm sorry.  It's on page -- line 40.  Is

10   that the one?

11             THE COURTROOM DEPUTY:  Yes.

12             THE COURT:  I'm sorry.  Go to page 2, line 40, 1469.

13   That juror has indicated that she is ill today.  You may have

14   heard someone coughing during the instructions, and that was

15   that person.  She has asked to be excused.

16             Does anyone have an objection to doing so at this

17   time?

18             MR. KRAVIS:  No objection from the government.

19             MR. BUSCHEL:  No objection.

20             THE COURT:  So we'll let her know, at an opportune

21   time, that she's excused.  And so we're not going to bring her

22   in for questioning.

23             I noticed that there were several jurors, including

24   two in their 80s, who are over the age that they're informed in

25   their summons that they have the opportunity to ask to be

1    excused, if they want to.  Now, they all returned their

2    summonses and did not ask to be excused.  So one question I

3    have, as this has come up in other trials, is do you want me to

4    advise them -- those jurors that it is up to them, and give

5    them the opportunity to tell us at this point whether or not

6    they would choose to utilize that option?

7                MR. KRAVIS:  Yes, we would like the Court to so

8    advise the prospective jurors.

9                THE COURT:  Okay.  Do you have a point of view about

10   this?

11               MR. BUSCHEL:  No, Judge.

12               THE COURT:  No point of view?  Or no --

13               MR. BUSCHEL:  No point of view.

14               THE COURT:  All right.  Well, I may raise it,

15   particularly with some of the -- the ones that I know are

16   significantly older than the cutoff.  They may find the

17   schedule grueling, and they should at least know they have an

18   opportunity to opt in or opt out.

19               One thing I want to tell you is we'll bring each

20   juror in.  When we're finished with the questioning, they will

21   step out before the next juror comes in.  That is the point

22   when anyone who wants to make a motion to strike the juror for

23   cause should make it.  Don't do it while the juror is sitting

24   there.  And we will await bringing in the next juror until I've

25   ascertained that no one has a motion.  So that will be the

1    procedure that we follow.

2              With respect to the prior rulings, the proposed

3    strikes for cause and the motion that was filed last night --

4    that I am well aware the government hasn't had an opportunity

5    to respond to -- I will say that I've reviewed the first set of

6    requests of strikes very carefully.

7              I struck those individuals who expressed the fact

8    that they had an opinion about the defendant or the charges.

9    The mere fact that someone expressed an opinion about the

10   president alone is not a basis, to me, to assume that they

11   could not be fair, particularly if they indicated that they

12   could be, although it certainly was grist for follow-up

13   questions.

14             And even those who indicated they'd heard something

15   about the defendant or the case, that alone wasn't enough for

16   me to automatically assume they needed to be struck for cause.

17   Again, I think it's grist for follow-up questions.

18             I don't believe that the fact that someone works for

19   the government, in and of itself, suggests that they have

20   divided loyalty in this case.  It is virtually impossible to

21   bring in a jury panel in the District of Columbia where a large

22   number of the people don't work for the District of Columbia.

23   I believe that the defense has assumed bias that has not yet

24   been shown on the part of all those people, and that more

25   information and more follow-up questions are needed before we

1    can determine that these people should be excused for cause.

2           So, the fact that some people haven't, based on their

3    questionnaires, is without prejudice to any motion you may file

4    after we've had an opportunity to explore potential bias in the

5    courtroom and hear what they have to say.  But, with respect to

6    most of these individuals, I'm not going to change my initial

7    decision.

8           I do agree, however, with respect to Juror

9    Number 0095, who does know one of the members of the

10   prosecution team personally.  For that reason, if not for any

11   other, I believe that excusing her would be appropriate.  I

12   don't think at the beginning of the trial, when I received the

13   questionnaires, I understood that that lawyer would be seated

14   at counsel table, as opposed to being just part of the team in

15   general.

16          But I think the point is to not have people who know

17   people involved with the case.  So, Juror Number 95, who is on

18   your -- that's the one who's on the third page at 62, will be

19   excused for cause.

20          And the next time you go into that courtroom,

21   Mr. Haley, you can take care of that.

22          I also, while I think it's a closer call, will grant

23   the motion with respect to Juror Number 18 on your list, 0594,

24   for the reasons stated.

25          But, as I said earlier with respect to the rest of

1    the jurors, I don't believe working for the government, having

2    an opinion about the president, or having heard something about

3    the case, in and of itself, means that the person is biased

4    against this defendant on these charges, and we will ask them

5    follow-up questions and we will see.

6            There was one questionnaire that when I reviewed it

7    again yesterday, I thought that probably striking that person

8    for cause would have been warranted, just based solely on what

9    was in the questionnaire.  And I don't recall the number at the

10   moment, but when it comes up, we'll probably go ahead and

11   question the person, since it wasn't one of the ones that the

12   defense asked me about.  But, if I continue to hold that

13   opinion, I may do it sua sponte.

14           I have two other matters that I want to take up at

15   the bench.  Okay.  I think about two or three lawyers per side

16   is all we have room for, generally.

17           (Bench discussion:)

18           THE COURT:  All right.  The first thing I wanted to

19   note is that we have a very expressive group of participants in

20   this trial.  I noticed yesterday, particularly at the

21   government's side of the courtroom, but it has occurred on the

22   defense side of the courtroom as well, we have a lot of

23   enthusiastic advocates who believe strongly in their case,

24   believe strongly in these issues.

25           And we have to, starting now, adopt a poker-face

1    demeanor.  When there's a juror in this courtroom, when there's

2    a jury in this box, I don't want head shaking, smirks,

3    laughing.  Obviously, you can confer with each other, but I

4    want this to be vanilla and not expressive.  And I'm not going

5    to tolerate any of that with jurors in the courtroom.  So,

6    please be aware that I've noticed it and I'm not going to see

7    it anymore.

8            Second of all, I learned this morning that there has

9    been someone invited by one of the parties in this case to sit

10   in the jury box and sketch.  No one gets to sit in the well in

11   this courtroom unless they have entered an appearance in this

12   case or they have press credentials and I said that they can

13   sit in the jury box or somebody has asked my permission.

14           Given the security concerns that attach in this case,

15   and all cases, frankly, we just can't have stray people

16   invited, even if it was for a completely innocent reason, to

17   sit in this courtroom, inside the well of the Court, without my

18   knowing who they are and why they're here.  And so that's not

19   going to happen again.  And no one is going to get the

20   privilege of sitting wherever.  I might move individuals from

21   the press, if they don't have press credentials, from this

22   point forward.

23           So, before we start, is there anything else that

24   anybody else wants to raise outside the presence of the --

25           MR. KRAVIS:  Nothing from the government, Your Honor.

1    Thank you.

2              MR. BUSCHEL:  No.

3              THE COURT:  Okay.  Thank you.  All right.

4              (Open court:)

5              THE COURT:  Let's bring in the first juror.

6              All right.  We're going to excuse those jurors, and

7    then we'll begin.

8              (Potential juror enters the courtroom:)

9              THE COURTROOM DEPUTY:  Your Honor, this is Juror

10   Number 1576.

11             THE COURT:  All right.  Good morning.  We have your

12   questionnaire, but I do have a few questions to ask you.

13             THE PROSPECTIVE JUROR:  Sure.

14             THE COURT:  First of all, since the time you filled

15   out the questionnaire, have you read or heard anything about

16   the case or discussed the case with anyone?

17             THE PROSPECTIVE JUROR:  No.

18             THE COURT:  All right.  Now, one of the things you

19   indicated is that your husband is a lawyer with the Department

20   of Justice, and in the National Security Division.

21             Does he try criminal cases, to your knowledge?

22             THE PROSPECTIVE JUROR:  He does not.

23             THE COURT:  And have you discussed this case with him

24   at any time, even before you got the questionnaire?

25             THE PROSPECTIVE JUROR:  No.

1          THE COURT:  Do you now whether he's had any

2    involvement in this case or in the related investigation?

3          THE PROSPECTIVE JUROR:  Not that I know of.

4          THE COURT:  Does the fact that this case is being

5    prosecuted by the United States Department of Justice, and your

6    husband works there, give you concerns about your ability to be

7    fair to both sides in this case?

8          THE PROSPECTIVE JUROR:  No.

9          THE COURT:  Now, you indicated you have a family

10   friend who works in the U.S. Attorney's Office in the District

11   of Columbia.

12         THE PROSPECTIVE JUROR:  Correct.

13         THE COURT:  And I think you checked off that you

14   assumed that someone you knew might have a connection to the

15   prosecution team because you have a friend in the U.S.

16   Attorney's Office.

17         Now that they've been introduced to you, do you know

18   whether you've actually met or socialized with any of the

19   individuals who are going to be prosecuting this case?

20         THE PROSPECTIVE JUROR:  I don't believe that I have.

21         THE COURT:  And you indicated that you'd read that

22   the Mueller investigation had included some examination

23   of Mr. -- what you wrote was, "Mr. Stone's role in the Trump

24   campaign's communications with the Russian government."

25         Do you have any knowledge or opinion whether

1    Mr. Stone did or did not actually communicate with the Russian

2    government?

3             THE PROSPECTIVE JUROR:  I don't.

4             THE COURT:  And can you put aside anything you've

5    read or you think you know about what this case is about or

6    what happened and just base your decision on the evidence you

7    hear in this courtroom?

8             THE PROSPECTIVE JUROR:  Yes.

9             THE COURT:  All right.  Are there any questions that

10   the government wants to ask?

11            MR. KRAVIS:  Nothing further from the government.

12   Thank you, Your Honor.

13            THE COURT:  Okay.  Any follow-up questions by the

14   defense?

15            MR. BUSCHEL:  Yes.

16            THE COURT:  You can come to the lectern so we can

17   hear you.

18            MR. BUSCHEL:  Good morning.

19            THE PROSPECTIVE JUROR:  Good morning.

20            MR. BUSCHEL:  Are you a lawyer?

21            THE PROSPECTIVE JUROR:  No.

22            MR. BUSCHEL:  What do you do?

23            THE PROSPECTIVE JUROR:  I do communications for a

24   nonprofit think tank here in D.C.

25            MR. BUSCHEL:  Do you have any working relationship

1      with the Department of Justice?

2                  THE PROSPECTIVE JUROR:  No.

3                  MR. BUSCHEL:  Do you know what area -- general area

4      your husband works in in the National Security Division?

5                  THE PROSPECTIVE JUROR:  I think he's on the policy

6      team.  So, handles matters of policy.

7                  MR. BUSCHEL:  Do you know what kind of policy?

8                  THE PROSPECTIVE JUROR:  Beyond national security

9      policy, no, I don't.  There's a lot he can't tell me about it.

10                 MR. BUSCHEL:  So, How was your day? doesn't include,

11     This is what I did today?

12                 THE PROSPECTIVE JUROR:  I tell him what I did.  He

13     usually doesn't tell me what he did.

14                 MR. BUSCHEL:  Okay.

15                 THE COURT:  Sounds like having a teenager.

16                 MR. BUSCHEL:  Your close family friend who's a U.S.

17     attorney, do you -- is that a criminal case -- a criminal

18     division of the U.S. Attorneys's Office?

19                 THE PROSPECTIVE JUROR:  Yes.

20                 MR. BUSCHEL:  And do you discuss various cases with

21     that person?

22                 THE PROSPECTIVE JUROR:  No.

23                 MR. BUSCHEL:  Do you know for a fact if your two

24     friends that you reference in your questionnaire know any of

25     these prosecutors?

1          THE PROSPECTIVE JUROR:  I don't know for a fact.

2          MR. BUSCHEL:  You worked for the previous White House

3      administration?

4          THE PROSPECTIVE JUROR:  I did, yes.

5          MR. BUSCHEL:  What did you do there?

6          THE PROSPECTIVE JUROR:  I was the communications

7      director for the Office of Management and Budget with the main

8      Executive Office of the President.

9          MR. BUSCHEL:  I assume you know Roger Stone by

10     reputation?

11         THE PROSPECTIVE JUROR:  Just from news coverage.

12         MR. BUSCHEL:  Do you know that he campaigned or

13     helped the -- Donald Trump?

14         THE PROSPECTIVE JUROR:  Yes.

15         MR. BUSCHEL:  How do you feel about that?

16         THE PROSPECTIVE JUROR:  I don't really have an

17     opinion about it.

18         MR. BUSCHEL:  So you're saying you can sit as a fair

19     and impartial juror, even though he advocated against

20     Hillary Clinton?

21         THE PROSPECTIVE JUROR:  Yes.

22         MR. BUSCHEL:  You read the Mueller report, you

23     indicated.

24         THE PROSPECTIVE JUROR:  I read coverage of the

25     Mueller report.  I don't think I read the whole --

```
1              MR. BUSCHEL:  Okay.  And based on that, do you have

2     any opinions about this case?

3              THE PROSPECTIVE JUROR:  No.

4              MR. BUSCHEL:  If you were to sit on this jury, could

5     you go home and tell your husband that, I found the defendant

6     not guilty because the government didn't prove its case beyond

7     a reasonable doubt?

8              THE PROSPECTIVE JUROR:  Absolutely.

9              MR. KRAVIS:  Objection.

10             THE COURT:  I don't think that's really a proper

11    question.

12             MR. BUSCHEL:  You indicated that you had a negative

13    opinion of President Trump.  Does that affect Roger Stone in

14    any way?

15             THE PROSPECTIVE JUROR:  No.

16             MR. BUSCHEL:  Thank you for your time.

17             THE COURT:  Thank you very much.  You may step out.

18             (Potential juror leaves the courtroom.)

19             THE COURT:  Mr. Haley, just wait before bringing in

20    the next juror.

21             Do you have a motion with respect to this juror?

22             MR. BUSCHEL:  Yes.  Judge, we move for --

23             THE COURT:  Yeah.  Unfortunately, or you can speak

24    into the microphones at the table, but we've got to be able

25    to --
```

1          MR. BUSCHEL:  We're putting that microphone down and

2     shutting it off because you told us that others can hear what

3     we're talking about.

4          THE COURT:  Okay.  Today I don't think you're

5     broadcasting.  So if you want to use it today, you can.

6          MR. BUSCHEL:  Wherever you'll have me, Judge.

7          THE COURT:  All right.  That's fine.

8          I mean, I heard her testimony.  And I understand she

9     has a husband who works for the Department of Justice, and I

10    understand that she worked for the prior administration.  But

11    those two things are not automatically disqualifying.  And I

12    think she said, credibly, that she didn't have an opinion about

13    this case.

14         He's not charged with supporting Donald Trump for

15    president.  That is a lawful thing to do.  And she hasn't

16    indicated that she holds any bias against him because of that.

17    So, I'm going to deny the motion to strike for cause.

18         And let's bring in the next juror.

19         MR. BUSCHEL:  Judge, can we go sidebar for a moment?

20         THE COURT:  Yes.

21         (Bench discussion:)

22         THE COURT:  For the record, we will docket under seal

23    the jury questionnaires of anyone you moved to strike for cause

24    who was not stricken --

25         MR. BUSCHEL:  Okay.

1          THE COURT:  -- so that you have that as part of your

2    record on appeal.

3          MR. BUSCHEL:  Thank you.

4          THE COURT:  Okay.

5          MR. BUSCHEL:  Mr. Stone is not feeling well.  He

6    needs to go to the bathroom.  And I -- I'm getting peppered

7    with, He's not feeling well.  He needs to go to the bathroom.

8    So --

9          THE COURT:  Well, I don't know what we're going to do

10   about this.  I'm perfectly happy to permit him to come and go,

11   but he also has a constitutional right to sit here as each

12   juror comes in.

13         MR. BUSCHEL:  Can we send him now and we can have

14   this discussion?

15         THE COURT:  Okay.  But -- let's do this:  If it's a

16   stomach ailment, then he has to go.  I saw him reaching for

17   Kleenex.  So, if it's something that could be solved by -- all

18   right.

19         All right.  We need to do this, but then we need to

20   figure out what to do, the things he can take, or, you know, he

21   can ask to be able to come and go when he wants to go.  But, if

22   we're in process, we're going to keep going.  I think we

23   need -- you need to confer with him and figure out what to do.

24         I'm not going to order him to waive his

25   constitutional rights, but we cannot spend a whole day doing

1    what we should be able to do in a short period of time.  So,

2    let him go, let him come back, and then we're going to bring in

3    the next juror.  And you can let me know at our next break what

4    we're going to do.  Okay.

5             MR. BUSCHEL:  Thank you.

6             (Open court:)

7             THE COURT:  Mr. Buschel, can you please approach the

8    bench?  I only need one government attorney for this, if any.

9             (Bench discussion:)

10            THE COURT:  I have Imodium in my chambers, and I just

11   sent my law clerk to get it.

12            MR. BUSCHEL:  Okay.

13            THE COURT:  And so when she comes back, she's sitting

14   on the aisle there, you can have one of your people get it from

15   her and give it to him, in the event that would be helpful.  If

16   that's not the issue, then that's fine, but --

17            MR. BUSCHEL:  It is the issue.

18            THE COURT:  All right.

19            MR. BUSCHEL:  We may have another source --

20            THE COURT:  All right.

21            MR. BUSCHEL:  -- but I appreciate it.  If that's okay

22   with the Judge?

23            THE COURT:  That's for everyone's benefit.

24            (Open court:)

25            THE COURTROOM DEPUTY:  Judge, the marshal is

```
1    suggesting that you leave the bench, and we're going to clear
2    the courtroom.
3              THE COURT:  All right.  I'm going to take a brief
4    recess, and I think everyone is going to be asked to leave.
5              (Recess.)
6              THE COURTROOM DEPUTY:  Your Honor, recalling Criminal
7    Case Number 19-18, United States of America v. Roger Stone, Jr.
8              THE COURT:  One minute.  Something's happening.
9              All right.  Counsel, do you need a minute to confer?
10             MR. BUSCHEL:  Yes, please.
11             THE COURT:  All right.  Why don't you do that.
12             While you're talking, I just want to say for the
13   record that I appreciate the patience and concern shown by
14   everyone in the courtroom when we had to deal with a medical
15   emergency involving someone in the audience.  I hope that
16   members of the press that were here, covering the proceedings,
17   respect the personal privacy of that individual.  And we're not
18   going to have anybody sitting in that row until it's been more
19   thoroughly cleaned up.
20             All right.  Mr. Buschel, can you come to the bench,
21   with someone from the U.S. Attorney's Office, as well?
22             (Bench discussion:)
23             THE COURT:  What is happening?
24             MR. BUSCHEL:  I'm told we can proceed.
25             THE COURT:  I would like a little bit more
```

1    information.

2              MR. BUSCHEL:  Stomach sick.

3              THE COURT:  And the medication helped?

4              MR. BUSCHEL:  He says he's on the upswing.

5              THE COURT:  Okay.

6              MR. BUSCHEL:  I asked him if he wanted an hour, like

7    take lunch early.  He said we can proceed.

8              THE COURT:  Okay.  I'm going to proceed.  If he needs

9    to step out again, you need to let me know.  If he needs to

10   come and go throughout the day at will, then you need to let me

11   know what your proposal is for these proceedings, whether they

12   continue, whether that's considered a waiver, whether he would

13   be willing to waive it.  I understand he wants to be here for

14   jury selection.

15             We have 80 jurors here.  I would really like to

16   interview as many of them as possible.  At this point, I would

17   like to finish the ones we have in the jury room.  That usually

18   takes about an hour for me to get through 15.  But, I think it

19   should be less time today because we have a questionnaire, and

20   your questions will be less repetitive in the future.

21             It would, then, be my hope to bring in, possibly, 10

22   more, to see if we could get through about 20, 25 before lunch.

23   We'll see how he's doing, and if we need to break for lunch at

24   that time.

25             I -- we need 32.  I usually wait until I get 34

 1    before I stop.  Even if you assume that we strike 10 people for

 2    cause along the way, that would be -- we need about 44.

 3            So I think it's unlikely that we would get past

 4    Person Number 50.  And so one possibility, so that we're not

 5    keeping 80 people waiting, would be to say, people 50 through

 6    82, or 60 through 82 could just be excused and told to call in

 7    tonight and find out if they need to be here tomorrow morning

 8    or not.  And perhaps people, like, number -- higher than Number

 9    25, or maybe everybody on the second page could be excused for

10    lunch and told to return at 2:00, so that after we break for

11    lunch, we'll be able to start right up with them.

12            So should we take those steps, just to recognize the

13    jurors' patience and comfort while we go through this?  Does

14    everybody think that leaves us with enough people?

15            MR. KRAVIS:  The government certainly has no

16    objection to excusing for lunch the prospective jurors on the

17    list the Court identified.

18            In terms of sending people home for the day, I think

19    we would ask if maybe we could just go a little further.  I'm

20    mindful of not wanting to waste anyone's time.

21            THE COURT:  Okay.  All right.  Okay.  All right.  So

22    I'll have Mr. Haley take everybody, starting with page 2 and 3,

23    and excuse them for lunch, to return at 2:00.

24            All right.  Thank you.

25            MR. KRAVIS:  Thank you, Your Honor.

1          THE COURT:  And, you know, if at any point you need

2     to come and talk to me about the defendant's health, just say,

3     Can I approach the bench, and we'll do it.

4          MR. BUSCHEL:  I will.

5          THE COURT:  Thank you.

6          (Open court:)

7          THE COURT:  All right.  So before you bring in the

8     next juror, let's let them have their lunch and go on.  Just

9     page -- everybody from the next -- the last two pages can go to

10    lunch and come back at 2:00.  Okay.  And thank them for their

11    patience, and thank this group for their patience as well.

12          I also want to thank anybody in the audience who gave

13    assistance to the gentleman who was ill.  Appreciate it.

14          (Juror enters the courtroom.)

15          THE COURTROOM DEPUTY:  Your Honor, this is Juror

16    Number 0972.

17          THE COURT:  All right.  I think I can still say good

18    morning.  Thank you very much for your patience waiting for us

19    to return to you.

20          We've all seen your jury questionnaire.  I have just

21    a couple of follow-up questions.  First of all, it appears that

22    you currently work for the government.  You seem to have worked

23    for the federal government through more than one

24    administration.

25          Is there anything about the fact that you work for

1    the government that leads you to believe that you couldn't be

2    fair and impartial to both sides in this case?

3              THE PROSPECTIVE JUROR:  No.

4              THE COURT:  Now, you've indicated, you know, having

5    some public relations experience and news experience.  You seem

6    to be a pretty active consumer of the news.  But, you also

7    indicated that you've heard of Roger Stone but you didn't know

8    about this case.

9              Can you give -- elaborate a little bit more on what,

10   if anything, you've heard about him prior to this case?

11             THE PROSPECTIVE JUROR:  I read an article about --

12   not necessarily about the case, but, I guess, about something

13   that transpired between you, the Judge, and him.  Or he put

14   out, supposedly, something on Facebook or Twitter related to

15   this.  And I don't remember exactly the details.

16             THE COURT:  All right.  Does the fact that there was

17   some hearing involving me and Mr. Stone and something he may or

18   may not have said on social media, does that give you an

19   opinion about him or about his guilt or innocence in this case?

20             THE PROSPECTIVE JUROR:  No.  I don't remember all the

21   details of it.

22             THE COURT:  Can you put aside anything you've heard

23   about him and just base your verdict on what you learn in the

24   courtroom?

25             THE PROSPECTIVE JUROR:  Yes.

1          THE COURT:  And have you had any difficulty following

2     my instructions in terms of not paying attention to the news

3     and coverage of this case between the time you filled out the

4     questionnaire and now?

5          THE PROSPECTIVE JUROR:  I purposely haven't read

6     anything.

7          THE COURT:  And do you have -- think you'll have any

8     problem abiding by those restrictions moving forward?

9          THE PROSPECTIVE JUROR:  No.

10         THE COURT:  Okay.  Any questions for the government?

11         MR. KRAVIS:  No.  Thank you, Your Honor.

12         THE COURT:  And Mr. Buschel?

13         MR. BUSCHEL:  None.  Thank you.

14         THE COURT:  Thank you very much.  You can step back

15    into the jury room.

16         (Potential juror leaves the courtroom.)

17         THE COURT:  Any motion with respect to this juror?

18         MR. BUSCHEL:  No, Judge.

19         THE COURT:  Okay.  Thank you.

20         Let's bring in the next one.

21         (Potential juror enters the courtroom.)

22         THE COURTROOM DEPUTY:  Your Honor, this is Juror

23    Number 1089.

24         THE COURT:  Good morning -- I think it's still

25    morning.  Thank you very much for your patience in waiting for

1    us.

2              I note that you work for the federal government in

3    the IRS; is that correct?

4              PROSPECTIVE JUROR:  That's correct.

5              THE COURT:  And you've done that through multiple

6    administrations, it seems?

7              THE PROSPECTIVE JUROR:  Yes.  I -- I basically have

8    worked for the IRS for more than 16 years.

9              THE COURT:  And does the fact that you work for the

10   government lead you to favor the government, as opposed to the

11   defendant in this case?

12             THE PROSPECTIVE JUROR:  No.  I think that as a,

13   basically, federal employee, we are trained to be pretty

14   objective and fair.

15             THE COURT:  All right.  Have you heard or read

16   anything about this case or about this defendant, either before

17   you filled out the questionnaire or after?

18             THE PROSPECTIVE JUROR:  Not much.  Just about the

19   arrest that was in the papers.  Today, in the paper, there

20   was -- in *Wall Street Journal* there was a small article.  So,

21   my husband showed me.

22             THE COURT:  Okay.  So you understand that if somebody

23   tries to show you an article and you're on this jury, you need

24   to say, I'm not reading any more articles from this day

25   forward?

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Now, does the fact that he was arrested

3     or that you heard about his arrest on television, does that

4     give you an opinion as to whether or not he might be guilty of

5     the charges in this case?

6          THE PROSPECTIVE JUROR:  No.

7          THE COURT:  So you understand that he's presumed to

8     be innocent, even though he's been arrested and even though

9     he's been charged?

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Do you have any questions?

12          MR. KRAVIS:  Thank you, Your Honor.

13          Good morning.

14          THE PROSPECTIVE JUROR:  Good morning.

15          MR. KRAVIS:  You mentioned in your questionnaire, and

16     a moment ago in court, that you had read or heard something in

17     the news about the defendant's arrest.

18          Do you remember what you read or heard about the

19     arrest or where you read or heard it?

20          THE PROSPECTIVE JUROR:  I don't remember where or

21     whether it was in the papers or the news.  But, that was

22     several months ago.

23          MR. KRAVIS:  And do you remember anything about what

24     you may have read or heard?

25          THE PROSPECTIVE JUROR:  That, basically, there was,

```
 1    like, an early raid and arrest.
 2              MR. KRAVIS:  Thank you very much.
 3              Thank you, Your Honor.
 4              THE COURT:  Anything?
 5              MR. BUSCHEL:  Good morning.
 6              You're a lawyer at the IRS?
 7              THE PROSPECTIVE JUROR:  Yes.
 8              MR. BUSCHEL:  Do you supervise any other lawyers?
 9              THE PROSPECTIVE JUROR:  I review their work.
10              MR. BUSCHEL:  And do these lawyers that you
11    supervise, do they participate in criminal prosecutions?
12              THE PROSPECTIVE JUROR:  No.
13              MR. BUSCHEL:  Can you just tell us what your job
14    function is at the IRS?
15              THE PROSPECTIVE JUROR:  It's civil tax administration
16    work.  I am in Chief Counsel Office.  So, it's large and
17    international business companies, mainly.
18              MR. BUSCHEL:  Do you ever have the job of referring
19    any cases to the Department of Justice?
20              THE PROSPECTIVE JUROR:  No.
21              MR. BUSCHEL:  Any of the attorneys that you oversee?
22              THE PROSPECTIVE JUROR:  No.  It's not the process,
23    how it's done.
24              MR. BUSCHEL:  Very good.
25              Thank you, Judge.
```

1              THE COURT:  Thank you.  You can step back into the

2      jury room.

3              (Prospective juror leaves the courtroom.)

4              THE COURT:  Can we bring in the next juror?  Or do

5      you have a motion to make?

6              MR. BUSCHEL:  I have a motion.

7              THE COURT:  All right.  Go ahead.

8              MR. BUSCHEL:  Move for cause for this juror for the

9      grounds stated -- as referenced in the memo.  Also, that I

10     think the instruction to the Court was not to -- or, from the

11     Court was not to review any information about the case, and the

12     prospective juror indicated that she did not follow that.

13             THE COURT:  All right.  Well, it sounds like her

14     husband didn't follow it.  I don't believe that the information

15     we've received from her this morning or anything in her form,

16     her questionnaire, supports striking for cause.  So I'm going

17     to deny the motion.

18             But, again, any questionnaire that is of a juror who

19     you made a motion and the motion was denied will be made part

20     of the record.

21             All right.  Let's bring in the next juror.

22             (Prospective juror enters the courtroom.)

23             THE COURTROOM DEPUTY:  Your Honor, this is Juror

24     Number 0938.

25             THE COURT:  Good afternoon, I think.  Or maybe you're

1    the last one I get to say good morning to.

2            I understand that both you and your spouse, or

3    significant other, are attorneys.

4            And do you both work with the SEC?

5            THE PROSPECTIVE JUROR:  Yes, we work in the same

6    office.  We work the Division of Trading and Markets in the

7    Office of Markets Provision.

8            THE COURT:  And does that involve criminal cases at

9    all?

10           THE PROSPECTIVE JUROR:  No.  It's rule making and

11   policy work.  There's no enforcement aspect to what I do.

12           THE COURT:  And have you ever worked with the

13   Department of Justice in connection with any kind of

14   enforcement action?

15           THE PROSPECTIVE JUROR:  No.

16           THE COURT:  All right.  So is there anything about

17   the fact that you and your spouse work for the federal

18   government that leads you to believe you would favor the

19   prosecution over the defendant in this case?

20           THE PROSPECTIVE JUROR:  No.

21           THE COURT:  Now, you've indicated, I guess, that you

22   pay some attention to the news.  There were a fair number of

23   news sources that you indicate that you follow.  And then --

24   but, you indicated that you had not heard anything about the

25   defendant and did not know who he was.

1          Is it still the case that you haven't read or heard

2     anything about the defendant?

3          THE PROSPECTIVE JUROR:  I open up news sources and I

4     sort of scroll through in the morning, just to get headlines; I

5     rarely click in.  The only thing I've seen about the defendant

6     are -- there were two articles -- yesterday there was one in

7     *The Washington Post* and one in *The Wall Street Journal,* where

8     there were headlines concerning him.  I did not click into them

9     or read them.

10          THE COURT:  So other than the fact that he's on trial

11    here today, you don't know anything about him?

12          THE PROSPECTIVE JUROR:  No.

13          THE COURT:  And I take it you don't have any opinion

14    at this point about whether the government has proved its

15    charges beyond a reasonable doubt?

16          THE PROSPECTIVE JUROR:  I do not.

17          THE COURT:  Okay.  Or whether it can or will?

18          THE PROSPECTIVE JUROR:  Yeah, no opinion.

19          THE COURT:  All right.  Anything for the

20    United States?

21          MR. KRAVIS:  No.  Thank you, Your Honor.

22          THE COURT:  Anything for the defense?

23          MR. BUSCHEL:  Good morning.

24          THE PROSPECTIVE JUROR:  Good morning.

25          MR. BUSCHEL:  In your questionnaire, you said you

1    voted for Clinton, and you don't believe that this will affect

2    your ability.

3              The fact that Roger Stone aided the campaign of

4    Donald Trump, does that affect your ability in any way to be

5    fair and impartial?

6              THE PROSPECTIVE JUROR:  I don't think so.

7              MR. BUSCHEL:  Thank you, Judge.

8              THE COURT:  Okay.  Thank you.

9              THE PROSPECTIVE JUROR:  Okay.

10             THE COURT:  You can step out.

11             (Prospective juror leaves the courtroom.)

12             MR. BUSCHEL:  The same motion for cause.

13             THE COURT:  I do think it's important to point out

14   that while it is true that the government is prosecuting this

15   case, I don't think that you can assume that just because

16   someone works for the government, their interests are

17   antithetical to those of Donald Trump and, therefore, someone

18   who worked on the Donald Trump campaign.

19             At this point, Donald Trump is the chief executive of

20   the federal government for whom many of these individuals work.

21   And I don't believe this particular juror has given us any

22   basis to assume that she is biased.  We didn't ask people to

23   tell us who they voted for; she volunteered that.  But, we did

24   ask for whether they had opinions about Donald Trump.

25             But, since she hasn't indicated that that gives her a

1    negative opinion of Mr. Stone, despite the fact that you asked

2    her that direct question, I'm going to deny the motion to

3    strike her for cause.

4              Mr. Buschel, can I talk to you very quickly?

5              MR. KRAVIS:  Your Honor?

6              THE COURT:  Yes, you should come, too.  I'm sorry.

7    Someone should always be here from both sides, unless it's a

8    very rare circumstance.

9              (Bench discussion:)

10             THE COURT:  Your client seems to have his eyes closed

11   and his head in his hands.  And I just want to make sure we

12   should keep going.

13             MR. BUSCHEL:  I can't see him as well as you can.

14             THE COURT:  Okay.  All right.

15             MR. BUSCHEL:  Can I have a second?

16             THE COURT:  Yes.

17             MR. BUSCHEL:  All right.

18             (Off-the-record discussion between Mr. Buschel and

19   defendant.)

20             MR. BUSCHEL:  Is the Court willing to take a break

21   now, for lunch?

22             THE COURT:  I'll do whatever we think is best.

23             MR. BUSCHEL:  I mean, I'm trying to jam along with

24   the Court, and I think we're doing good, but --

25             THE COURT:  Yes.  I'm excited, we have four --

1          MR. BUSCHEL:  I know.  I'm not here just to hear my

2     voice and ask questions and --

3          THE COURT:  I understand.  I think everybody is

4     operating in good faith here.  So, at the end of the hour, I

5     guess, if we take our break for lunch now -- which I'm super

6     reluctant to do, but I will do it, if you think it will aid the

7     situation -- I need to know whether we're going forward or

8     whether you're making some kind of motion or whether he would

9     like to come and go with some sort of -- I want to know where

10    we stand.

11         Over the hour, you have the opportunity to consult

12    with -- I believe there's a medical professional in his family

13    and the nurse in this building.

14         MR. BUSCHEL:  There's someone in the room, yeah.  I

15    will let you know in the next 15 minutes if what -- the answer

16    to those questions.

17         THE COURT:  Okay.  Well, if we're breaking for lunch,

18    then --

19         MR. BUSCHEL:  I'll tell Mr. Haley or someone.

20         THE COURT:  Okay.  All right.

21         Do you have any point of view about this?

22         MR. KRAVIS:  Just the government's position here is

23    the defendant, obviously, has a constitutional right to be

24    present for the proceedings.  He can waive that right.  But, if

25    that's what he chooses to do, we want to make sure the waiver

1    is knowing and voluntary, and is not the result of any pressure

2    or origin as a result of -- as a result of his health.

3               THE COURT:  Correct.  Which is why, I think, if he

4    needs a break, we're going to take it.  But, all those options

5    are open to him.

6               All right.

7               (Off-the-record discussion between courtroom deputy

8    and Court.)

9               (Open court:)

10              THE COURT:  All right.  Can you turn off the husher,

11   John?

12              All right.  While I know everyone is eager to

13   continue, we're going to take a break for lunch and, hopefully,

14   resume more energetically after an hour and some fresh air.

15              So, we're going to ask the jurors that are here to be

16   back here at 1:00, and that should work with getting to the

17   ones that come back at 2:00 immediately thereafter.

18              You've already excused them all until 2:00?

19              THE COURTROOM DEPUTY:  The remainder of page 1 is

20   there.  Do you want --

21              THE COURT:  Oh, have them be back at...

22              THE COURTROOM DEPUTY:  1:30?

23              THE COURT:  -- at 1:15, and the rest of them until

24   2:00.  So, these jurors be back at 1:00, have those at 1:15.

25   And the ones that are coming at 2:00 can come at 2:00.

1              The courtroom will reopen and events will begin,

2       again, at 1:00.  And, obviously, if counsel has anything to

3       tell me in the meantime, you can inform Mr. Haley.

4              Okay.  Thank you.

5              Oh, I'm sorry.  We have one juror who has a medical

6       issue.  Mr. Haley is going to show you the information received

7       from the jury office.  If you agree, I would agree to excuse

8       that person.  So, you can let Mr. Haley know and we'll excuse

9       them, if you agree.  All right.

10             (Noon recess.)

11                                *   *   *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                      CERTIFICATE OF OFFICIAL COURT REPORTER

3

4          I, JANICE DICKMAN, do hereby certify that the above and

5      foregoing constitutes a true and accurate transcript of my

6      stenographic notes and is a full, true and complete transcript

7      of the proceedings to the best of my ability.

8                           Dated this 5th day of November 2019

9

10

11                         _____

12                              Janice E. Dickman, CRR, CMR, CCR
                                Official Court Reporter
13                              Room 6523
                                333 Constitution Avenue, N.W.
14                              Washington, D.C.  20001

15

16

17

18

19

20

21

22

23

24

25