IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,    :
                             :        Criminal Action
            Plaintiff,       :        No. 19-CR-018
                             :
                             :        JURY SELECTION – DAY 1
                             :        Afternoon Session
        vs.                  :
                             :        Washington, D.C.
                             :        November 5, 2019
ROGER JASON STONE, JR.,      :        Time: 1:15 p.m.
                             :
            Defendant.       :
_____


TRANSCRIPT OF JURY TRIAL
HELD BEFORE
THE HONORABLE AMY BERMAN JACKSON
UNITED STATES DISTRICT JUDGE
_____


A-P-P-E-A-R-A-N-C-E-S

For the Plaintiff:   JONATHAN IAN KRAVIS, Esquire
                     MICHAEL JOHN MARANDO, Esquire
                     ADAM C. JED, Esquire
                     AARON SIMCHA JON ZELINSKY, Esquire
                     U.S. Attorney's Office for
                     the District of Columbia
                     555 Fourth Street, NW
                     Washington, DC  20530
                     (202) 252-7698
                     Email: Jonathan.kravis3@usdoj.gov
                     Email: Asjz@usdoj.gov
                     Email: Michael.marando@usdoj.gov
                     Email: Adam.Jed@usdoj.gov

For the Defendant:   Bruce S. Rogow, Esquire
                     Law Office of Bruce S. Rogow, P.A.
                     100 NE 3rd Avenue
                     Suite 1000
                     Fort Lauderdale, FL 33301
                     (954) 767-8909

```
Appearances continued:

For the Defendant:   ROBERT C. BUSCHEL, Esquire
                     TARA A. CAMPION, Esquire
                     Buschel & Gibbons, P.A.
                     100 S.E. Third Avenue
                     Suite 1300
                     Ft. Lauderdale, FL  33394
                     (954) 530-5301
                     Email: Buschel@bglaw-pa.com
                     Email: Campion@bglaw-pa.com

                     GRANT J. SMITH, Esquire
                     StrategySmith, P.A.
                     401 East Las Olas Boulevard
                     Suite 130-120
                     Fort Lauderdale, FL 33301
                     (954) 328-9064
                     Email: Gsmith@strategysmith.com

                     CHANDLER PAIGE ROUTMAN, Esquire
                     Law Office of Chandler P. Routman
                     501 East Las Olas Blvd.
                     Suite #331
                     Fort Lauderdale, FL  33316
                     (954) 235-8259
                     Email:  Routmanc@gmail.com
_____

Court Reporter:      Crystal M. Pilgrim, RPR, FCRR
                     Official Court Reporter
                     United States District Court
                     District of Columbia
                     333 Constitution Avenue, NW
                     Room 4700-F
                     Washington, DC  20001
                     Email:  crystalmpilgrim@gmail.com
```

P-R-O-C-E-E-D-I-N-G-S
(1:15 p.m.)


THE DEPUTY CLERK:  Your Honor, recalling criminal

case number 19-18, United States of America v. Roger Stone.

Mr. Stone is present in the courtroom.

THE COURT:  Mr. Stone, as I understand it, you are

asking to be excused this afternoon, but it is your desire that

we continue in your absence?

THE DEFENDANT:  Your Honor, I have had food

poisoning. I want to apologize to the Court for the delay in

the proceedings.  Because I don't want to waste the Court's

time or the time of the jurors who came to get here today, yes,

I would like to waive.

THE COURT:  I'm not going to ask you for that much

personal information, but I appreciate it.

If you could please come to the lectern with your lawyer.

I just need to ask you a few questions and then hopefully we'll

be able to relieve the stress on you a little bit.

As I understand it and I don't need more details, but you

were feeling unwell and you need some time to recover this

afternoon; is that correct?

THE DEFENDANT:  That is correct, Your Honor.

THE COURT:  Do you understand that you have an

absolute constitutional right to be present at all aspects of

your criminal trial including voir dire and the selection of

jurors?

        THE DEFENDANT:  Yes, I do, Your Honor.

        THE COURT:  All right, you are telling me that it is your desire, at least for this afternoon, you're not waiving your right to be present tomorrow, to have these proceedings move forward and have your lawyers represent you but to waive your presence?

        THE DEFENDANT:  That is correct.  I hope to be better and be here tomorrow.

        THE COURT:  Has anyone put any pressure on you to make this decision as opposed to asking me to put the matter off until tomorrow?

        THE DEFENDANT:  No, absolutely not.

        THE COURT:  Do you feel under any pressure from the Court to waive your appearance this afternoon?

        THE DEFENDANT:  No, Your Honor, I do not.

        THE COURT:  Do you feel under any pressure from the prosecution to take that same step?

        THE DEFENDANT:  No, Your Honor, I do not.

        THE COURT:  So you understand that we are going to go forward.  We're going to do exactly what we've been doing only four times asking jurors follow up questions based on their jury questionnaire and your lawyers will have the right to do that on your behalf, but you won't be here to confer and whisper in their ears?

THE DEFENDANT:  Yes, I understand, Your Honor.

THE COURT:  All right.  We're going to move forward then.  I will accept your waiver.  I think it is a knowing, voluntary and intelligent waiver, and you will be well represented in your absence.  I will move forward then to continue with the voir dire procedure and excuse you from the courtroom.

Let me simply ask though if by some stroke of good fortune we end up before the end of the day with 32 or more qualified jurors, are you asking that the exercise of peremptories be put off until tomorrow morning or is he waiving his appearance for that as well?

MR. BUSCHEL:  We'll proceed to the selection, Judge.

THE COURT:  Okay, all right.  So do you understand that not only are we going to question jurors, but if we're done with that process and there's still time this afternoon, we're going to go through the procedure where they'll be seated in the courtroom and your lawyers will be striking them and the government will be making its strikes and we're going to narrow it down to the 12 jurors and the two alternates?

Are you waiving your right to be present for that as well?

THE DEFENDANT:  Yes, I understand, Your Honor, correct.

THE COURT:  Obviously, if we don't have time to do that today, that will be the first thing we do in the morning

when we'll be finishing with voir dire tomorrow morning.

All right, with all of that being said, I think this is a knowing, intelligent and voluntary waiver, I will excuse you. I hope you get the rest and the attention you need and that you're feeling better tomorrow morning.

THE DEFENDANT:  Thank you very much, Your Honor.

THE COURT:  All right, you can be excused.

(Defendant excused.)

THE COURT:  All right, Mr. Haley, let's bring in the next juror. It's 1053 I believe, the fifth one on the list.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror number 1053.

THE COURT:  Good afternoon.  Thank you for your patience.

PROSPECTIVE JUROR:  Sure.

THE COURT:  I want to ask you a few more questions to follow up on your jury questionnaire which the parties had an opportunity to read.

You indicated that you follow a fair number of news sources and you also stated that you somewhat have followed the case and you're aware generally of developments, but can't specifically describe them.

So I wondered if you could give us a little bit more information about where it is you read or heard about the case

and what, if anything, you understand about the case.

PROSPECTIVE JUROR:  I actually have to admit that it's been awhile.  Work has really picked up for me in the couple of months.  So I would say this was more of the last year thing.  So your main news outlets, main newspapers.  I have also read some books on the general subject.

THE COURT:  The subject of Mr. Stone or the investigation?

PROSPECTIVE JUROR:  The investigation.

THE COURT:  Based on what you have read or what you remember, do you have an opinion one way or the other about Mr. Stone in general or Mr. Stone and the charges that have been brought in this case?

PROSPECTIVE JUROR:  I don't know if I have a specific opinion, but I am finding it difficult, I think I would find it difficult to be completely impartial.  I feel like I know a lot, but I have served on many juries, I understand the whole concept of putting aside, so.

THE COURT:  We appreciate your candor, that's why you're here.  We are looking for people who think they can be impartial.

Can you elaborate a little bit on what it is you think you know that would make it difficult for you to be impartial?

PROSPECTIVE JUROR:  I think it's just I noticed in some of the news accounts that seemed as though, I think the

defendant may not have been totally truthful.  That's just my

opinion.  That's just the feeling I had and to be honest, it

was, it's a little hard to put that aside.  It's hard for me to

even say that because that's not typically how I am on these

things and, as I've said I have served on juries, but usually I

have gone in cold and not known things, but to be completely

honest but that's how I feel.

          THE COURT:  I'm going to ask you to just step out of

the courtroom for a moment while I ask the lawyers some

questions and we may or may not ask you to step back in.

     (Prospective juror leaves courtroom.)

          THE COURT:  I would excuse this juror.  Does anybody

have any objection?

          MR. KRAVIS:  No, Your Honor.

          MR. BUSCHEL:  Thank you, Judge.

          THE COURT:  All right.  Let's bring in the next

juror.

     (Prospective juror enters courtroom.)

          THE DEPUTY CLERK:  Your Honor, this is juror number

0685.

          THE COURT:  All right, good afternoon.

          PROSPECTIVE JUROR:  Good afternoon.

          THE COURT:  We just have a few questions for you to

follow up on the jury questionnaire.  You indicated at the time

that you don't really follow local or national news.

So I guess one question is has that changed and has anything about the defendant or the case come to your attention since you completed the questionnaire?

PROSPECTIVE JUROR:  No, everything is the same.

THE COURT:  Not everybody follows the news and you are clearly a busy person with a busy job in a different field. But is there any particular reason just because of opinions one way or the other that you don't follow the news at this time?

PROSPECTIVE JUROR:  I'm not a television person, so I don't watch television at all.  The only thing I really watch is figure skating so outside of work, that's all I do.

THE COURT:  You don't, do you consume news through the internet or social media?

PROSPECTIVE JUROR:  No.

THE COURT:  So coming into this courtroom today, do you have any point of view one way or the other about the government's side of the case or the defendant's side of the case?

PROSPECTIVE JUROR:  No.

THE COURT:  Are you confident that you could be fair and impartial in this case?

PROSPECTIVE JUROR:  Yes.

THE COURT:  All right, do you have any questions?

MR. KRAVIS:  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

MR. KRAVIS:  I just have one quick follow up question.  You mentioned a moment ago, I think I heard you say you don't really watch television.

PROSPECTIVE JUROR:  Yes.

MR. KRAVIS:  Setting aside television, in terms of newspapers, magazines, that kind of thing; is there a conscience decision not to follow news or is it just not something that you really do?

PROSPECTIVE JUROR:  It's not really something I ever did, so it's not something that I do now.  I'm just not a television person at all.  I have a television, but I never turn it on.

THE COURT:  I think his question --

PROSPECTIVE JUROR:  I guess at some point I did use to watch the news, but it is, it's just not of interest.  So basically I'm not interested really.

MR. KRAVIS:  Is that sort of lack of interest that also applies outside of the television context, things like newspapers, magazines, that kind of thing?

PROSPECTIVE JUROR:  Pretty much, yes.

THE COURT:  I'm going to need you, you've got the microphone next to your mouth, but I need you to kind of have it in front just so we can make sure the Court Reporter captures what you're saying.

MR. KRAVIS:  That's all I have.  Thank you.

THE COURT:  Thank you.  Anything for the defendant?

MR. BUSCHEL:  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

MR. BUSCHEL:  Are you on any social media?

PROSPECTIVE JUROR:  I have a Facebook account that I never go to.  Instagram that I'm on more often.  Twitter is every blue moon.  I think that's about it.

MR. BUSCHEL:  Do you advocate politically on any of those social media?

PROSPECTIVE JUROR:  No.

MR. BUSCHEL:  Thank you.

THE COURT:  Thank you very much.  You can step out.

(Prospective juror leaves courtroom.)

THE COURT:  Any motion with respect to this juror?

MR. KRAVIS:  No, Your Honor.

MR. BUSCHEL:  No, Judge.

THE COURT:  Okay, let's bring in the next.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror number 0014.

THE COURT:  All right, good afternoon.  We do have your jury questionnaire, but I have a few follow up questions to ask you.

PROSPECTIVE JUROR:  Sure.

THE COURT:  One, you indicated your job was director

of Talent Enablement at your organization.  I wondered what that meant.

          PROSPECTIVE JUROR:  It's essentially creating programs for all of the employees that I work for at my employer.

          THE COURT:  What kinds of program, training?

          PROSPECTIVE JUROR:  Like performance management, succession planning select talent management programs.

          THE COURT:  You indicated when we asked you about information about the case, you said I've heard of his name, but I have no details about the case, charges or people involved.

    Can you add any more information to that about who, if anyone, you understand the defendant to be or in what context you've heard his name?

          PROSPECTIVE JUROR:  I have heard of the name similar to, in the news you hear somebody's name, but I don't know anything beyond that other than, yes, I've heard the name before.

          THE COURT:  You don't remember the context in which his name?

          PROSPECTIVE JUROR:  No, I've seen it come up like flash on the news, you know, newspapers or whatever, but I don't read the news very often, so that's the extent of it.

          THE COURT:  Have you read any articles about him or

about this case since you filled out your questionnaire?

PROSPECTIVE JUROR:  I haven't, have not.

THE COURT:  We gave you a long list of names.

PROSPECTIVE JUROR:  Yes.

THE COURT:  And asked if you had any opinions about any of them.  You said I have opinions about Donald Trump, but I do believe I can remain fair and impartial.  I think you said partial, but I think maybe you meant impartial, but you'll let us know based on the details provided during the trial.

I guess my question to you is if you learned in this case that Mr. Stone was an advisor to President Trump in connection with his campaign and he worked either formally or informally with the campaign, would you be able to put your opinions about the President aside and judge the evidence against Mr. Stone fairly and impartially?

PROSPECTIVE JUROR:  Yes, absolutely.

THE COURT:  Even if you learned that this case involved the election and the leak of information from the Democratic National Committee, do you think you could listen to all of that and understand that the defendant is presumed to be innocent unless the government proves him guilty?

PROSPECTIVE JUROR:  Yes.

THE COURT:  All right, any questions from the prosecution?

MR. KRAVIS:  No, thank you, Your Honor.

MR. BUSCHEL:  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

MR. BUSCHEL:  Are you politically active in any way?

PROSPECTIVE JUROR:  No, I am not.

MR. BUSCHEL:  Do you donate money to any campaigns?

PROSPECTIVE JUROR:  No.

MR. BUSCHEL:  Thank you, Judge.

THE COURT:  Thank you very much.  You can step back into the jury room.

(Prospective juror leaves courtroom.)

THE COURT:  Any motion with respect to this juror?

MR. BUSCHEL:  No, Judge.

THE COURT:  Okay, let's bring in the next one.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Juror number 0883.

THE COURT:  All right, good afternoon.

We have a few follow up questions in response to your jury questionnaire.  First of all, in the time since you filled out the questionnaire, have you read or heard anything about the case or discussed the case with anyone?

PROSPECTIVE JUROR:  I have not.

THE COURT:  You indicated at the time when you filled out the questionnaire that you hadn't read or heard anything about the defendant or about the case, but you also did indicate that you consume a fair amount of news, you pay

attention to current events.

So I just wanted to make sure that you have been in the courtroom and you've seen him and you've heard his name, does that trigger a recollection that you've read or heard anything about him?

PROSPECTIVE JUROR:  It does not.

THE COURT:  We asked about any opinions you might have about law enforcement agencies in general.  This case is obviously being prosecuted by the U.S. Attorneys office which is a branch of the Department of Justice, there will be FBI agents testifying.

You indicated that you did have an opinion and you indicated that you didn't trust certain law enforcement agencies under our current President and Republican leadership.

So my question is how does that effect your ability to be fair and impartial in this case and does it?  The case is being brought by the current United States Department of Justice and it's being brought against someone who you may hear evidence worked to make sure that Donald Trump was elected president.

So does that give rise to an opinion that you think could effect you in being fair in this case?

PROSPECTIVE JUROR:  I do feel I can be fair and impartial in this case, given certain opinions.

THE COURT:  Can you elaborate a little bit on what you said about our law enforcement organizations under the

current leadership?

PROSPECTIVE JUROR:  I actually don't have more to elaborate on that.

THE COURT:  You also indicated that you have a high pressure job.  You don't have people lined up to pick up the slack for you when you're not there, and you I think have some travel during Thanksgiving week.  And so I'm concerned, it is entirely possible that the case will be over by November 22nd, but it is entirely possible that the case will not be over by November 22nd.

So are you able to see this trial through if you are selected as a juror?

PROSPECTIVE JUROR:  If there is a potential that we won't have the trial on the Wednesday before Thanksgiving, then I can make the schedule work.

THE COURT:  So that's the travel you were worried about?

PROSPECTIVE JUROR:  Uh-hmm.

THE COURT:  So and that was just a yes for the record, you said uh-hmm?

PROSPECTIVE JUROR:  Yes.

THE COURT:  If you're sitting here and it gets to be the end of the prior week, you're not going to be distracted by concerns that this trial is going too long and you really can't sit here anymore?

PROSPECTIVE JUROR:  I will not be distracted.

THE COURT:  All right, any questions from the government?

MR. KRAVIS:  Thank you, Your Honor.  I just have one.  Good afternoon.

PROSPECTIVE JUROR:  Hello.

MR. KRAVIS:  I just have one brief follow up question.  You were asked by the Court a moment ago about your response to the question about law enforcement organizations.

I just want to make sure.  My colleagues and I work for the U.S. Attorneys office for the Department of Justice as the Court mentioned, may call some witnesses to the trial who are current or former special agents with the FBI.

Whatever your views may be about current leadership, I'm not going to ask you about them, would you be able to set those views aside and look at those witnesses just as you would any other witness who testified in the case?

PROSPECTIVE JUROR:  Yeah, absolutely, I can be fair.

MR. KRAVIS:  That's all I wanted to know.  Thank you, Your Honor.

THE COURT:  Mr. Buschel?

MR. BUSCHEL:  Thank you, Judge.  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

MR. BUSCHEL:  You said that you worked closely with

certain members of Congress.  What do you do?

PROSPECTIVE JUROR:  Not members of Congress.

MR. BUSCHEL:  I work in an organization that works closely with members of Congress.  Did I get that wrong?

THE COURT:  I think in connection --

PROSPECTIVE JUROR:  I work at an organization that works closely with the Department of Interior, but not members of Congress.

THE COURT:  I guess you get funding from Congress in that possibly?

PROSPECTIVE JUROR:  No.  I work for a foundation, but we partner, we work closely.

MR. BUSCHEL:  Just so I make sure I have the right papers, you're the vice-president of programming and production?

PROSPECTIVE JUROR:  Yes.

MR. BUSCHEL:  So I have the right person.  Just question 31, Judge.

THE COURT:  Yes.  I think you were asked have you or a close friend, family member ever been employed by or had any association or connection with Congress or a congressional committee.  You checked off yes.  You said I work at an organization that works closely with members of Congress.

So I mean in terms of the Department of Interior, or your foundation is it important to get congressional support for

these activities or are they on the board or advisory board or anything like that?

PROSPECTIVE JUROR:  No, it's more in attendance at events.

THE COURT:  So sometimes you try to have them at marquee events?

PROSPECTIVE JUROR:  People do attend at events that are part of my work.

THE COURT:  And you have to take note of them, make special arrangements when they're going to be there or things like that?

PROSPECTIVE JUROR:  Yes, I work for a foundation.  I work closely with the Department of the Interior and with the National Park Service and we put on events together.

THE COURT:  Well, does the fact that you sometimes have to deal with members of Congress make you feel that you would favor one side or the other if the allegations here are about not being truthful to members of Congress?

PROSPECTIVE JUROR:  I said it will not affect my opinion.

THE COURT:  All right.

MR. BUSCHEL:  Do you have a relationship, meaning do you know the names of the congressmen that you deal with or generally --

PROSPECTIVE JUROR:  No, I was just being in general,

just trying to put down what I could think of that would be

maybe --

          MR. BUSCHEL:  In one of your questions, in one of the

questions that was asked it says do you have an opinion about

those individuals or if anything about this case will affect

your ability to be fair and impartial.

     I mean, you do say that you have a negative opinion of the

Republican party and dislike for the current President.  Can

you articulate how you can set that aside, those feelings?

          PROSPECTIVE JUROR:  I can set it aside because I feel

that I myself am a fair person and unbiased and I think people

can have certain opinions and still make fair judgments.

          MR. BUSCHEL:  Even understanding that Roger Stone

advocated for the election of President Trump?

          PROSPECTIVE JUROR:  Yes.

          MR. BUSCHEL:  Thank you, Judge.

          THE COURT:  All right.  You can step out.  Thank you.

          PROSPECTIVE JUROR:  Thank you.

     (Prospective juror leaves courtroom.)

          THE COURT:  Does anyone have any motions they want to

make in this case?

     I'm going to let the prosecution start.  Yes.

          MR. KRAVIS:  No.

          MR. BUSCHEL:  Yes, we ask to dismiss this juror for

cause.

The question to answer certain -- the prospective juror's response to the Court's question similar to question 30 seemed she was hesitant to even give an answer to the Court.

I think the question 15, the written answer certainly gives pause as well a reasonable doubt as to whether this juror can be fair and impartial to question 30.

THE COURT:  I'm a little concerned about question 30. I don't necessarily think that everyone who says they have a negative opinion of the President is automatically excludable for cause, but she spread it out to the entire party and we're going to have, there's issues about the majority versus the minority in the committee that dealt with the report.  There's a lot of witnesses who are coming in one way or the other who are active in this campaign.

I didn't feel like, seemed to me that there, she didn't really completely answer my question about her answer to the question 15 and in an abundance of caution, I'm going to grant the motion.

Let's bring in number 1136.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Juror number 1136, Your Honor.

THE COURT:  All right, good afternoon, sir.

PROSPECTIVE JUROR:  Hello.

THE COURT:  We have the benefit of your jury questionnaire, but we do have a couple of follow up questions.

My first question is whether you have read or heard
anything since the time that you completed the questionnaire
that gives you any more information about the defendant or the
case?

PROSPECTIVE JUROR:  Not more information, but
actually I clicked on a Post article yesterday and it said that
the trial was starting today and I realized what I was doing
and I clicked off.

THE COURT:  You don't think that you would have any
trouble continuing to follow that instruction if you were
serving in this case?

PROSPECTIVE JUROR:  No.

THE COURT:  At the time you filled out the
questionnaire you thought you heard something but you weren't
sure what.  You indicated that perhaps you heard that he was a
go between or set up some meetings, you weren't sure where I
heard it, possibly from the news outlets.

Do you have any more, any more information you can give me
about what it is you think you may have heard about the
defendant in the past?

PROSPECTIVE JUROR:  I just know, I know something to
do with Trump and I don't remember exactly what though, one is
a satellite of people around Trump I guess.

THE COURT:  You indicated that you had a pretty
strong negative opinion about President Trump and his veracity

and his integrity.  So my question is does that spillover to people that are in his consolation of people around him or can you treat Mr. Stone fairly and impartially if he sits before you?

PROSPECTIVE JUROR:  Probably not.  When I wrote the form I thought I said I could.  I have thought about it a lot, and especially what has gone on lately and I wrestled with this and probably not.

THE COURT:  That's why you are here.  We ask you to be honest, so we appreciate it.  A lot of people come in and they don't want to tell us how they really feel.  So I don't want to discourage you from telling us how you really feel.

You will hear in this case that the defendant was involved in supporting the campaign efforts for President Trump either officially or outside the campaign as an advisor, but he participated in the effort to support the Trump campaign and that's certainly part of this case.

And does that give you pause about your ability to be fair and give him the benefit of the presumption of innocence that he's entitled to in this case?

PROSPECTIVE JUROR:  I mean yeah, I think it was pretty corrupt everything that happened, so in general.  So I guess it would give me pause.

THE COURT:  Do you have a point of view at this point about whether he was involved in anything that was corrupt?

PROSPECTIVE JUROR:  I don't know exactly how he was involved, he hasn't been in the news lately.  I read news about other things in the campaign, things gone on, impeachment blah, blah, blah, but I don't know about the defendant.

THE COURT:  Does the government have any questions they want to ask this juror?

MR. KRAVIS:  I just wanted to -- good afternoon.

PROSPECTIVE JUROR:  Hello.

MR. KRAVIS:  I just wanted to follow up briefly on the last topic that you were discussing.

With respect to the defendant in particular, Mr. Stone in particular, have you thought about it, would you be able to set aside any views you had about the current president and judge Mr. Stone solely based on the evidence that was presented at trial or do you think you would have trouble doing that?

PROSPECTIVE JUROR:  I think I would have trouble.

MR. KRAVIS:  Okay, thank you.

THE COURT:  All right.  I'm going to ask you to step out.  If we have more questions to ask you, we'll bring you back in or we may not bring you back in.  But thank you for your candor.

(Prospective juror leaves courtroom.)

THE COURT:  I'm going to strike this juror, excuse this juror.  Let's bring in the next one.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Juror number 0560.

THE COURT:  Hello.  We have had the opportunity to read your jury questionnaire, but I do have a few follow up questions for you.

You indicated that you do pay some attention to current events in the news but when we asked you if you had read or heard anything about Mr. Stone or this case, you said I recall generally that it occurred.  I believe that I read about him being arrested in Florida which was probably in connection to this case.  I do not recall any other specifics.

So I just want to make sure I understood when you said I recall generally that it occurred, what the it was and what you were referring to?

PROSPECTIVE JUROR:  Generally that.  So I think I was aware that he had testified to, okay, Congress and I was aware that he was arrested in Florida, so.

THE COURT:  Do you know what he was arrested for or what he was charged with and how that relates to the testimony with Congress?

PROSPECTIVE JUROR:  I can make guesses.  I mean, I didn't at the time.

THE COURT:  Okay.

PROSPECTIVE JUROR:  I knew that it happened and just assumed that it was all part of the same set of circumstances.

THE COURT:  I think I told you twice that that's what

he's charged with.

        PROSPECTIVE JUROR:  Yes.

        THE COURT:  You indicated that you have some opinions about some of the people we listed in our very long list of people who names might come up in this case.

        PROSPECTIVE JUROR:  Yes.

        THE COURT:  So one question is, is Mr. Stone among those people?  Do you have any opinion about him coming into this case one way or the other?

        PROSPECTIVE JUROR:  I don't think so.  I mean, he's clearly a flamboyant character.  I would say that's about the extent of the opinion that I've formed.  I haven't read articles about him or seen movies or anything like that.

        THE COURT:  Where have you derived that information?

        PROSPECTIVE JUROR:  Just, just like generally.  Well, how do I say it?  He's a reasonably high profile person, so just he comes up in news articles, in sort of histories of political popular culture I guess I'd say.

        THE COURT:  Was there anything about his being mentioned in political accounts or popular culture accounts or the fact that he worked on the Trump campaign that gives you pause or leads you to doubt your ability to be completely impartial in considering the charges against him?

        PROSPECTIVE JUROR:  No, I don't think so.  I suspect that our politics are very different but that's very different

from breaking the law and not breaking the law.

THE COURT:  When you had opinions you indicated about some of the people listed, is there anyone in particular you had in mind in that list?

PROSPECTIVE JUROR:  Oh boy, it was a long list and I don't remember it precisely.

THE COURT:  There were a number of people who had been involved either in the Trump campaign or the Trump administration.  So does any of that is his association with those people or the fact that they may be witnesses in this case effect your ability to be fair in this case?

PROSPECTIVE JUROR:  I don't think so, no.

THE COURT:  You talked about international travel the week of Thanksgiving.  And so when exactly is that suppose to start?

PROSPECTIVE JUROR:  I have like the Friday evening before Thanksgiving, is it the 20th, 24th.

THE COURT:  So you are saying if this trial is still going at that point, you would have trouble being here on a Monday and Tuesday?

PROSPECTIVE JUROR:  That is correct.

THE COURT:  I take it this isn't a trip that you're inclined to reschedule?

PROSPECTIVE JUROR:  My wife and I would have to have a long conversation about that.

          THE COURT:  All right.  Does the government have any
questions?

          MR. KRAVIS:  No, thank you, Your Honor.

          THE COURT:  Anything?

          MR. BUSCHEL:  No, thank you, Judge.

          THE COURT:  All right, thank you, sir.  You can step
out.

     (Prospective juror leaves courtroom.)

          THE COURT:  Does anybody have a point of view about
this juror?

          MR. KRAVIS:  Sorry, can I just have one moment?

          THE COURT:  Yes.

          MR. KRAVIS:  Thank you.

     (Pause.)

          MR. KRAVIS:  We do not have a motion with respect to
the juror.

          THE COURT:  It is I believe still November 5th, which
gives us about two and a half weeks.  One of those weeks has a
holiday in it.  I would be, I think everyone in the courtroom
would be most delighted to have the trial efficiently
completed by November 22nd.  I think that is possible.  But I
am not sure that it's likely, so what is your point of view?

          MR. BUSCHEL:  We think it's likely.

          THE COURT:  So are you making any motion with respect
to this juror?

MR. BUSCHEL:  No, ma'am.

THE COURT:  All right.

MR. KRAVIS:  Your Honor.

THE COURT:  Yes.

MR. KRAVIS:  May I just address the Court briefly?

THE COURT:  Yes.

MR. KRAVIS:  I know this may be an issue that comes up in the questionnaire.  In looking at the questionnaire responses the government, we talked about this, about what we think our estimate for the length of the trial was going to be and recognizing that we have limited information about how long the defense may want to cross examine our witnesses, recognizing that today is moving maybe a little bit more slowly than everyone had hoped for or anticipated.

We think our level best guess here is that we will be concluding our case by the Tuesday or Wednesday following Veterans Day which is a little bit less time than we had estimated in the joint pretrial statement that we filed.

I don't know what the defense's plan is, how long that is going to be.  I am just putting that information out there in hoping that it's helpful to the Court accessing these answers.

THE COURT:  I'm not going to ask you to estimate how long your case is going to be, referring to the possibility the defendant might testify.  You obviously don't have to make a decision any time soon.

I think we can go forward with, I'm less troubled about the person who is planning to be away the Wednesday than somebody who is planning to be away Monday and Tuesday.  But if we get close I think there are arrangements that can be made. We could do the closings the following week.  I think we can accommodate people and if we don't have to strike people for that reason and no one is asking me to, then I won't.

So I think we should go on to the next juror.

Thank you for that information, it's helpful.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror number 0048.  Yes, 0048.

THE COURT:  All right, good afternoon.  Thanks for your patience all day so far.

We've looked at your jury questionnaire, I have a couple of questions for you.  One I note that you've like many D.C. residents had many opportunities to serve on some of our juries.  But you've also served as a grand juror.  Was that in D.C. or was that in Superior Court or was that in Federal Court?

PROSPECTIVE JUROR:  It was in D.C, the lower level.

THE COURT:  The other building.  The D.C. Superior Court?

PROSPECTIVE JUROR:  Correct.

THE COURT:  Do you understand that when you were a

grand juror, the government presents its side of the case and that's the only side of the case you hear and you're asked whether there's probable cause to believe that a crime was committed and the defendant committed it.  But in a trial you're going to be asked to determine whether the government has proved the charges beyond a reasonable doubt.

So do you understand that there's a higher standard of proof at issue if you sit as a juror in this case?

PROSPECTIVE JUROR:  Correct, yes.

THE COURT:  You're not going to have any problem following those instructions?

PROSPECTIVE JUROR:  Nope.

THE COURT:  You indicated that you'd read or heard something in the news about Mr. Stone being charged.  Do you recall anything further about what you heard or where you heard it?

PROSPECTIVE JUROR:  On the news, on the news.  I think I may have read something in the paper.  Either one of those, the national news or the newspaper.

THE COURT:  Do you follow the national news in particular the political information or information about ongoing investigations very closely?

PROSPECTIVE JUROR:  I listen, but do I follow it closely?  It's just too much.

THE COURT:  Is there anything about the fact that you

heard that Mr. Stone was possibly charged and he was arrested
that gives you an opinion sitting here right now about whether
he's guilty or not of the charges in this case?

PROSPECTIVE JUROR:  I don't have an opinion, no.

THE COURT:  Is there any reason you feel that you
couldn't be fair and impartial to both sides in this case?

PROSPECTIVE JUROR:  I think I can be fair.

THE COURT:  Does the government have any question?

MR. KRAVIS:  Thank you, Your Honor.

Good afternoon, ma'am.

PROSPECTIVE JUROR:  Good afternoon.

MR. KRAVIS:  I saw on your questionnaire that you
said you were in the process of completing an application to
serve as a volunteer with an organization called Project Knit
Well.

PROSPECTIVE JUROR:  Yes.

MR. KRAVIS:  First of all, did you put in the
application?

PROSPECTIVE JUROR:  It's still in the process.  I
haven't completed the application process yet.

MR. KRAVIS:  Good luck.

Can you just tell me what is Project Knit Well?

PROSPECTIVE JUROR:  Yes.  So it's an organization
that help people that who are, that teach -- let me back up.
When I was young, I was in the hospital a lot and that's how I

learned to knit.  So this organization just helps people who are like having chemotherapy or, you know, spending long stretches of time in medical facilities or prison learn to knit.  I think it's relaxing.

MR. KRAVIS:  Thank you.  That's all the question I have.

THE COURT:  Thank you.  Anything for the defense?

MR. BUSCHEL:  No, Judge.

THE COURT:  Thank you very much.  You can step back out.

(Prospective juror leaves courtroom.)

THE COURT:  Should I bring in the next juror?

MR. BUSCHEL:  Yes.

THE COURT:  I just don't want to miss a motion if you've got one.

MR. BUSCHEL:  Thank you.  Thank you.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror number 1169.

THE COURT:  All right, good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  We've got your jury questionnaire and there's some information there that I want to ask you some questions about.  Without being too personal, I do want to note that your application reveals that you are, you've reached an

age where you get to decide whether you want to serve on a jury
or --

(Prospective juror waived her hands.)

(Audience laughter.)

-- or not.  So I wanted to make sure that you understand
you had the option and ask if you'd like to exercise that
option and I take it by the smile on your face that you would
request to be excused from service on that basis?

PROSPECTIVE JUROR:  Yes, I would, please.

THE COURT:  And it is not because we don't think you
wouldn't be an excellent and well qualified and impartial
juror, but under the circumstances, you get to make the choice.

So thank you very much for your time this morning and you
will be excused.

PROSPECTIVE JUROR:  And may I say something?  Age has
it's privileges everybody.

(Audience laughter.)

THE COURT:  We'll all keep that in mind.

(Prospective juror leaves courtroom.)

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror 1261.

THE COURT:  1261?

THE DEPUTY CLERK:  I'm sorry, 1201.

THE COURT:  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  We all have your jury questionnaire and we have a few follow up questions based on the questionnaire. The first one I want to tell you without getting too much into your personal information, I want to let you know that you are of an age where you have the option to choose whether or not you would like to be excused from jury service on that basis alone.

And I think that information may have been on the summons, but in the event you didn't notice it, I want to let you know that if you would prefer to be excused, you have the right to exercise that choice.  If you do, that's fine.  If you don't, then we'll ask you the rest of the questions.

PROSPECTIVE JUROR:  I'd like to answer by saying that I would not like to be excused on that account, but something has come up in the meantime.  My wonderful sister who has had lots of health problems is turning, has made it to 70 and I've made plane reservations for, to be there Thanksgiving day, I would be there that whole week before.  But I can't come back until Monday.

If there's a chance that we won't be meeting on that Monday, then I would be very happy to serve.

THE COURT:  The Monday after Thanksgiving?

PROSPECTIVE JUROR:  Yes.

THE COURT:  All right.  I don't think that's an impediment at this point to your service.  I think we're

anticipating that the case would be completed before then.

          PROSPECTIVE JUROR:  That's what you had suggested

before.

          THE COURT:  But let me go ahead then and ask you some

other questions.

          PROSPECTIVE JUROR:  No, it would be an honor to

serve.

          THE COURT:  Thank you for bringing that up.

     We asked if you had read or heard anything about the

defendant and I think you did indicate that you pay some

attention to the news, but you said I don't remember exactly

what the issue is surrounding this particular case.

     Have you read or heard anything about Mr. Stone or about

the case?

          PROSPECTIVE JUROR:  I just happened to notice this

morning that that's what this case was going to be.  I'd

forgotten as a matter of fact.  You did tell us.  And I saw in

the Post that they're starting, that clearly was this, so

that's all I know.

          THE COURT:  So you don't know who he was or what he's

charged with doing?

          PROSPECTIVE JUROR:  Yes, vaguely, sure.  I know the

issues of, the general issues.

          THE COURT:  Can you tell us generally what it is that

you know?

PROSPECTIVE JUROR:  I know that there's a problem with who, what foreign country might have interfered with our previous presidential election.  I know that there's been some testimony and that maybe that there's a problem that maybe that wasn't true testimony and I think that's what the issue is.

THE COURT:  Have you formed an opinion one way or the other about whether the allegations in this case are true or whether he's guilty or innocent at this point?

PROSPECTIVE JUROR:  Not in any deep way.

THE COURT:  Do you have a shallow opinion?

PROSPECTIVE JUROR:  (Laughter.)

I had a knee jerk reaction, but it's not a deep conviction.  I do that a lot.  I have a -- whoops.

THE COURT:  Well, obviously you're not alone.

But obviously the courtroom is the place where the knee jerk reaction has to be put aside.

PROSPECTIVE JUROR:  Absolutely.

THE COURT:  And ignored for the considered reaction and not just consider the thought putting the government to the burden of proving the defendant's guilt beyond a reasonable doubt.

PROSPECTIVE JUROR:  Absolutely.

THE COURT:  Can you follow those instructions and put aside --

PROSPECTIVE JUROR:  Absolutely.

THE COURT:  -- any knee jerk reaction you may have?

PROSPECTIVE JUROR:  Absolutely.

THE COURT:  I understand that you've been active for some time with the League of Women Voters; is that true?

PROSPECTIVE JUROR:  That's true.

THE COURT:  Am I correct that that is an organization dedicated to having people involved in the democratic process but it's non partisan?

PROSPECTIVE JUROR:  That's correct.

THE COURT:  So is there anything about your participation in their work that leads you to favor one side or the other in this case?

PROSPECTIVE JUROR:  Not in this case.  I haven't done that work for about five years now.

THE COURT:  All right.  If you learned through this case that the defendant was involved in efforts to elect President Trump or worked on or with his campaign, would you be able to be fair to him and give him the benefit of doubt as you're required to do?

PROSPECTIVE JUROR:  Sure.

THE COURT:  Any questions?

MR. KRAVIS:  Nothing from the government.

Thank you, Your Honor.

THE COURT:  All right.

MR. BUSCHEL:  No, Judge, thank you.

THE COURT:  Thank you very much.  You can step back into the jury room.

(Prospective juror leaves courtroom.)

THE COURT:  Any motions with respect to this juror?

MR. BUSCHEL:  No, Judge.

MR. KRAVIS:  Not from the government.

THE COURT:  Okay.  Let's bring in the next one.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror number 1261.

THE COURT:  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  We've had the opportunity to review your questionnaire but I do have a few follow up questions.

PROSPECTIVE JUROR:  Okay.

THE COURT:  I understand that you do have a law degree; is that correct?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Are you practicing law now?

PROSPECTIVE JUROR:  No.

THE COURT:  Have you ever practiced criminal law?

PROSPECTIVE JUROR:  No, not criminal law.

THE COURT:  You did once serve I believe as the foreperson of a federal grand jury; is that correct?

PROSPECTIVE JUROR:  Yes, yes, Your Honor.

THE COURT:  So that was a pretty long assignment as I understand it.

PROSPECTIVE JUROR:  Two years.

THE COURT:  When you came and went was it in this federal courthouse or --

PROSPECTIVE JUROR:  No, it was in Western District of Tennessee.

THE COURT:  At that time as you know, you only heard from one side.  You heard the government's side of the case. And you were only asked to determine whether there was probable cause to believe whether a crime had been committed and the defendant had committed it.

You understand that that will not be the standard that applies in this case and the government is going to have to prove its case beyond a reasonable doubt here?

PROSPECTIVE JUROR:  Yes.

THE COURT:  You've also indicated a fair amount of paying attention to news and social media including about political things?

PROSPECTIVE JUROR:  Yes.

THE COURT:  And when we asked what you read or heard about the defendant, you do understand that he was involved in Mr. Trump's campaign in some way?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Is there anything about that that affects

your ability to judge him fairly and impartially sitting here right now in this courtroom?

PROSPECTIVE JUROR:  Absolutely not.

THE COURT:  What is it that you have read or heard about him?

PROSPECTIVE JUROR:  So nothing that I can recall specifically.  I do watch sometimes paying attention but sometimes in the background CNN.  So I recall just hearing about him being part of the campaign and some belief or reporting around interaction with the Russian probe and interaction with him and people in the country, but I don't have a whole lot of details.  I don't pay that close attention or watch C-SPAN.

THE COURT:  Can you kind of wipe the slate clean and learn what you need to learn in this case from the evidence presented in the courtroom and no other source?

PROSPECTIVE JUROR:  Yes.

THE COURT:  You actually have had some interest in Congress yourself?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Does the fact that this case involves allegations of not being truthful to Congress, is that something that you think that the nature of the allegations alone would make it hard for you to be fair?

PROSPECTIVE JUROR:  No.

THE COURT:  Does the government have any questions?

MR. KRAVIS:  No, Your Honor, thank you.

THE COURT:  Defense?

MR. BUSCHEL:  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

MR. BUSCHEL:  Did you ever work for anyone in Congress?

PROSPECTIVE JUROR:  No.

MR. BUSCHEL:  You've worked on campaigns for Congress people running for Congress?

PROSPECTIVE JUROR:  I ran for Congress.

MR. BUSCHEL:  You ran for Congress?

PROSPECTIVE JUROR:  I worked on my own campaign.

MR. BUSCHEL:  And you have friends who worked for other congressmen?

PROSPECTIVE JUROR:  Yes.

MR. BUSCHEL:  Do you have any political aspirations now?

PROSPECTIVE JUROR:  I don't know, not federal.

MR. BUSCHEL:  What might they be?

PROSPECTIVE JUROR:  My home state in Tennessee. No local.

MR. BUSCHEL:  Just recognize that there might be some media --

What are your aspirations?

PROSPECTIVE JUROR:  I served, can I just say I served in political office in Memphis in a local office on the school board.  So I, one day I wake up and say I run for, you know, office again in Memphis to impact education.  One day I wake up and say no way in the world would I do that.  So I don't have an immediate plan to run for office.

MR. BUSCHEL:  The fact that you run for an office, you're affiliated with a political party.  Roger Stone is affiliated with the Republican party, Donald Trump.  You understand what I'm saying and getting at?

PROSPECTIVE JUROR:  I do.

MR. BUSCHEL:  How do you feel about that?

MR. KRAVIS:  Objection.

THE COURT:  Can you make that question a little bit more crisp?  Is there anything about his affiliation with the Trump campaign and the Republican party in general that gives you any reason to pause or hesitate or think that you couldn't fairly evaluate the evidence against him?

PROSPECTIVE JUROR:  No.

MR. BUSCHEL:  Thank you, ma'am.

THE COURT:  All right, you can step out.

(Prospective juror leaves courtroom.)

THE COURT:  Mr. Buschel, you have a motion?

MR. BUSCHEL:  No.

THE COURT:  Okay, let's bring in the next juror.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror 0265.

THE COURT:  All right, good afternoon.

We've read your questionnaire and we just wanted to make sure there were any other follow up questions that we need to ask.  You've indicated I guess you have some people in your family who have done some work, usually as a contractor in connection with the federal government.

Is there anything about any of that that leads you to favor one side in this case?

PROSPECTIVE JUROR:  No.

THE COURT:  Was the gentleman who just walked in and waived was he waiving at you?

PROSPECTIVE JUROR:  No.

THE COURT:  Because you were smiling and then you've talked about your -- then I just wondered if he was waiving at you because you were smiling and I was thinking that maybe that's why I didn't know who he was.

PROSPECTIVE JUROR:  No, absolutely not.  I wasn't even looking in that direction.

THE COURT:  Okay, you served on a jury in the past, not a grand jury.  You've indicated that you receive a fair amount of news and you've followed some of the investigations, I think you said somewhat closely.  But then when we asked if you read or ever heard anything about the defendant and you

said no, and I just want to make sure that as you think about

it now or since you filled out the questionnaire are you aware

or heard anything about Mr. Stone in the news?

        PROSPECTIVE JUROR:  I am not.

        THE COURT:  So sitting right here today do you have

any opinion one way or the other about the charges in this

case?

        PROSPECTIVE JUROR:  No.

        THE COURT:  Now when asked if you had opinions about

other individuals whose name might come up in the case, you

were candid about your point of view about the President's use

of twitter, and my question is if you were to understand

Mr. Stone worked hard for the President's election, and was in

his circle of either people working formally or informally to

advance his campaign, does that, does your opinion of the

President affect your opinion of Mr. Stone?

        PROSPECTIVE JUROR:  (Pause.)

  Maybe, I don't know.

        THE COURT:  Well, I know it's a difficult question,

we're asking you to be candid, but that was a pretty long

pause.  So what were you thinking about as you considered how

you should answer that question?

        PROSPECTIVE JUROR:  I guess I would have to hear the

full case to make a decision.  To see how involved he was and

what extent of the involvement was, the election.

THE COURT:  The issue you're going to be asked to decide is whether or not the government has proved the charges against him beyond a reasonable doubt.  And so if it turned out he was closely involved with the campaign, would that effect your ability to be fair and to judge him impartially?

PROSPECTIVE JUROR:  No.

THE COURT:  You're suppose to wait until the end of the case to decide --

PROSPECTIVE JUROR:  Right.

THE COURT:  -- whether he's guilty or not but you're not suppose to wait to the end of the case to decide whether you can be fair and impartial or not.

I guess my question is do you have a question whether you could be, if you heard maybe he was on the phone with people from the campaign or he was one of the people on the campaign or what he was doing was trying to help Donald Trump become the president of the United States?

PROSPECTIVE JUROR:  I wouldn't let my opinion of the President influence my decisions or my beliefs on the court case.

THE COURT:  Do you think you would find that difficult?

PROSPECTIVE JUROR:  No.

THE COURT:  I understand you understand the importance of it, but -- all right.

Do you have any questions?

     MR. KRAVIS:  No, thank you, Your Honor.

     THE COURT:  Mr. Buschel?

     MR. BUSCHEL:  No, Judge.

     THE COURT:  All right, thank you very much.  You can step out.

(Prospective juror leaves courtroom.)

     MR. KRAVIS:  We're going to move to excuse the juror.

     THE COURT:  All right.  You might as well state the basis.

Do you also agree?

     MR. BUSCHEL:  Yeah.

     (Audience laughter.)

     THE COURT:  The effect was completely inappropriate at all times.

     MR. KRAVIS:  Right because we have a written record and it doesn't reflect that the Court asked the same questions the Court had asked other prospective jurors.  There were some very long pauses and some kind of odd reactions, just sort of put that on the written record.

And although the juror in the end did say that her views, or political views would not effect her view of the evidence, I think that her demeanor in giving the answers perhaps suggested to the contrary.  That's a basis for the motion.

     THE COURT:  Yes, I think she hesitated for a

considerable period of time in answering the question about

whether she could put her views of the President aside and so

she'll be excused.

        MR. KRAVIS:  Thank you.

        THE COURT:  Bring in the next juror.

        THE DEPUTY CLERK:  They're all gone.

        THE COURT:  They're all gone.  So this would probably

be a good time for us to take a ten minute break.

    As I understand it, we've already, we've got more to go.

Yes, let's bring 15 more and you all can remain seated but

we're going to resume in ten minutes, okay.

    Thank you.

    (Recess at 2:17 p.m.)

    (Proceedings resumed at 2:40 p.m.)

    (Prospective juror enters courtroom.)

        THE DEPUTY CLERK:  Your Honor, recalling criminal

Case Number 19-18, United States of America v. Roger J. Stone.

        THE COURT:  What is the juror number of the one we're

taking next?

        THE DEPUTY CLERK:  1402.

        THE COURT:  Okay, and let's just put on the record,

what is the number of the one that we've -- has the family

medical issue that has departed?

        THE DEPUTY CLERK:  Line 65.

        THE COURT:  And where is he?

THE DEPUTY CLERK:  On the third page, page 3.  1550, line 65.

THE COURT:  Okay, and the parties are aware of that?

THE DEPUTY CLERK:  I just told them.

THE COURT:  So counsel don't have any objection to the fact that we've excused Number 1550, line 65 on page 3?

MR. KRAVIS:  No objection.  Is the -- just to be clear, is that person excused for the --

THE COURT:  We've excused him for the day and we'll have him call in and find out if we need him in the morning, but it seemed to me like he may also not be available tomorrow either.

MR. KRAVIS:  No objection.

THE COURT:  Okay, but he's not here now, is the point.

THE DEPUTY CLERK:  Not struck for cause yet?

THE COURT:  Not yet.

THE DEPUTY CLERK:  Thank you, Judge.

THE COURT:  And we're going to take 1402 out of order.  And this was actually the question I wanted to ask her about anyway.

(Prospective juror entered courtroom.)

THE DEPUTY CLERK:  Your Honor, this is Juror Number 1402.

(Prospective juror entered courtroom._

THE COURT:  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  Thanks for your patience waiting for us.
We've looked through your jury questionnaire and there was an
answer that you gave at the end that I wanted to talk about
first.  And that was that you indicated you have a child who's
in school and he gets out at 3:45 p.m.

PROSPECTIVE JUROR:  Yes.

THE COURT:  So are you the one who picks him up at
school?

PROSPECTIVE JUROR:  Yes.

THE COURT:  And then you take care of him once he
gets home in the afternoon?

PROSPECTIVE JUROR:  Yes.

THE COURT:  And is there anybody else in the
household who could do that if you were picked to serve on this
jury?

PROSPECTIVE JUROR:  No.

THE COURT:  So you're a single mom?

PROSPECTIVE JUROR:  Yes.

THE COURT:  You're taking care of him yourself.
Okay, and so would it be a hardship for to you to  sit in this
case?  You would be concerned about that every day?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay, all right.

Does anybody have any questions that they want to ask this juror?

MR. KRAVIS:  No, thank you, Your Honor.

THE COURT:  Okay, thank you very much.  You can step out.

PROSPECTIVE JUROR:  Thank you.

(Prospective juror leaves the courtroom.)

THE COURT:  Does anybody disagree with excusing this juror?

MR. KRAVIS:  No objection.

THE COURT:  Okay.

MR. BUSCHEL:  No objection.

THE COURT:  Okay, so that's Number 1402.  All right, now we can go back in order.

MR. KRAVIS:  That's fine.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is Juror Number 1650.

THE COURT:  All right, good afternoon.  Thanks for your patience throughout this process today.

We have a few questions based on your jury questionnaire. You indicated that you'd heard something about the fact that how the defendant had been arrested and that it had something to do with President Trump and the Mueller investigation.

Is there anything else that has come to your attention

about him or anything more that you know about him or about
this case?

        PROSPECTIVE JUROR:  No.

        THE COURT:  Had you followed the Mueller
investigation closely?

        PROSPECTIVE JUROR:  No.

        THE COURT:  Okay, so is there anything about the fact
that you heard that he was arrested and the case may have
arisen out of that investigation that gives you an opinion
sitting here right now, one way or the other, about his guilt
or innocence?

        PROSPECTIVE JUROR:  No, I've read the headlines
before.  I was selected for jury duty, but I have not read any
of the stories in depth.

        THE COURT:  Okay, so do you have an opinion about the
charges in this case at this point?

        PROSPECTIVE JUROR:  No.

        THE COURT:  Is there any reason that you think that
you couldn't be fair to both him and to the government in this
case?

        PROSPECTIVE JUROR:  No.

        THE COURT:  I think you've indicated that it's
your -- is your husband, does he work for the senate finance
committee now?

        PROSPECTIVE JUROR:  No, the last time he worked with

them was about ten years ago.

          THE COURT:  So the charges in this case involve

allegations that the defendant wasn't truthful when he appeared

as a witness before a congressional committee.

     Is there anything about the fact that that's the charge,

and that your husband used to work on the Hill, that makes you

feel that you couldn't be fair to him in this case?

          PROSPECTIVE JUROR:  No.

          THE COURT:  Does the government have any questions?

          MR. KRAVIS:  No, thank you, Your Honor.

          THE COURT:  Anything for the Defense?

          MR. BUSCHEL:  No, thank you, Judge.

          THE COURT:  Okay, thank you.  You can step back out.

       (Prospective juror leaves courtroom.)

          THE COURT:  All right, you can bring in the next

juror.  Okay, I will.

          MR. BUSCHEL:  Yes.  You can bring in the next juror.

          THE COURT:  Thank you.

          MR. BUSCHEL:  Sorry.

          THE COURT:  That's all right.

       (Prospective juror enters courtroom.)

          THE DEPUTY CLERK:  Your Honor, this is Juror

Number 0910.

          THE COURT:  All right.  Good afternoon, sir.  Thanks

for your patience today.

I just have a few follow-up questions based on your jury questionnaire.  You indicated that you don't really follow the news that closely, but you did indicate that you had some sources of news and information.

So do you -- are there particular issues that you do follow as opposed to others?

PROSPECTIVE JUROR:  I would say generally headlines. Nothing of particular interest.

THE COURT:  You indicated at the time that you filled out the questionnaire that you really hadn't heard anything about the defendant or this case.

Is that still the situation other than what I've told about what the case involves?

PROSPECTIVE JUROR:  That's correct.

THE COURT:  Okay, is there anything just hearing what the charges involve that makes you feel that you couldn't be fair to both him and to the government in this case?

PROSPECTIVE JUROR:  No.

THE COURT:  All right, does the government have any questions?

MR. KRAVIS:  Thank you, Your Honor.  Just very briefly.

Good afternoon.  I saw from your questionnaire that you're a senior advisor with the AARP?

PROSPECTIVE JUROR:  That's correct.

MR. KRAVIS:  What exactly do you do?

What do you advise on?

PROSPECTIVE JUROR:  Sure.  I work in the public policy institute on issues of livable communities.

MR. KRAVIS:  Great, thank you very much.

Thank you, Your Honor.

THE COURT:  Any questions?

MR. BUSCHEL:  Nothing, Judge.

THE COURT:  In connection with efforts to think about public policy from the point of view of AARP, do you ever do any lobbying or advocating for policy on the Hill or is it more developing policy within the organization?

PROSPECTIVE JUROR:  I do not do lobbying or advocacy. I work strictly on factual policy based issues.

THE COURT:  Okay, all right, thank you very much. You can step out.

(Prospective juror leaves courtroom.)

(Brief recess.)

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is Juror 1070.

THE COURT:  All right, good afternoon.

PROSPECTIVE JUROR:  How are you?

THE COURT:  We've looked at your jury questionnaire, but have a few follow-up questions that we want to ask.  I note that you do pay some attention to the news and you've indicated

when you were asked if you'd read or heard anything about the
defendant that you just know he's a long time associate of
President Trump.  And there will be evidence in this case that
he's affiliated with the President and the campaign and either
worked on it in a formal or informal capacity.

Is there anything about that information, the fact that he
may have been assisting the campaign, that gives you a point of
view one way or another about the defendant or an opinion in
this case?

PROSPECTIVE JUROR:  No.

THE COURT:  Now, the case also turns on whether the
defendant was truthful when he testified before the
house committee about contacts he may have had or others may
have had with WikiLeaks or with Julian Assange, either directly
or indirectly.

When we asked if you had an opinion about any of the
individuals listed in a long list of people whose names might
come up in the trial, you mentioned that you were not a big fan
of Julian Assange.

If the case involved alleged communications or attempts to
communicate with him, is the fact that that's involved in the
case something that would give rise to an opinion positively or
negatively for either side in this case?

PROSPECTIVE JUROR:  I don't think so.

THE COURT:  Okay, so can you put aside whatever you

think about Julian Assange as a matter of policy or principle and just judge this case based on whether the government has proved its charges against Mr. Stone?

PROSPECTIVE JUROR:  Yes.

THE COURT:  You indicated, just in terms of your work schedule, it's a little unpredictable back in December -- in September, what it might be in November.

Sitting here today, is there any reason why you can't sit through a trial that would, in all likelihood, be resolved before Thanksgiving?

PROSPECTIVE JUROR:  No.

THE COURT:  Is there anything else, any other reason that we haven't talked about that you feel you'd have difficulty being fair and impartial in this case?

PROSPECTIVE JUROR:  No.

THE COURT:  All right, anything for the Government?

MR. KRAVIS:  Thank you, Your Honor.

Good afternoon.

PROSPECTIVE JUROR:  Hi.

MR. KRAVIS:  In your questionnaire you mentioned that you have friends who work in the media who reported on the investigation into circumstances surrounding foreign interference in the 2016 presidential election.

Is there anything about those conversations that would affect your ability to be a fair and impartial juror in this

case?

PROSPECTIVE JUROR:  No.

MR. KRAVIS:  And --

PROSPECTIVE JUROR:  I don't think I've spoken to them about this case.

MR. KRAVIS:  Got it.

You mentioned in your questionnaire response that your spouse works for a member of congress?

PROSPECTIVE JUROR:  Yeah.

MR. KRAVIS:  What does your spouse do for the member?

PROSPECTIVE JUROR:  Can I give this answer privately?

THE COURT:  Sure.

Why don't we have someone from each side come to the bench.  So I'm going to ask you to step around here as well, and this will be the microphone that you speak to.

But let him -- we have a little thing that we turn on so the people in the courtroom can't hear what you're saying. There you go.

(Bench conference.)

PROSPECTIVE JUROR:  She does scheduling.  She's an executive assistant, that's about it.

THE COURT:  Okay, is there any --

PROSPECTIVE JUROR:  For Congressman Woodall.

THE COURT:  And does he -- is he on the Select Committee for Intelligence, do you know?

PROSPECTIVE JUROR:  Not that I'm aware.

THE COURT:  Okay, is there anything about the fact that she works for a congressman and this case involves allegations that Mr. Stone wasn't truthful to congressman that makes you feel that you can't be fair to him in judging the charges?

PROSPECTIVE JUROR:  I don't think so, no.

THE COURT:  Have you heard anything about him or about this case from her?

PROSPECTIVE JUROR:  No.

THE COURT:  Any follow-up questions on that issue?

MR. KRAVIS:  No.

THE COURT:  Okay all right, thank you.  You can go back to your seat.

(Open court.)

MR. KRAVIS:  That's all I had.  Thank you, Your Honor.

THE COURT:  Okay, does Defense have any questions?

MR. BUSCHEL:  No, thank you, Judge.

THE COURT:  Okay, thank you very much.  You can step back into the jury room.

(Prospective juror leaves courtroom.)

(Open court.)

THE COURT:  All right, let's bring in the next juror.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is Juror 0815.

THE COURT:  All right, good afternoon.  Thanks for waiting for us today.  We have your jury questionnaire and we wanted to ask you a couple of questions.  One of the things we told you at the time you filled out the questionnaire was that you'd have to avoid talking to people about it or hearing articles about it or paying attention to press about it, and you indicated that you have friends in the news media.  And in particular a very close friend and would you try your hardest, which we appreciate it.

And I guess my question is now that you've had some experience trying to do that, is it an instruction that you think you can follow if you are picked as a juror in this case?

PROSPECTIVE JUROR:  I'm honestly not sure.  She knows that I am assigned to jury duty.  I haven't explicitly stated what case I'm on or anything like that, but I think she understands that it's a big case just given the nature of the schedule.  So I again would try to like keep the separation of communication.

THE COURT:  Well, have you  since you filled out the questionnaire, have you talked to her about your jury service or the questionnaire or the case at all?

PROSPECTIVE JUROR:  Just that I would be coming back.

THE COURT:  Okay, and when we asked if you'd read or heard anything about him, you said you definitely had, but you

didn't quite remember the details.

Can you tell me what your understanding is or what you recall reading or hearing about him?

PROSPECTIVE JUROR:  From what I can recall, I know that he was heavily involved in the Trump 2016 campaign.  And when pressed in Congress, I know from I mean, earlier this morning, you mentioned that he supposedly lied to Congress, and I do believe there was obstruction of justice and witness tampering.  But I don't have any, like insider or any true details that I know about.

THE COURT:  When you say you believe there was witness tampering or obstruction of justice, you mean you believe those are the charges or you believe that happened?

PROSPECTIVE JUROR:  Both.

THE COURT:  So do you think you already have an opinion about whether he committed the things he's charged with doing?

PROSPECTIVE JUROR:  I have an opinion about the administration that he is associated with that leads me to believe -- that leads me to lean yes, but I don't have enough details off the top of my head.

THE COURT:  Just the fact that you indicated that you had a very low opinion of several other people involved with the campaign including the candidate.  And given that, we appreciate your candor when you said your general feeling may

make it difficult to be unbiased, and I believe you are sincere

when you say you would put forth the best effort.

I guess I wondered how difficult you think it's going to

be and how much confidence you have that you could really put

that aside and be fair to him?

PROSPECTIVE JUROR:  I honestly -- I'm not sure -- I

don't have -- I would like I understand the, you know, civil

duty of all of this and would like to hold myself to that, but

I'm not sure that I trust myself to especially given the news

at this point and the continued corruption, I want to say, in

the administration at this point that keeps coming to light.  I

don't have high confidence.

THE COURT:  What I'm going to do is ask you to step

out.  We may bring you back in and ask you some more questions

or we may not.

PROSPECTIVE JUROR:  Okay.

(Prospective juror leaves courtroom.)

THE COURT:  All right, I'm going to excuse this

juror.

MR. KRAVIS:  No objection.

THE COURT:  All right, let's bring in the next one.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is Juror

Number 0068.

THE COURT:  All right, thank you very much for

waiting for us this afternoon.  And we have your jury
questionnaire and we appreciate your candor.  And at that time,
I believe your husband had just been released for some rehab,
and without going into a lot of detail about his personal
information, I just want to know if you're involved in his care
right now and if that would pose a difficulty for you for
serving?

PROSPECTIVE JUROR:  Thank you for asking.  I am
involved in his care.  It's mainly in the evening.  And as far
as that, I had some foot surgery in June.  And, in fact, when I
came in September, I was in a boot and I have to have some
further surgery because I developed an issue, and it's suppose
to be in a couple of weeks.  I have a letter from the doctor,
but that's sort of an auxillary thing.  But as far as my
husband, I could probably do it because I help him in the
evenings.

THE COURT:  All right, so there's someone there in
the afternoons?

PROSPECTIVE JUROR:  There's someone there.  He works.

THE COURT:  Okay.

PROSPECTIVE JUROR:  And he -- right now he has  an
infection of sorts, but it's being worked on and I think it's
okay.  It's just if something happens to him that's big, you
know, and it's -- because he has a C5, he has a spinal cord
injury.  It's just possible.  I always tell people that, you

know.  And so he's doing fine right now, I think.  He has a

urinary tract infection and they're trying to find the right

antibiotic.  And he's feeling okay.  It's just a little --

slightly touch and go.  But right now, it's stable today.

THE COURT:  All right.  We all appreciate your

willingness to serve.  I guess my question is, would you be

worried about him while you're sitting here?

Would you be able to devote your attention to the case?

PROSPECTIVE JUROR:  I would say I would unless

something goes south, you know.  And that's hard.  It's just

hard to know but I would --

THE COURT:  If an emergency --

PROSPECTIVE JUROR:  If I possibly could, yes.  If

he's -- without an emergency, I could.

THE COURT:  All right.  And then when is your -- you

say a couple of weeks, when is the surgery before or after

Thanksgiving?

PROSPECTIVE JUROR:  Well it's, it is before

Thanksgiving.  It's supposed to be on the 15th.  I could

possibly change it but I would like to get it done if possible

and my doctor would like to get it done.

THE COURT:  All right.  Let me ask you to step out

and we'll determine whether you need to come back in.

PROSPECTIVE JUROR:  Okay, thank you.

(Prospective juror leaves courtroom.)

THE COURT:  I appreciate the update about
Thanksgiving, but I think it would be ambitious to suggest that
we'd be done by the 15th or 16th.

MR. KRAVIS:  We're not.  We're not going to do it
that fast.

THE COURT:  Okay, all right.

MR. KRAVIS:  Yeah, so we have no objection to excuse
this juror.

THE COURT:  You think she should be excused?

Do we all think that?

MR. KRAVIS:  Yes.

MR. BUSCHEL:  That's fine.

THE COURT:  All right, that's what we'll do.

(Prospective juror enters courtroom.)

THE COURT:  All right.  This is the questionnaire
that caught my attention again, the one that's coming up,
yesterday.

THE DEPUTY CLERK:  Your Honor, this is Juror
Number 0173.

THE COURT:  Good afternoon, sir.  How are you?

PROSPECTIVE JUROR:  Good afternoon.  Fine, thank you.

THE COURT:  All right.  We appreciate your patience
waiting for us and now it's your turn.  We have some follow-up
questions based on your questionnaire.

You indicated that you're a pretty good consumer of a lot

of news and you've followed reports about some of the investigations in recent years, somewhat closely.  And you did give us some information of what you'd heard about the defendant.

So I wondered if you could explain possibly where you've gained information about the defendant, if there's anything in addition to what you wrote that you've heard about him?

PROSPECTIVE JUROR:  I would say primarily on Twitter is where I've seen information about the defendant.

THE COURT:  Do you follow his Twitter posts?

PROSPECTIVE JUROR:  No, I do not.

THE COURT:  All right.  Well, you indicated that you had negative opinions about some other individuals involved with the Trump campaign and with the President, but then you said "but I don't think I would unfair or impartial as a juror."

So does the fact, if you knew that the defendant was involved in the Trump campaign in some fashion or supportive of it or active in it, would that effect your ability to come to this case with an open mind?

PROSPECTIVE JUROR:  I don't think so.

THE COURT:  All right.  Well, I was a little concerned about -- you indicated that you generally have a sense of him and you put in quotes, "as a dirty trickster," close quote.

So were you a referring to anything in particular?

PROSPECTIVE JUROR:  I guess it was just a general impression from things I'd seen on Twitter.

THE COURT:  Well, is there -- is there anything that you've seen that -- do you feel like you know enough about his character to have an opinion about whether he's guilty or innocent of the things he's been charged with?

PROSPECTIVE JUROR:  No, I don't.

THE COURT:  Are there any specific events that you have in mind when you say you've heard about him as a trickster?

PROSPECTIVE JUROR:  None that come to mind, no.

THE COURT:  Does the Government have any questions?

MR. KRAVIS:  Good afternoon, sir.

PROSPECTIVE JUROR:  Good afternoon.

MR. KRAVIS:  Is there anything that you have seen or heard about the defendant that would make it difficult for you to be a fair and impartial juror in this case and to decide the case solely on the evidence presented?

PROSPECTIVE JUROR:  No, I don't think so.

MR. KRAVIS:  Thank you.

MR. BUSCHEL:  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

MR. BUSCHEL:  Do you work in the media?

PROSPECTIVE JUROR:  No, I don't.

MR. BUSCHEL:  Did you ever?

PROSPECTIVE JUROR:  No.

MR. BUSCHEL:  What is -- I don't understand what --
you said you work for Austrian or German media.

Do I have --

PROSPECTIVE JUROR:  No, that's my spouse.

MR. BUSCHEL:  Your spouse.  Do you talk to her about
news?

PROSPECTIVE JUROR:  He, actually.

MR. BUSCHEL:  What's that?

PROSPECTIVE JUROR:  He.

MR. BUSCHEL:  He.  Okay, I'm sorry.

Do you talk to him about the news or does -- is it --

PROSPECTIVE JUROR:  We might, yeah.

MR. BUSCHEL:  Has he followed anything regarding this
case?

PROSPECTIVE JUROR:  Not to my knowledge, no.

MR. BUSCHEL:  Russian interference in the election?

PROSPECTIVE JUROR:  Not to my knowledge.  I don't
know that they've don't any stories.

MR. BUSCHEL:  Okay.  I mean --

PROSPECTIVE JUROR:  -- on that aspect?

MR. BUSCHEL:  -- has he spoken to you about it
personally?

PROSPECTIVE JUROR:  About this case?

MR. BUSCHEL:  Yes.

PROSPECTIVE JUROR:  No.

MR. BUSCHEL:  Or Russian --

PROSPECTIVE JUROR:  No.

MR. BUSCHEL:  -- or Russian interference in the election?

PROSPECTIVE JUROR:  Uh-uh.

MR. BUSCHEL:  Okay, what is a dirty trickster?

MR. KRAVIS:  Objection.

THE COURT:  Well, what did you mean by it?

MR. BUSCHEL:  What did you mean?

PROSPECTIVE JUROR:  I suppose I was thinking mainly of -- I know that he has a tattoo of Richard Nixon on his back.

MR. BUSCHEL:  Okay.

PROSPECTIVE JUROR:  And suppose, I suppose I associated him with Nixon.

MR. BUSCHEL:  Okay, and to you what does that association mean?

PROSPECTIVE JUROR:  Just that he was known as "Tricky Dick."

MR. BUSCHEL:  And okay, I am following you.

   As you associate Tricky Dick, Richard Nixon with Roger Stone, how would it relate?

PROSPECTIVE JUROR:  I don't even know why he has such a tattoo, but I know it from having seen a picture of it on

Twitter.

        MR. BUSCHEL:  That's fair, that's fine.

    My question to you is, how do you harmonize that with the presumption of innocence in this case?

        PROSPECTIVE JUROR:  How do I harmonize that.  I'm not sure I understand.  What do you mean?

        MR. BUSCHEL:  Do you have the ability to remain -- to be fair and impartial and find him --

        PROSPECTIVE JUROR:  Yes, I believe that I do.

        MR. BUSCHEL:  -- find him, presume that Roger Stone is innocent throughout the case, even throughout your deliberations?

        PROSPECTIVE JUROR:  Yes.

        MR. BUSCHEL:  But I'm still trying -- when you're saying he has a tattoo, that makes him a dirty trickster.

    What does a dirty --

        PROSPECTIVE JUROR:  I guess as I said, I think I said before it's just sort of a general impression that I've had, but I don't know of any specific reason.

        THE COURT:  Is it something that someone may have, term may have used to characterize him on Twitter, possibly?

        PROSPECTIVE JUROR:  Perhaps.

        THE COURT:  But you don't have any specifics about why that term might apply or might not?

        PROSPECTIVE JUROR:  No.

THE COURT:  All right, right now he's charged with specific offenses and an indictment in this case.  He is presumed to be innocent.  The Government has to put on evidence, persuade you beyond a reasonable doubt that he's guilty.  If not, then it's your job find him innocent.

Are you confident that you're walking in here as a blank slate, ready to hear that evidence and decide this case based solely on the evidence?

PROSPECTIVE JUROR:  Yes.

MR. BUSCHEL:  You indicate in one of your answers that you have negative opinions regarding Trump and other people; Bannon, Manafort.  Roger Stone has helped Donald Trump get elected as President.

What are your feelings about that; if being associated, being a crony of someone who is, someone you have a negative impression of?

MR. KRAVIS:  Objection.

THE COURT:  I think the question, What are your feelings about that, is a little broad.

If you could just bring it back to this -- does that affect your ability to treat him fairly if you know he's involved with the politician that you don't know have a high opinion of?

PROSPECTIVE JUROR:  I believe that I could base my judgment upon the evidence regardless of a negative opinion

that I might have.

        THE COURT:  Okay, all right.  Any further questions?

        MR. BUSCHEL:  Thank you, Judge.

        THE COURT:  Thank you.  Okay.  You can step back into the...

        (Prospective juror leaves courtroom.)

        MR. BUSCHEL:  Thank you, Judge.

    For juror, prospective juror 173, we move to excuse for cause.

    Questions 25, he suggests that he follows media reports regarding the Russian interference in 2016 somewhat closely. But his answers -- and I have to rely on the Court's in -- on understanding of his demeanor, response time, looking at the Court, and his answers were a bit hesitant.

    Question 27, his relationship between a Nixon tattoo and therefore he's a dirty trickster, it felt like he wasn't being as open and honest as he ought to be with the Court about that. It means something.  He's been following it closely. And he's a dirty trickster.  What does that mean?  It means he has tattoo of Richard Nixon.

    And lastly for Question 30, his answer to that, he has negative opinions regarding the Bannon, Manafort, Trump, but still thinks he can -- doesn't have Roger Stone in that group of people.  I think based upon his answer, he should be excused.

THE COURT:  All right.  I thought it was a close call every time I've look at this.  I think it's still a close call. I mean, I actually think he is being sincere when he says he thinks he can be fair.  But we're supposed to be starting with people that don't have a baseline opinion about the people involved in the trial.

And when he says, "I generally have a sense of him as a dirty trickster," putting aside who may have used those words, I just think that's not a good place to start.  So I'm going to excuse this juror.

(Juror excused.)

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is Juror Number 1518.

THE COURT:  All right.  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon, Your Honor.

THE COURT:  Thank you for your patience with us.

In the time since you have completed the jury questionnaire, have you read or heard anything additional about the defendant?

PROSPECTIVE JUROR:  I have not, no.

THE COURT:  Okay.  You indicated that you're working as an intern in a place called Congress for the New Urbanism. And I understand that we're not talking about congress as in the United States Congress?

PROSPECTIVE JUROR:  No, it's completely separate, but that's a common confusion.

THE COURT:  And I believe new urbanism is a form of urban planning, is that correct?

PROSPECTIVE JUROR:  And urban design, nonprofit, yeah.

THE COURT:  Okay, so that doesn't have anything to do with the legislature?

PROSPECTIVE JUROR:  No, absolutely not.

THE COURT:  All right.  Now, you follow the news somewhat and you indicated that you had heard a little bit about the case and the arrest.

Can you just tell us a little bit about what -- what you know, if anything, about this case or about the defendant?

PROSPECTIVE JUROR:  Right.  I mean, I'm not -- that is most of my understanding of what's going on in this case.  I usually have the TV on in the background when I'm in my living room or doing work in my house.  And typically it's tuned into the news, so I heard a little bit just based on -- or a little bit in terms of there being an arrest, and there being a raid, but nothing in terms of why there was a raid.

And so that -- that's all I know about the case.

THE COURT:  And can you come into this understanding that just the fact that he was arrested or just the fact that his house was searched doesn't mean that he's necessarily

guilty, the government has to prove his guilt beyond a reasonable doubt in this case?

PROSPECTIVE JUROR:  Yes, I understand that.

THE COURT:  Okay.  Now, we asked if you had opinions of a number of people who were listed and one was Donald Trump and one was Steve Bannon, and you indicated "I have opinions on them," didn't tell us what they were.  But then you said "but I don't believe that those opinions would make it difficult to be fair."

So can I assume from that, that all your opinions of Donald Trump and Steven Bannon are not positive?

PROSPECTIVE JUROR:  Yes, that's correct.

THE COURT:  Now, this defendant, you're going to learn, played a role and was supportive of Donald Trump's campaign to become president of the United States.

Does that, the fact that he did that, give you an opinion about him that's going to effect your ability to be fair in this case?

PROSPECTIVE JUROR:  No, it does not.

THE COURT:  And I think you indicated that you have friends that work in congressional offices.

Is the fact that he's charged with allegedly not being truthful to members of congress, do you feel like you can approach that charge with an open mind and treat him fairly in this case?

PROSPECTIVE JUROR:  I do, yes.

THE COURT:  All right, does the Government have any follow-up questions?

MR. KRAVIS:  No, thank you, Your Honor.

THE COURT:  Anything from the defense?

MR. BUSCHEL:  No, Judge.

THE COURT:  Okay, all right.

PROSPECTIVE JUROR:  Thank you.

THE COURT:  Thank you.  You can step back out.

(Prospective juror leaves courtroom.)

THE COURT:  All right.  So a motion with respect to this juror?

MR. BUSCHEL:  No, Judge.

THE COURT:  Okay, all right, let's bring in the next one.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is Juror Number 0706.

THE COURT:  All right.  Good afternoon, sir.

PROSPECTIVE JUROR:  Afternoon.

THE COURT:  You indicated in your jury questionnaire that you are self-employed as a contractor, and I think you have done some work for some government organizations as well.

Has that at all been in the information technology field?

PROSPECTIVE JUROR:  No.  The work I do for foreign

governments is like maintenance on a property, stuff like that.

THE COURT:  Okay, and so is that the kind, that's the kind of contractor that you are?

PROSPECTIVE JUROR:  Yeah, right now it's I'm doing some work for a residence owned by the Embassy of Namibia, that's about it.  Just some maintenance.

THE COURT:  You indicated when we gave you the list of names that included the president and a number of people that worked on his campaign -- have a little trouble reading your handwriting but --

PROSPECTIVE JUROR:  Sorry.

THE COURT:  That's okay.  You said you have an opinion on some of them, and so I guess my question is:  Do you have any information about or opinion about Roger Stone?

PROSPECTIVE JUROR:  I don't have any information or an opinion.

THE COURT:  All right, if you heard that he was actually associated with some of these other people, in particular Donald Trump and the effort to make Donald Trump President of the United States, would that give you an opinion that would affect your ability to be fair in this trial?

THE DEFENDANT:  Not based off of the other, the other names listed.  I wouldn't associate them, one as a cause or effect of the other.

THE COURT:  Okay.  Well, there will be evidence that

he was in communication with, allegedly with the campaign or at various times was involved with the campaign.

So does that association effect your opinion of him and your ability to treat him as he is right now, which is innocent until proven guilty?

PROSPECTIVE JUROR:  I have no problem separating him in his roles from the individual -- the people until I have more information, I think.

THE COURT:  All right, do you have any questions?

MR. KRAVIS:  Thank you, Your Honor.  Just one question.

Good afternoon, sir.

PROSPECTIVE JUROR:  Hi.

MR. KRAVIS:  You had mentioned in your questionnaire a circumstance or a time when you were the victim of a crime?

PROSPECTIVE JUROR:  Sure.

MR. KRAVIS:  You know what I'm talking about?

PROSPECTIVE JUROR:  Certainly, yeah.

MR. KRAVIS:  The question I have is just, is there anything about that experience that you had that would in any way effect your ability to be a fair and impartial juror in this case?

PROSPECTIVE JUROR:  No.  If I wanted to pursue that particular issue more aggressively, I could have done so.

MR. KRAVIS:  Right, I understand.  Okay thank you

very much.  That's all I had.  Thank you, Your Honor.

THE COURT:  Anything from the defense?

MR. BUSCHEL:  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

MR. BUSCHEL:  You did some work for the Department of Homeland Security?

PROSPECTIVE JUROR:  I worked as a contractor and as a federal employee between 2008 and 2016 for U.S. Citizenship and Immigration Services Office of Information Technology.

MR. BUSCHEL:  Okay, anything do within a law enforcement capacity?

PROSPECTIVE JUROR:  I mean, that agency is primarily a benefits agency or it was primarily a benefits agency.  There wasn't a lot of enforcement done by that agency.  I mean, I would support the FD, the FDNS, the Fraud Detection National Security groups with their mobile devices.  Primarily just their mobile devices; blackberries, cell phones, pagers.  And they would do the enforcement.  I would just support them in their IT initiatives from Washington.  So it was very, nothing hands on.  But I was, you know, that was going on at some level in the building.

MR. BUSCHEL:  Anything about that experience, working for the government that makes you want to favor the government versus follow the instruction on presumption of innocence?

PROSPECTIVE JUROR:  There's no favor towards the

government because I've worked there or because I've not worked there.  It is what it is.  It's an agency with a mission.  And I did my small role as best I could to support the mission.

MR. BUSCHEL:  Okay, thank you, sir.

THE COURT:  All right.  Thank you very much.  You can step back into the jury room.

(Prospective juror leaves the courtroom.)

THE COURT:  All right, you can bring in the next juror, unless someone has something to say?  Okay.  Let's go.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is Juror 0617.

PROSPECTIVE JUROR:  Hello.

THE COURT:  Good afternoon.  How are you?

PROSPECTIVE JUROR:  I'm fine.  Thank you.

THE COURT:  All right.  We have just a couple of follow-up questions.  You filled out your questionnaire, which we appreciated.  And you indicated that you don't really follow the news very much, though you do seem to watch the local -- one of the local news affiliates.

So either -- at any point, either before or after you filled out this questionnaire, have you read or heard anything about this defendant or this case?

PROSPECTIVE JUROR:  No.

THE COURT:  So you're coming in here, you don't really have an opinion at all about whether he's guilty or

innocent or what he did or who he is?

        PROSPECTIVE JUROR:  No.

        THE COURT:  Okay.  And is there -- do you have a point of view about politics and national news that leads you to not follow it or have you just never been all that interested?

        PROSPECTIVE JUROR:  I just never really been all interested in it.

        THE COURT:  Okay, all right does the government have any questions?

        MR. KRAVIS:  Thank you, Your Honor.

    Good afternoon, ma'am.

        PROSPECTIVE JUROR:  Hi.

        MR. KRAVIS:  I saw on your questionnaire you mentioned that you had a niece who worked as a paralegal at a law firm some years ago?

        PROSPECTIVE JUROR:  Yes.

        MR. KRAVIS:  Do you know anything about what kind of law the law firm practiced or what kind of cases she worked on?

        PROSPECTIVE JUROR:  No, I don't.

        MR. KRAVIS:  Okay.  All right.  Thank you very much.  Thank you, Your Honor.

        THE COURT:  Okay.  All right.  Mr. Buschel?

        MR. BUSCHEL:  Nothing.  Thank you, Judge.

        THE COURT:  Okay.  Thank you very much.  After all

that, you get to go back in the jury room.

        PROSPECTIVE JUROR:  Okay.

        (Prospective juror leaves courtroom.)

        THE COURT:  All right.  Bring in the next juror.

        (Prospective juror enters courtroom.)

        THE DEPUTY CLERK:  Your Honor, this is Juror
Number 0781.

        THE COURT:  All right.  Good afternoon.

        PROSPECTIVE JUROR:  Good afternoon.

        THE COURT:  Appreciate your waiting for us all this
time.  We have your questionnaire, and so we don't have too
many questions to ask you.

    But I do want to ask you if -- since the day you were here
when you had to fill this out, have you heard anything or
gotten any more information about this case or the defendant or
anything about it?

        PROSPECTIVE JUROR:  No.  I don't know the person he
is, so...

        THE COURT:  Okay.

        PROSPECTIVE JUROR:  I'm going to -- what -- where
were they at?

        THE COURT:  He was seated there earlier and stood up
and introduced himself to you.  He's not sitting in the
courtroom --

        PROSPECTIVE JUROR:  Oh, okay.

THE COURT:  -- at the moment, but he was the first person I had stand up and look at you all.

PROSPECTIVE JUROR:  Oh, yeah, I remember.  I remember.

THE COURT:  Okay, but you didn't know him or recognize him, did you, when he stood up?

PROSPECTIVE JUROR:  No, uh-uh.  I never seen him before.

THE COURT:  Okay, and I take it you don't pay too much attention to the national news or political news or any of that?

PROSPECTIVE JUROR:  I do, but I didn't -- I didn't pay attention to what this -- the one you was talking about.

THE COURT:  Okay, so does the name Roger Stone ring a bell?

PROSPECTIVE JUROR:  No, it doesn't.

THE COURT:  Well, I notice that you served as a juror in trials before.  And is that times that you've been called to serve on a jury or times that you actually sat in the box and it went all the way to a verdict?

Did you reach a verdict in your trials when you were a juror before?

PROSPECTIVE JUROR:  Reach a verdict.  I mean, when I went to trial?

THE COURT:  Yeah.

PROSPECTIVE JUROR:  You talking when I came to this, to this court?

THE COURT:  No.  I think we asked you have you ever served on a jury before and you said, yes, three times.

PROSPECTIVE JUROR:  Yeah.  I went, I went to court myself on a -- and served on a jury, yeah.

THE COURT:  Okay, that was -- so did you sit in the jury box and listen to the evidence and have to decide the case, not this jury box but a jury box, over in Superior Court?

PROSPECTIVE JUROR:  Yes, uh-huh.

THE COURT:  And did the jury decide at the end of the day whether the defendant was guilty or innocent?

Do you remember?

PROSPECTIVE JUROR:  I think they said I was not guilty.

THE COURT:  Okay, so three different times you served on a jury you think?

PROSPECTIVE JUROR:  About once, about two times.

THE COURT:  Okay, do you feel that you would be able to sit in this courtroom for the time it takes, a couple of weeks, and listen to the evidence and be fair to both sides and -- and reach a verdict and follow my instructions?

PROSPECTIVE JUROR:  Meaning, I have to come back again?

THE COURT:  Well, that's, I guess, what I'm asking

you.  The people who get picked are going to have to sit and be

jurors in this case like you were way back in Superior Court,

and that could take two weeks or more of being here every day

and listening.

     Would that be a challenge for you or do you think you

could serve as a juror in this --

          PROSPECTIVE JUROR:  I mean, is it on me?  Did I have

to or is it something you saying I must do?

          THE COURT:  Well, generally, people don't get to

choose whether they get to be on a jury or not, but I am

interested in knowing if there's, you know, if you have

difficulty sitting or difficulty paying attention.

          PROSPECTIVE JUROR:  Yes, I do, yeah.

          THE COURT:  I would need to know that.  That would

help me decide whether we would ask you to be here or not.

          PROSPECTIVE JUROR:  Or if they have a disability or

whatever.

          THE COURT:  Do you have a disability you want to tell

me about?

          PROSPECTIVE JUROR:  I mean, no, I don't want to tell

myself, but Jesus --

          THE COURT:  Well, would you like to tell me in

private and not tell everybody in the courtroom?

          PROSPECTIVE JUROR:  Yeah, private.  Yeah, private.

          THE COURT:  All right.  So I'm going to ask one

lawyer from each side to come stand here and you can tell me --

        THE WITNESS:  Come stand there?

        THE COURT:  Yes.

        PROSPECTIVE JUROR:  Okay.

        THE COURT:  So it's just you and us.

    Just wait one minute.

        (Bench conference.)

        THE COURT:  What I want you to know is that -- can you come stand here.  We do ask citizens to come and serve on a jury if they can.  But if it's a hardship, we need to know.

    So is there some reason why it would be a hardship for you to sit for a trial in this courtroom for a couple of weeks?

        PROSPECTIVE JUROR:  I mean, it would -- I really don't have anything.  I mean, it's not going to bother me.

        THE COURT:  All right.  Is there something else you had in mind when you said, oh do I have to sit here?

    Do you have a concern about your ability to serve on this jury?

        PROSPECTIVE JUROR:  No, uh-hmm.

        THE COURT:  All right.  You just prefer not to?

        PROSPECTIVE JUROR:  I would say I didn't mind.

        THE COURT:  You didn't mind?

        PROSPECTIVE JUROR:  Uh-hmm.

        THE COURT:  Okay.  All right.  Okay.  I'm going to let you go back to --

MR. KRAVIS:  I'm sorry.  May we pursue one other matter at the bench while we're here?

THE COURT:  Yes, please.

MR. KRAVIS:  I'm sorry.  I don't mean to put you on the spot or anything, but the questions the Judge was asking about the times that you had been to court before, were those times when you served on a jury or when you yourself were charged with a crime as a defendant?

PROSPECTIVE JUROR:  A defendant.  A defendant.

THE COURT:  Were you a defendant?

PROSPECTIVE JUROR:  Yeah.

THE COURT:  So can you tell us what you were charged with in the past?

PROSPECTIVE JUROR:  Oh, it was just a misdemeanor.  But -- it was a dispute between me and the lady, you know, where I live at.  We were like seeing the same person, a man.

THE COURT:  All right, and did it result in some kind of fight?

PROSPECTIVE JUROR:  Yeah, uh-hmm.

THE COURT:  And was she charged too or just you?

PROSPECTIVE JUROR:  Oh, my Jesus.

THE COURT:  You don't have to tell us all the facts.  I guess the question is, you were charged and there was a trial?

PROSPECTIVE JUROR:  Uh-hmm.

THE COURT:  Did you feel like it was fair at the end of the day?

PROSPECTIVE JUROR:  To me, yeah, I thought so.

THE COURT:  All right.  Do you feel that -- was it the U.S. Attorney's office that prosecuted it or did -- was this a --

PROSPECTIVE JUROR:  It was a, it was a judge.  I forgot the, the thing, but it was a judge.

THE COURT:  Okay, well do you have any hard feelings against prosecutors, the government for -- for charging you in that case?

PROSPECTIVE JUROR:  Well, they felt that I had something to do with it, so...

THE COURT:  Okay.

PROSPECTIVE JUROR:  I had to go to court.

THE COURT:  Okay.

PROSPECTIVE JUROR:  I was a victim of it.

THE COURT:  Well, actually what I'd -- what I'd like to do is ask you to step out.  And then, we might have more questions for you, we might not.  But I'm going to ask you to step out right now.  I think we've asked her a lot of questions, and then we'll decide if we need to ask you more.

PROSPECTIVE JUROR:  Okay, okay, then.

THE COURT:  All right.

MR. KRAVIS:  Is it okay if we stay at the bench?

THE COURT:  Yes.

MR. BUSCHEL:  Thank you.

THE COURT:  I'm not comfortable that she's understanding the questions.

MR. BUSCHEL:  Right.  So I was -- that was the motion I was going to make at the bench.

THE COURT:  All right, I think we should excuse her.

MR. KRAVIS:  Yes, thank you, Your Honor.

THE COURT:  Thank you.

(Prospective juror excused.)

(Open court.)

THE COURT:  All right.  Mr. Haley, let's bring in the next.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is Juror Number 0772.

THE COURT:  Good afternoon.

PROSPECTIVE JUROR:  Hi.

THE COURT:  Hi, thank you for your patience and waiting for us.  We have a few follow-up questions for you.

PROSPECTIVE JUROR:  Sure.

THE COURT:  We've all looked at the jury questionnaire.  I guess my first question is:  Since the time you filled out the questionnaire, have you read or heard anything about the defendant and about this case?

PROSPECTIVE JUROR:  No, because you instructed us not to.

THE COURT:  All right.  Was that difficult given where you're employed?

PROSPECTIVE JUROR:  Yes.  I'm sorry.  What was your question?

THE COURT:  Was it difficult for you to keep yourself from reading and hearing about the case?

PROSPECTIVE JUROR:  No.  My job deals with tax policy.  So the only thing I'm reading or if -- have to read are tax bills and whatnot.  So, no, it's very easy to keep other matters separate.

THE COURT:  Okay, you indicated, I guess, at one point that you use to follow national news.

PROSPECTIVE JUROR:  Yes.

THE COURT:  And then you underscored that you no longer do it, and you described yourself as a news junky at one point, but then said that you made a conscious decision not to keep that up.

And so I wondered if there's something specific that's -- that's responsible for the change?

PROSPECTIVE JUROR:  No.  There was nothing specific. I just -- I used to love it.  I used to love the horse race. Who was the NBC -- Meet the Press, and he passed away.  And I can't remember his name, but I used to just love following him.

And there was just so much pressure 24/7 news cycle.  The
oppressiveness of always hearing a bad story.  It doesn't have
to be politics, just anything, you know, a shooting, whatever.

And I'm just, like, no, you know.  I have so much going on
in my life and I work dealing with this tax stuff all day.  I
want to be able to have my life back and it not be tethered to
what I hear and what people say.

So just -- and it's always embarrassing too.  I'll just
say one thing that, you know, I was -- took so many, I was an
English major.  I took so many classes of the, you know, Latin
American literature and pre-World War I.  And, you know, what's
going to happen to the people when you don't pay attention.

So I feel somewhat like, is that who I am because I don't
pay attention.  And I just -- I don't have conversations with
people about it, about anything.  I just, you know, you want to
talk to me about my dog, about science fine.  Let's have fun.
I'm not -- that's it.

THE COURT:  Well, I don't know whether you should be
embarrassed about it or not, but it might actually make you
perfectly well qualified for jury service.

(Laughter.)

THE COURT:  So the question I have is because you
have stayed away from the news, is it fair to say that you
don't bring any opinions into the courtroom right now about
this defendant or these charges?

PROSPECTIVE JUROR:  No, not at all.

THE COURT:  All right.  Do you have any questions?

MR. KRAVIS:  Just briefly.  Thank you, Your Honor.

Good afternoon, ma'am.

PROSPECTIVE JUROR:  Hi.

MR. KRAVIS:  I noticed on your questionnaire that you mentioned that you wear hearing aids.

PROSPECTIVE JUROR:  You know what --

THE COURT:  All right, well you need to speak in the microphone then.

MR. KRAVIS:  Right, I noticed on your questionnaire you mentioned that you wear hearing aids?

PROSPECTIVE JUROR:  Yes, and that's very apropos.

MR. KRAVIS:  Right.

PROSPECTIVE JUROR:  They're in.  Usually I don't have a problem so long as I'm not like put away in some corner.

MR. KRAVIS:  So when I got a little closer to the microphone that helped?

PROSPECTIVE JUROR:  Right.

MR. KRAVIS:  Okay.

PROSPECTIVE JUROR:  As long as someone is speaking in the microwave, not microwave -- microphone directly at me, I don't have a problem.

MR. KRAVIS:  So like this level is good?

PROSPECTIVE JUROR:  Yeah.

MR. KRAVIS:  Yeah, okay good.  Thanks.

That's all I had.  Thank you, Your Honor.

THE COURT:  All right, Mr. Buschel.

MR. BUSCHEL:  Now I'll try.

PROSPECTIVE JUROR:  Hi.

MR. BUSCHEL:  Hi.  In one of your written answers, you said that Roger -- the name of Roger Stone rings a bell.

PROSPECTIVE JUROR:  I'm sorry.  Can you?

MR. BUSCHEL:  The name Roger Stone rings a bell?

THE COURT:  Did you say -- you said in your answer the name of the defendant rings a bell, but in all honestly --

PROSPECTIVE JUROR:  Oh, I thought you -- yeah.  No, I remember hearing it in relation to art, for some reason.  And I was it -- and then I didn't pursue it.  I didn't follow up.

MR. BUSCHEL:  Art like --

PROSPECTIVE JUROR:  That's when --

MR. BUSCHEL:  Art like paintings and -- is that what you mean, art?

PROSPECTIVE JUROR:  Pardon?

MR. BUSCHEL:  In relation to art?

PROSPECTIVE JUROR:  I thought that was where I had heard a connection.  It was like, that name sound, sounded familiar.

THE COURT:  But you don't really know where you heard the name?

PROSPECTIVE JUROR:  But I couldn't seem to connect the dots.

MR. BUSCHEL:  Okay, very well.  Thank you, Judge.

THE COURT:  All right.

PROSPECTIVE JUROR:  Thank you.

THE COURT:  Okay, thank you.  You can step back in the jury room.

(Prospective juror leaves courtroom.)

THE COURT:  All right.  Let's bring in the next juror.

THE DEPUTY CLERK:  Your Honor, this is Juror Number 0394.

THE COURT:  All right.  Good afternoon, sir.

When you filled out the jury questionnaire, it was September and we asked you to talk about your availability in November.  You had some concern that there might be an important business proposal during that time frame.

So how is it looking now?

PROSPECTIVE JUROR:  So I was expecting a very large RFP Friday, and it did not come out.  And I called the client and it's been delayed for at least two weeks.  So I'm reasonably available.

THE COURT:  All right.  Well, what if it hits in two weeks?

PROSPECTIVE JUROR:  I have a team of people that can

handle it.

        THE COURT:  All right.  So until you're finish here,
you'll be all right?

        PROSPECTIVE JUROR:  Yes, ma'am.

        THE COURT:  Okay, I need you to actually say yes and
no --

        PROSPECTIVE JUROR:  Yes, yes, ma'am.

        THE COURT:  -- into the microphone rather than nod
your head because this lovely lady is trying to type what you
say.

    You indicated that you do follow some news sources and we
asked at the time if you'd read or heard anything about the
defendant.  And you said, "Not really.  I vaguely remember news
reports from the time.  Nothing specific."

    So either from before then or since, do you have any more
information -- do you remember what the news report was about
that you might have seen?

        PROSPECTIVE JUROR:  I -- I vaguely remember, sort of,
minor aspects of it.  But I -- honestly, I don't remember any
of the facts.

        THE COURT:  All right.  So when you say "minor
aspects of it" --

        PROSPECTIVE JUROR:  I remember seeing the -- the
defendant, you know, on the news, you know, things like that.
Just video, what have you.  But I -- honestly, I don't follow

the news that closely.

THE COURT:  All right, so would this have been when he was arrested or do you have a recollection of when he appeared before congress?

PROSPECTIVE JUROR:  No recollection of when he appeared before Congress.  Probably when he was arrested and then I do recall that there was -- that, you know, he allegedly -- there was some tweets that were seen as inappropriate or something like that.  But I don't remember every detail of the facts, honestly.

THE COURT:  And if you read or heard, or if you recall that there may have been a question about whether he said or did something on Twitter that wasn't appropriate, if that's not part of the evidence in this case, can you put that aside and not pay any attention to it in deciding whether he's guilty or innocent of the charges in this case?

PROSPECTIVE JUROR:  Yeah, I believe so.

THE COURT:  Okay.  Anything from the prosecution?

MR. KRAVIS:  No.  Thank you, Your Honor.

THE COURT:  Anything from you?

MR. BUSCHEL:  No.  Thank you.

THE COURT:  Okay.  Thank you very much.

PROSPECTIVE JUROR:  Thank you.

THE COURT:  You can step back into the jury room.

(Prospective juror leaves the courtroom.)

THE COURT:  All right.  We're going to bring in the next.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is Juror 1126.

THE COURT:  All right, good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  We've looked at your jury questionnaire, and just have a few follow-up questions.

PROSPECTIVE JUROR:  All right.

THE COURT:  One would be whether you'd read or heard or discussed anything about the case since the time you filled the questionnaire out?

PROSPECTIVE JUROR:  No.

THE COURT:  All right.  At the time, we asked if you'd read or heard anything about him or about the case and you said "basically, what the media has reported.  That he had ties with the Russians during the presidential election campaign."

Is that something that you understand to, in fact, be the case or that something that you remember you might have heard?

PROSPECTIVE JUROR:  Basically, that's what I've heard, but it's hearsay, you know.

THE COURT:  In this case, the charges aren't even necessarily related to that.  There's going to be evidence about what he said when he testified before congress, and

whether that was truthful or not, and testimony about whether
he interfered with another witness who was suppose to testify
before congress.

So sitting right here, right now, do you have an opinion
as to whether he was or wasn't connected in some way to -- or
communicating in some way with Russians during the presidential
campaign?

PROSPECTIVE JUROR:  (Nodding.)  No.

THE COURT:  Is there anything about the fact that he
was supporting the president during the presidential campaign
and possibly working with the campaign that gives you an
opinion about him one way or the other in this case?

PROSPECTIVE JUROR:  No.

THE COURT:  Is there any -- any reason why you don't
think you could be completely fair and impartial to him in this
case?

PROSPECTIVE JUROR:  No.

THE COURT:  All right.  Does the government have any
questions?

MR. KRAVIS:  Briefly.  Thank you, Your Honor.

Good afternoon, ma'am.

PROSPECTIVE JUROR:  Good afternoon.

MR. KRAVIS:  I noticed that you mentioned in your
questionnaire that a friend of yours was a victim in a
homicide?

PROSPECTIVE JUROR:  Yes.

MR. KRAVIS:  I'm very sorry for your loss.

PROSPECTIVE JUROR:  Thank you.

MR. KRAVIS:  In the questionnaire, you were asked if you felt that the -- the government acted fairly or the person was treated fairly by the government agency involved, and you said, "Yes, at the moment."

PROSPECTIVE JUROR:  Well, so far because it's, it hasn't gone to trial yet.

MR. KRAVIS:  Okay, it's --

PROSPECTIVE JUROR:  So far everything's looking, it's good.

MR. KRAVIS:  And is there anything about that experience that you've had that would effect your ability to be fair and impartial in this case?

PROSPECTIVE JUROR:  No, because it's two different -- it's two different things.

MR. KRAVIS:  Right.  Okay.  Thank you very much.  Thank you, Your Honor.

THE COURT:  All right.  Any questions?

MR. BUSCHEL:  Nothing, Judge.

THE COURT:  Okay.  Thank you.

PROSPECTIVE JUROR:  Thank you.

THE COURT:  You can step back into the jury room.

(Prospective juror leaves the courtroom.)

THE COURT:  All right.  Any motion with respect to this juror?

(No response.)

THE COURT:  All right.  We are up to, as I understand it, the 31st person on the list and we have qualified 19 jurors.

We've run out of individuals in the jury room, so we need to do some moving people around, which means it's an opportune time if people need to excuse themselves from the courtroom briefly.  And so we're going to take a break while we do that.

I think we'll bring another 15 people in.  It usually takes us about an hour.  So we should be able to get through that many, and we'll see where we are at the time.  I think even if we decide to keep going after that, it is unlikely that we would -- it's -- get more than 30 people for the rest of the day.  I think we're probably not even going to do that many.

So one question is whether we could excuse jurors 60 through 82 to be on alert as to whether or not they need to come back tomorrow rather than waiting -- making them sit for two hours to tell them that we're not getting to them?

Can we excuse them to be on call for tomorrow if we need them, or do you think we're going to get to them today?

MR. KRAVIS:  And -- I'm sorry, which numbers?  How far down are we going?

THE COURT:  I think we've -- we're -- we just

finished 31.  So we can do about 15 an hour, is, kind of, the way it goes.  So I was going to keep 30 more, basically, and excuse numbers 61 through 82 for the afternoon.

       MR. KRAVIS:  Yeah.  We have no objection to that.

       THE COURT:  All right.  Does that make sense to you?

       MR. BUSCHEL:  Yes.

       THE COURT:  So Mr. Haley I guess they can check with the jury office about whether they have to come back.

       MR. HALEY:  They're a special so they'll have to come back.

       THE COURT:  So they'll just come back tomorrow morning.

       MR. HALEY:  I'll tell 60 to 82 to come back tomorrow morning to the jury office and I'll have them in the jury office so they can come down as soon as we're ready.

       THE COURT:  Okay and we can do that also with any -- well, we might end up -- no, let's keep everybody else.

   Anybody who is excused can be excused.  15 more in the jury room and that's what we'll do.  And we'll resume in about ten minutes.  Thank you, everybody.  You can remain seated.

       (Recess at 3:50 p.m.)

       (Proceedings resumed at 4:10 p.m.)

       THE DEPUTY CLERK:  Your Honor, this is juror number 0860.

       THE COURT:  All right, good afternoon, sir.  How are

you?

PROSPECTIVE JUROR:  I'm well, thank you.

THE COURT:  We appreciate your patience with us.

I have a few follow up questions based on your questionnaire.  You indicated a fair number of diverse sources of news and information but, and then when we asked the question have you read or heard anything about the defendant, you said several sources, hard to remember the details.

So I guess one question is do you remember anything that you have read or heard about Roger Stone, who he is, what he's charged with, any of that?

PROSPECTIVE JUROR:  Yes.

THE COURT:  So what can you tell us that you know about the case?

PROSPECTIVE JUROR:  He lives in Florida.  He had some involvement with the WikiLeaks and there was some confusion or about what his involvement was.

And Julian Assange and the communications back and forth with those people or people who were lieutenants of those people, I'm not sure.

THE COURT:  So at this point is it fair to say that you don't know and have an open mind about what might have actually happened?

PROSPECTIVE JUROR:  Yeah, I don't have any personal knowledge about what actually happened.

THE COURT:  Do you bring any opinion about what might have happened to the courtroom or are you open to deciding this case just based solely on the evidence?

PROSPECTIVE JUROR:  Yeah.

THE COURT:  It looked like you sighed a little bit.

PROSPECTIVE JUROR:  I have opinions about everything.

THE COURT:  Okay, do you have opinions about Roger Stone?

PROSPECTIVE JUROR:  Yes, but they're not based on -- like I said, I have opinions about everything.

THE COURT:  And your opinions about Roger Stone fall generally in the positive side or the negative side of the spectrum?

PROSPECTIVE JUROR:  Probably on the negative side.

THE COURT:  Can you put those aside and fairly decide based solely on the evidence whether the government has proved its case beyond a reasonable doubt?

PROSPECTIVE JUROR:  Yes, I think I can do that.

THE COURT:  You indicated that you spend a lot of time discussing topics with a number of people who were involved in communication and journalism, and you certainly have a lot of sources you tend to follow.  Have you been able to follow the instructions that we gave at the time of the completion of the questionnaire about not talking about or reading about this case?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Do you think you would be able to continue to follow that instruction as we move forward?

PROSPECTIVE JUROR:  I think so.  It's likely to become more prominent but I haven't seen any news about it since the initial summons for this.  Like I said, as the trial moves forward probably more likely I have to say I have to excuse myself from that conversation.

THE COURT:  As long as you're committed to doing that that's really our concern.

One of the things you indicated that you have opinions about are a number of the people who are on the list of people who might be involved in this case.  One of the first things you'll hear is that Mr. Stone was involved and supportive of the campaign of Donald Trump to be president of the United States.

PROSPECTIVE JUROR:  Right, I was aware of that.

THE COURT:  So knowing that fact, does that, is that something that makes you feel that you couldn't be fair and open minded about whether he committed this offense?

PROSPECTIVE JUROR:  No, I don't think that troubles me.

THE COURT:  Is there something else that troubles you?

PROSPECTIVE JUROR:  No.

THE COURT:  Do you have any questions?

MR. KRAVIS:  Thank you, Your Honor.

Good afternoon, sir.

PROSPECTIVE JUROR:  Hi.

MR. KRAVIS:  You mentioned in response to one of your, one of the questions in the questionnaire that you had a work trip scheduled for mid November.

PROSPECTIVE JUROR:  I do.  When the initial announcement for this came up, they were looking at the third week of November or the first week of December.  They have since decided on the second week of November.  I'm suppose to be in Milwaukee next week.  Then last week I found out I was suppose to be in Montana, in Missoula, Montana the week after that, two weeks from now.

THE COURT:  Are those things that can be changed?

PROSPECTIVE JUROR:  No, they won't be changed.

THE COURT:  So would it be a hardship for you to serve on the jury in this case?

PROSPECTIVE JUROR:  I believe it would.

THE COURT:  Are you the only one that can --

PROSPECTIVE JUROR:  I'm suppose to do a presentation in Milwaukee and then in Missoula I'm suppose to work with the Homeland Security and FEMA.

THE COURT:  Do you have any other questions?

MR. KRAVIS:  No, thank you, Your Honor.

THE COURT:  Do you have any questions?

MR. BUSCHEL:  No.

THE COURT:  Sir, I'm going to ask you to step out.
If we need to bring you back for anything else we will.

(Prospective juror leaves courtroom.)

THE COURT:  We should excuse this juror.

MR. KRAVIS:  We agree.

THE COURT:  All right.

Bring in the next one.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror number
0998.

THE COURT:  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  Thanks for waiting for us all day.

You indicated, but I just wanted to follow up with you
personally about it, that you hadn't heard anything about this
case or this defendant in the news.  Is that still the case?

PROSPECTIVE JUROR:  Correct.

THE COURT:  So is there any reason sitting here right
now that you're not totally fair and impartial and open minded
about this case?

PROSPECTIVE JUROR:  No.

THE COURT:  Have you served as a juror in the past?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Was it on cases where you were able to reach a verdict with your fellow jurors?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Do you have any questions?

MR. KRAVIS:  Just one.  Thank you, Your Honor.

Good afternoon, ma'am.

PROSPECTIVE JUROR:  Good afternoon.

MR. KRAVIS:  I saw in your questionnaire that your job title is executive administrative assistant to the Deputy Chief Administrator Officer of Government Infrastructure for a local government agency.

What does that mean?  What do you do?

PROSPECTIVE JUROR:  I'm like his, the executive assistant's secretary for the Deputy Chief Administrative office.

MR. KRAVIS:  Got it.  Thank you, ma'am.

Thank you, Your Honor.

THE COURT:  Do you have to live in the county to have that job?

PROSPECTIVE JUROR:  No, I live in the District.

THE COURT:  I just wanted to make sure because if you don't live in the district, we couldn't have you as a juror.

Do you have any questions?

MR. BUSCHEL:  Yes, thank you.

Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

MR. BUSCHEL:  You have a friend, Ms. Adams, who works at the FBI?

PROSPECTIVE JUROR:  Correct.

MR. BUSCHEL:  How close are you to her?

PROSPECTIVE JUROR:  She's, we've been friends for years, but we haven't talked in years as well.  I know she works in the FBI but I don't know where and what she does.

MR. BUSCHEL:  The fact that she works at the FBI and there'll be witnesses who work at the FBI, you can follow the instruction on the presumption of innocence in this case?

PROSPECTIVE JUROR:  Correct, yes.

MR. BUSCHEL:  That won't effect your ability one way or the other that you have a friend who works for an organization?

PROSPECTIVE JUROR:  No.  I just know that's something about they burn stuff, that's all I know in regards to her job.

MR. BUSCHEL:  Very good, thank you.

THE COURT:  We don't know what that means, but okay.

PROSPECTIVE JUROR:  It's like shredding, they put stuff in bags, that's all I know.

THE COURT:  Okay, thank you very much.  We'll let you go back to the jury room.

(Prospective juror leaves courtroom.)

THE COURT:  Let's bring in the next juror.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror number 1190.

THE COURT:  Good afternoon.

PROSPECTIVE JUROR:  Hi.

THE COURT:  Thank you very much for your patience through this exercise today.  I wanted to ask you a few follow up questions after your jury questionnaire.

You indicated back when you filled it out that you had read some articles in the Post or heard about the case in the national news media.  I wondered if you could be a little more specific about what you may have heard about the defendant or the case.

PROSPECTIVE JUROR:  I don't have the clearest memory but I remember reading a couple articles in the Post about a case which you already, you know, spoke about.  I mean, the charges against the defendant.

I also read a long article on his association with Paul Manafort, it was a lengthy article in the Post a couple of months ago that I read.

THE COURT:  Well, you indicated I think that you don't have a high opinion of Mr. Manafort or Donald Trump and in addition to his association with Mr. Manafort which I don't think is going to be a big item in this case, you will hear that he was actively involved in Donald Trump's campaign to be

president of the United States.

        PROSPECTIVE JUROR:  Right.

        THE COURT:  So does your low opinion of those gentlemen taint your ability to be fair and neutral when considering the evidence against this defendant?

        PROSPECTIVE JUROR:  I think it would impact my objectivity in terms of judging.

        THE COURT:  So sitting here right now do you feel like you're not fair and objective about him?

        PROSPECTIVE JUROR:  No, I'm not fair and objective. That's my honest answer.

        THE COURT:  You are here to give your honest answers, and we very much appreciate that.

    I'm going to ask you before I bombard you with more questions I'm going to ask you if you would step out briefly. If we need to bring you back we will or we may not need to bring you back with more questions.

    Thank you.

        PROSPECTIVE JUROR:  Okay.

    (Prospective juror leaves courtroom.)

        THE COURT:  I plan to excuse this gentleman and move on to the next juror.

    (Prospective juror enters courtroom.)

        THE DEPUTY CLERK:  Your Honor, this is juror number 0172.

THE COURT:  All right, good afternoon.  Thank you for being patient with us all day.

We have your jury questionnaire and you indicated at the time that you follow the news on some sources, but you also indicated that you seem to remember reading about the case but you didn't remember reading much in detail.

PROSPECTIVE JUROR:  Correct.

THE COURT:  So I guess my question is what. if anything, do you think you do know or do remember about Mr. Stone or about the case?

PROSPECTIVE JUROR:  I really just don't remember about a lot of details.  I have three kids and I have a full-time job.  I see headlines but I don't have the time to drill down to the details on this stuff.

THE COURT:  So is it fair to say that if you were selected as a juror in this case you are a clean slate, you're not coming in here with an opinion or a point of view about it?

PROSPECTIVE JUROR:  I guess so.

THE COURT:  Well, do you think you can be fair or do you have an opinion about this case?

PROSPECTIVE JUROR:  Yes.  No, I do not have an opinion about this case.

THE COURT:  Do you have any knowledge about the case?

PROSPECTIVE JUROR:  I couldn't really say what the issues were, no.

THE COURT:  Well, we're going to ask you if you suddenly remember oh, yeah, I did read something about that to decide this case based solely on what you hear in the courtroom and not on anything you may have read before.

Do you think you can do that?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Is there anything about the full-time job and the three kids that would make it a hardship for you to serve in this case?

PROSPECTIVE JUROR:  Yes, but for whom isn't it a hardship I guess is what I would say.  I would have to rearrange some things, but that's probably doable.

THE COURT:  All right.  Do you have any questions?

MR. KRAVIS:  No, thank you, Your Honor.

THE COURT:  Any questions?

MR. BUSCHEL:  No, thank you.

THE COURT:  Thank you very much.

(Prospective juror leaves courtroom.)

THE COURT:  Let's bring in the next juror.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror number 0686.

THE COURT:  Good afternoon.  I think you indicated that either you or your spouse or both have some background in criminal justice and law.

Is it just your spouse?

PROSPECTIVE JUROR:  My spouse is an attorney and I have a Master's Degree in criminal justice administration.

THE COURT:  In connection with criminal justice administration what does that consist of really?

PROSPECTIVE JUROR:  Police practices, evidence practices and policing, law enforcement.  Not the practice of law itself.

THE COURT:  Does your husband, what is your spouse, what is his area of expertise?

PROSPECTIVE JUROR:  Financial security.

THE COURT:  Is there anything about your background or your spouse's background that you feel makes you come into court favoring the government as opposed to the defendant in this case?

PROSPECTIVE JUROR:  No, Your Honor.

THE COURT:  Apparently you're aware at least prior to coming in that, that Mr. Stone testified before the House Committee as part of the investigation.

Did you watch his testimony on cable news?

PROSPECTIVE JUROR:  No, Your Honor.

THE COURT:  Have you followed this case or anything further about his testimony on the news?

PROSPECTIVE JUROR:  No, Your Honor.

THE COURT:  Do you have an opinion based on, there

are a number of sources that you do, you indicated you read sometimes or listen to sometimes.

Do you have an opinion sitting here right now about whether, his guilt or innocence on the charges in this case?

PROSPECTIVE JUROR:  No.

THE COURT:  Is there any reason why you are aware of why you couldn't be fair and impartial in this case?

PROSPECTIVE JUROR:  No.

THE COURT:  Does government have any questions?

MR. KRAVIS:  No, thank you, Your Honor.

THE COURT:  Anything?

MR. BUSCHEL:  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

MR. BUSCHEL:  You served on a juvenile justice advisory board?

PROSPECTIVE JUROR:  Yeah.

MR. BUSCHEL:  Can you tell us what that's about?

PROSPECTIVE JUROR:  Sure.  For the City of D.C. I served on the juvenile investigative advisory committee, past tense.  I have since ended my term, which is advisory to the mayor on the juvenile justice plan, on a three year plan, including what issues you want to look into, collecting data from the different agencies to advise the mayor on focused areas.

MR. BUSCHEL:  Do you interact with law enforcement?

PROSPECTIVE JUROR:  No.

MR. BUSCHEL:  That's done, you're saying you don't do that anymore?

PROSPECTIVE JUROR:  Yes.

THE COURT:  What's the nature of your work for your current employer?  You listed who they are but I was wondering what you do for them?

PROSPECTIVE JUROR:  I work on state and local advocacy campaigns for evidence based government.

MR. BUSCHEL:  Does it have anything to do with law enforcement, your work?

PROSPECTIVE JUROR:  Not directly.  We work at a handful of states and counties sometimes on criminal justice issues, sometimes not, a variety of social policy areas.

We have worked with law enforcement in terms of getting data from them to inform recommendations the state might have. But not actively, I do not interact with law enforcement agencies.

MR. BUSCHEL:  So as you sit here now you can follow the instruction on presumption of innocence?

PROSPECTIVE JUROR:  Yes.

MR. BUSCHEL:  Okay, great.  Thank you.

THE COURT:  Thank you very much.  You can step back into the jury room.

(Prospective juror leaves courtroom.)

THE COURT:  Before we bring the next juror, this juror and then one who is a little further down on the list indicated the need to pick someone up at school at 5.  So after we hear from the next juror, then I think we should move ahead and hear the other one who is number 44 on the list.  And then we'll go back to the rest in the order in which they appear on your list just to make sure that everybody gets where they need to be.

All right.  Thank you.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror number 0100.

PROSPECTIVE JUROR:  Hi.

THE COURT:  Good afternoon.

We have a couple of follow up questions based on your jury questionnaire.  I guess I want to start with you told Mr. Haley that you had a scheduling issue today in terms of being able to leave the building and pick up someone at school.

Is that a daily responsibility that you have?

PROSPECTIVE JUROR:  I mean, my kids usually get off at, need to be picked up by 5:30, 6 o'clock.  My husband helps but today he was traveling, so he couldn't do it.  Usually not an issue.

THE COURT:  So if we tended to break at 4:30 or 5 o'clock on a regular basis or even spilled over a little bit

some days that's fine, that's not going to be a problem for you?

        PROSPECTIVE JUROR:  No.  They're pretty close, so it's not bad.

        THE COURT:  One of the questions we had whether you heard anything about the defendant or the case.  At the time you filled out the questionnaire you wrote no.

   Has any information come to your attention since the time you filled out the questionnaire?

        PROSPECTIVE JUROR:  No.

        THE COURT:  Do you tend to follow the news?

        PROSPECTIVE JUROR:  No.

        THE COURT:  No.

        PROSPECTIVE JUROR:  I mean, not regularly.  You know, little feeds here and there but nothing regularly.

        THE COURT:  So at this point sitting here right now you don't have an opinion one way or the other about the charges in this case?

        PROSPECTIVE JUROR:  Not at all.

        THE COURT:  Any questions?

        MR. KRAVIS:  No, thank you, Your Honor.

        THE COURT:  Mr. Buschel?

        MR. BUSCHEL:  No.

        THE COURT:  Thank you very much.  I'll excuse you and you should make it in time.

(Prospective juror leaves courtroom.)

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror number 1586 on line 44.

THE COURT:  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  We appreciate you waiting all day and we jumped ahead because you indicated to Mr. Haley that somebody is waiting for you to pick them up.  I just wanted to know whether that's a regular event that could affect your ability to sit in this case or whether you can make arrangements?

PROSPECTIVE JUROR:  They're in after care until six and my husband is out of town this week, but otherwise.

THE COURT:  Okay, so that should be fine.

One question you answered, you indicated that you didn't have an opinion about someone running for office and how that would effect their guilt or innocence in this case in being fair, but you said you have worked for three members of congress including a sitting U.S. Senator.

What did you do when you worked on the Hill?

PROSPECTIVE JUROR:  I was counsel and I worked on committee for education issues.

THE COURT:  This case involves allegations that the defendant was not truthful or that he attempted to obstruct committee investigation on Capitol Hill.

Given your work, would you tend to favor the government just because of the nature of the charges in this case?

PROSPECTIVE JUROR:  I would like to think I wouldn't, but I certainly have ten years of working in congress that has a certain level of loyalty I guess to the body.

THE COURT:  Do you think that you could put that aside here and decide whether the government has proved beyond a reasonable doubt whether he lied or obstructed the investigation or whether he didn't?

PROSPECTIVE JUROR:  That would be my intent.

THE COURT:  Do you already have a point of view about it?

PROSPECTIVE JUROR:  I do not.

THE COURT:  It looks like you follow a certain amount of news sources and twitter, but have you learned anything about this case?

PROSPECTIVE JUROR:  Since I was here at the end of the summer, I guess that was September, I haven't paid, I tried not to pay any attention.

THE COURT:  Have you found it difficult to follow that instruction?

PROSPECTIVE JUROR:  No.

THE COURT:  Prior to that point I think you indicated at the time I followed the case through news sources both on radio and work and background noise on TV while at work.  I

know the basic time line.

So what did you mean by that?  What is it that you understand about the case?

PROSPECTIVE JUROR:  Meaning following the trajectory of the report and the investigation up through the actual release of the Mueller report.

THE COURT:  So you know about what Mueller was investigating?

PROSPECTIVE JUROR:  (Nodding, nodding.)

THE COURT:  Have you been following what Mr. Stone may or may not have done?

PROSPECTIVE JUROR:  In the context of all of the background noise, but no, not explicitly.

THE COURT:  So do you feel like you know any facts right now about what he did or didn't do?

PROSPECTIVE JUROR:  No.

THE COURT:  Do you have an opinion about him one way or the other sitting here today?

PROSPECTIVE JUROR:  No.

THE COURT:  Do you have any questions?

MR. KRAVIS:  No.  Thank you, Your Honor.

THE COURT:  Do you have any questions?

MR. BUSCHEL:  No.

THE COURT:  Okay, I'm going to ask you to step back out.  Thank you.

(Prospective juror leaves courtroom.)

MR. BUSCHEL:  Yes, as to juror 1586, I would like to move to excuse for cause.  I think her answer to the Court now that she's had ten years of loyalty to Congress coupled with her answer to question 30 gives us some pause and reasonable doubt of whether she can be very impartial.

THE COURT:  Can I hear from the government.

MR. KRAVIS:  We oppose the motion to strike.  I think the prospective juror was very clear that she could be fair and she could decide the case based solely on the evidence presented.

I mean, I would also note that if there was any ambiguity in the question about the prior service on the Hill defense didn't ask any questions.  I don't think there's a basis on the answers that she gave to remove her for cause.

THE COURT:  I think she was the kind of person who was trying to be very honest and say, you know, I work there, I feel loyal towards it, but I think she reiterated multiple times that she brought no mindset to the charges in this case about whether this defendant was guilty of any of the offenses with which he's charged and she didn't bring an opinion about him and she didn't track him that closely.

And so I don't think there's grounds on the record to remove her for cause at this time and so that motion will be denied.

THE DEPUTY CLERK:  1048, Your Honor.

THE COURT:  Yes.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror number 1048.

THE COURT:  All right, good afternoon, sir.  Thanks for your patience.

PROSPECTIVE JUROR:  Good afternoon, Your Honor.

THE COURT:  We have your juror questionnaire and I wanted to ask some follow up questions based on the questionnaire.  You indicated that you follow the special counsel investigation closely and you noted a number of news sources that you pay attention to.

And then we asked have you read or heard anything about the defendant and you made a reference to possibly violating court orders to refrain from making public comments about this case.

PROSPECTIVE JUROR:  Yes, I remember that.

THE COURT:  Is there anything else that you read or heard about Mr. Stone in this case?  Did you know who he was other than that?

PROSPECTIVE JUROR:  No, I have no knowledge of who, what his professional pursuits were other than what I've read.  Since our September screening, I believe there were two headlines that I saw which I then refrained from reading the

stories, but I just scanned the newspaper.

I could try to relate them if you're interested.

THE COURT:  Well, if you recall what the general headline was.

PROSPECTIVE JUROR:  One was about a pretrial ruling I believe and once I saw the headline I realized it was about this case, I didn't read this article.

One was within the last couple of days.  There was anticipation of the trial beginning so there was a story about the trial about to begin.  I just made a conscious effort not to read the story.

THE COURT:  All right.  You were asked if you had opinions about a number of individuals including both candidates in the last election.  You indicated the one you supported and then you said you were deeply opposed to everything that Donald Trump stands for.

It will be a matter of record in this case that one of the things Mr. Stone was involved with was endeavoring to ensure that Donald Trump was elected president of the United States. And that he supported his election.

Does that piece of information make it difficult for you to be fair and impartial sitting in judgment about Roger Stone?

THE WITNESS:  I have thought about this, Your Honor, I can tell you this.  I'm conscious of coming into this experience with that view of the matter.  That I have certain

political prospectives that could influence how I sit on the
jury.

　　　　The only thing I can expect of myself is that the
knowledge of those perspectives will help me to review the
evidence fairly and apply the law to the facts as best I can.
I think it's unrealistic to make that question a binary one.

　　　　We all come into this, this is Washington.  We all come
into this with certain of those political points.  All I can do
is hope that my awareness of them will help me self- monitor
and focus on just the evidence before me.  I've served on
juries before, so I know the drill.

　　　　　　THE COURT:  So you understand that he's not on trial
for having an appropriate or inappropriate political
perspective?

　　　　　　PROSPECTIVE JUROR:  Exactly.

　　　　　　THE COURT:  He's on trial for whether he was truthful
when he testified before a congressional committee and whether
he attempted to tamper with another witness who was summoned to
the committee and that has to be decided based on the evidence
in this courtroom and nothing else, and not whose side he was
on.  And the government is obligated to prove its case beyond a
reasonable doubt.

　　　　And I understand that you're saying you come into the
courtroom with certain points of view, but do you feel that you
can put them aside and judge this case fairly?

PROSPECTIVE JUROR:  Yes, yes, but it's a complicated question.  You are asking me for a binary --

THE COURT:  I know it's a complicated question.

PROSPECTIVE JUROR:  And I'm saying all I can do is be conscious --

THE COURT:  You have a better way I should ask this question?

PROSPECTIVE JUROR:  No.  Only all I can tell you is only through understanding those prospectives can I hope to focus and keep myself in control so that I don't let those feelings get in the way of what I'm suppose to be doing here.

THE COURT:  All right.  Well, I do appreciate your candor here.  And I'm going to give the parties an opportunity to ask you any further questions that they might have.

MR. KRAVIS:  Good afternoon, sir.

PROSPECTIVE JUROR:  How are you?

MR. KRAVIS:  Fine, thank you.

I wanted to ask you perhaps a simpler question.  You mentioned in your questionnaire that you were asked about your availability for the trial and your answer was other than pre-existing commitments, no.

I was just curious, do you have any at this point commitments that would interfere with your ability to come to court every day to serve as a juror?

PROSPECTIVE JUROR:  I have one pre-existing

obligation that has to do with my role as a member of board of
directors of an educational institution.  I have alerted them
to the possibility that this could create a conflict with
attending a board meeting that is scheduled for the middle of
the month.  It would create certain inconveniences but not what
I would say rise to the level of hardship.

So if selected, and I have alerted the institution, like I
said, so I don't think that would interfere with my attendance.
It's not a foreign trip situation.

MR. KRAVIS:  So if you are selected for the jury you
would be able to cancel the trip?

PROSPECTIVE JUROR:  I would just not go.  In fact, I
have not made my travel plans yet until I found out how this
was going to go.

MR. KRAVIS:  The last question I wanted to ask you
was about the question the Court was asking you a moment ago.
Recognizing and appreciating the point that everyone comes to
things with prior experiences and not as a blank slate, if you
were selected to serve on the jury, when you are asked to
evaluate the defendant's innocence or guilt of the charges
against him, would you be able to make that determination
solely based on the evidence that you heard in the courtroom?

PROSPECTIVE JUROR:  You're counsel for the
prosecutors, correct?  You are the U.S. Attorney, correct?

MR. KRAVIS:  I am an assistant U.S. Attorney, yes.

PROSPECTIVE JUROR:  Yes.  I'm a retired attorney, I served on juries, I understand how the process works.

All I can tell the Court is that I come into this with certain notions and I have to be conscious of those notions.  I believe that I can apply, make a fair evaluation of the evidence and fairly apply the law to the facts.

THE COURT:  I guess the question is there are notions that obviously this person's politics to the extent I understand what they are and I don't agree with what he stands for.  And then there's the notion of, you know I think he probably did what they're saying.

Do you come to the courtroom right now not having an opinion about whether he did what he's charged with doing?

PROSPECTIVE JUROR:  I come to the courtroom not really knowing a lot of the details of the facts of this prosecution.  I just don't know.

So it's not as if one side or the other has to move me off of an existing position.

THE COURT:  That is the point.

PROSPECTIVE JUROR:  No.

THE COURT:  The point is if you came to the court thinking I already think that he's guilty we would need to know that.

If you say you come to the court and you are going to hear the facts and you're going to decide, that's what we expect of

everyone.

PROSPECTIVE JUROR:  Yes.

MR. KRAVIS:  Thank you.

THE COURT:  Do you have any questions?

MR. BUSCHEL:  I have one.

And I recognize you're a lawyer and I have read your questionnaire.  So I'm going to ask you, I'm going to read one of your answers to a particular question and ask you to comment on it if that's acceptable.

THE COURT:  I think you have to ask him a question.

MR. BUSCHEL:  Okay.  So question number 30 was please indicate if you already have an opinion about any of those individuals or if the fact that they may be involved in the case would make it difficult for you to be fair and impartial to both sides?

Your answer was supported Hillary Clinton in 2016.  Deeply opposed to everything Donald Trump stands for.

PROSPECTIVE JUROR:  Yes, I would.

MR. BUSCHEL:  So the question is would it be difficult to be fair, you're saying it would be difficult for you to be fair and impartial?

MR. KRAVIS:  Objection.

THE COURT:  Well, to be fair, the question said please indicate if you already have an opinion about any of those individuals, or so.

PROSPECTIVE JUROR:  I have opinions about those individuals as I stated that that was the question and I was trying to be as candid as I could about my opinion about those individuals.

And your question is?

MR. BUSCHEL:  Is it going to be difficult for you to be fair and impartial in light of that answer?

PROSPECTIVE JUROR:  I will endeavor to the best of my efforts to pay attention to the evidence and apply the law to the facts.  I don't know what else I can tell you.

I come in with certain strong feelings about the current political climate.  This case is highly charged because it's wrapped up in that highly political climate.  But as a citizen and juror, I have to do my duty as a juror and I'm going to try my best.

I can't --

MR. BUSCHEL:  Do you have a doubt about whether you can succeed?

PROSPECTIVE JUROR:  No.  I have been on juries before, I think I can do it, I think I can do it.

MR. BUSCHEL:  Thank you, sir.

THE COURT:  Okay.  I'm going to ask you to step back into the jury room.  I appreciate your candor.  We know these are not easy questions to answer and not easy answers for us to access.

(Prospective juror leaves courtroom.)

Mr. Buschel.

MR. BUSCHEL:  Yes, Judge.  We move to excuse juror 1048 for cause.

I think, I mean, he wrestles and he's a lawyer and he's in the court and we all understand what's going on and I'll let the Court judge and make findings as to his demeanor.  I think question 30, his response yields excusing him for cause.

THE COURT:  All right.  I believe that his answer to question 30 answered the first prong of the question, and I think he made that clear upon examination.

Question, and this probably is a good lesson for the future about compound questions, says please indicate if you already have any opinion about any of those individuals, or if the fact that they may be involved in this case would make it difficult for you to be fair and impartial on both sides.  He simply then provided his opinion about those individuals.

While I understand the defendant's position, I don't think this witness ever wavered from having an opinion about the President to having an opinion about Roger Stone.  So what I think we saw with him and with the juror before is what happens when you get really intelligent people with a lot of integrity trying very hard to be as honest as possible, but I don't believe he said anything that indicates to me that he walks into this courtroom biased against Roger Stone in the charges

in this case while he may disagree with his political
activities.

        And therefore, I don't believe as I said from the
beginning the mere fact that someone is opposed to the
president automatically disqualifies them from serving as a
juror in this case.

        So I'm not going to excuse him for cause.

        I also want to point out that I made a point earlier this
morning about people signaling how they feel about what's being
said and periodically there's been some head shaking or nodding
in agreement and neither is acceptable at counsel table.

        Go on.

        I know there's no jury in the room but it's a good time to
start practicing.

        (Prospective juror enters courtroom.)

                THE DEPUTY CLERK:  Your Honor, this is juror number
1498.

                THE COURT:  All right, good afternoon, sir.

                PROSPECTIVE JUROR:  Good afternoon.

                THE COURT:  How are you?

                PROSPECTIVE JUROR:  I'm all right.

                THE COURT:  We asked when you came in to fill out the
questionnaire whether you had read or heard anything about the
case and it seems like your general interaction with TV and
news is ESPN.  There's been a lot to watch lately.

But I guess my question is have you read or heard anything since the time you were here or do you have any more information about the case now than you had before?

PROSPECTIVE JUROR:  No.

THE COURT:  Is there any reason that you're aware of why you couldn't be fair and impartial to both sides in this case?

PROSPECTIVE JUROR:  No.

THE COURT:  Do you have any questions?

MR. KRAVIS:  Briefly.  Thank you, Your Honor.

Good afternoon, sir.

PROSPECTIVE JUROR:  Good afternoon.

MR. KRAVIS:  Just to go back to the Court, the topic the Court was asking you about a moment ago about news.  I saw you mentioned in the questionnaire in terms of TV, you don't really follow the news on TV.

PROSPECTIVE JUROR:  Right.

MR. KRAVIS:  I was just wondering about like in prints or on the internet are there any newspapers, magazines or websites where you go to get any information?

PROSPECTIVE JUROR:  No.  I don't even have a social media.  I just created it for my car.

MR. KRAVIS:  I'm sorry?

PROSPECTIVE JUROR:  I don't have social media, I just created one for my car, that's all.

MR. KRAVIS:  Anything in print that you follow, newspapers, magazines?

PROSPECTIVE JUROR:  No.

MR. KRAVIS:  Okay.  Thank you, sir.

Thank you, Your Honor.

THE COURT:  Any questions?

MR. BUSCHEL:  No.

THE COURT:  Thank you very much, sir.  You can step back into the jury room.

(Prospective juror leaves courtroom.)

THE COURT:  The next witness was the one who was excused, so we're up to 42.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your, Honor this is juror number 0442, Your Honor.

THE COURT:  All right, good afternoon.  Sorry for keeping you so long.  We appreciate your patience with us and so it's really a very important exercise and we got started late through fault of no one.

You indicated that you do follow news on some sources and you followed the Russia interference investigation pretty closely.  So obviously we asked you at the time that you filled out the questionnaire whether you had read or heard anything about the defendant and you said yes, I seen news reports to his ties to WikiLeaks and the release of John Podesta's emails.

I've also seen televised interviews of Roger Stone on CNN and other news outlets.  I'm also aware of the charges against Mr. Stone.

So with all of that information that you bring to the courtroom, do you have an opinion sitting here today about the charges in this case?

PROSPECTIVE JUROR:  Opinion as far as guilt or innocence or just about the charges themselves?

THE COURT:  Let's start with the charges themselves and then we'll move to the next question.

I realize these are uncomfortable questions, but you know your candor is what will really help us do the best job.

PROSPECTIVE JUROR:  No, no, fully understand, fully understand.

I understand why the charges were brought based on what I have seen and read and it's just not since we showed up in September.  It's hard to avoid this locally here living in D.C. because this gets coverage both locally and nationally, so.

THE COURT:  Right.

PROSPECTIVE JUROR:  In terms of guilt or innocence I'll be honest I am leaning a certain way, but ultimately the facts will decide whether that's guilt or innocence is the verdict.

THE COURT:  Are you willing to share with us which way you're learning?  I think --

PROSPECTIVE JUROR:  Well, I think if I do that, I think that we're kind of done here, aren't we?

THE COURT:  I think leaning may have you done. Doesn't really matter which way, but it may effect who is more upset about it.

But I think the point is we're trying to get people who don't feel like they know anything one way or the other.  We are not saying we want people who pay no attention and who don't have a thought in their head.  There are plenty of intelligent people who just haven't followed this particular case and don't have a point of view.  And that's who we want in the jury box.

PROSPECTIVE JUROR:  Fully understand that.

THE COURT:  If you feel like what I've read I am coming in here already with a mindset, then that's something we need to know about.

PROSPECTIVE JUROR:  And that's fair enough.

THE COURT:  So can you describe to me with a little more detail what your current mindset is?

PROSPECTIVE JUROR:  Well, I would say that it doesn't look great for the defendant right now based on what I've seen and read.

THE COURT:  And one of the things that you also indicated is that you have opinions about some of the other individuals that we mentioned.  I don't know which ones you

were referring to in particular.

PROSPECTIVE JUROR:  Which question was that?

THE COURT:  We gave a long list of names.

PROSPECTIVE JUROR:  I thought the question was asking like was I aware of them.  And then I reread it like do I know them.  I was like no, I don't know any of those people, I'm not aware of who those people are.

THE COURT:  But have you made opinions about them if you heard for instance that Roger Stone's involvement in this case arises out of his support of the election of Donald Trump and his work on the campaign and perhaps communications with people such as Richard Gates or Stephen Bannon, would that effect your ability to be fair to him?

PROSPECTIVE JUROR:  Obviously, I could say I'm not a fan of some of the people on the list, but I can be objective when looking at the facts in terms of guilt or innocence of the right party.

THE COURT:  Do you have any questions you want to ask?

MR. KRAVIS:  No.  Thank you, Your Honor.

THE COURT:  Do you?

MR. BUSCHEL:  Good afternoon.

So you're learning a certain way and that way is not great for Roger Stone.  Now, there's a presumption of innocence instruction, does your leaning effect your ability to follow

that?

PROSPECTIVE JUROR:  Potentially.

MR. BUSCHEL:  That's all.  Thank you.

THE COURT:  All right, thank you.  I'm going to ask you to step out.  If we have more questions for you we'll bring you back in.  But thank you very much and we appreciate your candor.

PROSPECTIVE JUROR:  Certainly.  You'll get nothing but candor.

(Prospective juror leaves courtroom.)

THE COURT:  All right.  I'm going to excuse this juror.  I think we would like him to start at zero.

All right, let's bring in the next one.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror 0721.

THE COURT:  Good afternoon.  How are you?

PROSPECTIVE JUROR:  Good afternoon.  I'm fine.

THE COURT:  Thank you for hanging in there with us all day.  I have a few follow up questions for you based on your questionnaire.  You indicated I guess that you follow the news somewhat, it looks like primarily on local news; is that correct?

PROSPECTIVE JUROR:  Yes, just local news, get the weather and what's going on around town, traffic issues, so I can find my way to and from work.

THE COURT:  Follow the NATS?

PROSPECTIVE JUROR:  No.

THE COURT:  No?

PROSPECTIVE JUROR:  D.C. United.

THE COURT:  Okay, well, that's good.  As long as you are following some D.C. team.

So in, but you say you've heard maybe a little bit about this case by watching the local news?

PROSPECTIVE JUROR:  You can't get away, they always say stuff once in awhile.  But I don't really follow it like that.

THE COURT:  Do you have any information right now about what he's charged with or the facts of the case beyond what I've told you?

PROSPECTIVE JUROR:  No.

THE COURT:  And do you have any opinion one way or the other about whether the government can prove the charges in this case just sitting here today?

PROSPECTIVE JUROR:  I am really into politics that much.  They, actually I figure the government going to do whatever they are going to do anyway.

THE COURT:  I need you to speak a little closer to the microphone.

I guess my question is are you open minded at this point or have you made up your mind about this case?

PROSPECTIVE JUROR:  I'm pretty much open minded.  I don't know which way to go.

THE COURT:  You understand that it's the government's job to prove beyond a reasonable doubt which way to go?  And if not, then you have to find the defendant not guilty, you understand that?

Can you follow that instruction, it's the government's job to prove him guilty?  He doesn't have to prove anything.

PROSPECTIVE JUROR:  I have to prove him guilty?

THE COURT:  No, no, the government has to prove him guilty.  You just have to listen and decide whether he did it.  If they don't prove anything, you have to find him not guilty.

Do you understand that?

PROSPECTIVE JUROR:  Yeah.

THE COURT:  Now one of the things we asked if you have any personal reason that made you want to be a juror in this case and you said you wanted to see the operation in the court system.

PROSPECTIVE JUROR:  Yeah.  I've never been in the court, so I always wanted to see what goes on around here.

THE COURT:  So you felt this would be a good opportunity to find out how it works.

PROSPECTIVE JUROR:  Yeah, it's a matter of knowledge, knowledge is always good.

THE COURT:  Do you have any questions for this juror?

MR. KRAVIS:  Thank you, Your Honor.

Good afternoon, sir.

PROSPECTIVE JUROR:  Good afternoon.

MR. KRAVIS:  On your questionnaire you listed your job title as environmental engineer.

PROSPECTIVE JUROR:  Correct.

MR. KRAVIS:  I was just wondering, what do you do as an environmental engineer?

PROSPECTIVE JUROR:  I do planning review for development in the city.  I'm with erosion, sediment and storm water review.  So if you doing a new building or if you are adding to your building, and you are going to disturb the land we review it for sediment control.

MR. KRAVIS:  Got it.  Thank you.

THE COURT:  Any questions?

MR. BUSCHEL:  Nothing.  Thank you.

THE COURT:  Thank you very much, sir.  You can step back into the jury room.

PROSPECTIVE JUROR:  Okay, thanks.

(Prospective juror leaves courtroom.)

THE COURT:  All right.  Any motions with respect to this gentleman?

MR. KRAVIS:  No, Your Honor.

THE COURT:  All right, we'll go on to the next.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror number 0521.

THE COURT:  All right, good afternoon.

We've got your jury questionnaire but we need to ask you a few follow up questions.  I guess I want to start at the end. I know you're very committed to the success of your business, very interesting business, but would that effect your ability to sit?  If we, if you were selected as a juror in this case could you attend, could you hear the issues, you would not be distracted by the feeling that you should be running the operation?

PROSPECTIVE JUROR:  I appreciate the question.  I would be distracted by it, yeah.  I'm a team of one primarily so the business would kind of grind to a halt during working hours.

THE COURT:  So two weeks is too much to ask basically?

PROSPECTIVE JUROR:  Particularly around the holiday season, yeah.

THE COURT:  All right.  Does anybody have any more questions they want to ask?

MR. KRAVIS:  No, Your Honor.

MR. BUSCHEL:  No.

THE COURT:  Thank you very much.

PROSPECTIVE JUROR:  Thank you.

(Prospective juror leaves courtroom.)

THE COURT:  I wasn't necessarily persuaded on paper but if she's going to sit here and be worrying about her company the whole time, I don't think that's what we're looking for.  So I'm going to excuse her.

The next person on the list has already been qualified over the defendant's motion, so we're up to number 1224 who is number 45 on the list and I think we have 27 people that qualified at this point.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror number 1224.

PROSPECTIVE JUROR:  Hi, hello.

THE COURT:  You made it, we got to you.

PROSPECTIVE JUROR:  Yes.

THE COURT:  Thank you for your patience.

PROSPECTIVE JUROR:  You welcome.

THE COURT:  Have a couple of follow up questions about your questionnaire.

PROSPECTIVE JUROR:  Okay.

THE COURT:  One thing you indicate is that you work for a federal government agency.

PROSPECTIVE JUROR:  I'm retired.

THE COURT:  You're now retired.  Congratulations.

PROSPECTIVE JUROR:  Thank you.

THE COURT:  You did work for a federal government agency.

PROSPECTIVE JUROR:  Yes.

THE COURT:  And there is a federal government agency, the Department of Justice prosecuting the defendant in this case.

Does the fact that you worked for the government for a significant period of time make you favor the government in this case against the individual who has been charged?

PROSPECTIVE JUROR:  No.

THE COURT:  You can be fair even though it's a federal prosecution?

PROSPECTIVE JUROR:  Yes.

THE COURT:  All right.  Now you indicated that you do read and watch some news, but we asked the question about whether you read or heard anything about the defendant in this case and you didn't have any information.

Is that still the case, do you not know anything about this case or about the defendant?

PROSPECTIVE JUROR:  I don't remember.

THE COURT:  Okay.  So you have not heard anything that you recall right now?

PROSPECTIVE JUROR:  No.

THE COURT:  During the trial if you remember oh, yeah, I heard something about that.  Can you put that aside and

just base your decision on the evidence here in the courtroom?

   PROSPECTIVE JUROR:  Yes.

   THE COURT:  Do you have any questions for this juror?

   MR. KRAVIS:  Thank you, Your Honor.

 Good afternoon, ma'am.

   PROSPECTIVE JUROR:  Good afternoon.

   MR. KRAVIS:  I think you said a moment ago that you're retired now?

   PROSPECTIVE JUROR:  Yes.

   MR. KRAVIS:  What was the job that you held before you retired?

   PROSPECTIVE JUROR:  I was a program analyst.

   MR. KRAVIS:  What kind of work did you do, what were your responsibilities as program analyst?

   PROSPECTIVE JUROR:  I had to put information in the system from different constituents that wrote to the agency about, you know, complaining about different stuff.  Sometimes it was a good letter, but most of the time it was bad.

   MR. KRAVIS:  Got it.

   PROSPECTIVE JUROR:  I just needed to know how to work.  It's just a matter of working, knowing how to work the program.

   MR. KRAVIS:  Knowing how to work the program.

   PROSPECTIVE JUROR:  Yes, that's basically it.

   MR. KRAVIS:  Thank you.

Thank you, Your Honor.

THE COURT:  Any questions?

MR. BUSCHEL:  No.

THE COURT:  Thank you very much.  You can step outside.

(Prospective juror leaves courtroom.)

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror number 0030.

PROSPECTIVE JUROR:  Hi.

THE COURT:  Hi, good afternoon.

We're here to follow up on your questionnaire that you completed.

PROSPECTIVE JUROR:  Okay.

THE COURT:  Which we appreciated and you indicated that you'd followed the media.  Really there's like two many resources for you to list.  You track some more closely, the investigation.

So I guess the question is what, if anything, you've read or heard about Roger Stone or what you think you might know about Roger Stone?  You said you had heard of him but don't remember the specifics of the case.  You know he was involved in the Trump campaign, but you don't know what role he played.

PROSPECTIVE JUROR:  That's right.

THE COURT:  Is that about the sum and substance of

it?

PROSPECTIVE JUROR:  That's pretty much it.  I was trying to rack my brain trying to figure out what the trial would be about, but I couldn't.

THE COURT:  So sitting here right now you don't have an opinion as to whether he's guilty or innocent of anything that he's been charged with?

PROSPECTIVE JUROR:  No.

THE COURT:  Does the fact that he worked on the Trump campaign, does that effect your opinion of him one way or the other?

PROSPECTIVE JUROR:  No.  And I'm not even sure he worked on the Trump campaign, I think he did.  He's somehow involved, I don't know.

THE COURT:  If you hear evidence that he was supporting the campaign that's not going to effect your ability to treat him fairly?

PROSPECTIVE JUROR:  No.

THE COURT:  So anything that we should know about that could effect your ability to be fair in this case?

PROSPECTIVE JUROR:  I don't think so.

THE COURT:  All right.  Any questions?

MR. KRAVIS:  Thank you, Your Honor.

Good afternoon, ma'am.

PROSPECTIVE JUROR:  Hi.

MR. KRAVIS:  Returning to the question about news and social media and there you said there were too many to list of the news sources you follow.  Can you just give us a couple, it doesn't have to be all.

PROSPECTIVE JUROR:  I mean, just all the local news, the ABC, CBS, NBC.  I listen to Podcasts.  The daily like NPR.  Everybody gets their news from everywhere.  So I get it from social media.  I get it walking down the street.

MR. KRAVIS:  Thank you very much.

Thank you, Your Honor.

THE COURT:  All right.  Thank you very much.  You can step back in the jury lounge.

(Prospective juror leaves courtroom.)

THE COURT:  All right, let's bring the next juror, 1466.  No?

THE DEPUTY CLERK:  No, that was our 15, Your Honor, that's it.

THE COURT:  There isn't anybody in there?

THE DEPUTY CLERK:  No.

THE COURT:  We're so close.  I would like to keep going if everybody else would like to keep going.  Whether at the end of the day we only bring back the ones we've qualified and let you do your peremptories in the morning is a different question.

It seems to me if we could get the group down to 34 people

and only make those people come back, that that would be a good

point to wrap up instead of having everybody come back.

How do you feel about that?  Can we take, bring in ten

more and see if we can get five out of it?

We only need three, but I like to have a little insurance

especially if it's going to go over night.

MR. KRAVIS:  That would be our preference.

MR. BUSCHEL:  Yes.

THE COURT:  Let's see what happens if you tell all

but -- so these are the only ones we have left.  The previous

ones I don't think we are going to pick the jury today, do you?

No.

The previous ones can report to the jury room in the

morning.  The only question is what to do with these people and

let's tell them we'd like to briefly question them and maybe go

to like 5:30 or so and if, if you have a little rope on your

hands let us know.

I appreciate everybody's perseverance and patience today.

We really didn't start until quite late and then we stopped

again.  So I think it's good to try to get as much done as we

can today.

(Pause.)

MR. SMITH:  Your Honor, just one sort of

administrative matter while we're waiting.  The Court Reporter

advised us to ask the Court for an order permitting the parties

to request copies of the sealed portions of the transcript.

THE COURT:  From yesterday?

MR. KRAVIS:  From the Court Reporter.

THE COURT:  Yes, the parties have my permission to ask the Court Reporter about anything that's already been sealed.

MR. SMITH:  Actually, Your Honor, she would print us copies but in order for her to email them, she needed an order of the Court.  So she said if the Court gave me an order to email them to you I will.

THE COURT:  All right, so if you request it and she needs to email it to you even if it's sealed, the parties alone can have it.

MR. KRAVIS:  Thank you.

MR. SMITH:  Thank you, Your Honor.

THE COURT:  We've done this before, that's correct?

MR. KRAVIS:  Yes.

THE COURT:  Yes, okay.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror number 1466.

THE COURT:  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  Sorry for the dally this morning.  It was no fault of anyone in this courtroom.  We appreciate your

hanging in there with us.

At the time you completed your jury questionnaire, we asked you not read or discuss anything about the case and you honestly predicted that that might be difficult because you live with a journalist but you would do your best.

So I guess one question is have you been able to be successful under those circumstances in not reading or just reading about it or discussing the case?

PROSPECTIVE JUROR:  Yes, I have.  He's respectful of the way the Court works, so we have not talked about anything.

THE COURT:  Okay.  So if you are selected as a juror you would be able to continue with that for the rest of the trial?

PROSPECTIVE JUROR:  Yes, I would.

THE COURT:  When we asked before about whether you heard anything about the defendant, you indicated just in general, you knew that he testified before the committee, but you didn't have any details.

Is that basically what you know?  Do you have any more information about him or about his testimony than that?

PROSPECTIVE JUROR:  No, just very general.

THE COURT:  Are you aware of what role, if any, that he played in the campaign?

PROSPECTIVE JUROR:  Slightly but not significantly.

THE COURT:  All right, what is it that you

understand?

        PROSPECTIVE JUROR:  Had to do with finance and money.

        THE COURT:  That may or may not be true.  But you will hear evidence I believe that he was associated with the campaign either formally or informally and certainly supportive of the campaign.

    You indicated in response to the question where we asked if you had opinions about a number of people on the list that you weren't a huge fan of the President.

    Now if you learned through this case that the defendant was involved in supporting the election of the President, would you hold that against him or can you be fair and impartial in deciding whether the government proved its case?

        PROSPECTIVE JUROR:  I can be fair if it's someone's job and they are following their job.

        THE COURT:  I'm sorry?

        PROSPECTIVE JUROR:  I would be fair if someone were doing their job and that's their job.

        THE COURT:  One other question you were asked was if it would be difficult for you to evaluate the testimony of some of the witnesses.  And you may hear from at least one witness that they pled guilty in a case and they're now cooperating with the government and testifying as part of that agreement.

    And when you were asked is there anything about that circumstance that would make it difficult for you to evaluate

their testimony, you said yes, and you said it's hard to believe criminals who have already been found guilty.  And they are doing this as part of an agreement to get a lower or better deal for themselves.

You will certainly hear an instruction that one thing you can take into consideration in evaluating someone's testimony is whether they have a reason to help the government that could be affecting their credibility.

But you'll also be told that you should consider the manner of testimony, the likelihood of what they're saying and assess their testimony based on a number of factors.

Do you think that you could listen to the testimony of a witness with a cooperation agreement and fairly decide whether you think he's telling the truth or not or do you come into it with a point of view of well, you know, he's a cooperator, so I'm discounting?

PROSPECTIVE JUROR:  I would come with an open mind and not try to take any bias or prejudgment.

THE COURT:  But this was something that you thought could effect their credibility and that's why you wrote it down?

PROSPECTIVE JUROR:  At the time that's what I thought.  I have never done this before.  That was my initial reaction, but understanding how the Court works, I could be fair and unbiased.

THE COURT:  Do you have any questions?

MR. KRAVIS:  No.  Thank you, Your Honor.

THE COURT:  Do you have any questions?

MR. BUSCHEL:  Yes, Your Honor.

You mentioned that you thought Roger Stone had something relating to finance in the campaign, the Trump campaign.  Where do you think you might have heard that?

PROSPECTIVE JUROR:  Probably on news somewhere at some point, not between the time of the Court the time we were called.

MR. BUSCHEL:  If you hear nothing about that is it going to linger in your mind and weigh against Roger Stone?

PROSPECTIVE JUROR:  No, it wouldn't.

MR. BUSCHEL:  I understand that you said that if it's somebody's job and they do their job.  But this is something let's say Roger Stone is a friend, volunteered to help Donald Trump become President.  He's associated with people in his campaign.

Does your feelings about them effect your ability to be fair and impartial to Roger Stone in this case?

PROSPECTIVE JUROR:  I would still try to be fair and impartial regardless of what I previously thought.

MR. BUSCHEL:  We are lawyers so we split words.  When you say try, does that mean you will do it or try?

PROSPECTIVE JUROR:  No, I'll do my best.

THE COURT:  Okay, thank you.  You can step back into the jury room.

(Prospective juror leaves courtroom.)

THE COURT:  So any motion with respect to this juror?

MR. KRAVIS:  Not from the government, Your Honor.

MR. BUSCHEL:  No.

THE COURT:  All right, let's go on for the next one.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror number 1694.

THE COURT:  Good afternoon, sir.

PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  I appreciate your patience with us.  We had a number of questions that we wanted to follow up on your questionnaire.  And the first thing I wanted to bring to your attention without getting too deeply into personal information is that when you received this summons, there was a notice that you are of an age that would enable you to politely decline if you chose to do so.  I wanted to make sure you were aware of that and ask you if you would like to be excused without further ado from jury service.

I also note that you said you have a potential conflict on the 13th of November when I fully expect that the trial will be going on.

So one question is whether if you served if that's

something that could be changed, but I guess the first question

is whether you want to serve?

          PROSPECTIVE JUROR:  I was aware of that.  I'm still

sanctioned because that's my version.

          THE COURT:  I didn't mean to suggest that you

weren't.

          PROSPECTIVE JUROR:  Well, I've had days and I frankly

think it's sort of a, a responsibility of citizens to serve.

          THE COURT:  We just wanted to make sure that you knew

you had the option.  I wasn't suggesting that there was

anything about your age that disqualified you.

     Will you be able if you serve to rearrange medical

appointments?

          PROSPECTIVE JUROR:  I will have to call tomorrow

morning and try to get them to move it as frankly I would have

a very good reason that they might be responsive.

          THE COURT:  Is it something of an emergent nature

that you would be concerned if you didn't get to take care of

that day?

          PROSPECTIVE JUROR:  It is not an emergent issue.  It

is a clinician who is extraordinarily good and it takes about

six months to see her unless it is emergent.

          THE COURT:  If you're selected to serve on this jury

would that be a problem?  Would that be in the back of your

mind?

PROSPECTIVE JUROR:  I'd get over it.

THE COURT:  All right, well one of the questions that we asked you, you do follow the news to some extent, was whether you had heard anything about the defendant and you indicated that you understood that he was a long term political advisor who has been charged with several offenses as a result of the Mueller investigation.  And so that's kind of general.

Do you have more specific knowledge than that or is that about all you know about the case?

PROSPECTIVE JUROR:  That's about all.  I did read about a third of the Mueller report but did not get further.

THE COURT:  All right.  Do you have any opinion at this point sitting here right now about Mr. Stone and these charges?

PROSPECTIVE JUROR:  No.

THE COURT:  All right.  There was some discussion, I don't know if you were sure that it was him that he may have been involved in a campaign in New York State at a time when you may have been involved in one?

PROSPECTIVE JUROR:  Sure.  Is it my time to speak?

THE COURT:  Well, I'm going to ask a question.  Do you know if he was or he wasn't?

PROSPECTIVE JUROR:  I decided to look that up and the way I could look it up was I simply checked on Mr. Stone's age and given his age, it's almost impossible that he's the person

I was thinking of.

THE COURT:  All right.  Well, if it turned out --
well, I'll let the parties ask any follow up questions about
this matter.

Do you have any questions that you want to ask?

MR. KRAVIS:  Yes.  Thank you, Your Honor.

Good afternoon, sir.

PROSPECTIVE JUROR:  Good afternoon.

MR. KRAVIS:  Following up briefly on that last point.
There may be some evidence in the case that references not
Howard Samuels but another Samuels, a Bill Samuels in a
campaign for office in New York.  It's not a central focus of
the trial but it may come up in some exhibits or testimony.

Is there anything about your experience on the Howard
Samuels campaign that would affect your ability to be fair and
impartial in light of a possible stray reference to a Bill
Samuels campaign?

PROSPECTIVE JUROR:  No.  I was a senior at the City
College of New York where I went as an undergraduate.  I was
told about a job.  I was not someone who knew or cared about
Howard Samuels at that time.  But it was another kid who needed
a job and I did that for awhile and then I stopped.  I was
paid.

MR. KRAVIS:  Understood.  I don't have any further
questions for you.  Thank you, sir.

Thank you, Your Honor.

THE COURT:  Do you have any questions?

MR. BUSCHEL:  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

MR. BUSCHEL:  When you looked up or researched Roger Stone's age, did you learn anything else while you were doing that about him?

PROSPECTIVE JUROR:  The only thing, he's described in the first sentence or two as a political provocateur, but I wasn't interested in that stuff.  I've heard his name over the years.

MR. BUSCHEL:  And you said you read a third of the Mueller report.  Did you read about anything about Roger Stone in the report?

PROSPECTIVE JUROR:  No.  This was the first section which was on the Russian involvement in the 2016 campaign.

MR. BUSCHEL:  Do you recall whether you read anything about Roger Stone?

PROSPECTIVE JUROR:  No.

MR. BUSCHEL:  I see you have a Ph.D in political science.  Were you a professor anywhere?

PROSPECTIVE JUROR:  Yes, at Syracuse and Mid-state University of New York Oswego while I was completing my Ph.D.

MR. BUSCHEL:  Anything about you being a political science professor that affects your ability to be a fair juror

in this case?

      PROSPECTIVE JUROR:  I think I have some analytic training that lets me listen to what people say and think through what that means but otherwise, I don't have a political ax to grind.

      MR. BUSCHEL:  Very good.  Thank you, sir.

      THE COURT:  Thank you very much.  You can step back into the jury room.

      PROSPECTIVE JUROR:  Thank you.

   (Prospective juror leaves courtroom.)

      MR. KRAVIS:  Your Honor, before the next juror comes in, I don't have a motion, but I want to put something on the record.

      THE COURT:  All right.

      MR. KRAVIS:  The current version of the special counsel's report is publicly available does not mention Mr. Stone's name.  It's been redacted.  I'm just putting that on the record now because I don't know what the state of the public report will be in the future and I just wanted to make that clear in light of the questions.

      THE COURT:  Well, I think a lot of the redactions were redacted because of the pendency of this case.

      MR. KRAVIS:  All right.

      THE COURT:  Thank you.

   Let's bring in the next person.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror number 0944.

THE COURT:  Hello, good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  We have a few follow up questions about your jury questionnaire.  One thing you indicated at one point I guess you were a staff member on a senate committee and this case involves allegations of providing false testimony or trying to obstruct investigation before a congressional committee.

Does the fact that you worked on a congressional committee make you feel that the nature of these charges alone makes it hard for you to be fair in this case?

PROSPECTIVE JUROR:  No, Your Honor.

THE COURT:  We asked if you had opinions about a number of individuals and you listed some.  It looks like you listed some of, you included both some people that were involved in the Trump campaign and also Hillary Clinton as people that you had opinions about.  You didn't indicate what those opinions were.

But I guess the question is you are going to hear in this case that this defendant was involved in the presidential campaign of Donald Trump as an advisor, either official or unofficial on the campaign and worked to support his election.

Does that fact and any opinions that you have about other individuals involved in that campaign effect your ability to be fair to Roger Stone?

PROSPECTIVE JUROR:  No, Your Honor.

THE COURT:  You said that you knew a little bit about the case; that he was charged or had been charged as I've just mentioned with obstructing or attempt of congress, and you said there was something also about whether he had broken a gag order by a judge.

Do you recall any more details about any of that?

PROSPECTIVE JUROR:  Other than I think the judge involved was you, ma'am, but no.

THE COURT:  All right.  If during the course of the trial that is not evidence in this case and there is no discussion in this courtroom about whether there was an order or whether he violated or whether he didn't.

Can you put that aside and not consider that information in considering whether he committed the offenses with which he's charged in this case?

PROSPECTIVE JUROR:  Yes, Your Honor.

THE COURT:  Do you have any questions?

MR. KRAVIS:  Just one.  Thank you, Your Honor.

Good afternoon, sir.

PROSPECTIVE JUROR:  Good afternoon.

MR. KRAVIS:  What was the nature of the work you did

for the senate foreign relations committee when you worked there?

       PROSPECTIVE JUROR:  I served in several capacities so I started as an intern on the majority staff.  At the time it was a Republican from North Carolina, Senator Helms and the officer there.  I started as a intern, worked the front desk answering phones.  Also was on the designated staff delivering mail, setting up for committee hearings putting out 0encil and paper, that kind of thing.  And then later was in the legislative correspondence answering mail.

       THE COURT:  Any other questions?

       MR. BUSCHEL:  No.  Thank you, Judge.

       THE COURT:  Thank you very much.  You can step back into the jury room.

    (Prospective juror leaves courtroom.)

       THE COURT:  All right.  No motions with respect to that juror?

       MR. KRAVIS:  No, Your Honor.

       THE COURT:  We are up to 32 but we are going to push for 34 before we quit.

    (Prospective juror enters courtroom.)

       THE DEPUTY CLERK:  Your Honor, this is juror number 1047.

       THE COURT:  Good.  How are you?

       PROSPECTIVE JUROR:  Good, how are you?

THE COURT:  I want to start with the last question we asked you in your jury questionnaire which was about your travel plans and the length of the trial.

At this point I don't think we're expecting the trial to conflict with Thanksgiving.

PROSPECTIVE JUROR:  Okay.

THE COURT:  But I just wanted to make sure when you said that you had made arrangements to be away when that starts.

PROSPECTIVE JUROR:  We're leaving on Saturday, so the 23rd, the whole week.

THE COURT:  The other question I wanted to follow up is we asked if you read or heard anything about the defendant you indicated that yes, in fact you had read the cover in the Post and the Times, et cetera.  Also you had followed the investigation, the Mueller investigation somewhat closely as well.

Based on all of that, do you bring information with you to the courtroom today about these charges about whether the defendant is guilty of them or innocent?

PROSPECTIVE JUROR:  Yes, I think so.  I mean, I was following it reading the news and forming opinions before. Yeah.

THE COURT:  So do you come in here with an opinion about the charges in this case?  I'm not saying there is

anything wrong with that.  We're just trying to find out.

        PROSPECTIVE JUROR:  I have an opinion, but I would listen during the case for sure.

        THE COURT:  Well, can you put your opinion aside do you think?

        PROSPECTIVE JUROR:  Yes.

        THE COURT:  And what is the opinion that you bring to the courtroom with you right now?

        PROSPECTIVE JUROR:  That he was guilty.

        THE COURT:  And after you were instructed not to pay any more attention to the press in this case, have you been able to abide by those instructions?

        PROSPECTIVE JUROR:  Yes.

        THE COURT:  How confident are you -- I mean, I think it's very difficult -- if you have read a lot and formed an opinion to them, come into the courtroom and just say okay, I have to clean my head, put that aside and just listen to the evidence, how confident are you of your ability to do that?

        PROSPECTIVE JUROR:  I think I can do that.  I'm confident.

        THE COURT:  I'm sorry?

        PROSPECTIVE JUROR:  I said I'm confident.

        THE COURT:  Do you have any questions to ask?

        MR. KRAVIS:  No, thank you.

        THE COURT:  Do you have any questions?

MR. BUSCHEL:  No, Judge.

THE COURT:  You can step out.  Thank you.

(Prospective juror leaves courtroom.)

THE COURT:  Does anybody have any motion in this case?

MR. BUSCHEL:  No.

THE COURT:  Bring in the next juror.

MR. BUSCHEL:  Judge, I'm sorry.

THE COURT:  Sorry, wait.  I'm sorry, we'll get to you in a minute, ma'am.  I apologize.

Yes, sir.

MR. BUSCHEL:  I didn't hear something very clearly and my team told me to bring it up.

Juror 1747 said that she thought Mr. Stone was guilty.

THE COURT:  1047.

MR. BUSCHEL:  1047?

THE COURT:  She said that was her opinion.  She said she could put that aside but that's her opinion.

MR. BUSCHEL:  I'm sorry, yes, we move to excuse her for cause.

THE COURT:  I mean, I thought that she was quite sincere when she said she was confident in her ability to be fair, but I also said earlier that the point is to get people who are at least starting with no opinion, and I think that differentiates her from people who had negative opinions about

the President.

She has an opinion about this defendant and these charges and so I will grant the motion.

MR. BUSCHEL:  Thank you.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror 1218.

THE COURT:  Good afternoon.  Thank you for being patient with us today.  We're almost done for the day.

We asked a number of questions when you filled out the questionnaire and we appreciate them, but I just wanted to follow up.  One thing you said at the time is that you don't really follow the news and politics and you hadn't heard anything about the defendant or the case.

Is that still the situation or have you heard anything in the meantime?

PROSPECTIVE JUROR:  No, that's still the case.

I didn't even know what he looked like until this morning.

THE COURT:  And seeing him doesn't ring a bell as somebody you have seen on TV or read anything about?

PROSPECTIVE JUROR:  No.

THE COURT:  Is there any reason that you are aware of why you couldn't sit in this case and listen to all of the evidence and decide the case just based solely on the evidence you hear in the courtroom?

PROSPECTIVE JUROR:  No.

THE COURT:  All right.  Do you have any questions?

MR. KRAVIS:  Briefly.  Thank you, Your Honor.

Good afternoon, ma'am.

PROSPECTIVE JUROR:  Hi.

MR. KRAVIS:  I saw in your questionnaire you described your job title as an operation specialist.

What exactly do you do as an operation specialist?

PROSPECTIVE JUROR:  I work at a credit union.

MR. KRAVIS:  I'm sorry?

PROSPECTIVE JUROR:  I work at a credit union like Visa fraud, debit card fraud.  That's what I do.

MR. KRAVIS:  Got it.  Thank you very much.

Thank you, Your Honor.

THE COURT:  All right.

MR. BUSCHEL:  Is there anything about your job that makes you want to favor law enforcement or the prosecution in this case?

PROSPECTIVE JUROR:  No, I don't think so, no.

MR. BUSCHEL:  Very good.  Thank you.

THE COURT:  All right.  You just, you take complaints about fraud or do you do the investigation?

PROSPECTIVE JUROR:  I don't do the investigation, Visa does the investigations.  We just take the member's application and we verify it, but we don't do the investigation.

THE COURT:  Okay, all right.

Thank you very much.

PROSPECTIVE JUROR:  You're welcome.

(Prospective juror leaves courtroom.)

THE COURT:  All right, let's bring in the next.

(Prospective juror enters courtroom.)

THE DEPUTY CLERK:  Your Honor, this is juror number 0705.

THE COURT:  Good afternoon.

PROSPECTIVE JUROR:  I apologize, my hearing aid just went out.  But I can hear.

THE COURT:  All right.  If you've got it in do you have any problem, would you have any problem sitting and hearing this trial and being able to --

PROSPECTIVE JUROR:  No.  As long as I have them.  The battery just went out.

THE COURT:  So you're going to bring some extra batteries if you end up on this jury?

PROSPECTIVE JUROR:  I will have them.

THE COURT:  Well, my first question for you just because I was excited to see that you are a great experienced representative at NAT Stadium and I just want to tell you you've done a great job of giving people a great experience.

Thank you very much for your service.

PROSPECTIVE JUROR:  As always.

THE COURT:  Now we had asked if you had ever read or heard anything about the defendant in this case.  Back when you filled out the questionnaire you thought you might have but you didn't remember the details.

Is there anything that has come to your mind since then or come to your attention?

PROSPECTIVE JUROR:  Not really.  I mean, I recognize the face, I remember the name, but I don't remember any details.

THE COURT:  Okay.  So sitting here right now today do you have an opinion about whether he's guilty or innocent in this case?

PROSPECTIVE JUROR:  No.

THE COURT:  And is there any reason why you couldn't be totally fair and listen to the evidence and decide the case just based on the evidence?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Well, I think that was a confusing way to put it.

You think you can be fair?

PROSPECTIVE JUROR:  I think I can be fair.

THE COURT:  Yes.  Do you have any follow up questions?

MR. KRAVIS:  Good afternoon, sir.  I saw on your questionnaire you said that you are retired.

PROSPECTIVE JUROR:  Yes.

MR. KRAVIS:  What did you do before you retired?

PROSPECTIVE JUROR:  Well, I worked for a lumber company in Pennsylvania for 32 years.  Then I had my own business in Atlanta for ten.

Long story short, when the housing bubble burst, I went broke.  So I came back and went to work for Home Depot for a couple of years and as soon as I was able to retire, I retired.

MR. KRAVIS:  Good enough, thank you, sir.

Thank you, Your Honor.

THE COURT:  Anything on behalf of the defendant?

MR. BUSCHEL:  No, thank you.

THE COURT:  Thank you very much, sir.  You can step back in the jury room.  Thank you.

(Prospective juror leaves courtroom.)

THE COURT:  According to my calculations we have 34 qualified jurors, we need 32.  Unless we have a significant on-slot of some disease over night, we should be able to seat a jury tomorrow.

So I think we could stop now.  I'm sure everyone is eager to go home unless people think we should get one or two more insurance jurors before we break for the day.

MR. KRAVIS:  We're good.  Thank you, Your Honor.

MR. BUSCHEL:  We're good.

THE COURT:  Then we will break for the day.

Tomorrow morning they all have to report to the jury room. But then Mr. Haley will bring them down, seat them in the order in which they're listed on the jury list in the courtroom, and we will exercise preemptory strikes as described in the memorandum that I gave you.

When every one has exercised their strikes or has passed and then, and we've selected the alternates, at that point 14 people will be seated in the box. They will be taken out and shown where their jury room is. They will come back in and we will open.

So don't be surprised if we just start rolling tomorrow once we get a jury in the box.

If anything comes to your attention that you need to let me know about in connection with your client's health, just please try to get the information to Mr. Haley. You have the ECF in-box email address if there is anything you need to let us know. Hopefully he'll be here tomorrow and will be good to go. But we're not going to swear the jury until we know that's the case.

MR. BUSCHEL:  One more question.

THE COURT:  All right.

MR. BUSCHEL:  Can you just give a sample. I don't understand what a round is as you described it. Are you going to sit 14 jurors?

THE COURT:  No.  They're going to sit in the rows in

their, in the order that they are on the list.

Mr. Haley is going to hand the government a piece of paper and it's going to write down the number of peremptory strikes. They're going to show it to you and they're going to give it to Mr. Haley and he's going to give you back the piece of paper and you are going to do your two.

Then you are going to show it to them and you are going to give him the piece of paper.  You can all strike them on your paper.  But people are not going to be sitting in the box and told no, you get out of the box.  We're not going to do that.

We are just going to strike them on paper until every one has exhausted their strikes or you have passed and you don't choose to exercise them anymore.

At that point, we will then know who the people are suppose to be that we're considering for alternates.  Each side will have an opportunity to exercise a strike.  Once the process is complete, Mr. Haley will then say juror number so and so, take the seat in juror number one and he will fill the box with the people we have selected.

At that point the other people will be excused but we don't have them coming in and being told to get up.

Does that clarify it?  Okay, all right.

Thank you for your patience throughout today.  I'll see everybody tomorrow morning at 9:30?

THE DEPUTY CLERK:  Yes.

THE COURT:  9:30.

(Trial selection adjourned at 5:50 p.m.)

-oOo-

CERTIFICATE

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the stenographic notes provided to me by the United States District Court, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____          _____
/s/Crystal M. Pilgrim, RPR, FCRR          Date:  November 6, 2019