```
 1                  IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 2

 3    United States of America,      ) Criminal Action
                                     ) No. 19-CR-018
 4                    Plaintiff,     )
                                     ) JURY TRIAL
 5    vs.                            ) Day 6 - Morning Session
                                     )
 6    Roger Jason Stone, Jr.,        ) Washington, DC
                                     ) Date:  November 13, 2019
 7                    Defendant      ) Time:  10:00 a.m.
      _____
 8
                        TRANSCRIPT OF JURY TRIAL
 9                         HELD BEFORE
              THE HONORABLE JUDGE AMY BERMAN JACKSON
10                  UNITED STATES DISTRICT JUDGE
      _____
11

12                     A P P E A R A N C E S

13

14    For the Plaintiff:        Jonathan Ian Kravis
                                Michael John Marando
                                Adam Jed
15                              Aaron Simcha Jon Zelinsky
                                U.S. ATTORNEY'S OFFICE FOR THE
16                                 DISTRICT OF COLUMBIA
                                555 Fourth Street, NW
17                              Washington, DC 20530
                                (202) 252-7068
18                              e-mail:  Jonathan.kravis3@usdoj.gov
                                e-mail:  Asjz@usdoj.gov
19                              e-mail:  Michael.marando@usdoj.gov

20
      For the Defendant:        Bruce S. Rogow
21                              LAW OFFICE OF BRUCE S. ROGOW, P.A.
                                100 NE 3rd Avenue
22                              Suite 1000
                                Fort Lauderdale, FL 33301
23                              (954) 767-8909
                                e-mail:  Brogow@rogowlaw.com
24

25
```

```
 1     For the Defendant:        Robert C. Buschel
                                 Tara A. Campion
 2                               BUSCHEL & GIBBONS, P.A.
                                 One Financial Plaza
 3                               100 S.E. Third Avenue
                                 Suite 1300
 4                               Ft. Lauderdale, FL 33394
                                 (954) 530-5301
 5                               e-mail: Buschel@bglaw-pa.com
                                 Grant J. Smith
 6                               STRATEGYSMITH, P.A.
                                 401 East Las Olas Boulevard
 7                               Suite 130-120
                                 Fort Lauderdale, FL 33301
 8                               (954) 328-9064
                                 e-mail: Gsmith@strategysmith.com
 9                               Chandler Paige Routman
                                 LAW OFFICE OF CHANDLER P. ROUTMAN
10                               501 East Las Olas Blvd.
                                 Suite #331
11                               Ft. Lauderdale, FL 33316
                                 (954) 235-8259
12                               e-mail: Routmanc@gmail.com

13     _____

14     Court Reporter:           Janice E. Dickman, RMR, CRR, CRC
                                 Official Court Reporter
15                               United States Courthouse, Room 6523
                                 333 Constitution Avenue, NW
16                               Washington, DC  20001
                                 202-354-3267
17                               e-mail:  JaniceDickmanDCD@gmail.com

18                                   *   *   *

19

20

21

22

23

24

25
```

```
 1              THE COURTROOM DEPUTY:  Your Honor, this morning we
 2    have Criminal Case Number 19-18, United States of America v.
 3    Roger J. Stone.  Mr. Stone is present in the courtroom.
 4              Counsel, please approach the lectern, identify
 5    yourself for the record.
 6              MR. KRAVIS:  Good morning, Your Honor.  Jonathan
 7    Kravis for the United States.
 8              THE COURT:  Good morning.
 9              MR. KRAVIS:  Good morning.  With me at counsel table
10    are Michael Marando, Aaron Zelinsky, Adam Jed, and Amanda Rhode
11    from the D.C. U.S. Attorney's Office, and FBI Special Agent
12    Chris Keefe.
13              THE COURT:  All right.  Thank you.
14              MR. BUSCHEL:  Good morning.  Robert Buschel,
15    Tara Campion, Grant Smith, Bruce Rogow, and Chandler Routman on
16    behalf of Roger Stone.
17              Good morning.
18              THE COURT:  Okay.  Thank you.  Good morning.
19              We have a few things to take up this morning.
20    Fortunately, I think there are very few disputes with respect
21    to the jury instructions.  I've created a set of jury
22    instructions with what I would propose to give.  Every now and
23    then there's something that I'm not sure whether we should give
24    it or not or I have questions about it, and there you'll see,
25    like, a bracket or a question mark.  And that's really a note
```

1    to me to remember to bring up, Do we really need to do this?

2           So we'll go through it page by page.  But, before we

3    do that and talk about the verdict form and then, finally, I

4    want to talk about the transcript that I was given for the

5    movie clip, we received a communication from a juror.

6           Mr. Haley, have you shared it with the parties?

7           THE COURTROOM DEPUTY:  I will do it now.

8           THE COURT:  All right.  He's going to give you a copy

9    of an email we received.

10          One of the jurors has informed us that she's unwell

11   and unable to be here.  And she's not going to be here this

12   afternoon, I believe.

13          So, this is why we have alternates.  And, so, unless

14   the parties have any objection, I would, at the appropriate

15   time, excuse Alternate Number 2, but not Alternate Number 1,

16   and proceed.

17          Does anybody have any thoughts about the matter?  I

18   don't think we need a jury -- a note from her doctor or

19   anything.  I think she would be here if she could be here.

20   It's pretty clear from the note.

21          MR. KRAVIS:  We don't have any objection.

22          THE COURT:  All right.

23          MR. BUSCHEL:  No objection.

24          THE COURT:  Okay.  So, I think when the jurors come

25   in, we'll probably just leave that seat empty, or the people in

1   the first row can move over.  I don't want to get into who's an

2   alternate until we're completely finished.  So they'll seat

3   themselves however they choose to seat themselves, and we'll

4   let them know at the end.

5            All right.  With respect to the jury instructions,

6   many of them are standard.  Almost all of them were agreed to.

7   I've set them up -- I think I reorganized them slightly from

8   the way you gave them to me, to do kind of the procedural ones,

9   then instructions about evidence, and then instructions about

10  witnesses, then counts.  And then kind of the housekeeping

11  matters at the end -- which you didn't give me -- about verdict

12  forms and picking a foreperson and that sort of thing.

13           Function of the Court:  Furnishing a copy -- to read

14  with a copy of the instructions.

15           Function of the jury:  Jury recollection controls,

16  note-taking by jurors.  I believe these are all standard.

17           Evidence in the case is standard.

18           Charts and summaries was presented to me.  It was

19  altered a little bit because there was something on there about

20  "I admitted these in evidence because," which I thought was a

21  little personal and unnecessary.  I just changed it to saying,

22  "The purpose of the charts is to save time, and you may

23  consider them as you would other evidence."  And that's it.  So

24  it's a little shorter than the version I was given.

25           I'm basically going to start, just go through these

1    until somebody says something and lets me know they have a

2    problem.

3            Statements of Counsel is the standard.  I was

4    provided with the standard instruction.

5            Indictment is not evidence.  The indictment is not

6    going to the jury room.  I still think it's important that they

7    understand that the fact of an indictment does not mean that

8    someone is guilty.

9            But, I wasn't sure if you wanted to use it as

10   written, or if you think, since they're not going to actually

11   have it, that I should say, at the end, You may not consider it

12   as any evidence of Mr. Stone's guilt or draw any inferences of

13   guilt -- instead of saying, "from it," I could say, "from the

14   fact that he was indicted."  Or we can give it as is, or not

15   give it, but you all requested it.

16           So, what's your point of vie?

17           MR. BUSCHEL:  I think the Court should add -- or, the

18   fact that it exits -- what was your clause --

19           THE COURT:  "From the fact that he was indicted,"

20   instead of, "from it."

21           MR. BUSCHEL:  The fact that he was indicted or the

22   fact that it exists and he was indicted or the fact that

23   there -- or, the indictment itself, is what I would add as

24   well.

25           THE COURT:  Okay.  All right.  So, I'll say, "The

1    indictment is merely a formal way of accusing a person of a

2    crime.  You must not consider the indictment as evidence of any

3    kind.  You may not consider it as any evidence of Mr. Stone's

4    guilt or draw any inference of guilt" -- what did you say?

5    From the fact of the indictment?  From the existence of the

6    indictment?

7             MR. BUSCHEL:  Leave it as is.

8             THE COURT:  Yes.  This is what you proposed

9    originally.  I just wanted to make sure you still wanted it,

10   since they're not going to receive it.  All right.  That is the

11   standard instruction, and that's what we will read.

12            Inadmissible and Stricken Evidence was the standard

13   instruction.

14            Instruction was provided related to redacted

15   documents.  I think, again, I may have changed it a little bit.

16   But, basically, it tells them if something is omitted, they

17   shouldn't be wondering what's missing.  It's kind of standard.

18            Direct and circumstantial evidence as the example is,

19   is a standard instruction.  Rather than create another example,

20   just stuck with it.

21            The next one that I've got, it's on page 8, Potential

22   Cautionary Instruction, with a question mark.

23            We talked about the fact that a number of exhibits

24   are in evidence that say things like, He told the truth, or,

25   You didn't tell the truth.  And that those are not proof of

1    that; the proof is the rest of the evidence.  And so there was

2    a question about how to receive that evidence.

3           And the more I wrote it, the more confusing it got,

4    because, clearly, all of that evidence being introduced by both

5    sides is part of the evidence in the case upon which they're

6    going to base their decision.  So, saying, You can only

7    consider for this purpose but not that purpose, it got very,

8    very confusing.

9           So, I thought I would just go straight to what the

10   issues were.  I think at the end of the day, as long as the

11   parties don't argue from it improperly, we're probably okay

12   without the instruction.  But, since we talked about it and I

13   said I would try to craft something, I have something there.

14          And if you haven't had a chance to look it over yet

15   and you want to put this one until the end, we can return to

16   it.  But, this was my best effort to encapsulate what we talked

17   about.

18          Does anybody have a point of view about it now?

19          MR. ZELINSKY:  Your Honor, the government is fine

20   with the proposed instruction.

21          THE COURT:  All right.

22          MR. BUSCHEL:  Same.

23          THE COURT:  All right.  Then, we'll give it.  And

24   we'll just call it -- I don't think we'll call it Cautionary

25   Instruction.  I think we'll just put it next in the set of

1    instructions about exhibits.  And we'll take the brackets off.

2           All right.  Well, Credibility of Witnesses is

3    standard.

4           Evaluation of a Prior Inconsistent Statement.  As you

5    know, in the instructions there's a Part A and Part B.  Part B

6    is for sworn prior testimony that did happen.  Part A is

7    references to prior inconsistent statements.

8           There were some questions of some witnesses related

9    to prior inconsistent statements.  With respect to Mr. Gates, I

10   don't think that he confirmed that he made them.  So, there's

11   not actually -- and there was no additional evidence

12   introduced.  There's not actually evidence that he said

13   something different earlier in the record.

14          But, there may have been some questioning of

15   Mr. Credico in which having said something different earlier

16   was admitted.  Not entirely sure.

17          So, with respect to Part A, I wasn't sure if we need

18   it or if anyone is asking for it or if we should put in a name

19   or just say, You may have heard evidence that a witness made a

20   statement on an earlier occasion, and that this statement may

21   be inconsistent with his testimony here at trial, and then the

22   rest of the instruction.

23          And then Part B, I made a specific reference to the

24   witness who was impeached with grand jury testimony.

25          So, does the government have a point of view about

1      this instruction?

2                MR. ZELINSKY:  Your Honor, the government does not

3      believe that Part A is necessary.  But, if Part A does go in,

4      we would ask that the Court just say, "a witness."

5                THE COURT:  Does the defense think we need Part A?

6                MR. BUSCHEL:  Yes.  And we agree that the Court

7      should say, "a witness."

8                And if that's -- Judge, I have not seen what the

9      government has proposed.  We discussed it at sidebar, what that

10     might be.  But, you said we would come back to it.

11               THE COURT:  I think you're talking about what

12     portions of the grand jury testimony they want to move in.

13     That's Part B.

14               MR. BUSCHEL:  Yes.

15               THE COURT:  And, yes, you do need to show them what

16     it's going to be before it goes into the jury room.

17               And, so, I would also take out the headings.  I'm

18     just going to say, The law treats prior inconsistent statements

19     based upon the nature of the circumstances.  I'll do the

20     introductory part without the brackets.  Going to take out

21     what's in bold, that just says, "Part A," read Part A, and then

22     read Part B, using the word "also," because it is different.

23               All right.  With respect to the 404(b) instruction

24     that follows, the defense did not request one.  I believe it

25     was the government that proffered one.  The defense isn't

1    asking for one.  So, if the defense doesn't want this

2    instruction at all, then I'm not sure it needs to be given.

3            But, evidence -- some evidence did come in with

4    respect to prior conduct.  And, so, if you think there should

5    be a limiting instruction -- and, frankly, I would, even if I

6    gave a limiting instruction, take out the words "or that

7    Mr. Stone has a criminal personality."  I would just say that

8    he has a bad character, period.

9            So, I guess the question is, what's the defense point

10   of view about whether I should give this instruction?

11           MR. BUSCHEL:  The Court should not give the

12   instruction.

13           THE COURT:  All right.  Does the government believe I

14   should give it over his not wanting it?

15           MR. ZELINSKY:  Your Honor, in order to preserve the

16   defendant's rights, we do think that you should give this

17   instruction as a limiting matter.

18           THE COURT:  Contrary to his own waiver of any

19   instruction?

20           MR. ZELINSKY:  Obviously --

21           THE COURT:  Not even a waiver.  It's not just that

22   he's not asking for it; he's now asked me not to give it.

23           MR. ZELINSKY:  The government believes that this

24   instruction would be appropriate, under the circumstances, to

25   accurately capture the state of the law and what the jury will

1    hear.  So, the government does continue to request that that

2    instruction be given.

3              THE COURT:  Is there an edited version that would be

4    acceptable to you?

5              MR. ZELINSKY:  Your Honor, we -- on second thought,

6    we're fine.  We can do without it, if the defense doesn't want

7    it.

8              THE COURT:  All right.  I believe the purpose of the

9    instruction is to protect the defendant, and if the defendant

10   has voluntarily told me he doesn't want it, I think we're fine.

11             Law Enforcement Officer's Testimony is the standard

12   instruction.

13             Witness with a Plea Agreement, I got some dueling

14   versions.  This is, I believe, the standard instruction.  I was

15   pointed to an instruction I gave in another trial, which, I

16   believe, was also the standard instruction.  So, I think this

17   covers that witness.

18             Then we go on to Burden of Proof, Presumption of

19   Innocence, Reasonable Doubt.

20             The Burden of Proof, Presumption of Innocence is the

21   standard instruction.  I think the government asked for the

22   standard instruction, the defense wrote it out.  But, it turned

23   out to be pretty much the same.

24             I had been given options if the defendant testified,

25   and the defendant did not testify.

```
1              Does the defense want me to give the Right of the
2    Defendant Not to Testify instruction?
3              MR. BUSCHEL:  Yes, please.
4              THE COURT:  All right.  So I will do that.
5              The Reasonable Doubt Instruction, the government
6    provided me with something that was an alternate version of the
7    standard instruction.
8              The defense pointed me to, again, an instruction I'd
9    given in another case, which was, in fact, I believe, the
10   standard Red Book instruction as -- while all of us might, if
11   we were starting from scratch, revise it, edit it, improve upon
12   it, it is tried and true, approved by this circuit, approved by
13   the courts, requested by the defendant.  And, so, I'm going to
14   give the reasonable doubt instruction that the defense asked
15   for.
16             MR. BUSCHEL:  We're good.
17             THE COURT:  All right.  Not that I don't want to hear
18   what you have to say, Mr. Rogow, but, you won that one.
19             All right.  Elements of the Offense, on or about is
20   standard.
21             Obstruction of Congressional Inquiry.  I believe with
22   respect to the obstruction instruction, the part that the
23   defense bolded that it objected to related to using concealment
24   as a predicate, and that's been removed.
25             The defense, though, had some questions about --
```

1   after describing what the count is and before getting into the

2   elements, with respect to each count the government has said,

3   "The statute says" and gives me the exact statutory language,

4   and then a little civics lesson on the purpose of the statute.

5           They objected to those.  I had never seen that

6   before.  I think it's unnecessary, and I'm not giving them.

7           I'm also -- I put, with a question mark, "The

8   statute."  I think, if we are going out of our way to say,

9   These are the elements, you must find each of the elements

10  beyond a reasonable doubt; this is what this word means, this

11  is what this word means, giving it to them in another format,

12  unfortunately, usually poorly written, with commas and various

13  things in particular places, that it is confusing to say,

14  Here's the statute, and these are the elements.  And, again, I

15  don't think it's standard practice, necessarily, to read the

16  statute.

17          So, does the government want to be heard on that, or

18  are you fine with my reading the elements that everybody agrees

19  are the elements?

20          MR. ZELINSKY:  Your Honor, it's fine to just do the

21  elements.

22          THE COURT:  All right.  So, page 18 is -- was not

23  objected to.

24          Page 19, at the top, where it says, "The Relevant

25  Statute Is," will come out.

```
 1              Count 1, the elements, there was no objection.
 2              First element, inquiry, there was no objection.
 3              Second element, knowledge, there was no objection.
 4              Third element, act of obstructing or impeding, the
 5     objection was with respect to the use of the word
 6     "concealment."  And so that's out.
 7              In your -- in the government's explanation for what
 8     the statute is and isn't, it had some language in it about
 9     "endeavor is the essence."  It's the effort; it's not the
10     success.  And I thought that is important.  So that has been
11     imported now into the paragraph at the top of page 22, in
12     slightly different format.  You said, "The effort is the gist
13     of the crime."  I took that out.  I just said, "It is the
14     effort that is the alleged crime.  The government is not
15     required to prove that the endeavor was successful."
16              So, does anybody have a problem the way the third
17     element now reads?
18              MR. ZELINSKY:  It's fine with the government, Your
19     Honor.
20              MR. BUSCHEL:  No objection.
21              THE COURT:  All right.  On page 23 is an instruction
22     that it's not clear whether we're giving or not.  The
23     government is not asking for a specific unanimity instruction
24     with respect to the obstruction count.  I asked both parties to
25     let me know by this morning if they felt it was necessary.  The
```

1    government said it was not necessary, but if I was going to

2    give one, they had some proposed language that I tweaked.

3             I have not heard from the defendant.  Is that because

4    you do not believe this is necessary?

5             MR. BUSCHEL:  No, we do.  And we have no objection to

6    the government's version of it.  And we also agree that we

7    don't need an interrogatory verdict as to Count 1.

8             THE COURT:  Okay.  So based on both parties'

9    agreements, I'm not going to give special interrogatories on

10   Count 1, and we are going to presume that the jury follows our

11   unanimity instruction.

12            I did alter, slightly, what the government said.  The

13   government said, "You have heard evidence of more than one

14   alleged means" -- I think they used different words -- they

15   list the four.  But then they said, "You may find him guilty on

16   this count if the government has proved beyond a reasonable

17   doubt," and listed the four, again.  I thought that was a

18   little bit of overkill.

19            What I am saying is, "You may find Mr. Stone guilty

20   on this count if the government has proved beyond a reasonable

21   doubt that Mr. Stone committed any one of these acts.  However,

22   in order to return a guilty verdict on this count, you must all

23   agree on at least one, and it must be the same one, even if you

24   are of different views on the others."

25            Mr. Jed?

```
1          MR. JED:  Your Honor, we have no concern with the

2    decision not to repeat the four again.  But, there's just one

3    tweak that we would ask for, which is, it now says, "If the

4    government has proved beyond a reasonable doubt that Mr. Stone

5    committed any one of these acts," we think there might be some

6    ambiguity about whether "these acts" is referring to the, kind

7    of, listed four, or is actually suggesting something more

8    specific; for example, whether they have to agree on the

9    particular false statement.

10          And, so, just to propose two alternatives, either to

11    echo the language earlier, you could just say, Utilize any one

12    of these means -- that's the same term you use above -- or you

13    could say, Categories of X.

14          THE COURT:  All right.  I think, since I said "means"

15    above, saying "means" again would be better.  "You may find

16    Mr. Stone guilty on this count if the government has proved

17    beyond a reasonable doubt that Mr. Stone" --

18          MR. JED:  Something like "utilized any one of these

19    means"?

20          THE COURT:  Yes.  I was going to say "used."  But --

21    or we could say, "committed the offense through."

22          MR. JED:  I don't know that --

23          THE COURT:  All right.

24          MR. JED:  Any of those is fine.

25          THE COURT:  What's the defendant's point of view?  I
```

1    know you said you want an instruction and you agreed with

2    theirs.  This isn't quite theirs, because I really think I

3    wanted to hammer home the notion that they had to agree on the

4    same one.  They could agree on more than one, but they had to

5    at least agree on one.  But not agree that there is one, they

6    had to agree that it was the same one.  And so I feel like this

7    conveys that.

8            You're standing and nodding, but -- okay.  Well, you

9    can confer.

10           (Pause.)

11           MS. CAMPION:  Your Honor, we would agree with

12   "utilized one of these alleged means."

13           THE COURT:  Okay.  That's what I will say.

14           And with that, then you're satisfied with the

15   instruction?

16           MS. CAMPION:  Yes, Your Honor.

17           THE COURT:  Okay.

18           MS. CAMPION:  Thank you.

19           THE COURT:  Okay.  All right.  Good.  So we'll add

20   that.

21           Then we go to Counts 2 through 6.

22           I'm going to omit, on page 25, "The relevant statute

23   on this subject is."  And I've already omitted "The purpose of

24   the statute."

25           And then I just put brackets around the descriptions

1   that were originally in for what Count 2, Count 3, Count 4,

2   Count 5, and Count 6 were, to make sure that they track the

3   indictment and they're going to be consistent with what we use

4   in the verdict form.  But, I think they largely do track the

5   indictment.

6            MR. ZELINSKY:  That's correct, Your Honor.

7            THE COURT:  Okay.  And I don't believe that the

8   defense had any objections to the joint instructions on Counts

9   2 through 6, other than you didn't want the statutory purpose,

10  and I agree with that.

11           So are you fine with these instructions?

12           MR. BUSCHEL:  (Nods head.)

13           THE COURT:  Okay.  Count 7, again, on page 29, I'm

14  going to take out "the statute."  And then I don't believe

15  there are objections to any of the elements on this.  And, so,

16  then, I was going to do "proof of state of mind."  I forgot if

17  you both proposed it, but I think it's important.  It's

18  standard language.  There's no curlicues in here.  So, I'll

19  give that after I've given all the instructions, rather than

20  the first time I say, "knowledge or intent."

21           And then Question of Possible Punishment is a

22  standard instruction.

23           Unanimity, page 34, is a standard instruction.

24           You had not given me a multiple counts instruction,

25  but I believe we need one; so, I've added it.  I would take out

1    the bracketed language, "You should return separate verdicts as

2    to each count unless I instruct you to do otherwise," because

3    I'm not going to instruct them to do otherwise.

4           And then I wasn't sure whether we need the final

5    bracketed sentence or not, whether that's --

6           MR. ZELINSKY:  We're fine with the bracketed language

7    at the end, Your Honor.

8           THE COURT:  All right.  What's the defendant's point

9    of view?

10          MR. BUSCHEL:  We're against it.  I think it

11   probably invites --

12          THE COURT:  Yeah.  I'm not sure they need to know it.

13   They tend to do it, kind of, anyway, so --

14          THE COURT REPORTER:  I didn't hear you.

15          MR. BUSCHEL:  I'm sorry.  I'm trying to project.

16          I said, I think it kind of invites the jury to have

17   problems.  So, we're against it.

18          THE COURT:  I'm fine with omitting it.  I don't think

19   it's necessary.  Often they'll send out a note that says, We

20   have a verdict on some counts, without others.  And then you

21   can say, Okay, tell me those counts, or whatever we decide to

22   do at the time.  So, I think I'll just leave it without it.

23   It's not required.

24          The rest are standard instructions about how they

25   conduct their business when they get back there.  I'm giving

1    them the cautionary instruction again, telling them how to

2    communicate with me.  And then, at the end, the excusing the

3    alternate juror.

4         The defense provided me with an instruction defining

5    the legal term "intermediary."  I'm not going to give that

6    instruction because I don't believe it's being used in this

7    case as a legal term.  I also don't believe there's any count

8    that requires the finding that one exists.  So, there's no

9    reason to define it.

10        So, that's all the jury instructions.  And I can't

11   tell you how gratified I am by the amount of work and comity

12   that went into coming up with a largely-agreed set of jury

13   instructions.

14        Have I left out anything that anybody wanted me to

15   give?  I've gone through the stack several times, and I haven't

16   seen anything that anyone proposed that I didn't either

17   include, specifically reject, or I have not discussed.

18        MR. ZELINSKY:  Nothing from the government, Your

19   Honor.

20        THE COURT:  Okay.  Is there anything further from the

21   defense?

22        MR. BUSCHEL:  No, Judge.

23        THE COURT:  Okay.  All right.

24        So, we got a new verdict form this morning, and I

25   think it's largely fine.  I think the defense had asked for a

1    more -- a less wordy version.  So, for instance, where it says,

2    "As to Count 1 of the indictment, charging Defendant Roger J.

3    Stone, Jr., with obstruction of official proceeding in

4    violation of 18 U.S. Code §§ 1505 and 2, we, the members of the

5    jury, unanimously find Mr. Stone guilty/not guilty."

6            I think putting in "unanimously" is largely for the

7    defendant's protection.  It's a reminder.  But, I do agree that

8    some of this might be unnecessary.  I think you could say, As

9    to Count 1 of the indictment, obstruction of an official

10   proceeding, in violation of the statutory terms, we find

11   Mr. Stone guilty/not guilty.

12           But, if the defense wants "the members of the jury

13   unanimously," I would keep it in.  But, I would probably take

14   the "charging Defendant Roger J. Stone with," because I don't

15   think we need that.

16           MR. BUSCHEL:  The "charging" should come out;

17   "unanimous" should remain.

18           THE COURT:  Okay.  I will make parallel edits on each

19   count.  And this is what the verdict form will look like that

20   gets presented to the jury.  Or do you have any other

21   objections?

22           MR. BUSCHEL:  No.

23           THE COURT:  Okay.  With respect to the transcript, I

24   had a few adjectives that I wanted to take out of it.  I don't

25   think it's up to us to determine if anyone was smiling

```
 1   confidently.
 2              MR. BUSCHEL:  May I be heard?  I have --
 3              THE COURT:  You have your own edits?
 4              MR. BUSCHEL:  Yes.
 5              THE COURT:  Okay.  Because I made some, and I was
 6   going to just give you the edited version when I had it typed
 7   up.  But, if you're happy to give me yours, and then I'll take
 8   those under consideration.  I don't have it to give you.  I was
 9   taking out the first part.
10              MR. BUSCHEL:  In essence --
11              THE COURT:  I do think it's important that there's
12   another person -- that people come in, that it has something to
13   do with that.
14              Well, now that I have this, let me consider this.
15              MR. BUSCHEL:  I have a blank version, removing the
16   red, if that pleases the Court.
17              THE COURT:  No.  This is actually helpful.  And I
18   will take your proposed edits into consideration, along with
19   the ones I've already made.  I don't know that I'm going to
20   take out every stage direction.
21              MR. BUSCHEL:  That's what we're doing.
22              THE COURT:  Right.  I mean, I do think it matters
23   that there is a change when he comes into the room with
24   someone.  But -- and I think, to the extent the stage direction
25   is vanilla, "looks at this person," "scene cuts to that
```

1    person," I don't have a problem with it.

2            I did have a problem with adjectives.  "Unhappily,"

3    "confidently," they may be accurate, but that's not what I

4    think of as a transcript.  So, I'll take a look.

5            MR. BUSCHEL:  Okay.

6            THE COURT:  Well, I think -- unless somebody else has

7    something else that we need to discuss, I think that's

8    everything that we need to do before we convene with the jurors

9    at 1:00 to close.

10           MR. KRAVIS:  I just wanted to advise the Court that

11   we conferred with defense counsel this morning about the

12   defense's redactions to some of the exhibits that they moved in

13   yesterday, and I think we're in agreement on that.

14           THE COURT:  Okay.  And I know you know that before

15   anything goes back to the jury, you need to stand here and both

16   make sure that everything that's on the thumb drive is what

17   should be on the thumb drive.  And it's not going back until

18   you both have signed off on it.

19           And I guess if you want to do that now, with

20   Mr. Haley, with respect to everything but the transcript, you

21   can use this time to do that, or we can do it after the

22   closings.

23           I think -- can counsel come to the bench?  This is

24   just a scheduling matter.

25           (Bench discussion:)

1    THE COURT:  And, Jan, I do want to seal this.





 9          (Open court:)

10          THE COURT:  So, we'll adjourn, and reconvene at

11     1 p.m.

12          (Recess.)

13                              *   *   *

1              CERTIFICATE OF OFFICIAL COURT REPORTER

2

3         I, JANICE DICKMAN, do hereby certify that the above and

4     foregoing constitutes a true and accurate transcript of my

5     stenographic notes and is a full, true and complete transcript

6     of the proceedings to the best of my ability.

7                          Dated this 13th day of November 2019

8

9

10                        _____

11                        Janice E. Dickman, CRR, CMR, CCR
                          Official Court Reporter
12                        Room 6523
                          333 Constitution Avenue, N.W.
13                        Washington, D.C.  20001

14

15

16

17

18

19

20

21

22

23

24

25