```
 1            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
 2

 3   United States of America,      ) Criminal Action
                                    ) No. 19-CR-018
 4                   Plaintiff,     )
                                    ) JURY TRIAL
 5   vs.                            ) Day 7
                                    )
 6   Roger Jason Stone, Jr.,        ) Washington, DC
                                    ) Date:  November 14, 2019
 7                   Defendant      ) Time:  9:30 a.m.
     _____
 8
                    TRANSCRIPT OF JURY TRIAL
 9                      HELD BEFORE
          THE HONORABLE JUDGE AMY BERMAN JACKSON
10             UNITED STATES DISTRICT JUDGE
     _____
11

12                   A P P E A R A N C E S

13

14   For the Plaintiff:       Jonathan Ian Kravis
                              Michael John Marando
                              Adam Jed
15                            Aaron Simcha Jon Zelinsky
                              U.S. ATTORNEY'S OFFICE FOR THE
16                                DISTRICT OF COLUMBIA
                              555 Fourth Street, NW
17                            Washington, DC 20530
                              (202) 252-7068
18                            Email:  Jonathan.kravis3@usdoj.gov
                              Email:  Asjz@usdoj.gov
19                            Email:  Michael.marando@usdoj.gov

20

21   For the Defendant:       Bruce S. Rogow
                              LAW OFFICE OF BRUCE S. ROGOW, P.A.
                              100 NE 3rd Avenue
22                            Suite 1000
                              Fort Lauderdale, FL 33301
23                            (954) 767-8909
                              Email:  Brogow@rogowlaw.com
24

25
```

```
 1    For the Defendant:        Robert C. Buschel
                                Tara A. Campion
 2                              BUSCHEL & GIBBONS, P.A.
                                One Financial Plaza
 3                              100 S.E. Third Avenue
                                Suite 1300
 4                              Ft. Lauderdale, FL 33394
                                (954) 530-5301
 5                              Email:  Buschel@bglaw-pa.com
                                Grant J. Smith
 6                              STRATEGYSMITH, P.A.
                                401 East Las Olas Boulevard
 7                              Suite 130-120
                                Fort Lauderdale, FL 33301
 8                              (954) 328-9064
                                Email:  Gsmith@strategysmith.com
 9                              Chandler Paige Routman
                                LAW OFFICE OF CHANDLER P. ROUTMAN
10                              501 East Las Olas Blvd.
                                Suite #331
11                              Ft. Lauderdale, FL 33316
                                (954) 235-8259
12                              Email:  Routmanc@gmail.com

13    _____

14    Court Reporter:           Janice E. Dickman, RMR, CRR, CRC
                                Official Court Reporter
15                              United States Courthouse, Room 6523
                                333 Constitution Avenue, NW
16                              Washington, DC  20001
                                202-354-3267
17                              Email:  JaniceDickmanDCD@gmail.com

18                                   *   *   *

19

20

21

22

23

24

25
```

1          THE COURTROOM DEPUTY:  Your Honor, good morning.  We

2     have criminal case number 19-18 *United States of America v.*

3     *Roger J. Stone, Jr.*  The defendant is present in the courtroom,

4     Your Honor.

5          Counsel, please approach the lectern, identify

6     yourself for the record.

7          MR. KRAVIS:  Good morning, Your Honor.  Jonathan

8     Kravis for the United States.  With me at counsel table are

9     Michael Marando, Aaron Zelinsky, Adam Jed, and Amanda Rohde

10    from the D.C. U.S. Attorney's Office, and FBI Special Agent

11    Christopher Keefe.

12          THE COURT:  All right.  Good morning.

13          MR. BUSCHEL:  Good morning.  Robert Buschel, Chandler

14    Routman, Tara Campion, Grant Smith, and Bruce Rogow on behalf

15    of Roger Stone.

16          THE COURT:  All right.  Good morning.

17          Before I take up the matter of the transcript, I just

18    want to say that introduced to me every morning as we come and

19    go have been the members of the team who have had the

20    unfortunate responsibility of being the ones who press the

21    button and make the right exhibit appear on the right screen at

22    the right time.  And once again, I think they're always the

23    unsung heroes of the trial, and so I want to say thank you for

24    your work supporting the efforts of your team.  It was seamless

25    in both presentations.

1          And I realize there's a lot of stress on your

2   shoulders when you sit there and no one ever says thank you.

3   So I wanted to thank you on behalf of everyone in the room.

4          With respect to the transcript, I did try to go

5   through it with the defense proposed edits in mind.  Some of

6   them made it, some of them didn't.  But I understand that you

7   wanted to raise something about it before we make it an

8   exhibit.

9          MR. BUSCHEL:  Just simply that we want to preserve

10  the issue and have the Court note our objection.

11         THE COURT:  All right.  So, to do that, do you want

12  your red line to be marked and docketed in some way?

13         MR. BUSCHEL:  Yes.

14         THE COURT:  I think we have to do that.

15         MR. BUSCHEL:  Yes, please.

16         THE COURT:  I think my goal was to take out the

17  characterizations of, you know, "confidently," "unhappy."  I

18  thought anything that reflected on the subjective state of mind

19  of a participant was a judgment call, made by the transcriber

20  and not in the transcript.  But something that said this

21  happened, this person turned their head, this person looked at

22  this or that, was descriptive and so that was where I tried to

23  draw the line.  But I will note your objection.

24         And I'm not sure I still have a copy of the red line,

25  so if you can give it to Mr. Haley and it will be docketed as

1        your proposed edits to Government's Exhibit --

2                  MR. BUSCHEL:  We may not have a paper copy, but I

3        will file it via the CM-ECF.

4                  THE COURT:  Right.  The PDF is probably better

5        anyway.  So if you just docket it as Notice of Defendant's

6        Objections to Government Redacted Exhibit whatever, then it

7        will on the record.

8                  MR. BUSCHEL:  Very good.  Thank you.

9                  THE COURT:  Thank you.

10                 All right.  With that, are we ready to bring the jury

11       in?  I should have water.

12                 (Pause.)

13                 THE COURT:  All right.  Let's bring the jury in.

14                 (Jurors enter the courtroom.)

15                 THE COURT:  Good morning.  I note that all of you,

16       except for juror number 4, who was unable to be here yesterday,

17       are here.  And since she was unable to be here yesterday, she's

18       not going to be able to continue to serve.

19                 Can you give out the instructions to everybody?

20                 I also just want to confirm that no one has discussed

21       this trial with you and you haven't had any information come to

22       your attention since we departed yesterday afternoon.

23                 All right.  Everyone is nodding at me.

24                 This is the point in the trial where I'm going to

25       instruct you as to the law that applies to the case.  And the

1    first thing I want to say is that my function here is to

2    conduct this trial in an orderly, fair, and efficient manner,

3    to rule on questions of law and to instruct you on the law that

4    applies in this case.  It's your duty to accept the law as I

5    instruct you.  You should consider all of the instructions as a

6    whole and you may not ignore or refuse to follow any of them.

7           I have just provided you with a copy of the

8    instructions.  You each have been given a copy and you're free

9    to read along or not, depending on your personal preference and

10   what helps you listen and retain information better.  During

11   your deliberations you may, if you want, refer to these

12   instructions, while you may refer to any particular portion of

13   the instructions, you are to consider the instructions as a

14   whole, and you may not follow some and ignore others.  If you

15   have any questions about the instructions, you should feel free

16   to send me a note.  I will ask you to return your copies of

17   these instructions to me when the verdict is rendered.

18          Your function as the jury is to determine what the

19   facts are in this case.  You are the sole judges of the facts.

20   While it's my responsibility to decide what is admitted as

21   evidence during the trial, you alone decide what weight, if

22   any, to give to that evidence.  You alone decide the

23   credibility or believability of the witnesses.

24          You should determine the facts without prejudice,

25   fear, sympathy, or favoritism.  You should not be improperly

1    influenced by anyone's race, ethnic origin, or gender.  Decide

2    the case solely from a fair consideration of the evidence.  And

3    you may not take anything I may have said or done as indicating

4    how I think you should decide this case.  If you believe that I

5    have expressed or indicated any such opinion, you should ignore

6    it.  The verdict in this case is your sole and exclusive

7    responsibility.

8              If any reference by me or the attorneys to the

9    evidence is different from your own memory of the evidence, it

10   is your memory that should control during your deliberations.

11             During the trial, I have permitted those jurors who

12   wanted to do so to take notes.  You may take your notebooks

13   with you to the jury room and use them during your

14   deliberations if you wish.  As I told you at the beginning of

15   the trial though, your notes are only to be an aid to your

16   memory.  They are not evidence in the case, and they should not

17   replace your own memory of the evidence.  Those jurors who have

18   not taken notes should rely on their own memory of the

19   evidence.  The notes are to be intended for the notetaker's own

20   personal use only.

21             During your deliberations you may consider only the

22   evidence properly admitted in this trial.  The evidence

23   consists of the sworn testimony of the witnesses, the exhibits

24   that were admitted into evidence, and the facts stipulated to

25   by the parties.

1          During the trial you were told that the parties had

2     stipulated, that is, agreed to certain facts.  You should

3     consider any stipulations of fact to be undisputed evidence.

4     And when you consider the evidence, you are permitted to draw,

5     from the facts that you find have been proven, such reasonable

6     inferences as you feel are justified in the light of your

7     experience.  You should give any evidence such weight as in

8     your judgment it is fairly entitled to receive.

9          The government has presented some exhibits in the

10    form of charts and summaries.  The purpose of showing you

11    charts and summaries in place of all of the underlying

12    documents they represent is to save time and avoid unnecessary

13    inconvenience.  You should consider these charts and summaries

14    as you would any other evidence.

15         It's important to note, though, that the statements

16    and arguments of the lawyers are not evidence.  They are only

17    intended to assist you in understanding the evidence.

18    Similarly, the questions asked by the lawyers are not evidence.

19         The indictment is merely the formal way of accusing a

20    person of a crime.  You must not consider the indictment as

21    evidence of any kind.  You may not consider it as any evidence

22    of Mr. Stone's guilt or draw any inference of guilt from it.

23         The lawyers in this case sometimes objected when the

24    other side asked a question, made an argument, or offered

25    evidence that the objecting lawyer believed was not proper.

1    You must not hold such objections against the lawyer who made

2    them or the party he represents.  It's the lawyer's

3    responsibility to object to evidence that they believe is not

4    admissible.

5         If, during the course of the trial, I sustained an

6    objection to a lawyer's question, or there was a discussion at

7    the bench and the question was never answered, you should

8    ignore the question, and you must not speculate as to what the

9    answer would have been.  If, after witness answered a question,

10   I ruled that the answer should be stricken, you should ignore

11   both the question and the answer and they should play no part

12   in your deliberations.

13        During the course of this trial a number of exhibits

14   were admitted in evidence.  Sometimes only those parts of an

15   exhibit that are relevant to your deliberations were admitted.

16   Where this has occurred, I have required the irrelevant parts

17   of the statement to be blacked out or deleted.  Thus, if you

18   examine the exhibits and you see what appears to be an

19   omission, you should consider only the portions that were

20   admitted.  You should not guess as to what has been taken out.

21        There are two types of evidence from which you may

22   determine what the facts are in this case; direct evidence and

23   circumstantial evidence.  When a witness, such as an

24   eyewitness, asserts actual knowledge of a fact, that witness's

25   testimony is direct examination.  On the other hand, evidence

1    of facts and circumstances from which reasonable inferences may

2    be drawn is circumstantial evidence.  Let me give you an

3    example.  It's not the world's best example, but it's the one

4    I've got.

5          Assuming a person looked out the window and saw that

6    the snow was falling.  If he later testified in court about

7    what he has seen, his testimony would be direct evidence that

8    snow was falling at the time he saw it happen.  Assume,

9    however, that he looked out a window and saw no snow on the

10   ground and then went to sleep and saw snow on the ground after

11   he woke up.  His testimony about what he had seen would be

12   circumstantial evidence that it had snowed while he was asleep.

13         The law says that both direct and circumstantial

14   evidence are acceptable as means of proving a fact.  The law

15   does not favor one form of evidence over another.  It's for you

16   to decide how much weight to give to any particular evidence,

17   whether it's direct or circumstantial.  You are permitted to

18   give equal weight to both.  Circumstantial evidence does not

19   require a greater degree of certainty than direct evidence.  In

20   reaching a verdict in this case, you should consider all of the

21   evidence presented, both direct and circumstantial.

22         The exhibits in this case include letters, emails,

23   and texts, and portions of reports prepared by the House

24   committee after the hearing in question.  Some of those

25   exhibits contain statements by the authors that something

1    happened or that something was in fact the case.  You are

2    instructed that those records have been introduced simply for

3    the fact that they were written and that they said what they

4    said.  The fact that the statements were made may be important

5    because how the recipient reacted to the statements is

6    important, or because they show the state of mind of the person

7    who wrote them.

8         For example, there are letters that say something to

9    the effect of, Mr. Stone told the truth during his testimony,

10   or texts that say he did not tell the truth.  But those

11   statements alone do not prove whether he did or did not; that

12   decision is up to you based on your consideration of all of the

13   evidence.

14        Also, the findings set out in the House majority and

15   minority reports do not establish that their findings were in

16   fact corrupt; the reports -- correct -- I'm sorry -- do not

17   establish that their findings were in fact correct; the reports

18   have been introduced as evidence to show what issues were under

19   investigation and were or were not important to the committee

20   at the time.

21        In determining whether the government has proved the

22   charges against the defendant beyond a reasonable doubt, you

23   must consider the testimony of all the witnesses who have

24   testified.

25        You are the sole judges of the credibility of the

1   witnesses, you alone determine whether to believe any witness

2   and the extent to which a witness should be believed.  Judging

3   a witness's credibility means evaluating whether the witness

4   has testified truthfully, and also whether the witness

5   accurately observed, recalled, and described the matters about

6   which the witness testified.

7         You may consider anything that in your judgment

8   affects the credibility of any witness.  For example, you may

9   consider the demeanor and behavior of the witness on the

10  witness stand; the witness's manner of testifying; whether the

11  witness impresses you as a truthful person; whether the witness

12  impresses you as having an accurate memory and recollection;

13  whether the witness has any motive for not telling the truth;

14  whether the witness had a full opportunity to observe the

15  matters about which he or she testified; whether the witness

16  has any interest in the outcome of the case or friendship or

17  hostility towards other people concerned with the case.

18        In evaluating the accuracy of a witness's memory you

19  may consider the circumstances surrounding the event, including

20  any circumstances that would impair or improve the witness's

21  ability to remember the event, the time that elapsed between

22  the event and any later recollections of the event, and the

23  circumstances under which the witness was asked to recall

24  details of the event.

25        Inconsistencies or discrepancies in the testimony of

1    a witness or between the testimony of different witnesses may

2    or may not cause you to discredit such testimony.  Two or more

3    persons witnessing an incident or transaction may see or hear

4    it differently.  An innocent misrecollection, like a failure of

5    recollection, is not an uncommon experience.  In weighing the

6    effect of the inconsistency or discrepancy, always consider

7    whether it pertains to a matter of important or unimportant

8    detail, and whether the inconsistency or discrepancy results

9    from innocent error or intentional falsehood.

10          You may consider the reasonableness or

11   unreasonableness, the probability or improbability of the

12   testimony of a witness in determining whether to accept it as

13   true and accurate.  You may consider whether the witness has

14   been contradicted or supported by other evidence that you

15   credit.

16          If you believe that any witness has shown himself to

17   be biased or prejudiced, for or against either side in this

18   trial, you may consider and determine whether such bias or

19   prejudice has colored the testimony of the witness so as to

20   affect the desire and capability of that witness to tell the

21   truth.  You should give the testimony of each witness such

22   weight as in your judgment it is fairly entitled to receive.

23          The law treats prior inconsistent statements made by

24   a witness differently depending on the nature of the statements

25   and the circumstances in which they were made.  I'm now going

1    to explain to you how you should evaluate those statements.

2            You may have heard some evidence that a witness made

3    a statement on an earlier occasion and that this statement may

4    be inconsistent with his testimony here at trial.  It's for you

5    to decide whether the witness made such a statement and whether

6    in fact it was inconsistent with the witness's testimony here.

7    If you find such an inconsistency, you may consider the earlier

8    statement in judging the credibility of the witness, but you

9    may not consider it as evidence that what he said in the

10   earlier statement was true.

11           You also have heard evidence that Steven Bannon made

12   an earlier statement under oath, subject to the penalty of

13   perjury before the grand jury and that this statement may be

14   inconsistent with his testimony here at trial.  If you find

15   that the earlier statement is inconsistent with the witness's

16   testimony here in court, you may consider this inconsistency in

17   judging the credibility of the witness.  You may also consider

18   the earlier statement as evidence that what was said in the

19   earlier statement was true.

20           A law enforcement officer's testimony should be

21   evaluate by you just as any other evidence in the case.  In

22   evaluating the officer's credibility, you should use the same

23   guidelines that you apply to the testimony of any witness.  In

24   no event should you give greater or lesser weight to the

25   testimony of any witness merely because she is a law

1    enforcement officer.

2            You have heard that Richard Gates entered into a plea

3    agreement with the government pursuant to which Mr. Gates

4    agreed to testify truthfully in this case and the government

5    agreed to dismiss some charges against him and bring

6    Mr. Gates's cooperation to the attention of his sentencing

7    judge and consider filing papers with his judge so that the

8    judge considers imposing a more lenient sentence than that

9    judge might otherwise impose.

10           The government is permitted to enter into this kind

11   of plea agreement.  You, in turn, may accept the testimony of

12   such a witness and consider it, along with all the other

13   evidence, in determining whether the government has proved the

14   defendant's guilt beyond a reasonable doubt.  You may consider

15   all the factor I just listed that would apply when considering

16   the credibility of any witness.  A witness who's entered into a

17   plea agreement is under the same obligation to tell the truth

18   under penalty of perjury as any other witness.

19           However, you may consider whether a witness who has

20   entered into such agreement has an interest different from

21   other types of witnesses.  You may consider whether the plea

22   agreement the witness entered into with the government has

23   motivated him to testify falsely against the defendant.  The

24   testimony of a witness who's entered into a plea agreement

25   should be considered with caution.  You should, therefore, give

1    the testimony as much weight as in your judgment it deserves.

2            Every defendant in a criminal case is presumed to be

3    innocent.  This presumption of innocence remains with the

4    defendant throughout the trial unless and until the government

5    has proven he is guilty beyond a reasonable doubt.  This burden

6    never shifts throughout the trial.  The law does not require

7    Mr. Stone to prove his innocence or to produce any evidence at

8    all.  If you find that the government has proven beyond a

9    reasonable doubt every element of a particular offense with

10   which Mr. Stone is charged, its your duty to find him guilty of

11   that offense.

12           On the other hand, if you find the government has

13   failed to provide -- prove any element of any particular

14   offense beyond a reasonable doubt, it is your duty to find

15   Mr. Stone not guilty of that offense.

16           Every defendant in a criminal case has an absolute

17   right not to testify.  Mr. Stone has chosen -- Mr. Stone has

18   chosen to exercise this right.  You must not hold this decision

19   against him, and it would be improper for you to speculate as

20   to the reason or reasons for his decision.  You must not draw

21   any conclusions about the defendant's guilt from the fact that

22   he chose not to testify.  It's the government's burden to prove

23   his guilt beyond a reasonable doubt.

24           As I just said, the government has the burden of

25   proving Mr. Stone guilty beyond a reasonable doubt.  In civil

1    cases it's only necessary to prove that a fact is more likely

2    true than not, or, in some cases, that it's truth is highly

3    probable.  In criminal cases like this one, the government's

4    proof must be more powerful than that.  It must be beyond a

5    reasonable doubt.

6           Reasonable doubt, as the name implies, is a doubt

7    based on reason; a doubt for which you have a reason based on

8    the evidence or lack of evidence in the case.  If, after

9    careful, honest and impartial consideration of the evidence,

10   you cannot say that you are firmly convinced of the defendant's

11   guilt, then you have a reasonable doubt.

12          Reasonable doubt is the kind of doubt that would

13   cause a reasonable person, after careful and thoughtful

14   reflection, to hesitate to act in the graver or more important

15   matters in life.  However, it's not an imaginary doubt, nor a

16   doubt based on speculation or guesswork; it's a doubt based on

17   reason.  The government is not required to prove guilt beyond

18   all doubt, or to a mathematical or scientific certainty.  Its

19   burden is to prove guilt beyond a reasonable doubt.

20          Now I'm going to go into the elements of the offenses

21   in the case.  The indictment charges that the offenses were

22   committed on or about certain dates.  The proof need not

23   establish with certainty the exact date of the alleged offense.

24   It's sufficient if the evidence in the case establishes beyond

25   a reasonable doubt that the offense was committed on a date

1    reasonably near the date alleged.

2              Count 1 of the indictment charges that from in or

3    around May 2017 through at least December 2017, within the

4    District of Columbia and elsewhere, the defendant corruptly

5    influenced, obstructed, impeded, and endeavored to influence,

6    obstruct, and impede the due and proper exercise of the power

7    of inquiry under which an inquiry or investigation was being

8    undertaken by the United States House of Representatives or any

9    committee of the House of Representatives.

10             In order to establish that the defendant is guilty of

11   the charge in Count 1 in the indictment, the government must

12   prove each of the following elements beyond a reasonable doubt:

13             First, that from in or about May 2017 through at

14   least December 2017, there was an a inquiry or investigation

15   pending before the House -- before the United States House of

16   Representatives Permanent Select Committee on Intelligence

17   which people have been calling HPSCI in this trial.

18             Second, that the defendant knew that the inquiry or

19   investigation was being undertaken by the U.S. House of

20   Representatives or any committee of the House.

21             Third, that the defendant did corruptly endeavor to

22   influence, obstruct, or impede the due and proper exercise of

23   the power of inquiry under which the investigation or inquiry

24   was being undertaken by HPSCI.

25             So with respect to the first element, the first

1   element the government must prove beyond a reasonable doubt is

2   that on or about the date set forth in the indictment, an

3   inquiry or investigation was pending before HPSCI.  In this

4   regard, you are instructed that the House Permanent Select

5   Committee on Intelligence is a committee of the U.S. House of

6   Representatives.  The question for you with respect to this

7   element is to whether that inquiry was pending on or about

8   September 26, 2017.

9        The second element the government must prove beyond a

10  reasonable doubt is that the defendant knew that the inquiry or

11  investigation was in progress.  In order to satisfy this

12  element, you need to only determine that the defendant knew at

13  or about the date charged that the committee was conducting an

14  investigation or inquiry.

15       In this regard, you may take into account all the

16  facts and circumstances surrounding the conduct with which the

17  defendant is charged in order to determine whether he knew or

18  had a reasonable basis for belief that a proceeding was

19  pending.

20       The final element the government must prove beyond a

21  reasonable doubt is that the defendant did corruptly endeavor

22  to influence, obstruct, or impede the due and proper exercise

23  of the power of inquiry under which the investigation or

24  inquiry was being undertaken by HPSCI.

25       The word "corruptly" means acting with an improper

1   purpose, personally or by influencing another, including making

2   a false or misleading statement.  A statement is false if it

3   was untrue when it was made and the defendant knew it was

4   untrue at that time.  A misleading statement is one that

5   intentionally omits information, thereby concealing a material

6   fact and creating a false impression.

7        The word "endeavor" means any effort or act, however

8   contrived, to try to obstruct or interfere with the proceeding.

9   The term "endeavor" is designed to reach all conduct that is

10  aimed at influencing, intimidating and impeding the

11  proceedings.  It is the effort that is the alleged crime.  The

12  government is not required to prove that the endeavor was

13  successful.  Thus, it is sufficient to satisfy this element if

14  you find that the defendant made any effort or did any act for

15  the purpose of obstructing or impeding the proceeding.

16       The phrase "due and proper exercise of the power of

17  inquiry" means an inquiry within the investigative power of

18  HPSCI.

19       With respect to this count, Count 1, Roger Stone has

20  been charged with one count of obstructing a proceeding of

21  HPSCI.  And you've heard evidence of more than one alleged

22  means of committing this offense:  That Mr. Stone, one,

23  testified falsely and misleadingly at a HPSCI hearing in or

24  around September 2017; two, lied about the existence of

25  responsive records to HPSCI's request about documents; three,

1    submitted and caused to be submitted a letter to HPSCI falsely

2    and misleadingly describing communications with Randy Credico;

3    and four, attempted to have Randy Credico testify falsely

4    before HPSCI or to prevent him from testifying.

5         You may find Mr. Stone guilty on this count, Count 1,

6    if the government has proved beyond a reasonable doubt that

7    Mr. Stone utilized any of these alleged means.  However, in

8    order to return a guilty verdict on this count, you must all

9    agree on at least one, and it must be the same one, even if you

10   are of different views on the others.

11        That's Count 1.  Now I'm going to turn to Counts 2

12   through 6.

13        Counts 2 through 6 of the indictment all charge that

14   on or about September 26, 2017, within the District of Columbia

15   and elsewhere, in a matter within the jurisdiction of the

16   legislative branch of the government of the United States, the

17   defendant, knowingly and willfully, made or caused to be made

18   false, fictitious, and fraudulent statements and

19   representations.

20        Count 2 charges that the defendant testified falsely

21   that he did not have emails with third parties about the head

22   of WikiLeaks, and that he did not have any documents, emails,

23   or text messages that refer to the head of WikiLeaks.

24        Count 3 charges that the defendant testified falsely

25   that his August 2016 references to being in contact with the

1    head of WikiLeaks were references to communications with a

2    single go-between, mutual friend, and intermediary who the

3    defendant identified as Randy Credico.

4        Count 4 charges that the defendant testified falsely

5    that he did not ask the person he referred to as his

6    go-between, mutual friend, and intermediary to communicate

7    anything to the head of WikiLeaks and did not ask the

8    intermediary to do anything on the defendant's behalf.

9        Count 5 charges that the defendant testified falsely

10   that he and the person referred to as his go-between, mutual

11   friend, and intermediary did not communicate via text message

12   or email about WikiLeaks.

13       Count 6 charges that the defendant testified falsely

14   that he had never discussed his conversations with the person

15   he referred to as his go between, mutual friend, and

16   intermediary with anyone involved in the Trump campaign.

17       In order to prove the defendant guilty of the crime

18   charged in each of those counts, the government must prove

19   beyond a reasonable doubt:  First, on or about September 26,

20   2017, the defendant made a statement or representation.

21       Second, that the statement or representation was

22   material.

23       Third, that the statement or representation was

24   false, fictitious or fraudulent.

25       Fourth, the false, fictitious or fraudulent statement

1   was made knowingly and willfully.

2        And fifth, the statement or representation was made

3   in a matter within the jurisdiction of the legislative branch

4   of the government of the United States.

5        The first element that the government must prove

6   beyond a reasonable doubt is that the defendant made a

7   statement or representation.  In this regard, the government

8   need not prove that the defendant physically made or otherwise

9   personally prepared the statement in question.  It's sufficient

10  if the defendant caused the statement charged in the indictment

11  to have been made.  Under this statute, there's no distinction

12  between written and oral statements.

13       The second element the government must prove beyond a

14  reasonable doubt is that the defendant's statement or

15  representation was material.  A fact is material if it had a

16  natural tendency to influence, or was capable of influencing,

17  either a decision or another function of HPSCI.  In other

18  words, a statement is material if it was capable of influencing

19  the HPSCI investigation.  However, proof of actual reliance on

20  the statement by the government is not required.  Accordingly,

21  the government is not required to prove that the statement

22  actually influenced a decision or other function of HPSCI.

23       The third element that the government must prove in

24  these counts beyond a reasonable doubt is that the statement or

25  representation was false, fictitious, or fraudulent.  A

1    statement or representation is false or fictitious if it was

2    untrue when made, and known at the time to be untrue by the

3    person making it or causing it to be made.  A statement or

4    representation is fraudulent if it was untrue when made and was

5    made or caused to be made with the intent to deceive the

6    congressional committee to which it was made.  It is not

7    necessary for the government to prove that the committee was in

8    fact misled.

9          The fourth element that the government must prove

10   beyond a reasonable doubt with respect to each of these Counts

11   2 through 6 is that the defendant acted knowingly and

12   willfully.  An act is done knowingly if it's done purposely and

13   voluntarily, as opposed to mistakenly or accidentally.  An act

14   is done willfully if it is done with an intention to do

15   something the law forbids, that is, with a bad purpose to

16   disobey the law.

17         As I've told you, the fifth element with respect to

18   each of these counts, 2 through 6, is that the statement or

19   representation be made with regard to a matter within the

20   jurisdiction of the legislative branch of the government of the

21   United States.  I charge you that the United States House of

22   Representatives is part of the legislative branch of the

23   United States.  To be within the jurisdiction of the

24   legislative branch of the government of the United States means

25   that the statement must concern an authorized function of that

 1    branch.

 2              Now I'm going to turn to Count 7.  Tampering with a

 3    witness.  Count 7 in the indictment charges that between in or

 4    around September 2017 and in or around January 2019, within the

 5    District of Columbia and elsewhere, the defendant knowingly and

 6    intentionally corruptly persuaded and attempted to corruptly

 7    persuade another person, namely, Randy Credico, with the intent

 8    to influence, delay, and prevent Mr. Credico's testimony in an

 9    official proceeding.

10              In order to prove the defendant guilty of tampering

11    with a witness by intimidation or corrupt persuasion, the

12    government must prove each of the following elements beyond a

13    reasonable doubt:

14              First, that between in or around September 2017 and

15    in or around January 2019, the defendant corruptly persuaded

16    Randy Credico, or attempted to do so.  And second, that the

17    defendant acted knowingly and with the intent to influence the

18    testimony of Randy Credico in an official proceeding.

19              The first element the government must prove beyond a

20    reasonable doubt is that the defendant knowingly corruptly

21    persuaded Randy Credico, or attempted to do so.  To corruptly

22    persuade means to act knowingly, with a wrongful or evil

23    purpose to convince or induce another person to engage in

24    certain conduct.

25              The second element the government must prove beyond a

1    reasonable doubt is that the defendant acted knowingly and with

2    the intent to influence or prevent the testimony of Randy

3    Credico in an official federal proceeding.

4            To act with the intent to influence the testimony of

5    a witness means to act for the purpose of getting that witness

6    to change or color or shade his or her testimony in some way.

7    It is not necessary for the government to prove that the

8    witness's testimony was in fact changed in any way.  An

9    official proceeding means a proceeding before Congress.  You

10   are instructed that the hearing on September 26, 2017 before

11   the House Permanent Select Committee on Intelligence

12   investigating Russian interference in the 2016 U.S.

13   presidential election is an official proceeding.

14           The government must prove beyond a reasonable doubt

15   that the defendant acted intentionally to persuade Randy

16   Credico with intent to influence, delay, and prevent

17   Mr. Credico's testimony in an official proceeding.  Before you

18   can find that the defendant acted intentionally, you must be

19   satisfied beyond a reasonable doubt that the defendant acted

20   deliberately and purposefully, rather than the product of a

21   mistake or accident.

22           In a number of instances in these counts, I have

23   talked about the defendant's knowledge or intent.  Someone's

24   intent or knowledge ordinarily cannot be proved directly

25   because there's no way of knowing what a person is actually

 1    thinking, but you may infer someone's intent or knowledge from

 2    the surrounding circumstances.  You may consider any statement

 3    made or acts done or committed by Mr. Stone, and all other

 4    facts and circumstances received in evidence, which indicate

 5    his intent or knowledge.

 6         You may infer, but aren't required to infer, that a

 7    person intends the natural and probable consequences of acts he

 8    intentionally did or intentionally did not do.  It is entirely

 9    up to you, however, to decide what facts to find from the

10    evidence received during this trial.  You should consider all

11    the circumstances in evidence that you think are relevant in

12    determining whether government as proved beyond a reasonable

13    doubt that Mr. Stone acted with the necessary state of mind.

14         The question of possible punishment of the defendant

15    is of no concern to the jury and should not, in any sense,

16    enter into or influence your deliberations.  The duty of

17    imposing sentence rests exclusively upon the Court.  Your

18    function is to weigh the evidence in the case and to determine

19    whether or not the defendant is guilty beyond a reasonable

20    doubt, solely on the basis of such evidence.  Under your oath

21    as jurors, you cannot allow a consideration of the punishment

22    that may be imposed upon the defendant, if he is convicted, to

23    influence your verdict, in any way, or, in any sense, enter

24    into your deliberations.

25         A verdict must represent the considered judgment of

1   each juror, and in order to return a verdict, each juror must

2   agree on the verdict.  In other words, your verdicts must be

3   unanimous.

4           Each count of the indictment charges a separate

5   offense.  You should consider each offense, and the evidence

6   which applies to it, separately, and you should return separate

7   verdicts as to each count.  The fact that you may find the

8   defendant guilty or not guilty on any one count of the

9   indictment should not influence your verdict with respect to

10  any other count of the indictment.

11          You will be provided with a verdict form for use when

12  you've concluded your deliberations.  The form is not evidence

13  in the case, and nothing in it should be taken to suggest or

14  convey any opinion by me as to what the verdict should be.

15  Nothing in the form replaces the instructions of law I've

16  already given you, and nothing in it replaces or modifies the

17  instructions about the elements which the government must prove

18  beyond a reasonable doubt.  The form is meant only to assist

19  you in recording your verdict.

20          I will be sending into the jury room with you the

21  exhibits that have been admitted into evidence.  You may

22  examine any or all of them as you consider your verdicts.

23  Please keep in mind that exhibits that were only marked for

24  identification but were not admitted into evidence will not be

25  given to you to examine or consider in reaching your verdict.

1    When you return to the jury room, you should first

2    select a foreperson to preside over your deliberations and be

3    your spokesperson here in court.  There are no specific rules

4    about how you should go about selecting a foreperson; that's up

5    to you.  However, as you go about the task, be mindful of your

6    mission, to reach a fair and just verdict based on the

7    evidence.  Consider selecting a foreperson who will be able to

8    facilitate your discussions, who can help you organize the

9    evidence, who will encourage civility and mutual respect among

10   all of you, and who will invite each juror to speak up

11   regarding his or her views about the evidence, and who will

12   promote a full and fair consideration of that evidence.

13   I would like to remind you that, in some cases, there

14   may be reports in the newspaper or on the radio, internet, or

15   television concerning this case.  As I've instructed you

16   before, if there should be such media coverage in this case you

17   may be tempted to read, listen to, or watch it.  You must not

18   read, listen to, or watch such reports because you must decide

19   this case solely on the evidence presented in this courtroom.

20   If any publicity about the trial inadvertently comes to your

21   attention from this point forward, please do not discuss it

22   with any other jurors or with anyone else.  Just let me or

23   Mr. Haley know as soon after it happens as you can, and I will

24   briefly discuss it with you then.

25   Also, as you retire to the jury room to deliberate, I

1  want to remind you of an instruction that I gave you at the

2  beginning of the trial and every single day during the trial.

3  During the deliberations you may not communicate with anyone

4  not on the jury about this case.  This includes any electronic

5  communication such as an email or text or any blogging about

6  the case.  In addition, you may not conduct any independent

7  investigation during deliberations.  This means you may not

8  conduct any research in person or electronically via the

9  internet or in any other way.

10      If it becomes necessary during your deliberations to

11  communicate with me, you may send a note by the clerk or by the

12  marshal who will be outside the jury room, signed by your

13  foreperson or by one or more members of the jury.  No member of

14  the jury should try to communicate with me except by such a

15  signed note, and I will never communicate with any member of

16  the jury on any matter concerning the merits of this case,

17  except in writing or orally here in open court.

18      Bear in mind also that you are never, under any

19  circumstances, to reveal to any person -- not the clerk, the

20  marshal or me -- how jurors are voting until after you've

21  reached a unanimous verdict.  This means that you should never

22  tell me, in writing or in open court, how the jury is divided

23  on any matter; for example, we are six to six or seven to five

24  or eleven to one, or in any other fashion, whether the vote is

25  for conviction or acquittal or on any other issue in the case.

1    The last thing I must do before you begin your

2    deliberations is to excuse the alternate jurors.  As I told you

3    before, the selection of the alternates was an entirely random

4    process; it's nothing personal.  We selected two seats to be

5    the alternate seats before any of you entered the courtroom,

6    and we have already lost one juror who is not well.  Since the

7    rest of you have remained healthy and attentive, I can now

8    excuse the juror who is seated in seat number 14.

9    Before you leave, I'm going to ask you to tear out a

10   page from your notebook and write down your name and your

11   daytime phone number and hand it to Mr. Haley.  I do this

12   because it's possible, although unlikely, that we might have to

13   summon you back to rejoin the jury in case something happens to

14   a regular juror during the deliberations.

15   Since that possibility exists, I'm also going to

16   instruct you to continue not to discuss the case with anyone

17   until we call you.  My earlier instruction on use of the

18   internet still applies; please don't research this case or

19   communicate with anyone about it on the internet.  In all

20   likelihood we'll be calling you to tell you there's been a

21   verdict and you're now free to discuss the case.  However,

22   there is still the small chance that we will need to bring you

23   back to participate with the jury.

24   I want to thank you very much for your service,

25   though, and for your close attention you've paid throughout the

1    trial, and ask you -- I believe you need to report back to the

2    jury office to turn in your badge when you leave the building,

3    after you've given Mr. Haley your information.

4          So, Mr. Haley, you can escort the juror out and then

5    we'll let the jurors retire to the jury room.

6          Can I have counsel at the bench.

7          (Bench discussion.)

8          THE COURT:  Any objections to the instructions as

9    they were read?

10          MR. KRAVIS:  No objection.

11          MR. BUSCHEL:  (Shakes head.)

12          THE COURT:  All right.  I'm going to excuse the jury.

13    You all need to give Mr. Haley the information about where he

14    can reach you.  You don't have to sit in the courtroom, but you

15    need to be, you know, 20 minutes away, something like that.

16    They will just receive lunch at 12:30.  I don't intend to bring

17    them back in the courtroom to do that.  And so then one

18    question is if I excuse them at the end of the day, if they

19    haven't reached a verdict, do you want me to just let Mr. Haley

20    excuse them?  Or do you want me to bring them back in the

21    courtroom, you know, with everyone present and instruct them,

22    give them the instructions?

23          MR. KRAVIS:  We can excuse them at the end of the

24    day.  And if we're not coming back at the end of the day, we

25    can have a discussion with Mr. Haley, just that the jury has

1    been excused.

2              THE COURT:  What I would do, if I don't hear anything

3    from them, would be to excuse them at five.  So, the question

4    is, do you all want to be here at five to do that?

5              MR. BUSCHEL:  No.

6              THE COURT:  Okay.  All right.  So, if there's no

7    communications from us, then we will let you know that that has

8    in fact been done, so that you can all -- then you'll actually

9    know they're gone.  But otherwise, that's what we'll do.  Okay.

10   Thank you.

11             (Open court.)

12             THE COURT:  We're just waiting for Mr. Haley and then

13   this time when you leave the courtroom, you may take your

14   notebooks with you, you may take the instructions I just gave

15   you with you.  He will be the one who brings you the exhibits

16   and they'll be on a -- you'll be able to watch them on a

17   screen.

18             All right.  Can you take the jury out.

19             THE COURTROOM DEPUTY:  Just leave the notebooks and

20   jury instructions and everything on your chair, I will bring

21   them --

22             THE COURT:  I just told them they could take them.

23   He's in charge, do what he said.

24             THE COURT:  I will bring them to you.

25             (Jurors leave the courtroom.)

1    THE COURT:  All right.  The parties are excused and

2    we'll be adjourned unless and until we hear something from the

3    jury.

4         (Recess.)

5         THE COURTROOM DEPUTY:  Your Honor, recalling criminal

6    case number 19-18, the *United States of America v. Roger Stone*.

7    The defendant is present and in the courtroom.

8         THE COURT:  All right.  We've received a note from

9    the jury dated 2:07 p.m. today.  Has -- have the parties had an

10   opportunity to see it?

11        MR. ZELINSKY:  We have, Your Honor.

12        MR. BUSCHEL:  Yes.

13        THE COURT:  Okay.  For the record, the note asks the

14   question:  Is the October 13 letter, Exhibit 13, considered to

15   be "testimony"?  It's sign by the foreperson.

16        I've spent some time looking at the jury instructions

17   and the verdict form and I think I understand what this

18   question pertains to.  And I have some thoughts about what we

19   should do about it that I'll put out on the table and then I

20   want to hear from both of you.

21        The indictment, in Count 1, as we explained in the

22   jury instructions, alleges several means of affecting the

23   inquiry, including, one, testifying falsely, as we said in our

24   unanimity instruction related to Count 1.  Second, lying about

25   the existence of responsive records.  Three, causing to be

1    submitted a letter.  And then, fourth, the attempts with

2    respect to Mr. Credico.  And we have also instructed the jury

3    that a statement of the defendant includes statements that he

4    caused to have made.

5           Counts 2 through 6, though, allege false statements

6    on or about September 26, 2017, that he knowingly and willfully

7    made, or caused to be made, false or fictitious statements on

8    that day.  And then with respect to each of them, we said

9    testified falsely, testified falsely, testified falsely, and

10   that language is repeated in the verdict form.

11          So, I think for purposes of what was meant by the

12   indictment, the letter is a statement or representation by the

13   defendant.  But it is not alleged to be one of the false

14   statements made on or about September 26th, is my

15   understanding.  And I think we could tell them that.

16          Where the confusion, I think, possibly comes in, is

17   in the verdict form, Count 3, false statements says, As to

18   Count 3 of the indictment, making a false statement, in

19   violation of 18 U.S. Code § 1001(a)(2) and (2), that is, that

20   Stone -- they use the word "testified falsely," that his August

21   2016 references to being in contact with Julian Assange were

22   references to communication with a single go-between, mutual

23   friend, and intermediary, comma, who Stone identified as Randy

24   Credico, comma, we find.  And there probably should have been

25   the word "later" inserted before "identified" because he didn't

1    testify that it was Randy Credico.  He said it in the letter

2    that his lawyer submitted.

3          And, so, I think they're confused about whether that

4    letter, given the reference to Credico in the verdict form, but

5    not the indictment or the instructions, whether they're

6    supposed to consider that or not, or whether it's the

7    identification of him that is the alleged false statement or

8    not.

9          So, I think they need to know, no, it's not an

10   instance that is alleged that he, quote, testified falsely on

11   September 26th.  It is a statement or representation of the

12   defendant that can be considered in connection with Count 1.

13   But then the question is, do we say anything further about the

14   way the count is described in the verdict form?

15         So, let me start with the government.

16         MR. KRAVIS:  Can I have --

17         THE COURT:  Do you want to talk among yourselves,

18   first.

19         (Pause.)

20         THE COURT:  Mr. Kravis, let me just start, before you

21   tell me what you think, by asking you if I'm correct, that the

22   indictment is Counts 2 through 6 are things he said, said under

23   oath at the hearing on or about September 26, that that's what

24   you're allege, correct?

25         MR. KRAVIS:  Correct.

1           THE COURT:  The letter is not one of the counts in 2

2     through 6.

3           MR. KRAVIS:  Correct.  Correct.  However, the Count 3

4     of the indictment alleges that Mr. Stone made a false statement

5     when he -- and this is the language that also appears in the

6     verdict form -- testified falsely that his August 2016

7     references to being in contact with Julian Assange were

8     references to communications with a single go-between, mutual

9     friend and intermediary who Stone identified as Person 2.

10          I think what this language in the indictment alleges

11    that at the -- and I think the evidence presented to the jury

12    was sufficient for the jury to conclude, that at the September

13    26, 2017 hearing, Mr. Stone is telling the committee -- is

14    telling the committee, in effect, that this person is --

15    falsely telling them that this intermediary is Randy Credico,

16    even though he does not use the name Randy Credico at the

17    hearing because he refers to a journalist, someone I've known

18    for a long time, someone who has interviewed Assange.

19          THE COURT:  Somebody whose name I'll find out if I

20    can give you later --

21          MR. KRAVIS:  Exactly.  So I agree with the Court's

22    formulation of the first two points that the Court proposed to

23    respond to the jury.  But I'm not sure that the language that

24    the Court proposed in the third part there is necessary,

25    because I believe that there is sufficient evidence for the

 1     jury to conclude that the defendant made the false statement

 2     that is described in the indictment and identically on the

 3     verdict form, even setting aside the letter.

 4              THE COURT:  All right.  So you're suggesting that we

 5     should tell them that if he caused it to be made, it's a

 6     statement or representation of the defendant, but it's not

 7     testimony for purposes of Counts 2 through 6?

 8              MR. KRAVIS:  It is a statement for purposes of Count

 9     1, it is not testimony for purposes of Counts 2 through 6.

10              THE COURT:  And just stop.

11              MR. KRAVIS:  And leave it, leave it there.

12              THE COURT:  All right.  What is the defendant's point

13     of view?

14              MR. BUSCHEL:  Good afternoon.  The answer to the

15     question is no.  And that is all.  I think this explanation,

16     what the government is saying and, respectfully, what the Court

17     is saying, we are -- they are -- we're reading too much into

18     the question; what do they need?  What do they mean?  How does

19     it apply to different counts?  This is not an appropriate

20     analysis of the question.

21              The question is:  Is it considered testimony?  The

22     answer is no.  See if they have another question.  But the

23     answer is no.  And that is all.  And to do more and offer more

24     is -- would be error.

25              THE COURT:  All right.  Mr. Kravis, I think that has

1    some force.  That is the answer.  I am trying to solve their

2    problem.  They haven't told me what their problem is.  So what

3    do you think?

4           MR. KRAVIS:  I think that the -- the guidance from

5    the Court of Appeals on this general exercise is that the Court

6    should be as responsive to the jury's question as possible.

7    And I think that the Court's original formulation -- first of

8    all, I don't hear the defense saying that the Court's proposed

9    instruction is wrong, that it is either, sort of, factually

10   incorrect or that it incorrectly describes the allegations in

11   the indictment or the jury instructions or the verdict form.

12           And I think that given that the defense doesn't

13   appear to have a substantive objection -- for lack of a better

14   way to put this -- to the instruction that the Court proposed,

15   I think the Court's proposed response is more responsive to the

16   jury and gives the jury more information about this issue.  And

17   I think that's the better course.

18           THE COURT:  Well, I think saying that it is a

19   statement or representation by the defendant does direct their

20   attention to its possible use as evidence in Count 1, which

21   isn't up to me and, indeed, is done very clearly in the

22   instruction about Count 1 and the four means.

23           So, if they agree that it was false, they've been

24   told that that could be a means for Count 1.  I'm concerned

25   they're considering, if they believe it's false, whether it

1    could be evidence against him in connection with all the counts

2    that use the word "testify."  And so I think by just saying no,

3    that might solve the problem, or it might not give them enough

4    information.

5            So, I was trying to be fair to both sides by saying

6    what it wasn't.  Although, I don't think what the defense is

7    proposing is objectionable.

8            So do you -- you still don't think I should talk --

9    say it's not in Counts 2 through 6?

10           MR. BUSCHEL:  Correct, if we're answering the

11   question.  And certainly, we're not saying that's your last

12   question.  I think this analysis of -- is speculating what the

13   jury might need, and that's not appropriate.  The answer is no.

14           THE COURT:  Mr. Kravis, do you want to say anything

15   further?

16           MR. KRAVIS:  I just want to add as final point -- or,

17   not as a final point, next point -- that the Court's proposed

18   response to the jury does not provide, I don't think, any

19   additional information beyond what has already been provided in

20   the jury instructions and in the verdict form itself.  So, it's

21   not like the Court is now, you know, creating a bunch of new

22   information to provide to the jury.  The Court is just

23   directing the jury to information that it has already been

24   provided about the possible use of this particular piece of

25   evidence.  And given that this particular piece of evidence is

1    specifically referenced in the note, I think that is a helpful

2    and appropriate response to the jury, just directing them to

3    information that they have already received about this

4    document.

5              THE COURT:  I agree that there is nothing untoward in

6    what I was going to say and it is entirely consistent with what

7    I've said before.  But given the fact that they have, in

8    writing, everything I said before, with respect to every count,

9    and they are hung up on the meaning of one word, which only

10   appears in certain counts, and they have asked me this

11   question, I -- I'm going to adopt the defendant's suggestion

12   and answer the question.  And if they need more clarification,

13   they know where to find me.

14             And I think everyone is making their arguments in

15   good faith, and they're good arguments and they're sound

16   arguments.  But I think the safer course, particularly given

17   the fact that they can sit there right now and look and find

18   the answer to, Well, is testimony an element of Count 1?  Or is

19   it just an element of Count 2?  Everything is clear, which is

20   why I zeroed in on where this must coming from.

21             But I don't think I do need to speculate where it

22   must be coming from, so I'm going to -- they may find this

23   frustrating, they may find it all they ask for.  But I'm not

24   going to bring them back in here to say that, I'm just going to

25   write, "The answer is yes," and sign it.

```
 1              MR. BUSCHEL:  No.  No.

 2              MS. CAMPION:  No.

 3              THE COURT:  "The answer is no," I'm sorry.  All

 4    right.  It's a long day, long week.  Is it considered to be

 5    testimony?  "The answer is no."  Or I could just say it is not

 6    testimony and use the same formulation they have with the

 7    quotes.  Whatever -- all right.  No.

 8              MR. BUSCHEL:  No.

 9              THE COURT:  Okay.  The answer, "The answer is no."

10    That's what I'm going to say.  I'll sign it, I'll put the time

11    and we'll see what happens next.

12              I'll let both sides see the written note before I

13    send it back to the jury room.

14              (Pause.)

15              THE COURT:  Both sides have seen it?

16              THE COURTROOM DEPUTY:  Both sides.

17              THE COURT:  Let's just give it to them.

18              I think you all gathered pretty quickly after we got

19    the note, so wherever you are keeping yourselves seems to be an

20    appropriate place to be.

21              (Pause.)

22              THE COURTROOM DEPUTY:  They have it.

23              (Recess.)

24              THE COURTROOM DEPUTY:  Your Honor, recalling criminal

25    case number 19-18, *United States of America v. Roger Stone.*
```

1    Mr. Stone is present.

2    THE COURT:  All right.  Have both the parties had an

3    opportunity to look at the note?

4    MR. KRAVIS:  Yes, Your Honor.

5    MR. BUSCHEL:  Yes.

6    THE COURT:  Okay.  For the record, I received a note

7    signed by the foreperson, with today's date, time, 3:23 p.m.,

8    that says:  For Count 3, is the question of false testimony

9    about there being a quote, single, close quote, point of

10   contact, or that Roger Stone identified the go-between as Randy

11   Credico?

12   So, I think the good news about this is that we

13   correctly identified the precise source of their confusion in

14   our last conversation, and Mr. Buschel correctly predicted that

15   if my answer was insufficient to solve their problem, they

16   would provide me with a more pointed question.

17   So, now the question is, how do we answer this

18   question?  And my instincts tell me that I can't answer the

19   question by doing anything other than reading the exact

20   language of the indictment of Count 3.

21   But I'm happy to hear what the parties have to say

22   about it.

23   MR. KRAVIS:  Yeah, we agree with that.  The language

24   that appears in Count 3 of the indictment also appears in the

25   jury instruction as setting forth the terms.  I think the Court

1    should direct the jury to that language in -- they don't have

2    the indictment, so in the instruction, and then instruct them

3    that it is for them to decide whether the statement is false.

4            THE COURT:  I mean, there was a point where I had

5    kind of pressed the government to specify, chapter and verse in

6    the transcript, of what you wanted them to find was false.  And

7    I think that might have been helpful in this circumstance.  I

8    think you may not have done it because the indictment was

9    referring to more than one statement with respect to each false

10   set -- piece of -- category of information, I believe, is what

11   you called it.

12           There's no question that in your closing and that in

13   your PowerPoint you directed them to the questions and answers

14   that you specifically believed were false.  But, it's not in

15   the jury instructions, it's not in the verdict form, and I

16   don't think I can do that or should do that.  So, I think

17   that's all I can do.

18           What's the defendant's point of view?

19           MR. BUSCHEL:  The Court should write back to the jury

20   that you must use the jury instructions to answer their own

21   question on this matter.  And that is all.

22           THE COURT:  I don't think that's enough.  I think

23   they've asked me a specific question to which that is not

24   responsive.  I think they'll find, reading them, Count 3, to be

25   sufficiently frustrating that if we want to succeed in

1    frustrating them, we will.  But that, to me, is not the same as

2    your prior suggestion, because I don't think that's responsive

3    to the question.

4         I think jurors are allowed to ask questions about

5    specific instructions and you're allowed to say more than,

6    We'll just read them all again.  So, I don't think I can use

7    any words, I agree with you, that are not in the instructions

8    or in the indictment, but I don't think saying go back and read

9    it yourself is a good answer.

10        MR. BUSCHEL:  I don't think the Court can refer to

11   the indictment.  The indictment is not for them.  I think the

12   Court can refer to page 23 and say -- and reference Count 3,

13   the elements of Count 3.  I think that is -- that is what the

14   Court can do.

15        THE COURT:  All right.  Well, what we did -- and,

16   unfortunately, my page numbers are different than yours because

17   I blew it up, so it's not your fault.

18        MR. BUSCHEL:  It's entitled Counts 2 through 6, false

19   statements.

20        THE COURT:  False statements.

21        MR. BUSCHEL:  Third paragraph down.

22        THE COURT:  Um-hum.  So, I guess the question is,

23   whether I call them in and say, I can only answer this question

24   by taking you back to the jury instruction and reading the

25   first paragraph on page 30 -- not 30 -- the first paragraph

1    under Counts 2 through 6:  Counts 2 through 6 charge, and then

2    Count 3 charges, and just stop, and say that.  Or, to

3    specifically direct them to that page and that instruction.

4    They clearly have it in front of them.  But I don't -- I think

5    reading the actual indictment, it's the same thing.  So, it

6    doesn't change anything.  Count 3 of the indictment charges, if

7    I read it, I'm reading the same thing.

8            The ambiguity is in the language.  I don't think the

9    government thinks I can say anything else.  So the question is,

10   do I just read it to them or have them read it to themselves

11   again?  You were saying I should just have them read it to

12   themselves again.  I don't know that there's any harm in

13   reading it to them, although I think they're likely to find

14   both unsatisfactory.

15           Mr. Kravis?

16           MR. KRAVIS:  Right.  So I agree.  I think the Court

17   should direct the jury to this particular passage in the jury

18   instructions, the sentence that begins, "Count 3 charges that"

19   and then read the sentence.  And then I think the Court can

20   tell the jury:  It is up to you, or it is your job, or it is

21   for you to decide whether that statement is false.

22           THE COURT:  Well, this isn't a statement.  It's --

23   his testimony was false.

24           MR. KRAVIS:  Right.  Testimony.  Because it -- right.

25   Yes.

1    THE COURT:  His testimony is in evidence and it's up

2    to them to determine whether he testified falsely.  I mean, I

3    feel like they deserve the courtesy, almost, of being called

4    back in here, now that they've sent me two questions.  And I

5    would say, You've asked me this question, and then say you are

6    instructed that Count 2 of the indictment charges that on or

7    about September 26, 2017, within the District of Columbia and

8    elsewhere, in a matter within the jurisdiction of the

9    legislative branch of the government of the United States, the

10   defendant knowingly and willfully made, or caused to be made,

11   false, fictitious, and fraudulent statements and

12   representations.

13        In particular, it charges that the defendant

14   testified falsely, that his 2016 references to being in contact

15   with the head of WikiLeaks were references to communications

16   with a single go-between, mutual friend and intermediary, where

17   the defendant identified as Randy Credico.  And it's up to you

18   to determine whether he testified falsely regarding that

19   matter.

20        MR. KRAVIS:  Right.

21        THE COURT:  I don't know what else to say.  Does that

22   suit you?

23        MR. BUSCHEL:  Other than the preference -- if the

24   Court is going to bring them in, then that's fine.  Our

25   preference is that you write them back a note.

```
 1              MR. KRAVIS:  Mr. Zelinsky points out that the Court
 2      may have just said "Count 2" says this.
 3              THE COURT:  3.
 4              MR. KRAVIS:  Yes.  Right.  Okay.  Thank you.
 5              THE COURT:  All right.  Mr. Haley, why don't you
 6      bring the jury back.
 7              (Pause.)
 8              MR. BUSCHEL:  Judge, may we see precisely what you're
 9      going to say before you read it to the jury?  Because I think
10      there was an added sentence that you were saying.
11              THE COURT:  All right.  Can you let Mr. Haley know
12      not to bring them back in?
13              I will read to you, because I'm scribbling on my
14      current jury instruction -- my jury instructions.
15              (Pause.)
16              THE COURT:  You sent me a note asking me a question.
17      In response to your question, I can say the following:  Count 3
18      of the indictment charges that on or about September 26, 2017,
19      within the District of Columbia and elsewhere, in a matter
20      within the jurisdiction of the legislative branch of the
21      government of the United States, the defendant, knowingly and
22      willfully made, or caused to be made, false, fictitious, and
23      fraudulent statements and representations.
24              Count 3 charges that the defendant testified falsely,
25      that his August 2016 references to being in contact with the
```

1    head of WikiLeaks were references to communications with a

2    single go-between, mutual friend, an intermediary who the

3    defendant identified as Randy Credico.

4         You have the defendant's testimony and all the other

5    evidence.  It is up to you to decide whether the government has

6    proved beyond a reasonable doubt whether the defendant

7    testified falsely regarding that matter.

8         MR. BUSCHEL:  It is the end that we have an objection

9    to.  We think you should stop at "who the defendant identified

10   as Randy Credico."  Saying that you -- after that point the

11   Court is, we believe, is entering deliberations.

12        THE COURT:  Well, they're asking me a question; it's

13   basically, What's the point of Count 3?  I'm not going to

14   answer that question.  I'm going to say, Count 3 is Count 3,

15   but you have to decide it.  I think they need to know that I'm

16   not giving them anything more than that.

17        MR. BUSCHEL:  I think the only answer the Court can

18   give is, and then give -- and then read the two paragraphs the

19   Court read from the jury instructions, and that is all.

20   Suggesting more or telling them they have certain evidence

21   available to them already is too much.

22        THE COURT:  All right.  Mr. Kravis?

23        MR. KRAVIS:  So, I think that the last sentence that

24   the Court proposed is warranted here.  I think sometimes when

25   responding to jury notes it is helpful to point to the jury or

1    to instruct the jury, when they are asking a question, that it

2    is for them to decide, and that is why the Court is not

3    providing them additional information.  Whether the Court --

4    so, I think that that is -- "it is for you to decide" portion

5    is warranted in the instruction.  I think it's helpful to the

6    jury, it explains to them why this is all the information that

7    they're getting.  Whether the Court wants to reference the

8    testimony and other exhibits in evidence --

9         THE COURT:  I think that's the part they're finding

10    most objectionable.  So why don't I read Count 3, the language

11    from the jury instruction, and then just finish with:  It is up

12    to you to decide whether the government has proved beyond a

13    reasonable doubt whether he testified falsely regarding that

14    matter, and stop.

15         MR. KRAVIS:  That's fine for the government.

16         MR. BUSCHEL:  That's acceptable.

17         THE COURT:  All right.  All right.  We'll bring them

18    in.

19         (Jurors enter the courtroom.)

20         THE COURT:  Members of the jury, you have sent me a

21    note regarding Count 3.  What I can tell you is the following:

22         Count 3 of the indictment charges that on or about

23    September 26, 2017, within the District of Columbia and

24    elsewhere, in a matter within the jurisdiction of the

25    legislative branch of the government of the United States, the

1    defendant, knowingly and willfully made, or caused to be made,

2    false, fictitious and fraudulent statements and

3    representations.

4           Count 3 charges that the defendant testified falsely,

5    that his August 2016 references to being in contact with the

6    head of WikiLeaks were references to communications with a

7    single go-between, mutual friend and intermediary, who the

8    defendant identified as Randy Credico.  It is up to you to

9    decide whether the government has proved beyond a reasonable

10   doubt whether he testified falsely regarding that matter.

11          I'm going to excuse you to resume your deliberations.

12          (Jurors leave the courtroom.)

13          THE COURT:  I think we can adjourn until further

14   communications from the jury, if any.

15          The facial expressions seem to indicate to me that

16   some of them were as frustrated by the answer as we

17   anticipated.  But I think we're all in agreement that I

18   couldn't say anything else.

19          So, thank you.  You can remain seated or you can --

20   I'll see you when we get summoned back here today.

21          (Recess.)

22          (No further proceedings.)

23                        *   *   *

24

25

1

2                    CERTIFICATE OF OFFICIAL COURT REPORTER

3

4        I, JANICE DICKMAN, do hereby certify that the above and

5    foregoing constitutes a true and accurate transcript of my

6    stenographic notes and is a full, true and complete transcript

7    of the proceedings to the best of my ability.

8                         Dated this 14th day of November 2019

9

10

11                      _____

12                         Janice E. Dickman, CRR, CMR, CCR
                           Official Court Reporter
13                         Room 6523
                           333 Constitution Avenue, N.W.
14                         Washington, D.C.  20001

15

16

17

18

19

20

21

22

23

24

25