**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. Action No. 19-0018 (ABJ) |
| | ) | |
| ROGER J. STONE, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

Defendant Roger J. Stone has filed a motion seeking the Court's disqualification pursuant to 28 U.S.C. § 455(a). [Dkt. # 331] ("Def.'s Mot. for Judicial Disqualification"). Section 455(a) states: "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The purpose of section 455(a) is "to promote [public] confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *United States v. Microsoft Corp.*, 253 F.3d 34, 114 (D.C. Cir. 2001), quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988).

In assessing section 455(a) motions, the D.C. Circuit has applied an objective standard: "[r]ecusal is required when 'a reasonable and informed observer would question the judge's impartiality.'" *SEC v. Loving Spirit Found. Inc.*, 392 F.3d 486, 493 (D.C. Cir. 2004), quoting *Microsoft Corp.*, 253 F.3d at 114, *cert. denied*, 534 U.S. 952 (2001). "This standard requires that [the Court] take the perspective of a fully informed third-party observer who understand[s] all the relevant facts and has examined the record and the law." *United States v. Cordova*, 806 F.3d 1085, 1092 (D.C. Cir. 2015) (alteration in original) (internal quotation omitted). From this viewpoint,

"bald allegations of bias or prejudice" do not suffice. *Karim–Panahi v. U.S. Cong., Senate &*
*House of Representatives*, 105 Fed. Appx. 270, 275 (D.C. Cir. 2004).

Defendant contends that at his sentencing hearing on February 20, 2020, the Court made
statements that give rise to a reason to question its impartiality in connection with the pending
motion for new trial based on alleged juror misconduct. *See* [Dkt. # 313] ("Def.'s Mot. for New
Trial"). During a lengthy discussion, the Court addressed the statutory "need for the sentence
imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide
just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). The Court explained, among other
things, why defendant's lies to Congress mattered, and it observed:

> Sure, the defense is free to say: So what? Who cares? But, I'll say this:
> Congress cared. The United States Department of Justice and the United
> States Attorney's Office for the District of Columbia that prosecuted the
> case and is still prosecuting the case cared. The jurors who served with
> integrity under difficult circumstances cared. The American people cared.
> And I care.

Tr. of Sentencing, Feb. 20, 2020, at 88:4–9.[1]

The defense does not argue that the jurors did not "serve[] . . . under difficult
circumstances," but it complains that the Court's use of the words "with integrity" are
disqualifying because there is a pending motion for new trial with respect to a single juror, and the
hearing has not yet taken place. *See* Def.'s Motion for Judicial Disqualification at 3 ("The Court's
ardent conclusion of 'integrity' indicates an inability to reserve judgment on an issue which has
not yet been heard. Moreover, the categorical finding of integrity made before hearing the facts is
likely to lead a reasonably informed observer to question the District Judge's impartiality . . . .
The premature statement blessing 'the integrity of the jury' undermines the appearance of

---

1       The transcript has not been filed on the docket as of the time of entry of this order.

impartiality and presents a strong bias for recusal.") (internal quotation marks and citations omitted).

There are several reasons why recusal is not warranted.

First of all, the Court did not make any "finding" about the pending motion for a new trial, much less a "categorical" one. The motion raises questions concerning the completeness of one juror's responses during the jury selection process, and it speculates about exposure to prejudicial extra-record material during deliberations. *See generally* Def.'s Mot. for New Trial. But it does not include any allegations, or set out any facts, impugning the integrity of any other juror or jurors. The Court's very general comment that "jurors" served with integrity – three words on the 88th page of the 96-page transcript of a two-and-a-half-hour hearing – did not purport to, and did not, address the motion.

Second, to the extent the Court made a statement about the jurors that could be perceived as relating in some way to an issue raised by the pending motion, it was not the "extrajudicial" statement that is needed to support a motion such as the one filed in this case.

The Supreme Court has made it quite clear that to be disqualifying, "[t]he alleged bias and prejudice . . . must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see United States v. Barry*, 961 F.2d 260, 263 (D.C. Cir. 1992). This "extrajudicial source" doctrine applies to motions based on section 455(a); the Court has explained that judicial rulings by themselves "cannot possibly show reliance upon an extrajudicial source[,] and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . ." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Therefore, "opinions formed by the judge on the basis of facts introduced or events occurring in

the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.*   The Court stressed in *Liteky* that "recusal is required only if the judge's impartiality might *reasonably* be questioned," *id.* at 552 (emphasis in original), and it concluded that "to demand the sort of 'child-like innocence' that elimination of the 'extrajudicial source' limitation would require is not reasonable." *Id.*   In other words, judges cannot be "biased" and need not be disqualified if the views they express are based on what they learned while doing the job they were appointed to do.

The defendant quotes portions of sentences from *United States v. Microsoft Corp.*, but when one reviews the opinion, and the context of the defendant's selective excerpts, it becomes clear that the circumstances in this case do not bear the slightest resemblance to the ones that resulted in the removal of the judge in *Microsoft*. 253 F.3d at 107–18.  The Court of Appeals did find that the judge should have recused himself, but it explained:

> The problem . . . [was] not just what the District Judge said, but to whom he said it and when.  His crude characterizations of Microsoft, his frequent denigrations of Bill Gates, his mule trainer analogy as a reason for his remedy – all of these remarks and others might not have given rise to a violation of the Canons or of § 455(a) *had he uttered them from the bench* . . . .
>
> It is an altogether different matter when the statements are made outside the courtroom, in private meetings unknown to the parties, in anticipation that ultimately the Judge's remarks would be reported.  Rather than manifesting neutrality and impartiality, the reports of the interviews with the District Judge convey the impression of a judge posturing for posterity, trying to please the reporters with colorful analogies and observations bound to wind up in the stories they write.

*Id.* at 115 (internal citations omitted) (emphasis added).

Here, the defendant has not suggested that the Court said one word about him outside of the courtroom, or to anyone other than the parties, at any time.  Its characterization of the jurors'

service was voiced on the record, and it was entirely and fairly based on the Court's observations of the jurors in the courthouse; through the nine days of voir dire and trial, when they were uniformly punctual and attentive, and through their thoughtful communications with the Court during deliberation, *see* Notes from Jury [Dkt. # 256], and the delivery of the verdict.   The comment does not begin to suggest that the Court's impartiality has been compromised by extra-record information, or that the appearance of impartiality has been undermined by extrajudicial pronouncements.

Moreover, the record dating back to January of 2019 reflects that the Court took each issue raised by this defendant seriously; that on each occasion, it ruled with care and impartiality, laying out its reasoning in detail; and that it was scrupulous about ensuring his right to a fair trial.   It granted important evidentiary motions in his favor; it proposed utilizing a written questionnaire to ensure that the parties could receive more information than is usually available for jury selection; it struck 58 potential jurors for cause based on the defendant's motions or on its own motion; and it repeatedly resolved bond issues in his favor, even after he took to social media to intimidate the Court, after he violated conditions imposed by the Court, after he was convicted at trial, and after he was sentenced to a term of incarceration.   Moreover, at the sentencing hearing that forms the sole basis for the defendant's motion, the Court concluded, based in part on many considerations put forth by the defendant, that it was appropriate to vary from the applicable Advisory Sentencing Guideline Range.

Finally, it goes without saying that even if the Court had mentioned the defendant's motion for new trial, there would have been absolutely no prohibition against making an observation about a pending motion during an unrelated hearing in the case, even if briefing was still ongoing.   The motion was filed on February 14, almost a week before the sentencing, and like all motions, it was

supposed to "be accompanied by a statement of the specific points of law and authority that support the motion," as well as a statement of the relevant facts.  *See* LCrR 47(a).  The motion raised questions about a juror's written questionnaire and sworn answers during individual voir dire, and the Court could – and it is likely that the defense was of the view that the Court should – begin reviewing the matter and those materials as soon as it was filed, and after the opposition was filed. There is no rule and no case law that would justify the recusal of a judge for bias simply because he or she says something about an issue on the docket, on the record, at some point before a reply has been filed, or before a hearing – which may or may not be required in the Court's discretion – has concluded.  If parties could move to disqualify every judge who furrows his brow at one side or the other before ruling, the entire court system would come to a standstill.

At bottom, given the absence of any factual or legal support for the motion for disqualification, the pleading appears to be nothing more than an attempt to use the Court's docket to disseminate a statement for public consumption that has the words "judge" and "biased" in it.

For these reasons, defendant's motion is hereby **DENIED**.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE:  February 23, 2020