## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff, | 1:19-CR-00018 (ABJ) |
| v. | |
| ROGER JASON STONE, JR.,<br>Defendants. | FEBRUARY 20, 2020 |

### STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LIMITED PERMISSION TO INTERVENE

The proposed intervenor, Mr. Michael Cernovich, respectfully moves the Court for limited permission to intervene in this matter for the purpose of obtaining a juror's *voir dire* identification number and the written jury *voir dire* questionnaire answers that have been collected in this case. Mr. Cernovich seeks to obtain the juror *voir dire* identification number of ███████, who has publicly claimed that she was the jury foreperson in the above-captioned matter and whose public conduct has raised grave constitutional concerns regarding the fairness of the jury trial in the instant matter. In light of the grave constitutional concerns that ███████ conduct has raised, Mr. Cernovich also seeks to obtain the written jury *voir dire* questionnaire answers that have been collected in this case. He does not seek the name of any other juror at this juncture.

On February 12, 2020, ███████ identified herself as the jury foreperson in the case in a Facebook post. CNN subsequently broke the story of the jury foreperson's decision to identify herself. Mr. Cernovich's reporting was only possible because ███████ voluntarily chose to disclose her identity as the jury forewoman, thus enabling CNN to obtain her identity. Had CNN not broken this story, the public would remain in the dark as



to how the jury selection process works in federal cases, as well as in Mr. Stone's case particularly.

While Mr. Cernovich takes no position on whether Mr. Stone's rights to an impartial jury were violated, leading criminal defense attorneys and constitutional law scholars led by law professor Jonathan Turley have argued that Mr. Stone was not tried by a fair and impartial jury. *See* **Exhibit A.** In a manner consistent with the overall public attention in the instant case and buttressed by the voices of America's leading legal minds, the public has engaged in speculation about ▊ misled the Court about her ability to be fair and impartial.

Mr. Cernovich, as a journalist and a concerned citizen, respectfully requests the Court to allow him to exercise his right under the First Amendment to investigate ▊. ▊ conduct by obtaining ▊ juror identification number during *voir dire* and her written answers to the *voir dire* questionnaire that jurors were required to submit. *See* **Exhibit B**.

Finally, even though Mr. Stone has been sentenced, a motion to intervene is still procedurally appropriate in the instant case because Mr. Stone may either take a direct appeal from his conviction or file a motion for post-conviction relief under 28 U.S.C. § 2255 in the instant matter.

### STATEMENT OF FACTS

On November 15, 2019, the jury in this matter found Mr. Stone guilty of seven charges that all relate to highly controversial actions tied to President Donald J. Trump's campaign for the United States presidency. Dkt. No. 260. On February 2, 2020, CNN published a story stating that ▊ published a private Facebook post that it had

obtained identifying herself as a juror in Mr. Stone's case and stating that she supported the prosecutors. *See* **Exhibit C**. Initially, only CNN, its source, and Facebook possessed the post or any record of it because ▬ deleted this post and many of her other posts after she drew media scrutiny regarding whether she lied in her answers to the jury questionnaire. *Id*. However, it did not take long for the public to obtain copies and preserve it.

The post itself is innocent. *See* **Exhibit D**. It expresses support for the four federal prosecutors who tried Mr. Stone's case and commends them on a job well-done, which is undoubtedly speech protected by the First Amendment. *Id*.

However, ▬ past social media posts were anything but innocent and raise serious questions about whether she lied to the Court or, at best, was less than candid about the extent of her social media activities. Research regarding ▬ background showed that she had run for Congress as a Democrat and that she had posted extensive opinions on social media regarding events that bore directly on Mr. Stone's case, including a post where she retweeted another person's argument mocking individuals who considered Mr. Stone's arrest to be a show of excessive force on the part of the government. *See* **Exhibits E & F**. She referred to President Trump's supporters in another tweet as racists, knowing full well that Mr. Stone had supported President Trump's campaign for the presidency as well. *See* **Exhibit G**.

During her *voir dire* on the record, ▬ did not disclose to the Court that she was an avid critic of President Donald Trump and his supporters including Mr. Stone. She did not disclose that she specifically discussed Mr. Stone's arrest on social media as well as denounced all of President Trump's associates as being part of a criminal enterprise.

The Court specifically asked ▇ in the written *voire dire* questionnaire if she had opinions regarding the Special Counsel's office and work, Question 15-16, and whether she had written or posted anything for public consumption regarding the investigation into events surrounding the 2016 presidential election, question 23. *See* Dkt. 247. Upon information and belief ▇ did not disclose these important points in her answers to the written questionnaire either.

The proposed intervenor, Michael Cernovich, is a published constitutional law scholar, journalist, author, filmmaker who has been covering Mr. Stone's trial. *See* **Exhibit H – "Intervenor's Affidavit."** He has produced films including a recent one entitled "Hoaxed Movie," which contained a broad range of political perspectives. *Id*. After CNN identified ▇ as one of the jurors in Mr. Stone's trial and when CNN did not investigate ▇ social media, Mr. Cernovich himself investigated her social media and uncovered an extensive social media footprint as described above. *Id*.

## ARGUMENT

"While the Federal Rules of Civil Procedure explicitly allow for intervention, and describe the conditions under which a court may permit anyone to intervene, the Federal Rules of Criminal Procedure are silent on the topic." *United States v. Rand*, 2016 WL 6304488, at *1 (D. Nev. July 26, 2016). However, "the right to access criminal trials… plays an integral role in the administration of justice." *Stephens Media, LLC v. Eighth Judicial Dist. Court of State ex rel. County of Clark*, 125 Nev. 849, 859-860, 221 P.3d 1240, 1248 (Nev. 2009) (citing *Press-Enterprise Co. v. Superior Court of California, Riverside County*, 464 U.S. 501, 508 (1984)).

> Public access inherently promotes public scrutiny of the judicial process, which enhances both the fairness of criminal proceedings and the public

confidence in the criminal justice system.... Even if an individual does not attend a criminal proceeding, the fact that the public is free to attend enhances his or her confidence in the system by assuring that established procedures are followed.... Moreover, public participation derived from public access advances the quality and integrity of the judicial process.

*Id.* at 860 (internal citations omitted).

A journalist "often acts as a proxy for the public, advancing the public's understanding and awareness of the criminal justice system." *Id.* at 860 (citing *Press-Enterprise Co. v. Superior Court of California, Riverside County*, 464 U.S. 501, 508-09 (1984)). Consequently, courts have allowed journalists to raise freedom of the press concern under the First Amendment in criminal cases that they are not parties to. *See, e.g., United States v. Aref*, 533 F.3d 73, 82 (2d Cir. 2008) (holding "that a motion to intervene to assert the public's First Amendment right of access to criminal proceedings is proper); *Radio and Television News Ass'n of Southern California v. United States Dist. Court. Of Central Cal.*, 781 F.2d 1443, 1445 (9th Cir. 1986) (holding that a media organization had standing to intervene in a criminal case to challenge a gag order); *United States v. Loughner*, 807 F.Supp.2d 828, 830 (D. Ariz. May 25, 2011).

Furthermore, the First Amendment creates a presumptive right of access to a wide range of judicial proceedings including *voir dire. Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984); *see also Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978) ("[C]ourts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents"). The United States Supreme Court has established a two-factor test to govern whether a particular judicial proceeding is subject to the First Amendment presumption of access. *Press-Enterprise Co. v. Superior Court of California for Riverside County*, 478 U.S. 1, 8 (1986). The first factor is

"whether the place and process have historically been open to the press and the general public." *Id*. The second factor is "whether public access plays a significant positive role in the functioning of the particular process in question. *Id*.

First, the Supreme Court has long established the public's right to attend *voir dire* in multiple decisions. *Presley v. Georgia*, 558 U.S. 209, 212 (2010); *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984). These principles extend to jurors' written *voir dire* answers. If they did not, court could totally undermine both the Sixth Amendment right to a public trial and the First Amendment rights of journalists by conducting *voir dire* totally in writing and denying the public access to those written answers. The Supreme Court's holdings in *Presley* and *Press-Enterprise*, 464 U.S. 501 clearly preempt such a conclusion. Consequently, the Court should find that the public has a clear historical right to attend and view *voir dire* including written responses.

Second, public access plays a significantly positive role in ensuring the integrity of the *voir dire* process. The Court, the government, and Mr. Stone's defense team do not have the time, the resources, or the inclination to cull through thousands of social media posts to investigate the background of potential jurors. The collective public led by conscientious journalist and scholars such as Mr. Cernovich do. Consequently, the great benefit that the public can contribute to ensure the integrity of the *voir dire* process is to bring to the parties' attention inconsistencies and grave issues of concern that reflect on the parties' rights to due process and fair proceedings. The parties can then raise these concerns to the Court, thus safeguarding their constitutional rights.

███ sentiments prior to Mr. Stone's trial raise considerable questions of public interest regarding *voir dire* generally as well as in the context of this case. ███

███ conduct in concealing her true sentiments and her prior conduct in the face of direct questions from the Court may have perverted justice and deprived Mr. Stone of his right to a fair and impartial jury. The public has a constitutional right to know whether public trials are being conducted consistently with constitutional requirements. Mr. Cernovich's vigorous and conscientious journalism has raised significant questions as to whether Mr. Stone received a fair jury trial.

However, Mr. Cernovich, and the rest of the public, can only speculate right now as to the answer to the questions he has raised. Mr. Cernovich now seeks answers to his questions by attempting to obtain the written *voir dire* answers of the jurors in the instant case. He is constitutionally entitled to those written answers, and he respectfully requests the Court to grant his motion to intervene and obtain the questionnaires.

WHEREFORE, it is respectfully requested that the Court grant the proposed intervenor's motion.

THE PROPOSED INTERVENOR

By: /s/ Norman A. Pattis /s/

NORMAN A. PATTIS
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
T: (203) 393-3017
F: (203) 393-9745
npattis@pattislaw.com
Federal Bar No.: CT0013

## CERTIFICATE OF SERVICE

I hereby certify that on the date above a copy of the foregoing **STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LIMITED PERMISSION TO INTERVENE** and its accompanying exhibits was filed by mailing a copy to the Clerk's office and served by certified mail on the following counsel of record:

**J.P. Cooney**
U.S. Attorney's Office For The District Of Columbia
555 Fourth Street, NW
Washington, DC 20530
Tel: (202) 252-7281
Email: joseph.cooney@usdoj.gov

**John Crabb , Jr.**
U.S. Attorney's Office
555 Fourth Street, NW
Room 11-844
Washington, DC 20530
Tel: (202) 252-1794
Email: John.D.Crabb@usdoj.gov

**L. Peter Farkas**
Halloran Farkas & Kittila, LLP
1101 30th Street, NW
Suite 500
Washington, DC 20007
Tel: (202) 559-1700
Fax: (202) 257-2019
Email: pf@hfk.law

**Robert C Buschel**
Buschel & Gibbons, P.A.
One Financial Plaza
100 S.E. Third Avenue
Suite 1300
Ft. Lauderdale, FL 33394
Tel: (954) 530-5301
Email: buschel@bglaw-pa.com

**Bruce S. Rogow**
Law Office of Bruce S. Rogow, P.A.
100 NE 3rd Avenue, Suite 1000
Fort Lauderdale, FL 33301
Tel: (954) 767-8909
Fax: (954) 764-1530
Email: brogow@rogowlaw.com

**Grant J. Smith**
STRATEGYSMITH, P.A.
401 East Las Olas Boulevard, Suite 130-120
Fort Lauderdale, FL 33301
Tel: 954-328-9064
Email: gsmith@strategysmith.com

**Seth Ginsberg**
299 Broadway, Suite 1405
New York, NY 10007
Tel: 212-227-6655
Email: srginsberg@mac.com

**Tara A. Campion**
LAW OFFICE OF BRUCE S. ROGOW, P.A.
100 NE 3rd Avenue, Suite 1000
Fort Lauderdale, FL 33301
Tel: (954) 767-8909
Fax: (954) 764-1530
Email: tcampion@rogowlaw.com


/s/ Norman A. Pattis /s/
Norman A. Pattis, Esq.