# Exhibit A





# Juror ▓▓▓ in Roger Stone's case: Was justice undone?

BY JONATHAN TURLEY, OPINION CONTRIBUTOR — 02/15/20 10:30 AM EST
THE VIEWS EXPRESSED BY CONTRIBUTORS ARE THEIR OWN AND NOT THE VIEW OF THE HILL

**7,632** SHARES

## Just In...

**Pompeo promotes economic ties, takes aim at corruption in Africa visit**
INTERNATIONAL — 2M 51S AGO

**Russian sanctions will boomerang**
OPINION — 5M 13S AGO

**Malaysia says it will choose 5G partners based on own standards, not US recommendations**
TECHNOLOGY — 16M 4S AGO

**Redbox quietly rolls out free streaming service**
BLOG BRIEFING ROOM — 39M 8S AGO

**Russian foreign minister says he sensed 'more constructive' approach after meeting with Pompeo**
INTERNATIONAL — 46M 2S AGO

**States, cities rethink tax incentives after Amazon HQ2 backlash**
STATE WATCH — 50M 7S AGO

**Facebook white paper calls for 'new type of regulator' for the good of its business**
TECHNOLOGY — 55M 10S AGO

**The high school diploma dilemma**
OPINION — 1H 5M AGO



She was Juror No. ▓▓▓, and her examination by the federal court and counsel before the trial was anything but notable. And that is precisely the problem.

Juror ▓▓▓ now know, was ▓▓▓▓▓▓. Her identity would have remained publicly unknown except for a public statement she made after the Department of Justice (DOJ) rescinded its initial sentencing recommendation for Trump confidant Roger Stone. In the midst of the firestorm of allegations of political interference, ▓▓▓ disclosed that she was the foreperson on the Stone jury and gave a full-throated defense of the trial prosecutors: "It pains me to see the DOJ now interfere with the hard work of the prosecutors."

That statement led many people to Google her name, and what they found was a litany of postings not only hostile to President Trump and his administration but also specifically commenting on Stone and his arrest — before she ever appeared for jury duty.

I have previously written about how I believe that the DOJ was correct in its rejection of the absurdly high recommendation of seven to nine years in prison for Stone. However, there are legitimate questions that must still be addressed on how the Justice Department came to that decision. Yet while cable shows exhaustively cover that story, there is an equally serious question as to whether the conviction itself, rather than the sentencing recommendation, should be reevaluated.

**VIEW ALL**

**View Latest Opinions >>**

Related News    by   |

Desperate in Southern California: Darrell Issa's

Clarence Thomas breaks his silence in theaters

Find A Great Loan Rate
Sponsored | NerdWallet Personal Loans

The man absent from the State of The Union

▇ is a Democratic activist and critic of the Trump administration. She was the Memphis City Schools board president. Not surprisingly, given her political background (including a run for Congress), ▇ has been vocal in public on her views of Trump and his associates.

She referred to the President with a hashtag of "klanpresident" and spoke out against "Trump and the white supremacist racists." She posted about how she and others protested outside a Trump hotel and shouted, "Shame, shame, shame!" When profanities were projected on the Trump hotel, she exclaimed on Jan. 13, 2018, "Gotta love it." On March 24, 2019, she shared a Facebook post — no longer public — while calling attention to "the numerous indictments, guilty pleas, and convictions of people in 45's inner-circle."

More worrisome are her direct references to Stone, including a retweeted post, in January 2019, from Bakari Sellers, again raising racist associations and stating that "Roger Stone has y'all talking about reviewing use of force guidelines." She also described Trump supporters such as Stone as racists and Putin cronies.

In addition to her prior statements about Trump, his associates and this case, ▇ is a lawyer. That only magnifies concerns that any bias on her part may have had a more pronounced influence on her fellow jurors.

In fact, except for a jury pool composed entirely of House impeachment managers, ▇ would appear to be a standout for a peremptory challenge by the defense team over bias. That is why the most surprising aspect of this story is not the review of her public statements but the review of her examination before trial. The brief examination in the voir dire hearing shows that ▇ did disclose her ties to the Democratic Party. U.S. District Judge Amy Berman Jackson asked if ▇'s political history would prevent her from being fair, and ▇ assured her it would not.

While ▇'s answers on the jury questionnaire remain sealed, Judge Jackson noted, "You've also indicated a fair amount of paying attention to news and social media, including about political things?" ▇ does not volunteer that she did far more than "pay attention to news and social media" and was, in fact, an anti-Trump protester and social media critic.

Jackson seemed unaware of anything more than ▇'s following the news and asked if anything that ▇ saw would affect her views. ▇ again did not mention her protesting or public commentary and said she could not think of anything that would cause bias — "nothing that I can recall specifically. I do watch, sometimes paying attention but sometimes in the background, CNN. So, I recall just hearing about him being part of the campaign and some belief or reporting around interaction with the Russian probe and interaction with him and people in the country, but I don't have a whole lot of details. I don't pay that close attention or watch C-SPAN."

She never mentioned that she specifically discussed Stone's arrest and the objections to his treatment during that arrest as well as denouncing all of the associates of Trump as a virtual criminal enterprise.

Stone's counsel, Robert Buschel, also asked a few questions but was either entirely uninformed or utterly incompetent. Buschel only asked about ▇ being a Democrat who ran for Congress. The examination by the defense amounted to less than two pages and roughly 250 words of exchange with ▇ It seems most likely that Buschel did not have a clue about ▇ actual political activism and commentary.

That lack of knowledge is not surprising since multiple questions on the jury questionnaire allowed her to reveal her past protests and postings. For example, Question 30 asked whether she had any opinion about figures such Donald Trump. There also was Question 23 that asked whether she had "written or posted anything for public consumption about the defendant, the House Permanent Select Committee on Intelligence investigation into Russian interference in the 2016 presidential election, or the investigation conducted by Special Counsel **Robert Mueller**?" Questions 34 and 35 specifically ask about her prior knowledge or opinions of the Stone case, which she referenced on social media. It is hard to believe that she disclosed these public statements in her answer and was not questioned about them.

If this information was withheld by ▇, it raises a question about the veracity of her testimony and, more importantly, the fairness of the trial.

It certainly seems ▇ had no place on the Stone jury. The Supreme Court has repeatedly declared that the "minimal standards of due process" demand "a panel of impartial, indifferent jurors." ▇'s record suggests little that is impartial or indifferent. She was perfectly within her right to engage in such commentary and protests — but she had no right to sit in judgment of an associate of the president after her public declarations. Her participation raises serious arguments for setting aside the verdict, from the possibility of ineffective counsel to the denial of due process.

The burden now is on Judge Jackson to hold a hearing on this matter and address the possible need for a mistrial. And one thing will be clear: Judge Jackson, in the words of Juror No. ▇ does not "gotta love" any of this.

*Jonathan Turley is the Shapiro Professor of Public Interest Law for George Washington University and served as the last lead counsel during a Senate impeachment trial. He testified as a witness expert in the House Judiciary Committee hearing during the impeachment inquiry of President Trump.*

**TAGS   ROGER STONE   ROBERT MUELLER   DONALD TRUMP   ROGER STONE TRIAL   SOCIAL MEDIA**



**THE HILL 1625 K STREET, NW SUITE 900 WASHINGTON DC 20006 | 202-628-8500 TEL | 202-628-8503 FAX**
**THE CONTENTS OF THIS SITE ARE ©2020 CAPITOL HILL PUBLISHING CORP., A SUBSIDIARY OF NEWS COMMUNICATIONS, INC.**