IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Case 1:19-cr-00018-ABJ

UNITED STATES OF AMERICA,

v.

ROGER J. STONE, JR.,

   Defendant.

_____/

**DEFENDANT ROGER J. STONE'S *AMENDED*[1] MOTION FOR NEW TRIAL**
**(Juror Misconduct)**

Roger Stone requests this Court grant a motion for new trial based upon the arguments below, pursuant to Federal Rule of Criminal Procedure 33(b)(1).

## INTRODUCTION

Roger Stone was denied a fair trial as the result of juror misconduct that deprived him of his right to be tried by an impartial jury. The jury's foreperson concealed her explicit and implicit bias by failing to disclose her active anti-Stone and anti-Trump sentiment, evidenced by her multiple social media postings that directly reference her strong political bias and knowledge of the Stone prosecution in direct contradiction of her responses during voir dire. In addition, she actively discussed, on various social media platforms, alleged Russian interference in the 2016 election – the *raison d'etre* of both the "Mueller investigation" and the House Committee inquiry. In starkly partisan terms, her postings address, specifically, the arrest of Roger Stone, including at least one post on the day of Stone's arrest, and also include several subsequent to

---

[1] The version that we initially filed was not the intended version for filing. This amended version does not contain any substantive changes and, therefore, should not impact the government's responsive submission.

Stone's arrest and indictment. And, on the morning of the Stone verdict, she published posts signifying "success," which further reflect her pre-jury service bias.

None of the above was known to Stone until February 12, 2020, when Juror ▮ publicly disclosed her identity, and media outlets publicized her support for the prosecutors in the case. A comparison of her social media posts, on the one hand, and her responses to the jury questionnaire and the Court's questioning of her political disposition and its affect upon her ability to enable Stone to have a fair trial, on the other, makes it immediately apparent that Juror ▮ was not candid; rather, she misled the Court and Stone with plainly disingenuous answers. Had Roger Stone known about this juror's overwhelming explicit bias against him and Donald Trump, he would have moved to excuse this juror for cause, and, if necessary, exercised a peremptory challenge.

This juror was the foreperson of the jury. She is also a lawyer. Her leadership role as jury foreperson and her status as a lawyer, therefore, support a good faith belief both that she had great influence during deliberations[2] and that she understood the Court's instructions regarding her oath to be open and honest with the Court. She was not. Consequently, the Court empanelled a juror in violation of Stone's rights and Stone was thereby denied a fair trial. Accordingly, for the reasons more fully discussed below, Stone should be granted a new trial or, at the very least, this Court should grant an evidentiary hearing to explore the degree of the juror's deception and its impact on the integrity of the trial.

---

[2] Another juror wrote an opinion column for the *Washington Post* on Nov. 22, 2019, he referenced Juror ▮. "My favorite person on the jury was an African American woman from Tennessee."

## **MEMORANDUM IN SUPPORT OF NEW TRIAL**

**A.   The Court is Authorized to Consider the Motion for New Trial.**

"Federal Rule of Criminal Procedure 33(b)(1) permits a defendant to file a motion for new trial based upon newly discovered evidence "within 3 years after the verdict." The Court has jurisdiction to consider juror misconduct that is learned post-verdict under Rule 33(b)(1). *United States v. Richards*, 241 F.3d 335, 343 (3d Cir. 2001); *United States v. Gutierrez-Calderon*, 2019 WL 3859753, at *10 (D.V.I. Aug. 16, 2019); *United States v. Morrow*, 412 F. Supp. 2d 146, 152 (D.D.C. 2006).

The juror misconduct in this case is newly discovered evidence. Evidence is "newly discovered" when "(1) the evidence [. . .] has been discovered since the trial; (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) [it must be] of such nature that in a new trial it would probably produce an acquittal." *United States v. Davis*, 612 F. Supp. 2d 48, 51 (D.D.C. 2009), aff'd, 377 Fed. Appx. 19 (D.C. Cir. 2010) (citing *United States v. Johnson*, 519 F.3d 478, 487 (D.C. Cir.2008) (quoting *United States v. Lafayette*, 983 F.2d 1102, 1105 (D.C.Cir.1993)) (brackets in original)).

The evidence of the juror's explicit and inferred bias was not disclosed during jury selection. Indeed, we know now that her answers were equivocal, misleading, deceptive, evasive and fallacious. *See* composite Exhibit -- 1. The falsity of the juror's voir dire responses became known to Stone on February 12, 2020, when the juror publicly revealed her identity and her history of social media posts was disclosed. Prior to that date, there appear to have been viewing restrictions (and some remain) on Juror ▮▮▮'s social media posts.  Thus, even with the exercise

of due diligence, Stone could not have discovered Juror ▇▇▇'s bias prior to its recent disclosure.

Therefore, the evidence meets the requirement that it be newly discovered, as it was not known during the jury selection process or during trial, despite diligent efforts by Stone to uncover any such evidence. The evidence of the juror's bias similarly meets the requirement that it be material not merely cumulative, given that it is qualitatively different than the information available at the time of jury selection and that it would have had a direct impact on the composition of the jury.

The concealment of Juror ▇▇▇'s philosophical and political views are an attack at the heart of impartiality. No one knowing of her bias would permit this venire person to be empanelled as a juror. The Court should, therefore, find that this motion for new trial meets the requirements of Rule 33. *See id.*

**B.     Jurors Must Reveal Their Biases and Be Open and Honest in Jury Selection.**

Regardless of the crimes alleged, "[i]t was so written into our law as early as 1807 by Chief Justice Marshall in 1 Burr's Trial 416 (1807). 'The theory of the law is that a juror who has formed an opinion cannot be impartial.' *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (citations omitted).

"Voir dire plays a critical function in assuring the criminal defendant that his [constitutional] right to an impartial jury will be honored." *Morgan v. Illinois,* 504 U.S. 719, 729-30 (1992) (citing *Rosales-Lopez v. United States,* 451 U.S. 182, 188, 101 S. Ct. 1629, 1634, 68 L. Ed. 2d 22 (1981)). "It is well settled that the Sixth and Fourteenth Amendments guarantee a defendant on trial for his life the right to an impartial jury." *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988).

Challenges for cause permit rejection of jurors on a narrowly specified, provable, and legally cognizable basis of partiality. *Swain v. Alabama*, 380 U.S. 202, 220 (1965). "[A] trial court violates a defendant's right to an impartial jury if it erroneously denies a for-cause challenge to a biased venire member who ultimately sits on the jury." *Skilling v. United States*, 561 U.S. 358, 442 n. 8 (2010); *United States v. Martinez–Salazar,* 528 U.S. 304, 316 (2000) ("[T]he seating of any juror who should have been dismissed for cause ... would require reversal").

Bias is implied in "'extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances.'" *United States v. Sampson*, 820 F. Supp. 2d 151, 164 (D. Mass. 2011) (citing *Sanders v. Norris,* 529 F.3d 787, 792 (8th Cir. 2008) (quoting *Person v. Miller,* 854 F.2d 656, 664 (4th Cir.1988)); *see also Fields v. Brown,* 503 F.3d 755, 770 (9th Cir. 2007)).

"Inferable" or "inferred" bias exists "'when a juror discloses a fact that bespeaks a risk of partiality sufficiently significant to warrant granting the trial judge discretion to excuse the juror for cause, but not so great as to make mandatory a presumption of bias.'" *Sampson,* 820 F. Supp. 2d at 165-66. In such cases, further voir dire should be conducted to determine the depth of any bias. *See United States v. Littlejohn*, 489 F.3d 1335, 1343 (D.C. Cir. 2007).

In this case, this juror denied the Court and the parties a full and fair opportunity to explore the depths of her bias and her concomitant inability to serve as an impartial juror. Indeed, she instead appears to have chosen to act as an advocate for what she deems a higher political cause. She seems to have made a moral decision that it was appropriate to mislead the Court in order to enable her to use this trial as a means of exacting what she considered to be

social justice. As set forth below, her bias is evidenced throughout her social media postings, and, therefore, even without the need for a hearing, the Court can and should infer her bias against Stone.

In the months before the trial, Juror ▇ was a prolific "tweeter" (posts on Twitter) regarding investigations into Russian interference in the 2016 election and the Special Counsel's investigation. Consequently, the sheer number of her tweets and other social media posts on topics inextricably intertwined with this case renders utterly incredible her claim during voir dire that she could not remember if she posted on social media about this case or the related investigations. *See* Juror ▇, (questions 23, 27). In fact, on January 25, 2019, the very day of Stone's arrest in a pre-dawn raid in Florida in which she shared an article outlining his indictment with her caption – "Brought to you by the lock her up peanut gallery":



The article that the juror posted calls attention with significant detail to the number of indictments, guilty pleas, and convictions of people in President Trump's circle—prior to Stone's trial. Plainly, the above post is irreconcilable with the juror's answers during voir dire regarding her knowledge of the Stone case:

> So nothing that I can recall specifically. I do watch sometimes paying attention but sometimes in the background CNN. So I recall just hearing about him being part of the campaign and some belief or reporting around interaction with the Russian probe and interaction with him and people in the country, but I don't have a whole lot of details. I don't pay that close attention or watch C-SPAN.

T. 94.

In light of the above post on the day of Stone's arrest—combined with her numerous other related posts—her answer in voir dire constitutes a blatant assault on the integrity of jury selection. It also strains belief that she had no opinions about the people who might be witnesses in the case that would affect her ability to be fair and impartial. (*See* question 30). These facts alone warrant a new trial, particularly in light of her role as foreperson and her status as a lawyer.

But there are additional responses that are similarly impossible to credit in the face of her now revealed bias. For example, the Court asked this juror the following question: "And when we asked what you read or heard about the defendant, you do understand that he was involved in Mr. Trump's campaign in some way?" The Court continued, "Is there anything about that that affects your ability to judge him fairly and impartially sitting here now in this courtroom?" T. 94. In response, Juror ▬—having concealed her history of anti-Stone posts, which she was required to disclose in response to question 23—claimed that she could be fair. Plainly, the juror was not forthcoming with the Court.

In addition, when counsel for Stone questioned the juror about her political biases the following exchange occurred:

| | |
|---|---|
| MR. BUSCHEL: | The fact that you run for an office, you're affiliated with a political party. Roger Stone is affiliated with the Republican party, Donald Trump. You understand what I'm saying and getting at? |
| PROSPECTIVE JUROR: | I do. |
| MR. BUSCHEL: | How do you feel about that? |
| MR. KRAVIS: | Objection. |
| THE COURT: | Can you make that question a little bit more crisp? Is there anything about his affiliation with the Trump campaign and the Republican party in general that gives you |

>     any reason to pause or hesitate or think that
>     you couldn't fairly evaluate the evidence
>     against him?
> 
> PROSPECTIVE JUROR:    No.

Based upon this juror's political advocacy and her deliberate concealment of her strong negative views of Stone as a person connected to the Trump campaign, the above statement cannot be true. A sampling of her political views and advocacy—none of which was disclosed during jury selection and all of which demonstrates a deep involvement in politics—makes the point inescapable.

For example, in the post below, the juror retweeted in mocking terms the sentiment in the media that the arrest tactics at the FBI's predawn raid of Roger Stone's home were excessive and implied that neither he nor anyone else should complain because others are treated similarly or worse:



The following post from March 24, 2019 further demonstrates the falsity of her voir dire

9

answers regarding her knowledge of the Stone prosecution:



Link: https://twitter.com/

Now deleted Facebook post link:
https://www.facebook.com/

And these posts emphasize her strong distaste for Trump:





- Referred to Trump in social media posts with hashtag "klanpresident."



Correspondingly, the depth of her political alliance with forces opposing Trump is illustrated in the following posts:

11





Based upon the above posts, there can be little doubt that, if the juror had disclosed the extent of her political zealousness, she would not have been permitted to be a juror. In sum, we now know the following about Juror ▮:

- Juror ▮ is a lawyer;
- Juror ▮ was the foreperson of the jury;
- Juror ▮ posted before jury selection that Trump and his associates, like Stone, are racist and celebrated profanities written on the side of the Trump hotel in New York with the words, "Gotta Love It."

- Juror ▇ posted hours before the announced verdict in Stone's case - hearts, a fist pump, and fist raised (love, celebratory, and solidarity) emojis[3] coupled with a link to Facebook,[4] which demonstrates that, in her mind, she was putting up a fight and that she had succeeded in her quest to convict Stone:



From these social media posts, it is clear that she believes President Trump is a racist and that those associated with him are racist, too. She had definite opinions about the arrest of Roger Stone and that any expressed sympathy toward him is wasted in light of others who have been abused by overzealous law enforcement. And her twitter post shows that Juror ▇ celebrated the conviction of Stone. Moreover, Juror ▇ posted about the Stone trial before the start of day 2 of deliberations.[5]

---

[3] Raised Fist emoji is one of the hand gesture emojis, which looks like a fist, pointing up. This gesture in real life is associated with protests and support of someone or something – in these meanings it is used online as well. https://emojis.wiki/raised-fist/

[4] In light of the context of the numerous posts sampled in this motion and the attached composite Exhibit, it is fair to conclude that the link to a Facebook post was about the Stone trial. Thus, at the very least, an evidentiary hearing should be conducted to discover the substance of the since deleted or hidden post.

[5] A link to the article she posted has been posted but cannot be read.

14

Jurors must follow the instructions of the court.[6] Jurors who fail to follow the instructions of the court are committing a miscarriage of justice. A juror would be excused for cause if the juror were to admit that the juror did not follow court instructions. *Morgan v. Illinois*, 504 U.S. 719, 738 (1992). This juror failed to advise the Court that she is extremely partisan. The evidence strongly indicates that she was a "stealth juror," covering her bias to enable her to intrude into the trial process at the most fundamental level. That this juror is a lawyer and understands the importance of the Court's instructions and the duty of candor makes it all the more difficult to ignore, dismiss, or excuse her concealment of her strong bias against Stone. Her political posts demonstrate that she was actively reading news relating to Trump and presidential politics during trial, and almost undoubtedly also read about Stone, in violation of the Court's repeated orders. In addition, given her obvious failure to follow the Court's instructions in voir dire, a presumption arises that she failed to follow the Court's instructions in other instances, which would further undermine the integrity of the trial.

Accordingly, it is respectfully submitted that the Court should order a new trial on the ground that the verdict is unreliable, given the newly discovered bias of the jury foreperson.

---

[6] The Court repeated an instruction like this many times throughout the trial. "And when I tell you that you can't discuss the case, that also means that you must not use electronic devices, such as phones or computers, to communicate or talk about the case. You may not send an email or on instant message or text about it or write or <u>Tweet</u> about the case electronically through any blog, posting, chat room, instant message, or other communication, including social networking sites, such as <u>Facebook, Twitter</u>, LinkedIn, Instagram, Snapchat, YouTube, or anything that's been invented that I haven't heard of yet <u>until you have delivered your verdict and the case is over.</u> Do not send or accept any messages, including email and text messages, about your jury service. <u>You must not disclose your thoughts about your jury service</u> or ask for advice about how to decide the case. (Emphasis added). T. 255-56. In addition, The Court repeatedly told jurors do not watch related news reports. T. 258.

C.     **Alternatively, the Court Should Grant an Evidentiary Hearing with Juror ▮.**

Since Juror ▮ publicly identified herself on February 12, 2020, hyperlinks embedded in some of her social media posts have been "unlinked" or are "broken." Meaning, we cannot see the articles and related posts to which her comments were linked. It is, therefore, necessary, at a minimum to conduct an evidentiary hearing at which the Juror would be required to produce the entirety of her social media history during the relevant time period.

Furthermore, in addition to her own posts, Juror ▮'s twitter account indicates that the Juror follows several news outlets, including *Morning Joe, HuffPost, Washington Post, WSJ, NYT,* and *CNN*. A sampling of tweets from those outlets during the trial period indicate that the Juror may well have been following the Stone trial in media: *HuffPost* had no less than five that headlined Stone and *Washington Post* had no less than nine that headlined Stone. This means that if Juror ▮ was scrolling through her twitter feed—and the likelihood is great that she was because she was tweeting and posting—she was exposed to the posts by the news outlets she followed. Examples of what was posted during the trial that would have appeared in Juror ▮'s twitter feed is part of composite Exhibit 1. Moreover, given her blatant failure during voir dire to disclose her bias, the Court should not assume that the juror followed the Court's instructions throughout the trial regarding the need to avoid media reports related to this case and in regard to other issues.

An evidentiary hearing is, therefore, appropriate if the Court is not satisfied that the attached exhibits support Stone's position on a motion for new trial:

> The Supreme Court "has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips*, 455 U.S. 209, 215 . . . .
>
> We have also stated, however, that district courts should be reluctant "to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or

> extraneous influences," *United States v. Sun Myung Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983), because "post-verdict inquiries may lead to evil consequences: subjecting juries to harassment, inhibiting juryroom deliberations, burdening courts with meritless applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts." *United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989).
>
> Nevertheless, a trial court is required to hold a post-trial jury hearing when reasonable grounds for investigation exist. *Moon*, 718 F.2d at 1234. "Reasonable grounds are present when there is clear, strong, substantial and incontrovertible evidence, that a specific nonspeculative impropriety has occurred which could have prejudiced the trial defendant." *Id.* . . . Although prior cases are instructive in guiding our determination of what constitutes "clear, strong, substantial and incontrovertible evidence . . . each situation in this area is *sui generis*," *Moon*, 718 F.2d 1234, and the allegation need not be conclusive, *Ianniello*, 866 F.2d at 543.

*United States v. Vitale*, 459 F.3d 190, 197 (2d Cir. 2006) (emphasis supplied) (some elisions in quoted material) (holding that district court should have held a hearing where it was revealed that a juror had a relationship with prosecutor's husband).

The Court, at the very least, should conduct an evidentiary hearing ordering the Juror produce the documents associated with the links to her social media posts. *See United States v. Morrow*, 412 F. Supp. 2d 146, 152 (D.D.C. 2006). We recognize that the Court should be mindful of questioning that would infringe upon the confidentiality of deliberations, but the rules of evidence permit the inquiry that is sought here. *See id.* (citing Fed. R. Ev. 606(b)). This could be accomplished by having the Juror present to testify about all her social media postings set out in Exhibit 1 of this motion.

"A juror can testify about whether extraneous prejudicial information was improperly brought to the jury's attention." Fed. R. Evid. 606(b)(2)(A). *United States v. Guzman Loera*, 2019 WL 2869081, at *14 (E.D.N.Y. July 3, 2019) (citing *Loliscio v. Goord*, 263 F.3d 178, 186 (2d Cir. 2001) ("We then noted that although Federal Rule of Evidence 606(b) permits jurors to testify on the question whether extraneous prejudicial information was improperly brought to the

jury's attention, the juror may not go on to testify about the effect of that information on the juror's mental processes or the jury's deliberations.") (internal quotation marks, alterations, and citations omitted); *United States v. Sattar*, 395 F. Supp. 2d 66, 75 (S.D.N.Y. 2005) ("This exception is a narrow one, because even when a juror attests to outside information, 'the juror may not go on to testify about the effect of that information on the juror's mental processes or the jury's deliberations.' ") (quoting *Bibbins v. Dalsheim*, 21 F.3d 13, 17 (2d. Cir. 1994)).

"Prejudice is presumed on a Rule 33 motion when the jury is exposed to extra-record information." *Guzman Loera*, 2019 WL 2869081, at *14 (citing *United States v. Farhane*, 634 F.3d 127, 168 (2d Cir. 2011); *Remmer v. United States*, 347 U.S. 227, 229 (1954); *United States v. Greer*, 285 F.3d 158, 173 (2d Cir. 2002)). But that presumption can be rebutted by showing that the extra-record information was harmless. *Id.* (quoting *Bibbins v. Dalsheim*, 21 F.3d 13, 16 (2d Cir. 1994)).

Thus, in the absence of a new trial order, Juror ▬ should be called to present evidence about her lack of candor with the Court during jury selection and whether she shared extraneous information and her political agenda with the other jurors during the course of the trial, along with other related issues raised in this application.

## **CONCLUSION**

The Court should grant the motion for new trial based upon the arguments above. Alternatively, the Court should order an evidentiary hearing to include testimony from this juror.

Respectfully submitted,
By: */s/*_____

| | |
|---|---|
| ROBERT C. BUSCHEL | BRUCE S. ROGOW |
| BUSCHEL GIBBONS, P.A. | FL Bar No.: 067999 |
| D.D.C. Bar No. FL0039 | TARA A. CAMPION |
| One Financial Plaza, Suite 1300 | FL Bar: 90944 |
| 100 S.E. Third Avenue | BRUCE S. ROGOW, P.A. |
| Fort Lauderdale, FL 33394 | 100 N.E. Third Avenue, Ste. 1000 |
| Telephone: (954) 530-5301 | Fort Lauderdale, FL 33301 |
| Fax: (954) 320-6932 | Telephone: (954) 767-8909 |
| Buschel@BGlaw-pa.com | brogow@rogowlaw.com |
| | tcampion@rogowlaw.com |
| | *Admitted pro hac vice* |
| | |
| SETH GINSBERG | GRANT J. SMITH |
| 299 Broadway, Suite 1405 | STRATEGYSMITH, PA |
| New York, NY 10007 | D.D.C. Bar No.: FL0036 |
| Telephone: (212) 227-6655 | 401 East Las Olas Boulevard |
| *Admitted pro hac vice* | Suite 130-120 |
| | Fort Lauderdale, FL 33301 |
| | Telephone: (954) 328-9064 |
| | gsmith@strategysmith.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2020, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic filing.

*United States Attorney's Office for the District of Columbia*

John D. Crabb, DOJ

By: */s/ Robert Buschel*
ROBERT C. BUSCHEL