IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Case 1:19-cr-00018-ABJ

UNITED STATES OF AMERICA,

v.

**UNDER SEAL**

ROGER J. STONE, JR.,

    Defendant.

_____/

**DEFENDANT ROGER J. STONE'S REPLY IN SUPPORT OF
AMENDED MOTION FOR NEW TRIAL
(Juror Misconduct)**

Roger Stone files this Reply in support of his Motion for New Trial based on juror misconduct (the "Motion"), and in response to the government's arguments in opposition. The government mischaracterizes the Motion. The Motion is based on Juror ▬'s extremely misleading answers during voir dire that conceal not only her strong political bias, but her pre-trial knowledge of, and views about, Roger Stone and the charges against him.

The notion that any reasonable person would view this Juror as able to set aside her bias against Stone and serve as an impartial juror is impossible to reconcile with the evidence. As set forth in the Motion and discussed below, even a cursory comparison of her numerous social media posts with her answers during voir dire reveals that the Juror actively sought to conceal from the Court and the parties her clear bias against Stone, which, though rooted in her political views, stands separate and apart from simple political bias. Consequently, a new trial is warranted or, at a minimum, an evidentiary hearing should be held after Stone has had the ability to obtain all relevant discovery.

A. **The Standard for a New Trial Based on a Juror's False Answers in Voir Dire**.

There is a two-part showing to support a remedy for juror misstatements or nondisclosure: "[A] party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and, then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S. Ct. 845 (1984).

"Both of these elements must be satisfied because defendants are not entitled to a new trial 'based simply on whether a ... juror had lied, without respect to whether the dishonesty had a bearing on her impartiality.'" *United States v. Liu*, 69 F. Supp. 3d 374, 382 (S.D.N.Y. 2014) (citing *United States v. Langford,* 990 F.2d 65, 69 (2d Cir.1993) (elision in original)); *see also United States v. North*, 910 F.2d 843, 905 (D.C. Cir.) (holding that *McDonough* standard is applied in D.C. District), *opinion withdrawn and superseded in part on reh'g,* 920 F.2d 940 (D.C. Cir. 1990); *United States v. Morrow*, 412 F. Supp. 2d 146, 171 (D.D.C. 2006) (holding that Supreme Court requires the complaining party to show that the juror "failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause"); *Burton v. Johnson*, 948 F.2d 1150, 1158–59 (10th Cir. 1991) (holding that doubts regarding bias must be resolved against the juror); *United States v. Scott*, 854 F.2d 697, 699 (5th Cir. 1988) (holding that a juror may not conceal material facts regarding possible bias simply because he believes that he can be fair in spite of them, the determination is the function of the Court and the parties); *United States v. Mitchell*, 690 F.3d 137, 144 (3d Cir. 2012) (holding that, in line with most Courts of Appeals, certain jurors fall within categories such that, regardless of their stated impartiality, bias must be implied as a matter of law).

**B.    Counsel Can Presume a Juror Is Truthful During Jury Selection**.

"Jurors are presumed to follow their oath." *Pena-Rodriguez v. Colorado,* 137 S. Ct. 855, 868 (2017).  In *Williams v. Taylor*, 529 U.S. 420 (2000), a habeas proceeding involving, *inter alia*, a claim of juror bias, in response to the argument that the defendant's counsel was not diligent in discovering that the juror had been dishonest in voir dire or had failed to be forthcoming, the Supreme Court held that defense counsel is not obligated to scour public records to verify the accuracy of a prospective juror's disclosures:

> We should be surprised, to say the least, if a district court familiar with the standards of trial practice were to hold that in all cases diligent counsel must check public records containing personal information pertaining to each and every juror. Because of Stinnett and Woodson's silence, there was no basis for an investigation into Stinnett's marriage history. Section 2254(e)(2) does not apply to petitioner's related claims of juror bias and prosecutorial misconduct.

*Id.* at 443.  Indeed, "every juror ha[s] a duty to answer questions affecting his qualifications honestly."  *United States v. Moss*, 591 F.2d 428, 438 (8th Cir. 1979).  Any rule that would place the burden on the lawyers would render voir dire a useless tool or turn it into an unseemly interrogation.  *See Pena-Rodriguez,* 137 S. Ct. at 868 (citing *Tanner v. United States,* 483 U.S. 107, 107 S. Ct. 2739) ("To attempt to rid the jury of every irregularity of this sort would be to expose it to unrelenting scrutiny.")).

The bottom line is that "[c]ounsel is entitled to expect that when venire panel members take an oath to answer truthfully all questions put to them in voir dire, they will indeed tell the truth."  *Porter v. Zook*, 898 F.3d 408, 427 (4th Cir. 2018).

**C.    Juror ▮▮▮ Concealed Her Bias Against Roger Stone and Her Knowledge of the Charges Against Him and Thereby Denied Stone a Fair Trial**.

The evidence demonstrates that Juror ▇ deliberately concealed her bias against Stone and her knowledge of the case and, therefore, the Court should order a new trial. While the government would have the Court conclude (1) that Stone had sufficient information to raise a challenge for cause to Juror ▇'s presence on the jury; and (2) that the evidence supports nothing more than a finding that Juror ▇ harbors an acceptable level of political bias, both assertions are incorrect.

As an initial matter, we note that, as discussed above, the law is clear that Stone was entitled to rely on the veracity of Juror ▇'s answers to the questionnaire and in voir dire and did not have a duty to conduct an independent investigation. *See, e.g.*, *Williams*, 529 U.S. at 443; *Porter*, 898 F.3d at 427. Therefore, the government's argument regarding Stone's ability to seek court approval to conduct an independent investigation of the prospective jurors is without merit, as it is in direct opposition to the law on the issue. Simply because the existence of social media provides a greater opportunity to test a juror's veracity, and learn of expressed and inferred bias, does not mean that the burden falls upon counsel to conduct a searching investigation of public records to detect a juror's lack of candor in jury selection. Stone's post-trial discovery of Juror ▇'s anti-Stone bias does not, therefore, render the Motion untimely.

Indeed, Stone acted swiftly upon learning of the Juror's bias. Months after the verdict, Juror ▇ thrust herself into the public eye when she publicly expressed support for the four prosecutors who tried the case. Her statements caused members of the public to explore her social media posts, which led to the discovery of her anti-Stone bias, her pre-trial knowledge of the case, and her vehement anti-Trump bias. Upon discovery of that information, Stone promptly filed the Motion. Accordingly, the Motion is timely.

The government argues that Juror ▮'s disclosures in her answers to the questionnaire along with her oral responses in voir dire were sufficient to put the defense on notice of her bias. In support of its position, the government argues that, based on the type of news shows and media figures she follows, her political bias was clear. The government's argument in this regard ignores both the basis of the Motion and the patently misleading nature of the Juror's responses.[1]

As noted in the Motion, Juror ▮'s social media posts demonstrate that she was not forthcoming in her answers to the questionnaire or during voir dire. In response to a question asking whether she had "written or posted anything for public consumption about the defendant, the House Permanent Select Committee on Intelligence investigation into Russian interference in the 2016 presidential election, or the investigation conducted by Special Counsel Robert Mueller," Juror ▮ claimed that she "can't remember" but that she "*may* have shared *an* article on Facebook. Honestly not sure." (Emphasis supplied).

Question 23:

> If yes, please describe when and where you did so and the subject of your comments:
> I can't remember if I did, but I may have shared an article on Facebook. Honestly not sure.

Social media posts, however, reveal that answer to be patently incredible. First, the Juror failed to disclose her *numerous* posts related to most if not all of the topics mentioned in the question. And though she mentioned Facebook, she specifically failed to disclose that she frequently posted on Twitter in connection with Stone, the Special Counsel's investigation, and

---

[1] The government's argument begs the question whether it was able to discover the Juror's active social media bias against Stone prior to voir dire. If unable, its argument rings hollow. If it did discover the information, it raises a question as to why it did not bring the information to the attention of the Court and the defendant.

Trump, from the date of Stone's arrest on January 25, 2019 and continuing at least through August 2019, which was just weeks before she answered the questionnaire.

Second, it is impossible to credit her claimed lack of memory, given that (a) she "shared" *numerous* articles on relevant topics on Twitter, and (b) she not only shared articles about Stone's arrest and indictment, she did so with her own accompanying negative commentary. Thus, the notion that the Juror who posted an article detailing Stone's indictment—on the very day of his arrest—with the caption (which she appears to have written) "Brought to you by the lock her up peanut gallery"—simply could not recall whether she had posted an article on one of the topics in the question is implausible. The Juror also shared a post about Stone in connection with the circumstances of his arrest implying that Stone was not entitled to any sympathy in light of the use of force against people of color. Moreover, apart from the specific virulent posts related directly to Stone, the sheer volume of her social media postings on all of the relevant topics identified in the jury questionnaire belies the truthfulness of her answer. Indeed, the depth of her views is such that she chose to broadcast them repeatedly on social media to ensure the broadest possible dissemination.

Furthermore, contrary to the government's argument, the Juror's answers were not a product of "dutiful adherence to her obligations to be truthful." (Opp. at 1). They were a product of omissions and a lack of candor.

JUROR NUMBER: 

34. Have you formed or expressed any opinion about Mr. Stone, the charges in this case, or about his guilt or innocence in this case?

   Yes ___   No ✗

The conclusion is inescapable: Juror ▮ intentionally withheld critical information

from the Court and the parties that would have provided a valid challenge for cause. That she may have believed that she could set her bias aside does not excuse her failure to disclose the sought after information. The decision was for the Court and the parties to make, not Juror ▮. *Scott*, 854 F.2d at 699. Indeed, this principle has deep roots in our jurisprudence:

> Presumed bias dates back in this country at least to Aaron Burr's trial for treason, where Chief Justice Marshall, riding circuit, noted that an individual under the influence of personal prejudice "is presumed to have a bias on his mind which will prevent an impartial decision of the case, according to the testimony." Marshall explained, "He may declare that notwithstanding these prejudices he is determined to listen to the evidence, and be governed by it; but the law will not trust him." *United States v. Burr*, 25 F. Cas. 49, 50 (D.Va.1807) (emphasis added).

*Dyer v. Calderon*, 151 F.3d 970, 984 (9th 1998) (presuming bias where juror concealed that her brother was victim of similar crime). Moreover, the Juror's status as a lawyer makes it all the more difficult to ignore her decision to withhold critical information, as she is presumably familiar with her ethical obligation of candor with the Court.

Based upon the undisputed facts set forth above, it is troubling that the government is willing to overlook conduct that blatantly undermines the integrity of the judicial process. As the government poignantly stated in its Supplemental and Amended Sentencing Memorandum, "the prosecutor 'is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.'" Gov. Mem. at 1 (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). There is no way to reconcile Juror ▮'s conduct with the imperative that justice shall be done.

Consequently, given that Juror ▮ omitted crucial details and failed to disclose her strong bias against the Defendant, a new trial should be ordered because Stone was deprived of information that would have supported a challenge for cause.

7

## D. Juror Bias Based on Political Affiliation can be Grounds for a Juror to be Excused for Cause.

In addition to Juror ▮'s undisclosed bias against Stone himself, Juror ▮ also failed to disclose that she holds political bias against President Trump and his political associates—of which Stone is one—to a degree that renders impartiality impossible. The government downplays political bias of a juror as having no consequence on a juror's ability to be fair and impartial. Political bias is like any other bias; it can affect impartiality whether or not someone believes it to be so. In this case, the depth of the Juror's political bias, as evidenced in her social media postings, is extreme to a degree such that no rational person viewing the matter objectively could have confidence in the juror's ability to be impartial in this case.

The Supreme Court has recognized that questioning a potential juror about political affiliation may be appropriate where preliminary questioning indicates that the juror "might, or possibly would, be influenced in giving a verdict by his political surroundings." *United States v. Chapin*, 515 F.2d 1274, 1290 (D.C. Cir. 1975) (citing *Connors v. United States*, 158 U.S. 408, 415 (1895)); *see McCabe v. Macaulay*, No. C05-0073, 2008 WL 11509464, at *5 (N.D. Iowa May 8, 2008) (discussing *Connors* and *Chapin*, and stating that in the case before it involving political overtones, whether or not a prospective juror is a "supporter" of President Bush or otherwise active in partisan politics, may be reasonably related to how he or she would perceive the facts presented at trial); *United States v. Campbell*, 845 F.2d 782, 786 (8th Cir. 1988) (where case focused on the 1986 campaign on November election, district court justifiably concerned that residents and others closely associated with them might be predisposed in their views of the case; the court's experience with the strength of partisan feelings in the county reinforced this concern; court questioned and excluded juror because his parents-in-law knew defendant and had

worked for him in campaign, and court knew that partisan feelings in the county ran high; court concerned that any of these factors might affect the juror's impartiality).

In certain cases, political views can affect how a juror may perceive the facts presented and may influence his or her verdict. The government argues that this Juror's answers were consistent with her Twitter posts.  They were not.  Her answers lacked candor and were inconsistent with her Twitter posts.  Moreover, she concealed from the Court and the parties her use of Twitter to post her strong political views.

Consequently, neither the Court nor the parties were aware that her Twitter posts included opinions and commentary, not just about Stone himself, but also about Trump and his associates in which the Juror equated support of Trump with being racist.  Given that the Juror plainly sees Stone as an associate of Trump's, she undoubtedly deems Stone to be racist.  *See Pena-Rodriguez,* 137 S. Ct. at 870 (finding that knowledge of a juror's adoption of a racial stereotype is a ground for a new trial).  The Juror also posted extensively about claims of Russian interference in the 2016 election, the Special Counsel's investigation regarding those claims, and her support of the Special Counsel and disdain for Trump and his associates, including Stone.

Under the circumstances of this case, the Juror's previously undisclosed fervent bias against Trump and, by extension, Stone, places this Juror in a category of people who, as a matter of law, must be deemed biased. *Mitchell*, 690 F.3d 137, 144 (3d Cir. 2012).  Accordingly, had this Juror's deep political bias been known to the Court and the parties, this Juror would certainly have been removed for cause.  Because she deliberately concealed her bias, the Court allowed her to be seated and, as a result, a biased juror became the foreperson.  A new trial is, therefore, required. *United States v. Martinez–Salazar,* 528 U.S. 304, 316 (2000) ("[T]he seating of any juror who should have been dismissed for cause ... would require reversal").

E. **Other Jurors Removed for Cause on the Government's Motion Demonstrate that, Had the Court Known of Juror ▆▆▆'s Bias, She Would Have Been Dismissed for Cause**.

Comparing some of the government's cause challenges that were granted by the Court illustrate that had the Court known about Juror ▆▆▆'s social media posts, the Court would have removed her for cause:

JUROR NUMBER: ▆▆▆▆▆▆

30. Please indicate if you already have an opinion about any of those individuals, or if the fact that they may be involved in the case would make it difficult for you to be fair and impartial to both sides?

*I believe Donald Trump conspired with Russian agents to rig the 2016 election. Then I believe Roger Stone is a bagman and will recieve a Pardon should the jury find him guilty.*

Juror ▆▆▆

56. Is there anything about this case, the issues, or the people involved in this case, or any other reason that has not be been asked about in any other question, that leads you to believe that you could not be completely fair to both the defendant, Roger Stone, and the U.S. Government in this case?

Yes X   No ___

*I am strongly opposed to President Trump. I am concerned that his cohort of associates reflect his same immorality.*

Juror ▮

27. Have you read or heard anything about the defendant Roger Stone, about any statements made by or attributed to Mr. Stone, or about this case? If so, please describe what you have read or heard and the source of the information.

_Yes. Mr. Stone is a needy man with no moral compass. He has a complete disregard for the Constitution._

30. Please indicate if you already have an opinion about any of those individuals, or if the fact that they may be involved in the case would make it difficult for you to be fair and impartial to both sides?

_Yes. I have a strong opinion that Mr. Stone is an evil man_

Juror ▮

56. Is there anything about this case, the issues, or the people involved in this case, or any other reason that has not be been asked about in any other question, that leads you to believe that you could not be completely fair to both the defendant, Roger Stone, and the U.S. Government in this case?

Yes ✓  No ___

_My political beliefs and opinions, I am not sure I could be objective._

Juror ▇

23. Have you written or posted anything for public consumption about the defendant, the House Permanent Select Committee on Intelligence investigation into Russian interference in the 2016 presidential election, or the investigation conducted by Special Counsel Robert Mueller?

[For purposes of this question, writing "for public consumption" includes blog posts, articles, or posts on internet sites that are accessible to the general public.]

Yes ✓   No ___

If yes, please describe when and where you did so and the subject of your comments:

*I'm sure I've posted comments on the Mueller Investigations on Twitter. Can't recall what.  Likely supportive of the investigation.*

9

30. Please indicate if you already have an opinion about any of those individuals, or if the fact that they may be involved in the case would make it difficult for you to be fair and impartial to both sides?

*I have opinions on Assange, Bannon, Clinton, Gates, Manafort, Podesta, Prince, and Trump. I don't think it would impede my impartiality.*

34. Have you formed or expressed any opinion about Mr. Stone, the charges in this case, or about his guilt or innocence in this case?

Yes ___   No ✓ *(although old Twitter posts should be reviewed).*

Based upon the questionnaire responses, there can be little doubt that if Juror ▇ had disclosed her tweets and revealed the extent of her political zealousness, she would not have been permitted to be a juror. In her social media posts, she declares President Trump a racist and that those associated with him are racist, too: "Co-signing and defending a racist and his racist rhetoric makes you racist. Point blank." Exhibit 1. As illustrated above, Juror ▇ also has

12

definite opinions about the arrest of Roger Stone and that any expressed sympathy toward him is wasted in light of others who have been abused by overzealous law enforcement.

Consequently, the Court should order a new trial, given that, when compared with other potential jurors who were excused for cause, there can be little doubt that had the Court been aware of Juror ▮▮▮▮'s anti-Stone and anti-Trump social media posts, the Court would have excused her for cause.

**F.  The Court Should Grant an Evidentiary Hearing**.

*United States v. Boney*, 977 F.2d 624 (D.C. Cir. 1992) held that the district court erred in not granting an evidentiary hearing where the juror failed to disclose his felony status. The court explained:

> Even though the Sixth Amendment does not require automatic reversal, there is still the question whether appellants were entitled to a hearing to determine whether the juror was in fact biased. Although the discovery of the juror's felon status does not by itself require a new trial, we <u>think the juror's failure to disclose his status in response to the *voir dire* examination presents serious added concerns. After all, lying or failing to disclose relevant information during *voir dire* itself raises substantial questions about the juror's possible bias</u>. While refusing to adopt a *per se* rule requiring a new trial in *United States v. North*, 910 F.2d 843 (D.C.Cir.1990), *cert. denied*, U.S. 111 S. Ct. 2235, 114 L.Ed.2d 477 (1991), **we recognized the seriousness of a juror's deliberate concealment of relevant information during *voir dire***.
>
> ****
>
> We do not now hold that any false statement or deliberate concealment by a juror necessitates an evidentiary hearing. But we believe that a juror's refusal to admit his felony status is particularly troublesome. Unlike some information sought in *voir dire*, a question about felon status would strike the average juror as extremely serious and sensitive. Lying about a factor as important (and as easy to verify through public records) as felon status **raises at least the inference that the juror had an undue desire to participate in a specific case, perhaps because of partiality. Because the record provides no evidence that the motivation**

> **for the lie was unrelated to bias in this case, it was an abuse of discretion under these facts for the trial judge not to have held an evidentiary hearing**.
>
> We therefore remand this case for the district court to hold an evidentiary hearing to determine whether the juror's failure to disclose his felon status resulted in actual bias to the appellants.

*Id.* at 634–35 (footnote omitted; emphasis added); *see also United States v. White*, 116 F.3d 903, 929 (D.C. Cir. 1997) (holding that, if juror is shown to have lied during voir dire, a hearing ordinarily is required to determine whether the lie resulted in prejudice); *United States v. Wilkerson*, 656 F. Supp. 2d 11, 15 (D.D.C. 2009) (finding that, generally, the remedy for alleged jury misconduct or bias is a hearing to determine if prejudice occurred).

It is the "undue desire to participate in a specific case" that forces the conclusion that this Juror wanted to accomplish a specific agenda. *Boney, supra* at 634. Accordingly, at the very least, the Court should conduct a hearing to investigate the serious issues raised in the Motion.

In advance of any hearing, Stone requests that he be provided the opportunity to obtain meaningful discovery from Juror ▮▮▮ including all of her Facebook posts, which are "private" and unreviewable, and any non-public posts on Twitter or any other social media platform. In addition, the Juror should be required to disclose whether, during any relevant time period, she has been "friends" with, or otherwise follows or is followed by, any other juror on this case on any social media platform.

As noted in the Motion, Juror ▮▮▮'s Twitter post on the day of the verdict gives rise to a concern that she may have prematurely celebrated the conviction of Stone, which is something that should be explored at a hearing. Social media provides the opportunity for courts to learn more about prospective jurors. Courts should become more sensitive to juror misconduct employing social media as a mechanism. *See United States v. Fumo*, 655 F.3d 288, 332 (3d Cir.

2011), *as amended* (Sept. 15, 2011) (citing David P. Goldstein, *The Appearance of Impropriety and Jurors on Social Networking Sites: Rebooting the Way Courts Deal with Juror Misconduct,* 24 Geo. J. Legal Ethics 589 (2011)).

## **CONCLUSION**

The Court should grant the motion for new trial. Alternatively, the Court should order an evidentiary hearing to include testimony and production from Juror ▮ and perhaps others.

Respectfully submitted,  
By: */s/*_____

| | |
|---|---|
| ROBERT C. BUSCHEL | BRUCE S. ROGOW |
| BUSCHEL GIBBONS, P.A. | FL Bar No.: 067999 |
| D.D.C. Bar No. FL0039 | TARA A. CAMPION |
| One Financial Plaza, Suite 1300 | FL Bar: 90944 |
| 100 S.E. Third Avenue | BRUCE S. ROGOW, P.A. |
| Fort Lauderdale, FL 33394 | 100 N.E. Third Avenue, Ste. 1000 |
| Telephone: (954) 530-5301 | Fort Lauderdale, FL 33301 |
| Fax: (954) 320-6932 | Telephone: (954) 767-8909 |
| Buschel@BGlaw-pa.com | brogow@rogowlaw.com |
| | tcampion@rogowlaw.com |
| | *Admitted pro hac vice* |
| | |
| SETH GINSBERG | GRANT J. SMITH |
| N.Y. Bar No. 2628444 | STRATEGYSMITH, PA |
| 299 Broadway, Suite 1405 | D.D.C. Bar No.: FL0036 |
| New York, NY 10007 | 401 East Las Olas Boulevard |
| Telephone: (212) 227-6655 | Suite 130-120 |
| *Admitted pro hac vice* | Fort Lauderdale, FL 33301 |
| | Telephone: (954) 328-9064 |
| | gsmith@strategysmith.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2020, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic filing.

*United States Attorney's Office for the*  
 *District of Columbia*

 John D. Crabb, DOJ  
 JD Cooney, DOJ

By: */s/ Robert Buschel*  
ROBERT C. BUSCHEL

16