UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 19-cr-18-ABJ |
| ROGER J. STONE, JR., | (Filed Under Seal) |
| Defendant. | |

**SURREPLY TO DEFENDANT ROGER J. STONE'S
REPLY IN SUPPORT OF AMENDED MOTION FOR NEW TRIAL**

The defendant's reply again claims—without support and in contravention of the clear record before the Court—that Juror ▇▇ was untruthful during voir dire. In making such a bald allegation, the defense obscures the inconvenient truth that Juror ▇▇'s questionnaire and voir dire transcript establish that she forthrightly disclosed her prior knowledge of the defendant, her news sources and social media usage, and even her own political affiliation—subjects about which the defense could have probed further during voir dire, but chose not to. Having fulfilled their civic obligation, no juror should be subjected to an invasive factual inquiry of their First Amendment activity based on allegations as unsupported and scurrilous as those leveled by the defense. The ramifications of doing so are evident from the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Because the defense is unable to muster any factual or legal support for a new trial, the motion should be denied without an evidentiary hearing. And on this record, the Court would be justified in doing so on the papers.

**I.   Juror ▇▇ gave truthful and complete answers in voir dire, arming the defense with sufficient information to explore her ability to be impartial.**

First, the defendant repeatedly alleges (at 3-7) that Juror ▇▇'s social media posts demonstrate that she misled the Court about her knowledge of the facts of the case and her political

views—but he then offers no examples of social media posts supporting this bald claim. The defense's conclusory allegations try to obscure that Juror ▇ disclosed—and that the defense was fully aware—that Juror ▇ followed investigations of Russian interference in the 2016 election "somewhat closely" (p. 10, Question 25); that she knew that "Mr. Stone is accused of inappropriate contact (sic) Russian officials in the effort of helping Mr. Trump's campaign for President" (p. 11, Question 27); that she "may have shared an article on Facebook" about investigations into Russian interference in the 2016 campaign (p. 9, Question 23); and that she held "opinions about some of the official people" listed on the questionnaire (p. 13, Question 30). Armed with that information, the defense could have asked any number of follow up questions, such as:

- What do you mean when you say you followed investigations of Russian interference in the 2016 election somewhat closely?

- Where did you hear that Mr. Stone is accused of inappropriate contact with Russian officials to help Mr. Trump's campaign for President?

- Why do you say that you might have shared an article on Facebook about investigations into Russian interference in the 2016 election?

- Are there any particular groups on Facebook with which you might have shared such an article?

- How often do the articles you post on Facebook relate to political issues or the President's views on policy?

- Who are the people on the list in the questionnaire about whom you have formed opinions?

These are all questions that the defense could have asked based on Juror ▇'s truthful disclosures, but the defense opted not to do so. Having possessed the requisite information and ability to ask questions eliciting more information about the depth and strength of Juror ▇'s viewpoints, it cannot now claim that Juror ▇ hid anything from it.

2

Second, the defense contends (at 10-13) that comparing Juror ▮ to jurors struck for cause upon Government request shows that, had the Court known about Juror ▮'s social media posts, Juror ▮ would have been struck for cause. Holding aside the fact that the defense is not entitled to relief on that score because Juror ▮ did not conceal information, all but one of the successful for-cause challenges to which the defense attempts comparison involve jurors who explicitly stated that they could not be fair and that they already had formed opinions about the defendant. *E.g.*, Juror ▮ (writing, "I believe Roger Stone is a bagman and will receive a pardon should the jury find him guilty"); Juror ▮ (writing, "my political beliefs and opinions, I am not sure I could be objective"); Juror ▮ (expressing concern over whether juror could be fair and writing, "I am strongly opposed to President Trump. I am concerned that his cohort of associates reflect his same immorality"); Juror ▮ (representing that his "strong opinion that Mr. Stone is an evil man" would make it difficult to be fair and impartial). In contrast to any of those potential jurors, Juror ▮ repeatedly affirmed her ability to be fair and impartial and demonstrated no implicit bias against the defendant in her responses to the questions posed on the questionnaire and in voir dire. The defense's efforts to impute the reasoning underlying these for-cause strikes to Juror ▮ requires the wrongheaded leap that holding a different political viewpoint from the President and the defendant automatically renders a juror incapable of impartiality.

The defense tries to draw a more specific comparison (at 12) with Juror ▮ who represented that he could be impartial, while also disclosing that he had "posted comments on the Mueller Investigation on Twitter" (p. 9, Question 23) and that he had "opinions on Assange, Bannon, Clinton, Gates, Manafort, Podesta, Prince, and Trump" (p. 13, Question 30). By citing these selective portions of Juror ▮'s questionnaire, the defense insinuates that the juror was struck for cause for having posted on social media and having opinions about the individuals

above, and that the Court would thus likewise have struck Juror ▮ had the Court been aware of the details of her social media posts and "opinions about some of the official people" listed on the questionnaire (p. 13, Question 30). What the defense fails to apprise the Court of, however, is that Juror ▮ also wrote on his questionnaire: "I am moving out of DC to VA at the end of September 2019. Therefore, I will not be eligible to serve on this jury" (p. 18, Question 53). The Government did not move to strike Juror ▮ because of his social media posts or opinions, but rather because he was not available to serve. In sum, the defendant has provided no support for his contention that, had the Court known all of the details of Juror ▮'s social media posts or personal opinions, she would have been removed for cause.

> **II.     Neither Juror ▮ nor any other juror should be subjected to additional questioning in an evidentiary hearing.**

The defense's request for an evidentiary hearing is unsupported by the factual record and underlying law. Importantly, the question presented by the defendant's motion is not whether juror misconduct influenced the jury's verdict, but rather whether there was any juror misconduct at all. The D.C. Circuit has made clear that, in such a circumstance, a hearing is not necessarily required. In *United States v. White*, 116 F.3d 903, 929 (D.C. Cir. 1997), the Circuit explained:

> The issue here is not whether improper contact or a lie during voir dire resulted in prejudice but whether such a contact or lie occurred at all. A hearing is not always required to determine the factual underpinning of a juror misconduct claim, as opposed to the prejudicial effect of uncontested misconduct.
>
> Instead, the court has broad discretion in deciding how to investigate such a claim. Among the factors it should consider are the strength and seriousness of the allegations.

*Id.* (citing *United States v. Caldwell*, 776 F.2d 989, 998-99 (11th Cir. 1985)). Under *White*, district courts should deploy a sliding scale to evaluate the necessity of a hearing when determining whether juror misconduct occurred at all—*i.e.*, whether a "lie occurred at all." 116 F.3d at 929; *see also Caldwell*, 776 F.2d at 998 ("The more speculative or unsubstantiated the allegation of

4

misconduct, the less the burden to investigate."); *United States v. Wilkerson*, 656 F. Supp. 2d 11, 16 (D.D.C. 2009) (same).

Deploying this sliding scale, the defendant does not come close to justifying an evidentiary hearing. Without evidence, the defense accuses (Opening Br. at 2-3, 6) Juror ▮ of not being "candid," being "utterly incredible," and providing answers that were "equivocal, misleading, deceptive, evasive, and fallacious." Saying these things does not make them so, and certainly does not warrant the defense's intrusive and overbroad discovery requests (at 14) for "all of her Facebook posts . . . and any non-public posts on Twitter or any other social media platform." As set forth in the Government's opposition pleading (at 2-9), Juror ▮ was completely accurate and honest in response to the questions posed in the questionnaire and during individualized voir dire. "With no evidence of dishonesty, there [is] no need for the district court to examine the issue further." *White*, 116 F.3d at 930.

Further, as to the defendant's other misconduct allegations—*i.e.*, that the juror tweeted about the case during trial and disregarded the Court's instruction not to read about the case—those claims are beyond speculative. In fact, the only extant evidence demonstrates that Juror ▮ followed the Court's instructions, as revealed by her non-case-specific tweets during the trial and the existence of other tweets with broken Facebook links. The flaw in the defense's contrary argument is revealed by the piggybacking in which it must engage to suggest that the juror did read media reports—*i.e.*, arguing that Juror ▮ must have violated the Court's instructions on reading and communicating about the case because she lied in voir dire. But Juror ▮ did not in any shape or form fail to disclose her views. Juror ▮ did not hide any anti-Trump sentiments and she admitted that she "may have shared an article on Facebook" about the defendant. Certainly, the defendant's unsupported speculation cannot be used to subvert the tried-and-true

5

presumption that jurors follow the Court's instructions. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987) ("[J]uries are presumed to follow their instructions.").

Unsupported, hyperbolic, scurrilous allegations about a civic-minded juror should not be rewarded with a fishing expedition. Rewarding the defense's specious claims with an evidentiary hearing sends future jurors the wrong message. Even the most civic-minded of potential jurors will resist service if their social media can be forcibly disgorged based on allegations as flimsy as those peddled by the defense. Jurors should not be subject to harassment and "beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict." *Tanner v. United States*, 483 U.S. 107, 119 (1987). That is especially so here, where the defense request for a hearing is premised on a juror's lawful First Amendment activities, and where the ramifications of such a review are on full display as a result of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Both the law and discretion mitigate against an evidentiary hearing.

### III. Conclusion

The defendant's allegations that Juror ▮▮ misled the Court during voir dire and failed to comply with this Court's orders are not supported by any facts whatsoever—in fact, they are objectively rebutted by the record. Such unsupported and scurrilous allegations should not be rewarded with a fishing expedition. The Court should reject the defendant's request for an evidentiary hearing and deny his new trial motion.

                                              Respectfully submitted,

                                              TIMOTHY J. SHEA
                                              D.C. Bar #437437
                                              United States Attorney for the
                                              District of Columbia

By: */s/ J.P. Cooney*
J.P. COONEY, D.C. Bar #494026
Assistant United States Attorney
Chief, Fraud & Public Corruption Section

*/s/ John D. Crabb*
JOHN D. CRABB JR., N.Y. Bar #2367670
Assistant United States Attorney
Acting Chief, Criminal Division

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing sealed pleading was served via email to counsel for the defendant, Roger J. Stone, on February 25, 2020.

*/s/ J.P. Cooney*
J.P. COONEY, D.C. Bar No. 494026
Assistant United States Attorney
Chief, Fraud & Public Corruption Section