APPEAL,CAT B,CLOSED

# U.S. District Court
## District of Columbia (Washington, DC)
## CRIMINAL DOCKET FOR CASE #: 1:19−cr−00018−ABJ−1
### *Internal Use Only*

Case title: USA v. STONE                     Date Filed: 01/24/2019

Assigned to: Judge Amy Berman
Jackson

Appeals court case number: 19−3012

**Defendant (1)**

**ROGER JASON STONE, JR.**        represented by  **L. Peter Farkas**
HALLORAN FARKAS & KITTILA LLP
1101 30th Street, NW
Suite 500
Washington, DC 20007
(202) 559−1700 ext 102
Fax: (202) 257−2019
Email: pf@hfk.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Paul Douglas Kamenar**
LAW OFFICE OF PAUL D. KAMENAR
1629 K Street, NW
Suite 300
Washington, DC 20006
(202) 603−5397
Fax: (202) 588−0386
Email: paul.kamenar@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Robert C Buschel**
BUSCHEL & GIBBONS, P.A.
One Financial Plaza
100 S.E. Third Avenue
Suite 1300
Ft. Lauderdale, FL 33394
(954) 530−5301
Email: buschel@bglaw−pa.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Bruce S. Rogow**
LAW OFFICE OF BRUCE S. ROGOW, P.A.
100 NE 3rd Avenue
Suite 1000
Fort Lauderdale, FL 33301
(954) 767–8909
Fax: (954) 764–1530
Email: brogow@rogowlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Pro Hac Vice*

**Chandler Paige Routman**
LAW OFFICE OF CHANDLER P. ROUTMAN
501 East Las Olas Blvd.
Suite #331
Ft. Lauderdale, FL 33316
(954) 235–8259
Email: routmanc@gmail.com
*TERMINATED: 01/15/2020*
*Designation: Retained*

**Grant J. Smith**
STRATEGYSMITH, P.A.
401 East Las Olas Boulevard
Suite 130–120
Fort Lauderdale, FL 33301
954–328–9064
Email: gsmith@strategysmith.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Pro Hac Vice*

**Seth Ginsberg**
ATTORNEY AT LAW
299 Broadway
Suite 1405
New York, NY 10007
212–227–6655
Email: srginsberg@mac.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Pro Hac Vice*

**Tara A. Campion**
LAW OFFICE OF BRUCE S. ROGOW, P.A.
100 NE 3rd Avenue
Suite 1000
Fort Lauderdale, FL 33301
(954) 767–8909
Fax: (954) 764–1530

Email: tcampion@rogowlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Pro Hac Vice*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1505 and 2; OBSTRUCTION OF PROCEEDING BEFORE DEPARTMENTS/AGENCIES. Obstruction of Proceeding. (1) | JURY VERDICT OF GUILTY. Sentenced to 40 months incarceration, followed by 24 months supervised release, to run concurrent with all other counts. Special Assessment of $100.00 was imposed. Fine of $20,000.00 was Ordered. |
| 18:1001(a)(2) and 2; STATEMENTS OR ENTRIES GENERALLY; False Statements. (2–6) | JURY VERDICT OF GUILTY. Sentenced on each count to 12 months incarceration, to run concurrent to Count 1, followed by 24 months supervised release on each count, to run concurrent with all other counts. Special Assessment of $100.00 was imposed on each count for a total of $500.00. Fine of $20,000.00 was Ordered. |
| 18:1512(b)(1); INTIMIDATION OR FORCE AGAINST WITNESS; Witness Tampering. (7) | JURY VERDICT OF GUILTY. Sentenced to 18 months incarceration, to run concurrent to Count 1 followed by 24 months supervised release, to run concurrent with all other counts. Special Assessment of $100.00 was imposed. Fine of $20,000.00 was Ordered. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

---

**Movant**

| **DEMOCRATIC NATIONAL COMMITTEE** *also known as* DNC | represented by | **Marc Erik Elias** PERKINS COIE LLP 700 13th Street, NW Suite 600 Washington, DC 20005 |
| --- | --- | --- |

(202) 654–6200
Fax: (202) 654–6211
Email: melias@perkinscoie.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Uzoma Nkwonta**
PERKINS COIE LLP
700 13th Street, NW
Suite 600
Washington, DC 20005
(202) 654–3347
Fax: (202) 654–6211
Email: unkwonta@perkinscoie.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Movant**

**DEMOCRATIC CONGRESSIONAL CAMPAIGN COMMITTEE**
*also known as*
DCCC

represented by **Marc Erik Elias**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Uzoma Nkwonta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Movant**

**AMERICAN BROADCASTING COMPANIES, INC.**

represented by **Jay Ward Brown**
BALLARD SPAHR LLP
1909 K Street, NW
12th Floor
Washington, DC 20006
(202) 508–1136
Fax: (202) 661–2299
Email: brownjay@ballardspahr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Matthew E. Kelley**
BALLARD SPAHR LLP
1909 K Street, NW

12th Floor
Washington, DC 20006
(202) 508–1112
Fax: (202) 661–2299
Email: kelleym@ballardspahr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Maxwell S. Mishkin**
BALLARD SPAHR LLP
1909 K Street, NW
12th Floor
Washington, DC 20006
(202) 508–1140
Fax: (202) 661–2299
Email: mishkinm@ballardspahr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Movant**

**CABLE NEWS NETWORK, INC.**          represented by   **Jay Ward Brown**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Matthew E. Kelley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Maxwell S. Mishkin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Movant**

**CBS BROADCASTING INC.**          represented by   **Jay Ward Brown**
*on behalf of*                          (See above for address)
CBS NEWS                              *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Matthew E. Kelley**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Maxwell S. Mishkin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Movant**

**DOW JONES & COMPANY, INC.**          represented by   **Jay Ward Brown**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Matthew E. Kelley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Maxwell S. Mishkin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Movant**

**ASSOCIATED PRESS**          represented by   **Jay Ward Brown**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Matthew E. Kelley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Maxwell S. Mishkin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Movant**

**NEW YORK TIMES CO.**                          represented by    **Jay Ward Brown**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Matthew E. Kelley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Maxwell S. Mishkin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Movant**

**WP CO. LLC**                                  represented by    **Jay Ward Brown**
*doing business as*                                             (See above for address)
WASHINGTON POST                                                *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Matthew E. Kelley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Maxwell S. Mishkin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Movant**

**MICHAEL CERNOVICH**                           represented by    **Norman A Pattis**
PATTIS & SMITH, LLC
383 Orange Street
1st Floor
New Haven, CT 06511
203–393–3017
Fax: 203–393–9745

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Plaintiff**

**USA**                                    represented by  **J.P. Cooney**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252–7281
Email: joseph.cooney@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**John Crabb , Jr.**
U.S. ATTORNEY'S OFFICE
Judiciary Center Building
555 Fourth Street, NW
Room 11–844
Washington, DC 20530
(202) 252–1794
Email: John.D.Crabb@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Aaron Simcha Jon Zelinsky**
U.S. DEPARTMENT OF JUSTICE
555 Fourth Street, NW
Washington, DC 20530
(410) 209–4928
Email: Aaron.Zelinsky@usdoj.gov
*TERMINATED: 02/11/2020*
*Designation: Assistant U.S. Attorney*

**Adam C. Jed**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252–1793
Email: adam.jed@usdoj.gov
*TERMINATED: 02/11/2020*
*Designation: Assistant U.S. Attorney*

**Andrew Daniel Goldstein**
U.S. DEPARTMENT OF JUSTICE
Special Counsel's Office

950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 616–0800
Email: adg@usdoj.gov
*TERMINATED: 04/30/2019*
*Designation: Assistant U.S. Attorney*

**Jeannie Sclafani Rhee**
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Special Counsel's Office
2001 K Street NW
Washington, DC 20006
202–223–7300
Email: JRhee@paulweiss.com
*TERMINATED: 04/16/2019*
*Designation: Assistant U.S. Attorney*

**Jonathan Ian Kravis**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252–6886
Email: jonathan.kravis3@usdoj.gov
*TERMINATED: 02/11/2020*
*Designation: Assistant U.S. Attorney*

**Lawrence Rush Atkinson**
U.S. DEPARTMENT OF JUSTICE
Criminal Division
1400 New York Avenue
Room 3402
Washington, DC 20005
(202) 305–7413
Fax: (202) 651–3393
Email: lawrence.atkinson2@usdoj.gov
*TERMINATED: 04/16/2019*
*Designation: Assistant U.S. Attorney*

**Michael John Marando**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252–7068
Email: michael.marando@usdoj.gov
*TERMINATED: 02/11/2020*
*Designation: Assistant U.S. Attorney*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|

| 01/24/2019 | 1 | SEALED INDICTMENT as to ROGER JASON STONE, JR (1) count(s) 1, 2–6, 7. (zvt) (Main Document 1 replaced on 1/25/2019 with the original Indictment that has counsel's signature) (zad). (Main Document 1 replaced on 1/31/2019, because of missing page numbers 6,13,16, and 18 zad). (Entered: 01/24/2019) |
| --- | --- | --- |
| 01/24/2019 | 2 | MOTION to Seal Case by USA as to ROGER JASON STONE, JR. (Attachment: # 1 Text of Proposed Order)(zvt) (Entered: 01/24/2019) |
| 01/24/2019 | 3 | ORDER granting 2 Motion to Seal Case as to ROGER JASON STONE JR. (1). Signed by Magistrate Judge Deborah A. Robinson on 01/24/2019. (zvt) (Entered: 01/24/2019) |
| 01/25/2019 | | Case unsealed pursuant to 3 Order filed on 01/24/2019 as to ROGER JASON STONE, JR. (zvt) (Entered: 01/25/2019) |
| 01/25/2019 | | Set Hearings as to ROGER JASON STONE, JR: ARRAIGNMENT scheduled for 11:00 a.m. on Tuesday, January 29, 2019 in Courtroom 4 before Magistrate Judge Deborah A. Robinson. (zcal) (Entered: 01/25/2019) |
| 01/25/2019 | 4 | NOTICE OF ATTORNEY APPEARANCE: Robert C. Buschel appearing for ROGER JASON STONE, JR (Buschel, Robert) (Entered: 01/25/2019) |
| 01/25/2019 | | Arrest of ROGER JASON STONE, JR in Southern District of Florida. (hsj) (Entered: 01/30/2019) |
| 01/27/2019 | 5 | NOTICE OF ATTORNEY APPEARANCE: Grant J. Smith appearing for ROGER JASON STONE, JR (Smith, Grant) (Entered: 01/27/2019) |
| 01/28/2019 | 7 | Rule 5(c)(3) Documents Received as to ROGER JASON STONE, JR from from United States District Court for the Southern District of Florida in Ft. Lauderdale, Florida. Case Number 0:19–mj–6039 (hsj) (Entered: 01/28/2019) |
| 01/28/2019 | | MINUTE ORDER: On January 25, 2019, this court scheduled arraignment for 11:00 a.m. on Tuesday, January 29, 2019. Thereafter, two lawyers, neither of whom is a member of the Bar of United States District Court for the District of Columbia, each filed a "NOTICE OF APPEARANCE" "as permanent counsel[,]" and included the notation "*Pro hac vice* pending" beneath the signature line. As of the filing of the instant Minute Order, neither lawyer has complied with Local Criminal Rule 44.1(d), which requires, in pertinent part, that "[a]ny [non–member] seeking to appear *pro hac vice* must file a motion signed by a sponsoring member of the Bar of this Court," accompanied by the prescribed declaration and fee. *See also* Local Civil Rule 44.1(c)(1) (providing that "[a]n attorney who is a member in good standing of the bar of any United States Court or of the highest court of any State, but who is not a member of the Bar of this Court, may file papers in this Court only if such attorney joins of record a member in good standing of the Bar of this Court."). It is hereby ORDERED that if the two lawyers expect to "be heard in open court" at the proceedings scheduled for tomorrow, then they shall fully comply with Local Civil Rule 44.1(d) by 9:00 a.m. tomorrow. Signed by Magistrate Judge Deborah A. Robinson on 1/28/2019. (lcdar3) Modified on 1/29/2019 (zcal). (Entered: 01/28/2019) |
| 01/28/2019 | 9 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Robert Buschel. :Address– 100 S.E. Third Avenue, Suite 1300, Fort Lauderdale, FL |

| | | |
|---|---|---|
| | | 33394. Phone No. – 954–530–5301. Fax No. – 954–320–6932 Filing fee $ 100, receipt number 0090–5912100. Fee Status: Fee Paid. by ROGER JASON STONE, JR. (Attachments: # 1 Declaration Declaration of Robert Buschel, # 2 Text of Proposed Order)(Buschel, Robert) (Entered: 01/28/2019) |
| 01/28/2019 | 10 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Grant J. Smith. :Address– gsmith@strategysmith.com. Phone No. – 954–328–9064. Filing fee $ 100, receipt number 0090–5912217. Fee Status: Fee Paid. by ROGER JASON STONE, JR. (Attachments: # 1 Declaration Grant Smith, # 2 Text of Proposed Order)(Buschel, Robert) (Entered: 01/28/2019) |
| 01/28/2019 | | MINUTE ORDER: This court has reviewed the declaration filed as an attachment to the pending Motion for Admission of Robert Buschel 9 , and the declaration filed as an exhibit to the pending Motion for *Pro Hac Vice* Admission of Grant J. Smith 10 . This court has determined that neither Mr. Buschel nor Mr. Smith, in his declaration, set forth "(4) a certification that the attorney either has or has not been disciplined by any bar, and if the attorney has been disciplined by any bar, the circumstances and details of the discipline[.]" Local Criminal Rule 44.1(d). Additionally, this court has observed that L. Peter Farkas, Esq., whose name appears on the signature line of each motion, neither filed the motions nor entered his appearance; instead, the motions were filed by the non–member attorneys. Thus, these non–member attorneys failed to comply with Local Civil Rule 44.1(c)(1), which permits non–member attorneys to file papers in this Court "only if such [non–member] attorney *joins of record* a member in good standing of the Bar of this Court[]" (emphasis supplied). For these reasons, it is ORDERED that both motions are DENIED WITHOUT PREJUDICE. The attention of these non–member attorneys is directed to the 9:00 a.m. deadline for compliance with the cited Local Criminal Rules of this Court. Signed by Magistrate Judge Deborah A. Robinson on 1/28/2019. (lcdar3) (Entered: 01/28/2019) |
| 01/29/2019 | 11 | NOTICE OF ATTORNEY APPEARANCE: L. Peter Farkas appearing for ROGER JASON STONE, JR. (zvt) (Entered: 01/29/2019) |
| 01/29/2019 | 12 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Robert C. Buschel. :Address– One Financial Plaza, Suite 1300, 100 S.E. Third Avenue, Fort Lauderdale, FL 33394. Phone No. – (954) 530–5301. Filing fee $ 100. Fee Status: Fee Paid. Receipt No.: 4616096484. by ROGER JASON STONE, JR. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(zvt) (Entered: 01/29/2019) |
| 01/29/2019 | 13 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Grant J. Smith. :Address– 401 East Las Olas Boulevard, Suite 130–120, Fort Lauderdale, FL 33301. Phone No. – (954) 328–9064. Filing fee $ 100. Fee Status: Fee Paid. Receipt No.: 4616096484 by ROGER JASON STONE, JR. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(zvt) (Entered: 01/29/2019) |
| 01/29/2019 | | MINUTE ORDER granting 12 Motion for Leave to Appear Pro Hac Vice as to Robert C. Buschel. Signed by Magistrate Judge Deborah A. Robinson on 1/29/2019. (lcdar3) (Entered: 01/29/2019) |
| 01/29/2019 | | MINUTE ORDER granting 13 Motion for Leave to Appear Pro Hac Vice as to Grant J. Smith. Signed by Magistrate Judge Deborah A. Robinson on 1/29/2019. (lcdar3) (Entered: 01/29/2019) |

| 01/29/2019 | | | Arrest of ROGER JASON STONE, JR on 1/25/2019 in Southern District of Florida – Fort Lauderdale. (zcal) (Entered: 01/29/2019) |
|---|---|---|---|
| 01/29/2019 | <u>14</u> | | Arrest Warrant as to ROGER JASON STONE, JR Returned Executed on 1/25/2019 in Southern District of Florida – Fort Lauderdale. (zcal) (Entered: 01/29/2019) |
| 01/29/2019 | | | Minute Entry for proceedings held before Magistrate Judge Deborah A. Robinson: Arraignment as to ROGER JASON STONE JR. (1): Count 1,2–6, and 7 held on 1/29/2019. Not Guilty Plea as to all counts. The Government is not opposed to the Release of Defendant, to include special conditions. Status Conference set for 2/1/2019 at 01:30 PM in Courtroom 3 before Judge Amy Berman Jackson. Bond Status of Defendant: Defendant Released on Personal Recognizance/ Release Issued; Court Reporter: Cathryn Jones; Time Frame: Ctrm 3 [11:00 – 11:13]; Defense Attorney: Grant Smith and Robert Bushel; Special Counsel: Aaron Zelinsky and Jeannie Rhee; US Attorneys: Jonathan Kravis and Michael Marando; Pretrial Officer: Christine Schuck. (zcal) (Entered: 01/29/2019) |
| 01/29/2019 | <u>15</u> | | ORDER Setting Conditions of Release as to ROGER JASON STONE JR. (1) Personal Recognizance. Signed by Magistrate Judge Deborah A. Robinson on 1/29/2019. (Attachments: # <u>1</u> Appearance Bond) (zcal) (Entered: 01/29/2019) |
| 01/29/2019 | | | MINUTE ORDER as to ROGER JASON STONE, JR. The status conference presently set in Courtroom 3 for 2/1/2019 at 1:30 PM is reset for 2/1/2019 at 2:00 PM. Signed by Judge Amy Berman Jackson on 1/29/19. (DMK) (Entered: 01/29/2019) |
| 01/29/2019 | | | Set/Reset Hearings as to ROGER JASON STONE, JR: The Status Conference presently set for 2/1/2019 at 1:30 PM is reset for 2/1/2019 at 2:00 PM in Courtroom 3 before Judge Amy Berman Jackson. (jth) (Entered: 01/29/2019) |
| 01/30/2019 | <u>16</u> | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Bruce S. Rogow. :Address– 100 NE 3rd Ave., Ste. 1000 Fort Lauderdale, FL 33301. Phone No. – 954–767–8909. Fax No. – 954–764–1530 Filing fee $ 100, receipt number 0090–5917156. Fee Status: Fee Paid. by ROGER JASON STONE, JR. (Attachments: # <u>1</u> Declaration Bruce S. Rogow, # <u>2</u> Text of Proposed Order)(Farkas, L.) (Entered: 01/30/2019) |
| 01/30/2019 | <u>17</u> | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Tara A. Campion. :Address– 100 NE 3rd Avenue, Suite 1000, Fort Lauderdale, FL 33301. Phone No. – 954–767–8909. Fax No. – 954–764–1530 Filing fee $ 100, receipt number 0090–5917225. Fee Status: Fee Paid. by ROGER JASON STONE, JR. (Attachments: # <u>1</u> Declaration Tara A. Campion, # <u>2</u> Text of Proposed Order)(Farkas, L.) (Entered: 01/30/2019) |
| 01/30/2019 | | | MINUTE ORDER granting <u>16</u> <u>17</u> Motions for Leave of Bruce S. Rogow and Tara A. Campion to Appear Pro Hac Vice as to ROGER JASON STONE JR. (1) only upon condition that at the lawyers admitted, or at least one member of the lawyers' firm, undergo CM/ECF training, obtain a CM/ECF username and password, and agree to file papers electronically. No court papers will be mailed to any lawyer. Signed by Judge Amy Berman Jackson on 1/30/19. (DMK) (Entered: 01/30/2019) |
| 01/30/2019 | | | |

| | | | |
|---|---|---|---|
| | | | Attorneys: Bruce S. Rogow and Tara A. Campion added to this case for defendant ROGER JASON STONE, JR. (Pro Hac Vice Motions granted on 1/30/2019) (jth) (Entered: 01/30/2019) |
| 01/30/2019 | 20 | | MOTION for Leave to File a Motion to Intervene as to ROGER JASON STONE, JR. "File as Motion for Leave to file a Motion to Intervene; File 1st 2 pages only" by Judge Amy B. Jackson on 01/30/2019. (zvt) Modified filed date on 2/1/2019 (znmw). (Entered: 02/01/2019) |
| 01/31/2019 | 18 | | Unopposed MOTION for Protective Order *Governing Discovery* by USA as to ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Zelinsky, Aaron) (Entered: 01/31/2019) |
| 01/31/2019 | 19 | | Consent MOTION to Declare Case Complex and Exclude Time Under the Speedy Trial Act by USA as to ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Marando, Michael) Modified event on 2/4/2019 (znmw). (Entered: 01/31/2019) |
| 02/01/2019 | | | MINUTE ORDER denying 20 Motion for Leave to File as to ROGER JASON STONE JR. (1). Movant David Christenson has filed a motion to file a motion to intervene in this case. His motion for leave to file, which the Court docketed on the official public record, did not attach the intervention motion itself; it simply transmitted copies of similar motions filed in other cases. But his motion for leave to file any request to intervene will be DENIED because the Federal Rules of Criminal Procedure do not provide for intervention in a criminal case. Also, since movant not a party to these proceedings, it is FURTHER ORDERED that no additional submissions from the movant will be docketed in this case. THIS IS A FINAL, APPEALABLE ORDER. Signed by Judge Amy Berman Jackson on 2/1/19. (DMK) (Entered: 02/01/2019) |
| 02/01/2019 | | | Minute Entry for proceedings held before Judge Amy Berman Jackson: Status Conference as to ROGER JASON STONE, JR. held on 2/1/2019. The government's 18 Motion for Protective Order governing discovery will be granted. Case will be designated as Complex 19 . Submissions from either party pursuant to Local Criminal Rule 57.7(c) are due by 2/8/2019. Another Status Conference is set for 3/14/2019 at 10:00 AM in Courtroom 3 before Judge Amy Berman Jackson. Bond Status of Defendant: Defendant remains on Personal Recognizance Bond with Amended Conditions (see Order for details); Court Reporter: Janice Dickman; Defense Attorneys: Robert C. Buschel and Tara A. Campion; US Attorneys: Michael John Marando, Jonathan Ian Kravis, Jeannie Sclafani Rhee and Aaron Jon Zelinsky. (jth) (Entered: 02/01/2019) |
| 02/01/2019 | 21 | | ORDER MODIFYING CONDITIONS OF RELEASE as to ROGER JASON STONE, JR. Signed by Judge Amy Berman Jackson on 2/1/2019. (Attachments: # 1 Appearance Bond).(jth) (Entered: 02/01/2019) |
| 02/01/2019 | 22 | | PROTECTIVE ORDER GOVERNING DISCOVERY as to ROGER JASON STONE, JR. (see order for complete details). Signed by Judge Amy Berman Jackson on 02/01/2019. (jth) (Entered: 02/01/2019) |
| 02/01/2019 | 23 | | TRANSCRIPT OF PROCEEDINGS in case as to ROGER JASON STONE, JR before Judge Amy Berman Jackson held on February 1, 2019; Page Numbers: 1–21. Date of Issuance: February 1, 2019. Court Reporter: Janice Dickman, Telephone number: 202–354–3267, Transcripts may be ordered by |

| | | |
|---|---|---|
| | | submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 2/22/2019. Redacted Transcript Deadline set for 3/4/2019. Release of Transcript Restriction set for 5/2/2019.(Dickman, Janice) (Entered: 02/01/2019) |
| 02/01/2019 | 24 | ORDER as to ROGER JASON STONE, JR. For the reasons stated on the record, the Court finds that the case is "so complex... that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits" of the speedy Trial Act, 18 U.S.C. § 3161(h)(7)(B)(ii), and that the interests of justice would be served by excluding "the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. § 3161(h)(7)(B)(iv). Therefore, it is ORDERED that the case is designated complex; the time between the entry of this order and the next scheduled hearing in this matter on March 14, 2019 will be excluded from the speedy trial act calculation; the ends of justice will be served by doing so; and this action outweighs the interest of the public and the defendant in a speedy trial. Signed by Judge Amy Berman Jackson on 2/1/2019.(jth) (Entered: 02/01/2019) |
| 02/05/2019 | 25 | TRANSCRIPT OF PROCEEDINGS in case as to ROGER JASON STONE, JR before Magistrate Judge Deborah A. Robinson held on January 29, 2019; Page Numbers: 1 – 9. Court Reporter/Transcriber Cathryn Jones, Telephone number 202 354–3246, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 2/26/2019. Redacted Transcript Deadline set for 3/8/2019. Release of Transcript Restriction set for 5/6/2019.(Jones, Cathryn) (Entered: 02/05/2019) |
| 02/07/2019 | | MINUTE ORDER granting 26 government's sealed motion to seal witness list as to ROGER JASON STONE JR. (1). The Clerk of Court is directed to maintain under seal 26 government's motion and [26–1] its attachment. Signed by Judge Amy Berman Jackson on 2/7/19. (DMK) Modified on 2/8/2019 to |

| | | | |
|---|---|---|---|
| | | | reflect that the Clerk of Court is directed to maintain under seal <u>26</u> "government's" not "defendant's" motion and [26–1] its attachment. (jth). (Entered: 02/07/2019) |
| 02/08/2019 | <u>27</u> | | NOTICE *of Objection to Notice of Designation of Pending Related Criminal case* by ROGER JASON STONE, JR (Attachments: # <u>1</u> Exhibit Notice of Designation of Related case, # <u>2</u> Exhibit DOJ press release, # <u>3</u> Text of Proposed Order)(Buschel, Robert) (Entered: 02/08/2019) |
| 02/08/2019 | <u>28</u> | | RESPONSE by ROGER JASON STONE, JR *to Court's order on "gag order"* (Attachments: # <u>1</u> Exhibit Portion of transcript Feb 1 status conference)(Buschel, Robert) (Entered: 02/08/2019) |
| 02/08/2019 | | | MINUTE ORDER as to ROGER JASON STONE, JR. It is ORDERED that the government shall respond to defendant's <u>27</u> Objection to the Notice of Related Case by February 15, 2019. Signed by Judge Amy Berman Jackson on 2/8/19. (DMK) (Entered: 02/08/2019) |
| 02/08/2019 | <u>29</u> | | RESPONSE by USA as to ROGER JASON STONE, JR *Regarding Imposition of Order Pursuant to Local Criminal Rule 57.7(c)* (Attachments: # <u>1</u> Text of Proposed Order)(Kravis, Jonathan) (Entered: 02/08/2019) |
| 02/08/2019 | | | Set/Reset Deadline as to ROGER JASON STONE, JR: The government shall respond to defendant's <u>27</u> Objection to the Notice of Related Case by 2/15/2019. (jth) (Entered: 02/10/2019) |
| 02/12/2019 | <u>32</u> | | MOTION for Leave to File Amici Curiae Brief as to ROGER JASON STONE, JR. "Leave to file granted" by Judge Amy B. Jackson on February 12, 2019. (Attachments: # <u>1</u> Amici Curiae Brief of Dr. Jerome Corsi, # <u>2</u> Exhibit A, # <u>3</u> Exhibit B)(zvt) (Entered: 02/13/2019) |
| 02/12/2019 | <u>33</u> | | NOTICE OF APPEAL (Interlocutory) as to ROGER JASON STONE, JR. re February 1, 2019 MINUTE ORDER denying Motion for Leave to File by Movant David Christenson. "File as Notice of Appeal, Leave to file granted" by Judge Amy B. Jackson on February 12, 2019. Fee Status: No Fee Paid. Parties have been notified. (Attachment: # <u>1</u> Attachments)(zvt) (Entered: 02/13/2019) |
| 02/12/2019 | <u>34</u> | | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The fee remains to be paid and another notice will be transmitted when the fee has been paid in the District Court or the Motion to Proceed In Forma Pauperis has been ruled on as to ROGER JASON STONE, JR. re <u>33</u> Notice of Appeal – Interlocutory. (zvt) (Entered: 02/13/2019) |
| 02/13/2019 | <u>31</u> | | MOTION for Order to Show Cause by ROGER JASON STONE, JR. (Attachments: # <u>1</u> Exhibit text messages with counsel & reporter, # <u>2</u> Exhibit draft copy sealed indictment, # <u>3</u> Exhibit Metadata screen shot AAW, # <u>4</u> Exhibit Timeline for morning of Jan 25, # <u>5</u> Text of Proposed Order)(Buschel, Robert) (Entered: 02/13/2019) |
| 02/15/2019 | | | MINUTE ORDER granting <u>32</u> Motion for Leave to File as to ROGER JASON STONE JR. (1). The Clerk of Court is directed to file [32–1] the Amici Curiae Brief, [32–2] Exhibit A, and [32–3] Exhibit B on the docket. Signed by Judge Amy Berman Jackson on 2/15/19. (DMK) (Entered: 02/15/2019) |
| 02/15/2019 | <u>35</u> | | |

| | | | |
|---|---|---|---|
| | | | AMICI CURIAE BRIEF of Dr. Jerome Corsi as to ROGER JASON STONE, JR. (Attachment: # 1 Exhibit A, # 2 Exhibit B)(zvt) (Entered: 02/15/2019) |
| 02/15/2019 | 36 | | ORDER as to ROGER JASON STONE, JR (1) pursuant to Local Criminal Rule 57.7(b),(c). See Order for details. Signed by Judge Amy Berman Jackson on 02/15/2019. (lcabj3) (Entered: 02/15/2019) |
| 02/15/2019 | 37 | | RESPONSE by USA as to ROGER JASON STONE, JR re 27 Notice (Other), *Response to Defendant's Objection to Notice of Designation of Pending Related Case* (Marando, Michael) (Entered: 02/15/2019) |
| 02/15/2019 | | | MINUTE ORDER as to ROGER JASON STONE, JR (1). Upon consideration of 27 Defendant's Objections to the Notice of Related Case and 37 the government's Response, the Court will take no action with respect to the current assignment of this case, which is consistent with Local Criminal Rule 57.12. The Court also notes that any future request that the Court take action must be in the form of a motion that comports with Local Criminal Rule 47. SO ORDERED. Signed by Judge Amy Berman Jackson on 02/15/2019. (lcabj3) (Entered: 02/15/2019) |
| 02/15/2019 | | | MINUTE ORDER as to ROGER JASON STONE, JR (1). With respect to 31 defendant's Motion for Order to Show Cause, the government must provide the Court with information concerning the precise timing and content of the "press release from SCO" referred to in [31–1] defendant's Exhibit 1, if any, along with any other information it wishes to submit in response to the motion, by February 22, 2019. SO ORDERED. Signed by Judge Amy Berman Jackson on 02/15/2018. (lcabj3) (Entered: 02/15/2019) |
| 02/18/2019 | 38 | | NOTICE *of Apology* by ROGER JASON STONE, JR (Buschel, Robert) (Entered: 02/18/2019) |
| 02/19/2019 | | | VACATED PURSUANT TO MINUTE ORDER FILED 02/21/19.....MINUTE ORDER as to ROGER J. STONE, JR. Defendant is ORDERED to show cause at a hearing to be held on Thursday, February 21, 2019 at 2:30 p.m. as to why the media contact order entered in this case 36 and/or his conditions of release 21 should not be modified or revoked in light of the posts on his Instagram account on or about February 18, 2019. Signed by Judge Amy Berman Jackson on 2/19/19. (DMK) Modified on 2/22/2019 (zjth). (Entered: 02/19/2019) |
| 02/19/2019 | | | Set/Reset Hearings as to ROGER JASON STONE, JR: Show Cause Hearing set for 2/21/2019 at 2:30 PM in Courtroom 3 before Judge Amy Berman Jackson. (jth) (Entered: 02/19/2019) |
| 02/19/2019 | | | MINUTE ORDER granting 39 Government's Sealed Motion for Leave to File Sealed Addendum as to ROGER J. STONE JR. (1). The Clerk of Court is directed to file under seal the government's sealed addendum to response to defendant's objection to notice of designation of pending related criminal case [39–1], and exhibit A to the addendum [39–2]. Signed by Judge Amy Berman Jackson on 2/19/19. (DMK) (Entered: 02/19/2019) |
| 02/21/2019 | | | Minute Entry for proceedings held before Judge Amy Berman Jackson: Evidentiary Hearing as to ROGER JASON STONE, JR. held on 2/21/2019. For the reasons stated on the record in open Court, The 36 Media Communications Order and the 21 Amended Order Setting Conditions of |

| | | |
|---|---|---|
| | | Release are modified. Bond Status of Defendant: Defendant Remains on Personal Recognizance Bond with additional Amended Conditions; Court Reporter: Janice Dickman; Defense Attorneys: Bruce S. Rogow, Robert Buschel, L. Peter Farkas and Grant J. Smith; US Attorneys: Jonathan Ian Kravis, Michael Marando, Jeannie S. Rhee and Aaron Jon Zelinsky; Witness: Roger J. Stone, Jr.; Court Exhibits: One (Exhibit A) admitted under seal. (jth) (Entered: 02/21/2019) |
| 02/21/2019 | | MINUTE ORDER as to ROGER J. STONE, JR. On February 19, 2019, the Court ordered the defendant to show cause at a hearing to be held on February 21, 2019 as to why the media communications order entered in this case 36 and/or defendant's conditions of release 21 should not be modified or revoked. A hearing was held on this date. For the reasons set forth on the record, and based upon the entire record, including the sealed exhibit to the hearing 42 , the testimony of the defendant, the arguments of counsel, and the submissions of the parties 28 29 filed in connection with the potential imposition of a media communications order, the Court entered the following order at the hearing: the conditions of defendant's pretrial release 21 are hereby modified to include the condition that, and the February 15, 2019 media communications order 36 is hereby modified to provide that, the defendant is prohibited from making statements to the media or in public settings about the Special Counsel's investigation or this case or any of the participants in the investigation or the case. The prohibition includes, but is not limited to, statements made about the case through the following means: radio broadcasts; interviews on television, on the radio, with print reporters, or on internet based media; press releases or press conferences; blogs or letters to the editor; and posts on Facebook, Twitter, Instagram, or any other form of social media. Furthermore, the defendant may not comment publicly about the case indirectly by having statements made publicly on his behalf by surrogates, family members, spokespersons, representatives, or volunteers. The order to show cause is hereby vacated. Signed by Judge Amy Berman Jackson on 2/21/19. (DMK) (Entered: 02/21/2019) |
| 02/22/2019 | 43 | TRANSCRIPT OF PROCEEDINGS in case as to ROGER JASON STONE, JR before Judge Amy Berman Jackson held on February 21, 2019; Page Numbers: 1–54. Date of Issuance: February 22, 2019. Court Reporter: Janice Dickman, Telephone number: 202–354–3267, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 3/15/2019. Redacted Transcript Deadline set for 3/25/2019. Release of Transcript Restriction set for 5/23/2019.(Dickman, Janice) (Entered: 02/22/2019) |

| 02/22/2019 | 44 | | RESPONSE by USA as to ROGER JASON STONE, JR re 31 MOTION for Order to Show Cause (Marando, Michael) (Entered: 02/22/2019) |
|---|---|---|---|
| 02/22/2019 | 45 | | REPLY in Support by ROGER JASON STONE, JR re 31 MOTION for Order to Show Cause (Buschel, Robert) (Entered: 02/22/2019) |
| 02/22/2019 | | | MINUTE ORDER as to ROGER J. STONE, JR. In a minute order issued on February 15, 2019, the Court requested that the government provide information and/or documentation concerning "the precise timing and content" of the SCO press release referenced in Exhibit 1 to 31 defendant's motion for order to show cause. While the government's response 44 to the motion for an order to show cause clearly states that the indictment was unsealed and made available to the public after the defendant had been placed under arrest, see 44 Government's Response at 2 n.2, and that assertion is entirely consistent with the exhibit [31−1] submitted by defendant in support of his motion for order to show cause, the information provided still leaves the Court's particular question unanswered. The government must file a notice by Tuesday, February 26, 2019 answering the following questions or indicating whether the information is unavailable: At what time did the SCO post the indictment on its website with text indicating that the defendant "was arrested"? At what time did the government send an email with "the same text" including a link to the indictment on the SCO website, and to whom was it addressed? Attached to the notice, the government must also submit any record that memorializes: the time of defendant's arrest; the time the SCO posted the indictment on its website; and the time the government sent the email. Signed by Judge Amy Berman Jackson on 2/22/19. (DMK) (Entered: 02/22/2019) |
| 02/24/2019 | | | Set/Reset Deadlines as to ROGER JASON STONE, JR.: The government must file a notice by Tuesday, February 26, 2019 answering the following questions or indicating whether the information is unavailable: At what time did the SCO post the indictment on its website with text indicating that the defendant "was arrested"? At what time did the government send an email with "the same text" including a link to the indictment on the SCO website, and to whom was it addressed? Attached to the notice, the government must also submit any record that memorializes: the time of defendant's arrest; the time the SCO posted the indictment on its website; and the time the government sent the email. (jth) (Entered: 02/24/2019) |
| 02/25/2019 | | | USCA Case Number as to Movant David Christenson as to ROGER JASON STONE, JR. 19−3012 for 33 Notice of Appeal − Interlocutory. (zvt) (Entered: 02/28/2019) |
| 02/26/2019 | 46 | | NOTICE by USA as to ROGER JASON STONE, JR re Order,,,,,, (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Kravis, Jonathan) (Entered: 02/26/2019) |
| 02/27/2019 | | | MINUTE ORDER as to ROGER J. STONE, JR. To assist the Court in preparing a schedule for further proceedings to be discussed at the status conference on March 14, 2019, the government must inform the Court by March 7, 2019 of the anticipated length of the trial, and the defendant must inform the Court by March 7, 2019 if he intends to file any motions pursuant to Fed. R. Crim. Proc. 12(b)(3)(A), (B), and/or (C). Defendant's notice need not set out the specific grounds for any proposed motion; the Court is simply inquiring as to the nature and number of motions the defense anticipates it will |

| | | | file. Signed by Judge Amy Berman Jackson on 2/27/19. (DMK) (Entered: 02/27/2019) |
|---|---|---|---|
| 02/27/2019 | 49 | | ORDER denying 31 Motion for Order to Show Cause as to ROGER JASON STONE JR. (1). See Order for details. Signed by Judge Amy Berman Jackson on 2/27/19. (DMK) (Entered: 02/27/2019) |
| 02/28/2019 | | | Set/Reset Deadlines as to ROGER JASON STONE, JR.: the government must inform the Court by 3/7/2019 of the anticipated length of the trial, and the defendant must inform the Court by 3/7/2019 if he intends to file any motions pursuant to Fed. R. Crim. Proc. 12(b)(3)(A), (B), and/or (C). (jth) (Entered: 02/28/2019) |
| 02/28/2019 | | | MINUTE ORDER as to ROGER J. STONE, JR. Two copies of a motion that was entitled "Interested Party and Material Witness's [sic] Dr. Jerome Corsi's Motion For Leave to File Motion for Order to Show Cause to Conduct Evidentiary Hearing..." 47 48 were entered on this docket because counsel designated each for purposes of the court's electronic filing system as an "Amicus Curiae Appearance." The would–be movant is not a party to this action, and the Federal Rules of Criminal Procedure do not permit intervention in a criminal case, so there is no legal basis to grant him permission to file his motion. The fact that the Court previously granted the movant leave to file a submission as an amicus curiae with respect to a discrete legal issue then pending before the Court did not operate to designate the movant as an amicus curiae for all purposes thereafter, nor did it invite the movant to inform the Court of facts that he wished to bring to the Court's attention on an ongoing basis. Any legitimate reports alleging threats or tampering with witnesses, or violations by the defendant of the order that he not contact the movant, should be made promptly to the prosecution or appropriate law enforcement authorities; the Court's docket is not the appropriate vehicle to bring matters to their attention. The Court also notes that the fact that it granted leave to file the amicus brief did not transform counsel for the movant into a "filer" or counsel for a party with docketing privileges in this case; indeed, counsel seems to be aware of that restriction since he managed to docket the pleadings only by falsely designating them in the ECF system as entries of his appearance. Since the pleadings were entered on the docket because counsel misrepresented the nature of the filings, it is hereby ORDERED that they be stricken from the record. The motion would not have been granted in any event for the reasons set forth above. Finally, the Court observes that while there may be individuals with an interest in this matter, a criminal proceeding is not a free for all. Therefore, it is FURTHER ORDERED that that any person, including this movant, who seeks leave to file a pleading in this case as an amicus curiae must file a motion for leave to file the pleading in advance, setting out the information that would be required under Local Civil Rule 7(o), and that the proposed pleading may not be filed unless and until permission has been granted. This means that the specific information sought to be placed on the public record may not be incorporated in the motion requesting permission to file it. Signed by Judge Amy Berman Jackson on 2/28/19. (DMK) (Entered: 02/28/2019) |
| 03/01/2019 | 50 | | NOTICE of Anticipated Trial Length by USA as to ROGER JASON STONE, JR (Marando, Michael) (Entered: 03/01/2019) |

| 03/01/2019 | 51 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL as to ROGER JASON STONE, JR. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Motion for clarification, # 2 Exhibit Book introduction, # 3 Text of Proposed Order to clarify, # 4 Text of Proposed Order to Seal)(Buschel, Robert) (Entered: 03/01/2019) |
|---|---|---|---|
| 03/01/2019 | | | MINUTE ORDER granting in part 51 defendant's Sealed Motion for Leave to File Document Under Seal as to ROGER JASON STONE JR. (1). The Clerk of Court is directed to file UNDER SEAL Attachment 1 [51−1], defendant's motion to clarify, and Attachment 2 [51−2], the exhibit to the motion to clarify. The Clerk of Court is also directed to unseal the motion for leave to file under seal itself 51 . It is FURTHER ORDERED that defendant shall file on the public docket a redacted version of the motion to clarify (Attachment 1), redacting any reference to the contents of the exhibit, but not file on the public docket the exhibit (Attachment 2). It is FURTHER ORDERED that defendant shall file an additional submission by March 4, 2019 identifying the specific date of the "imminent general rel[e]ase" of the book referred to on page 2 of the motion and explaining why this matter −− which was known to the defendant −− was not brought to the Court's attention in connection with defendant's February 8, 2019 response 28 concerning the entry of an order under Local Criminal Rule 57.7(b) and (c), or at any point during the February 21, 2019 hearing on the February 19 order to show cause, particularly given counsel's suggestion that an appropriate order should provide: "[H]e should not be talking about this Court. He should not be talking about the special prosecutor.... There are a lot of reasons why somebody may feel like they should be talking about things like that. But you and I know, as officers of the court,...this is not appropriate. And that, if we're going to have an order, that's what I ask the Court to do." Tr. of Feb. 21, 2019 Hr'g 43 at 41−42; see also id. at 42. ("What I'm saying is if Your Honor is asking me to craft an order, that that is what the order should say: This Court should not be criticized by Mr. Stone. The government should not be impugned by Mr. Stone. The integrity of this case should not be impugned by Mr. Stone....[T]hat is the kind of nature of an order that I would suggest the Court should craft...."). Signed by Judge Amy Berman Jackson on 3/1/19. (DMK) (Entered: 03/01/2019) |
| 03/01/2019 | | | Set/Reset Deadlines as to ROGER JASON STONE, JR: Defendant's additional submission pursuant to the Court's 3/1/2019 Minute Order is due by 3/4/2019. (jth) (Entered: 03/01/2019) |
| 03/04/2019 | 53 | | MOTION to Clarify *Feb. 21 Minute Order, as applied to portion of book (redacted)* by ROGER JASON STONE, JR. (Buschel, Robert) (Entered: 03/04/2019) |
| 03/04/2019 | 54 | | NOTICE *Regarding Statements by the Defendant* by USA as to ROGER JASON STONE, JR (Marando, Michael) (Entered: 03/04/2019) |
| 03/04/2019 | 55 | | RESPONSE TO ORDER OF THE COURT by ROGER JASON STONE, JR re Order on Sealed Motion for Leave to File Document Under Seal,,,,,,,,, (Attachments: # 1 Declaration redacted)(Buschel, Robert) (Entered: 03/04/2019) |
| 03/05/2019 | 56 | | ORDER denying Motion to Clarify 52 (Sealed)/ 53 (Redacted) as to ROGER J. STONE JR. for the reasons stated in the Order. It is FURTHER ORDERED |

| | | |
|---|---|---|
| | | that by March 11, 2019 defendant must file a status report detailing his efforts to come into compliance with the Court's rulings and supplement the record with the information as set forth in the order. See Order for details. Signed by Judge Amy Berman Jackson on 3/5/19. (DMK) (Entered: 03/05/2019) |
| 03/05/2019 | 57 | SEALED MOTION for Leave to File Sealed Exhibits filed by USA as to ROGER JASON STONE, JR.(This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Text of Proposed Order)(zvt) (Entered: 03/06/2019) |
| 03/06/2019 | | Set/Reset Deadline as to ROGER JASON STONE, JR: Defendant's Status Report is due by 3/11/2019. (jth) (Entered: 03/06/2019) |
| 03/07/2019 | | MINUTE ORDER granting in part and denying in part 57 Government's Sealed Motion for Leave to File Sealed Exhibits as to ROGER J. STONE JR. The Clerk of Court is directed to file UNDER SEAL attachments 1–3 to the motion, [57–1]–[57–3], which are Exhibits A–C to 54 Government's Notice Regarding Statements by the Defendant. Given the presumption against sealed proceedings that applies in this Circuit and with LCrR 49(f)(6), and finding no basis to seal the motion for leave to file under seal, the Clerk of Court is also directed to unseal 57 the motion itself. Signed by Judge Amy Berman Jackson on 3/7/19. (DMK) (Entered: 03/07/2019) |
| 03/07/2019 | 59 | LEAVE TO FILE DENIED– Motion for Leave to File a Question(s) and a Request for the Court Concerning my Appeal as to ROGER JASON STONE, JR. "Leave to file denied" by Judge Amy B. Jackson on 03/07/2019. This document is unavailable as the Court denied its filing. Signed by Judge Amy Berman Jackson on 03/07/2019. (zvt) (Entered: 03/07/2019) |
| 03/07/2019 | 60 | RESPONSE TO ORDER OF THE COURT *RESPONSE TO FEBRUARY 27, 2019 ORDER OF THE COURT* by ROGER JASON STONE, JR re Order,, (Buschel, Robert) Modified event title on 3/8/2019 (znmw). (Entered: 03/07/2019) |
| 03/11/2019 | 61 | RESPONSE TO ORDER OF THE COURT by ROGER JASON STONE, JR re 56 Order on Sealed Motion,, Order on Motion to Clarify,, Set/Reset Deadlines, (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Buschel, Robert) (Entered: 03/11/2019) |
| 03/12/2019 | 63 | MOTION for Leave to File Amicus Brief as to ROGER JASON STONE, JR. "Docket as Motion for Leave to File Amicus Brief" by Judge Amy B. Jackson on March 12, 2019. (Attachment: # 1 Exhibit A)(zvt) (Entered: 03/14/2019) |
| 03/14/2019 | | Minute Entry for proceedings held before Judge Amy Berman Jackson: Status Conference as to ROGER JASON STONE, JR. held on 3/14/2019. The Court makes a finding that it is in the Interests of Justice that the time between 3/14/2019 and 4/30/2019 shall be excluded from the Speedy Trial Act calculation (START XT). Another Status Conference is set for 4/30/2019 at 11:00 AM in Courtroom 3 before Judge Amy Berman Jackson. Oral Motion by Counsel for defendant to be admitted Pro Hac Vice in the Media Coalition Miscellaneous matter before this Court, case no. 19–mc–29 (ABJ) was HEARD and GRANTED. The following motions schedule shall apply: Dispositive Motions are due by 4/12/2019; Oppositions are due by 5/3/2019; Any Replies are due by 5/17/2019; Motions to Suppress are due by 5/10/2019; Oppositions are due by 5/31/2019; Any Replies are due by 6/14/2019. The |

| | | |
|---|---|---|
| | | following Trial schedule shall apply: Jury Trial is set for 11/5/2019 at 9:30 AM; The Pretrial Conference is set for 9/17/2019 at 9:30 AM; and the Joint Pretrial Statement is due by 8/30/2019. A further order will be issued detailing what is to be included in the Joint Pretrial Statement. Unless otherwise notified all proceedings will be heard in Courtroom 3 before Judge Amy Berman Jackson. Bond Status of Defendant: Defendant Remains on Personal Recognizance Bond; Court Reporter: Janice Dickman; Defense Attorneys: Robert C. Buschel, Grant J. Smith and L. Peter Farkas; US Attorneys: Jeannie S. Rhee, Jonathan Ian Kravis, Michael Marando and Aaron Jon Zelinsky; Pretrial Officer: Christine Schuck; (jth) (Entered: 03/14/2019) |
| 03/14/2019 | 64 | AMENDED ORDER SETTING CONDITIONS OF RELEASE as to ROGER JASON STONE, JR. Signed by Judge Amy Berman Jackson on 3/14/2019. (Attachments: # 1 Appearance Bond) (jth) (Entered: 03/14/2019) |
| 03/15/2019 | | MINUTE ORDER denying 63 Motion for Leave to File as to ROGER J. STONE JR. (1). On March 5, 2019, the Court received a submission entitled Amicus Brief Supporting Dismissal of Charges from an organization that is not a party to these proceedings. The Court deemed the organization's request that the case be dismissed to be a motion for leave to file an amicus brief, and that motion will be denied. At the outset, the Court notes that there appears to be no corollary in the Local Criminal Rules to Local Civil Rule 7(o) concerning the filing of an amicus brief in a civil case. And even the civil rule requires that an individual or entity that seeks to file an amicus brief must first seek leave to do so, and that the movant must satisfy a number of requirements that have not been satisfied here, such as explaining why the movant's position is not adequately represented by a party. Further, the rule requires that the would–be amicus must demonstrate why the matters asserted are relevant to the case. Here, the proposed pleading invokes principles of standing and federal jurisdiction to hear a civil case that have absolutely no bearing on a criminal proceeding. For these reasons, what the Court has deemed to be a motion for leave to file an amicus brief is hereby DENIED. The movant and other interested onlookers should be aware that, as the Court has emphasized on multiple occasions already, there is no rule of Federal Criminal Procedure that permits non–parties to join the proceedings to put their two cents in, or to intervene and file motions on the defendant's behalf. Leave to file any future pleadings submitted by this movant will be denied. Signed by Judge Amy Berman Jackson on 3/15/19. (DMK) (Entered: 03/15/2019) |
| 03/15/2019 | 65 | SCHEDULING ORDER as to ROGER J. STONE, JR. setting schedule for pretrial motions and other pretrial submissions. A single Joint Pretrial Statement shall be filed by August 30, 2019. The pretrial conference will be held on September 17, 2019 at 9:30 a.m. in Courtroom 3. Jury trial will commence on November 5, 2019 at 9:30 a.m. in Courtroom 3. See Scheduling Order for details. Signed by Judge Amy Berman Jackson on 3/15/19. (DMK) (Entered: 03/15/2019) |
| 03/20/2019 | 66 | TRANSCRIPT OF PROCEEDINGS in case as to ROGER JASON STONE, JR before Judge Amy Berman Jackson held on March 14, 2019; Page Numbers: 1–18. Date of Issuance: March 14, 2019. Court Reporter/Transcriber Janice Dickman, Telephone number 202–354–3267, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order |

| | | | |
|---|---|---|---|
| | | | Form</a><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 4/10/2019. Redacted Transcript Deadline set for 4/20/2019. Release of Transcript Restriction set for 6/18/2019.(Dickman, Janice) (Entered: 03/20/2019) |
| 03/28/2019 | 67 | | MOTION to Travel by ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Buschel, Robert) (Entered: 03/28/2019) |
| 03/29/2019 | 68 | | ORDER granting 67 Defendant's Unopposed Motion to Travel as to ROGER J. STONE JR. (1). See Order for details. Signed by Judge Amy Berman Jackson on 3/29/19. (DMK) (Entered: 03/29/2019) |
| 04/12/2019 | 69 | | MOTION to Dismiss Case by ROGER JASON STONE, JR. (Attachments: # 1 Exhibit Congressional Research Service, Special Counsel investigations, # 2 Exhibit Remarks, Eric Holder, # 3 Exhibit Special Counsel appointment order, # 4 Exhibit Statement of expenditures DOJ, # 5 Exhibit GAO Report, # 6 Exhibit Barr memo)(Buschel, Robert) (Entered: 04/12/2019) |
| 04/12/2019 | 70 | | MOTION to Compel *Mueller report* by ROGER JASON STONE, JR. (Attachments: # 1 Exhibit Special Counsel appointment order, # 2 Exhibit Barr memo)(Buschel, Robert) (Entered: 04/12/2019) |
| 04/12/2019 | 71 | | MOTION enjoin prosecution re 69 MOTION to Dismiss Case by ROGER JASON STONE, JR. (Attachments: # 1 Exhibit Barr letter summary Mueller report)(Buschel, Robert) (Entered: 04/12/2019) |
| 04/12/2019 | 72 | | MOTION to Dismiss Case *defects in the indictment* by ROGER JASON STONE, JR. (Attachments: # 1 Exhibit Barr memo, # 2 Exhibit Appointment order special counsel, # 3 Exhibit HPSCI transmittal (non referral) letter)(Buschel, Robert) (Entered: 04/12/2019) |
| 04/12/2019 | 73 | | MOTION for Discovery *based upon selective prosecution* by ROGER JASON STONE, JR. (Attachments: # 1 Exhibit Special Counsel apointment order, # 2 Exhibit Corsi draft information, # 3 Exhibit Corsi draft statement of offense)(Buschel, Robert) (Entered: 04/12/2019) |
| 04/12/2019 | 75 | | MOTION for Reconsideration re 27 Notice (Other), filed by ROGER JASON STONE, JR. *objection to related case assignment* by ROGER JASON STONE, JR. (Attachments: # 1 Exhibit Barr letter summary Mueller report)(Buschel, Robert) (Entered: 04/12/2019) |
| 04/12/2019 | 82 | | MOTION for Leave to File as to ROGER JASON STONE, JR. "Leave to file this Motion for Leave to File is GRANTED; (the court will rule on the Motion for Leave to File by Minute Order after it is docketed" by Judge Amy B. Jackson on April 12, 2019. (Attachments: # 1 Attachment, # 2 Exhibit 1, # 3 Exhibit 2)(zvt) (Entered: 04/15/2019) |

| 04/15/2019 | 76 | | NOTICE of Proposed Order by ROGER JASON STONE, JR re 69 MOTION to Dismiss Case (Buschel, Robert) (Entered: 04/15/2019) |
| 04/15/2019 | 77 | | NOTICE of Proposed Order by ROGER JASON STONE, JR re 70 MOTION to Compel *Mueller report* (Buschel, Robert) (Entered: 04/15/2019) |
| 04/15/2019 | 78 | | NOTICE of Proposed Order by ROGER JASON STONE, JR re 71 MOTION enjoin prosecution re 69 MOTION to Dismiss Case (Buschel, Robert) (Entered: 04/15/2019) |
| 04/15/2019 | 79 | | NOTICE of Proposed Order by ROGER JASON STONE, JR re 72 MOTION to Dismiss Case *defects in the indictment* (Buschel, Robert) (Entered: 04/15/2019) |
| 04/15/2019 | 80 | | NOTICE of Proposed Order by ROGER JASON STONE, JR re 73 MOTION for Discovery *based upon selective prosecution* (Buschel, Robert) (Entered: 04/15/2019) |
| 04/15/2019 | 81 | | NOTICE of Proposed Order by ROGER JASON STONE, JR re 75 MOTION for Reconsideration re 27 Notice (Other), filed by ROGER JASON STONE, JR. *objection to related case assignment* (Buschel, Robert) (Entered: 04/15/2019) |
| 04/15/2019 | | | MINUTE ORDER as to ROGER J. STONE, JR. It is ORDERED that the government may consolidate any opposition to 71 defendant's motion to enjoin the prosecution because the investigation violated the Appropriations Clause with its response to 69 defendant's motion to dismiss the prosecution based on the Appropriations Clause, among other grounds. It is FURTHER ORDERED that the defendant must specify by April 18, 2019 whether 73 his motion for discovery related to selective prosecution seeks the production of any information other than the Special Counsel's report sought in 70 his motion to compel production of the Special Counsel's report on the grounds that it bears on issues including selective prosecution. If what defendant is seeking in Dkt. 73 is the report, the government may consolidate its responses to Dkt. 70 and Dkt. 73 in a single pleading. If defendant is seeking to discover additional records or information, he must specify the discovery he is seeking to undertake when he responds to this order on April 18. Signed by Judge Amy Berman Jackson on 4/15/19. (DMK) (Entered: 04/15/2019) |
| 04/15/2019 | | | MINUTE ORDER denying 82 Motion for Leave to File. Signed by Judge Amy Berman Jackson on 4/15/19. (DMK) (Entered: 04/15/2019) |
| 04/16/2019 | 83 | | NOTICE *of Withdrawal of Appearance* by USA as to ROGER JASON STONE, JR (Rhee, Jeannie) (Entered: 04/16/2019) |
| 04/16/2019 | 84 | | NOTICE *of Withdrawal of Appearance* by USA as to ROGER JASON STONE, JR (Atkinson, Lawrence) (Entered: 04/16/2019) |
| 04/17/2019 | 85 | | NOTICE *Regarding Report of the Special Counsel* by USA as to ROGER JASON STONE, JR (Kravis, Jonathan) (Entered: 04/17/2019) |
| 04/18/2019 | 86 | | RESPONSE by ROGER JASON STONE, JR re Order,,,, (Buschel, Robert) (Entered: 04/18/2019) |
| 04/20/2019 | | | Set/Reset Hearings as to ROGER JASON STONE, JR: Jury Trial set for 11/5/2019 at 9:30 AM. Motions Hearings are set for 5/30/2019 and 6/21/2019 |

| | | |
|---|---|---|
| | | at 10:00 AM. Unless otherwise notified all hearings will take place in Courtroom 3 before Judge Amy Berman Jackson. (jth) (Entered: 04/20/2019) |
| 04/20/2019 | | Set/Reset Hearings as to ROGER JASON STONE, JR: Jury Trial set for 11/5/2019 at 9:30 AM in Courtroom 3 before Judge Amy Berman Jackson. (jth) (Entered: 04/20/2019) |
| 04/22/2019 | 87 | MOTION to Travel by ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Buschel, Robert) (Entered: 04/22/2019) |
| 04/24/2019 | 88 | ORDER granting 87 Defendant's Unopposed Motion to Travel as to ROGER J. STONE JR. (1). See Order for details. Signed by Judge Amy Berman Jackson on 4/24/19. (DMK) (Entered: 04/24/2019) |
| 04/30/2019 | | Minute Entry for proceedings held before Judge Amy Berman Jackson: Status Conference as to ROGER J. STONE, JR. held on 4/30/2019. Bond Status of Defendant: Defendant Remains on Personal Recognizance Bond; Court Reporter: Janice Dickman; Defense Attorneys: Bruce S. Rogow, Robert C. Buschel and Grant J. Smith; US Attorneys: Jonathan Ian Kravis, Michael John Marando, Aaron Jon Zelinsky and Adam Jed. (jth) (Entered: 04/30/2019) |
| 04/30/2019 | 90 | NOTICE OF ATTORNEY APPEARANCE Adam C. Jed appearing for USA. (Jed, Adam) (Entered: 04/30/2019) |
| 04/30/2019 | 91 | NOTICE of Withdrawal of Appearance by USA as to ROGER JASON STONE, JR (Goldstein, Andrew) (Entered: 04/30/2019) |
| 05/01/2019 | 92 | TRANSCRIPT OF PROCEEDINGS in case as to ROGER JASON STONE, JR before Judge Amy Berman Jackson held on April 30, 2019; Page Numbers: 1–14. Date of Issuance: May 1, 2019. Court Reporter/Transcriber Janice Dickman, Telephone number 202–354–3267, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>NOTICE RE REDACTION OF TRANSCRIPTS: The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 5/22/2019. Redacted Transcript Deadline set for 6/1/2019. Release of Transcript Restriction set for 7/30/2019.(Dickman, Janice) (Entered: 05/01/2019) |
| 05/03/2019 | 93 | Memorandum in Opposition by USA as to ROGER JASON STONE, JR re 72 MOTION to Dismiss Case defects in the indictment (Attachments: # 1 Exhibit A)(Kravis, Jonathan) (Entered: 05/03/2019) |
| 05/03/2019 | 94 | Memorandum in Opposition by USA as to ROGER JASON STONE, JR re 70 MOTION to Compel Mueller report (Attachments: # 1 Exhibit A)(Kravis, Jonathan) (Entered: 05/03/2019) |

| 05/03/2019 | 95 | | Memorandum in Opposition by USA as to ROGER JASON STONE, JR re 73 MOTION for Discovery *based upon selective prosecution* (Kravis, Jonathan) (Entered: 05/03/2019) |
|---|---|---|---|
| 05/03/2019 | 96 | | Memorandum in Opposition by USA as to ROGER JASON STONE, JR re 75 MOTION for Reconsideration re 27 Notice (Other), filed by ROGER JASON STONE, JR. *objection to related case assignment* (Kravis, Jonathan) (Entered: 05/03/2019) |
| 05/03/2019 | 97 | | Memorandum in Opposition by USA as to ROGER JASON STONE, JR re 69 MOTION to Dismiss Case , 71 MOTION enjoin prosecution re 69 MOTION to Dismiss Case (Kravis, Jonathan) (Entered: 05/03/2019) |
| 05/06/2019 | 98 | | MOTION for Leave to File *Amended Opposition to Defendant's Motion to Dismiss* re 97 Memorandum in Opposition by USA as to ROGER JASON STONE, JR. (Attachments: # 1 Exhibit Proposed Amended Filing, # 2 Text of Proposed Order)(Kravis, Jonathan) Modified to add hyperlink on 5/7/2019 (zvt). (Entered: 05/06/2019) |
| 05/07/2019 | | | MINUTE ORDER granting 98 Government's Motion for Leave to File Amended Opposition as to ROGER JASON STONE JR. (1). The Clerk of Court is directed to file on the docket [98–1] Government's Corrected Response in Opposition to Defendant's Motion to Dismiss. Signed by Judge Amy Berman Jackson on 5/7/19. (DMK) (Entered: 05/07/2019) |
| 05/07/2019 | 99 | | Corrected Memorandum in Opposition by USA as to ROGER JASON STONE, JR. re 69 MOTION to Dismiss Case . (zvt) (Entered: 05/07/2019) |
| 05/09/2019 | | | MINUTE ORDER as to ROGER JASON STONE, JR. In connection with the Court's consideration of the defendant's motion 70 to compel production of the Special Counsel's report and the opposition thereto 94 , and in light of the statements of counsel at the status hearing held in this case on April 30, 2019, the government is hereby ORDERED to submit unredacted versions of those portions of the report that relate to defendant Stone and/or "the dissemination of hacked materials," including, but not limited to, pages 41–65 of Volume 1 of the Report, to the Court for in camera review by May 13, 2019, and to docket a notice on that date indicating compliance with this order. Signed by Judge Amy Berman Jackson on 5/9/19. (DMK) (Entered: 05/09/2019) |
| 05/09/2019 | | | Set/Reset Deadline as to ROGER JASON STONE, JR: The Government's in camera review submission is due by 5/13/2019. (jth) (Entered: 05/09/2019) |
| 05/10/2019 | 100 | | MOTION to Suppress by ROGER JASON STONE, JR. (Attachments: # 1 Declaration William Binney, # 2 Exhibit Binney CV, # 3 Declaration Peter Clay, # 4 Exhibit Clay CV, # 5 Exhibit Computer Forensics: digital forensic analysis methodology, DOJ, # 6 Text of Proposed Order)(Buschel, Robert) (Entered: 05/10/2019) |
| 05/10/2019 | 103 | | MOTION to Compel *unredacted CrowdStrike reports* by ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Buschel, Robert) (Entered: 05/10/2019) |
| 05/13/2019 | 105 | | NOTICE OF ATTORNEY APPEARANCE: Chandler Paige Routman appearing for ROGER JASON STONE, JR (Routman, Chandler) (Entered: 05/13/2019) |

| 05/13/2019 | 106 | | NOTICE *Regarding In Camera Submission* by USA as to ROGER JASON STONE, JR (Marando, Michael) (Entered: 05/13/2019) |
|---|---|---|---|
| 05/14/2019 | | | MINUTE ORDER as to ROGER J. STONE, JR. On May 10, 2019, defendant filed a motion to suppress "all evidence as fruit of illegal search warrants executed on specified dates and times." Def.'s Mot. to Suppress 100 at 1. The motion does not specify which warrants defendant maintains were "illegal," but it notes that the "warrants and applications are filed under seal." The Court notes that defendant's Search Warrant Exhibit, Dkt. 101 (sealed), purports to be a list of the search warrants attached to the motion, but the list lacks exhibit numbers, and the order of the items listed does not correspond to what was actually provided. For instance, the first item on the list indicates that one of the warrants included in the motion was a warrant for the search of defendant's former home issued by the U.S. District Court for the Southern District of Florida, but neither that warrant nor the application has been supplied to the Court. Also, the Search Warrant Exhibit lists warrants issued by the U.S. District Court for the District of Columbia on August 3, 2018 to three recipients, but only two warrants issued on that date were submitted to the Court (with one of them being filed twice). Finally, a search warrant issued by U.S. District Court for the District of Columbia on August 8, 2018 was filed with the Court but not listed on the Search Warrant Exhibit. Therefore, it is ORDERED that the defendant must inform the Court by May 16, 2019 if the search of defendant's former home and the August 3, 2018 warrant issued to the third recipient were meant to be included in this motion, and if so, he must provide the Court with copies of the warrants and applications. On the same date, defendant must also provide the Court with a corrected version of the Search Warrant Exhibit, listing the warrants covered by the motion and assigning each an exhibit number in the numerical order it was filed on the docket. Signed by Judge Amy Berman Jackson on 5/14/19. (DMK) (Entered: 05/14/2019) |
| 05/16/2019 | | | Set/Reset Deadlines as to ROGER J. STONE, JR: Defendant must inform the Court by 5/16/2019 if the search of defendant's former home and the August 3, 2018 warrant issued to the third recipient were meant to be included in this motion, and if so, he must provide the Court with copies of the warrants and applications. On the same date, defendant must also provide the Court with a corrected version of the Search Warrant Exhibit, listing the warrants covered by the motion and assigning each an exhibit number in the numerical order it was filed on the docket. (jth) (Entered: 05/16/2019) |
| 05/16/2019 | 107 | | Unopposed MOTION for Extension of Time to File Response/Reply by ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Buschel, Robert) (Entered: 05/16/2019) |
| 05/16/2019 | 108 | | Unopposed MOTION to Travel by ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Buschel, Robert) (Entered: 05/16/2019) |
| 05/17/2019 | | | MINUTE ORDER granting 107 defendant's unopposed motion for extension of time as to ROGER J. STONE JR. (1). It is ORDERED that defendant's replies are due by 12:00 noon on May 21, 2019. The parties are advised that any future motions for extensions of time shall be filed at least two business days before the date to be extended. Signed by Judge Amy Berman Jackson on |

| | | | |
|---|---|---|---|
| | | | 5/17/19. (DMK) (Entered: 05/17/2019) |
| 05/21/2019 | 110 | | REPLY TO OPPOSITION to Motion by ROGER JASON STONE, JR re 69 MOTION to Dismiss Case *and Doc. 99 filed under seal by Government* (Routman, Chandler) (Entered: 05/21/2019) |
| 05/21/2019 | 111 | | REPLY TO OPPOSITION to Motion by ROGER JASON STONE, JR re 70 MOTION to Compel *Mueller report* (Routman, Chandler) (Entered: 05/21/2019) |
| 05/21/2019 | 112 | | REPLY TO OPPOSITION to Motion by ROGER JASON STONE, JR re 72 MOTION to Dismiss Case *defects in the indictment* (Routman, Chandler) (Entered: 05/21/2019) |
| 05/21/2019 | 113 | | REPLY TO OPPOSITION to Motion by ROGER JASON STONE, JR re 73 MOTION for Discovery *based upon selective prosecution* (Routman, Chandler) (Entered: 05/21/2019) |
| 05/22/2019 | 115 | | ORDER granting 108 Motion to Travel as to ROGER J. STONE JR. (1). Defendant shall identify in any future motions for permission to travel the cities or towns within each judicial district where he seeks to travel. See Order for details. Signed by Judge Amy Berman Jackson on 5/22/19. (DMK) (Entered: 05/22/2019) |
| 05/22/2019 | 116 | | NOTICE *Regarding Report of the Special Counsel* by USA as to ROGER JASON STONE, JR (Kravis, Jonathan) (Entered: 05/22/2019) |
| 05/27/2019 | 117 | | NOTICE *of Supplemental Authority* by ROGER JASON STONE, JR re 69 MOTION to Dismiss Case , 110 Reply to opposition to Motion (Attachments: # 1 Supplement Supplemental Authority)(Routman, Chandler) (Attachment 1 replaced on 5/28/2019) (zvt). Modified to remove double–headers on 5/28/2019 (zvt). (Entered: 05/27/2019) |
| 05/28/2019 | 118 | | ORDER denying 75 Motion for Reconsideration as to ROGER J. STONE JR. (1). See Order for details. Signed by Judge Amy Berman Jackson on 5/28/19. (DMK) (Entered: 05/28/2019) |
| 05/30/2019 | | | Minute Entry for proceedings held before Judge Amy Berman Jackson: Motion Hearing as to ROGER J. STONE, JR. held on 5/30/19 re: 69 Motion to Dismiss Case; 70 Motion to Compel; 71 Motion to Enjoin Prosecution; 72 Motion to Dismiss (Defects in the Indictment) 73 Motion for Discovery (based on selective prosecution). The Motions 69 70 71 72 73 were Heard and Taken Under Advisement. Bond Status of Defendant: Defendant Remains on Personal Recognizance Bond; Court Reporter: Janice Dickman; Defense Attorneys: Bruce S. Rogow, Robert C. Buschel, Grant J. Smith, L. Peter Farkas and Chandler Paige Routman; US Attorneys: Jonathan Ian Kravis, Michael John Marando, Aaron Jon Zelinsky and Adam Jed. (jth) (Entered: 05/30/2019) |
| 05/30/2019 | 120 | | NOTICE *of Supplemental Exhibit* by ROGER JASON STONE, JR re 72 MOTION to Dismiss Case *defects in the indictment* (Attachments: # 1 Exhibit Exhibit 4 to Doc. 72)(Routman, Chandler) (Entered: 05/30/2019) |
| 05/30/2019 | 124 | | LEAVE TO FILE DENIED– Motion for Leave to Proceed on Appeal in Forma Pauperis as to ROGER JASON STONE, JR. "Leave to file DENIED" by Judge Amy B. Jackson on 5/30/2019. This document is unavailable as the |

| | | | |
|---|---|---|---|
| | | | Court denied its filing. Signed by Judge Amy Berman Jackson on 05/30/2019. (zvt) (Entered: 06/03/2019) |
| 05/30/2019 | 125 | | LEAVE TO FILE DENIED– Notice as to ROGER JASON STONE, JR. "Leave to file DENIED" by Judge Amy B. Jackson on 5/30/2019. This document is unavailable as the Court denied its filing. Signed by Judge Amy Berman Jackson on 05/30/2019. (zvt) (Entered: 06/03/2019) |
| 05/30/2019 | 127 | | LEAVE TO FILE DENIED– Application to Proceed in Foram Pauperis as to ROGER JASON STONE, JR. "This is not a civil case and the applicant is not a party in it; Leave to file DENIED" by Judge Amy B. Jackson on 5/30/19. This document is unavailable as the Court denied its filing. Signed by Judge Amy Berman Jackson on 05/30/2019. (zvt) (Entered: 06/03/2019) |
| 05/30/2019 | 128 | | LEAVE TO FILE DENIED– Notice as to ROGER JASON STONE, JR. "Leave to file DENIED" by Judge Amy B. Jackson on 5/30/19. This document is unavailable as the Court denied its filing. Signed by Judge Amy Berman Jackson on 05/30/2019. (zvt) (Entered: 06/03/2019) |
| 05/31/2019 | 121 | | TRANSCRIPT OF PROCEEDINGS in case as to ROGER JASON STONE, JR before Judge Amy Berman Jackson held on May 30, 2019; Page Numbers: 1–107. Date of Issuance: May 31, 2019. Court Reporter: Janice Dickman, Telephone number: 202–354–3267, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 6/21/2019. Redacted Transcript Deadline set for 7/1/2019. Release of Transcript Restriction set for 8/29/2019.(Dickman, Janice) (Entered: 05/31/2019) |
| 05/31/2019 | 122 | | Memorandum in Opposition by USA as to ROGER JASON STONE, JR re 100 MOTION to Suppress (Zelinsky, Aaron) (Entered: 05/31/2019) |
| 05/31/2019 | 123 | | Memorandum in Opposition by USA as to ROGER JASON STONE, JR re 103 MOTION to Compel *unredacted CrowdStrike reports* (Zelinsky, Aaron) (Entered: 05/31/2019) |
| 06/03/2019 | | | MINUTE ORDER as to ROGER J. STONE, JR.The Court has defendant's motion for discovery based on selective prosecution 73 and defendant's motion for production of the unredacted Report of the Special Counsel 70 under advisement, and in connection with the Court's consideration of the motion to compel, the government submitted portions of the unredacted report to the Court for its in camera review. See Notice re In Camera Submissions 106 . Having reviewed all of the redactions, the Court seeks further information with respect to one category of redactions only: the material designated with blue boxes that was withheld on the basis that it could affect ongoing law |

| | | | |
|---|---|---|---|
| | | | enforcement matters, specifically, the instant case. The government is therefore ordered to submit a supplemental in camera submission by June 7, 2019 addressing whether releasing to the defense certain material to be identified in a sealed order would cause any harm to the prosecution or any other harm. The government need not address any of the redactions made on the basis of personal privacy or reputational harm, Federal Rule of Criminal Procedure 6(e), or national security or law enforcement concerns. And it need not repeat the points and authorities it has already supplied in support of its legal argument that the defendant is not entitled to the material, which the Court will consider, along with the points and authorities submitted by the defense, when it rules on the motion. SO ORDERED. Signed by Judge Amy Berman Jackson on 6/3/19. (DMK) (Entered: 06/03/2019) |
| 06/03/2019 | | | Set/Reset Deadlines as to ROGER JASON STONE, JR: Government's supplemental in camera submission due by June 7, 2019. (tg) (Entered: 06/03/2019) |
| 06/03/2019 | 131 | | LEAVE TO FILE DENIED– Notice as to ROGER JASON STONE, JR. This document is unavailable as the Court denied its filing. "Leave to file DENIED" by Judge Amy B. Jackson on 6/3/2019. Signed by Judge Amy Berman Jackson on 06/03/2019. (zvt) (Entered: 06/07/2019) |
| 06/06/2019 | 129 | | Joint MOTION to Continue *Hearing Scheduled for July 21, 2019* by USA as to ROGER JASON STONE, JR. (Marando, Michael) (Entered: 06/06/2019) |
| 06/06/2019 | | | Set/Reset Hearings as to ROGER J. STONE, JR: Motion Hearing set for 6/21/2019 at 10:00 AM in Courtroom 3 before Judge Amy Berman Jackson. (jth) (Entered: 06/06/2019) |
| 06/06/2019 | | | MINUTE ORDER granting 129 Joint Motion to Continue Hearing as to ROGER J. STONE, JR. It is ORDERED that the hearing currently set for June 21, 2019 is reset to July 16, 2019 at 10:00 AM in Courtroom 3. Signed by Judge Amy Berman Jackson on 6/6/19. (DMK) (Entered: 06/06/2019) |
| 06/06/2019 | | | Set/Reset Hearings as to ROGER J. STONE, JR: The Motions Hearing currently set for June 21, 2019 is reset to July 16, 2019 at 10:00 AM in Courtroom 3 before Judge Amy Berman Jackson. (jth) (Entered: 06/06/2019) |
| 06/07/2019 | 130 | | NOTICE *Regarding In Camera Submission* by USA as to ROGER JASON STONE, JR (Marando, Michael) (Entered: 06/07/2019) |
| 06/14/2019 | 132 | | NOTICE *Regarding Special Counsel's Report* by USA as to ROGER JASON STONE, JR (Kravis, Jonathan) (Entered: 06/14/2019) |
| 06/14/2019 | 133 | | REPLY TO OPPOSITION to Motion by ROGER JASON STONE, JR re 100 MOTION to Suppress (Routman, Chandler) (Entered: 06/14/2019) |
| 06/14/2019 | 134 | | REPLY TO OPPOSITION to Motion by ROGER JASON STONE, JR re 103 MOTION to Compel *unredacted CrowdStrike reports* (Routman, Chandler) (Entered: 06/14/2019) |
| 06/20/2019 | 135 | | MOTION for Leave to File *Sur–Reply* by USA as to ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order, # 2 Proposed Sur–Reply)(Zelinsky, Aaron) (Entered: 06/20/2019) |
| 06/20/2019 | 136 | | |

| | | | |
|---|---|---|---|
| | | | MOTION for Order to Show Cause by USA as to ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order, # 2 Ex. 1, # 3 Ex. 2, # 4 Ex. 3, # 5 Ex. 4, # 6 Ex. 5, # 7 Ex. 6, # 8 Ex. 7, # 9 Ex. 8)(Zelinsky, Aaron) (Entered: 06/20/2019) |
| 06/20/2019 | | | MINUTE ORDER granting 135 Motion for Leave to File Sur–Reply as to ROGER J. STONE JR. (1). The Clerk of Court is directed to file [135–2] the Government's Sur–Reply to Defendant's Motion to Suppress on the docket. Signed by Judge Amy Berman Jackson on 6/20/19. (DMK) (Entered: 06/20/2019) |
| 06/20/2019 | 137 | | SUR–REPLY by USA as to ROGER JASON STONE, JR re 100 MOTION to Suppress. (hsj) (Entered: 06/21/2019) |
| 06/20/2019 | 138 | | MOTION for Hearing by USA as to ROGER JASON STONE, JR. (See Docket Entry 136 to View Document). (hsj) (Entered: 06/21/2019) |
| 06/21/2019 | | | MINUTE ORDER as to ROGER J. STONE, JR. It is ORDERED that defendant may file by June 27, 2019 any response to the government's motion 136 and must show cause in writing by that date why the Court should not find that the defendant has violated the Court's order dated February 21, 2019 and his conditions of release. Signed by Judge Amy Berman Jackson on 6/21/19. (DMK) (Entered: 06/21/2019) |
| 06/21/2019 | | | Set/Reset Deadlines as to ROGER JASON STONE, JR: Defendant may file any response to the government's motion 136 by 6/27/2019 and must show cause in writing by that date why the Court should not find that the defendant has violated the Court's order dated February 21, 2019 and his conditions of release. (jth) (Entered: 06/21/2019) |
| 06/26/2019 | | | MINUTE ORDER granting 139 Government's Sealed Motion for Leave to File Under Seal as to ROGER J. STONE JR. (1). The Court grants the government's motion to file under seal but notes it may revisit the need for the seal after it has reviewed the materials more closely. The Clerk of Court is directed to file under seal [139–1] Government's Notice of Intention to Introduce Evidence Under Federal Rule of Evidence 404(b). Signed by Judge Amy Berman Jackson on 6/26/19. (DMK) (Entered: 06/26/2019) |
| 06/27/2019 | 141 | | RESPONSE by ROGER JASON STONE, JR re 136 MOTION for Order to Show Cause (Routman, Chandler) (Entered: 06/27/2019) |
| 07/08/2019 | 142 | | MOTION to Travel by ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Routman, Chandler) (Entered: 07/08/2019) |
| 07/09/2019 | | | MINUTE ORDER granting 143 Sealed Motion for Leave to File Document Under Seal as to ROGER J. STONE JR. (1). The Court grants defendant's motion to file under seal but notes it may revisit the need for the seal after it has reviewed the materials more closely. The Clerk of Court is directed to file under seal [143–1] Defendant's Response to Government's Notice of Intention to Introduce Evidence Under Federal Rule of Evidence 404(b), [143–2] Exhibit A to the response, and [143–3] Exhibit B to the response. Signed by Judge Amy Berman Jackson on 7/9/19. (DMK) (Entered: 07/09/2019) |
| 07/09/2019 | 146 | | MANDATE of USCA as to ROGER JASON STONE, JR re 33 Notice of Appeal – Interlocutory. In accordance with the order of 4/19/2019 this case be |

| | | |
|---|---|---|
| | | dismissed for lack of prosecution. USCA Case Number 19–3012. (Attachments: # 1 USCA Order filed on April 19, 2019)(zef, ) (Entered: 07/12/2019) |
| 07/16/2019 | | MINUTE ORDER as to ROGER J. STONE, JR. After receiving the government's motion for an order to show cause 136 , the Court ordered that the defendant may file "any response to the government's motion and must show in writing...why the Court should not find that the defendant has violated the Court's order dated February 21, 2019 and his conditions of release." Minute Order dated June 21, 2019. Based on its consideration of the facts and arguments set forth in the motion 136 , the defendant's response 141 , and the evidence and arguments presented at the hearing held on this date, and for the reasons set forth on the record at the hearing, the Court concluded that the defendant has violated its orders. It deferred taking any action pursuant to 18 U.S.C § 401 and Federal Rule of Criminal Procedure 42 to issue an order to show cause and initiate proceedings to punish the defendant for any violation of the media communication order. However, the Court found it necessary to modify defendant's conditions of release to ensure his future compliance with those conditions. Therefore, it is ORDERED that the conditions of defendant's pretrial release 21 , the February 15, 2019 media communications order 36 , and the order of February 21, 2019 are hereby modified to add the following additional condition: during the pendency of this case, defendant may not post or communicate on Instagram, Twitter, or Facebook in any way on any subject, including but not limited to forwarding, liking, re–posting, or re–tweeting anyone else's statements, articles, posts, or tweets. All previous restrictions on statements made to the media, in public settings, and on other social media about the Special Counsel's investigation, this case, or any of the participants in the investigation or the case, remain in force as set forth in the Court's orders of February 15, 2019 36 and February 21, 2019 and the conditions of release, and the defendant remains bound by all other conditions of release, including the prohibition on contacting witnesses. SO ORDERED. Signed by Judge Amy Berman Jackson on 7/16/19. Signed by Judge Amy Berman Jackson on 7/16/19. (DMK) (Entered: 07/16/2019) |
| 07/16/2019 | 148 | ORDER granting 142 Motion to Travel as to ROGER J. STONE JR. (1). See Order for details. Signed by Judge Amy Berman Jackson on 7/16/19. (DMK) (Entered: 07/16/2019) |
| 07/16/2019 | | Minute Entry for proceedings held before Judge Amy Berman Jackson: Motion Hearing as to ROGER J. STONE, JR. held on 7/16/2019 re: Defendant's 100 MOTION to Suppress, Defendant's 103 MOTION to Compel, and the Government's 136 MOTION for an Order to Show Cause. The 100 Motion to Suppress and the 103 Motion to Compel were Heard and Taken Under Advisement. The Court has issued a separate order regarding the Government's 136 MOTION for Order to Show Cause. Bond Status of Defendant: Defendant Remains on Personal Recognizance Bond; Court Reporter: Janice Dickman; Defense Attorneys: L. Peter Farkas, Robert C. Buschel, Bruce S. Rogow and Grant J. Smith; US Attorney: Michael Marando, Jonathan Kravis, Aaron Zelinsky and Adam Jed. (jth) (Entered: 07/16/2019) |
| 07/16/2019 | 165 | EXHIBIT LIST AND EXHIBITS as to Defendant ROGER J. STONE, JR. used by the Court at the hearing held on July 16, 2019. (jth) (Entered: 08/06/2019) |

| 07/17/2019 | 149 | | ORDER as to ROGER J. STONE, JR. See Order for details. Signed by Judge Amy Berman Jackson on 7/17/19. (DMK) (Entered: 07/17/2019) |
|---|---|---|---|
| 07/23/2019 | 150 | | MOTION to Travel by ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Routman, Chandler) (Entered: 07/23/2019) |
| 07/25/2019 | 151 | | ORDER granting 150 Motion to Travel as to ROGER J. STONE JR. (1). Signed by Judge Amy Berman Jackson on 7/25/19. (DMK) (Entered: 07/25/2019) |
| 07/26/2019 | 153 | | MOTION in Limine *To Exclude Certain Evidence and Argument Regarding Russian Election Interference* by USA as to ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Kravis, Jonathan) (Entered: 07/26/2019) |
| 07/26/2019 | 154 | | MOTION in Limine *To Exclude Evidence and Argument Regarding the Government's Investigation and Prosecution of This and Related Cases* by USA as to ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Kravis, Jonathan) (Entered: 07/26/2019) |
| 07/26/2019 | 155 | | MOTION in Limine *To Admit the Upload or Creation Date for Various Videos* by USA as to ROGER JASON STONE, JR. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Kravis, Jonathan) (Entered: 07/26/2019) |
| 07/26/2019 | 156 | | MOTION in Limine *To Admit Movie Clip* by USA as to ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Kravis, Jonathan) (Entered: 07/26/2019) |
| 07/26/2019 | 157 | | MOTION for Extension of Time to File *Motion in Limine to Admit Transcript* by USA as to ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Kravis, Jonathan) (Entered: 07/26/2019) |
| 07/26/2019 | 158 | | MOTION in Limine *to admit evidence* by ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Buschel, Robert) (Entered: 07/26/2019) |
| 07/26/2019 | | | MINUTE ORDER granting as to ROGER J. STONE JR. 152 Government's Sealed Motion for Leave to File under Seal. The Clerk of Court is directed to file under seal [152–2] the Government's Motion in Limine to Admit Two Newspaper Articles as Part of the Government's Rule 404(b) Evidence, [152–3] Exhibit A, and [152–4] Exhibit B. Signed by Judge Amy Berman Jackson on 7/26/19. (DMK) (Entered: 07/26/2019) |
| 07/29/2019 | | | MINUTE ORDER granting 157 Government's Unopposed Motion for Extension of Time to File as to ROGER J. STONE JR. (1). It is ORDERED that the government may file a motion in limine to admit the transcript of the defendant's testimony before the House Permanent Select Committee on Intelligence on or before August 23, 2019. It is FURTHER ORDERED that the opposition is due by September 6, 2019 and the reply is due by September 13, 2019. Signed by Judge Amy Berman Jackson on 7/29/19. (DMK) (Entered: 07/29/2019) |
| 07/29/2019 | | | Set/Reset Deadlines as to ROGER J. STONE, JR: The government may file a motion in limine to admit the transcript of the defendant's testimony before the House Permanent Select Committee on Intelligence on or before 8/23/2019. It |

| | | | |
|---|---|---|---|
| | | | is FURTHER ORDERED that the opposition is due by 9/6/2019 and the reply is due by 9/13/2019. (jth) (Entered: 07/30/2019) |
| 07/31/2019 | 160 | | MOTION for Discovery *early return* by ROGER JASON STONE, JR. (Attachments: # 1 Exhibit CS Holdings, # 2 Exhibit CS Services, # 3 Exhibit CS Inc., # 4 Text of Proposed Order)(Buschel, Robert) Modified event title on 8/12/2019 (znmw). (Entered: 07/31/2019) |
| 07/31/2019 | 161 | | MOTION for Discovery *early return of subpoena to HPSCI* by ROGER JASON STONE, JR. (Attachments: # 1 Exhibit subpoena HPSCI, # 2 Text of Proposed Order)(Buschel, Robert) (Entered: 07/31/2019) |
| 08/01/2019 | 162 | | ORDER as to ROGER J. STONE, JR (1) denying defendant's 69 Motion to Dismiss Case; granting in part and denying in part 70 Motion to Compel the Complete Report of the Special Counsel; denying 71 Motion to Enjoin Prosecution; denying 72 Motion to Dismiss Due to Defects in the Indictment Pursuant to Fed. R. Crim. P. 12(b)(3)(B); and denying 73 Motion for Discovery based on Selective Prosecution. It is ORDERED that the government shall produce in unredacted form to defendant by August 8, 2019 the materials set forth in the order. See order for details. Signed by Judge Amy Berman Jackson on 8/1/19. (DMK) (Entered: 08/01/2019) |
| 08/01/2019 | 163 | | MEMORANDUM OPINION as to ROGER J. STONE, JR. Signed by Judge Amy Berman Jackson on 8/1/19. (DMK) (Entered: 08/01/2019) |
| 08/05/2019 | 164 | | NOTICE *of Intent to Respond Within 14 Days* by USA as to ROGER JASON STONE, JR re 161 MOTION for Discovery *early return of subpoena to HPSCI* (Marando, Michael) (Entered: 08/05/2019) |
| 08/09/2019 | 166 | | MOTION to Modify *Defendant's Motion to Travel (Dkt. 150)* by ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Routman, Chandler) (Entered: 08/09/2019) |
| 08/09/2019 | 168 | | RESPONSE by ROGER JASON STONE, JR re 153 MOTION in Limine *To Exclude Certain Evidence and Argument Regarding Russian Election Interference* (Buschel, Robert) (Entered: 08/09/2019) |
| 08/09/2019 | 169 | | RESPONSE by ROGER JASON STONE, JR re 154 MOTION in Limine *To Exclude Evidence and Argument Regarding the Government's Investigation and Prosecution of This and Related Cases* (Buschel, Robert) (Entered: 08/09/2019) |
| 08/09/2019 | 170 | | RESPONSE by ROGER JASON STONE, JR re 155 MOTION in Limine *To Admit the Upload or Creation Date for Various Videos* (Buschel, Robert) (Entered: 08/09/2019) |
| 08/09/2019 | 171 | | RESPONSE by ROGER JASON STONE, JR re 156 MOTION in Limine *To Admit Movie Clip* (Attachments: # 1 Exhibit transcript of movie clip)(Buschel, Robert) (Entered: 08/09/2019) |
| 08/09/2019 | 172 | | Memorandum in Opposition by USA as to ROGER JASON STONE, JR re 158 MOTION in Limine *to admit evidence* (Kravis, Jonathan) (Entered: 08/09/2019) |
| 08/09/2019 | 181 | | MOTION for Leave to File by DEMOCRATIC CONGRESSIONAL CAMPAIGN COMMITTEE and DEMOCRATIC NATIONAL |

| | | | |
|---|---|---|---|
| | | | COMMITTEE as to ROGER JASON STONE, JR. (Attachments: # 1 Memorandum in Support of their Motion for Leave and Opposition to Defendant's Request for Rule 17(C) Subpoena, # 2 Text of Proposed Order)(zef, ) (Entered: 08/16/2019) |
| 08/09/2019 | 182 | | ORDER granting 181 Motion for Leave to File as to ROGER JASON STONE JR. (1). Signed by Judge Amy Berman Jackson on 8/9/2019. (zef, ) (Entered: 08/16/2019) |
| 08/09/2019 | 183 | | Memorandum in Support of their Motion for Leave and Opposition to Defendant's Support of their 181 Motion for Leave and Opposition to 160 Defendant's Request for Rule 17(c) Subpoena by DEMOCRATIC CONGRESSIONAL CAMPAIGN COMMITTEE and DEMOCRATIC NATIONAL COMMITTEE as to ROGER JASON STONE, JR. (zef, ) Modified text on 8/16/2019 (zef, ). (Entered: 08/16/2019) |
| 08/12/2019 | 173 | | ORDER granting 166 unopposed Motion to Modify Permission to Travel as to ROGER J. STONE JR. (1). See Order for details. Signed by Judge Amy Berman Jackson on 8/12/19. (DMK) (Entered: 08/12/2019) |
| 08/12/2019 | 175 | | ORDER as to ROGER J. STONE JR. This matter having come before the Court pursuant to the 174 Motion of the United States for leave to file under seal its motion for in camera review of redacted witness statements, it is hereby ORDERED that the government's motion is GRANTED, and the government's motion for in camera review of redacted witness statements and the government's motion to seal are sealed until further order of the Court. The Court will reconsider the government's motion to seal at the conclusion of the trial in this case. Signed by Judge Amy Berman Jackson on 8/12/2019. (zjth) (Entered: 08/13/2019) |
| 08/13/2019 | | | MINUTE ORDER. It is ORDERED that the parties shall file a submission by August 23, 2019 informing the Court whether they have any objection pursuant to 28 U.S.C. § 1861 or on any other ground to the pre–screening of potential jurors being summoned to complete the questionnaire by the District Court Jury Office based on the potential jurors' availability for a trial that could take at least two weeks to complete, and if so, setting forth the points and authorities that support their respective positions. Signed by Judge Amy Berman Jackson on 8/13/19. (DMK) (Entered: 08/13/2019) |
| 08/13/2019 | 177 | | MOTION to Travel by ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Routman, Chandler) (Entered: 08/13/2019) |
| 08/13/2019 | 178 | | ORDER as to ROGER J. STONE JR. This matter having come before the Court pursuant to the 176 motion of the United States for in camera review of redacted witness statements, it is hereby ORDERED that the government's 176 motion is GRANTED. On or before August 26, 2019, the government shall submit to the Court for in camera review the record of witness statements discussed in the motion showing the proposed redactions, as well as the grand jury transcripts of the witness. Signed by Judge Amy Berman Jackson on 8/13/2019. (zjth) (Entered: 08/13/2019) |
| 08/13/2019 | | | Set/Reset Deadlines as to ROGER J. STONE, JR: The parties shall file a submission by 8/23/2019 informing the Court whether they have any objection pursuant to 28 U.S.C. § 1861 or on any other ground to the pre–screening of potential jurors being summoned to complete the questionnaire by the District |

| | | | |
|---|---|---|---|
| | | | Court Jury Office based on the potential jurors' availability for a trial that could take at least two weeks to complete, and if so, setting forth the points and authorities that support their respective positions. (jth) (Entered: 08/14/2019) |
| 08/14/2019 | 179 | | Memorandum in Opposition by USA as to ROGER JASON STONE, JR re 161 MOTION for Discovery *early return of subpoena to HPSCI* (Kravis, Jonathan) (Entered: 08/14/2019) |
| 08/15/2019 | 180 | | ORDER granting 177 Motion to Travel as to ROGER J. STONE JR. (1). See Order for details. Signed by Judge Amy Berman Jackson on 8/15/19. (DMK) (Entered: 08/15/2019) |
| 08/16/2019 | 184 | | Proposed Voir Dire by USA as to ROGER JASON STONE, JR (Attachments: # 1 Exhibit A)(Kravis, Jonathan) (Entered: 08/16/2019) |
| 08/16/2019 | 185 | | REPLY in Support by USA as to ROGER JASON STONE, JR re 153 MOTION in Limine *To Exclude Certain Evidence and Argument Regarding Russian Election Interference* (Kravis, Jonathan) (Entered: 08/16/2019) |
| 08/16/2019 | 186 | | REPLY in Support by USA as to ROGER JASON STONE, JR re 156 MOTION in Limine *To Admit Movie Clip* (Kravis, Jonathan) (Entered: 08/16/2019) |
| 08/16/2019 | 188 | | REPLY in Support by USA as to ROGER JASON STONE, JR re 154 MOTION in Limine *To Exclude Evidence and Argument Regarding the Government's Investigation and Prosecution of This and Related Cases* (Kravis, Jonathan) (Entered: 08/16/2019) |
| 08/16/2019 | 189 | | REPLY TO OPPOSITION to Motion by ROGER JASON STONE, JR re 161 MOTION for Discovery *early return of subpoena to HPSCI* (Buschel, Robert) (Entered: 08/16/2019) |
| 08/16/2019 | 190 | | REPLY TO OPPOSITION to Motion by ROGER JASON STONE, JR re 158 MOTION in Limine *to admit evidence* (Buschel, Robert) (Entered: 08/16/2019) |
| 08/21/2019 | 191 | | Unopposed MOTION for Extension of Time to File by USA as to ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Kravis, Jonathan) (Entered: 08/21/2019) |
| 08/22/2019 | | | MINUTE ORDER granting 191 Government's Second Unopposed Motion for Extension of Time to File as to ROGER J. STONE JR. (1). It is ORDERED that the government may file a motion in limine to admit the transcript of defendant's testimony before the House Permanent Select Committee on Intelligence by September 20, 2019. Defendant's response is due by October 4, 2019, and the government's reply, if any, is due October 11, 2019. Signed by Judge Amy Berman Jackson on 8/22/19. (DMK) (Entered: 08/22/2019) |
| 08/22/2019 | 192 | | RESPONSE *re Government's Response to August 13, 2019 Minute Order Regarding Jury Selection Procedure* by USA as to ROGER JASON STONE, JR re Order,, (Marando, Michael) Modified text on 8/23/2019 zef, ). (Entered: 08/22/2019) |
| 08/23/2019 | 193 | | RESPONSE *of response to minute order of August 13, 2019 regarding jury selection* by ROGER JASON STONE, JR (Buschel, Robert) Modified text on |

| | | | |
|---|---|---|---|
| | | | 8/23/2019 (zef, ). (Entered: 08/23/2019) |
| 08/26/2019 | 194 | | MOTION for Extension of Time to File *Joint Pretrial Statement* by ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Routman, Chandler) (Entered: 08/26/2019) |
| 08/27/2019 | | | MINUTE ORDER granting 194 Defendant's Motion for Extension of Time to File Joint Pretrial Statement as to ROGER JASON STONE JR. (1). It is ORDERED that the Joint Pretrial Statement is due September 6, 2019. No further extensions will be granted, and the Pretrial Statement, which is a joint document, must comport with the instructions set forth in the scheduling order 65 . Signed by Judge Amy Berman Jackson on 8/27/19. (DMK) (Entered: 08/27/2019) |
| 08/29/2019 | | | Set/Reset Hearings as to ROGER JASON STONE, JR: Pretrial Conference reset for 9/25/2019 at 10:00 AM in Courtroom 3 before Judge Amy Berman Jackson. (tb) (Entered: 08/29/2019) |
| 09/05/2019 | 195 | | MOTION to Modify *Defendant's Motion to Travel (Dkt. 180)* re 180 Order by ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Routman, Chandler) Modified to add link on 9/6/2019 (znmw). (Entered: 09/05/2019) |
| 09/05/2019 | 196 | | LEAVE TO FILE DENIED– Amicus as to ROGER JASON STONE, JR This document is unavailable as the Court denied its filing. "Leave to File DENIED" by Judge Amy B. Jackson on 9/5/2019. Signed by Judge Amy Berman Jackson on 9/5/2019. (zef, ) (Entered: 09/06/2019) |
| 09/05/2019 | 197 | | LEAVE TO FILE DENIED– Amicus as to ROGER JASON STONE, JR This document is unavailable as the Court denied its filing. "Leave to File DENIED" by Judge Amy B. Jackson on 9/5/2019. Signed by Judge Amy Berman Jackson on 9/5/2019. (zef, ) (Entered: 09/06/2019) |
| 09/06/2019 | 198 | | ORDER granting 195 Motion to Travel as to ROGER J. STONE JR. (1). See Order for details. Signed by Judge Amy Berman Jackson on 9/6/19. (DMK) (Entered: 09/06/2019) |
| 09/06/2019 | 199 | | PRETRIAL MEMORANDUM *JOINT PRETRIAL STATEMENT* by USA as to ROGER JASON STONE, JR (Attachments: # 1 Joint Statement of Case, # 2 Proposed Jury Instructions, # 3 Stipulations, # 4 Government's Proposed Verdict Form, # 5 Defendant's Proposed Verdict Form)(Marando, Michael) (Entered: 09/06/2019) |
| 09/09/2019 | | | MINUTE ORDER granting 200 Sealed Motion for Leave to File Documents Under Seal as to ROGER J. STONE JR. (1). The Clerk of Court is directed to file under seal [Dkt. 200–1] the Government's Exhibit List and [Dkt. 200–2] Defendant's Exhibit List. The parties are ordered to file on the public docket redacted versions of their exhibit lists by September 23, 2019. SO ORDERED. Signed by Judge Amy Berman Jackson on 9/9/19. (DMK) (Entered: 09/09/2019) |
| 09/10/2019 | 205 | | TRANSCRIPT OF PROCEEDINGS in case as to ROGER JASON STONE, JR before Judge Amy Berman Jackson held on July 16, 2019; Page Numbers: 1–77. Date of Issuance:September 10, 2019. Court Reporter: Janice Dickman, Telephone number: 202–354–3267, Transcripts may be ordered by submitting |

| | | |
|---|---|---|
| | | the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.</P></P> Redaction Request due 10/1/2019. Redacted Transcript Deadline set for 10/11/2019. Release of Transcript Restriction set for 12/9/2019.(Dickman, Janice) (Entered: 09/10/2019) |
| 09/12/2019 | 206 | LEAVE TO FILE DENIED− Amicus/Notice 66 as to ROGER JASON STONE, JR. " Leave to File DENIED" by Judge Amy B. Jackson on 9/12/19. This document is unavailable as the Court denied its filing. Signed by Judge Amy Berman Jackson on 9/12/19. (ztl) (Entered: 09/13/2019) |
| 09/12/2019 | | Minute Entry for proceedings held before Judge Amy Berman Jackson: Voir Dire as to ROGER J. STONE, JR. held on 9/12/2019. Defendant's appearance was waived. (See Dkt. #207). (120 jurors appeared to complete questionnaires). Bond Status of Defendant: Defendant Remains on Personal Recognizance Bond; Court Reporter: Janice Dickman; Defense Attorneys: Robert C. Buschel and Tara Campion; US Attorney: Jonathan Ian Kravis. (jth) (Entered: 09/29/2019) |
| 09/13/2019 | | MINUTE ORDER as to ROGER J. STONE, JR. The Court notes that as set forth in the Scheduling Order 65 , the parties must inform the Court of their proposed strikes for cause by September 19, 2019. Signed by Judge Amy Berman Jackson on 9/13/19. (DMK) (Entered: 09/13/2019) |
| 09/13/2019 | | MINUTE ORDER as to ROGER J. STONE, JR. Each party shall inform the Court of any proposed strikes for cause by filing under seal a list of those jurors, identified by number, it maintains should be struck based on the written jury questionnaire responses. The filing should contain only the party's list, with no argument. Signed by Judge Amy Berman Jackson on 9/19/19. (DMK) (Entered: 09/13/2019) |
| 09/13/2019 | | Set/Reset Deadlines as to ROGER JASON STONE, JR: Proposed strikes for cause due by 9/19/2019. (tg) (Entered: 09/13/2019) |
| 09/15/2019 | 207 | NOTICE *of Waiver* by ROGER JASON STONE, JR (Routman, Chandler) (Entered: 09/15/2019) |
| 09/17/2019 | 210 | LEAVE TO FILE DENIED− Notice 67 as to ROGER JASON STONE, JR This document is unavailable as the Court denied its filing.. Signed by Judge Amy Berman Jackson on 9/17/2019. (zef, ) (Entered: 09/18/2019) |
| 09/19/2019 | 212 | MEMORANDUM OPINION AND ORDER as to ROGER J. STONE, JR. For the reasons stated in the Memorandum Opinion and Order, defendant's 103 Motion to Compel Unredacted Versions of the Crowdstrike Reports is DENIED as moot, and defendant's 100 Motion to Suppress is DENIED. (see the document for complete details). (This document is SEALED and only |

| | | | |
|---|---|---|---|
| | | | available to authorized persons.) Signed by Judge Amy Berman Jackson on 9/19/2019. (zjth) UNSEALED on 9/24/2019 pursuant to the minute order issued this date. (jth). (Entered: 09/19/2019) |
| 09/19/2019 | | | MINUTE ORDER as to ROGER J. STONE, JR. The Court has docketed its Memorandum Opinion and Order on defendant's Motion to Suppress 100 and Motion to Compel 103 under seal because it is based, in part, on sealed exhibits. The parties are ORDERED to inform the Court by September 23, 2019 whether they object to the unsealing of the opinion. If they are of the view that certain material should remain under seal, the parties shall confer and file under seal by September 26, 2019 a version of the opinion underlining the information they propose to be redacted and an proposed public version of opinion reflecting those redactions. Signed by Judge Amy Berman Jackson on 9/19/19. (DMK) (Entered: 09/19/2019) |
| 09/19/2019 | 214 | | LEAVE TO FILE DENIED– Notice 68 as to ROGER JASON STONE, JR This document is unavailable as the Court denied its filing.. Signed by Judge Amy Berman Jackson on 9/19/2019. (zef, ) (Entered: 09/20/2019) |
| 09/20/2019 | | | MINUTE ORDER as to ROGER JASON STONE, JR. In consideration of the defendant's motion 160 for an order permitting defendant to issue an early return subpoena to CrowdStrike Holdings, Inc. et. al., and the Opposition 183 filed by the Democratic National Committee and the Democratic Congressional Campaign Committee, movants DNC and DCCC are hereby ORDERED to deliver a copy of the unredacted report, and any documents that memorialize the retention of CrowdStrike by counsel for the DNC and DCCC, to chambers by September 23, 2019 for the Court's in camera review. The Court further notifies counsel for the DCCC and DNC that it anticipates ruling on the motion at the pretrial conference scheduled for September 25, 2019 at 10:00 am in Courtroom 3. SO ORDERED. Signed by Judge Amy Berman Jackson on 9/20/2019. (lcabj2) (Entered: 09/20/2019) |
| 09/20/2019 | 213 | | STATUS REPORT *Regarding Motion in Limine* by USA as to ROGER JASON STONE, JR (Kravis, Jonathan) (Entered: 09/20/2019) |
| 09/23/2019 | 216 | | NOTICE *of Filing of Exhibit List* by USA as to ROGER JASON STONE, JR (Attachments: # 1 Government's Redacted Exhibit List)(Marando, Michael) (Entered: 09/23/2019) |
| 09/23/2019 | 218 | | RESPONSE TO ORDER OF THE COURT re Minute Order by ROGER JASON STONE, JR (Routman, Chandler) Modified event title on 9/24/2019 (znmw). (Entered: 09/23/2019) |
| 09/23/2019 | 219 | | NOTICE *of Redacted Exhibit List* by ROGER JASON STONE, JR (Attachments: # 1 Supplement)(Routman, Chandler) (Entered: 09/23/2019) |
| 09/23/2019 | 220 | | NOTICE *of No Objection to Unsealing Memorandum Opinion* by USA as to ROGER JASON STONE, JR (Marando, Michael) (Entered: 09/23/2019) |
| 09/23/2019 | 221 | | LEAVE TO FILE DENIED– Notice 69 as to ROGER JASON STONE, JR. "Leave to File Denied" by Judge Amy Berman Jackson on 9/23/2019. This document is unavailable as the Court denied its filing.. Signed by Judge Amy Berman Jackson on 9/23/2019. (zef, ) (Entered: 09/24/2019) |
| 09/24/2019 | | | |

| | | | |
|---|---|---|---|
| | | | MINUTE ORDER as to ROGER J. STONE, JR. Since neither party objects to the unsealing of the Court's September 19, 2019 Memorandum Opinion 212 , the Clerk of Court is hereby directed to unseal 212 the opinion. SO ORDERED. Signed by Judge Amy Berman Jackson on 9/24/19. (DMK) (Entered: 09/24/2019) |
| 09/25/2019 | | | Minute Entry for proceedings held before Judge Amy Berman Jackson: Pretrial Conference as to ROGER J. STONE, JR. begun and held on 9/25/2019. Pretrial Conference continued to 11/4/2019 at 10:00 AM in Courtroom 3 before Judge Amy Berman Jackson. (ORDER FORTHCOMING). Bond Status of Defendant: Defendant Remains on Personal Recognizance Bond; Court Reporter: Janice Dickman; Defense Attorneys: Bruce S. Rogow, Grant J. Smith, Chandler Paige Routman and Tara A. Campion; US Attorneys: Michael John Marando, Jonathan Ian Kravis, Aaron Zelinsky and Adam C. Jed. (jth) (Entered: 09/25/2019) |
| 09/26/2019 | 223 | | NOTICE *Regarding Filing of Redacted Supplemental Exhibits* by DEMOCRATIC CONGRESSIONAL CAMPAIGN COMMITTEE, DEMOCRATIC NATIONAL COMMITTEE as to ROGER JASON STONE, JR (Attachments: # 1 Exhibit 1 [Redacted], # 2 Exhibit 2 [Redacted])(Nkwonta, Uzoma) (Entered: 09/26/2019) |
| 09/26/2019 | | | MINUTE ORDER. The Court ruled on the following motions as to ROGER J. STONE JR. for the reasons stated in open court on September 25, 2019. The Court denied defendant's motion for early return of a subpoena to CrowdStrike 160 ; and defendant's motion for early return of a subpoena to the House Permanent Select Committee on Intelligence 161 was denied, with the defendant's concurrence, as moot. The Court took the government's Sealed Notice of Intention to Introduce Rule 404(b) evidence 140 under advisement, and deferred ruling with respect to both categories of evidence at this time. The government's Sealed Motion to introduce two newspaper articles related to the proposed Rule 404(b) evidence 159 was denied; the government may seek permission to introduce redacted versions of those articles if the evidence is admitted. The government's motion in limine to exclude evidence or argument regarding Russian interference in the 2016 election 153 was granted, and defendant's related motion in limine to admit evidence that Wikileaks did not receive the stolen Democratic National Committee, Democratic Congressional Campaign Committee, and Clinton Campaign emails from the Russian state 158 was denied. The government's motion in limine to exclude evidence or argument regarding alleged misconduct in the government's investigation or prosecution of the instant case and related cases 154 was granted, without prejudice to defendant's right to cross examine government witnesses with Giglio information. The government's motion in limine to admit the creation/upload date for video evidence 155 was granted. The Court deferred ruling on the government's motion in limine to introduce an excerpt of the movie The Godfather: Part II 156 ; the parties are ordered to inform the Court by October 25, 2019 whether they have reached a stipulation that resolves the motion. Pursuant to Fed. R. Crim. Pro. 26.2 and 18 U.S.C. § 3500(c), the Court approved the proposed redactions to Jencks material submitted for in camera review 176 , and the government is further permitted to file a motion in limine concerning the same witness's in–court testimony by October 4, 2019; defendant must file any response by October 18, 2019. With respect to exhibits, the parties were ordered to meet and confer concerning the |

| | | | |
|---|---|---|---|
| | | | excerpts of Government Exhibit 6 that the government intends to introduce instead of the entire document; the defense may propose any additional excerpts it submits must be introduced for completeness pursuant to Fed. R. Evid. 106, and the parties must submit any disputes to the Court by October 25, 2019. The defense must inform the Court of any objections it has to the admission of any of the individual communications included in Government Exhibits 79 and 132 by October 25, 2019. It is further ORDERED that the transcript of the sealed portion of the pretrial conference held on September 25, 2019 is unsealed for the sole purpose of allowing the court reporter to provide the transcript to the parties. SO ORDERED. Signed by Judge Amy Berman Jackson on 9/26/19. (DMK) (Entered: 09/26/2019) |
| 09/26/2019 | 224 | | LEAVE TO FILE DENIED– Notice 70 as to ROGER JASON STONE, JR This document is unavailable as the Court denied its filing. "Leave to file Denied" by Judge Amy B. Jackson on 9/26/2019.. Signed by Judge Amy Berman Jackson on 9/26/2019. (zed, ) (Entered: 10/01/2019) |
| 09/26/2019 | 225 | | LEAVE TO FILE DENIED– Notice 71 as to ROGER JASON STONE, JR This document is unavailable as the Court denied its filing. "Leave to file Denied" by Judge Amy B. Jackson on 9/26/2019. Signed by Judge Amy Berman Jackson on 9/26/2019. (zed, ) (Entered: 10/01/2019) |
| 09/26/2019 | 226 | | LEAVE TO FILE DENIED– Notice 72 as to ROGER JASON STONE, JR This document is unavailable as the Court denied its filing. "Leave to file Denied" by Judge Amy B. Jackson on 9/26/2019. Signed by Judge Amy Berman Jackson on 9/26/2019. (zed, ) (Entered: 10/01/2019) |
| 09/27/2019 | | | MINUTE ORDER as to ROGER J. STONE, JR. By October 11, 2019, counsel for the defendant must file a notice identifying the attorney on the team who will be serving as lead counsel at trial and confirming compliance with Local Civil Rule 83.2(b). SO ORDERED. Signed by Judge Amy Berman Jackson on 9/27/19. (DMK) (Entered: 09/27/2019) |
| 09/30/2019 | | | MINUTE ORDER granting 222 Sealed Motion for Leave to File Documents Under Seal as to ROGER J. STONE. The Clerk of Court is directed to filed under seal the unredacted supplemental exhibits of the Democratic Congressional Campaign Committee and the Democratic National Committee, [Dkt. # 222–1] Exhibit 1 and [Dkt. # 222–2] Exhibit 2. Signed by Judge Amy Berman Jackson on 9/30/19. (DMK) (Entered: 09/30/2019) |
| 10/02/2019 | | | MINUTE ORDER. Given the number of pleadings the Court has received from this individual, the number of times he has been advised that he cannot docket pleadings in this criminal case; and the burden the inordinate volume of correspondence imposes on the Clerk's Office and the Court, the Clerk's Office may simply discard any submissions from David Andrew Christenson in USA v. Roger J. Stone, Jr., 19–cr–018 (ABJ) without further processing. SO ORDERED. By Judge Amy Berman Jackson on 10/2/2019. (jth) (Entered: 10/02/2019) |
| 10/02/2019 | 229 | | MOTION to Travel by ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Routman, Chandler) (Entered: 10/02/2019) |
| 10/02/2019 | 230 | | ORDER as to ROGER J. STONE, JR. Upon further review of 140 Government's Notice of Intention to Introduce Evidence Under Federal Rule of Evidence 404(b), the arguments made by the parties at the September 25, |

| | | |
|---|---|---|
| | | 2019 pretrial conference, and the relevant authorities, the Court finds the evidence to be admissible. See Order for details. Signed by Judge Amy Berman Jackson on 10/2/19. (DMK) (Entered: 10/02/2019) |
| 10/03/2019 | | Set/Reset Deadlines as to ROGER J. STONE, JR: The Court deferred ruling on the government's motion in limine to introduce an excerpt of the movie The Godfather: Part II 156 ; the parties are ordered to inform the Court by 10/25/2019 whether they have reached a stipulation that resolves the motion. Pursuant to Fed. R. Crim. Pro. 26.2 and 18 U.S.C. § 3500(c), the Court approved the proposed redactions to Jencks material submitted for in camera review 176, and the government is further permitted to file a motion in limine concerning the same witness's in−court testimony by 10/4/2019; defendant must file any response by 10/18/2019. With respect to exhibits, the parties were ordered to meet and confer concerning the excerpts of Government Exhibit 6 that the government intends to introduce instead of the entire document; the defense may propose any additional excerpts it submits must be introduced for completeness pursuant to Fed. R. Evid. 106, and the parties must submit any disputes to the Court by 10/25/2019. The defense must inform the Court of any objections it has to the admission of any of the individual communications included in Government Exhibits 79 and 132 by 10/25/2019. (jth) (Entered: 10/03/2019) |
| 10/03/2019 | 231 | ORDER granting 229 Motion to Travel as to ROGER J. STONE JR. (1). See Order for details. Signed by Judge Amy Berman Jackson on 10/3/19. (DMK) (Entered: 10/03/2019) |
| 10/03/2019 | 232 | NOTICE *of Lead Trial Counsel* by ROGER JASON STONE, JR (Routman, Chandler) (Entered: 10/03/2019) |
| 10/09/2019 | 236 | TRANSCRIPT OF PROCEEDINGS in case as to ROGER JASON STONE, JR before Judge Amy Berman Jackson held on September 25, 2019; Page Numbers: 1−99. Date of Issuance:October 9, 2019. Court Reporter: Janice Dickman, Telephone number: 202−354−3267, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 10/30/2019. Redacted Transcript Deadline set for 11/9/2019. Release of Transcript Restriction set for 1/7/2020.(Dickman, Janice) (Entered: 10/09/2019) |
| 10/17/2019 | 238 | NOTICE *Concerning Movie Clip* by USA as to ROGER JASON STONE, JR |

| | | |
|---|---|---|
| | | (Jed, Adam) (Entered: 10/17/2019) |
| 10/21/2019 | | MINUTE ORDER denying 156 Motion in Limine as to ROGER J. STONE JR. (1). Upon consideration of 156 the government's motion in limine to introduce an excerpt of the movie The Godfather: Part II, 171 defendant's response, 186 the government's reply, and 238 the government's notice concerning the clip, the government's motion is hereby DENIED. Pursuant to Federal Rule of Evidence 403, the government will not be permitted to introduce the clip itself in its case in chief because the prejudicial effect of the videotape, which includes a number of extraneous matters, outweighs its probative value. The government may introduce a transcript of the clip. This ruling is without prejudice to a renewed request after the cross–examination of Person 2 or the testimony of the defendant, if any. SO ORDERED. Signed by Judge Amy Berman Jackson on 10/21/19. (DMK) (Entered: 10/21/2019) |
| 10/25/2019 | 242 | ORDER on trial logistics as to ROGER J. STONE, JR. See Order for details. Signed by Judge Amy Berman Jackson on 10/25/19. (DMK) (Entered: 10/25/2019) |
| 10/29/2019 | 243 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by USA as to ROGER JASON STONE, JR. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Government's Revised Exhibit List, # 2 Exhibit Defendant's Revised Exhibit List)(Kravis, Jonathan) (Entered: 10/29/2019) |
| 10/30/2019 | | MINUTE ORDER granting 243 government's unopposed motion to seal exhibit lists as to ROGER J. STONE JR. (1). The Clerk of Court is directed to file under seal [243–1] Government's Revised Exhibit List and [243–2] Defendant's Revised Exhibit List. The Clerk of Court is also directed to unseal 243 the motion for leave to file under seal itself. Signed by Judge Amy Berman Jackson on 10/30/19. (DMK) (Entered: 10/30/2019) |
| 11/04/2019 | | Minute Entry for proceedings held before Judge Amy Berman Jackson: Pretrial Conference as to ROGER J. STONE, JR. resumed and concluded on 11/4/2019. (ORDER FORTHCOMING). Bond Status of Defendant: Defendant Remains on Personal Recognizance Bond; Court Reporter: Janice Dickman; Defense AttorneyS: Bruce S. Rogow, Robert C. Buschel, Grant Smith, Chandler Paige Routman and Tara Campion; US AttorneyS: Aaron Aelinsky, Jonathan Kravis, Michael Marando and Adam Jed. (jth) (Entered: 11/04/2019) |
| 11/04/2019 | 247 | JUROR QUESTIONNAIRE as to ROGER J. STONE, JR.(DMK). Modified on 11/4/2019 (jth). (Entered: 11/04/2019) |
| 11/04/2019 | 248 | ORDER on trial exhibits as to ROGER J. STONE, JR. See Order for details. Signed by Judge Amy Berman Jackson on 11/4/19. (DMK) (Entered: 11/04/2019) |
| 11/05/2019 | | Minute Entry for proceedings held before Judge Amy Berman Jackson: Jury Selection as to ROGER J. STONE, JR. begun and held on 11/5/2019 as to Counts: 1,2–6,7. Defendant's Appearance was waived for the afternoon session. Jury Selection continued to 11/6/2019 at 9:30 AM in Courtroom 3 before Judge Amy Berman Jackson. Bond Status of Defendant: Defendant Remains on Personal Recognizance Bond; Court Reporters: Janice Dickman and Crystal Pilgrim; Defense Attorneys: Bruce S. Rogow, Robert C. Buschel, |

| | | |
|---|---|---|
| | | Grant Smith, Chandler Paige Routman and Tara Campion; US Attorneys: Aaron Aelinsky, Jonathan Kravis, Michael Marando and Adam Jed. (jth) (Entered: 11/06/2019) |
| 11/06/2019 | | Minute Entry for proceedings held before Judge Amy Berman Jackson: Jury Selection as to ROGER J. STONE, JR. resumed and concluded. Twelve (12) Jurors and Two (2) alternates were selected and sworn. Jury Trial begun and held on 11/6/2019 as to Counts 1,2−6,7. Jury Trial continued to 11/7/2019 at 9:30 AM in Courtroom 3 before Judge Amy Berman Jackson. Bond Status of Defendant: Defendant Remains on Personal Recognizance Bond; Court Reporters: Janice Dickman/AM; Lisa Griffith/PM; Defense Attorneys: Bruce S. Rogow, Robert C. Buschel, Grant J. Smith, Tara Campion and Chandler Paige Routman; US Attorneys: Jonathan Ian Kravis, Aaron S.J. Zelinsky, Michael John Marando and Adam C. Jed; Government Witness: Michelle Taylor. (jth) (Entered: 11/06/2019) |
| 11/06/2019 | | MINUTE ORDER: The Court having impaneled the jury in this action, it is hereby ORDERED that during trial and deliberations all meals for said jury shall be paid by the Clerk of the Court for the U.S. District Court for the District of Columbia. Approved by Judge Amy Berman Jackson on 11/6/2019. (jth) (Entered: 11/06/2019) |
| 11/06/2019 | 251 | LEAVE TO FILE DENIED– RE: Motion for Leave to File Evidence of Violation of Gag Order in 19−cr−18 as to ROGER JASON STONE, JR This document is unavailable as the Court denied its filing. "Leave to file DENIED" by Judge Amy B. Jackson on 11/6/2019.. Signed by Judge Amy Berman Jackson on 11/6/2019. (zed, ) Modified text on 11/7/2019 (zed, ). (Entered: 11/07/2019) |
| 11/07/2019 | | Minute Entry for proceedings held before Judge Amy Berman Jackson: Jury Trial as to ROGER J. STONE, JR. resumed and held on 11/7/2019 as to Counts 1,2−6,7. Same Twelve (12) jurors and Two (2) alternates. Jury Trial continued to 11/8/2019 at 9:30 AM in Courtroom 3 before Judge Amy Berman Jackson. Bond Status of Defendant: Defendant Remains on Personal Recognizance Bond; Court Reporters: Janice Dickman/AM; Crystal Pilgrim/PM; Defense Attorneys: Bruce S. Rogow, Robert C. Buschel, Grant J. Smith, Tara Campion and Chandler Paige Routman; US Attorneys: Jonathan Ian Kravis, Aaron S.J. Zelinsky, Michael John Marando and Adam C. Jed; Government Witnesses: Michelle Taylor and Randolph Credico. (jth) (Entered: 11/07/2019) |
| 11/08/2019 | | Minute Entry for proceedings held before Judge Amy Berman Jackson: Jury Trial as to ROGER J. STONE, JR. resumed and held on 11/8/2019 as to Counts: 1,2−6,7. Same Twelve (12) jurors and Two (2) alternates. Jury Trial continued to 11/12/2019 at 9:30 AM in Courtroom 3 before Judge Amy Berman Jackson. Bond Status of Defendant: Defendant Remains on Personal Recognizance Bond; Court Reporters: Janice Dickman/AM; Crystal Pilgrim/PM; Defense Attorneys: Bruce S. Rogow, Robert C. Buschel, Grant J. Smith, Tara Campion and Chandler Paige Routman; US Attorneys: Jonathan Ian Kravis, Aaron S.J. Zelinsky, Michael John Marando and Adam C. Jed; Government Witnesses: Randolph Credico, Margaret Kunstler and Steven K. Bannon. (jth) (Entered: 11/08/2019) |
| 11/12/2019 | 252 | |

| | | | |
|---|---|---|---|
| | | | MOTION for Acquittal by ROGER JASON STONE, JR. (Buschel, Robert) (Entered: 11/12/2019) |
| 11/12/2019 | 253 | | Proposed Jury Instructions by ROGER JASON STONE, JR (Buschel, Robert) (Entered: 11/12/2019) |
| 11/12/2019 | | | Minute Entry for proceedings held before Judge Amy Berman Jackson: Jury Trial as to ROGER J. STONE, JR. held on 11/12/2019 as to Counts: 1,2–6,7. Same Twelve (12) jurors and Two (2) alternates. Government Rested. Defense 252 Motion for Judgment of Acquittal was Heard and The Court Reserved Ruling. Defense Rested. Jury Trial continued to 11/13/2019 at 10:00 AM in Courtroom 3 before Judge Amy Berman Jackson. Bond Status of Defendant: Defendant Remains on Personal Recognizance Bond; Court Reporters: Janice Dickman/AM; Crystal Pilgrim/PM Defense Attorneys: Bruce S. Rogow, Robert C. Buschel, Grant J. Smith, Tara Campion and Chandler Paige Routman; US Attorneys: Jonathan Ian Kravis, Aaron S.J. Zelinsky, Michael John Marando and Adam C. Jed; Government Witnesses: Richard William Gates, III and Michelle Taylor. (jth) (Entered: 11/12/2019) |
| 11/13/2019 | 254 | | Proposed Jury Instructions by USA as to ROGER JASON STONE, JR (Kravis, Jonathan) (Entered: 11/13/2019) |
| 11/13/2019 | | | Minute Entry for proceedings held before Judge Amy Berman Jackson: Jury Trial as to ROGER J. STONE, JR. held on 11/13/2019 as to Counts: 1,2–6,7. Juror #4 Discharged, the thirteen (13) remaining Jurors were present and are unchanged. Jury Trial continued to 11/14/2019 at 9:30 AM in Courtroom 3 before Judge Amy Berman Jackson. Bond Status of Defendant: Defendant Remains on Personal Recognizance Bond; Court Reporters: Janice Dickman/AM; Crystal Pilgrim/PM; Defense Attorneys: Bruce S. Rogow, Robert C. Buschel, Grant J. Smith, Tara Campion and Chandler Paige Routman; US Attorneys: Jonathan Ian Kravis, Aaron S.J. Zelinsky, Michael John Marando and Adam C. Jed. (jth) (Entered: 11/13/2019) |
| 11/14/2019 | 255 | | NOTICE *of objection of Godfather II transcript to jury* by ROGER JASON STONE, JR (Buschel, Robert) (Entered: 11/14/2019) |
| 11/14/2019 | | | Minute Entry for proceedings held before Judge Amy Berman Jackson: Jury Trial as to ROGER J. STONE, JR. as to Counts: 1,2–6,7. resumed and concluded on 11/14/2019. Same Thirteen (13) Jurors. Alternate Juror was Excused. Jury Deliberations begun and held on 11/14/2019. Jury Deliberations continued to 11/15/2019 at 9:30 AM in Courtroom 3 before Judge Amy Berman Jackson. Bond Status of Defendant: Defendant Remains on Personal Recognizance Bond; Court Reporter: Janice Dickman; Defense Attorneys: Bruce S. Rogow, Robert C. Buschel, Grant J. Smith, Tara Campion and Chandler Paige Routman; US Attorneys: Jonathan Ian Kravis, Aaron S.J. Zelinsky, Michael John Marando and Adam C. Jed.(jth) (Entered: 11/15/2019) |
| 11/14/2019 | 256 | | Jury Notes (2) as to ROGER J. STONE, JR. (jth) (Entered: 11/15/2019) |
| 11/14/2019 | 257 | | **Signature Page of Foreperson**<br><br>as to ROGER JASON STONE, JR. in Jury Notes (2 notes). (Access to the PDF Document is restricted pursuant to the E–Government Act. Access is limited to Counsel of Record and the Court.) (jth) (Entered: 11/15/2019) |

| 11/15/2019 | | | Minute Entry for proceedings held before Judge Amy Berman Jackson: Jury Deliberations as to ROGER J. STONE, JR. as to Counts: 1,2–6,7 resumed and concluded on 11/15/2019. Same Twelve (12) jurors. JURY VERDICT of Guilty as to Counts 1,2–6,7. Jury Panel Discharged. REFERRAL TO PROBATION OFFICE for Presentence Investigation. Defendant's 252 Motion for Judgment of Acquittal was DENIED. Sentencing set for 2/6/2020 at 10:00 AM in Courtroom 3 before Judge Amy Berman Jackson. Sentencing Memoranda from the parties are due by 1/30/2020. Bond Status of Defendant: Defendant Remains on Personal Recognizance Bond Under the Current Conditions Imposed. Court Reporter: Janice Dickman; Defense Attorneys: Bruce S. Rogow, Robert C. Buschel, Grant J. Smith, Tara Campion and Chandler Paige Routman; US Attorneys: Jonathan Ian Kravis, Aaron S.J. Zelinsky, Michael John Marando and Adam C. Jed. (jth) (Entered: 11/15/2019) |
|---|---|---|---|
| 11/15/2019 | 258 | | Jury Notes (1) as to ROGER J. STONE, JR. (jth) (Entered: 11/15/2019) |
| 11/15/2019 | 259 | | **Signature Page of Foreperson**<br><br>as to ROGER J. STONE, JR. in Jury Verdict. (Access to the PDF Document is restricted pursuant to the E–Government Act. Access is limited to Counsel of Record and the Court.) (jth) (Entered: 11/15/2019) |
| 11/15/2019 | 260 | | VERDICT FORM as to ROGER J. STONE, JR. (jth) (Entered: 11/15/2019) |
| 11/15/2019 | 261 | | **Signature Page of Foreperson**<br><br>as to ROGER J. STONE, JR. in Jury Verdict. (Access to the PDF Document is restricted pursuant to the E–Government Act. Access is limited to Counsel of Record and the Court.) (jth) (Entered: 11/15/2019) |
| 11/18/2019 | 262 | | LETTER IN SUPPORT OF SENTENCING as to ROGER JASON STONE, JR. "Leave to file GRANTED. Sentencing Letter." by Judge Amy B. Jackson on 11/18/2019 Modified text on 11/20/2019 (zed, ). (Entered: 11/20/2019) |
| 11/20/2019 | 263 | | MOTION to Travel by ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Buschel, Robert) (Entered: 11/20/2019) |
| 11/21/2019 | 264 | | ORDER granting 263 Defendant's Unopposed Motion to Travel as to ROGER J. STONE JR. (1). See Order for details. Signed by Judge Amy Berman Jackson on 11/21/19. (DMK) (Entered: 11/21/2019) |
| 11/25/2019 | 265 | | ORDER as to ROGER J. STONE, JR. Written order on 252 defendant's motion for judgment of acquittal. See order for details. Signed by Judge Amy Berman Jackson on 11/25/19. (DMK) (Entered: 11/25/2019) |
| 12/16/2019 | 268 | | LETTER as to ROGER JASON STONE, JR. "Leave to file GRANTED" File as Letter to The Court by Judge Amy B. Jackson on 12/16/2019. (zed, ) (Entered: 12/16/2019) |
| 12/19/2019 | 269 | | MOTION to Continue *sentencing hearing* by ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Buschel, Robert) (Entered: 12/19/2019) |
| 12/20/2019 | 270 | | |

| | | |
|---|---|---|
| | | Memorandum in Opposition by USA as to ROGER JASON STONE, JR re 269 MOTION to Continue *sentencing hearing* (Marando, Michael) (Entered: 12/20/2019) |
| 12/20/2019 | | MINUTE ORDER granting in part and denying in part 269 Defendant's Motion to Continue Sentencing Hearing as to ROGER J. STONE JR. (1). Upon consideration of defendant's motion, the government's opposition, and the position of the U.S. Probation Office, which is what prompted the filing of the motion in the first place, the Court is of the view that a short continuance is warranted so that the Probation Office –– which has yet to receive the material it requires –– may have until January 16, 2020 to complete its draft of the Presentence Investigation Report, and the parties will still have the time contemplated by Fed. R. Crim. Proc. 32 to complete the review process. Therefore, sentencing will be continued until February 20, 2020 at 10:00 am. The Court agrees that given the preparation of a similar financial disclosure report in connection with the bond determination, the defendant should have been able to complete the form in accordance with the schedule originally set by the Probation Officer, and he is hereby ordered to supply the completed form, and all supporting documentation, to the Probation Office by noon on January 2, 2020. Signed by Judge Amy Berman Jackson on 12/20/19. (DMK) (Entered: 12/20/2019) |
| 12/22/2019 | | Set/Reset Deadlines/Hearings as to ROGER JASON STONE, JR: Sentencing in this case is continued until 2/20/2020 at 10:00 AM in Courtroom 3 before Judge Amy Berman Jackson. The defendant is hereby ordered to supply the completed form, and all supporting documentation, to the Probation Office by 12:00 PM (noon) on 1/2/2020. (jth) (Entered: 12/22/2019) |
| 12/22/2019 | | MINUTE ORDER as to ROGER J. STONE, JR. In light of the Minute Order continuing sentencing until 2/20/2020 at 10:00 AM, it is hereby ORDERED that Sentencing Memoranda from the parties are now due by 2/7/2020. SO ORDERED. By Judge Amy Berman Jackson on 12/22/2019. (jth) (Entered: 12/22/2019) |
| 12/24/2019 | | MINUTE ORDER as to ROGER J. STONE, JR. In light of additional communication from the U.S. Probation Office to the Court, it is ORDERED that the minute order of December 20, 2019 is revised to provide defendant until 12:00 noon on Monday, January 6, 2020 to supply the completed financial form, and all supporting documentation, to the Probation Office. All other aspects of the December 20 minute order remain in unchanged. Signed by Judge Amy Berman Jackson on 12/24/19. (DMK) (Entered: 12/24/2019) |
| 12/26/2019 | | Set/Reset Deadline as to ROGER JASON STONE, JR: Defendant shall have until Monday, January 6, 2020, at 12:00 PM (noon) to supply the completed financial form, and all supporting documentation, to the Probation Office. (jth) (Entered: 12/26/2019) |
| 01/15/2020 | 271 | NOTICE *of Withdrawal* by ROGER JASON STONE, JR (Routman, Chandler) (Entered: 01/15/2020) |
| 01/22/2020 | 273 | LETTER IN SUPPORT OF SENTENCING as to ROGER JASON STONE, JR. "Leave to file GRANTED–File as sentencing letter" by Judge Amy Berman Jackson on 1/22/2020. (zed, ) (Entered: 01/23/2020) |
| 01/28/2020 | 274 | |

| | | | |
|---|---|---|---|
| | | | LETTER IN SUPPORT OF SENTENCING as to ROGER JASON STONE, JR. "Leave to file GRANTED" by Judge Amy Berman Jackson on 1/28/2020. (zed, ) (Entered: 01/28/2020) |
| 01/31/2020 | 275 | | LETTER IN SUPPORT OF SENTENCING as to ROGER JASON STONE, JR. "Leave to file GRANTED" by Judge Amy Berman Jackson on 1/31/2020. (zed, ) (Entered: 02/03/2020) |
| 02/03/2020 | | | MINUTE ORDER as to ROGER J. STONE, JR. The parties are directed to include in their sentencing memoranda any arguments they wish to make concerning the defendant's compliance with the Court's media communications orders 36 149 and conditions of release as modified on February 21, 2019 and July 16, 2019, including, in particular, his compliance during the trial, and on or about November 13–15, 2019. SO ORDERED. Signed by Judge Amy Berman Jackson on 2/3/20. (DMK) (Entered: 02/03/2020) |
| 02/05/2020 | 276 | | Unopposed MOTION for Extension of Time to *extension of time to file sentencing memoranda* by ROGER JASON STONE, JR. (Attachments: # 1 Text of Proposed Order)(Buschel, Robert) (Entered: 02/05/2020) |
| 02/05/2020 | | | MINUTE ORDER granting 276 defendant's Unopposed Motion for Extension of Time as to ROGER J. STONE JR. It is ORDERED that the parties' sentencing memoranda are due by Monday, February 10, 2020. Signed by Judge Amy Berman Jackson on 2/5/20. (DMK) (Entered: 02/05/2020) |
| 02/10/2020 | 279 | | SENTENCING MEMORANDUM by USA as to ROGER JASON STONE, JR (Kravis, Jonathan) (Entered: 02/10/2020) |
| 02/10/2020 | 280 | | SENTENCING MEMORANDUM by ROGER JASON STONE, JR (Attachments: # 1 Exhibit Letters of support)(Buschel, Robert) (Entered: 02/10/2020) |
| 02/10/2020 | 281 | | LETTER IN SUPPORT OF SENTENCING as to ROGER JASON STONE, JR. "Leave to file GRANTED" by Judge Amy B. Jackson on 2/10/2020. (zed, ) (Entered: 02/11/2020) |
| 02/11/2020 | 282 | | NOTICE OF WITHDRAWAL OF APPEARANCE by USA as to ROGER JASON STONE, JR. (Zelinsky, Aaron) Modified text on 2/12/2020 (zed, ). (Entered: 02/11/2020) |
| 02/11/2020 | 283 | | NOTICE OF WITHDRAWAL OF APPEARANCE by USA as to ROGER JASON STONE, JR (Kravis, Jonathan) (Entered: 02/11/2020) |
| 02/11/2020 | 284 | | NOTICE OF ATTORNEY APPEARANCE John Crabb, Jr appearing for USA. (Crabb, John) (Entered: 02/11/2020) |
| 02/11/2020 | 285 | | NOTICE OF WITHDRAWAL OF APPEARANCE by USA as to ROGER JASON STONE, JR (Jed, Adam) (Entered: 02/11/2020) |
| 02/11/2020 | 286 | | SENTENCING MEMORANDUM by USA as to ROGER JASON STONE, JR (Crabb, John) (Entered: 02/11/2020) |
| 02/11/2020 | 287 | | NOTICE OF WITHDRAWAL OF APPEARANCE by USA as to ROGER JASON STONE, JR (Marando, Michael) (Entered: 02/11/2020) |
| 02/12/2020 | 288 | | |

| | | | |
|---|---|---|---|
| | | | ORDER as to ROGER J. STONE, JR. (REDACTED version of February 5, 2020 SEALED Order). Defendant's sealed motion for new trial [Dkt. # 266] is DENIED. The parties are ORDERED to meet and confer and submit under seal by February 18, 2020 proposed redacted versions of defendant's sealed Motion for New Trial and the government's sealed Response to Defendant's Motion for New Trial to be filed on the public docket. The proposed redactions should be consistent with those contained in the redacted, public version of this order. Signed by Judge Amy Berman Jackson on 2/5/20. (DMK) (Entered: 02/12/2020) |
| 02/13/2020 | 289 | | MOTION for Leave to Appear Pro Hac Vice *Seth Ginsburg Seth Ginsburg* Filing fee $ 100, receipt number ADCDC−6826013. Fee Status: Fee Paid. by ROGER JASON STONE, JR. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Buschel, Robert) (Entered: 02/13/2020) |
| 02/13/2020 | | | MINUTE ORDER granting 289 Motion for Leave of Seth Ginsburg to Appear Pro Hac Vice only upon condition that the lawyer admitted, or at least one member of the lawyer's firm, undergo CM/ECF training, obtain a CM/ECF username and password, and agree to file papers electronically. No court papers will be mailed to any lawyer. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCrR 44.5(a).** |

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    v.         **1:19-cr-00018-ABJ**

ROGER J. STONE, JR.,

       Defendant.

_____

## NOTICE OF APPEAL

Appellant:    Roger J. Stone
       1045 NE 18th Avenue, Unit 101
       Fort Lauderdale, FL 33304

Appellant's Attorney: Seth Ginsberg
       Attorney at Law
       299 Broadway, Suite 1405
       New York, New York 10007

Offense: 18 U.S.C. § 1505; 18 U.S.C. § 1001(a)(2); 18 U.S.C. § 1512(b)(1)

Concise statement of judgment or order, giving date, and any sentence: (1) Judgment in a Criminal Case, entered February 20, 2020, imposing sentence on Count One: 40 months incarceration; Counts Two-Six: 12 months incarceration to run concurrent to Count One; Count Seven: 18 months incarceration to run concurrent to Count One; 24 months supervised release; and a fine of $20,000.00.  (2) Order and Memorandum Opinion, entered April 16, 2020, denying defendant's amended motion for new trial [Dkt. # 313].

Name of institution where now confined, if not on bail: Defendant Remains on Bail

I, Roger Stone, hereby appeal to the United States Court of Appeals for the District of Columbia from the above-stated judgment and order, the sentence imposed, and all underlying orders.

Date:  April 30, 2020         <u>Roger J. Stone</u>
                  APPELLANT

FPD, No Fee _____
CJA, No Fee _____           <u>/s/ Seth Ginsberg</u>
Paid USDC Fee  x_____         ATTORNEY
Paid USCA Fee _____
Does counsel wish to appear on appeal? Yes
Has counsel ordered transcripts? Yes
Is this appeal pursuant to the 1984 Sentencing Reform Act? Yes, in part.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 30, 2020, I electronically filed the foregoing with the

Clerk of Court using CM/ECF and thereby served it upon all parties in the action.

<u>*/s/ Seth Ginsberg*</u>
Seth Ginsberg
Attorney at Law
299 Broadway, Suite 1405
New York, New York 10007
917-885-3375
srginsberg@mac.com

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

District of Columbia

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| ROGER J. STONE, JR. | Case Number:  19-018 (ABJ) |
| | USM Number:  19579-104 |
| | Bruce Rogow, Robert Buschel, Grant Smith, |
| | Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s)

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☑ was found guilty on count(s)   One (1) through Seven (7) of the Indictment.
   after a plea of not guilty.

**FILED**

**FEB 2 0 2020**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18:1505 and 2; | Obstruction of Proceeding. | 12/31/2017 | 1 |
| 18:1001(a)(2) and 2; | False Statements. | 9/26/2017 | 2-6 |
| 18:1512(b)(1); | Witness Tampering. | 1/24/2019 | 7 |

The defendant is sentenced as provided in pages 2 through _____7_____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is   ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

2/20/2020

Date of Imposition of Judgment

*Amy B. Jac*

Signature of Judge

Amy Berman Jackson, United States District Judge

Name and Title of Judge

Feb 20, 2020

Date

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

DEFENDANT:   ROGER J. STONE, JR.
CASE NUMBER:   19-018 (ABJ)

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

Count 1:      40 months of incarceration.
Counts 2-6:   12 months of incarceration to run concurrent to Count 1.
Count 7:      18 months of incarceration to run concurrent to Count 1.

☑  The court makes the following recommendations to the Bureau of Prisons:

That the defendant serve his sentence at a facility near Fort Lauderdale, Florida to allow him to be as close to his family as possible.

☐  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

☐  at _____   ☐ a.m.   ☐ p.m.   on _____ ,

☐  as notified by the United States Marshal.

☑  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐  before 2 p.m. on _____ .

☐  as notified by the United States Marshal.

☑  as notified by the Probation or Pretrial Services Office, but no earlier than 14 days after the Court has ruled on defendant's Motion for New Trial [Dkt. 313].

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____   to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __3__ of __7__

DEFENDANT:   ROGER J. STONE, JR.
CASE NUMBER:   19-018 (ABJ)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

Counts 1-7:  24 months on each count, to run concurrently.

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
     ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.   ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.   ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.   ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.   ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page __4__ of __7__

DEFENDANT:  ROGER J. STONE, JR.
CASE NUMBER:  19-018 (ABJ)

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.   You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.   After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.   You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.   You must answer truthfully the questions asked by your probation officer.
5.   You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.   You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.   You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.   You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.   If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10.   You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11.   You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12.   If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13.   You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: **www.uscourts.gov**.

Defendant's Signature _____     Date _____

DEFENDANT:  ROGER J. STONE, JR.
CASE NUMBER:  19-018 (ABJ)

## SPECIAL CONDITIONS OF SUPERVISION

DNA Sample Requirement -  Pursuant to 42 USC § 14135a, for all felony offenses, the defendant shall submit to the collection and use of DNA identification information while incarcerated in the Bureau of Prisons, or at the direction of the United States Probation Office.

Substance Abuse Testing - The defendant shall submit to substance testing within 15 days of his placement on supervision, and periodically thereafter, including random testing without notice to the defendant, at the direction of the United States Probation Office.

Substance Abuse Treatment - If indicated, the defendant shall participate in any program approved and directed by the United States Probation Office.

Community Service -  The defendant must complete Two Hundred Fifty (250) hours of hands-on, community service. This obligation may not be satisfied with mere fundraising, advocacy, or attendance at religious services, although the community service may be in connection with the defendant's place of worship.  The United States Probation Officer will supervise the completion of this condition by approving the program, and the defendant must provide verification of his completed hours to the United States Probation Office.

Financial Payment - The defendant must begin to make payments on the financial penalty within 60 days after his release from imprisonment, in the amount of at least $1,000.00 per month.  The defendant must provide the United States Probation Office with access to any requested financial information and authorize the release of any requested financial information, which the United States Probation Office may share with the United States Attorney's Office.

Financial Disclosure - The defendant shall provide the United States Probation Office with his income tax returns, authorization for release of credit information, and information about any business or finances in which he has a control or interest until the penalty has been satisfied.

Transfer of Supervision -  The Court will transfer the supervision of, but not jurisdiction over, the defendant's supervised release to the Southern District of Florida.

Re-entry Progress Hearing - The United States Probation Office in that district must submit a progress report to the Court within sixty (60) days of the defendant's commencement of supervision; upon receipt of the the progress report, the Court will determine if the defendant's appearance is required at a re-entry Progress Hearing.

Notice of Appeal - Pursuant to Federal Rule of Appellate Procedure 4(b)(3) and (4), the defendant must file any Notice of Appeal within 14 days after the Court has ruled on defendant's pending motion for new trial [Dkt. 313].

Judgment — Page    6    of    7

DEFENDANT: ROGER J. STONE, JR.
CASE NUMBER: 19-018 (ABJ)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|        | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|--------|-----------|-------------|------|------------------|-------------------|
| TOTALS | $ 700.00  | $ 0.00      | $ 20,000.00 | $ 0.00    | $ 0.00            |

☐  The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a **partial** payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---------------|---------------|---------------------|------------------------|
|               |               |                     |                        |
| TOTALS        | $          0.00 | $          0.00   |                        |

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☑  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☑  the interest requirement is waived for the    ☑  fine   ☐  restitution.

☐  the interest requirement for the    ☐  fine   ☐  restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT:  ROGER J. STONE, JR.
CASE NUMBER:  19-018 (ABJ)

Judgment — Page ___7___ of ___7___

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $  700.00            due immediately, balance due

       ☐  not later than _____ , or
       ☑  in accordance with  ☐  C,    ☐  D,    ☐  E, or    ☑  F below; or

B  ☐  Payment to begin immediately (may be combined with    ☐ C,        ☐ D, or    ☐ F below); or

C  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of  $ _____ over a period of
      _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D  ☑  Payment in equal  monthly  *(e.g., weekly, monthly, quarterly)* installments of  $ 1,000.00  over a period of
      20 month  *(e.g., months or years),* to commence  60 days  *(e.g., 30 or 60 days)* after release from imprisonment to a
      term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
      imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☑  Special instructions regarding the payment of criminal monetary penalties:

      Special Assessment is payable in accordance with 18 U.S.C. § 3013.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate |
|---|---|---|---|
| | | | |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Crim. Action No. 19-0018 (ABJ) |
| | ) |
| ROGER J. STONE, JR., | ) |
| | ) |
| Defendant. | ) |

## <u>ORDER</u>

Defendant's amended motion for new trial [Dkt. # 313] is hereby DENIED for the reasons set forth in the memorandum opinion issued on this date.  In accordance with the Judgment entered on February 20, 2020 [Dkt. # 328], the conviction is final, and any appeal must be filed within fourteen days of the date of this order.  The defendant must surrender for service of his sentence at the institution designated by the Bureau of Prisons at such time as he is notified by the U.S. Probation or Pretrial Services Office, but no earlier than fourteen days after the date of this order.  Pursuant to 18 U.S.C. §3143(a)(2), the defendant remains on bond and he may voluntarily surrender.  Also, as of the date of this order, the defendant and his attorneys are hereby released from the media communication order of February 15, 2019 [Dkt. # 36], the minute order of February 21, 2019, and the order of July 17, 2019, [Dkt. # 149],  although all other Court orders, including those related to the confidentiality of materials, and all other conditions of the defendant's release, remain in place.

AMY BERMAN JACKSON
United States District Judge

DATE:  April 16, 2020

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. Action No. 19-0018 (ABJ) |
| | ) | |
| ROGER J. STONE, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

### INTRODUCTION

On November 15, 2019, the jury returned a unanimous verdict in the case of *United States v. Roger J. Stone*. It found the defendant guilty of seven crimes: one count of obstructing a Congressional investigation, in violation of 18 U.S.C. § 1505; five separate counts of making a false statement to the government in violation of 18 U.S.C. § 1001; and tampering with a witness, in violation of 18 U.S.C. § 1512(b)(1).

Once the verdict had been returned, the jurors were officially released from the prohibition against discussing the case that had been in effect during the trial. A week later, one of the jurors published a column in the *Washington Post* describing his experience.

> Like jurors everywhere, none of us asked for this responsibility but each of us accepted it willingly. We served the proposition that everyone is entitled to a fair trial and that everyone is innocent until proven guilty.
>
> \*     \*     \*
>
> The evidence in this case was substantial and almost entirely uncontested. . . . We listened carefully to the testimony of a series of witnesses and carefully examined every element of every charge and its defense, and we unanimously agreed that each had been proved beyond a reasonable doubt.
>
> \*     \*     \*

1

> I am proud of our democratic institutions; their value was reaffirmed for me because of the process we went through and the respect we accorded it.  I am proud that a defendant is innocent until proven guilty.  I am proud that we took Roger Stone's rights seriously and that we treated the government's assertions skeptically.  I am proud of my fellow jurors for respecting each other and for challenging each other until we were all convinced beyond a reasonable doubt.[1]

Approximately two months after the verdict was returned, the U.S. Probation Office completed the presentence investigation, and shortly after that, the parties' sentencing submissions were due.  On February 10, 2020, the United States, represented by Timothy Shea, the United States Attorney for the District of Columbia, filed a sentencing memorandum.  It bore the names of the four Assistant United States Attorneys and Special Assistant United States Attorneys who prosecuted the case, and it was approved by their supervisors, up to and including the newly appointed U.S. Attorney himself.[2]  The memorandum, in accordance with existing Department of Justice policy, advocated in favor of a sentence within the advisory U.S. Sentencing Guidelines range, which was seven to nine years.[3]

That evening, the President of the United States commented on Twitter:  "This is a horrible and very unfair situation.  The real crimes were on the other side, as nothing happens to them.  Cannot allow this miscarriage of justice!"[4]  The next day, reportedly at the direction of the Attorney General of the United States,[5] the United States Attorney filed a "Supplemental and Amended Sentencing Memorandum," advancing the position that a Guidelines sentence "could be considered excessive and unwarranted," and that a sentence of incarceration "far less" than the Guidelines range would be reasonable under the circumstances.  The pleading was signed by the Acting Chief of the Criminal Division of the U.S. Attorney's office; each of the members of the trial team had either withdrawn from the case or resigned from the Office altogether.  The President

---

1    The Washington Post (Nov. 22, 2019, 3:42 PM) https://www.washingtonpost.com/ opinions/i-was-a-juror-in-roger-stones-trial-we-took-his-rights-seriously/2019/11/22/234d7df0-0d46-11ea-97ac-a7ccc8dd1ebc_story.html.

2    Tr. of Sentencing Proceedings, Feb. 20, 2020 [Dkt. # 334] ("Feb. 20 Sent. Tr.") at 44–46.

3    Feb. 20 Sent. Tr. at 47.

4    Donald Trump (@realDonaldTrump), Twitter (Feb. 10, 2020, 10:48 PM) https://twitter .com/realDonaldTrump/status/1227122206783811585.

5    *See, e.g.*, ABC News (Feb. 14, 2020, 10:21 AM), https://abcnews.go.com/Politics/ timeline-extraordinary-turn-events-roger-stone-case/story?id=68921601.

2

continued to criticize the prosecutors in a series of additional public statements and tweets as the day went on.[6]

In the wake of those extraordinary developments, another juror spoke out. She expressed her respect and support for the prosecution team on Facebook, and she attached a copy of the first juror's opinion piece as well. The juror identified herself as the foreperson, and she released her post, along with her name, to the public. This prompted numerous people to search the internet for publicly available information about the author. It didn't take long: they came across several Facebook and Twitter posts that mentioned the Special Counsel's investigation and several that included negative comments about President Trump, and two days later, the defendant filed this motion.

Defendant contends that he is entitled to a new trial because this "newly discovered evidence" reveals that the foreperson answered questions falsely on her written juror questionnaire and when she was questioned in the courtroom, and that by doing so, she concealed the fact that she harbored bias against him. He also seeks a new trial based on an allegation that the juror engaged in misconduct during deliberations, tainting the verdict.

It is important to emphasize that the question before the Court is not whether the defense would have taken a different approach towards the juror if had it seen the posts earlier. The trial is over, and a verdict – which was based largely on the defendant's own texts and emails, and was amply supported by this undisputed evidence – has been returned. At this point, it is incumbent upon the defendant to demonstrate that the juror *lied*, and that a truthful answer would have supplied grounds for the Court to strike her for cause. Also, a defendant seeking a new trial must establish that the information presented in his motion could not have been discovered earlier through the exercise of due diligence. Only if those criteria are met would one then assess whether the lack of the newly discovered evidence affected the conviction.

The defendant has not shown that the juror lied; nor has he shown that the supposedly disqualifying evidence could not have been found through the exercise of due diligence at the time the jury was selected. Moreover, while the social media communications may suggest that the

---

6       *See, e.g.*, The White House (Feb. 11, 2020, 4:13 PM), https://www.whitehouse.gov/briefings-statements/remarks-president-trump-signing-ceremony-s-153-supporting-veterans-stem-careers-act/ ("They ought to be ashamed of themselves . . . . I think it's a disgrace."); Donald Trump (@realDonaldTrump), Twitter (Feb. 11, 2020, 6:45 PM), https://twitter.com/realdonaldtrump/status/1227423392078409728?lang=en ("Who are the four prosecutors (Mueller people?) who cut and ran after being exposed for recommending a ridiculous 9 year prison sentence to a man that got caught up in an investigation that was illegal, the Mueller Scam, and shouldn't ever even started?  13 Angry Democrats?"); *id.*, Twitter (Feb. 11, 2020, 10:58 PM) ("Prosecutorial Misconduct?");   *id.*,   Twitter   (Feb.   12,   2020   4:06   AM),   https://twitter.com/realDonaldTrump/status/1227564604177469441 ("Two months in jail for a Swamp Creature, yet 9 years recommended for Roger Stone (who was not even working for the Trump Campaign). Gee, that sounds very fair! Rogue prosecutors maybe?  The Swamp!").

juror has strong opinions about certain people or issues, they do not reveal that she had an opinion about Roger Stone, which is the opinion that matters.

The assumption underlying the motion – that one can infer from the juror's opinions about the President that she could not fairly consider the evidence against the defendant – is not supported by any facts or data and it is contrary to controlling legal precedent. The motion is a tower of indignation, but at the end of the day, there is little of substance holding it up. Therefore, the request for a new trial will be denied based on the facts and the case law set out in detail in the body of this opinion, and which are summarized briefly here.

Given the publicity that surrounded this prosecution, 120 citizens of the District of Columbia were summoned to the courthouse almost two months before the trial was scheduled to begin. They were asked to complete a nineteen-page written questionnaire that the prosecutors and defense attorneys had drafted together. It called for basic information about employment, legal training, and prior involvement in court proceedings. It also included a series of questions designed to uncover any knowledge or opinions about the allegations and the participants in the case, and to explore whether the jurors could be fair and impartial to both sides.

Defendant complains in his motion that we "now know" a great deal about the juror, but much of it – beginning with the juror's name – was plain on the face of the written questionnaire that was in his lawyers' hands as of September 12, 2019.

Indeed, at the hearing on the motion for new trial, counsel for the defendant revealed that there was very little that even he would contend was false about the foreperson's answers. When pressed to identify a specific lie, Stone's attorney pointed only to those answers in which the juror expressed her subjective belief that she could be fair to the defendant, and to one other question: the one concerning public commentary on certain topics.

23.   Have you written or posted anything for public consumption about the defendant, the House Permanent Select Committee on Intelligence investigation into Russian interference in the 2016 presidential election, or the investigation conducted by Special Counsel Robert Mueller?

[For purposes of this question, writing "for public consumption" includes blog posts, articles, or posts on internet sites that are accessible to the general public.]

Yes ___   No ___

If yes, please describe when and where you did so and the subject of your comments:

I can't remember if I did, but I may have shared an article on Facebook. Honestly not sure.

The defendant has not shown that this answer was false. Notably, the juror did not check either "yes" or "no," and she acknowledged the possibility that she may have shared an article in a Facebook post. So what the defense has to prove is that she lied when she said she was "not sure."

4

Defendant has gathered a collection of social media messages into a composite exhibit in support of his motion, but only a small number of them bear on the juror's answer to Question 23. With respect to the first part of the question, whether the juror had commented publicly about the defendant, Stone's motion points to exactly two social media entries from the eight-month period between Stone's arrest and the completion of the questionnaire – or any time before – that relate to the defendant in any way.  On January 25, 2019, nine months before she was summoned to the courthouse, the foreperson posted a link to a lengthy news article published by National Public Radio.  It summarized all of the criminal cases that had been brought by the Office of Special Counsel against a large number of people, and it included a straightforward summary of the indictment of Roger Stone, which had been unsealed that morning.  And on January 30, 2019, the foreperson retweeted a post written by someone else, who found it ironic that it was the arrest of Roger Stone, and not eight African-Americans whose cases had also received news coverage, that prompted discussion about "reviewing use of force guidelines."

These facts are not at all inconsistent with the juror's written answer in September 2019 that she "may have shared" an article publicly.  While the NPR article was transmitted along with a wry comment, neither post expresses any opinion about Stone or the merits of the charges against him.

Defendant's motion identifies only one social media post about the second topic in the question:  the House Permanent Select Committee investigation into Russian interference.  It was dated March 22, 2018, a year and a half before the completion of the questionnaire, and it forwarded a report that the committee had closed its investigation.

Defendant supplies four other posts or retweets that touch upon the Special Counsel's investigation in general. But the juror did not deny sharing observations online.  In light of that, and given her sincere and credible sworn testimony that at the time, she understood the question to be focused on the investigation of Roger Stone in particular, the defense has not shown that her "maybe" answer was intentionally false.

The defendant's composite exhibit also includes a number of posts between December 2008 and the completion of  the juror questionnaire in 2019 that reflect opinions about Donald Trump or the actions of his administration.  Two include or re-publish comments about possible racism on the part of the President or his supporters for failing to disavow those expressing extreme views at his rallies.  These do not prove that the juror's statement that she could not remember what she had shared was false, because Question 23 did not inquire about posts about the President.

The posts do not contradict the juror's answers to any other questions either.  During the individual questioning of potential jurors on November 5, the Court asked the juror what she had read or heard about the defendant.  She responded:

> So nothing that I can recall specifically.  I do watch sometimes paying attention but sometimes in the background CNN.  So I recall just hearing about him being part of the campaign and some belief or reporting around interaction with the Russian probe and interaction with him and people in the country, but I don't have a whole lot of details.  I don't pay that close attention or watch C-SPAN.

5

The defense complains that the juror's description of her level of interest in the last sentence of this answer was disingenuous, but there is nothing about the evidence showing that the juror periodically issued political posts, or about any particular post, that indicates that she was not being truthful about her state of mind.

More important, none of the social media posts establish that the juror's assessment of whether she believed she could judge Roger Stone fairly were false. Other than the January 2019 post forwarding the article that includes information about Stone, and the retweet concerning the public reaction to the circumstances surrounding his arrest, the posts in the composite exhibit do not even mention Stone, and neither of those posts expresses any point of view about his guilt or innocence.

Defendant insists, though, that the posts that relate to the President imply that the juror had a negative attitude towards Roger Stone, and that those communications, combined with the posts about the Special Counsel's investigation, demonstrate that she knew she could not be impartial in his case, and she lied when she said she could be fair.

Stone's suggestion that posts expressing opposition to President Trump betray a bias against *him* is not supported by any evidence or by the case law. There is no evidence in the record that the general public, democrats in general, or this juror in particular knew any details about Roger Stone – what he had done before, what role he played in the campaign, or what his views were on any particular issue. The juror simply knew that he'd been charged.

In addition, even if an opinion about the President should be, as Stone claims, automatically applicable to him by extension, the foreperson's views were certainly not hidden at the time of jury selection. The juror's personal affiliation with Democratic politics was set forth in her written answers. She said straight out that she had opinions about the "officials" on the list of people who might be mentioned in the case, and Donald Trump was the most prominent, if not the only, "official" named. So the exhibits introduced by the defendant are consistent with, and do not discredit, the juror's responses on the questionnaire. This case does not present the extreme situation where a prospective juror has a personal relationship to some aspect of the litigation, or to a participant in the case, that would make it highly unlikely that she could remain impartial. For these reasons, the evidence falls far short of defendant's sensational rhetoric, and the defense has not shown that the foreperson's answers during jury selection were false.

There is a second reason why Stone's motion fails: to the extent one could consider any of the social media posts to be inconsistent with the juror's questionnaire, they do not warrant a new trial because they do not meet the legal test for something that has been "newly discovered." The information in the motion could have easily been found with the exercise of due diligence: by posing a few pointed follow-up questions in person, or by using the same search engines that quickly brought the public social media posts to light the day the juror identified herself to the rest of the world. The evidence the defense claims was critical was never "concealed" – it was a few clicks of a mouse away.

At the time of the trial, though, the defense made a strategic choice not to look for social media information. None of the seven lawyers or the two jury consultants on the defense team performed the rudimentary Googling that located this set of Facebook and Twitter posts: not

during the two months they were in possession of the entire set of jury questionnaires with the jurors' names on them; not during the four to five days before trial when they knew the exact order in which the members of the jury panel would be questioned and seated as jurors; not during the two days of jury selection; and not overnight after the twelve jurors and two alternates had been picked and instructed to return the next morning to be sworn.

Plus, the defendant did not ask the juror about her use of social media when he had the chance. The foreperson's questionnaire put the defense on notice of the particular media outlets from which she received news and information, the commentators she favored, her personal participation in electoral Democratic politics as a Democrat, the fact that she received information from Facebook and Twitter, and – significantly – the fact that she "shared" on those platforms herself. She candidly set forth the fact that she followed the Mueller investigation "somewhat closely," that she had read or heard something about the case, and that she indeed had opinions about the "officials" on the list of names that might come up during the trial. The Court stated on the morning the jurors returned to court that opinions about the administration expressed in the written answers would not be automatically disqualifying. But it specifically advised the lawyers that those opinions were perfectly appropriate topics for individual follow-up, and that motions to strike for cause could be renewed after the jurors had been questioned in person in the phase of the trial called voir dire. The Court did not limit the lawyers' questioning of the jurors in any way, and Stone's lawyers had a full and fair opportunity to explore every juror's potential bias. Yet the defendant asked the juror who later was selected by the jury to be their foreperson very few questions about any of these issues, and he cannot be heard to complain now that the information about her views was not or could not have been obtained before.

During the individual voir dire on November 5, the juror answered questions posed by both the Court and the lawyers, and she was warm, open, and frank. The Court found her to be extremely credible, and the defense attorneys who had the opportunity to assess her demeanor and friendly presence in the courtroom chose to ask her only a handful of additional questions. Based on what they had read and what they observed, they did not move to strike the juror for cause, and they did not use a peremptory challenge to strike her from the jury pool. All of this suggests that they too found her to be believable, or that they had identified some other information in her questionnaire that made her an attractive juror for the defense, and they made a strategic decision to forego asking her more questions about Facebook or her opinions about Donald Trump.

As for the second basis for the motion for new trial – juror misconduct – defendant contends that the juror did not comply with the Court's instructions because her social media posts reveal that during the period between the completion of the questionnaire and the verdict, she was aware of some developments in the news concerning the President or politics. But there was no prohibition against reading or discussing news in general or even news about the President: the jurors were told to turn away from any publicity concerning the *case.* For that reason, the defense conceded at the hearing that the juror did not transmit any posts during the trial in violation of the Court's instructions not to communicate about the case.

The defense posits, though, that since the juror was active on social media in general, she must have been exposed to news accounts of the trial during her jury service. And according to the defendant, since one can conclude that she has been untruthful, one can also assume that she "undoubtedly" read these news accounts, and shared the information she obtained with the other

jurors, all in violation of the Court's instructions.  The defendant points to absolutely no evidence – not one affidavit from one juror or one social media post – that supports this speculative accusation, and it was questionable whether he had come forward with enough evidence to warrant a hearing on this issue.  But given the unique circumstances of the case, and in an abundance of caution, the Court decided to permit the defendant to question several jurors, over the government's objection.

The hearing, as the defense predicted, was clarifying.

The Court permitted each side to choose one juror to testify, and Juror B, the one handpicked by the defense lawyers and the defendant after they were given the opportunity to confer, testified as follows:

> THE COURT:  Did you have any concerns at the time you rendered your verdict about whether you and the jury had engaged in a full and fair consideration of the evidence?
>
> JUROR B:  We had a problem with – well – I don't know how to say this. We all agreed on – most of us agreed on our answer.  We already said that, you know, he was guilty.  But it was the foreman . . . it was the foreman that insisted that we examine question 3, examine charge 3 a little more.
>
> THE COURT:  Okay.  There was a count that you sent out some notes about. Is that the one that the foreperson asked you to be more careful?
>
> JUROR B:  Yes, that's the one.  We needed to examine that a little more and read the transcript, you know, find out more evidence.
>
> THE COURT:  So it was the foreperson who insisted that that level of attention be paid to that count, even though some of you were ready already to decide?
>
> JUROR B:  Yes.[7]

While it was the defendant who requested a hearing on this issue, the defense declined to ask Juror B – or Juror A – any questions at all.  The jurors' accounts stand uncontested, and they were consistent with the record in the case, which includes two notes, signed by the foreperson,

---

7    Tr. of Mot. Hr'g, Feb. 25, 2020 [Dkt. # 347] (PUBLIC) ("Mot. Hr'g Tr.") at 81–82. Juror A, selected from the group by the government, similarly identified the foreperson as one of the voices in the jury room for taking their time and being attentive to the government's burden of proof.  Mot. Hr'g Tr. at 77.

asking careful questions about the intricacies of the counts.  So the portion of the motion for a new trial based on misconduct will be denied because there is no evidence of any misconduct.

During jury selection, the defense made a decision that it would not *ask* to strike the juror for cause, and that it would choose to seat her on the jury by foregoing the use of one of its peremptory strikes.  The other jurors' testimony at the hearing supports a conclusion that any judgment made by the defense at the time – based on all of the information in the jury questionnaire, the jury consultants' input, the combined experience and instincts of all of the members of the trial team, and the foreperson's answers and sincere demeanor at voir dire – was prescient and sound.  The foreperson held the government to its burden of proof, and the foreperson ensured that the jury took its time and considered each count individually in light of the evidence in the case, the jury instructions, and the presumption of innocence.

For all of these reasons, then, as explained further below, the motion for a new trial will be denied.

## PROCEDURAL HISTORY

I.   **Jury Selection**

   A.   **Jury Selection**

      1.   **Juror Questionnaires**

On January 24, 2019, the grand jury returned an indictment charging defendant with obstructing an investigation conducted by the U.S. House of Representatives Permanent Select Committee on Intelligence ("HPSCI"), giving false testimony, and tampering with a witness in that investigation.  Indictment [Dkt. # 1].  At that time, the matter was being prosecuted by the Office of the Special Counsel ("OSC"), led by Robert S. Mueller III.  Given the possibility that members of the jury pool might have already received information or formed opinions about the proceedings before HPSCI, the OSC, the defendant, or the charges in this case, the Court decided, with the concurrence of the parties, to utilize a written jury questionnaire to supplement and facilitate the jury selection process.  *See* Scheduling Order [Dkt. # 65] at 1–2.  Counsel for both sides worked together to submit a joint proposal, *see* Notice of Filing of Proposed Written Jury

Questionnaire [Dkt. # 184],[8] and the Court based the final questionnaire on the parties' submission.
*See* Juror Questionnaire.

On September 12, 2019, 120 potential jurors, including the juror who later became the
foreperson, were summoned to the courthouse to complete the questionnaire. *See* Tr. of Jury
Questionnaire Proceedings, Sept. 12, 2019 [Dkt. # 356] ("JQ Proceedings Tr.") at 6–9. They were
told that the questionnaire would aid in selecting a jury for the trial in *United States v. Roger Stone*,
which was set for November. *Id*. at 9. They were asked to stand, raise their right hands, and
swear or affirm that the answers they were about to give would be true and accurate to the best of
their knowledge. *Id*. at 12.

The jurors were instructed by the Court:

> During the trial your contact with other people will not be restricted. But
> beginning now and continuing until you have been excused from further
> service by the Court, you will not be permitted to talk about the case with
> anyone or to read, watch or listen to any press coverage the case might
> receive . . . . [F]rom this day forward, you may not talk or communicate
> about this case or your potential jury service with anyone else, including
> your own family . . . . The need to have a fair trial also means that from this
> point onward you must not read anything whatsoever about this case. Please
> do not go home and search the internet or consult newspapers or magazines
> or any other news or social media source to find out what it's all about or
> who these people are. And you should try to avoid receiving any
> information about the case from news media. If it comes to your attention
> inadvertently, which it may, please click on something else or ignore the
> headline . . . .

---

8       The Notice stated that there was only one question about which the parties disagreed. The
defense proposed to ask the jurors which candidate they voted for in the 2016 presidential election,
the government objected, and the question was not included in the questionnaire. *See* Proposed
Juror Questionnaire [Dkt. # 184-1] at 22. The final questionnaire jointly proposed by the parties,
*see id*. at 14, and approved by the Court did ask if the jurors worked or volunteered for any 2016
presidential campaign, *see* Juror Questionnaire [Dkt. # 247] at 13; the parties did not ask whether
potential jurors ever made financial contributions to any political candidate. *See generally*
Proposed Juror Questionnaire; Juror Questionnaire.

JQ Proceedings Tr. at 7–11.  The written instructions appended to the questionnaire included a similar admonition:

> From this day forward, until you have been formally excused from service, you are instructed not to communicate in person, in writing, or electronically about this case or the questionnaire with anyone, including your family and fellow jurors.  Also, you should not go online or look at any source to learn more about the charges, the defendant, or any participant in the case.

Juror Questionnaire at 1.

The potential jurors completed the questionnaires in the courtroom.  It covered the jurors' personal backgrounds, experience with the law and with law enforcement, and their familiarity with the case and the individuals involved.  *See* Juror Questionnaire.  Its purpose was "to determine whether prospective jurors can decide this case fairly, based solely on the evidence presented at trial and the instructions on the law given by the judge," *id.* at 1, and it posed a number of questions specifically designed to probe potential bias.  *See id.*, questions 29–30, 34, 48–51, 56.

### (a) The Foreperson's Questionnaire Responses

The questionnaire began with questions calling for personal information such as the juror's age, marital status, educational level, and employment.  The foreperson's completed questionnaire disclosed that she is a senior program officer for a charitable foundation where, as of that time, she had worked for approximately three years.  *See* Foreperson's Juror Questionnaire ("JQ") (Attachment A) 5–6 (REDACTED).[9]  She stated that she has a "JD/Law" degree, JQ 4, and is licensed to practice law in Tennessee, where she "served as an attorney Sept 20[  ]–Dec 20[  ]." JQ 13.

---

9       The numbers cited after "JQ" refer to the question numbers, not page numbers.

11

Question 14 asked, "[h]ave you or a close friend or family member ever applied for employment with, was employed by, or received training by any local, state, or federal law enforcement agency, . . ." and it listed as examples nineteen federal, state, and local law enforcement or intelligence organizations.  JQ 14.  The juror responded by identifying one person who currently works for the FBI in Tennessee and another who formerly worked for the U.S. Attorney's Office in Tennessee.  JQ 14.

Question 18 asked:

> Are you currently, or have you ever been, a member or regular participant in any civic, social, union, professional, business, fraternal, recreational or other community group or charitable organizations?

The juror checked "Yes" and listed:

- [Historically Black] sorority [____] – present member of the sorority
- Black MBA Association [_____], member of Atlanta chapter
- Member Urban League Young Professionals; Civic Engagement Chair [____]

JQ 18.

While the juror had never served as a juror in a trial before, she had been the foreperson of a federal grand jury that sat for twenty-four months.  JQ 19.

Question 21 asked about the jurors' sources of news and information, and the foreperson completed it as follows:

12

21.  If you follow local or national news, what are your primary sources for local and national news and information? (Check all that apply)

I do not follow local or national news ____

Newspapers (including online) __✗__  TV/cable __✗__  Blogs/websites __✗__

Social Media __✗__   Radio ____   News magazines __✗__

Word of mouth/conversations __✗__  Other sources (specify) _____

Please identify by names your primary sources of news and information:

*Washington Post; Apple News Service; Twitter; Facebook; New York Times; CNN; Politico; The Hill; CBS News*

The juror answered "Yes" to the next question, asking whether she "listen[s] to political commentators on TV or talk radio," adding, "not regularly but CNN shows (Anderson Cooper); MSMBC – Rachel Maddow/Chris Hayes."  JQ 22.

The questionnaire also asked what the jurors had published on certain topics:

> Have you written or posted anything for public consumption about the defendant, the House Permanent Select Committee on Intelligence investigation into Russian interference in the 2016 presidential election, or the investigation conducted by Special Counsel Robert Mueller?
>
> [For purposes of this question, writing "for public consumption" includes blog posts, articles, or posts on internet sites that are accessible to the general public.][10]

JQ 23.  The foreperson did not check "Yes" or "No."  In the space provided for elaboration, she wrote, "I can't remember if I did, but I may have shared an article on Facebook.  Honestly not sure."  JQ 23.

---

[10]    Question 23 did not ask about Facebook, Twitter, or other social media accounts specifically.

13

In response to the question asking the juror whether she or any close friend or family member had "ever run for or held a political office in the federal, state, or local government," she responded "Yes," explaining:  "I served on the elected school board in Memphis [for eight years]. I ran in the democratic primary for Dist 9 (TN) for the US House of Rep in [_____]."  JQ 24.

The next question asked the jurors how closely they followed media reports relating to investigations into Russian interference in the 2016 election, and they were given four options: "Very Closely," "Somewhat Closely," "Not too closely," and "Not at all."  JQ 25.  The foreperson checked "Somewhat Closely."  JQ 25.

Question 26 asked whether potential jurors would be able to avoid reading about or listening to media reports about the case, including online, and if they could refrain from discussing the case with fellow jurors or with anyone else through any medium, including online, until the end of the trial.  The foreperson answered "Yes."  JQ 26.

The questionnaire included a number of questions related to the jurors' knowledge of the participants in the trial or the case in general.  When asked, "[h]ave you read or heard anything about the defendant Roger Stone, about any statements made by or attributed to Mr. Stone, or about this case," the foreperson wrote:  "Yes.  Mr. Stone is accused of inappropriate contact [with] Russian officials in the effort of helping Mr. Trump's campaign for President."  JQ 27.

The juror indicated that neither she nor anyone close to her had "any connections" to the Court, the attorneys involved in the case, or the defendant; nor did she know personally any of the thirty-one individuals included in a list of "people who may be witnesses in the case or who may be discussed during the trial."  JQ 28–29.  The list included, among others, Julian Assange, Steve Bannon, Hillary Clinton, Paul Manafort, Richard Gates, and the President, Donald Trump.  JQ 29.

14

The next question asked, "[p]lease indicate if you already have an opinion about any of those individuals, or if the fact that they may be involved in the case would make it difficult for you to be fair and impartial to both sides." JQ 30. The juror wrote, "I do have opinions about some of the officials/people on the list, but they do not make it difficult for me to be fair." JQ 30. She also checked "No" in response to whether she had "formed or expressed any opinion about Mr. Stone, the charges in this case, or about his guilt or innocence in this case." JQ 34.

When asked, "[h]ave you or a close friend or family member ever been employed or had any association or connection with Congress or a congressional committee," the foreperson checked "Yes," explaining: "I ran for Congress in [_____]." JQ 31. She also identified two friends by name who had worked for a former democratic congressman from Tennessee. JQ 31. The juror stated she had not worked or volunteered for any 2016 presidential campaign, JQ 32, and that neither she nor any close friend or family member participated in, or had any connection to, a group that participated in "any investigation or inquiry into the circumstances surrounding Russian interference in the 2016 presidential election." JQ 33.

The questionnaire also inquired about the jurors' experience with the court and criminal process. When asked, "[w]ithin the past ten years, have you or a close friend or family member been the victim of a crime" the juror answered "Yes." JQ 36. The next question called for more detail on that subject, and she wrote: "homicide – [a relative] was the victim in [____] – no arrests were made," and "assault – [a relative] was accused of assault in [_____];" she was arrested and has been on probation. JQ 37. The foreperson indicated that she felt these family members were treated fairly by the government agency involved. JQ 38. She also responded that neither she nor any close friend or family member had been a witness to a crime, or testified in any court proceeding in the past ten years. JQ 39–40. Question 41 asked, "[w]ithin the past ten years, have

15

you or a close friend or family member been arrested for, charged with, prosecuted for, or convicted of any crime other than a traffic ticket?"  She said yes and explained, "My [relative] was charged and arrested for assault at work."  JQ 41.  The relative had been on probation.  JQ 41.  Another relative "may have been arrested for drug possession during this time."  JQ 41.  When asked whether she had ever been involved in any legal proceeding in any capacity, the juror checked "Yes," explaining that she practiced law for four years more than ten years ago.  JQ 45–46.  "I appeared for motions and other legal proceedings."  JQ 46.

The juror answered "No" to all of the following questions:

> 15.   Do you have any opinions or beliefs concerning law enforcement organizations in general, including the Federal Bureau of Investigation (FBI) or the Department of Justice, or the Special Counsel's Office within the Department of Justice, that would affect your ability to evaluate the evidence fairly and impartially?

> 16.   In this case, the United States is represented by the U.S. Attorney's Office for the District of Columbia.  The investigation that led to the charges in this case was conducted by Special Counsel Robert S. Mueller, III.  The U.S. Attorney's Office is, and the Special Counsel's Office was, a part of the U.S. Department of Justice.  Is there anything about the fact that the Special Counsel's Office, the U.S. Attorney's Office, or the Justice Department is or was involved in this case that affect your ability to be fair and impartial in this case and base your decision solely on the evidence presented and the Court's instructions on the law?

> 48.   The judge will instruct you that the charges in this case include: obstruction of an official proceeding, making false statements, and witness tampering.  Is there anything about the nature of the charges alone that would affect your ability to be fair?

> 49.   Jurors are the sole judges of the facts.  However, the jury must follow the principles of law as instructed by the judge.  The jury may not follow some rules of law and ignore others.  Even if the jury disagrees or dislikes the rules of law or does not understand the reasons for some of the rules, it is their duty to follow them.  Do you have any personal beliefs that would make it difficult to follow the Court's legal instructions, whatever they may be?

16

> 51.  Do you have any personal reason that makes you want to serve as a juror in this case, or do you have any personal interest in the outcome of the case?

JQ 15, 16, 48, 49, 51.

The final questions related to the criminal justice system and legal principles.  The jurors were asked:

> If, during the course of jury deliberations, a fellow juror should suggest that you disregard the law or the evidence and decide the case on other grounds, would you, as a juror, be able to reject that suggestion and abide by your oath to this court to decide the case solely on the evidence and law . . . ?

JQ 50.  The foreperson answered "Yes."  JQ 50.  The questionnaire concluded:

> Is there anything about this case, the issues, or the people involved in this case, or any other reason that has not be been asked about in any other question, that leads you to believe that you could not be completely fair to both the defendant, Roger Stone, and the U.S. Government in this case?

JQ 56.  The juror answered "No."  JQ 56.

Each juror was required to attest to the truth of his or her answers on the last page.

> By signing below, I hereby declare under penalty of perjury that all of the answers to the above questions are true and correct to the best of my knowledge and belief.  I have not discussed my answers with others or received assistance in completing the questionnaire.  I have answered all of the above questions myself.

Questionnaire at 20.  This "certification" page included a line for a handwritten signature, a line with the instruction, "[p]rint your full name here," and a line for the date.  *Id.* The foreperson's questionnaire bears her signature and the September 12, 2019 date, and the printed name is entirely legible.  *See id.*

### (b)  Transmission of the Completed Juror Questionnaires to Counsel

After the potential jurors had finished writing, they handed the forms to the Deputy Courtroom Clerk.  One of the Assistant U.S. Attorneys on the prosecution team picked up the completed questionnaires from the Deputy.  Mot. Hr'g Tr. at 5–6.  The government made copies

of the questionnaires that day and returned the originals to the Deputy Courtroom Clerk. *Id.* at 11. Pursuant to an arrangement agreed to by the lawyers, the government then transmitted the questionnaires to defense counsel electronically. *Id.* at 6, 10.

The completed questionnaires, which included the signature pages, were scanned as individual PDF files and saved by juror number onto a secure share drive maintained by the U.S. Attorney's Office. Mot. Hr'g Tr. at 6–7. Each file was then uploaded to a program used by the office to share discovery and other documents with counsel in its cases, and counsel for the defendant was notified that day that the questionnaires were available to retrieve. *Id.* at 6–7, 9–10; Gov't Hr'g Ex. 6 (Sept. 12, 2019 email from Assistant U.S. Attorney Kravis to defense attorney Grant Smith confirming the availability of the files).[11]

Smith downloaded the questionnaires the following day, September 13, 2019, including the foreperson's completed juror questionnaire. Mot. Hr'g Tr. at 10. With that, the defense team had her answers and her full name. *See id.* at 8 ("THE COURT:  And you don't contest that you received the signature page with not only her signature but her name printed legibly on page 20? [DEFENSE COUNSEL]:  That's correct, Your Honor."); *see id.* at 10, 12.

Everyone on the defense team – the six attorneys who had entered appearances in the case, at least two additional attorneys who had not entered appearances, two jury consultants who had been retained by that time, and Stone himself – had access to the questionnaires. *See* Mot. Hr'g Tr. at 29. The jury consultants were tasked with reviewing the completed questionnaires and providing their thoughts about "which jurors would be favorable to the defense." *See id.* at 29, 31.

---

11      A list of the exhibits presented by the parties at the February 25, 2020 motions hearing appears on the docket.   *See* Exhibit Lists [Dkt. # 353].

18

Although defense counsel assumed the jury consultants had internet access, they were not specifically directed to conduct internet research on the potential jurors.  *Id.* at 31 ("[DEFENSE COUNSEL]:  There were costs associated and logistics associated with it.  They don't particularly do it themselves, and it just didn't happen.").

### 2.  Requests to Strike Jurors for Cause

The parties were given the opportunity to move to strike prospective jurors for cause before trial based solely upon their written answers to the questionnaire.  *See* Scheduling Order at 2; Gov't "For Cause" Juror Strikes [Dkt. # 208] (SEALED); Def.'s "For Cause" Juror Strikes [Dkt. # 209] (SEALED) ("Def.'s Strike List").   In accordance with the scheduling order, the defendant identified fifty-four jurors on September 17, 2019, and the foreperson was not included on his list. *See* Def.'s Strike List.

On September 18, 2019, upon consideration of the parties' motions and its own review of the written responses, the Court struck thirty-eight of the potential jurors for cause, all of whom had been among those identified by the defendant.  *Compare* Order [Dkt. # 211] (SEALED) ("Sept. 18 Order") *with* Def.'s Strike List.[12]   Neither party had asked that the foreperson be removed, and the Court saw nothing in her completed juror questionnaire that warranted her removal, so she was not included in the order.  *See* Sept. 18 Order.

On November 4, 2019, the day before the start of individual voir dire, the defense moved the Court to reconsider its rulings with respect to nine of the jurors who were permitted to remain in the jury pool, and it renewed its request that those jurors be removed for cause.  *See* Def.'s Mem.

---

12     Sixteen potential jurors survived defendant's motion to strike and remained in the jury pool, but none of them ended up serving as either jurors or alternates.

on Jury Selection [Dkt. # 249] (SEALED).[13]   The defendant did not include the foreperson or move to strike her this time either.   *See id*.

### 3.   The Jury Panel Sheet

Trial was scheduled to begin on November 5, 2019, and by virtue of the strikes for cause, the list of potential jurors had been reduced to eighty-two names.   Since the jurors had already completed written questionnaires, there was no need to pose the usual set of voir dire questions to the group as a whole.   Instead, the procedure to be followed was that the prospective jurors would receive some preliminary instructions, be sworn, and then be excused from the courtroom to be brought back one at a time in for follow-up questioning.   Counsel had been advised previously that the Court would seat the potential jurors in the courtroom and question them individually in the order they appeared on a document prepared by the Jury Office called a Jury Panel Sheet.[14] Counsel, therefore, understood that the potential jurors appearing at the top of the list were more likely to be seated on the jury than those appearing at the end of the list unless they were struck for cause.   *See* Mot. Hr'g Tr. at 18–19.[15]

---

13      The Court later granted the motion as to two of the nine jurors, Tr. of Jury Trial, Nov. 5, 2019, Morning Session [Dkt. # 294] ("Nov. 5 A.M. Tr.") at 24–25, and none of the other seven who remained on the panel served as jurors during the trial.

14      The Jury Panel Sheet does not list potential jurors alphabetically or sequentially by juror number; they appear in a random order.  Mot. Hr'g Tr. at 18–19; *see* Gov't Hr'g Ex. 4 (Jury Panel Sheet).

15      *See also* Mot. Hr'g Tr. at 28 ("THE COURT:  And you understood the significance of the order from the document that I had given attorneys for both sides about my criminal voir dire procedures where I explained that the jurors were going to be seated in the courtroom in the order of their jury numbers; isn't that right?  [DEFENSE COUNSEL]:  That's right.  THE COURT: And that's why both you and the government wanted to get the panel list before the trial if you could?  [DEFENSE COUNSEL]:  Right.").

On the afternoon of October 31, 2019, in response to a request from the lawyers, the Court agreed to make the order established by the Jury Panel Sheet available to counsel.  *See* Mot. Hr'g Tr. at 20.  They could not photocopy the list, but they were permitted to view it and write down the jurors' numbers in the order in which they would appear.  *Id.* at 19–21; *see* Hr'g Ex. 8 (Oct. 31, 2019 email from Deputy Courtroom Clerk to counsel for the parties).  Between that date and November 5, by agreement of the parties, an attorney for the government came to the courthouse to view the Jury Panel Sheet, and he transmitted a handwritten list of the juror numbers in order to defense counsel.  *Id.* at 21–24; *id.* at 27; *see* Gov't Hr'g Ex. 9 (handwritten list of potential jurors in order presented on the Jury Panel Sheet).  The foreperson appeared on the first page of the three-page list, and she was the fourteenth of the eighty-two potential jurors listed.  *See* Jury Panel Sheet at 1.

### B.   Individual Voir Dire

On November 5, 2019, the jurors and the parties appeared in court for individual voir dire, and counsel received paper copies of the Jury Panel Sheet.  Mot. Hr'g Tr. at 14, 27–28.  Before questioning began, the Court granted defendant's motion for reconsideration in part and struck two of the jurors identified in his November 4 memorandum, leaving eighty potential jurors.  *See* Nov. 5 A.M. Tr. at 23–24.

The Court then explained why it denied defendant's motions to strike other prospective jurors based on their written questionnaire responses alone.

> I've reviewed the first set of requests of strikes very carefully.
>
> I struck those individuals who expressed the fact that they had an opinion about the defendant or the charges.  The mere fact that someone expressed an opinion about the president alone is not a basis, to me, to assume that they could not be fair, particularly if they indicated that they could be, although it certainly [is] grist for follow-up questions.

> And even those who indicated they'd heard something about the defendant or the case, that alone wasn't enough for me to automatically assume they needed to be struck for cause.  Again, I think it's grist for follow-up questions. . . .
>
> I believe that the defense has assumed bias that has not yet been shown on the part of all those people, and that more information and more follow-up questions are needed before we can determine that these people should be excused for cause.
>
> So, the fact that some people haven't, based on their questionnaires, is without prejudice to any motion you may file after we've had an opportunity to explore potential bias in the courtroom and hear what they have to say.

Nov. 5 A.M. Tr. at 23–24.  The Court underscored the importance of the exercise the lawyers were about to undertake and reiterated that it would remain open to renewed motions after more questions had been asked.  *Id.* at 25 ("THE COURT:  I don't believe working for the government, having an opinion about the president, or having heard something about the case, in and of itself, means that the person is biased against this defendant on these charges, and we will ask them follow-up questions and we will see.").

At that point, individual voir dire commenced, with the Court and counsel for the parties asking potential jurors questions in open court but outside of the presence of the rest of the panel.[16] *See generally id.*; Tr. of Jury Trial, Nov. 5, 2019, Afternoon Session [Dkt. # 295] ("Nov. 5 P.M. Tr.").

### 1.  The Court's Questioning of the Foreperson

As with all of the potential jurors, the Court began the individual voir dire of the foreperson by asking its own questions.

---

16      The jury consultants were not present in the courtroom for the individual voir dire.  In addition to the defense attorneys of record, there were two lawyers present who had not entered appearances in the case.  According to counsel for Stone, they "may have given their thoughts and comments" to the defense team at that time.  Mot. Hr'g Tr. at 30.

22

THE COURT:  We've had the opportunity to review your questionnaire but I do have a few follow up questions.

PROSPECTIVE JUROR:  Okay.

THE COURT:  I understand that you do have a law degree; is that correct?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Are you practicing law now?

PROSPECTIVE JUROR:  No.

THE COURT:  Have you ever practiced criminal law?

PROSPECTIVE JUROR:  No, not criminal law.

THE COURT:  You did once serve I believe as the foreperson of a federal grand jury; is that correct?

PROSPECTIVE JUROR:  Yes, yes, Your Honor.

THE COURT:  So that was a pretty long assignment as I understand it.

PROSPECTIVE JUROR:  Two years.

THE COURT:  When you came and went was it in this federal courthouse or --

PROSPECTIVE JUROR:  No, it was in Western District of Tennessee.

THE COURT:  At that time as you know, you only heard from one side. You heard the government's side of the case.  And you were only asked to determine whether there was probable cause to believe whether a crime had been committed and the defendant had committed it.

You understand that that will not be the standard that applies in this case and the government is going to have to prove its case beyond a reasonable doubt here?

PROSPECTIVE JUROR:  Yes.

THE COURT:  You've also indicated a fair amount of paying attention to news and social media including about political things?

PROSPECTIVE JUROR:  Yes.

<div align="center">23</div>

THE COURT:   And when we asked what you read or heard about the defendant, you do understand that he was involved in Mr. Trump's campaign in some way?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Is there anything about that that affects your ability to judge him fairly and impartially sitting here right now in this courtroom?

PROSPECTIVE JUROR:  Absolutely not.

THE COURT:  What is it that you have read or heard about him?

PROSPECTIVE JUROR:  So nothing that I can recall specifically.  I do watch sometimes paying attention but sometimes in the background CNN. So I recall just hearing about him being part of the campaign and some belief or reporting around interaction with the Russian probe and interaction with him and people in the country, but I don't have a whole lot of details. I don't pay that close attention or watch C-SPAN.

THE COURT:  Can you kind of wipe the slate clean and learn what you need to learn in this case from the evidence presented in the courtroom and no other source?

PROSPECTIVE JUROR:  Yes.

THE COURT:  You actually have had some interest in Congress yourself?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Does the fact that this case involves allegations of not being truthful to Congress, is that something that you think that the nature of the allegations alone would make it hard for you to be fair?

PROSPECTIVE JUROR:  No.

Nov. 5 P.M. Tr. at 92–94.[17]

The Court then asked if the government had any questions for the juror.  It did not.  *See id.*

at 95.

---

17      This excerpt includes all of the Court's questions to the juror.

24

## 2.  Defendant's Questioning of the Foreperson

The defense was then given an opportunity to question the juror:

[DEFENSE COUNSEL]:  Good afternoon.

PROSPECTIVE JUROR:  Good afternoon.

[DEFENSE COUNSEL]:  Did you ever work for anyone in Congress?

PROSPECTIVE JUROR:  No.

[DEFENSE COUNSEL]:  You've worked on campaigns for Congress people running for Congress?

PROSPECTIVE JUROR:  I ran for Congress.

[DEFENSE COUNSEL]:  You ran for Congress?

PROSPECTIVE JUROR:  I worked on my own campaign.

[DEFENSE COUNSEL]:  And you have friends who worked for other congressmen?

PROSPECTIVE JUROR:  Yes.

[DEFENSE COUNSEL]:  Do you have any political aspirations now?

PROSPECTIVE JUROR:  I don't know, not federal.

[DEFENSE COUNSEL]:  What might they be?

PROSPECTIVE JUROR:  My home state in Tennessee.  No local.

[DEFENSE COUNSEL]:  Just recognize that there might be some media -- What are your aspirations?

PROSPECTIVE JUROR:  I served, can I just say I served in political office in Memphis in a local office on the school board.  So I, one day I wake up and say I run for, you know, office again in Memphis to impact education.  One day I wake up and say no way in the world would I do that.  So I don't have an immediate plan to run for office.

[DEFENSE COUNSEL]:  The fact that you run for an office, you're affiliated with a political party. Roger Stone is affiliated with the Republican party, Donald Trump. You understand what I'm saying and getting at?

25

PROSPECTIVE JUROR:  I do.

[DEFENSE COUNSEL]:  How do you feel about that?

[GOVERNMENT COUNSEL]:  Objection.

THE COURT:  Can you make that question a little bit more crisp?  Is there anything about his affiliation with the Trump campaign and the Republican party in general that gives you any reason to pause or hesitate or think that you couldn't fairly evaluate the evidence against him?

PROSPECTIVE JUROR:  No.

Counsel for the defendant then chose not to ask any additional questions.

[DEFENSE COUNSEL]:  Thank you, ma'am.

THE COURT:  All right, you can step out.

(Prospective juror leaves courtroom.)

THE COURT:  [Defense counsel], you have a motion?

[DEFENSE COUNSEL]:  No.

Nov. 5 P.M. Tr. at 95–96.[18]

The Court and counsel questioned the potential jurors in the order they appeared on the jury panel sheet, and by the end of the day on November 5, thirty-four had been qualified, and the remainder were excused.[19]  Based on motions by the parties or its own motion, the Court struck an additional eighteen potential jurors from the venire that day, but neither side moved to strike the foreperson for cause.  The parties were advised before the Court adjourned for the evening that

---

18      This excerpt sets forth the defendant's questioning of the juror in its entirety.

19      Pursuant to Federal Rule of Criminal Procedure 24(b)(2), the defense was able to exercise ten peremptory challenges, the government had six, and each side could strike one alternate.  For that reason, the Court sought to qualify thirty-four jurors before excusing the rest; that would supply the number needed for the twelve jurors and two alternates, the eighteen strikes, and a few extras in the event any became unavailable overnight.  *See* Nov. 5 P.M. Tr. at 58, 200–01, 223.

26

the qualified jurors would be seated the next day in the order they appeared on the Jury Panel Sheet.[20]  By that point, the juror who became the foreperson had moved up to tenth on the list.

### C.   Peremptory Strikes

On November 6, 2019, the thirty-four qualified potential jurors returned to court, and the parties exercised their peremptory strikes.  Tr. of Jury Trial, Nov. 6, 2019, Morning Session [Dkt. # 296] ("Nov. 6 A.M. Tr.") at 239–242.[21]  Neither side struck the juror who is the subject of this motion, and she was seated on the jury.  *See id.*

## II.   Trial

After the jury was selected on November 6, the Court gave the jury panel preliminary instructions, each side made an opening statement, the government introduced its witnesses and exhibits, and the defense followed.  *See generally* Nov. 6. A.M. Tr. at 248–98; Tr. of Jury Trial, Nov. 6, 2019, Afternoon Session [Dkt. # 297] ("Nov. 6 P.M. Tr.") at 304–92.  On November 12, each side rested its case.  Tr. of Jury Trial, Nov. 12, 2019 [Dkt. # 304] at 1052.  On the morning of November 14, the Court instructed the jury about the applicable law and how to conduct its deliberations.  *See* Tr. of Jury Trial, Nov. 14, 2020 [Dkt. # 307] ("Nov. 14 Tr.") at 1228–55.

---

20      *See* Nov. 5 P.M. Tr. at 223–24 ("THE COURT: According to my calculations we have 34 qualified jurors, we need 32. . . .  Tomorrow morning they all have to report to the jury room. . . . [The Deputy Courtroom Clerk] will bring them down, seat them in the order in which they're listed on the jury list in the courtroom, and we will exercise [per]emptory strikes as described in the memorandum that I gave you.  When everyone has exercised their strikes or has passed and then, and we've selected the alternates, at that point 14 people will be seated in the box.").  The Court elaborated on these instructions in response to questions asked by the defense.  *Id.* at 224–25; *see also* Mot. Hr'g Tr. at 33.

21      Neither side lodged any challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), to any strike exercised by the other.

Regarding selection of a foreperson, the Court instructed the panel as follows:

> When you return to the jury room, you should first select a foreperson to preside over your deliberations and be your spokesperson here in court. There are no specific rules about how you should go about selecting a foreperson; that's up to you. However, as you go about the task, be mindful of your mission, to reach a fair and just verdict based on the evidence. Consider selecting a foreperson who will be able to facilitate your discussions, who can help you organize the evidence, who will encourage civility and mutual respect among all of you, and who will invite each juror to speak up regarding his or her views about the evidence, and who will promote a full and fair consideration of that evidence.

*Id.* at 1252. With no input from either the Court or the parties, the jury selected a juror to serve as the foreperson. *See* Mot. Hr'g Tr. at 74, 80 (explaining that the jurors used a secret ballot to select the foreperson).

At 2:07 p.m. on November 14, the jury submitted a note to the Court with a question about an exhibit. Public Note from Jury 1 [Dkt. # 256] (PUBLIC); *see also* Nov. 14 Tr. at 1257. The note included the foreperson's signature, and this was the first time the name of the juror selected to serve as the foreperson was revealed to the Court. *See* Note from Jury 1 [Dkt. # 257] (SEALED). After conferring with counsel, the Court answered the jury's question. *See* Note from Jury 1; Nov. 14 Tr. at 1257–65.

At 3:23 p.m. on November 14, the jury submitted a second note with a question about Count Three. Public Note from Jury 2 [Dkt. # 256]; *see also* Nov. 14 Tr. at 1266. This note was also signed by the foreperson. *See* Note from Jury 2 [Dkt. # 257] (SEALED). After conferring with counsel, the Court answered the jury's question. *See* Nov. 14 Tr. at 1266–74.

The jury's deliberations continued to the following day, and at 11:11 a.m. on November 15, the jury informed the Court it had reached a verdict. Note from Jury [Dkt. # 258] (PUBLIC). It found the defendant guilty on all seven counts. Verdict Form [Dkt. # 260]; *see also* Tr. of Jury Trial, Nov. 15, 2020 [Dkt. # 308] ("Nov. 15 Tr.") at 5–7.

The Court then excused the jurors and told them that they were released from their obligation not to discuss the trial:

> Before I release you back to the jury room to retrieve your belongings, I also want to now release you from the instructions that I have been giving you on a daily basis since the trial began.  You are now free, although you are not required, to discuss this case with anyone you choose.  You're free to read about it, to talk about it.  All of the instructions that I have been giving you on a regular basis are hereby – you're relieved of them.

Nov. 15 Tr. at 9.

## III.    Post-Verdict Events

On February 10, 2020, the parties file their memoranda in aid of sentencing.  Gov't Sentencing Mem. [Dkt. # 279]; Def.'s Sentencing Mem. & Mot. for Variance from Advisory Guidelines [Dkt. # 280].  The next day, the government filed a Supplemental and Amended Sentencing Memorandum, and the prosecutors in the case withdrew from the matter or resigned from their jobs entirely.  Gov't Suppl. & Amended Sentencing Mem. [Dkt. # 286]; Notices of Withdrawal [Dkt. ## 282, 283, 285, & 287].  On February 12, 2020, following significant media coverage of the prosecutors' actions, the foreperson posted a message on her Facebook page, publicly identifying herself as the jury foreperson and expressing her support for the prosecutors.[22] This prompted various people to search for more information about her online.

Two days later, on February 14, 2020, defendant filed a motion for a new trial based on social media posts that had been uncovered in the wake of the juror's public statement.  Def.'s Mot. for New Trial [Dkt. # 312]; Ex. 1 [Dkt. # 312-1] ("composite Exhibit" of social media posts). On February 18, he filed an amended motion, Def.'s Am. Mot. for New Trial [Dkt. # 313] ("Am.

---

22      *See* Shimon Prokupecz & Ashley Fantz, *Stone juror says she 'stands with' the prosecutors*, CNN, Feb. 12, 2020 (7:03 p.m.), Ex. 1 to Am. Mot. for New Trial [Dkt. # 312-1] (SEALED) ("Comp. Ex.") at 1.

Mot."),[23] and the government filed its opposition the same day.  Gov't Opp. to Am. Mot. [Dkt.
# 314] ("Gov't Opp.").  On February 24, defendant filed a reply brief.  Def.'s Reply in Supp. of
Am. Mot. [Dkt. # 338] ("Reply").  Defendant also requested a hearing on his motion.  Def.'s Mot.
to Open the Hr'g in Supp. of Am. Mot. for New Trial [Dkt. # 332].

On February 21, 2020, the Court set a hearing date, and it issued a minute order giving the
parties more information.

> The Court has not yet determined what testimony, if any, will be required,
> and if so, with respect to what issues.  However, in an abundance of caution,
> it will summon the foreperson and other members of the jury to the
> courthouse at that time.  It would be the Court[']s intention to follow the
> same process utilized during voir dire:  the Court would initiate any
> questioning and the parties would have an opportunity to ask appropriate
> follow up questions, so the parties should be prepared for that possibility.
> The Court notes that this order does not constitute a ruling on the question
> of whether the defense has or has not come forward with a sufficient factual
> basis to warrant a hearing. . . .

Min. Order of Feb. 21, 2020 (SEALED); Min. Order of Feb. 27, 2020 (PUBLIC) (reissuing
redacted version of Min. Order of Feb. 21).[24]

---

23      The composite exhibit attached to defendant's original Motion for New Trial (Juror
Misconduct) [Dkt. # 312] (SEALED) was not attached to his amended motion [Dkt. # 313], but
the amended motion refers to the exhibit.  *See* Am. Mot. at 16.  Accordingly, the Court will deem
the exhibit, which the defendant also referred to at the hearing, to be incorporated in the amended
motion.  The Court will use the page numbers at the top of the exhibit appearing in the header of
the docketed PDF [Dkt. # 312-3] when it refers to specific pages within it.

24      Before the hearing, the Deputy Court Clerk contacted the thirteen jurors who had attended
the trial in its entirety – one juror had been excused mid-trial due to illness – and advised them that
there would be a hearing regarding allegations related to the jury, and that the Court may need to
hear from them.  *See* Mot. Hr'g Tr. at 67.  The Court invited, but did not summon, the jurors to be
present, and eleven of the thirteen came to the courthouse voluntarily.  *Id.*  One juror was
unavailable due to travel, and another was ill.  *Id.*

IV.     **The February 25 Hearing**

On February 25, 2020, the Court held an evidentiary hearing on defendant's motion for a new trial.[25]  *See* Min. Entry of Feb. 25, 2020; Mot. Hr'g Tr.  The Court heard from counsel for both sides about how and when the completed jury questionnaires and Jury Panel Sheet were provided to the defense,[26] and the defense answered some questions concerning its use of jury consultants.[27]

The Court granted the defendant's request to question the foreperson.  Mot. Hr'g Tr. at 67–68.  It also informed counsel which of the other jurors had made themselves available.  *Id*. at 69–71 (REDACTED).  It announced that "each side may identify one juror other than the foreperson that it wants to hear from on the question of whether there was improper influence or extrajudicial information in the jury room."  *Id*. at 68.  The Court stated that it would begin the questioning, that counsel would be permitted to ask follow-up questions if any of the answers revealed a basis to go further, and that additional jurors would be questioned if the interrogation of the first two elicited information that would warrant further inquiry.  *Id*. at 67–68.  After each team was given an opportunity to confer, there was a sealed bench conference in which the government selected

---

25     Prior to the filing of the instant motion, the Court had set the sentencing hearing for February 20, 2020.  After defendant filed his motion, the Court held a scheduling conference to hear the parties' views on the effect of the motion on whether the Court could proceed with sentencing.  *See* Min. Entry of Feb. 18, 2020.  Neither the Court nor counsel had identified any legal requirement that the sentencing must be postponed, *see* Tr. of Scheduling Conf., Feb. 18, 2020 [Dkt. # 315] at 5, and the Court proceeded with sentencing on February 20.  In its discretion, though, it extended the date for the filing of a Notice of Appeal and stayed execution of the sentence pending resolution of the motion.  *See* Judgment [Dkt. # 328] at 2.

26     *See supra* section I.A.1(b) & section I.A.3.

27     *See supra* section I.A.1(b) & section I.B.

31

Juror A, and the defense picked Juror B.  *Id.* at 72.[28]   The two selected jurors testified, *id.* at 72–83, followed by the foreperson.  *Id.* at 86–120.

Juror A was summoned to the courtroom first and was sworn.  Mot. Hr'g Tr. at 72, 75. After being instructed not to identify any juror by name on the public record, Juror A was asked a series of questions.  *Id.* at 72–78.  Juror A described the procedure the jury used to select a foreperson.

> We solicited volunteers.  One person put their hand up to volunteer.  There was several seconds of silence.  I put my hand up to volunteer, just so we would have some discussion and choice in the matter.  Another juror nominated a third person.  A third person nominated a fourth person.  And so we had four candidates.  We took a secret ballot, and the foreperson was chosen as a result of that secret ballot.

*Id.* at 74.  The juror testified that the judge played no role in selecting a foreperson.  *Id.*

Juror A then explained how the foreperson went about the process of organizing or facilitating the jury's discussions.

> JUROR A:  . . . We established a process or the foreperson quickly established a process where we looked at each element of each charge in isolation.  Actually, I will go back.  The first thing we did was take a secret poll just to sort of get a pulse of the room, where each person indicated whether they were leaning towards guilty, towards not guilty, or not sure on each charge.  After that -- just so we could understand where we needed to focus.  After that, we went through each element of each charge in order, and we decided on each charge or each element and reached unanimity on each element before we moved on to the next one.
>
> THE COURT:  All right. So you considered not only each count individually, but you also considered each element in each count individually?
>
> JUROR A:  That's right, Your Honor.

---

28    The jurors' names and juror numbers were stated on the record under seal, and the Court and counsel referred to them using these monikers to protect their identities.  *See* Mot. Hr'g Tr. at 68, 72.

THE COURT:  Did the foreperson encourage civility and respect among the jurors?

JUROR A:  She absolutely did.

THE COURT:  Was every juror invited or permitted to speak up concerning his or her views?

JUROR A:  Yes, absolutely.  In fact, on at least one occasion, maybe two occasions I can recall, we went around the room and, you know, gave everybody a very explicit opportunity to speak their mind.

*     *     *

THE COURT:  Now, the jury included people of different ages, educational background, race, ethnicity, gender.  How did you get along?

JUROR A:  We got along well.

THE COURT:  Did anyone attempt to dominate or intimidate the others?

JUROR A:  No.

THE COURT:  Was there anyone who pressed for speed or tried to essentially bulldoze the others?

JUROR A:  No.  There was a little bit of impatience a couple of times during deliberations.  But as a group, we were able to sort of slow ourselves down.

THE COURT:  Was anyone a voice for taking your time or being sure to apply the presumption of innocence and hold the government to its burden of proof?

JUROR A:  Yes.

THE COURT:  And is that someone that you need to name with a name?

JUROR A:  I would say that several people were, including the forewoman.

Mot. Hr'g Tr. at 75–77.

After Juror A was excused, Juror B was seated on the witness stand and sworn.  She confirmed that the jury used a secret ballot to select a foreperson, and that no one other than the jurors themselves were involved in the decision.  Mot. Hr'g Tr. at 80.  This juror was also asked

33

to describe how the foreperson went about the process of organizing or facilitating the jury's discussions.

> JUROR B:  We went step by step with each count and looked over the evidence and discussed the evidence, and each person gave their answer of whether, you know, he was innocent or guilty.

*Id.*  Juror B testified that all of the jurors were invited or permitted to give their views.  *Id.* at 81.

The foreperson was the final witness.  First, the juror confirmed for the record that she had served as the foreperson of the jury, Mot. Hr'g Tr. at 87, and that she was the one who posted a statement of support on Facebook on February 12 after the prosecutors withdrew from the case. *Id.* at 88.

In response to questions from the Court, the juror described her use of social media.  Mot. Hr'g Tr. at 87–90.  She testified that she has used both Facebook and Twitter, and that she has posted on both platforms separately.  But she explained:

> [M]ost of my Twitter feed is – has always been for years connected to Facebook.  So if you were seeing something I tweeted, it's most likely generated from my Facebook.  And so if you open it, then it will try to take you to Facebook, because that's where Twitter was reading that from.

Mot. Hr'g Tr. at 95; *see also id.* at 89.  She testified that she posts on Facebook about a range of topics, "[s]ometimes work, sometimes just friends, sometimes my bus rides in the morning, various things."  *Id.* at 106.  But she could not quantify how often she uses the site to communicate:  "It depends. Sometimes very active, sometimes not.  I wouldn't know a number. But quite a bit sometimes."  *Id.*

The foreperson was asked about the statement in her Twitter profile:  "I ♥ Memphis. Fighting for equality and excellence in education for low-income and children of color is my life. Tweets are my own.  Retweets don't equal agreement."  Mot. Hr'g Tr. at 92.  She explained that "tweets are my own" meant that Twitter entries were posted on her own behalf and not on behalf

34

of her employer, *id*. at 92–93, and that "retweets don't equal agreement" meant: "just because I retweet something does not mean that I am stating agreement with it or opposition to it." *Id*. at 93. When asked what prompted her to retweet things, she responded, "[u]sually, it's something I find interesting, something I learned something from and just sharing it with people who follow me on Twitter." *Id*. at 93. She explained that her usual practice was to put quotation marks around comments by others: "generally, if I'm quoting someone, I put it in quotes to signify that's not me saying [it]." *Id*. at 105. She testified that she receives news through internet news subscriptions and alerts, *see id*. at 93–94, but does not pay "attention to a lot on Twitter." *Id*. at 87, 93.

The juror explained that at the time she completed the questionnaire, and before the November 15, 2019 verdict in the Stone trial, the comments she posted on Facebook were public.

> THE COURT: . . . As of September 12th when you came to court and filled out your jury questionnaire, what were your privacy settings?
>
> JURY FOREPERSON: It was open. My settings were mostly public on Facebook and on Twitter.

Mot. Hr'g Tr. at 88.

She said that on November 15, 2019, after the trial, she shut down her social media accounts for approximately two weeks. Mot. Hr'g Tr. at 88–89. She returned to social media around Thanksgiving, and at that time, she changed her Facebook privacy setting to "friends only." *Id*. at 88–89. Also, when she returned to social media, she set up her accounts so that her Facebook posts would no longer automatically appear in her Twitter feed. *Id*. at 89. Although she changed the privacy settings of her accounts moving forward, she did not delete any Facebook or Twitter entries that had been posted on the internet at the time the accounts were public. *Id*. at 90.

Counsel for the parties were then given an opportunity to question the juror. The government declined, and the juror was questioned extensively by counsel for the defense. *See id*.

at 99–120.  The Court did not restrict or cut off the questioning; at the end of the cross examination, with the Court's permission, the attorney handling the hearing paused to consult with the rest of the team, and then he announced that he had no further questions.  *Id*. at 119–20.

## ANALYSIS

Defendant has filed a motion asking the Court to grant him a new trial pursuant to Federal Rule of Criminal Procedure 33(b)(1).  Rule 33 authorizes a court to vacate a judgment and grant a new trial "if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  "[G]ranting a new trial motion is warranted only in those limited circumstances where 'a serious miscarriage of justice may have occurred.'"  *United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014), quoting *United States v. Rogers*, 918 F.2d 207, 213 (D.C. Cir. 1990).  A new trial based on "newly discovered evidence" must "be filed within 3 years after the verdict or finding of guilty," Fed. R. Crim. P. 33(b), and defendant Stone's motion is timely.

To obtain a new trial grounded in newly discovered evidence, a defendant must satisfy five requirements:

> (1) the evidence must have been discovered since the trial; (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) [it must be] of such nature that in a new trial it would probably produce an acquittal.

*United States v. Johnson*, 519 F.3d 478, 487 (D.C. Cir. 2008) (alteration in original), quoting *United States v. Lafayette*, 983 F.2d 1102, 1105 (D.C. Cir. 1993).  A defendant "bears a 'weighty burden'" to establish that a new trial is warranted.  *United States v. Garcia-Pastrana*, 584 F.3d 351, 390 (1st Cir. 2009), quoting *United States v. Del–Valle*, 566 F.3d 31, 38 (1st Cir. 2009).

Here, defendant seeks a new trial on two grounds.  First, he presents a collection of the foreperson's social media postings, and he argues that this "newly discovered evidence" reveals

<div align="center">36</div>

that the juror's answers to the written jury questionnaire and during voir dire were false. *See, e.g.*, Am. Mot. at 1 ("The jury's foreperson concealed her explicit and implicit bias by failing to disclose her active anti-Stone and anti-Trump sentiment, evidenced by her multiple social media postings that directly reference her strong political bias and knowledge of the Stone prosecution in direct contradiction of her responses during voir dire."); *see also id.* at 2 ("A comparison of her social media posts, on the one hand, and her responses to the jury questionnaire and the Court's questioning of her political disposition and its affect upon her ability to enable Stone to have a fair trial, on the other, makes it immediately apparent that [the juror] was not candid; rather, she misled the Court and Stone with plainly disingenuous answers.").

Second, defendant posits that the juror failed to follow the Court's instructions during the trial, and that this alleged misconduct undermined the integrity of the verdict and warrants a new trial. Am. Mot. at 15 ("[G]iven her obvious failure to follow the Court's instructions in voir dire, a presumption arises that she failed to follow the Court's instructions in other instances, which would further undermine the integrity of the trial.").

A motion for new trial is committed to the trial court's discretion. As the D.C. Circuit has emphasized, trials courts are "obviously . . . the tribunal best qualified to weigh the relevant factors" relating to allegations of juror misconduct, *United States v. Williams*, 822 F.2d 1174, 1189 (D.C. Cir. 1987), and their factual determinations are given "great weight." *United States v. White*, 116 F.3d 903, 929–30 (D.C. Cir. 1997) (per curium), quoting *Hobson v. Wilson*, 737 F.2d 1, 49 (D.C. Cir. 1984), *cert. denied*, 470 U.S. 1084 (1985). When considering allegations of juror misconduct, trial courts have broad discretion to fashion the methodology of the inquiry. *United States v. Williams-Davis*, 90 F.3d 490, 498–99 (D.C. Cir. 1996). Courts may allow jurors to be individually questioned, but they must also take care to guard against juror harassment. *Id.* Here,

the Court held an evidentiary hearing, and it permitted the defendant to examine the foreperson and two other jurors.

## I.     The record does not demonstrate that the foreperson lied in voir dire.

According to the defendant, "we now know" that the foreperson's "answers were equivocal, misleading, deceptive, evasive, and fallacious." Am. Mot. at 3. But the evidence does not support his parade of adjectives.

### A.    The Social Media Posts

To address the defendant's contention, it is necessary to catalogue the social media posts upon which the motion is based.

Defendant has supported his motion with forty-two separate social media posts from the period of December 4, 2008 to November 15, 2019. An index of the posts arranged in chronological order is attached to this opinion. Index (Attachment B) (REDACTED).[29] While most of the posts appear in defendant's composite exhibit, he highlighted nine of them by pasting copies into the motion itself.[30]

---

[29]    For ease of reference, the Court will cite to the posts by the number assigned to each in the Index.

[30]    The composite exhibit includes all of the social media posts except for two, which only appear in the motion. Post 1 (Dec. 4, 2008); Post 33 (Jul. 2, 2019). While the composite exhibit – which is not organized chronologically or in accordance with any other discernible methodology – is comprised of fifty-four images of posts, nine of them appear multiple times within the exhibit. *See, e.g.*, Post 2 (Comp. Ex. at 4, 15); Post 5 (Comp. Ex. at 4, 10); Post 14 (Comp. Ex. at 2, 6, 8); Post 16 (Comp. Ex. at 12, 13); Post 25 (Comp. Ex. at 18, 23, 28); Post 26 (Comp. Ex. at 17, 22); Post 27 (Comp. Ex. at 11, 21); Post 28 (Comp. Ex. at 2, 21); Post 42 (Comp. Ex. at 25, 27).

The oldest post in the collection depicts the foreperson posing in a photograph in 2008 with Donna Brazile, a democratic strategist and campaign manager – more than ten years ago.  Post 1 (Dec. 4, 2008).[31]

There are twenty-three posts from the roughly two-year time period between December 16, 2016 up to the date of Roger Stone's arrest, January 25, 2019.  *See* Posts 2–24.  Eight of those make some mention of Russian interference in the election or ongoing investigations into that issue.  *See* Posts 2–7, 14, 19.   Others related to the President or his administration.

There are a total of eleven posts from the almost eight-month period that begins with the date of Stone's arrest in January 2019 through September 12, 2019, the date the potential jurors were summoned to complete the written questionnaire.  *See* Posts 25–35.  Five of these mention the Special Counsel.  *See* Posts 25, 28–31.

Defendant has not supplied the Court with any posts between September 12 and the date the jurors returned for individual voir dire on November 5, 2019.  *See* Index at 13.

There are seven posts dated during the time period the trial was underway:  November 10 through November 15, 2019.  *See* Posts 36–42.  None of these mention the defendant or the trial, *see id*., and the defense conceded at the hearing on the motion that there is no evidence the juror violated the Court's instruction not to communicate about the case.  Mot. Hr'g Tr. at 61–62.

So the question to be determined is whether the thirty-four comments that were posted or retweeted over the two years and nine months between December 2016 and September 2019 – along with the lone post from 2008 – demonstrate that the juror's answers on the written

---

31      Donna Brazile is a former chair of the Democratic National Committee.  *See Wheeler v. Twenty-First Century Fox*, 322 F. Supp. 3d 445, 455 (S.D.N.Y. 2018).

39

questionnaire or her answers in court during voir dire were untruthful.  Approximately fifteen of these relate to the President, and as the defense points out, they generally reflect disapproval of him or disagreement with his policies.  *See* Posts 9–13, 15, 17–18, 21–24, 33–35.  Twelve of the posts from this period mention potential Russian interference in the 2016 election, Posts 2–8, 14, 19–20, 27, 32, and five touch upon the Special Counsel's investigation, Posts 25, 28, 29–31, although some of the posts could arguably fall within more than one category, and one or two address other topics or are too vague to categorize.  *See* Posts 1, 16.  The defense made no effort to produce evidence to show whether these posts comprised a sizable portion or just a small percentage of the juror's total social media output over that period of time.

### B.    The defendant has not shown that the juror's answer to Question 23 was false.

In his motion, the defendant points to the foreperson's social media posts as evidence that she was dishonest in response to Questions 23 in the juror questionnaire.  Am. Mot. at 6–8.

Question 23 asked:

> Have you written or posted anything for public consumption about the defendant, the House Permanent Select Committee on Intelligence investigation into Russian interference in the 2016 presidential election, or the investigation conducted by Special Counsel Robert Mueller?

JQ 23.  It gave jurors the option of checking "Yes" or "No."  JQ 23.  In response, the foreperson checked neither, writing:  "I can't remember if I did, but I may have shared an article on Facebook. Honestly not sure."  JQ 23.

Given that answer, it is not enough for the defense simply to show that the juror did post something about those topics at some time or another; it must show that she lied when she said she did not remember and acknowledged that she "may have."  That is a high hurdle to get over, and the defendant has failed to do it.

The defendant's argument boils down to:  how could she possibly not remember given the "sheer number" of her posts?  Am. Mot. at 6.  But – putting aside the unsubstantiated suggestion that there is something notable about this number of posts – not all of the posts aggregated in defendant's motion are responsive to Question 23.  And the few posts that were related to those topics were spread over the expanse of time between December 16, 2016 and August 25, 2019, while the juror was also using social media to address a myriad of other topics, sometimes "quite a bit."  Mot. Hr'g Tr. at 106.

The question asked whether the juror had written anything for public consumption about three topics:  Stone, the HPSCI investigation into Russian interference in the 2016 election, and the Special Counsel's investigation.

Only two of the posts presented as evidence refer to the defendant in any way, and both were sent eight months before the date the jurors provided their written responses.  On January 25, 2019, the juror sent out a link to a twenty-five-page article that appeared on the National Public Radio website, www.npr.org, detailing the criminal charges that had been brought by the Office of Special Counsel against thirty-four people, including Roger Stone, who had been arrested that morning.  *See* Post 25 (Jan. 25, 2019); Jason Breslow, *All the Criminal Charges to Emerge from Robert Mueller's Investigation*, NPR, Dec. 9, 2018, updated Apr. 12, 2019, Def.'s Hr'g Ex. 2; Mot. Hr'g Tr. at 40–41.  The post was accompanied by a comment:  "Brought to you by the lock

41

her up peanut gallery."  Post 25 (Jan. 25, 2019).[32]  On January 30, 2019, the juror retweeted

someone else's tweet about the response to the defendant's arrest:

> Roger Stone has y'all taking about reviewing use of force guidelines.
> Not Alton Sterling
> Not Eric Gardner
> Not [six other African-Americans]
> But Roger Stone!!!  Think about that.

Post 26 (Jan. 30, 2019).  The tweet said nothing about the charges against Stone, and the juror

added no comment of her own.  *See id.*

There is only one post in the entire collection that mentions the House Committee.  On

March 22, 2018 – a full year and three months before the juror was asked to complete the

questionnaire – she transmitted a link to an article from Politico that began, "The House

Intelligence Committee on Thursday voted along party lines to formally end its investigation into

Russian interference in the 2016 presidential election . . . " with the comment, "[f]rom the folks

who brought us never ending investigations on Benghazi."  Post 20 (Mar. 22, 2018).

As for posts related to the investigation conducted by the Special Counsel, there was the

one transmitting the NPR article from January 2019, *see* Post 25 (Jan. 25, 2019), and four others

during the eight months leading up to September 2019:

---

32      The juror could not recall when she testified whether she wrote the comment or simply
forwarded someone else's words with the article, but she said that she assumed she wrote it because
she usually put quotation marks around comments by others.  Mot. Hr'g Tr. at 105.  She explained
that the phrase referred "to the many rallies where supporters – of Trump would yell 'lock her up,'
suggesting that Hillary Clinton and others should be jailed.  And so . . . it's, you know, the irony
of people saying others should be jailed and they themselves being arrested."  Mot. Hr'g Tr. at 112.

- A March 24, 2019 tweet publishing a link to a Facebook post of an article that began, "Ignoring the numerous indictments, guilty pleas, and convictions of people in 45's inner-circle, some Republicans are asserting that the Mueller investigation was a waste of time because he hasn't found evidence of . . . " Post 28.[33]

- An April 11, 2019 tweet of an article from thehill.com about the indictment of Gregory Craig, who had served as White House counsel for President Obama, for making false statements to the OSC, with the following words in quotation marks, "The former White House counsel was reportedly investigated by special counsel Robert Mueller before the case was referred to the Southern District of New York and . . . " Post 29.[34]

- A May 16, 2019 tweet of an article from nbcnews.com, with the headline "Flynn told Mueller people tied to Trump and Congress tried to obstruct probe." Post 30.

- A May 29, 2019 tweet with the words in quotation marks, "'After that investigation, if we had confidence that the president clearly did not commit a crime, we would have said that,' Mueller said."  The caption of the article begins, "Mueller:  Charging president with a crime was 'not an option we could . . . Special counsel Robert Mueller, in his first public comments on his two-year investigation surrounding President Trump and his campaign, said . . . thehill.com." Post 31.

The defense has located no posts related to the investigation between the end of May and the date three and a half months later when the juror was presented with the questionnaire.[35]  *See* Index at 11–13.

---

[33]    The term "45" as used here refers to President Trump, the 45th President of the United States.

[34]    *See* Mot. Hr'g Tr. at 105 (explaining that she put generally puts quotation marks around a statement that is not hers).

[35]    The defense suggested at the hearing that social media posts about the President – even if they did not mention Roger Stone, HSPCI, or the Special Counsel – also bore some relationship to the juror's answer because the defendant was a supporter of the President.  *See* Mot. Hr'g Tr. at 44–47, 51–52.  But – putting aside the question of whether there is evidence that the juror actually knew that at the time – this reasoning is far too attenuated, and the posts about the President are not germane to any of the prongs of Question 23.  Also, the juror expressly rejected the suggestion that she had Roger Stone in mind when she discussed Trump or his associates, and the defense did not do anything to discredit that testimony on cross.  *See* Mot. Hr'g Tr. at 107–09.

43

This small set of social media comments is hardly inconsistent with the foreperson's answer that she was not sure, and that she "may have shared an article on Facebook."[36]  After all, the questionnaire, with its fifty-six questions, was not a take-home assignment or an open book test; on September 12, months after the posts in question, the potential jurors were confined to a large courtroom and deprived of any access to the internet.[37]

Even though the showing on this issue in the written motion was weak, the Court gave the defendant an opportunity to probe the matter further by questioning the juror in person.  This inquiry did not unearth any additional information to support the request for a new trial.

At the February 25 hearing, the Court drew the foreperson's attention to the two January 2019 posts and asked whether she was aware of them when she answered Question 23.  *See* Mot. Hr'g Tr. at 96–97 (reviewing Posts 25 and 26 with the juror).

---

36      The defense tried to make too much out of the juror's use of a singular article in her statement on the questionnaire.  *See, e.g.*, Mot. Hr'g Tr. at 114 ("Question by [COUNSEL]:  Do you think it's fair to say, based on the posts we just reviewed, that you did more than just share an article?") and 52 ([COUNSEL]:  "[H]er answer . . . 'I may have shared an article on Facebook. Honestly not sure,' I think that that is demonstrably false.").  In the context of the incomplete sentence in the questionnaire, as in casual conversation, the use of the word "an" does not necessarily connote that she shared *only* one, and the juror confirmed that was not her intention in her sworn testimony.  Mot. Hr'g Tr. at 115. ("When I say 'shared an article on Facebook,' that was not meant to say one article.").

37      The jurors were instructed to turn off their cell phones and not to use them to research or perfect their answers.  *See* JQ Proceedings Tr. at 12. ("[T]he first thing I need to ask you to do is to turn off your cell phones and put them away.  And I mean off.  They should not vibrate or hum, and you certainly should not be consulting them in the courtroom while you're completing the questionnaire.").

44

THE COURT: . . . Were you aware that you had sent those when you filled out the questionnaire on September 12th?

JURY FOREPERSON: . . . [I]n that question, I was zeroed in about Roger Stone in response to that question. But I still didn't remember. I posted a lot. That's why I'm not sure. I was not comfortable saying yes or no, because I really wasn't sure. That's why I said I'm not sure, but it could have happened, because I do post things like that.

So no, in that moment, sitting there September 12th, I couldn't remember if I had posted that or not. The reason I didn't check yes or no was because I was trying to be honest, because I honestly didn't know whether I had done it.

Mot. Hr'g Tr. at 98; *see also id.* at 115–16 (concerning the January 30, 2019 post: "I . . . didn't remember that retweet. . . . I don't have in memory every tweet or share that I've done, which is why I said I can't remember . . . which was the honest answer at that time.").[38]

Providing more context for her answer, the foreperson also testified in response to questions: "I post and tweet a lot of stuff" on social media about "various things," "[s]ometimes work, sometimes just friends, sometimes my bus rides in the morning." Mot. Hr'g Tr. at 98, 106. She could not quantify with precision the number of times she communicated on Facebook:

---

[38]     The defense asked the juror why she had specifically mentioned Facebook but not Twitter. Mot. Hr'g Tr. at 114. She responded:

Well, so that's why I start with "I can't remember." And I sat there on September 12th that day, I actually could not remember if I had shared . . . . I don't know the answer to that.

But I said I'm honestly not sure, and that was the honest answer on September 12th. It is why I didn't check yes or no, because I did not want to appear to be deceptive, and I was giving the best answer I could at the time. And as I sat there, I really did not remember if I shared.

*Id.* at 114–15.

45

THE COURT:  And can you give me an average per week, if you can't per day, of how many posts you would post?

JURY FOREPERSON:  It really is hard to do.  I really don't know.  I don't think of it in that way.  I hadn't thought about it in that way.  Again, sometimes pretty active.  A lot of times, it is a news article that I may post and share, sometimes with captions, sometimes without captions.  But I don't know.  I would say I'm active enough, though, on social media.

*Id.* at 106.[39]

This testimony was not impeached or undermined in any way, and the juror was frank and believable when she explained her thought processes on September 12 and her efforts to ensure that the questionnaire responses were accurate.  Given the relatively small number of potentially responsive posts, the amount of time that had gone by since they had been posted, the juror's frequent use of social media to exchange observations on a host of other topics, her credible testimony that she was doing her best to focus in on whether she had said anything about Roger Stone in particular, and the fact that there is no evidence that she ever publicly opined about him

---

[39]    Indeed, a post from November 2019 – when the juror's Facebook posts were being automatically included in her Twitter output – indicates that as of that time, the foreperson had posted 13,000 tweets on her Twitter page by that point.  *See* Post 36 (Nov. 10, 2019) ("13K Tweets").

or his guilt or innocence, the record does not support a finding that the juror's answer to

Question 23 – that she may have shared an article, but she honestly did not remember – was false.[40]

### C. The defense has not shown that the juror's answers about her knowledge of the Stone case was false.

In his pleadings, defendant suggests that the social media posts show that the juror's

answers concerning her knowledge of the case were also false.  *See* Reply at 1 ("The Motion is

based on [the juror's] extremely misleading answers during voir dire that conceal not only her

strong political bias, but her pre-trial knowledge of, and views about, Roger Stone and the charges

against him.").

The Court notes that the juror answered Question 27 – "Have you read or heard anything

about the defendant Roger Stone . . . or about this case?" – in the affirmative:  "*Yes*. Mr. Stone is

accused of inappropriate contact (sic) Russian officials in the effort of helping Mr. Trump's

campaign for President." JQ 27 (emphasis added).   So there is absolutely no support for

---

40      Defendant argued in his motion:  "In the months before the trial, [the juror] was a prolific 'tweeter' . . . regarding investigations into Russian interference in the 2016 election and the Special Counsel's investigation.  Consequently, the sheer number of her tweets and other social media posts on topics inextricably intertwined with this case renders utterly incredible her claim during voir dire that she could not remember if she posted on social media about this case or the related investigations."  Am. Mot. at 6.

While the record indicates that the juror was quite active on social media, Mot. Hr'g at 98 (testifying that she posted "a lot"); Post 36 (Nov. 10, 2019) (showing she had 13,000 tweets), the defense does not provide any statistics indicating how the number of the juror's other social media posts that could be found online as of February 12, 2020 compares to the twenty-eight posts in the composite from the twenty-eight month period from when the Special Counsel was appointed in 2017 through the end of August in 2019.  That rate of one political post per month may not be consistent with defendant's portrayal of the juror as an avid political activist, and it is not clear that the "prolific" label fits or the "sheer number" of posts provides anything.  In any event, almost half of the posts from the relevant time period – sixteen of the twenty-eight – related to Trump and not to the topics covered by Question 23.  Thus, the posts the defense has gathered suggest that those related to the investigation were a small fraction of the "various things" she posted about, Mot. Hr'g Tr. at 106, which could have affected her ability to remember the few that were responsive to Question 23 in particular.  Most important, what we *do* know is that the juror made a conscious effort to acknowledge the possibility that she forwarded posts on these topics.  JQ 23.

defendant's accusation that she "concealed" the fact that she had some knowledge of Roger Stone and the charges against him.

Moreover, during the individual voir dire on November 5, when the juror was asked in person what she had read or heard about the defendant, she again responded that she had a general understanding that he was connected with the Russia investigation in some way.

> THE COURT: What is it that you have read or heard about [the defendant]?
>
> THE JUROR: So nothing that I can recall specifically. I do watch sometimes paying attention but sometimes in the background CNN. So I recall just hearing about him being part of the campaign and some belief and reporting around interaction with the Russian probe and interaction with him and people in the country, but I don't have a whole lot of details. I don't pay that close attention or watch C-SPAN.

Nov. 5 P.M. Tr. at 94.

According to the defendant, the juror's sworn characterization of her own level of understanding and attention was false. The motion for new trial argues that the January 25, 2019 Facebook post transmitting the NPR article is inconsistent with her testimony: "The article that the juror posted calls attention with significant detail to the number of indictments, guilty pleas, and convictions of people in President Trump's circle . . . . Plainly the . . . post is irreconcilable with the juror's answers during voir dire regarding her knowledge of the Stone case." Am. Mot. at 7. But the juror did not write the article, and its "significant detail" does not shed light on the juror's level of attention.

At the hearing, counsel directed the Court to seven other posts from the seven-month period of February to August 2019 as evidence that the foreperson, in fact, "paid close attention" to the

<div align="center">48</div>

Russia investigation and the defendant.  Mot. Hr'g Tr. at 50–51, 59.[41]  But the question the juror

was answering during voir dire in November of 2019 was, "[w]hat is it that you have read or heard

about [the defendant]?"  Nov. 5 P.M. Tr. at 94.  She confirmed at the later hearing on this motion

that her answer was directed towards to whether she was paying close attention to news about

Roger Stone.  *Id.* at 119.  Not one of these posts relates to the defendant, and three do not even

relate to Mueller's work, so they hardly contradict her answer during voir dire.

The juror stated plainly on the questionnaire that she did follow the Special Counsel

investigation "[s]omewhat [c]losely," JQ 25, so the posts are consistent with her written

submission.  Question 27, by contrast, related to news about the defendant, and the juror confirmed

at the hearing that she understood that to be the case.

> Again, my whole response to this was about Roger Stone.  And so what did
> I have or read about him, I still stand by that, that it was about what I said it
> was about.  I recall him being a part of the campaign and some reporting
> around interaction with the Russian probe.

Mot. Hr'g Tr. at 119.

At the hearing, counsel repeatedly invoked the January 25 post and suggested it proved

that the juror had understated her familiarity with the Stone case.  *See, e.g.*, Mot. Hr'g Tr. at 39–

41, 46–49, 52, 104, 108, 113–15 (referencing Post 25).  The fact that the juror shared one long

article about the entire Mueller investigation – among the "various things" she posted – does not

begin to prove that she lied when she characterized her own state of mind by stating she did not

pay "that close attention" to news about Roger Stone.  She answered "[y]es" to the question asking

whether she had heard or read about the defendant, JQ 27, she told the parties that she knew he

---

[41]     Post 27 (Feb. 28, 2019); Post 28 (Mar. 24, 2019); Post 30 (May 16, 2019); Post 31 (May
29, 2019); Post 32 (Jun. 13, 2019); Post 34 (Aug. 2, 2019); Post 35 (Aug. 25, 2019).

was accused of involvement in the Russia matter in some way, and she acknowledged following the Special Counsel investigation "[s]omewhat [c]losely" in the news.  JQ 25.  So defendant has not shown that she was untruthful about this issue either.[42]

**D.   The defendant has not shown that the juror lied when she stated her belief that she could be fair and impartial.**

Defendant's motion asserts that the foreperson "concealed her explicit and implicit bias by failing to disclose her active anti-Stone and anti-Trump sentiment, evidenced by her multiple social media postings that directly reference her strong political bias."[43]  Am. Mot. at 1.  The defense maintains that the social media posts demonstrate that the juror's statements that she could be fair and impartial juror were not only mistaken, but deliberately misleading.  *See id.* at 2 ("A comparison of her social media posts, on the one hand, and her responses to the jury questionnaire and the Court's questioning of her political disposition and its affect upon her ability to enable Stone to have a fair trial, on the other, makes it immediately apparent that [the juror] was not candid; rather, she misled the Court and Stone with plainly disingenuous answers."); *see also* Mot. Hr'g Tr. at 36–38, 55–56 (taking issue with her answers to questions 15, 16, 30, and 51).

The first problem with this argument is that the request for a new trial is predicated on concealment, but the juror's political affiliation and her views about the administration are plain

---

42     It is telling that the juror's description of the nature of the charges against Stone was not entirely accurate, and this lends credence to her statement that she was not following his case closely when she said, "Mr. Stone is accused of inappropriate contact [with] Russian officials in the effort of helping Mr. Trump's campaign for President."  JQ 27.  He was accused of lying to a Congressional committee and obstructing an inquiry into his claimed communications with Julian Assange of Wikileaks through an intermediary.  *See* Indictment.

43     *See also* Am. Mot. at 4 ("The concealment of [the juror's] philosophical and political views are an attack at the heart of impartiality.").

on the face of the questionnaire.  *See* JQ 24 (stating that she ran for Congress as a democrat), JQ 21 (identifying her primary sources of news and information), and JQ 30 ("I do have opinions about some of the officials/people on the list").[44]

The juror stated her belief that those opinions would not make it difficult for her to be fair. JQ 30.  In response to other questions, she indicated that she had not formed or expressed any opinions about the defendant or the charges in the case, JQ 34, and that there was nothing about the charges or the requirement to follow the judge's instructions on the law that would make it difficult for her to decide the case impartially.  JQ 48–50.  She wrote that she had no personal reason to want to serve as a juror, and no personal stake in the outcome of the case.  JQ 51.  And she answered that there was nothing about the case, the issues, or the people involved, "or any other reason that has not been asked about in any other question" that made her believe she could not be "completely fair to both the defendant, Roger Stone, and the U.S. Government in this case." JQ at 56.  During her sworn individual voir dire, she repeated that her political affiliation would not affect her ability to weigh the evidence fairly.  Nov. 5 P.M. Tr. at 96.

The defendant takes issue with these answers.  "Based upon this juror's political advocacy and her deliberate concealment of her strong negative views of Stone as a person connected to the

---

44      Defendant mischaracterized this response when he asserted in his motion that it "strains belief that she had no opinions about the people who might be witnesses in the case. . . ."  *See* Am. Mot. at 8.  The juror plainly disclosed that she *does* have opinions "about some of the officials/ people" on the list.  JQ 30.  Defense counsel conceded at the hearing that her answer concerning whether she had opinions was not false, and he revised his position to argue instead that it was her statement that she could be fair that was untruthful.  *See* Mot. Hr'g Tr. at 53–54.

Trump campaign," he argues, these statements "cannot be true." Am. Mot. at 9. But he has not shown that her answers were false.[45]

The answers to the questions express the foreperson's subjective belief about her ability to be impartial. It is the law in this Circuit that such statements by jurors are "*not* inherently suspect, for a juror is well qualified to say whether he has an unbiased mind in a certain matter." *United States v. Butler*, 822 F.2d 1191, 1196–97 (D.C. Cir. 1987) (emphasis in original) (internal quotation marks omitted); *Smith v. Phillips*, 455 U.S. 209, 217 n.7 (1982) (determinations about juror impartiality frequently turn on the testimony of the juror in question), quoting *Dennis v. United States*, 339 U.S. 162, 171 (1950).

---

[45]    At the hearing, counsel equivocated about whether the juror was just mistaken or she misrepresented her views intentionally:

> THE COURT: All right. I guess my question to you is . . . you do not believe that 15 and 16 accurately set forth her belief at the time, is that correct, based on all the other evidence?

> [DEFENSE COUNSEL]: Based on the evidence that we have regarding her social media posts, it does not appear that those answers are, in fact, truthful. It may be that she believed them to be truthful, but she concealed evidence regarding her views, which would have been important for the Court and the parties to understand her bias.

> *            *            *

> THE COURT: . . . You're saying that you think she's more biased than she says, but that's different. Are you saying that 15 and 16, she lied?

> *            *            *

> [DEFENSE COUNSEL]: The answers are, at best, misleading.

> THE COURT: All right. Intentionally misleading?

> [DEFENSE COUNSEL]: At this stage, I don't know.

Mot. Hr'g Tr. at 38-39. Eventually, though, he returned to alleging a deliberate falsehood. Mot. Hr'g Tr. at 39 ("Based on the social media posts, it appears to me that they are misleading intentionally.").

Counsel for Stone told the Court at the hearing that the juror's negative answer to Question 34 – "Have you formed or expressed any opinion about Mr. Stone, the charges in this case, or about his guilt or innocence in this case?" – was "likely false," because "[s]he seems to have expressed an opinion."  Mot. Hr'g Tr. at 55; *see also id.* at 56 (the juror "failed to disclose evidence regarding her strong views about Mr. Stone").  Yet the defense has presented no evidence – not one post – that undermines the juror's answer because it "expressed an opinion" about Roger Stone's guilt or innocence.  There are only two posts that relate to him or his arrest in any fashion: one transmits a lengthy, straightforward National Public Radio piece about all of the Special Counsel's indictments, and the other does not talk about the charges at all.  *See* Posts 25 and 26. Neither belies the juror's stated assessment that she could be fair.

In the absence of any explicit statements of opinion about Stone, the defense casts its arguments about bias in terms of some sort of blend of "anti-Stone and anti-Trump sentiment." Am. Mot. at 1; *see also id.* at 2 (complaining about "this juror's overwhelming explicit bias against him and Donald Trump").[46]  But linking them together in a sentence does not make them one and the same; there is zero evidence of "explicit bias" against Stone, and defendant's attempts to gain a new trial based on implied or inferred bias fail.

---

[46]     The defendant's rhetoric on this point is hardly justified, and it is often unmoored from the facts.  For instance, he describes a photograph of the juror with Donna Brazile, a well-known Democratic political strategist, as an illustration of "the depth of her political alliance with forces opposing Trump."  Am. Mot. at 11.  But the photo was posted in 2008, eleven years before the Stone trial, eight years before there was an Office of Special Counsel, and seven years before Donald Trump had even entered the race to be the 2016 Republican nominee.  Also, the motion went to great lengths to characterize a post from the early morning hours of November 16 as a gleeful response to the verdict, despite the fact that the verdict had yet to be returned, and it was pure speculation to interpret the post in that manner.  Counsel retreated from the accusation completely at the hearing, admitting that the juror had not communicated publicly about the case at any point during her service.  Mot. Hr'g Tr. at 62.

The defense asserts that the foreperson's posts about the President "imply an attitude towards the defendant."  Mot. Hr'g Tr. at 46; *see* Am. Mot. at 6 ("[H]er bias is evidenced throughout her social media postings, and, therefore, . . . the Court can and should infer her bias against Stone.").  It is true that several posts convey a negative view of the President or disagreement with certain policy decisions.[47]  And on two occasions during the years covered in the composite exhibit, the juror – through her own comments or her retweets – drew attention to the presence of white supremacists at political rallies and the absence of any condemnation by the President or his supporters.[48]  But these communications do not demonstrate a bias towards Roger

---

[47]     *See, e.g.*, Post 9 (Aug. 13, 2017) (tweet about crowd yelling "boooo" and "shame" walking by Trump hotel); Post 10 (Aug. 19, 2017) ("Quick question for the #Klan President and the 64% of Republicans who agree with his remarks and behavior over . . . ") (ellipses in original); Post 12 (Oct. 22, 2017) (tweet about "foolishness" from this administration); Post 17 (Jan. 13, 2018) (tweet stating "Gotta love it!" in response to a retweet about a derogatory word being projected onto the wall of the Trump International Hotel in Washington); Post 18 (Jan. 20, 2018) (tweet of opinion piece titled, "Opinion | What's so extremely, uniquely wrong about Trump's presidency"); Post 22 (Jun. 14, 2018) (tweet about "the candidate of the party of family values and Jesus"); Post 23 (Nov. 2, 2018) (tweet of article that "they stick with Trump" because his "immigration agenda is the white evangelical immigration agenda.").
       The juror specifically testified in response to questions from the defense that Post 36 was not about Roger Stone.  Mot. Hr'g Tr. at 107–08.

[48]     *See, e.g.*, Post 34 (Aug. 2, 2019) (tweet of article about Trump supporters stating "We're All Tired of Being Called Racists" with comment from the juror, "Then stop being racists. Co-signing and defending a racist and his racist rhetoric makes you racist. Point blank."); Post 35 (Aug. 25, 2019) (tweet of an article about a ku klux klan rally with participants carrying a banner with the slogan "help make America great again" with comment by the juror, "Will the MAGA crowd denounce or condone this affiliation?").

54

Stone or an inability to be impartial when considering the particular charges against him.[49]

In *United States v. Chapin*, 515 F.2d 1274, 1287 (D.C. Cir. 1975), the D.C. Circuit refused

to equate views about President Nixon with an inability to be impartial to someone who worked

in the White House, an even closer connection than the one here.  The Court upheld a lower court's

decision to deny a request to move the trial, and it rejected an argument based on an expert's survey

of local opinions about the president because "[the expert's] testimony in no way recognized that

there might be a distinction between a potential juror's feelings as to Richard Nixon himself and

one of his minor functionaries."  *See id.* at 1287; *see also United States v. Haldeman*, 559 F.2d 31,

61–62 (D.C. Cir. 1976) (upholding the district court's decision not to move Watergate-related trial

and finding no reason to conclude "that the population of Washington, D.C. was so aroused against

appellants" that they could not decide the case based on the evidence presented at trial); *United

States v. Poindexter*, 725 F. Supp. 13, 38 (D.D.C. 1989) (rejecting an argument that negative

publicity following the verdict in another case was damaging to the defendant, noting that negative

---

49      In this case, the defendant was charged with obstructing an investigation undertaken by a
Congressional committee under the control of a Republican majority.  *See* Gov't Trial Ex. 3,
Jan. 25, 2017 Joint Statement on Progress of Bipartisan HPSCI Inquiry into Russian Active
Measures ("Today, House Permanent Select Committee on Intelligence Chairman Devin Nunes
and Ranking Member Adam Schiff released the following statement:  For many years, one of the
House Intelligence Committee's highest priorities has been to oversee the Intelligence
Community's activities to counter Russian aggression, including the cyber-attacks directed against
the United States in the last year.  As part of this oversight responsibility, the Committee has been
undertaking a bipartisan inquiry of these activities and the underlying intelligence used to draft the
Intelligence Community Assessment, 'Russian Activities and Intentions in Recent US Elections'.
. . . This issue is not about party, but about country.  The Committee will continue to follow the
facts wherever they may lead."); *see also* Ex. A to Gov't Opp. to Def.'s Mot. to Dismiss Pursuant
to Fed. R. of Crim. Pro. 12(b)(3) [Dkt. # 93-1] (then-Chair Nunes transmits the hearing transcript
and other requested information to the Department of Justice "[p]ursuant to a Committee vote"
and "with no restrictions on use by the [Special Counsel's Office] or other components of the
Department of Justice.").

commentary "appears to have been directed not at this defendant but at President Reagan and others better known to the public than Poindexter").

The fact that the foreperson had some limited knowledge about Stone or that she was following the investigation in general does not give rise to an inference that she had made up her mind about him. "Qualified jurors need not . . . be totally ignorant of the facts and issues involved. . . . It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Murphy v. Florida*, 421 U.S. 794, 799–801 (1975) (ruling that the petitioner had failed to show that the jury-selection process permitted an inference of actual prejudice even though some jurors had a vague recollection of the crime with which petitioner was charged and each had some knowledge of petitioner's past crimes). Thus even if one were to glean from the posts about the Special Counsel or Russian electoral interference that the juror was of the view that these inquiries were not a waste of time, one cannot presume that she was disingenuous when she voiced her belief that she could still be fair to an individual defendant.

The defendant's own motion recites case law that suggests that bias can only be implied in "extreme situations," such as when a juror has a relationship with one of the parties. Am. Mot. at 5 ("Bias is implied in 'extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances.'"), quoting *United States v. Sampson*, 820 F. Supp. 2d 151, 164 (D. Mass. 2011). The *Sampson* case and others cited involved close personal associations with a party or a lawyer. Defendant has done nothing to satisfy that standard.

At bottom, the defense merely posits that if you do not like Donald Trump, you must not like Roger Stone, or if you are concerned about racism on the part of some of the President's supporters, then you must be applying that label to Roger Stone because he was a supporter, too.

While there is no evidence that proves this hypothesis, there is evidence that contradicts it:  the juror testified at the hearing that the 2017 post raising concerns about the President's racism was not a quote from her, but it was someone else's language.  *See* Mot. Hr'g Tr. at 110.  And there is no evidence in the record that she had even heard of Stone at that point.  The defense also confronted her with a retweet from August 2, 2019, in which she asserted that those who defend a "racist and his racist rhetoric" are racists themselves.  Post 34.  This was posted after the juror was aware that Roger Stone had been charged in this case, but it does not draw any explicit connection to Stone and the juror denied under oath that the general comment about some Trump supporters was about the defendant.  *Id.* at 107; *see also id.* at 108 ("This post is not about Roger Stone, though, if that's what you're asking.").  This testimony was not shaken by the cross-examination or contradicted by any evidence; the attempt to impute knowledge of the details of the men's

57

relationship to the juror based solely upon the NPR article she posted eight months before fell

flat.[50]

_____

50      *See* Mot. Hr'g Tr. at 108–09.

> [DEFENSE COUNSEL]:  What I'm asking is, you've answered that Roger Stone, you would consider an associate of President Trump; right?
>
> JURY FOREPERSON:  Prior to the trial, I don't know that I would consider him an associate of President Trump.
>
> [DEFENSE COUNSEL]:  Well, you posted an article on January 25, 2019, the date on which he was arrested, which you said you read or you probably read, with the caption "brought to you by the lock her up peanut gallery," and in that article, it talks about his connections with President Trump and the charges against him brought in connection with his actions on behalf of President Trump.
>
> JURY FOREPERSON:  I don't recall what that article was about.
>
> THE COURT:  Prior to the trial, did you have – did you know who Roger Stone was?
>
> JURY FOREPERSON:  Yes.
>
> THE COURT:  And who did you know him to be prior to the trial?
>
> JURY FOREPERSON:  Prior to the trial, my thinking was that he was arrested because he had been connected with the Russia probe and helping President Trump, but I knew nothing about him other than that.  I did retweet in January when he was arrested.  That was certainly more about President Trump . . . .
>
> THE COURT:  But did you know before the trial how long they had known each other or what role, if any, he played in the campaign?
>
> JURY FOREPERSON:  No. . . .
>
> [DEFENSE COUNSEL]:  But you knew he was connected to President Trump, and that was why he was -- well, you knew he was connected to President Trump?
>
> JURY FOREPERSON:  I knew he was arrested because of connections with the 2016 Russia probe around campaign interference, election interference."

Even the NPR article the defense apparently expected the juror to recall verbatim describes Stone as nothing more specific than "a longtime informal adviser to President Trump."  *See* Def.'s Hr'g Ex. 2, linked in Post 25 (Jan. 25, 2019).

58

At bottom, the motion appears to be based on the defendant's assumption that the juror must have known who he was, what his relationship with Donald Trump has been over time, and what role he played in the campaign, and that since he was so central to the election, one could not possibly view him independently from the President. *See* Mot. Hr'g Tr. at 45–46. But there is no basis to conclude that Roger Stone was a household name in either Washington, D.C. or in the foreperson's home state, particularly given his short and informal association with the campaign.[51]

The case law in this Circuit makes it clear that one cannot assume that people in the community – even those who follow the news – have a deep understanding of the facts of a particular case. During the prosecutions that arose out of the Watergate and Iran-Contra investigations, the Court of Appeals repeatedly expressed its confidence that jurors with open minds could be found within the District, even though the investigations had received a great deal of public attention. *See United States v. Mitchell*, 551 F.2d 1252, 1262 n.46 (D.C. Cir. 1976) ("10 of the 12 jurors selected in that case claimed to have followed Watergate casually, if at all"), rev'd on other grounds sub nom., *Nixon v. Warner Communications*, 435 U.S. 589 (1978); *see also United States v. North*, 713 F. Supp. 1444, 1444 (D.C. Cir. 1989) ("while some of the public becomes thoroughly engrossed in such a story many do not"). As the D.C. Circuit observed in an opinion quoted by the Supreme Court when addressing jury selection in the Enron matter: "[t]his may come as a surprise to lawyers and judges, but it is simply a fact of life that matters which

---

51     *See* Nov. 12, 2019 A.M. Tr. at 920 (testimony of Richard Gates that "Mr. Stone served as an adviser to Mr. Trump prior to [Gates] and Mr. Manafort joining the campaign," that in May 2016, "it was [Gates's] understanding [Stone] did not have a formal role with the campaign," but that he "still had people that he knew on the campaign and had the ability to access those people."); *see also* Donald Trump (@realDonaldTrump), Twitter (Feb. 25, 2020, 3:01 PM) ("Roger wasn't even working on my campaign.").

interest them may be less fascinating to the public generally." *Skilling v. United States*, 561 U.S. 358, 391 n.28 (2010), quoting *Haldeman*, 559 F.2d at 62 n.37.

The defendant gathered no statistics that would give any heft to his assumptions about what members of the public, or even members of the democratic party, thought of him, and there is nothing in the record that supports his characterization of what was in the juror's mind.[52]  And a key piece of evidence that is in the record – the foreperson's questionnaire – confirms that she was *not* particularly focused on the details of Stone's case:  her stated understanding that Stone was "accused of inappropriate contact [with] Russian officials in the effort of helping Mr. Trump's campaign for President," JQ 27, is, in fact, inaccurate.

Finally, the D.C. Circuit has held that a district court is in the best position to assess the credibility of a juror's statement in such circumstances.  *See United States v. Gartmon*, 146 F.3d 1015, 1027–29 (D.C. Cir. 1998) (holding that the district court, having observed the demeanor of the juror at a hearing about the effect of a law enforcement officer's contact with him during the trial, is in the best position to determine the credibility of a juror's assurance that the contact would not influence him); *see also Mu'min v. Virginia*, 500 U.S. 415, 428 (1991) (holding that "a trial court's findings of juror impartiality may be overturned only for manifest error") (internal citations and quotation marks omitted).

This Court has now had the opportunity to question the juror on two occasions.  During the individual voir dire, the foreperson swore in open court – subject to cross-examination – that she

---

52      *See* Mot. Hr'g Tr. at 47 (" THE COURT: . . . [D]o you have any statistical information, any surveys, or anything you've done that would indicate what members of the public or even active members of the Democratic Party knew about Roger Stone in particular prior to the trial and all the evidence came out, other than the fact that he had been indicted?  [COUNSEL]:  No. I have no information about that.").

could be impartial in deciding the case.  *See* Nov. 5 P.M. Tr. at 94.  The Court found her testimony to be entirely sincere and credible – and from all indications, the defense did too, because it did not even ask to strike the avowed democrat with "opinions" about the President at that time.  *Id.* at 96.  At the hearing on the motion for new trial, the juror described the care she took when answering the questions, and she was frank about what she could not remember and appropriately reluctant to be definitive, even if a flat yes or no answer might have put a matter to rest.  *See, e.g.*, Mot. Hr'g Tr. at 90–91, 98, 105, 111.  Counsel for the defendant cross-examined the juror at length after the Court granted his request for a hearing, but that interrogation uncovered no evidence of hidden bias.  Mot. Hr'g Tr. at 99–120.  Based on the foreperson's testimony and her demeanor during both court appearances, and the lack of anything other than indignation and innuendo to contradict her, the Court finds that her answers about her subjective belief that she could be impartial in deciding the case were sincere and truthful.

## II.   The juror's social media posts are not "newly discovered evidence" that can support a motion for new trial.

The defendant filed his motion to vacate the conviction and grant a new trial under Rule 33(b) – that is, on the grounds that he has presented "newly discovered evidence."  But to obtain a new trial on that basis, a defendant must show, among other things, "diligence in the attempt to procure the newly discovered evidence."  *Johnson*, 519 F.3d at 487.  "Due diligence has not been exercised if the defendant or his counsel could have, without unusual effort, acquired the evidence before or during the trial."  *United States v. DiMattina*, 885 F. Supp. 2d 572, 577 (E.D.N.Y. 2012), citing *United States v. Alessi*, 638 F.2d 466, 479 (2d Cir. 1980).  In *Johnson*, the D.C. Circuit upheld the trial court's denial of a Rule 33(b) motion because the defense did not act with diligence in an attempt to procure an affidavit from an exculpatory witness prior to trial, when the new witness was the daughter of a woman who had provided testimony by the time of the

pretrial suppression hearing, and the two women lived together at the time of the defendant's arrest. 519 F.3d at 487; *see also United States v. Sheffield*, 832 F.3d 296, 311 (D.C. Cir. 2016) ("[Defendant] could have sought independent testing of the PCP before trial, but he did not.").

Here, defendant's motion asserts that "the evidence meets the requirement that it be newly discovered, as it was not known during the jury selection process or during trial, despite diligent efforts by Stone to uncover any such evidence." Am. Mot. at 4. But there is no evidence that the defense made *any* efforts to under this information, much less, diligent ones.

### A. The defense chose not to conduct internet research on the foreperson despite her disclosure that she used social media.

Defendant states that he became aware of the foreperson's social media comments after the trial, following her February 12, 2020 Facebook post about the prosecutors. Am. Mot. at 2. But the defense could have discovered the posts as early as September 12, 2019, the day counsel received access to the completed juror questionnaires, including the foreperson's, which had her name printed legibly on the signature page. *See* Mot. Hr'g Tr. at 6, 8, 10.

The motions to strike potential jurors for cause based on the questionnaires were due on September 19, Min. Order (Sept. 13, 2019); the defense filed its list on September 17. Def.'s Strike List. The foreperson's questionnaire – which was provided to the parties specifically for their review in connections with that exercise – informed the defendant that:

- the foreperson used social media; in particular, she got news and information from Facebook and Twitter, JQ 21;

- she "shared" items on Facebook, JQ 23;

- she may have posted something about the defendant or the Special Counsel on social media, JQ 23;

- she served on an elected local school board for eight years and ran in a Democratic primary for Congress, JQ 24;

- she followed media reports relating to investigations into Russian interference in the 2016 election "[s]omewhat [c]losely," JQ 25;

- she had read or heard about the defendant, JQ 27; and

- she had opinions about "some of the officials" in the list of names in the questionnaire, which included Donald Trump.  JQ 30.

And by November 4, at the latest, the defense knew the exact order in which the potential jurors would be questioned and seated on the jury if they qualified, and that the foreperson was the fourteenth name on the list.  Jury Panel Sheet at 1.  By the time voir dire was completed at the end of the day on November 5, she was tenth.

Defendant asserted in his motion filed on February 14 that the posts could not have been discovered with the exercise of diligence because prior to February 12, "there appear to have been viewing restrictions (and some remain)" on the juror's social media posts.  Am. Mot. at 3–4.  But he has submitted no evidence on that point.  The posts that have been offered in support of the motion were easily accessible to the public on February 12, 2020, and the defendant made his assertion without pointing to any evidence to show that they were not sitting there the whole time, including on September 12, 2019.  At the hearing, the juror testified that her Facebook and Twitter posts were public at the time the jury was selected, and that she made her settings more private for the first time after the trial.  Mot. Hr'g Tr. at 88.  She did not delete any previous posts at that time, or at any other time.  *Id.* at 90.  So, the problem is not that the material *could not* be discovered; it *was* not discovered.  And it was not discovered because no one was looking for it.

Counsel for defendant informed the Court on the record at the hearing that not one of the five attorneys who comprised the trial team at the time of jury selection was tasked with Googling the jurors.  *See* Mot. Hr'g Tr. at 31–32.  He also explained that the jury consultants were hired "to review the jury questionnaire and give us their thoughts about which jurors would be favorable to

the defense," but that they were not retained to conduct internet searches to discover social media profiles or activity. *Id.* at 31. Given the wealth of information available on the written questionnaires and the opportunity for follow-up voir dire on an individual basis, the team was free to make a strategic decision concerning the allocation of its time and resources, but that decision precludes any finding that the evidence was "newly discovered."

Defendant contends that counsel should not be obligated to "scour public records to verify the accuracy of a prospective juror's disclosures." Reply at 3, citing *Williams v. Taylor*, 529 U.S. 420, 443 (2000).[53] But that pronouncement lifted from a twenty-year old decision provides little guidance in today's world. An effort to uncover social media activity would not have required the lawyers to pore over dusty family court records in the basement of a county courthouse. All they had to do was sit and type her name into an internet search engine on a laptop

---

53      In that case, a juror failed to disclose that she had previously been married to the deputy sheriff who was to be the prosecution's first witness, and that one of the prosecutors had represented her in the divorce. *Id.* at 440–43.

– a rudimentary practice that has been an inexpensive and popular arrow in the trial practitioner's

quiver for quite some time.[54]

---

54      During the 2007 trial of accused terrorist Jose Padilla, a juror was dismissed after counsel using their laptops during voir dire discovered information inconsistent with her responses. Tracy J. Jasper & Gordon F. Lull, *Lives of Jurors,* Los Angeles Lawyer, Feb. 2009, at 21, 22; https://supreme.findlaw.com/legal-commentary/  googling-potential-jurors-the-legal-and-ethical-issues-arising-from-the-use-of-the-internet-in-voir-dire.html.

In 2012, the New York City Bar Association addressed the question of ethical issues that could arise in connection with an attorney's use of social media websites to research potential or sitting jurors in a formal opinion issued.  *See* Professional Ethics Committee, New York City Bar Ass'n, Formal Op. 2012-2 - Jury Research and Social Media, The Ass'n of the Bar of the City of New York (2012); *see also* Thaddeous Hoffmeister, *Investigating Jurors in the Digital Age:  One Click at a Time*, 60 U. Kan. L. Rev. 611, 612 (2012) (observing in *2012* that "[t]he speed and ease by which information about jurors is now discovered online has led attorneys to increasingly investigate and research jurors. In fact, the practice has become fairly commonplace, with courts, practitioners, and state bar associations all approving and encouraging its use.") (footnotes omitted).

Other bar associations had already responded to the trend, *see* New York State Bar Ass'n, *Op. 843*, Committee on Professional Ethics (2010) and San Diego Cty. Bar Ass'n., *SDCBA Legal Ethics Opinion 2011-2*, San Diego Cty. Bar Legal Ethics Committee (2011), and the American Bar Association issued its opinion on researching potential jurors online in 2014.  *See* Standing Committee on Ethics and Professional Responsibility, *Formal Op. 466:  Lawyer Reviewing Jurors' Internet Presence*, Am. Bar Ass'n. (2014) (Lawyers may passively review a juror's or potential juror's public internet presence, which may include postings by the juror or potential juror in advance of and during trial, unless limited by court order.).

The D.C. Bar issued its ethics guidance on the subject in 2016. *See* D.C. Bar Ethics Committee, *Ethics Opinion 371:  Social Media II: Use of Social Media in Providing Legal Services*, D.C. Bar, section III(D) (2016) ("Competent and zealous representation under Rules 1.1 and 1.3 may require investigation of relevant information from social media sites of jurors or potential jurors to discover bias or other relevant information for jury selection.  Accessing public social media sites of jurors or potential jurors is not prohibited by Rule 3.5 as long as there is no communication by the lawyer with the juror in violation of Rule 3.5(b), and as long as such access does not violate other applicable Rules of Professional Conduct.") (footnotes omitted). *See generally* Andrew J. Ennis & Catherine A. Green, *A Quick Guide to Social Media and Litigation*, Am. Bar Ass'n. (2020).

65

Lawyers representing clients in this court cannot possibly complain that they lacked access to the internet; an attorney is not permitted to enter an appearance on this court's docket without it.  *See* Local Criminal Rule 49; *see also* Local Civil Rule 5.4.  There is public wireless internet available throughout the courthouse.  And at the hearing, counsel for the defense acknowledged that all of the attorneys on the case had internet access, including at the locations where they were working or staying in Washington during the trial.  *See* Mot. Hr'g Tr. at 32–33.

Judges – and even appellate judges – have long been aware of the broad availability of the technology.  Ten years ago, in *Carino v. Muenzen*, a trial judge in New Jersey interrupted voir dire to ask one lawyer, "are you Googling these [potential jurors]?"  2010 WL 3448071, at *4 (N.J. Super. Ct. App. Div. Aug. 30, 2010) (alteration in original).  The lawyer responded, "everyone does it," but the judge made him stop on the grounds that it would be unfair to the lawyer for the other side who did not come to court similarly prepared.  *Id*.  This reasoning was rejected on appeal; the appellate court concluded that the judge "acted unreasonably" when he

---

The practice has been sufficiently widely used to become a subject of treatises.  *See* Nancy Gertner, Judith H. Mizner, & Joshua Dubin, The Law of Juries, Chapter 3 Section 3 at § 3.28, 10th ed. (2018) ("The internet, and in particular social media . . . offers the possibility of a rich source of information about jurors that escapes the constraints of formal voir dire.); § 3.30 ("In a high profile case, counsel may move to obtain the list [of potential jurors] in advance of trial, arguing that they need to determine if the juror has blogged about the case in advance, or posted a Facebook statement that would be publicly available."); and § 3.31 ("At the very minimum, pre-trial investigation of potential jurors . . . can provide counsel with the justification for more probing voir dire questions . . . . And it can provide a direct basis for a cause challenge to a particular juror."), citing John O. Browning, *Voir Dire becomes Voir Google: Ethical Concerns of 21st Century Jury Selection*, Am. Bar Ass'n. (2016).

66

intervened "in the name of 'fairness' or maintaining 'a level playing field.' The 'playing field' was, in fact, already 'level' because internet access was open to both counsel. . . ." *Id.* at 10.[55]

So the defense was free to avail itself of these publicly available sources. The fact that when it decided to look, it found the posts, identified the ones of interest, and put them together in a memorandum for the court within two days suggests that this was not a task involving "unusual effort." *See DiMattina*, 885 F. Supp. 2d at 577. But the decision not to conduct internet research did not deprive the defendant of his only means to discover the information. Stone also had of a full opportunity to learn more about the foreperson's questionnaire responses during the individual voir dire.

---

55      Other appellate courts have also taken notice of advances in technology. In *Johnson v. McCullough*, 306 S.W.3d 551 (Mo. 2010), a trial judge relied on existing state precedent when it sustained a motion for new trial based on evidence from court records that suggested a juror's answer during voir dire had been incomplete even though the records were available at the time. On appeal, the Missouri Supreme Court held that it could not find reliance on current precedent to be erroneous, but even in 2010, it took the time to observe:

> [T]here was no evidence that it was practicable for the attorneys in this case to have investigated the litigation history of all of the selected jurors prior to the jury being empanelled. Accordingly, there was no error in the trial court's determination that Johnson's juror nondisclosure argument was timely.

> However, in light of advances in technology allowing greater access to information . . . , it is appropriate to place a greater burden on the parties to bring such matters to the court's attention at an earlier stage. Litigants should not be allowed to wait until a verdict has been rendered to perform a Case.net search for jurors' prior litigation history when, in many instances, the search also could have been done in the final stages of jury selection or after the jury was selected but prior to the jury being empanelled. Litigants should endeavor to prevent retrials by completing an early investigation.

*Johnson*, 306 S.W.3d at 558–59.

67

**B.   The defense chose not to ask follow up questions during the individual voir dire about the foreperson's opinions or social media activity despite her disclosures in the questionnaire.**

On November 5, 2019, by which time the defense was in possession of the Jury Panel Sheet and the foreperson's written responses to the questionnaire, the jurors were brought into the courtroom one by one.  This gave each side a second opportunity "to expose bias or prejudice on the part of the veniremen."  *Littlejohn*, 489 F.3d at 1342; *United States v. Orenuga*, 430 F.3d 1158, 1162, 1163 (D.C. Cir. 2005).  Yet the questioning by counsel, which the Court did not limit or cut off in any way, *see* Mot. Hr'g Tr. at 57–58, was relatively abbreviated.

The questionnaire revealed that the juror:  had a law degree; had a close friend or family member in law enforcement; was active in civic organizations; had previously served as a grand jury foreman; received news and information from, and "shared" material on, social media sites; considered the *Washington Post*, *New York Times*, and CNN, among others, to be her "primary sources of news and information[;]" listened to political commentators such as Anderson Cooper and Rachel Maddow on CNN and MSNBC; "may have shared an article" about the defendant or the Special Counsel investigation on Facebook; was elected to serve on a local school board and ran in a primary race for Congress as a democrat; followed media reports related to the investigations into Russian interference in the election "[s]omewhat [c]losely;" had read or heard about the Roger Stone case; and had opinions about "officials/people" who might be discussed during the trial.  JQ 4, 14, 18–19, 21–25, 27, 29–30.  That provided, as the Court had already alerted the parties, plenty of "grist" for further examination.  Nov. 5 A.M. Tr. at 23–24.

Courts have found an absence of due diligence when a party was on notice of pertinent information about a potential juror and failed to take advantage of the opportunity to seek more detail.  For example, in *R.J. Reynolds Tobacco Co. v. Allen for Estate of Allen*, 228 So. 3d 684

(Fla. Dist. Ct. App. 2017), an appeals court in Florida upheld a trial court's denial of the defendant's motion for a new trial.  *Id.* at 686–89.  The defendant complained about a juror's failure to disclose his bias against tobacco companies, and as in this case, it predicated its motion on social media posts.  *Id.* at 686.  But the trial court denied the motion because the defense decided not to ask the juror questions to explore what he said about tobacco companies in the questionnaire more deeply, and the court of appeals affirmed.

> [D]ue diligence required follow-up questions to [the juror], a long-time smoker now five years "clean," to examine whether he "harbored no ill-feelings toward tobacco companies."  Due diligence is lacking when at best, an ambiguity may exist which was not explored.  The trial court noted that it did not impose time limits on the voir dire.  The trial court concluded that Appellants' likely strategic decision not to question [the juror] did not satisfy due diligence.

*Id.* at 688 (internal quotation marks and citation omitted) ("Given [the juror's] disclosed personal and family history with cigarette smoking, along with his answers to questions 30 through 32 in the questionnaire, . . . [the juror] should have been asked clear and direct questions during jury selection regarding any bias against tobacco companies").

Here, the defense did not ask any follow up questions about the juror's avowed use of social media, her interest in the Special Counsel's investigation or what she had heard about the defendant.  *See* JQ 21, 23, 25, 27; Nov. 5 P.M. Tr. at 95–96.[56]  Nor did it inquire further about the opinions she said she had about "some of the officials" listed in the questionnaire, even though

---

56     This would not have been particularly time consuming or burdensome; the defense did ask questions about those topics to other jurors.  *See, e.g.*, Nov. 5 P.M. Tr. at 64 (counsel asked a juror, "Are you on any social media?" When the juror identified Instagram, Twitter, and Facebook, he went on:  "Do you advocate politically on any of these social media?").

69

this response clearly signaled that she may have had opinions about the President, the most obvious "official" on the list.  *See* JQ 29, 30; Nov. 5 P.M. Tr. at 95–96.[57]

The defense did ask the juror about her own political aspirations and political affiliation.

> [DEFENSE COUNSEL]:  You've worked on campaigns for Congress people running for Congress?
>
> PROSPECTIVE JUROR:  I ran for Congress.
>
> [DEFENSE COUNSEL]:  You ran for Congress?
>
> PROSPECTIVE JUROR:  I worked on my own campaign.
>
> [DEFENSE COUNSEL]:  And you have friends who worked for other congressmen?
>
> PROSPECTIVE JUROR:  Yes.
>
> [DEFENSE COUNSEL]:  Do you have any political aspirations now?
>
> PROSPECTIVE JUROR:  I don't know, not federal.
>
> [DEFENSE COUNSEL]:  What might they be?
>
> *       *       *
>
> PROSPECTIVE JUROR: I served, can I just say I served in political office in Memphis in a local office on the school board.  So I, one day I wake up and say I run for, you know, office again in Memphis to impact education. One day I wake up and say no way in the world would I do that.  So I don't have an immediate plan to run for office.

Nov. 5 P.M. Tr. at 95–96.  The juror was also asked about the effect of defendant's political affiliation on her ability to be impartial.  *See id.* at 96.

---

[57]     Counsel admitted as much at the hearing.  Mot. Hr'g Tr. at 53; *see* Nov. 5 P.M. Tr. at 181–82 (counsel questioned another juror about his answer to Question 30 stating that he had opinions about Donald Trump).

[DEFENSE COUNSEL]: The fact that you run for an office, you're affiliated with a political party. Roger Stone is affiliated with the Republican party, Donald Trump. You understand what I'm saying and getting at?

PROSPECTIVE JUROR:  I do.

[DEFENSE COUNSEL]:  How do you feel about that?

*      *      *

THE COURT:  Can you make that question a little bit more crisp?  Is there anything about his affiliation with the Trump campaign and the Republican party in general that gives you any reason to pause or hesitate or think that you couldn't fairly evaluate the evidence against him?

PROSPECTIVE JUROR:  No.

[DEFENSE COUNSEL]:  Thank you, ma'am.

Nov. 5 P.M. Tr. at 96.[58]  The defense attorney appeared satisfied with her answers, concluding his questioning on his own without any prompting from the Court, and foregoing the opportunity to ask more questions or move to strike her for cause.  *Id.*  The defense team also chose not to use a preemptory strike in her case, and it permitted the juror to be seated in the box.

The Court had the opportunity to view the juror's demeanor during this inquiry.  She was thoughtful, friendly, and open, and the Court found her to be extremely credible at the time.  The fact that the defendant asked few questions to probe any of the potential areas of interest that were apparent on the face of the questionnaire further suggests that the defense team was similarly struck by her sincerity and warm demeanor.

---

58    One can hardly characterize "you understand what I'm getting at?" or "how do you feel about that?" as questions that were sufficiently specific to call for the information the defense is now claiming was concealed.  *See R.J. Reynolds*, 228 So. 3d at 688 ("[W]e find no abuse of discretion in the trial court determining that [the juror] should have been asked clear and direct questions during jury selection . . . .").

71

There are a host of considerations that may lead a criminal defense attorney to conclude that a juror is likely to view a case favorably, or to be open to defense arguments or rigorous about the presumption of innocence.  Here, defendant had a team of lawyers and jury consultants, and he had multiple opportunities to ask to strike this juror:  on September 17 when it submitted its strike list, on November 4 when it filed a motion for reconsideration, on November 5 during individual voir dire, and on November 6 when it exercised its preemptory strikes.  The fact that he did not choose to do so at any point suggests that the defense team identified something in her background, her questionnaire responses, or her in-court demeanor that gave it confidence that she could be favorable to the defendant and fair and impartial.[59]

The testimony of the other jurors suggests that any trust reposed in this juror was well-placed.  Jurors A and B were unequivocal that the foreperson established a process that required the jurors to consider each element of each charge in isolation, and that she never sought to impose her views on them or control the outcome.  *See* Mot. Hr'g Tr. at 75–76, 80–81.  Juror A testified that the foreperson was among several jurors who pressed the group to take its time when some jurors were prepared to convict more quickly.  *Id.* at 77.  And Juror B, whom the defense selected, testified:

---

59     The record in this case reflects that the defense was not shy about moving to strike jurors who, like the foreperson, were open about the fact that they had opinions about the President on the grounds that they would be biased against the defendant for his association with Trump.  *See generally* Def.'s Mem. on Jury Selection [Dkt. # 249] (SEALED).

72

JUROR B:  . . . We all agreed on -- most of us agreed on our answer.  We already said that, you know, he was guilty. . . . But it was the foreman that insisted that we examine question 3, examine charge 3 a little more.

THE COURT:  Okay.  There was a count that you sent out some notes about.  Is that the one that the foreperson asked you to be more careful?

JUROR B:  Yes, that's the one.  We needed to examine that a little more and read the transcript, you know, find out more evidence.

THE COURT:  So it was the foreperson who insisted that that level of attention be paid to that count, even though some of you were ready already to decide?

JUROR B:  Yes.

Mot. Hr'g Tr. at 81–82.

Given the defense team's strategic decision not to search the internet for publicly available social media posts, and its selection of questions to ask during individual voir dire, the Court finds that the evidence is not "newly discovered," and it does not supply a basis for a new trial under Rule 33(b).

## III.   There is no basis for a new trial based on any other juror misconduct.

There was no evidence presented to support defendant's speculative assertion that the foreperson must have read about the case online and must have shared what she read with the other jurors.  Throughout the trial, the Court instructed the jurors not to read or listen to any reports about the case and to refrain from conducting any internet research or communicating about the trial or the defendant.

[A]s I've told you before, you can't use the internet or newspapers to do research about the facts or the law or the people involved in the case. . . . All parties have the right to have the case decided based only on the evidence and the legal rules that they know about and that they have a chance to respond to.  Relying on information you get outside the courtroom is unfair because the parties wouldn't have a chance to refute, correct, or explain it.  And it's also unfair because not all jurors would have the same set of information, and that's very important in a trial. . . .

73

In some cases, there may be reports in the newspaper or on the radio or the internet or television concerning the case while the trial is ongoing. In the event there's media coverage in this case, you may be tempted to read it or listen to it or watch it.  But, you must not read or listen to or watch those reports because you must decide this case solely on the evidence presented in the courtroom.

If any publicity about the trial inadvertently comes to your attention during the trial, please don't discuss it with other jurors or anyone else.  Just let me or [the Deputy Court Clerk] know as soon as it happens, and then we can briefly discuss it with you.

Nov. 6 A.M. Tr. at 257–58.  The jurors were never instructed to avoid the news or social media altogether; they were repeatedly instructed to avoid receiving any information about the case. *See, e.g.*, *id.*; Nov. 6 P.M. Tr. at 392–93 ("This is your first evening that I'm sending you home with the admonition that you're going to hear quite frequently in this case.  This evening, as I noted earlier, you should not discuss this case with anyone.  And you should not do any research or try to learn anything more about the case.  Everything you're going to learn is going to be in this courtroom.  And if any news inadvertently comes to your attention, please turn it off.  Please direct your attention to something else.  And please instruct anyone you live with not to try to bring matters to your attention or to discuss the case with you."); Tr. of Jury Trial, Nov. 8, 2019 [Dkt. # 302] at 878 ("[Y]ou are instructed to put this case out of your mind for the next several days.  Do not discuss it with anyone.  If they bring it up, you tell them you don't want to discuss it with them. If any press information comes to your attention inadvertently, turn the page, click on something else, turn off the TV, leave the room."); Tr. of Jury Trial, Nov. 13, 2019 [Dkt. # 306] at 1194 ("[A]s I tell you every evening, you have not yet received the case.  Notwithstanding the fact that you have heard all of the evidence.  You won't be together this evening, so you may not discuss the case with anyone else or try to supplement the record by looking things up.").

74

After the case was submitted to the jury, the jurors were finally permitted to discuss the case among themselves. *See* Nov. 14 Tr. at 1252–53. After the jury reached its verdict on November 15, it was relieved of the obligation to refrain from public comment. Nov. 15 Tr. at 9.

Pointing to seven social media posts issued by the foreperson during the pendency of the trial, defendant asserts that because the juror was posting on social media during the trial, she must have seen postings about the trial online, and she must have discussed what she read online with the other jurors.

> Her political posts demonstrate that she was actively reading news relating to Trump and presidential politics during trial, and almost undoubtedly also read about Stone, in violation of the Court's repeated orders. In addition, given her obvious failure to follow the Court's instructions in voir dire, a presumption arises that she failed to follow the Court's instructions in other instances, which would further undermine the integrity of the trial.

Am. Mot. at 15; *id*. at 18 (calling for the juror to testify about whether she shared extraneous information with the other jurors during trial).

This was and still is an entirely speculative and unsupported allegation. None of the posts mentioned the trial at all. Three of the posts relate to events in Tennessee and Kentucky, Posts 39–41; one related to Hillary Clinton, Post 37; one was a tweet of a link to a Facebook post which does not indicate in any way what the post was about, Post 38; and one tweeted a comment about the use of the Latin phrase "quid pro quo" instead of plain English in connection with the news of the day related to the President. Post 36.

In his motion, defendant placed heavy emphasis on a November 15, 2019 tweet reposting a now dormant Facebook link accompanied by several emojis. Am. Mot. at 14. Based on this

75

alone, he posited that the foreperson was celebrating the jury's verdict in the Stone case before it was announced.

> [The juror] posted hours before the announced verdict in Stone's case – hearts, a fist pump, and fist raised (love, celebratory, and solidarity) emojis coupled with a link to Facebook, which demonstrates that, in her mind, she was putting up a fight and that she had succeeded in her quest to convict Stone.

*Id.* Defendant acknowledged that the link to the Facebook post "cannot be read," *id.* at 14 n.5, but insisted nonetheless that it must have been about the verdict.

> In light of the context of the numerous posts sampled in this motion and the attached composite Exhibit, it is fair to conclude that the link to a Facebook post was about the Stone trial.

*Id.* at 14 n.4.

But this is not a "fair" conclusion in any way – it was an utterly unsupported attack on the juror's integrity. The emoji post was time stamped at 3:14 a.m., and it was not until 11:11 a.m. that the jury sent a note indicating that it had reached a verdict. Note from Jury [Dkt. # 258]. The juror was apparently pleased about something, and there were other posts from that time period related to events in Memphis that were of interest, but the juror could not recall what the post was about, and she admirably declined to speculate. *See* Mot. Hr'g Tr. at 90–92, 111. None of the other posts in the composite express a view about the Stone case, and he was not mentioned at all from the time of his arrest through the trial. Thus, a "fair" review of the composite shows that from September 12 forward, the juror never deviated from her promise not to discuss the case.

The defendant did not say anything further about the November 15 post in his reply, and he did not rely on the post at the hearing, so there is no reason to conclude that it bears on the juror's attitude toward Stone or her obligation not to talk about the defendant's case. At the

hearing, the defense made that clear: "[w]e don't say that *any* posts are in violation of your instructions, Your Honor."  Mot. Hr'g Tr. at 62 (emphasis added).

As for the other posts during the trial, the defense has correctly acknowledged that none raise concerns. The jurors were not under any obligation not to read or tweet about "Trump and Presidential politics" or other subjects, so the fact that the foreperson was on social media and posted about political races in Kentucky or Memphis or even used the term "quid pro quo" does not show she was violating any of the Court's instructions during deliberations.  There is no basis to assume that she read about the case just because she was online, nor is there any basis to conclude that she shared something she read online with the other jurors.  *See* Am. Mot. at 16.[60]

The defense motion attached no juror affidavits or other documentation to support its bald assertions of misconduct, and it presented no facts to support its allegations.[61]  The government argued that defendant had failed to meet the threshold to even have a hearing on this issue, and its

---

60      Indeed, the jurors were specifically instructed not only to avoid reading outside material themselves, but also to report any efforts to communicate with them improperly and not one raised any concerns.  Nov. 6 A.M. Tr. at 256–57.

61      *See* Mot. Hr'g Tr. at 64–65:

> THE COURT: . . . [Y]ou don't have any facts to indicate that she was reading things she wasn't supposed to read during the trial; correct?
>
> [DEFENSE COUNSEL]:  Correct.
>
> THE COURT:  Tweeting things she wasn't supposed to tweet during the trial?
>
> [DEFENSE COUNSEL]:  Correct.
>
> THE COURT:  Or showing any of it to the jury?
>
> [DEFENSE COUNSEL]:  Correct.

position was well founded.  However, in an abundance of caution, the Court in its discretion gave

the parties an opportunity to hear from a sample of the jurors themselves.[62]

### C.   Testimony of Juror A

At the hearing, Juror A who was selected by the government, Mot. Hr'g Tr. at 72, was

asked whether the jurors had been exposed to news accounts about the trial, the selection of the

foreperson and the jury's deliberations.

> THE COURT:  . . . Sir, prior to this case being submitted to you for deliberation, were there any occasions when anyone, including a fellow juror, tried to discuss the case with you?
>
> JUROR A:  No.
>
> THE COURT:  Were there any occasions after you were selected but prior to the case being submitted to you when anyone, including a fellow juror, brought a news account or a social media post about the case or the participants in the case to your attention?
>
> JUROR A:  No.
>
> THE COURT:  Did that occur at any point during deliberations?
>
> JUROR A:  No.
>
> THE COURT:   At any point in deliberations did any juror discuss information outside of the record with you or, to your knowledge, with any other juror?
>
> JUROR A:  I'm not sure what you mean "outside of the record."
>
> THE COURT:   Okay. During deliberations, did anybody talk about something they had read or heard on social media or the news as opposed to an exhibit in the case?
>
> JUROR A:  I understand. No.

---

62    *See Butler*, 822 F.2d at 1195–97 (stating that trial courts presented with allegations of improper juror contact have broad discretion to set the procedures by which inquiries are put to jurors about the allegations).

\*      \*      \*

THE COURT:  What concerns did you have, if any, about whether the foreperson was attempting to impose her views on others or dominate or control the outcome in any way?

JUROR A: I never had any feeling that she was attempting any of that.

THE COURT:  What concerns did you have, if any, at the time you rendered your verdict that you or the jury had not engaged in a full and fair consideration of the evidence?

JUROR A:  No concerns.

THE COURT: Did you ever feel that you were being pressed by any juror to return a verdict that was anything other than your own considered judgment based on the evidence and the law as I instructed you?

JUROR A: No, I did not.

\*      \*      \*

THE COURT:  All right. Did any juror at any time say anything to you that would indicate that he or she was basing his or her verdict on anything other than the evidence in the case?

JUROR A:  No.

THE COURT:  Did any juror at any time say anything to you that would indicate that he or she thought that you should base your verdict on anything other than the evidence in the case?

JUROR A:  No.

Mot. Hr'g Tr. at 73–78.  The Court then asked the parties if they had any additional questions that they would like the Court to ask, and counsel for both sides said no.  *Id.* at 78.

### D.   Testimony of Juror B

Juror B, who was selected by the defense, Mot. Hr'g Tr. at 72, at was then sworn and seated on the witness stand.  Following the instruction not to identify any juror by name on the public record, Mot. Hr'g Tr. at 78–79, Juror B testified that no person and no fellow juror initiated a discussion about the case before the case was submitted to the jury for deliberation.  *Id.* at 79.

79

Further, no one brought any news accounts or social media posts about the case or the people in the case to the juror's attention at any time from when the jury was selected through the conclusion of the deliberations.  *Id.* at 79.  At no point during deliberations did any juror discuss any information from social media or the news with Juror B or, as far as Juror B knew, with any other jurors.  *Id.* at 79–80.

The juror had no concerns that the foreperson was attempting to impose her views on the others or to control the outcome in any way.  Mot. Hr'g Tr. at 81, 82.  Juror B never felt pressed by anyone to return an incorrect verdict, and no one in the jury room ever suggested that the verdict be based on anything other than the evidence in the case.  *Id.* at 82.  At the end of the Court's inquiry, counsel had no follow up questions.  *Id.* at 82–83.

This sworn testimony is the only evidence in the record related to the second issue raised in defendant's motion for new trial.  It is undisputed, and it demonstrates that the juror misconduct allegation in the motion was made out of whole cloth.

## CONCLUSION

After consideration of the content of the questionnaire in its entirety, the foreperson's statements and demeanor during voir dire, the posts in defendant's composite exhibit, and the testimony adduced at the February 25 hearing, the Court finds that the foreperson did not answer questions falsely on the questionnaire or during voir dire, she did not engage in misconduct during the trial, and the defendant did not use diligence to discover the information present in his motion. Therefore, the Court concludes in its discretion that the defense has not presented grounds for a new trial under Rule 33, nor has it supplied any reason to believe that there has been "a serious

miscarriage of justice." *Wheeler*, 753 F.3d at 208.[63]  For these reasons, the motion [Dkt. # 313] will be DENIED.

A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE:  April 16, 2020

---

63      *See also Gartmon*, 146 F.3d at 1027–29 ("Finally, as in our assessment of potential prejudice from the prosecution's misstatements in closing argument, we are mindful of the fact that this case was not a close one. Measured against the overwhelming evidence of [defendant's] guilt, we are unable to view this contact as materially contributing to the verdict against him.").

**ATTACHMENT A**

### Instructions for Jury Questionnaire

This questionnaire is designed to obtain information about your background as it relates to your service as a juror in this case. We are using it to shorten the jury selection process. The purpose of these questions is to determine whether prospective jurors can decide this case fairly, based solely on the evidence presented at trial and the instructions on the law given by the judge. The parties and the Court have agreed that all information contained in this questionnaire will be kept confidential; to the extent the Court is ever required to release any responses in the questionnaires, your name will not be publicly released.

**Please write your assigned juror number at the top of each page.** Respond to each question. Your candor and honesty are necessary so that both the prosecution and the defense will have a meaningful opportunity to select an impartial jury. Your cooperation is of vital importance.

You are sworn to give true and complete answers, and those answers will be available only to the Court and the parties in this case.

From this day forward, until you have been formally excused from service, you are instructed not to communicate in person, in writing, or electronically about this case or the questionnaire with anyone, including your family and fellow jurors. Also, you should not go online or look at any source to learn more about the charges, the defendant, or any participant in the case.

Please fill out the entire questionnaire. Do not leave any questions blank. If a question does not apply to you in any way, write "N/A" rather than leaving the form blank.


**PLEASE PRINT LEGIBLY - PLEASE USE ONLY BLACK OR BLUE INK**

**(NO PENCILS)**



GOVERNMENT EXHIBIT

1

141

JUROR NUMBER: ____ ███████ ____

## JURY QUESTIONNAIRE

**IN COMPLETING THIS QUESTIONNAIRE, PLEASE USE THE SPACE PROVIDED AFTER EACH QUESTION. IF YOU NEED MORE SPACE, PLEASE USE THE PAGES PROVIDED AT THE END OF THE QUESTIONNAIRE, INDICATING THE NUMBER OF THE APPLICABLE QUESTION.**

1.     a. Are you able to read, write and understand the English language?

        Yes ✗     With Difficulty___     No ____

        b. Are you able to complete this questionnaire without another person's assistance?

        Yes ✗     No ___

**IF YOUR ANSWER TO EITHER QUESTION 1(a) or 1(b) IS "NO," PLEASE SIGN THE LAST PAGE OF THE QUESTIONNAIRE AND RETURN IT WITHOUT ANSWERING ANY OTHER QUESTIONS.**

## BACKGROUND INFORMATION

2.     Please provide the following personal information:

        Age: ███ _

        Gender: ███ _

3.     What is your marital status? (Check all that apply.)

        Single and never married ███ _
        Married ███
        Separated or divorced ███
        Divorced and remarried ___
        Living with significant other or domestic partner ███ _
        Widow or Widower ███ _

2

JUROR NUMBER: _____

## EDUCATION AND EMPLOYMENT

### Education

4.  Check the highest level of education for you and your spouse or significant other:

|  | | You | Spouse/Significant Other |
|---|---|---|---|
| a. | Grade school or less | ___ | ___ |
| b. | Some high school | ___ | ___ |
| c. | High school graduate | ___ | ___ |
| d. | Technical or business school | ___ | ___ |
| e. | Some college | ___ | ___ |
| f. | College degree | ___ | ___ |
| g. | Graduate degree (and describe area) | X | ___ Area: JD/Law |

### Employment

5.  Are you employed?

X Yes      _____ No

6.  a. If employed, what is your current occupation / job title?

Senior Program Officer

b. Name of employer:

██████████████ Foundation

c. How long have you been employed at your current job?

3 years 3 months

3

**JUROR NUMBER:** _ ███ _

7.  If you are unemployed, please describe any other responsibilities you may have (childcare, school, etc.).

    N/A

8.  If you are retired or between jobs, what type of work had you been doing?

    N/A

9.  If you live with a spouse or significant other, is that person employed?

    _____ Yes          _____ No

10. If employed, what is his or her current occupation / job title?

    N/A

11. Name of the employer:   N/A

4

**JUROR NUMBER:** _____ ███████ _____

12. If you are a student now, please describe briefly your area of study:

   N/A

   _____

   _____

13. Have you or a close friend or family member ever worked in any aspect of the legal field, as a lawyer, prosecutor, criminal defense attorney, legal secretary, paralegal, court reporter, investigator, law clerk, judge, etc.?

   Yes X   No ___

   If yes, please explain:

   I am licensed to practice law in TN. I served as an attorney Sept 20█ – Dec 20█

14. Have you or a close friend or family member ever applied for employment with, was employed by, or received training by any local, state, or federal law enforcement agency, including any of the following:

   1) Department of Justice    (DOJ)
   2) Federal Bureau of Investigation (FBI)
   3) U.S. Attorney's Office
   4) Bureau of Alcohol, Tobacco, Firearms
   5) Internal Revenue Service (IRS)
   6) Department of Homeland Security (DHS)
   7) U.S. Marshal's Service
   8) U.S. Immigrations & Customs
   9) U.S. State Department
   10) U.S. Bureau of Prisons (BOP)
   11) Central Intelligence Agency (CIA)
   12) Defense Intelligence Agency (DIA)
   13) National Security Agency (NSA)
   14) National Geospatial Intelligence Agency
   15) U.S. Secret Service
   16) Transportation Security Administration
   17) Federal, state or local prison or jail
   18) Federal, state or local courthouse
   19) Federal, state or local prosecutor's office

5

**JUROR NUMBER:** ███████

If yes to any of the above, please identify the person involved and the agency, and state the approximate dates of the employment or training, and the position or involvement:

FBI: ████████████████████████ , TN - current
US Attorney: ████████████████ , Western
District TN ≈ 20██ - 20██

15. Do you have any opinions or beliefs concerning law enforcement organizations in general, including the Federal Bureau of Investigation (FBI) or the Department of Justice, or the Special Counsel's Office within the Department of Justice, that would affect your ability to evaluate the evidence fairly and impartially?

Yes ___   No ✗

If yes, please explain:

_____
_____
_____
_____

16. In this case, the United States is represented by the U.S. Attorney's Office for the District of Columbia. The investigation that led to the charges in this case was conducted by Special Counsel Robert S. Mueller, III. The U.S. Attorney's Office is, and the Special Counsel's Office was, a part of the U.S. Department of Justice. Is there anything about the fact that the Special Counsel's Office, the U.S. Attorney's Office, or the Justice Department is or was involved in this case that affect your ability to be fair and impartial in this case and base your decision solely on the evidence presented and the Court's instructions on the law?

Yes ___   No ✗

If yes, please explain:

_____
_____
_____
_____

6

**JUROR NUMBER:** _███████_

17. Check to indicate whether you or your spouse (significant other, domestic partner) has taken any courses, received any training, or sought or obtained employment, in any of these fields:

| | You | Spouse |
|---|---|---|
| Security/Intelligence | _____ | _____ |
| International Relations | _____ | _____ |
| Journalism/Media/Communications | _____ | _____ |

For any item checked, please describe the training or employment:

N/A

## ORGANIZATIONAL AFFILIATIONS AND ACTIVITIES

18. Are you currently, or have you ever been, a member or regular participant in any civic, social, union, professional, business, fraternal, recreational or other community group or charitable organizations?

Yes X   No ___

If yes, please list the names of those groups or organizations, your role and how long a member:

- ███████████████ Sorority. ███ - present. Member of the sorority
- Black MBA Association ███, Member of Atlanta Chapter
- Memphis Urban League Young Professionals; Civic Engagement Chair ███████

7

**JUROR NUMBER:** _____

## PRIOR JURY SERVICE

19. Have you ever served on a grand jury or jury in a trial within the past 10 years?

Yes X   No ___

If yes, how many times have you served as a juror in a trial? _____

If yes, have you ever served as a foreperson? X

If yes, how many times? 1 (foreman of fed grand jury)
24 month service

If yes, for each trial jury service, please indicate:

| Year | Federal or State | Civil or Criminal | Charge or Type of Case | Verdict Reached |
|------|------------------|-------------------|------------------------|-----------------|
| ____ | ____ | ____ | _____ | Yes   No |
| ____ | ____ | ____ | _____ | Yes   No |
| ____ | ____ | ____ | _____ | Yes   No |
| ____ | ____ | ____ | _____ | Yes   No |

If you served as a grand juror, how many times did you serve as a grand juror? 1

20. If you served as a juror, is there anything about your previous experience as a juror that would affect your ability to serve as a juror in this case?

Yes ___   No X

If yes, please explain:

_____
_____
_____
_____

8

**JUROR NUMBER:** ▮▮▮▮▮

## NEWS AND SOCIAL MEDIA

21. If you follow local or national news, what are your primary sources for local and national news and information? (Check all that apply)

I do not follow local or national news _____
Newspapers (including online) __X__   TV/cable __X__   Blogs/websites __X__
Social Media __X__   Radio _____   News magazines __X__
Word of mouth/conversations __X__   Other sources (specify) _____

Please identify by names your primary sources of news and information:

Washington Post, Apple News Service, Twitter, Facebook, New York Times, CNN, Politico, The Hill, CBS News

22. Do you listen to political commentators on TV or talk radio?

Yes __X__   No _____

If yes, please list the commentators you listen to:

not regularly but CNN shows (Anderson Cooper), MSNBC - Rachel Maddow/Chris Hayes

23. Have you written or posted anything for public consumption about the defendant, the House Permanent Select Committee on Intelligence investigation into Russian interference in the 2016 presidential election, or the investigation conducted by Special Counsel Robert Mueller?

[For purposes of this question, writing "for public consumption" includes blog posts, articles, or posts on internet sites that are accessible to the general public.]

Yes _____   No _____

If yes, please describe when and where you did so and the subject of your comments:

I can't remember if I did, but I may have shared an article on Facebook. Honestly not sure.

9

**JUROR NUMBER:** _____ ███████ _____

24. Have you or any close friend or family member ever run for or held a political office in the federal, state, or local government?

Yes **X**   No ___

If yes, would anything about that person's running for or holding political office cause you to form an opinion about the defendant's guilt or innocence in this case or affect your ability to be fair to both sides?

Yes ___   No **X**

If yes, please explain: I served on the elected school board in Memphis ████████ - ████████. I ran in the democratic primary for Dist 9 (TN) for the US House of Rep in ███

25. How closely have you followed media reports relating to investigations into Russian interference in the 2016 election?

Very Closely _____  Somewhat Closely **X**  Not too closely _____  Not at all _____

26. To assure that the decision of jury in this case is not based upon influences outside the courtroom, the Court has instructed you that you must avoid reading about the case in the newspapers or listening to any radio or television reports concerning this case including news coverage or communications on the internet or social media. And, you may not discuss or communicate about this case with your family, friends or co-workers or anyone else including on the internet or social media. Also, until you retire to deliberate, you may not communicate about this case with your fellow jurors. If you are selected as a juror and this instruction continues until the end of the trial, you be able to follow these instructions?

Yes **X**   No ___

If no, please explain:

_____

_____

_____

10

JUROR NUMBER: _____█████_____

## KNOWLEDGE OF TRIAL PARTICIPANTS OR THE CASE

This case arises out of events that occurred in 2016-2018, including the testimony of Roger Stone before the House Permanent Select Intelligence Committee (HPSCI) on September 26, 2017. There is nothing wrong with having heard or read something about this case, but it is important to this process that you truthfully and fully answer the following questions concerning your knowledge about the case and trial participants, if any.

27. Have you read or heard anything about the defendant Roger Stone, about any statements made by or attributed to Mr. Stone, or about this case? If so, please describe what you have read or heard and the source of the information.

    *Yes. Mr. Stone is accused of inappropriate contact Russian officials in the effort of helping Mr. Trump's campaign for President.*

28. Do you or anyone close to you have any connections to any of the following individuals? If so, you please explain below:

The Court

United States District Judge Amy Berman Jackson      Yes ___   No _X_

Assistant United States Attorneys

Adam Jed                          Yes ___   No _X_
Jonathan Kravis                   Yes ___   No _X_
Michael Marando                   Yes ___   No _X_
Aaron Zelinsky                    Yes ___   No _X_

Counsel for the Defendant

Robert Buschel                    Yes ___   No _X_
Tara Campion                      Yes ___   No _X_
Bruce Rogow                       Yes ___   No _X_
Chandler Routman                  Yes ___   No _X_
Grant Smith                       Yes ___   No _X_

The Defendant

Roger Stone                       Yes ___   No _X_

11

**JUROR NUMBER:** _____ ███ _____

If yes, please explain:

_____

_____

_____

_____

_____

29.   These are the names of people who may be witnesses in the case or who may be discussed during the trial.

| | |
|---|---|
| 1) Julian Assange | 17) David Lugo |
| 2) Jason Aubin | 18) Theodore Malloch |
| 3) Steve Bannon | 19) Paul Manafort |
| 4) William Binney | 20) Rebekah Mercer |
| 5) Zachary Blevins | 21) Andrew Miller |
| 6) Matthew Boyle | 22) Tyler Nixon |
| 7) Michael Caputo | 23) Sam Nunberg |
| 8) Peter Clay | 24) John Podesta |
| 9) Hillary Clinton | 25) Alexandra Preate |
| 10) Jerome Corsi | 26) Erik Prince |
| 11) Randy Credico | 27) Bill Samuels |
| 12) Richard Gates | 28) Michael Strum |
| 13) Jason Fishbein | 29) Jason Sullivan |
| 14) David Gray | 30) Michelle Taylor |
| 15) John Kakanis | 31) Donald Trump |
| 16) Margaret Kunstler | |

If you know any of those individuals personally, please identify which ones and explain how you know them.

N|A

_____

_____

_____

12

**JUROR NUMBER:** ▮▮▮▮▮▮▮

30. Please indicate if you already have an opinion about any of those individuals, or if the fact that they may be involved in the case would make it difficult for you to be fair and impartial to both sides?

I do have opinions about some of the officials/people on the list but they do not make it difficult for me to be fair.

31. Have you or a close friend or family member ever been employed or had any association or connection with Congress or a congressional committee?

Yes X   No ___

If yes, please explain the employment, association or connection:

I ran for Congress in ▮▮▮▮. My friends ▮▮▮▮▮▮▮ and ▮▮▮▮ worked for former Congressman Harold Ford Jr.

32. Did you work or volunteer for any 2016 presidential campaign?

Yes ___   No X

33. Have you or any close friend or family member participated in, or had any connection with any government agency, group, organization, committee or subcommittee, public or private group or organization, including any media group or organization that participated in, any investigation or inquiry into the circumstances surrounding Russian interference in the 2016 presidential election?

Yes ___   No X

If yes, please explain:

_____

_____

_____

_____

13

**JUROR NUMBER:** ▮▮▮▮▮▮▮

34. Have you formed or expressed any opinion about Mr. Stone, the charges in this case, or about his guilt or innocence in this case?

    Yes ___   No ✗

35. Some of the witnesses in this case may be people who were involved in crimes themselves. They would testify as part of a cooperation agreement with the government, or as part of a guilty plea, or under an order from the Court giving them immunity. Is there anything about that circumstance that will make it difficult for you to evaluate their testimony fairly and impartially in accordance with the Court's instructions?

    Yes ___   No ✗

    If yes, please explain:

    _____
    _____
    _____
    _____

## EXPERIENCE WITH THE COURTS AND CRIMINAL PROCESS

36. Within the past ten years, have you or a close friend or family member been the victim of a crime, reported or not?

    Yes ✗   No ___

37. If yes, for each incident please provide the following information: type of crime, who was affected (you or the relationship of the person to you), when the crime occurred, whether anyone was arrested, and if so, the outcome of the case:

    • homicide - my ▮▮▮▮▮ was the victim in ▮▮▮▮ - no arrests were made
    • assault - my ▮▮▮▮▮ was accused of assault in ▮▮▮▮. she was arrested + and ▮▮▮▮▮▮▮▮ on probation

14

**JUROR NUMBER:** _____ ██ _____

38.  If yes, do you feel that the person was treated fairly by the government agency involved?

Yes

39.  Within the past ten years, have you or a close friend or family member been a witness to a crime?

Yes ___   No ✗

If yes, please explain:

40.  Within the past ten years, have you or a close friend or family member been subpoenaed to be a witness, or did you or they testify as a witness in any court proceeding, hearing, or trial, including a criminal case?

If yes, please explain:    NO

15

**JUROR NUMBER:** ████

41. Within the past ten years, have you or a close friend or family member been arrested for, charged with, prosecuted for, or convicted of any crime other than a traffic ticket?

    Yes X   No ___

    If yes, please explain who (in relation to you), when, and what happened:

    My ████ was charged and arrested for assault at work. She ████ probation. My ████ may have been arrested for drug possession during this time

    If yes, do you feel that you or your friend or family member was treated fairly?

    Yes ✓   No ___

42. Within the past ten years, have you or a close friend or family member been the subject of any other kind of law enforcement investigation or administrative enforcement proceeding?

    Yes ___   No X

43. If yes, please describe the subject matter of the investigation, the government agency involved, and the outcome.

    N/A

44. Do you feel that you, your family member, or close friend was treated fairly by the government agency involved?

    N/A

16

**JUROR NUMBER:** _____ ███ _____

45. Apart from jury service, have you ever been involved in any legal proceeding, in any capacity, for example as a plaintiff, defendant, victim, lawyer, witness, or expert?

Yes _X_ No ___

46. If yes, please state when and explain why you appeared in court:

I practiced law 20██ - 20██ I appeared for motions + other legal proceedings.

47. If yes, did the legal process in that instance operate fairly in your opinion?

Yes

## CRIMINAL JUSTICE SYSTEM & LEGAL PRINCIPLES

48. The judge will instruct you that the charges in this case include: obstruction of an official proceeding, making false statements, and witness tampering. Is there anything about the nature of the charges alone that would affect your ability to be fair?

Yes ___   No _X_

49. Jurors are the sole judges of the facts. However, the jury must follow the principles of law as instructed by the judge. The jury may not follow some rules of law and ignore others. Even if the jury disagrees or dislikes the rules of law or does not understand the reasons for some of the rules, it is their duty to follow them. Do you have any personal beliefs that would make it difficult to follow the Court's legal instructions, whatever they may be?

Yes ___   No _X_

50. If, during the course of jury deliberations, a fellow juror should suggest that you disregard the law or the evidence and decide the case on other grounds, would you, as a juror, be able to reject that suggestion and abide by your oath to this court to decide the case solely on the evidence and law as the court has instructed you to do, without regard to sympathy, bias or prejudice?

Yes _X_   No ___

17

**JUROR NUMBER:** ▮▮▮▮▮

## CONCLUDING QUESTIONS

51.    Do you have any personal reason that makes you want to serve as a juror in this case, or do you have any personal interest in the outcome of the case?

Yes ___     No ☒

If yes, please explain:

_____

_____

_____

_____

52.    Do you have any moral, religious, or ethical beliefs that prevent you from sitting in judgment of another person?

Yes ___     No ☒

53.    The trial in this case may last approximately two (2) weeks, and could run longer. The typical trial day lasts from 9:30 a.m. to 4:30 or 5:00 p.m., with breaks in the morning and afternoon and a lunch break for approximately an hour. Monday through Friday. If there is any reason why you could not maintain that schedule, or you could not be present and give the matter your full attention during the period beginning November 5, 2019, and ending approximately November 20, 2019, please explain.

N/A _____

_____

_____

_____

18

**JUROR NUMBER:** _____

54. Do you have any physical or medical condition, or are you taking any medication on a regular basis that would make it unusually difficult for you to serve as a juror in this case or to sit for the periods of time described in the previous question?

    Yes ____   No __X__

55. Do you have any difficulty hearing that is not corrected with a hearing aid or any difficulty seeing that is not corrected by glasses or contact lenses?

    Yes ____   No __X__

56. Is there anything about this case, the issues, or the people involved in this case, or any other reason that has not be been asked about in any other question, that leads you to believe that you could not be completely fair to both the defendant, Roger Stone, and the U.S. Government in this case?

    Yes ____   No __X__

    _____

    _____

    _____

    _____


### PLEASE GO ON TO THE NEXT PAGE

19

**JUROR NUMBER:** _ ██████ _

## CERTIFICATION

By signing below, I hereby declare under penalty of perjury that all of the answers to the above questions are true and correct to the best of my knowledge and belief. I have not discussed my answers with others or received assistance in completing the questionnaire. I have answered all of the above questions myself.

████████████████████████████████████          9/12/19
Signature                            Print your full name here          Date

Juror Number ████████

20

**ATTACHMENT B**

**Index of Social Media Posts**

| Post # | Date | Post |
|--------|------|------|
| 1 | Dec. 4, 2008[1] |  |
| | | |
| 2 | Dec. 16, 2016 |  |
| 3 | Jan. 12, 2017 |  |

---

[1]     This post only appears in defendant's motion, Am. Mot. at 12, not in the composite exhibit.

1



| 4 | Mar. 2, 2017 | If HRC had won, and Russians had hacked the RNC and released their emails leading up to her win, and members of... fb.me/8uU5Qqlmp<br><br>6:32 AM · Mar 2, 2017 · Facebook<br><br>**1** Like |
|---|---|---|
| 5 | Mar. 3, 2017 | TRUMP, PUTIN, AND THE NEW COLD WAR<br><br>What lay behind Russia's interference in the 2016 election—and what lies...<br><br>Trump, Putin, and the New Cold War<br>What lay behind Russia's interference in the 2016 election—and what lies ahead?<br>newyorker.com<br><br>10:15 PM · Mar 3, 2017 · Facebook<br><br>**36** Retweets   **25** Likes |
| 6 | Mar. 3, 2017 | · Mar 3, 2017<br>Senators Lindsey Graham and SheldonWhitehouse Meet With FBI Director **Comey** on Russia Query<br><br>"S.C. Republican says... fb.me/3nmYapQqk<br><br>↱ 1 |

2



|   | May 17, 2017 | Appointment of Special Counsel |
|---|---|---|
| 7 | Jul. 14, 2017 | ▇▇▇▇▇<br><br>"Fox News keeps pushing excuses for Trump Jr.'s collusion with Russia that are just really, really bad."<br>fb.me/8sQi1wuWJ<br><br>12:50 PM · Jul 14, 2017 · Facebook<br><br>**38** Retweets  **21** Likes |
| 8 | Jul. 15, 2017 | ▇▇▇▇▇<br><br>Trump campaign paid firm of lawyer representing Trump Jr. before emails were made public<br>fb.me/6EnKPD0k6<br><br>5:45 PM · Jul 15, 2017 · Facebook<br><br>**1** Retweet |
| 9 | Aug. 13, 2017 | ▇▇▇▇▇<br><br>Marched by 45's hotel...and the crowd went boooooo!!! Then yelled shame, shame, shame as we walked by!<br>♡ 1  5:58 PM - Aug 13, 2017<br><br>⊗ See ▇▇▇ other Tweets |

3



| 10 | Aug 19, 2017 | "Quick question for the #KlanPresident and the 64% of Republicans who agree with his remarks and behavior over... fb.me/1sB0Pl4rs 5:44 AM · Aug 19, 2017 · Facebook  2 Likes |
| 11 | Oct 15, 2017 | · Oct 15, 2017  "Kansas tried a tax plan similar to Trump's. It failed." fb.me/1jaUGoaP0  ♡ 1 |
| 12 | Oct. 22, 2017 | Every day we wake up to more foolishness from this admin. He lies. Then the people that work for him have to... fb.me/8ptUDrYO7 8:37 AM · Oct 22, 2017 · Facebook  3 Likes |
| 13 | Oct. 29, 2017 | · Oct 29, 2017  Could change tomorrow, but for right now, this matters:  "The drop for Trump has come from independents (who... fb.me/1L6n1pdGe |

| 14 | Nov. 5, 2017 |  |
|----|--------------|---|
| 15 | Nov. 5, 2017 | |
| 16 | Nov. 11, 2017 | |



| 17 | Jan 13, 2018 | |
| 18 | Jan 20, 2018 | |
| 19 | Jan 31, 2018 | |
| 20 | Mar 22, 2018 | |

6



| 21 | Apr 25, 2018 | ▮ ▮▮▮▮▮▮▮▮▮ Apr 25, 2018 ⌄<br>Cohen pleading the 5th. There's a snark comment about pleading the (forty)5th in my head that I just can't articulate. You get the picture though.<br><br>Cohen to plead the Fifth in Stormy Daniels lawsuit<br>🔗 thehill.com |
|----|--------------|------------|
| 22 | Jun 14, 2018 | ▮ ▮▮▮▮▮▮▮▮▮ · Jun 14, 2018 ⌄<br>Behold, the candidate of the party of family values and Jesus!<br><br>MAGaspA<br><br>""It's all because Donald **Trump** was the Christopher Columbus for me," Hof told the Associated Press in a… pbs.org/newshour/polit… |
| 23 | Nov 2, 2018 | ▮ ▮▮▮▮▮▮▮▮▮ · Nov 2, 2018 ⌄<br>""Why do they stick with **Trump**?" Wong asked during the panel. "Because **Trump**'s immigration agenda is the white evangelical immigration agenda. I think that has become very clear.""<br><br>#ChuckDTriedToTellUs<br>#FearOfABlackPlanet<br>#FightThePower christianpost.com/news/most-whit… |

7

| 24 | Dec 11, 2018 |  |
| --- | --- | --- |
|  | Jan. 25, 2019 | **Defendant arrested** |
| 25 | Jan 25, 2019 |  |



| 26 | Jan 30, 2019 | Retweeted<br>**Bakari Sellers** ✔ @Bakari_Sellers · Jan 30, 2019<br>Roger Stone has y'all talking about reviewing use of force guidelines.<br><br>Not Alton Sterling<br>Not Eric Gardner<br>Not Walter Scott<br>Not Sandra Bland<br>Not Keith Lamont Scott<br>Not Philando Castile<br>Not Terence Crutcher<br>Not Dontre Hamilton<br>··········<br>But Roger Stone!!! Think about that.<br>○ 1.5K    ♺ 27.2K    ♡ 81.8K    ⬆ |
|---|---|---|
| 27 | Feb 28, 2019 | In his press conference 45 said M Cohen lied a lot during his testimony, but told the truth when he said he had no knowledge/evidence that 45 colluded with Russia. Then 45 said since Cohen lied about everything... facebook.com/1236360242/pos...<br><br>8:43 AM · Feb 28, 2019 · Facebook<br><br>1 Retweet<br><br>○    ♺    ♡    ⬆ |
| 28 | Mar 24, 2019 | · Mar 24, 2019<br>Ignoring the numerous indictments, guilty pleas, and convictions of people in 45's inner-circle, some Republicans are asserting that the Mueller investigation was a waste of time because he hasn't found evidence of...<br>facebook.com/1236360242/pos...<br>○ 21    ♺ 3    ♡ 4    ⬆ |

| 29 | Apr 11, 2019 |  |
| 30 | May 16, 2019 | |



| 31 | May 29, 2019 | |
| 32 | Jun 13, 2019 | |

| 33 | July 2, 2019[2] |  |
|----|----------------|------|
| 34 | Aug 2, 2019 | |

2    This post only appears in defendant's motion, Am. Mot. at 13, not in the composite exhibit.

12

| | | |
|---|---|---|
| 35 | Aug 25, 2019 |  |
| | Sept 12, 2019 | Jury Questionnaires completed |
| | Nov. 5, 2019 | Trial begins |

13

| 36 | Nov 10, 2019 |  |
|----|--------------|---------------------|
| 37 | Nov. 12, 2019 | |

14



| 38 | Nov 13, 2019 | |
| 39 | Nov 13, 2019 | |
| 40 | Nov 14, 2019 | |

| 41 | Nov 14, 2019 |  |
| 42 | Nov 15, 2019 | |