UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

ROGER J. STONE, JR.,

Defendant.

Criminal No. 19-cr-18-ABJ

## THE U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA'S RESPONSE TO THE COURT'S JUNE 23, 2020 MINUTE ORDER

Because of the COVID-19 pandemic, it is currently the U.S. Department of Justice's policy, through a directive from the Executive Office of United States Attorneys—to which the U.S. Attorney's Office for the District of Columbia has uniformly adhered—to not oppose a defendant's request to extend a voluntary surrender date for up to 60 days, unless the defendant poses an immediate public safety or flight risk. For that reason—and that reason only—the U.S. Attorney's Office for the District of Columbia does not oppose defendant Roger J. Stone's request to extend his voluntary surrender date for up to 60 days.

### *Background*

On November 15, 2019, a jury in the District of Columbia found the defendant guilty of Obstruction of Justice, False Statements, and Witness Tampering, arising from a months-long campaign to conceal material information from Congressional and FBI investigations of Russian interference into the 2016 presidential election. *See* ECF Nos. 260, 261. Upon the guilty verdict, the Government moved to remand the defendant to the custody of the Bureau of Prisons (BOP), arguing:

> Your Honor, throughout the pendency of these proceedings the defendant has shown an unwillingness or inability to abide by the conditions of release that the Court set for him. The Court has already held two hearings on that issue. I

would note that as recently as last night the defendant gave a message to a colleague in the news media to broadcast to his audience about this case, in violation of a court order that this Court entered nine months ago.

As the Court noted at the show cause hearing back in February, the defendant's inability or unwillingness to abide by those orders affects the safety of the community for purposes of the Bail Reform Act.

At the time that the trial began and the pretrial proceedings, there was a presumption in favor of release. And I think that by the time the trial started, that presumption was the only reason that the defendant was free to remain on release during the pendency of the case. In light of the jury's verdict, that presumption has now shifted and I think that given the defendant's failure to comply with these orders in the past, that he cannot make the showing necessary to overcome that presumption.

I would note, finally, that the charges of which the defendant has been – now stands convicted are serious and they include obstruction of justice and tampering with a witness.

11/15/2019 Tr. 11-12.  The Court denied the motion and released the defendant on his current

conditions, explaining:

I believe that since the time I entered the [media] order, at least the third time, or the second time, that Mr. Stone has largely adhered to it, and we have not had to reconvene and we have not had to deal with problems of that nature. He has been here for every court appearance. I have no reason to believe that he's not going to be here at his next court appearance. And I'm not sure, that while there were – there was a rough start, that since the orders have been entered, that I have a basis to conclude at this point that he's not going to comply with them.

11/15/2019 Tr. 13-14.

On February 20, 2020, the Court sentenced the defendant to 40 months' imprisonment.

2/20/2020 Tr. 91; *see also* ECF No. 328 at 2.  The Court permitted the defendant to self-surrender

to BOP custody, but delayed the imposition of a report date until no earlier than 14 days after the

Court resolved his then pending second motion for a new trial.  *See id.*; ECF No. 328 at 2 (ordering

defendant to surrender "as notified by the Probation or Pretrial Services Office, no earlier than 14

days after the Court has ruled on defendant's [then pending second motion for a new trial]").  The

Court explained: "Under 18 U.S. Code Section 3143(a)(2), I find by clear and convincing evidence

2

you're not likely to flee or pose a danger to any other person or the community, and you will be permitted to voluntarily surrender on a date no earlier than two weeks after the Court has ruled on your pending motion for a new trial." *Id.*  On April 16, 2020, the Court denied the defendant's second motion for a new trial and ordered the following: "The defendant must surrender for service of his sentence at the institution designated by [BOP] at such time as he is notified by the U.S. Probation or Pretrial Services Office, but no earlier than fourteen days after the date of this order. Pursuant to 18 U.S.C. § 3143(a)(2), the defendant remains on bond and he may voluntarily surrender." ECF No. 361 at 2.

BOP subsequently designated the defendant to the Federal Correctional Institution (FCI) in Jesup, Georgia,[1] and set a voluntary surrender date of June 30, 2020.  The U.S. Attorney's Office had no role in or even knowledge of the defendant's designation to FCI Jesup at the time it occurred or in the selection of a self-surrender date.  Only today, based on our due diligence in response to the Court's Minute Order, did we learn that BOP set the June 30 date on April 17, the day after the Court denied the defendant's second motion for a new trial, and that June 30 was selected at least in part based on concerns over the defendant's health, which were communicated to BOP by his attorney.  *See* Attachment 1.  At no point since that original designation has the U.S. Attorney's Office had any role in or attempted to exert any influence over whether BOP should revise the June 30 surrender date.

---

[1] As directed by the Court, the U.S. Attorney's Office inquired with FCI Jesup regarding the 25 pending COVID-19 tests reported on its website and cited by the defense in its motion, ECF No. 381 at 3.  According to BOP, all 25 tests referenced in the motion were administered because those inmates were due to be transferred or released to the community.  Under BOP protocols, quarantine and testing is required before inmates leave the facility.  All 25 tests came back negative.  As of the close of business yesterday, June 24, 2020—the most recent date for which data are available to report today—there have been no confirmed COVID-19 cases among either staff or inmates at FCI Jesup.

### *The Defendant's Motion and Government's Position*

The defendant moved for an extension of the June 30 surrender date on the ground that reporting to prison will increase his risk for contracting COVID-19, which he argues threatens severe illness based on his age and health. *See* ECF No. 381. The defense contacted the U.S. Attorney's Office to ascertain our position on the motion. As represented in the defense pleading, we informed the defense that, "based on the Department of Justice's and the Executive Office of United States Attorneys' guidance on the handling of voluntary surrender dates during the pandemic at this point in time, [the U.S. Attorney's Office] does not oppose a 60-day extension of [the defendant's] surrender date." That guidance, explained below, has been in effect since March 26, 2020, and has been applied uniformly by the U.S. Attorney's Office.

According to guidance from the Department of Justice and the Executive Office of United States Attorneys (EOUSA), U.S. Attorney's Offices should not object to a defendant's request to extend a voluntary surrender date for up to 60 days, even at this stage of the pandemic, unless the defendant poses an immediate public safety or flight risk. The directive applies to defendants whether they pled guilty or were found guilty after a trial, and without respect to age, health, or other COVID-19 risk factors. This guidance stems from the Attorney General's March 26, 2020 Memorandum for Director of Bureau of Prisons on "Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic," which directed BOP to utilize home confinement "where appropriate, to protect the health and safety of BOP personnel and the people in [BOP] custody." *Available at* https://www.justice.gov/file/1262731/download (last viewed June 25, 2020). Based on that directive and its underpinning principles, EOUSA contemporaneously directed U.S. Attorney's Offices to take the following position on self-surrender dates: "For defendants who have been sentenced and permitted to self-report to a BOP

4

facility, [U.S. Attorney's Offices] should not object to requests to extend the reporting date for a period of 60 days, unless the defendant presents a risk of flight or public safety dictates a more immediate reporting date." 3/26/2020 EOUSA Memorandum to All United States Attorneys.

Because the Court previously determined by clear and convincing evidence that the defendant does not pose an immediate public safety or flight risk, and this Office possesses no actionable information of a change in circumstances to press against that determination, faithful adherence to EOUSA's directive dictates that we not oppose a 60-day extension.[2] For sure, the U.S. Attorney's Office for the District of Columbia has previously contended, and this Court has observed, that the defendant poses a public safety risk, based on: (1) his attempt to incite violence upon a federal judge by posting on social media an image of the judge overlaid with crosshairs and recklessly accusing the judge of a political vendetta, *e.g.* 2/21/2019 Tr. 39, 45-47; ECF. No. 279 at 11-13, 18; (2) his abuse of social media and other media outlets to intimidate individuals and witnesses involved in this case, *e.g.*, 2/21/2019 Tr. 37-39, 45-47; ECF No. 279 at 11-16; (3) his patently false statements at the February 21, 2019, show cause hearing, *e.g.*, 2/21/2019 Tr. 39, 45; ECF No. 279 at 12, 18; and (4) his now final conviction for witness tampering, including threats of physical harm to a witness and the witness' dog, *see* 11/15/19 Tr. 11-12; 2/20/20 Tr. 88-89; ECF No. 279 at 16-17.  These are the only actionable facts known to the U.S. Attorney's Office regarding any risk posed by the defendant, and the Court knew of them and considered them when denying the motion for remand and later permitting the defendant to self-surrender.  Accordingly, we do not view them as a basis on which to depart from the EOUSA directive described above.

---

[2] Although EOUSA's directive applies without respect to age, health, and other risk factors, we note that those factors are present here.  The defendant is 68 years old and presents health factors that increase his risk for severe illness from COVID-19, which are addressed in the Presentence Investigation Report, ECF No. 327, ¶ 103, and the defendant's sealed supplement to his motion for an extension, *see* ECF Nos. 381, 382.

The U.S. Attorney's Office for the District of Columbia has applied the EOUSA directive uniformly, as have other offices around the country that we contacted.  There is no instance in which this Office has opposed a request to extend a self-surrender date during the pandemic.  Most recently, and most analogous to this case, we did not oppose motions to extend June surrender dates in two cases.  *See United States v. James Benjamin*, 1:18-cr-121, ECF Nos. 75, 76 (not opposing extension from June 5 to September 3 in case where defendant pled guilty to false statements); *United States v. Rose Gana*, 1:19-cr-305, ECF No. 41 (not opposing extension from June 30 to August 30 in case where defendant pled guilty to health care fraud).[3]  Moreover, earlier in the pandemic, the U.S. Attorney's Office did not oppose a motion for a 90-day self-surrender extension.  *See United States v. Cleophat Tanis*, 1:19-cr-393, ECF No. 22 (not opposing extension from April 22 to July 22 in case where defendant pled guilty to mail fraud).  And since the pandemic's onset in the District of Columbia in early March, we have routinely consented to defense requests to postpone sentencing dates, which, for defendants still at liberty, has the functional impact of extending self-surrender dates.

To conform with our policy and practice—and for no other reason—the U.S. Attorney's Office for the District of Columbia does not oppose a 60-day extension of the defendant's self-surrender date.

---

[3] Rosa Gana was sentenced to a term of imprisonment on February 13, 2020, and originally ordered to surrender to BOP custody on March 31.  *See Gana*, 19-cr-305, ECF No. 39.  On March 24, BOP contacted our Office and affirmatively requested that we seek a court-ordered extension due to the pandemic.  *See id.*  Based on BOP's request, we filed a joint motion with the defense for a 90-day extension, which was granted.  We did not oppose Gana's second motion for an extension, from June 30 to August 30, based on the same EOUSA directive that we applied to our decision in this case.

Respectfully submitted,

MICHAEL R. SHERWIN
N.Y Bar No. 4444188
Acting United States Attorney for the
District of Columbia


By: */s/ J.P. Cooney*
J.P. COONEY, D.C. Bar #494026
Assistant United States Attorney
Chief, Fraud & Public Corruption Section


*/s/ John D. Crabb*
JOHN D. CRABB JR., N.Y. Bar #2367670
Assistant United States Attorney
Chief, Criminal Division

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading was served via email to counsel for the

defendant, Roger J. Stone, on June 25, 2020.

/s/ J.P. Cooney
J.P. COONEY, D.C. Bar No. 494026
Assistant United States Attorney
Chief, Fraud & Public Corruption Section