## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. Action No. 19-0018 (ABJ) |
| | ) | |
| ROGER J. STONE, JR., | ) | *** **SEALED** *** |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Defendant Roger J. Stone has filed a motion seeking an extension of the date he must surrender to the Bureau of Prisons ("BOP") to begin serving his sentence. Unopposed Mot. to Extend Surrender Date [Dkt. # 381] ("Def.'s Mot.").

On November 15, 2019, Stone was convicted of obstructing a Congressional proceeding, threatening a witness, and five counts of lying to Congress. *See* Verdict Form [Dkt. # 260]. On February 20, 2020, the Court sentenced him to a term of forty months of incarceration, and it ordered that he must self-surrender when notified, but no earlier than fourteen days after the Court ruled on the then-pending motion for new trial. Judgment [Dkt. # 328] at 2. The defendant has since been directed to report on June 30, 2020.

A week before his designated report date, defendant filed the instant motion asking the Court to extend his voluntary surrender date to September 3, 2020 in recognition of "his heightened risk of serious medical consequences from exposure to the COVID-19 virus in the close confines of a BOP facility." Def.'s Mot. at 1. He also pointed to memoranda from the Attorney General endorsing the increased use of home confinement during the COVID-19 pandemic. *Id.* at 2, citing Memorandum from the Attorney General to Director of BOP, "Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic" (March 26, 2020) ("Mar. 26, 2020 AG Memo. to Dir. of BOP"); Memorandum from the Attorney General to Director of BOP, "Increasing Use of Home Confinement at Institutions Most Affected by COVID-19" (April 3, 2020).

Defendant asserts that he would face "possibly deadly risk . . . in the close confines of a Bureau of Prisons facility," Def.'s Mot. at 1, citing Revised Final Presentence Investigation

Report [Dkt. # 327] ¶¶ 103–04 (Sealed), and he has provided the Court with a letter from his treating physician. Physician Letter [Dkt. # 383] (Sealed). There is a considerable body of public information concerning the undeniable risk of contamination in prison settings in general, and it is essential to treat this information seriously. However, the defendant does not point to anything other than his doctor's "[r]easonabl[e] speculation" to support the conclusion that he is particularly vulnerable to infection or complications from infection for reasons other than his age. *Id.*

The defense represented in its pleading that the United States did not oppose the motion.

On June 23, 2020, the Court issued a minute order asking the government to set forth its position in writing. Min. Order (Jun. 23, 2020). The government informed the Court that its decision not to oppose the motion was driven solely by guidance from the Department of Justice and the Executive Office of United States Attorneys that "U.S. Attorney's Offices should not object to a defendant's request to extend a voluntary surrender date for up to 60 days, even at this stage of the pandemic, unless the defendant poses an immediate public safety or flight risk." Gov't Resp. to Court's June 23, 2020 Min. Order [Dkt. # 385] ("Gov't Resp.") at 4, citing Mar. 26, 2020 AG Memo. to Dir. of BOP. According to the government, "[t]he directive applies to defendants whether they pled guilty or were found guilty after a trial, and without respect to age, health, or other COVID-19 risk factors." *Id.* The government further explained:

> This guidance stems from the Attorney General's March 26, 2020 Memorandum for Director of Bureau of Prisons on "Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic," which directed BOP to utilize home confinement "where appropriate, to protect the health and safety of BOP personnel and the people in [BOP] custody." *Available at* https://www.justice.gov/file/ 1262731/download (last viewed June 25, 2020).

*Id.*

This is a salutary policy, and judges and defendants in this courthouse and others will welcome its continued evenhanded application.

The Court notes, though, that in its submission, the government also points out that there are currently no COVID-19 cases at the facility to which defendant has been designated. Gov't

Resp. at 3, n.1.[1]  This is a factor the government has relied upon in other pleadings filed with this Court as a reason to oppose motions for compassionate release.  *See, e.g.*, *United States v. Mahone,* 17-cr-236, Gov't Opp. to Def.'s Mot. for Compassionate Release [Dkt. # 57] at 18.  In another opposition that remains sealed to protect private medical information, the government similarly emphasized the absence of infection in a separate facility, and it asserted that the primary medical condition at issue here – even in an older defendant – did not warrant release under the Centers for Disease Control guidance since it was "in check."  *See United States v.* [REDACTED], 18-cr-[REDACTED][Dkt. REDACTED] (Sealed) at 11 ("For the most part, the government appreciates and does not dispute the underlying health concerns presented by the defendant.  But such conditions are worth assessing in nuance."); *id.* 12–13.  Here, defendant's condition appears to be – as it has been for some time – medically controlled.

At the end of the day, the guiding principle must be that Mr. Stone is entitled to no more and no less consideration than any other similarly situated convicted felon.

The difficulty in this case is figuring out who is truly "similarly situated."  Notably here, the record reflects that the defendant has already received a reprieve of the recommended length through the good graces of the Bureau of Prisons, an agency within the Department of Justice.  Just one day after the Court ruled on the motion for new trial, in response to a request from the defense, based on the same concerns that are raised here, the BOP accorded the defendant an additional sixty days to surrender beyond the fourteen that were required by the Judgment and Commitment Order.  *See* Ex. 1 to Gov't Resp. [Dkt. # 385-1]; *see also* Def.'s Resp. to Court's Order dated June 25, 2020 [Dkt. # 386].  And the Bureau itself is not of the view that another extension on this basis is warranted.  *See* Def.'s Resp. to Court's Order dated June 25, 2020 at 2 ("On or about June 10, 2020, government counsel informed undersigned counsel that he had

---

1       In his pleading, the defendant stated, "[w]hile the BOP website currently does not show any inmates with the COVID-19 virus at FCI Jesup, it reports that there are 25 tests pending. https://www.bop.gov/coronavirus/.  Given that the BOP does not routinely test inmates, combined with the relatively high positivity results in BOP facilities, the pending tests do not bode well."  Def. Mot. at 3–4 (footnotes omitted).  But this was pure speculation.  The government explains, "[a]ccording to BOP, all 25 tests referenced in the motion were administered because those inmates were due to be transferred or released to the community.  Under BOP protocols, quarantine and testing is required before inmates leave the facility.  All 25 tests came back negative.  As of the close of business yesterday, June 24, 2020 – the most recent date for which data are available to report today – there have been no confirmed COVID-19 cases among either staff or inmates at FCI Jesup."  Gov't Resp. at 3, n.1.

been in contact with BOP and had been informed that BOP was no longer extending surrender dates based on COVID-19 and that, therefore, BOP would not be changing Stone's June 30, 2020 surrender date.").

Moreover, while defendant correctly observes that other courts in this district have granted extensions in *United States v. Benjamin,* 18-cr-0121, and *United States v. Gana*, 19-cr-305, neither of those defendants was convicted of threatening anyone, and there is no indication that either failed to abide by conditions of release at any time.  By contrast, Mr. Stone was convicted of threatening a witness, and throughout the course of these criminal proceedings, the Court has been forced to address his repeated attempts to intimidate, and to stoke potentially violent sentiment against, an array of participants in the case, including individuals involved in the investigation, the jurors, and the Court.  *See* Gov't Resp. at 5 (recounting defendant's "attempt to incite violence upon a federal judge, . . . his abuse of social media and other media outlets to intimidate individuals and witnesses involved in this case, . . . his patently false statements at the February 21, 2019, show cause hearing, . . . and . . . his now final conviction for witness tampering, including threats of physical harm to a witness").

It is true, as the government points out, that at the time of sentencing, the Court was aware of these circumstances, and it permitted the defendant to voluntarily surrender over the prosecutor's objection.  But as of February 20, the defendant had not yet been designated to an appropriate minimum-security federal facility, and remanding him at that time would have required his incarceration at a local jail approximately 1,000 miles from his home and family until the designation was accomplished.  Also, there was already a motion for new trial pending, flight was not a factor, and it is fair to say that no one was contemplating that approving voluntary surrender could lead to a possible six-month delay in reporting.

For all of these reasons, the Court will grant the motion in part, and it is hereby **ORDERED** that the defendant's date to surrender to the Bureau of Prisons will be extended for another fourteen days, until July 14, 2020.  This affords the defendant seventy-five days beyond his original report date.  It is **FURTHER ORDERED** that during that time, defendant's conditions of release will be modified to include the condition of home confinement in accordance with the Attorney General's memorandum and the strong medical recommendation submitted to the Court by the defense that he "maintain strict quarantine conditions."  Letter

at 1.[2]  Pretrial Services may monitor his compliance through any appropriate electronic or non-electronic means selected in its discretion in accordance with its current practices, which may include such methods as SmartLINK or Voice Recognition.  This will address the defendant's stated medical concerns during the current increase of reported cases in Florida, and Broward County in particular, and it will respect and protect the health of other inmates who share defendant's anxiety over the potential introduction and spread of the virus at this now-unaffected facility.

      **SO ORDERED.**

_____
AMY BERMAN JACKSON
United States District Judge

DATE:  June 26, 2020

---

[2]     The letter from defendant's internist stated:

> I highly recommend that he maintain strict quarantine conditions. . . . . He should not be in any situations that would expose him to the SARS-COV-2 virus.  He needs to maintain at least 6 feet distance from people. He should avoid closed quarters with many people.  He must completely avoid exposure to people with high rates of infections.

Letter at 1.  Defendant's  response to the Court's inquiry concerning his personal preventive practices and avoidance of public gatherings in accordance with these directives was vague, carefully parsed, and not reassuring. Def.'s Resp. to Court's Sealed Order Dated June 24, 2020 [Dkt. # 387] (Sealed) at 1 (Stone has spent "the overwhelming majority" of his time at his home; he wears a mask "in the appropriate situations;" he avoids closed quarters with "numerous" people for "extended" durations; he has "on at least one occasion" attended a gathering at which more than ten people were present; and he has been present in public places such as restaurants "as local regulations have permitted.").